MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com


*Attorney for Plaintiff*

BENJAMIN KOHN


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| BENJAMIN KOHN | **)** | CASE NO. 20-4827 |
| *Plaintiff,* | **)** | |
| v. | **)** | |
| THE STATE BAR OF CALIFORNIA, | **)** | **COMPLAINT FOR PRELIMINARY** |
| CALIFORNIA COMMITTEE OF BAR | **)** | **INJUNCTION, DECLARATORY** |
| EXAMINERS, and THEIR AGENTS IN | **)** | **JUDGMENT, AND DAMAGES UNDER** |
| THEIR OFFICIAL CAPACITY | **)** | **THE AMERICANS WITH** |
| *Defendants.* | **)** | **DISABILITIES ACT AND** |
| | **)** | **CALIFORNIA'S UNRUH ACT** |
| | **)** | |

**COMPLAINT AND DEMAND FOR DECLARATORY AND INJUNCTIVE RELIEF**

BENJAMIN KOHN, by and through his attorney MATTHEW M. SELVAGN, brings this action for violations of the Americans with Disabilities Act, 42 U.S.C. § 12131 et seq., as amended by the Americans with Disabilities Amendments Act (ADAA) in 2008, Title II's implementing regulation, 28 C.F.R. Part 35, § 504 of the Rehabilitation Act, 29 U.S.C. §794, California Government Code §§ 11135 et seq. and 12944 et seq., and California's Unruh Act,

Cal. Civ. Code § 51(f). Plaintiff seeks injunctive relief in the form of an order requiring either specific testing accommodations or a final administrative decision by the Committee of Bar Examiners regarding the October 2020 California Bar Exam no later than 8/3/2020, or the earliest possible date, and/or a declaratory judgment for reasonable testing accommodations for the October 2020 California Bar Exam, as well as at least $425,000 in compensatory damages for costs incurred in connection with past and current administrations of said exam.

## **JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, the Americans with Disabilities Act, 42 U.S.C. §12131 et seq., Title II's implementing regulation, 28 C.F.R. Part 35, and §504 of the Rehabilitation Act, 29 U.S.C. §794, as well as supplemental jurisdiction under 28 U.S.C. § 1337(a) over any state law claims including those related to Cal. Gov. Code §§ 11135 et seq. and 12944 et seq. Cal. Civ. Code § 51(f).

This Court has personal jurisdiction over Defendants, their main office being located in the Northern District of California, address 180 Howard Street, San Francisco, CA 94105, and due to their substantial activities throughout California.

Venue properly lies in this district pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c) as Defendants are based in San Francisco County, California.

## **PARTIES**

### **Plaintiff**

Plaintiff is Benjamin Kohn, aged 26, from Mountain View, CA, a law school graduate of University of Iowa College of Law, and a person with severe mental, visual, and physical disabilities who seeks admission to the California Bar. His disabilities include a wide range of conditions numbering over 25 distinctly diagnosed issues, the most relevant here being autism with neurodevelopmental disorder of impaired processing speed/variable attention executive functioning, gross and fine motor delays, Myofascial Pain Syndrome, Gastroparesis, Pelvic Floor Dyssynergia, and Keratoconus.

Mr. Kohn qualifies as "disabled" under the American's with Disabilities Act, because his conditions "significantly impair one or more major life activities," including the life activities of working and pursuing one's chosen profession via a licensing exam. *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69. The major life activity to qualify as a covered disability may, but need not, relate to the subject service, program, or activity upon which accommodations are sought.

"Significantly impaired" is defined as impairment that significantly restricts the ability to perform a major life function as compared to an average, non-disabled person. 29 C.F.R. § 1630.2(j)(1)(ii). Mr. Kohn's conditions indisputably qualify under this definition, as he has consistently been given testing accommodations throughout his life for the SAT, LSAT, MPRE, FINRA, the Iowa Bar Exam, and three previous California Bar Exams administered July 2018, February 2019, and February 2020.

He has not yet passed the California Bar Exam but is registered to take it again for the next administration, tentatively set for October 2020.

**<u>Defendants</u>**

Defendant, the State Bar of California, is the organization responsible for, among other duties, admitting attorneys to the practice of law in the state of California. The Committee of Bar Examiners is responsible for administering the California Bar Exam, by and through the actions of their agents.

The Defendants are "programs or activities" as defined by 29 U.S.C. § 794, since they are governmental agencies which benefit from federal funding, and are therefore bound by the ADA to provide reasonable testing accommodations to disabled people. Also see 28 C.F.R Part 35.

**<u>STATEMENT OF FACTS</u>**

1.      Mr. Kohn was first diagnosed at age 5 or 6 at Stanford University Hospital with autism spectrum disorder (Asperger's syndrome type), following various chronic medical ailments diagnosed in early infancy, and with additional diagnoses of various mental and physical ailments to follow throughout his life. His disability stems not only from his autism, a

recognized disability under the ADA, but also from the complicated interaction of a voluminous list of disorders, illnesses, and conditions which effectively handicap him in undertaking any test requiring extended periods of sitting and concentration. Mr. Kohn's autism and impaired processing speed necessitate extra time on any standardized test, and his gastroparesis and pelvic floor dyssynergia require frequent meal and restroom breaks, without mentioning the host of other medical issues he faces.

2. Mr. Kohn typically has 5-10+ medical appointments weekly, meeting regularly with at least 11+ different doctors of various specialities to treat a growing list of disabilities, fully documented by his doctors and categorized by bodily system below (ICD-10 codes for reference are listed after each one):

Neuro-Psychiatric Disorders:

Autism Spectrum Disorder (F84.0)

Highly variable attention and neuroprocessing speed deficit (R62.50)

Circadian Rhythm Sleep Disorder (Delayed Phase & Irregular Sleep/Wake Types) (G47.33)

Neuro-Muscular-Skeletal:

Gross and Fine Motor Delay (F82)

Myofascial Pain Syndrome (M79.18)

Cervicalgia (M54.2)

Occipital Neuralgia (M54.81)

Scapular Dyskinesis (G25.89)

Allergy:

Allergic Rhinitis (J30.9)

Allergic Sinusitis (J32.9)

Allergic Keratoconjunctivitis (H10.45)

Food Allergies (Fish, Airborne & Severe Untreated; Nuts and Dairy) (Z91.013)

Allergy Drug-Induced Immunodeficiency (D84.9)

Dermatological:

Chronic Idiopathic Urticaria (L50.1)

Eczema (L20.84)

Chronic Folliculitis (L73.9)

Gastroenterological/Gastrointestinal:

Gastroparesis (K31.84)

Postoperative Dysphagia (R13.10)

Irritable Bowel Syndrome with Chronic Constipation (K58.9)

Pelvic Floor Dyssynergia (M62.89)

Recurrent Anal Hemorrhoids (K64.8)

Recurrent Anal Fissures (K60.2)

History of Gastroesophageal Reflux Disease (K21.9)

Otolaryngology:

Chronic Oral Aphthae (K12.0)

History of Sleep Apnea (G47.20)

History of Sinonasal Polyposis (J33.9)

Ophthalmology:

Keratoconus (H18.603)

Irregular/Asymmetric Astigmatism of Both Eyes (H52.213)

Dry Eye Syndrome (Severe Meibomian Gland Dysfunction & Tear Film Insufficiency)

(H04.123)

Eye Floaters (H43.399)


3.      Due to these conditions, Mr. Kohn has been granted the following

accommodations in the past, which the Committee is required to consider for future

accommodations on the California Bar Exam, per State Bar Rule 4.85:

Springer Elementary School - IEP

Crittenden Middle School - IEP, tutoring, extra time on exams and assignments

Blach Junior High School - IEP, tutoring, extra time on exams and assignments

Mountain View High School - IEP, HSIEP, tutoring, extra time on exams and

Assignments.

LSAT - 50% extra time for a 3 hr 30 min multiple choice exam.

GMAT – Similar to LSAT.

San Jose State University - 100% extra time on exams, private room, plus note taking Assistance.

University of Iowa Law School - 100% extra time on exams plus a private room, this increasing to 150% extra time on essay exams his final semester (reflected in later petition).

MPRE - 50% extra time, private room, plus a 15-minute supervised break for a 2 hr exam

FINRA - 100% extra time plus a meal break every 90 minutes, private room, and the ergonomic equipment provided to him, including Herman Miller Embody desk chair.

4.      His conditions cause Mr. Kohn numerous difficulties in a learning environment, and especially in a test taking environment, such that they impede the ability of such exams to measure the domains purportedly being tested by the exam without granting appropriate accommodations. Enyart v. Nat'l Conference of Bar Examiners, Inc., 823 F. Supp. 2d 995, 1001 (N.D. Cal. 2011)

5.      To his credit, and despite the complex web of medical symptoms he experiences on a daily basis, Mr. Kohn has attempted the California Bar Exam 3 times: in July 2018, February 2019, and February 2020, albeit usually with fewer disability accommodations than his doctors believe were required to bring Mr. Kohn onto a "level playing field" with non-disabled applicants.

6.      For each bar exam he was granted various testing accommodations (see "Past Exams" section, *infra*). However Mr. Kohn was denied the *reasonable accommodations* requested, specifically these accommodations included (1) 150% extra time on the written portion of the exam; (2) a cap of no more testing time per day than non-disabled test takers; (3) ergonomic/physical equipment supplied in the exam room (or reimburse for Mr. Kohn to transport and install his own equipment); (4) specialized disability proctors; and (5) 30 minutes of break time per 90 minutes of testing; among others requested in his petitions.

7.      Mr. Kohn has received affidavit opinions from 8 experts to date regarding his

disability testing accommodations on the California bar exam. One of these experts is Dr.
Dresden, Mr. Kohn's primary care physician who manages his multi-specialty care holistically,
and four of the other seven are specialized physicians, while the three remaining experts are
psychologists. Of those psychologists, only Dr. Toren is still presently available to Mr. Kohn, but
a 2014 comprehensive neuropsychological evaluation by Drs. Preston and Pinn was relied upon
in support of accommodations for autism in the past submissions. The four specialist physicians
include Mr. Kohn's two subspecialized ophthalmologists, Drs. Goodman and Tearse, his
gastroenterologist, Dr. Clarke, and his allergist, Dr. Rubinstein.

   Mr. Kohn's physicians have stated the following recommendations, in brief:

   <u>Autism and neurological/attention disorders</u>

   8. According to Dr. Toren, based on the most recent comprehensive
neuropsychological evaluation that she reperformed this year, Mr. Kohn requires a number of
testing accommodations for autism, including at least double time for multiple choice tests and at
least 150% extra time (double time and a half) for essay tests, administered over proportionally
more test days so that test time each day does not exceed a standard administration, the ability to
type written responses, frequent extra breaks, and a distraction free testing environment, largely a
private room although problems arising on the July 2018 exam would later expand this to the
training and instructions provided to the proctor(s) to whom he is assigned.

   9. In their 2014 neuropsychological evaluation report for the LSAT, Drs. Preston and
Pinn opined: "Mr. Kohn has variable attention. Impaired/fluctuating attention may influence
performance on all measures administered. Results of testing are consistent with a diagnosis of
F84.00 Autism Spectrum Disorder."

   10. They stated "Due to this neurodevelopmental disorder, Mr. Kohn processes
information and responds at a significantly slower rate than would be expected given his level of
Intellectual Functioning. In order to have an accurate assessment of what he has learned during
his time in law school, he would need significantly more time to complete all parts of exams as
compared to relatively neurotypical examinees." Dr. Dresden further noted that Mr. Kohn scored
in the 9th percentile on processing speed.

11.     The doctors recommended 100% to 150% extra time, and Mr. Kohn's primary care physician Dr. Dresden wrote: "Mr. Kohn's request for 100% extra time on multiple choice sections and 150% extra time for written sections is reasonable."

Digestive System Conditions (gastroparesis, postoperative dysphagia, pelvic floor dyssynergia, and irritable bowel syndrome with chronic constipation)

12.     According to gastroenterologist doctor John O. Clarke from Stanford Health Care, Mr. Kohn's digestive health physician, Mr. Kohn requires frequent small breaks throughout the day to both consume small amounts of food, and to take restroom breaks. Dr. Clarke classifies gastroparesis as a "physical disability" in which the stomach cannot empty itself in a normal fashion, thus preventing the patient from consuming more than a tiny amount of food at any given time, otherwise risking gas bloat and regurgitation. In addition, Dr. Clarke states that Mr. Kohn has postoperative dysphagia, after his Nissen Fundoplication surgery, which also necessitates small frequent meals. In Dr. Clarke's words: "it is possible for him to clog his esophagus, which produces severe pain and regurgitation urge that, once triggered, can last for hours, or even need an emergency medical response."

13.     Mr. Kohn also has pelvic floor dyssynergia and irritable bowel syndrome with chronic constipation. He has had the irritable bowel syndrome diagnosis since his early adolescence, diagnosed by his then pediatrician. Dr. Clarke stated that these two conditions, each through a different pathology, both act in concert to make Mr. Kohn's bowel movements less frequent and less controllable, predictable, or plannable in timing, and to take far longer than is ordinary to complete. While the constipation does so by impaired motility generally throughout the entire digestive tract, the pelvic floor dyssynergia is essentially a neuromotor impairment that obstructs the defecation process and also creates very uncomfortable anismus sensations during and following bowel movements that makes it difficult to leave the toilet for some time after starting.

14.     In effect, these digestive issues "significantly impair the major life function of working," since they prevent Mr. Kohn from taking a licensing exam without reasonable accommodations such as 30 minute breaks every 90 minutes of testing and 150% extra time, and as Dr. Dresden noted, also the major life activity of "operating a major bodily function."

<u>Visual Impairments (keratoconus, dry eye syndrome, uncorrectable asymmetric astigmatism, eye floaters)</u>

15.     Ophthalmologists Dr. Daniel Goodman and Dr. James Tearse are Mr. Kohn's eye specialists and have explained that Mr. Kohn's eye conditions should be considered additive for the purposes of disability accommodations. Dr. Goodman recommended 100% extra time just for the keratoconus, which is a disorder of the eye which results in progressive thinning of the cornea. This may result in blurry vision, double vision, nearsightedness, irregular astigmatism, and light sensitivity leading to poor quality-of-life. He further stated, "Visual impairments affect Mr. Kohn's reading speed, endurance during all day focused visual work, and ability to transmit written responses already mentally formulated." -- all descriptions of "significant impairment" relative to a non-disabled person.

16.     Although the Committee's expert incredulously believes this is "corrected with appropriate glasses," Dr. Goodman flatly disagreed, and as the treating physician, his diagnosis should be deferred to according to the ADA. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002); see also 28 C.F.R. pt. 36, app. A, at 795-96. This in effect means that an additional 100% extra time on the essay section is reasonable just for Mr. Kohn's eye conditions, plus at least another 100% for autism, since the experts believe these are additive, and these conditions constitute a significant impairment of a major life function.

17.     Further, also according to Dr. Dresden, Mr. Kohn suffers from myofascial pain syndrome, which is chronic pain affecting the soft muscle tissues:

"Mr. Kohn acquired myofascial pain syndrome subsequent to the SAT.  He requires physical therapy three to five times per week along with regular chiropractic and osteopathic treatments to manage the symptoms sufficiently to avoid substantial loss of productivity and significant impairments of his quality of life...This condition can be further aggravated by high levels of stress or anxiety, and by spending long periods of time in a sitting posture, reading, or using a computer, especially without the ergonomic setup he uses for home, study, and work. The Bar Exam requires suspension of ordinary treatment due to the need to take the exam at a substantial distance from his established providers, without any long periods of uninterrupted time during business hours, over several consecutive days, and then places him in conditions that

1  inevitably will maximize the exacerbation of his disability....The increase in these symptoms
2  from the sitting and computer-use postures can be partially ameliorated by using an ergonomic
3  setup, including those components I've described previously and an adjustable height sit-or-stand
4  desk like the Iowa Bar provided."

5       18.     The above conditions illustrate that Mr. Kohn is "disabled" and "significantly
6  impaired in a major life function." They also go to the reasonableness of his requested
7  accommodations.

8
9  **Upcoming October 2020 Exam:**

10       19.     Currently Mr. Kohn is registered to take the October 2020 California Bar Exam
11  and has renewed his past petitions for testing accommodations. He submitted his current petition
12  on March 19, 2020, as recommended by the Committee, as it was more than 6 months prior to
13  the exam, (per State Bar Rule 4.84(B)), then he supplemented his timely petition with additional
14  expert opinions and data on June 4, 2020, that was responsive to claims first made by the
15  Committee on 2/14/2020, but required over twenty hours of in-person psychological testing and
16  so was not available during the shelter-in-places imposed for the covid pandemic.

17       20.     On 5/21/2020, Plaintiff inquired about the status of his petition and was then told
18  it would be considered at a Committee meeting on 6/19/2020, over three months from
19  submission. Even using Defendant's own procedures, a preliminary decision on the petition
20  would have been due before the next date documents were added which was on 6/4/2020, 77
21  days after the petition was filed.

22       21.     The addendum submitted 6/4/2020 was a month and a half before Defendant's
23  own deadline, such that the new submission should not have slowed the process. When Plaintiff
24  submitted the new documents on 6/4/2020, because a decision was already overdue, only the
25  new documents should still have needed review. The 15 days remaining to the 6/19/2020
26  Committee meeting is a greater amount of time than the 8/21/2020 Committee meeting is from
27  Defendant's appeal submission deadline of 8/13/2020.

28       22.     On 6/17/2020, Defendant admitted to Plaintiff that its Admissions Rule 4.90(D)
29  required consideration "as soon as is practicable."

23.     Nonetheless, Defendant asserted that it was impracticable not only to consider Plaintiff's administrative petition at the 6/19/2020 Committee meeting, but also the 7/15/2020 Committee meeting specially for testing accommodations petitions and appeals, and indeed any Committee meeting prior to 8/21/2020, with a decision letter to follow no earlier than the following week, which is approximately one week after the appeal deadline of 8/13/2020.

24.     This improperly denies Mr. Kohn the opportunity to administratively appeal any denials, and, if waited for, would prevent court review prior to the exam.  It also prevents Mr. Kohn from being able to allocate sufficient resources for adequate exam preparation, something that is required of testing agency decision timeframes for ADA requests by the US DOJ 2014 ADA regulations.

25.     In substance, Mr. Kohn has requested his accommodations be expanded from previous attempts at the California Bar Exam by granting those he requested in his most recent petitions for the October 2020 exam, which include the following accommodations: (1) 150% extra time on the written portion of the exam; (2) a cap of no more testing time per day than non-disabled test takers; (3) ergonomic/physical equipment supplied in the exam room (or one or more of various substitutes to lessen the burden of bringing the equipment himself); (4) specialized disability proctors; and (5) 30 minutes of break time per 90 minutes of testing.

26.     In addition to the above prejudicial delay in deciding Mr. Kohn's accommodations for the upcoming exam, the Committee has taken unlawful positions regarding its online versus in person testing requirements for disabled people. Defendant declared that applicants with disabilities that could be accommodated via online testing offered non-disabled takers, will be required to test in person at test centers to receive their accommodations, if the Committee determines any of their accommodations do not "lend themselves to online testing." This is an opaque and arbitrary standard with no detailed explanation, and has the effect of discriminating against diasbled test takers who might prefer to test online just as non-disabed takers do.

27.     Next, Defendant stated in their email dated 6/17/2020 that "... [T]he Committee will first determine what accommodations will be granted based upon all documentation provided in connection with that administration of the examination. State Bar staff will then

1 determine the modality in which the granted accommodations can be provided to the applicant
2 and administer the examination accordingly."

3     28.    This is inherently prejudicial since the accommodations and the modality are tied
4 together. One cannot determine exactly what accommodations are necessary without knowing
5 whether the exam will be in-person or online.

6     29.    Further, Defendant improperly administered the three past exams taken by the
7 Plaintiff, on one or more of occasions by (1) not giving "written explanations identifying reasons
8 for denial" as required by law; (2) by not proceeding in a "timely" manner as required by US
9 DOJ 2014 ADA regulations; (3) by intentionally or recklessly relying on manifest factual errors
10 by its expert caused by the Committee omitting documents sent to their expert; (4) by setting an
11 arbitrary, capricious, and prejudicially short deadline of 10 calendar days to file a complete
12 administrative appeal with expert support; and (5) by denying requests without properly
13 establishing a lawful basis for denial, especially considering Mr. Kohn's overwhelming medical
14 expert support, which has not been put into a genuine substantive factual controversy.

15 **Summary of Systemic Procedural Defects with Defendants Disability**
16 **Accommodations Review**

17     30.    Defendant has promulgated and published various "admissions rules," which set
18 forth the procedures for administrative petitions and appeals for testing accommodations on the
19 California Bar Examination. In regards to processing timeframes, those rules provide that
20 "initial processing of a petition generally takes a minimum of 60 days."

21     31.    Defendant's admissions guidance is to submit a petition at least six months prior
22 to the exam on which they are sought if they wish to rely on a final decision after exhausting
23 administrative remedies. Plaintiff submitted his petition for the July 2018 exam nearly a year
24 before that exam.

25     32.    The United States Department of Justice ("DOJ") has opined as follows:

26 "Testing entities should ensure that their process for reviewing and approving testing
27 accommodations responds in time for applicants to register and prepare for the test... Testing
28 entities must offer examinations to individuals with disabilities in as timely a manner as offered
29 to others and should not impose earlier registration deadlines on those seeking testing

accommodations... Failure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting for persons with disabilities." (See https://ada.gov/regs2014/testing_accommodations.html).

33.    The Iowa Board of Law Examiners decided Plaintiff's testing accommodations appeal for the July 2019 Iowa Bar Exam, also a lengthy document submission, within approximately three business days.

34.    The National Conference of Bar Examiners (NCBE) decided Plaintiff's petition for testing accommodations on the Multistate Professional Responsibility Exam (MPRE) in less than thirty days. By contrast the Defendant has taken as long as 5 months and on average 2 months to decide. This exam cycle they have still not decided despite the petition/appeal being submitted in March 2020.

35.    In addition, Defendant has demanded "extensive documentation" for purposes of 29 C.F.R. § 1630.2(k)(2). The Committee has consistently rejected hundreds of pages of Plaintiff's medical affidavits, obtained at great cost and burden, while simultaneously stating that more evidence is needed. Such inconsistent behavior is inherently confusing, prejudicial, and against the spirit of the ADA.

36.    Related to CoVid: The covid pandemic has placed significant strains on the caseloads and schedules of many of the same health care providers who would act as experts for disabled applicants, including some or all of Plaintiff's experts, such that there is an unprecedented degree of triage.

37.    Provider concerns about both patients and their own exposure risks have decreased or eliminated availability of appointments for many health care services, especially on short notice requests for very time consuming to prepare documentation.

38.    Some providers have stopped seeing patients altogether during the pandemic, or at least during times a shelter-in-place has been ordered locally.

39.    The burden of accessing even available health care provider services to seek documentation has increased due to the health and safety risks involved with risking exposure to the coronavirus. The above factual context affects what documentation requirements permit a

readily accessible and equally accessible testing accommodations process for disabled applicants.

40.    Other prejudicial procedural defects include the following:

40.1    - Unduly short 10 day appeal deadline, possibly motivated by a desire to deter appeals. Furthermore, the appeal deadline begins when the Committee posts the letter, which was usually at least 5 days before receipt, with appeal also expected by mail (this applies only  prior to Feb 2020 exam before electronic appeals);

40.2    - No decision on whether the exam will be online or in person until the past the deadline to make testing accommodation requests;

40.3    - Reliance on generally one expert consultant even where Defendant knew or should have manifestly been aware their key premises were false from the file, to the extent of deliberate indifference;

40.4    - Defendant's long turnaround time for procedures are not necessitated by practicability, rather Defendants' lengthy delays serve only the convenience of their staff, and have the effect of chilling assertion of disability rights by test-takers;

40.5    - Possibly maliciously selecting cherry-picked documents to send to their expert consultant as the relevant file/record.

40.6    - No lawful plan relative to Coronavirus: immunocompromised patients should not be exposed to high risk testing environments, disabled test takers' medical providers are harder to reach, and evidence for testing accommodations is harder to obtain.


**Past Exams Procedural History:**

**July 2018 Exam**

41.    Mr. Kohn first attempted the California Bar Exam in July 2018. He initiated his petition for testing accommodations the previous year on July 8th, 2017, requesting 100% extra time on the exam, to account for his autism and Asperger's syndrome, plus a computer to aid in data entry due to his impaired motor skills, an ergonomic chair with specific features described by Dr. Dresden and present on the Herman Miller embody chair, and a private room.

42.     Mr. Kohn detailed that those requests were largely consistent with disability accommodations he had previously been granted by past educators, administrators, and medical professionals in grade school, college, law school, and on standardized tests. In addition, his own Dr. Preston indicated that double time would be fair and reasonable just for autism on multiple choice tests such as the LSAT and GMAT, while his Dr. Goodman indicated double time was independently justified by his visual disabilities.

43.     The Committee of Bar Examiners responded by providing only about 66% extra time, granting him 5 hours each for two parts of the exam and 5hr 45min for the remaining section, plus a semi-private room, permission to type on laptop, and permission to bring an ergonomic chair that he supplies and other ergonomic items to the test center.

44.     Mr. Kohn appealed this decision by pointing out correctly that his experts had provided detailed medical reports indicating 100% extra time would be the minimum to level the playing field. For example, Mr. Kohn's Dr. Goodman indicated that the keratoconus and dry eye syndrome alone warranted 100% extra time, and that any additional disabilities should only add to that time. Mr. Kohn's autism specialists, Drs. Preston and Pinn pointed out that he should be given "double time" for the multiple choice section for that condition.

45.     Mr. Kohn stated that the California Bar Exam, being a 6 hour-per-day test spanning 3 days, was far more taxing than any previous exam, thus requiring more accommodations. The Committee agreed, and allowed 100% extra time for the July 2018 exam.

46.     For the exam itself, the Committee hired proctors for the disabled students who had not been properly trained, materially prejudicing Mr. Kohn. The proctors were temp workers who had seemed to have no training in disability accommodations (and alleged by a state bar employee in the break room), whereas the proctors used for non-disabled takers were experienced and had administered previous exams. Mr. Kohn's proctor got into an argument with his supervisor, resulting in confusion and stress, related to the number of hours that would be needed if Mr. Kohn used his extra exam time. In addition, proctors talked too much, talked directly to the test takers during the exam, and caused numerous distractions.

**February 2019 Exam**

47.     Mr. Kohn requested the same accommodations he had received on the previous exam by filing a new petition. In addition he requested, in most important part, 150% extra time on the written sections, breaks of 30 minutes per 90 minutes of testing (stop-the-clock breaks), a private room, that ergonomic equipment be provided (or permission to leave his own personal required equipment overnight), and hotel discounts equal to those offered to non-disabled students.

48.     On December 28, 2018, the Committee denied the additional accommodations, except for granting an additional 30 minutes testing time per day as a substitute for the meal breaks that were denied. The appeal was due within 10 days, which caused prejudice by not allowing sufficient time to gather expert opinions, in violation of 29 CFR 1630.(2)(k)(2). The Committee's only reason given for the denial, without any detailed explanation, was that "the documentation you and your specialist provided does not support those requests."  The explanation on appeal only addressed one accommodation request and that with an untimely fundamental alteration claim that lacked legal merit.

### February 2020 Exam

49.     Mr. Kohn again renewed his petition/appeal, requesting the same accommodations as were denied on the previous exam, and was again denied, however only Mr. Kohn's new documents were submitted to the Committee's expert rather than the entire file.

50.     "Reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviewers who have never conducted the requisite assessment of the candidate for diagnosis and treatment. This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations." (See D.O.J. guidelines at https://www.ada.gov/regs2014/testing_accommodations.html#_ftn6 ) (See Also D.O.J. best practices model guide based on the consent decree of the LSAC in regards its litigation with them over disability law compliance for the LSAT even for the weaker Title III):

51.     "Under the relevant ADA Guidance, a testing entity, such as LSAC, should accept, without further inquiry, "documentation provided by a qualified professional who has

made an individualized assessment of a candidate that supports the need for the modification, accommodation, or aid requested," and provide the testing accommodation. See 28 C.F.R. pt. 36, app. A, at 795. "Reports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." Id. at 796." (See DOJ Best Practices Guide, p. 10).

52. In summary, for the February 2020 exam, the Committee did not give proper deference to Mr. Kohn's experts, but instead asserted that his experts had not "proven" that the requested accommodations were reasonable.

## CAUSES OF ACTION UNDER THE AMERICANS WITH DISABILITIES ACT
### Threshold ADA Considerations:

An individual is disabled within the meaning of the ADA and § 504 of the Rehabilitation Act if that individual suffers "a physical or mental impairment that substantially limits one or more of the major life activities of such individual."  42 U.S.C. § 12102(2)(A)(ADA);  see also 29 U.S.C. § 706(8)(B) (Rehabilitation Act).

Under Title I, "substantially limits" is defined as any condition which significantly restricts the manner or duration under which an individual can perform a particular major life activity as compared to the manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(ii).

The bar examination implicates the major life activity of working and pursuing one's chosen profession, since if a candidate is not given a chance to compete fairly on what is essentially an employment test, he/she is precluded from potential employment in that field. *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69. "Working" is specifically listed as a "major life activity" in 28 C.F.R. § 35.108(c)(1).

Mr. Kohn clearly qualifies as a disabled person who is covered under the ADA, since his impairments substantially limit his ability to concentrate (autism), sit for extended periods (myofascial pain syndrome), visually resolve written materials (keratoconus), and he needs frequent bathroom/food breaks which if not taken can cause clogging of his esophagus

(gastroparesis). These affect his ability to take a licensing exam and thus the major life activity of working.

Title II of the ADA emphasizes program access, meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons. Americans with Disabilities Act of 1990, § 201, 42 U.S.C.A. § 12131.

"Congress intended the 'undue burden' standard in title II to be significantly higher than the 'readily achievable' standard in title III." 28 C.F.R. Pt. 35, App. B

In *D'Amico v. New York State Bd. of Law Examiners*, 813 F. Supp. 217 (W.D.N.Y. 1993), the Court stated: "Applicant for state bar examination with severe visual disability established sufficient likelihood of success on merits to warrant preliminary injunction requiring Board of Law Examiners to provide all testing accommodations recommended by applicant's physician, including opportunity to take test over four days rather than usual two days, absent any medical evidence to rebut physician's opinion on nature of disability and applicant's abilities, and despite Board's claim that its testing expertise in determining that applicant could reasonably take test in two days took precedence over physician's medical opinion. Americans with Disabilities Act of 1990, § 309, 42 U.S.C.A. § 12189." P. 19

## <u>COUNT ONE</u>

Plaintiff requests all relief authorized by law related to the February 2019 California Bar Exam for not readily accessible, and excessively burdensome, procedures to seek testing accommodations. Specifically, lack of sufficient written explanation for denial of accommodations, undue delay in deciding accommodations leaving less time to prepare for the exam relative to non-disabled candidates, and lack of meaningful time to appeal (only 10 days).

The DOJ regulations require that entities deciding disability accommodations must provide an *explanation* of the reasons for a denial. Just as an Exhibits employer cannot summarily deny an ADA claim due to "undue hardship," or because the accommodation would be "ineffective," without further explanation, a testing body may not deny requested accommodations without explanation, of the relied upon findings of fact and holdings of law.

1    The Committee of Bar Examiners did not provide a detailed explanation for denying Mr.

2   Kohn's request for accommodations related to the February 2019 as described in the Statement

3   of Facts, supra. Rather, they provided only a non-detailed statement that Mr. Kohn would receive

4   "enough time," without any medical explanation.

5                                    **COUNT TWO**

6    The United States Department of Justice ("DOJ") has opined as follows:

7   "Testing entities should ensure that their process for reviewing and approving testing

8   accommodations <u>responds in time</u> for applicants to register <u>and prepare for</u> the test... Testing

9   entities must offer examinations to individuals with disabilities in as timely a manner as offered

10  to others and should not impose earlier registration deadlines on those seeking testing

11  accommodations...  In addition, the process should provide applicants with a reasonable

12  opportunity to respond to any requests for additional information from the testing entity, and still

13  be able to take the test in the same testing cycle.  <u>Failure by a testing entity to act in a timely</u>

14  <u>manner, coupled with seeking unnecessary documentation, could result in such an extended</u>

15  <u>delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting</u>

16  <u>for persons with disabilities.</u>"  (Emphasis Added).

17  (See https://ada.gov/regs2014/testing_accommodations.html).

18   The Committee, manifesting deliberate indifference, failed to provide timely decisions

19  prior to the February 2019 exam by waiting until December 28, 2018 to render a decision, did

20  not render a decision on appeal until 2/15/2019, less than 2 weeks prior to the exam, and their

21  process left only 10 days for an appeal. This left Mr. Kohn without time for meaningful exam

22  preparation or court review before the start of testing.

23   In addition, as referenced above, the Committee has committed prejudicial procedural

24  defects by having an unduly short appeal deadline, not giving adequate explanation of reasons

25  for denial, not giving enough time to gather evidence from medical experts on appeal, disclosing

26  no expert to rebut any of Plaintiff's affidavits, and making the test accommodations

27  administrative process not readily accessible to disabled applicants.

28                                   **COUNT THREE**

1    The Committee again failed to provide timely decisions prior to the February 2020 exam

2  by waiting until December 2019 to render a decision, and did not render a decision on appeal

3  until around a week prior to the exam. This left Mr. Kohn without time for meaningful court

4  review before the exam, and meant that he had to begin studying before knowing his testing

5  accommodations.

6    In addition, as referenced above, the Committee has committed prejudicial procedural

7  defects by having an unduly short appeal deadline, not giving enough time to gather evidence

8  from medical experts on appeal, relying on generally one non-treating expert to rebut all of

9  Plaintiff's affidavits who they gave only cherry-picked excerpts from Plaintiff's affidavits, and

10  making the test accommodations administrative process not readily accessible to disabled

11  applicants. In addition, the Committee tried improperly to shift the burden to the Plaintiff to

12  prove the absence of an undue burden/fundamental alteration of the exam.

13                            **<u>COUNT FOUR</u>**

14    The Committee failed to provide a timely decision for the current October 2020 exam.

15  For the upcoming exam, they have *still* not reached a decision, despite the initial petition having

16  been filed in March 2020, and have said no decision will be made prior to August 21, 2020, past

17  an 8/13/2020 appeal deadline, for an exam which generally requires two to three months full

18  time preparation and thousands of dollars committed far in advance to meaningfully attempt, but

19  which Mr. Kohn could waste vast resources on without assurances of adequate testing

20  accommodations. This untimely delay makes it impossible for Mr. Kohn to have a final

21  administrative appeal completed and reviewed by a court before the exam.

22    In addition, as referenced above, the Committee has committed prejudicial procedural

23  defects by having an unduly short appeal deadline, not giving enough time to gather evidence

24  from medical expert on appeal, and relying on generally one non-treating expert to rebut all of

25  Plaintiff's affidavits, and not having an adequate Coronavirus response to protect

26  immunocompromised test-takers.

27                      **<u>COUNTS FIVE THROUGH SEVEN</u>**

28    Lastly, Defendants acted with "deliberate indifference" towards Mr. Kohn's disabilities

29  by failing to provide reasonable accommodations for each of the past three exams, constituting

one count each. 42 U.S.C. § 12131 et seq., as amended by the Americans with Disabilities Amendments Act (ADAA) in 2008, California Government Code §§ 11135 et seq. and 12944 et seq.

### CAUSES OF ACTION UNDER CALIFORNIA UNRUH ACT

California's Unruh Act, Cal. Civ. Code § 51(f)(f), states that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." A plaintiff is entitled to recover actual damages and an amount up to three times the actual damages for *each violation* of the Unruh Act, "but in no case less than $4,000…" for each and every offense (Cal. Civ. Code § 52(a); *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 667.).

Defendant has thus violated the Unruh Act once for each of the ADA violations listed above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered against Defendant and that the Court ORDER the following:

A.     Injunctive Relief

Plaintiff seeks both a preliminary injunction and permanent injunction ordering the Committee of Bar Examiners to grant Mr. Kohn's recent petition/appeal, or in the alternative, to issue a final decision on his requested accommodations for the upcoming October 2020 California Bar Exam by 8/3/2020, or the earliest possible date, and issue a detailed written explanation of their decision. In addition, Plaintiff requests that the Court order the Committee to respond to any appeal by three weeks before the exam, also with a detailed written explanation of their decision;

B.     Declaratory Judgment

Plaintiff seeks a declaratory judgment granting him all accommodations received for the February 2020 California Bar Exam, plus at least the following, for the upcoming October 2020 California Bar Exam, or the next scheduled exam if the Declaratory Judgment is issued after the October 2020 Exam:

(1) 150% extra time on the written sections of exam;

(2) A cap of no more testing time per day than non-disabled test takers;

(3) Ergonomic/physical equipment supplied in the exam room;

(4) Specialized disability proctors; and

(5) 30 minutes of break time per 90 minutes of testing.

C.      Compensatory Damages

Plaintiff seeks compensatory damages of no less than $425,000 as follows:

At least $389,000 in damages under the ADA for violations related to past and current bar exams. A plaintiff aggrieved by a violation of the ADA or the Rehabilitation Act may seek Title VI remedies. See 29 U.S.C. §794a(a)(2) and 42 U.S.C. §12133. Mr. Kohn seeks reimbursement for all costs of previous exams, including registration fees, tutoring fees, bar prep courses, travel costs, medical costs, lost employment opportunities, lost career development opportunities, lost wages, and reputation damages. Some of these direct expenses in connection to bar exam retakes that were likely necessitated by, as but-for causal factors of his failure to earlier pass the California Bar Examination, Defendant's unlawful and intentionally discriminatory or deliberately indifferent conduct, itemized as follows:

For the February 2019 Exam:

Mr. Kohn incurred direct expenses of at least $10,236.48, itemized as follows:

Varsity Tutors Prep Expenses: $7,800.00

State Bar of California Fee to Apply for February 2019 California Bar Exam: $677.00

Hotel Expenses (to Crowne Plaza SFO Airport) for February 2019 California Bar Exam: $1,066.03

Meal and Lyft/Uber Expenses for February 2019 California Bar Exam (Approximate): ~$628.45

Disability Accommodations Documentation/Shipping: ~$65.00

For the February 2020 Exam:

Mr. Kohn incurred direct expenses of at least $8,887.20, itemized as follows:

Private Tutoring: $5,724.28

Adaptibar Prep Software: $545.00

State Bar of California February 2020 Bar Exam Application Fee: $1,011.40

Hotel Expenses (to Crowne Plaza SFO Airport): $930.72

Supplies Purchased in 2020: $229.33

Meal and Lyft/Uber Expenses: $446.47

TOTAL out of pocket costs for Previous Exams: $38,231.85

Plus $250,000 in lost wages, $50,000 in reputational damage, and $50,000 lost opportunities.

Plus at least $32,000 for damages under California's Unruh Act, as Plaintiff seeks one count of damages ($4,000 per count x 8) for each of the following:

1. Failure of the Committee to provide a "detailed explanation" of denial of Plaintiff's February 2019 petition for accommodations;

2. Failure of the Committee to timely decide on accommodations prior to the February 2019 bar exam;

3. Failure of the Committee to timely decide on accommodations prior to the February 2020 bar exam;

4. Failure of the Committee to timely decide on accommodations prior to the October 2020 bar exam;

5. Failure of the Committee to provide reasonable accommodations for the July 2018 bar exam, by employing inadequately trained proctors for the disabled test takers;

6. Failure of the Committee to provide reasonable accommodations in the form of "stop-the-clock" breaks for the February 2020 exam.

D.      Reasonable attorney's fees and costs reasonably incurred, pursuant to 42 U.S.C. § 12205; and

E.      Any and all other and further relief to which Plaintiff may be entitled, including but not limited to punitive damages, costs, and pre- and post-judgment interest.

Dated: July 15, 2020

Respectfully Submitted,

_/s/ Matthew M. Selvagn_____

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*