MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com


*Attorney for Plaintiff*

BENJAMIN KOHN

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BENJAMIN KOHN | **)** | CASE NO. 20-4827 |
| *Plaintiff,* | **)** | |
| v. | **)** | |
| THE STATE BAR OF CALIFORNIA, | **)** | **NOTICE OF MOTION AND MOTION** |
| CALIFORNIA COMMITTEE OF BAR | **)** | **FOR PRELIMINARY INJUNCTION;** |
| EXAMINERS, and THEIR AGENTS IN | **)** | **MEMORANDUM OF POINTS AND** |
| THEIR OFFICIAL CAPACITY | **)** | **AUTHORITIES** |
| *Defendants.* | **)** | |
| | **)** | |
| | **)** | |

## <u>NOTICE OF MOTION FOR PRELIMINARY INJUNCTION</u>

PLEASE TAKE NOTICE THAT on July_____, 2020 at _____, before the Honorable Judge _____, Plaintiff BENJAMIN KOHN, by and through his attorney MATTHEW M. SELVAGN, shall appear in support of a preliminary injunction based on this motion, any documents attached, and any oral arguments made at said hearing.

## RELIEF REQUESTED

Mr. Kohn requests that the Court issue a preliminary injunction granting the disability accommodations requested in his testing accommodations petition and appeal submitted to the California Committee of Bar Examiners for the October 2020 California Bar Exam. Specifically, the most important five accommodations are:

(1) 150% extra time on the written sections of exam;

(2) A cap of no more testing time per day than non-disabled test takers;

(3) Ergonomic/physical equipment supplied in the exam room;

(4) Specialized disability proctors; and

(5) 30 minutes of break time per 90 minutes of testing.

Note: Mr. Kohn's petition to the Committee, attached as an Exhibit, lists all requested accommodations for the Fall 2020 exam.

In the alternative, Mr. Kohn requests that the Court issue a preliminary injunction estopping the Committee of Bar Examiners from delaying any further their decision on Mr. Kohn's testing accommodations petition for the upcoming October 2020 California Bar Exam, ordering them to decide by 8/3/2020, or at the earliest possible lawful date, and to give him a decision on administrative appeal no later than three weeks before the bar exam, all with a detailed written explanation of their findings.

## INTRODUCTION

Plaintiff/Movant is Benjamin Kohn, aged 26, from Mountain View, CA, a law school graduate of University of Iowa College of Law, and a person with severe mental, visual, and physical disabilities who seeks admission to the California Bar. His disabilities include a wide range of conditions numbering over 25 distinctly diagnosed issues (listed in Appendix A), the most disabling being severe autism, neurodevelopmental disorder of impaired processing speed/variable attention executive functioning, fine/gross motor delay, Myofascial Pain Syndrome, Gastroparesis, Pelvic Floor Dyssynergia, irritable bowel syndrome with chronic constipation, and Keratoconus.

Mr. Kohn was first diagnosed at age 5 at Stanford University Hospital with autism spectrum disorder and Asberger's syndrome, with additional diagnoses of various mental and physical ailments to follow throughout his life. His disability stems not only from his autism, a recognized disability under the ADA, but also from the complicated interaction of a voluminous list of disorders, illnesses, and conditions which effectively handicap him in undertaking any test requiring extended periods of sitting and concentration.

Mr. Kohn's autism and impaired processing speed necessitate extra time on any standardized test (Appendix B contains a full list of previous test accommodations granted to Mr. Kohn), and his gastroparesis and pelvic floor dyssynergia require frequent meal and restroom breaks, without which he might suffer a clogged esophagus or glas bloat. He also requires specialized ergonomic equipment for his motor skill and visual impairments.

Mr. Kohn is registered for the October 2020 California Bar Exam and filed his petition for testing accommodations in March 2020. The Committee has unreasonably and untimely delayed in deciding on his petition, with Amy Nunez the Admissions Director saying that they will not hear it until the last minute on 8/21/2020 (via letter 6/12/2020 and email to counsel on 8/14/2020), which materially prejudices Mr. Kohn by giving him almost no meaningful time to appeal or prepare before the exam. In addition, the date the Committee has set is actually after their published appeals deadline of 8/13/2020.

He now seeks relief in the form of an injunction granting him the testing accommodations he seeks, or in the alternative, an injunction preventing the Committee from delaying a decision on his petition any longer. The five main accommodations requested are entirely reasonable under the ADA and are supported by numerous affidavits from Mr. Kohn's medical experts (referenced herein with full affidavits attached). These accommodations are (1) 150% extra time on the written portion of the exam; (2) a cap of no more testing time per day than non-disabled test takers; (3) ergonomic/physical equipment supplied in the exam room (or paying for Mr. Kohn to transport and install his own equipment); (4) specialized disability proctors; and (5) 30 minutes of break time per 90 minutes of testing.

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to FRCP Rule 65, this Court has the power to issue a preliminary injunction binding the Defendants as an equitable remedy prior to trial, in order to prevent irreparable harm to the Plaintiff. To obtain a preliminary injunction, a plaintiff must show the following:

(1) That he is likely to succeed on the merits at trial,

(2) That he is likely to suffer irreparable harm in the absence of preliminary relief,

(3) That the balance of equities tips in his favor,

(4) That there is no undue hardship to the opposite party, and

(5) That an injunction is in the public interest.

The Ninth Circuit has held that courts may "balance" "the elements of the preliminary injunction test so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). The elements are not separate tests, but rather "opposite ends of a single 'continuum in which the required showings of harm varies inversely with the required showing of meritoriousness.'" *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 826 (9th Cir. 1997), *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).

The ADA states that the remedies and procedures set forth in section 505 of the Rehabilitation Act are the remedies available to any person alleging discrimination under the ADA. 42 U.S.C. § 12133. Section 505 of the Rehabilitation Act, in turn, states that a person who is being discriminated against is entitled to injunctive relief. 29 U.S.C. § 794a. Intentional discrimination or deliberate indifference is not required, being reserved only for actions under the ADA or Section 504 seeking damages, not injunctive relief. See *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Also see Cal. Gov. Code. § 11135 et. seq. And § 12944 et. seq.


## I. PLAINTIFF LIKELY TO SUCCEED ON THE MERITS

Mr. Kohn has two requests for relief in this injunction: the primary request is that he be granted all requested testing accommodations. His alternative request is that the Committee be ordered to stop delaying his petition hearing, and decide no later than 8/3/2020, or the earliest possible date allowed by law, and to give him a decision on administrative appeal no later than three weeks before the bar exam.

To succeed on the merits of his primary testing accommodations request under the Americans with Disabilities claim, Mr. Kohn must prove that he is (1) disabled, (2) that the Defendant is a covered entity under the ADA, (3) that Defendant has failed to provide "reasonable accommodations," within the definition of the ADA, which serve to "level the playing field" with non-disabled students such that Mr. Kohn can effectively demonstrate the skills purported to be tested on the exam , and (4) that there is no undue burden on the testing agency in administering such accommodations.

To succeed on the merits of his secondary request, Mr. Kohn must show that the Committee has violated the ADA by not issuing a "timely" decision, as required by the US Dept. of Justice 2014 ADA regulations. See D.O.J. guidelines at https://www.ada.gov/regs2014/testing_accommodations.html#_ftn6.

<u>Primary Request for Relief - Granting Requested Accommodations -</u>
<u>Likelihood of Success on the Merits</u>

1. Definition of "Disabled"

Mr. Kohn qualifies as "disabled" under the American's with Disabilities Act, because his conditions "significantly impair one or more major life activities," namely the life activities of working and pursuing one's chosen profession via a licensing exam. *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69 and 42 U.S.C. 12102(2) and 42 U.S.C. 423(d)(3).

"Significantly impaired" is defined as impairment that significantly restricts the ability to perform a major life activity as compared to an average, non-disabled person. 29 C.F.R. § 1630.2(j)(1)(ii). The bar examination implicates the "major life activity" of working and pursuing one's chosen profession, since if a candidate is not given a chance to compete fairly on what is essentially an employment test, he/she is precluded from potential employment in that field. *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69. "Working" is specifically listed as a "major life activity" in 28 C.F.R. § 35.108(c)(1).

Mr. Kohn's conditions indisputably qualify under this definition, as he has consistently been given testing accommodations throughout his life for the SAT, LSAT, MPRE, FINRA, the Iowa Bar Exam, and three previous California Bar Exams administered July 2018, February

2019, and February 2020. All of these testing agencies, including the California Committee of Bar Examiners itself, have already admitted that Mr. Kohn is "disabled" as defined by the ADA, so this is not at issue, however because the exact nature of Mr. Kohn's disabilities reflect on the reasonableness of his proposed accommodations, a full discussion is warranted.

Mr. Kohn's conditions "significantly impair" his testing abilities in the following most important ways, however see Appendix A for a full list of impairments:

Autism and neurological/attention disorders

Dr. Toren stated, "The highest level of executive functioning is required in writing an essay which include deficits greatly impact his ability to create and write an essay when only given standard time. He psychomotor processing speed also impacts his ability to complete written tasks. While answering multiple choice tests require visual scanning, sustained attention and psychomotor speed and memory recall, it does not require planning and organization, executive functioning particularly in planning and organization. In addition, the increased pressure of completing a thorough essay with a huge word count is greatly hampered by his poor psychomotor speed." (See Dr. Toren's report, p.16, attached)

In their 2014 neuropsychological evaluation report for the LSAT, Drs. Preston and Pinn opined: "Results of testing are consistent with a diagnosis of F84.00 Autism Spectrum Disorder… Mr. Kohn has variable attention. Impaired/fluctuating attention may influence performance on all measures administered. Given his Very Superior score on Vocabulary, it is likely his intellectual functioning falls between the High Average and Very Superior range. His scores on the WAIS-IV were negatively impacted by his slow processing speed. Mr. Kohn achieved significantly lower scores on timed tasks versus similar untimed tasks. He demonstrated impairments on measures requiring attention and speed. He did not make errors but processing speed was slow." Thus the disabilities of autism and impaired attention may be properly accommodated simply by giving extra time on the exam.

All three doctors have stated that Mr. Kohn will need more extra time on the essay portion of the exam versus the multiple choice sections of the exam. Dr. Toren stated "the testing results taken allow for tailored measurements of the effects of the neuropsychological impairments evaluated such as to calculate the amount of extra time that, for a particular testing

domain and set of other contextual factors, allow for his exams to measure the domains they are intended to as accurately as is possible without reflecting these adverse effects of autism. Based on the test results, this is not identical for all formats of examination, but is higher for written composition exam components than for multiple choice exam components." (See Dr. Toren's report, p.16, attached).

<u>Digestive System Conditions (gastroparesis, postoperative dysphagia, pelvic floor dyssynergia, and irritable bowel syndrome with chronic constipation)</u>

According to doctor John O. Clarke from Stanford Health Care, Mr. Kohn's digestive health physician, Mr. Kohn requires frequent small breaks throughout the day to both consume small amounts of food, and to take restroom breaks. Dr. Clarke classifies gastroparesis as a "physical disability" in which the stomach cannot empty itself in a normal fashion, thus preventing the patient from consuming more than a tiny amount of food at any given time, otherwise risking gas bloat. In addition, Dr. Clarke states that Mr. Kohn has postoperative dysphagia, after his Nissen Fundoplication surgery, which also necessitates small frequent meals. In Dr. Clarke's words: "it is possible for him to clog his esophagus, which produces severe pain and regurgitation urge that, once triggered, can last for hours, or even need an emergency medical response."

Mr. Kohn also has pelvic floor dyssynergia and irritable bowel syndrome with chronic constipation. He has had the irritable bowel syndrome diagnosis since his early adolescence, diagnosed by his then pediatrician. Dr. Clarke stated that these two conditions, each through a different pathology, both act in concert to make Mr. Kohn's bowel movements less frequent and less controllable, predictable, or plannable in timing, and to take far longer than is ordinary to complete. While the constipation does so by impaired motility generally throughout the entire digestive tract, the pelvic floor dyssynergia is essentially a neuromotor impairment that obstructs the defecation process and also creates very uncomfortable anismus sensations during and following bowel movements that makes it difficult to leave the toilet for some time after starting.

In effect, these digestive issues "significantly impair the major life function of working" since they prevent Mr. Kohn from taking a licensing exam without reasonable accommodations such as 30 minute breaks every 90 minutes of testing or large amounts of extra time.

<u>Visual Impairments (keratoconus, dry eye syndrome, uncorrectable astigmatism, floaters)</u>

Dr. Daniel Goodman is Mr. Kohn's eye specialist and has explained that Mr. Kohn's eye conditions should be considered additive for the purposes of disability accommodations. Dr. Goodman recommended 100% extra time just for the keratoconus, which is a disorder of the eye which results in progressive thinning of the cornea. This may result in blurry vision, double vision, nearsightedness, irregular astigmatism, and light sensitivity leading to poor quality-of-life. He further stated, "Visual impairments affect Mr. Kohn's reading speed, endurance during all day focused visual work, and ability to transmit written responses already mentally formulated." -- all descriptions of "significant impairment" relative to a non-disabled person.

Although the Committee's expert incredulously believes this is "corrected with appropriate glasses," Dr. Goodman flatly disagreed, and as the treating physician, his diagnosis should be deferred to, according to the ADA. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002). This in effect means that an additional 100% extra time on the essay section is reasonable just for Mr. Kohn's eye conditions, plus at least another 100% for autism, since the experts believe these are additive, and these conditions constitute a significant impairment of a major life function.

The above conditions illustrate that Mr. Kohn is "disabled" and "significantly impaired in a major life function." They also go to the reasonableness of his requested accommodations, however this point will be discussed in more detail in section 3 below.

2. The Defendant is a Covered Entity Under the ADA:

To state a Section 505 claim, a test taker must allege that: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Also see 28 C.F.R Part 35.

Title II of the ADA emphasizes program access, meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons. Americans with Disabilities Act of 1990, § 201, 42 U.S.C.A. § 12131. "Congress intended the 'undue

burden' standard in title II to be significantly higher than the 'readily achievable' standard in title III."  28 C.F.R. Pt. 35, App. B.

3. The Entity Failed to Provide Reasonable Accommodations:

Section 104.12 of the Code of Federal Regulations provides: "(a) A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program or activity."

The Supreme Court has approved a multi-step burden shifting analysis in determining what potential accommodations are reasonable and which rise to the level of an undue hardship. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002). Under that approach, a plaintiff must first show that the accommodation "seems reasonable on its face, i.e., ordinarily or in the run of cases." Id.

Mr. Kohn's requests are reasonable accommodations on their face, since they allow him to illustrate his intellectual abilities and mastery of the subject, by removing any impediments caused solely by his disabilities. Mr. Kohn relies on the affidavits of his experts to prove that his requests each act to level the playing field and are no more than are necessary to allow him to compete fairly on the bar exam. To wit:

According to Drs. Dresden, Pinn, Preston, and Toren ("the autism evaluators"), Mr. Kohn requires a number of testing accommodations for autism, including at least double time for multiple choice tests and at least 150% extra time (double time and a half) for essay tests, administered over proportionally more test days so that test time each day does not exceed a standard administration, the ability to type written responses, frequent extra breaks, and a distraction free testing environment, largely a private room although problems arising on the July 2018 exam would later expand this to the training and instructions provided to the proctor(s) to whom he is assigned.

They stated "Due to this neurodevelopmental disorder, Mr. Kohn processes information and responds at a significantly slower rate than would be expected given his level of Intellectual Functioning. In order to have an accurate assessment of what he has learned during his time in law school, he would need significantly more time to complete all parts of exams as compared to

relatively neurotypical examinees." They recommended 100% to 150% extra time, and Mr. Kohn's primary care physician Dr. Dresden wrote: "Mr. Kohn's request for 100% extra time on multiple choice sections and 150% extra time for written sections is reasonable."

Dr. Toren recommended the following for Mr. Kohn's autism:

- 100% extra time for autism on multiple choice exam portions if daily test time limited to standard length and extra time scheduled over proportionally more days, and 125% extra time if not so limited and scheduled; additive to any extra time recommended by other experts for visual and/or physical impairments.

- 150% extra time for autism on written composition exam portions if daily test time limited to standard length and extra time scheduled over proportionally more days, and 200% extra time if not so limited and scheduled; additive to any extra time recommended by other experts for visual and/or physical impairments.

- Frequent stop-the-clock breaks timed around Benjamin's determinations on when symptoms best justify it.

- Assignment to proctor who's received training on working with autistic individuals, has been instructed regarding all accommodations and how the modified exam should be administered, and who refrains from unnecessary conversation during test time.

- Access to computer to write essays.

- Private Room.

- Provision of all nonportable ergonomic equipment recommended by Benjamin's PCP, Dr. Dresden, as such is further supported by autism sensory sensitivity.

- Ability to Type Written Responses."

(6/4/2020 Neuropsychological Report and Affidavit of Dr. Toren, pp. 15-18).

Dr. Preston stated "Given his processing difficulties, Mr. Kohn will be able to respond more quickly to multiple choice responses as opposed to essay type responses." (12/5/2017 Affidavit from Dr. Preston, attached). Dr. Dresden stated that Mr. Kohn needed more time on essay responses than on multiple choice responses and quantified this to be 150% extra time for essay responses and 100% extra time for multiple choice responses first in his 1/26/2019 affidavit, then again in his Form E, then again in his 12/19/2019 affidavit, and most recently as

follows in his 3/13/2020 affidavit: "... [T]here was significant discrepancy between the timed and un-timed tests for those specific domains compared to other domains more associated with tasks done in multiple choice.  Taken together, I find that this justifies additional time on the writing section compared to the multiple choice section." (See 3/13/2020 Affidavit from Dr. Dresden, attached).  To date, Mr. Kohn has been approved for a uniform amount of extra time across multiple choice and written portions of the exam.

Dr. John O. Clarke of Stanford Health Care, regarding digestion related physical disabilites: "I previously recommended an accommodation of meal breaks of up to 30 minutes for every 90 minutes of testing time to address Mr. Kohn's medical need to distribute his eating over more frequent smaller meals more evenly spaced throughout the day to minimize idle digestion time based on his physical disability of gastroparesis."

"Postoperative dysphagia...in order to prevent excessive stomach acid damaging the esophagus, it modifies the esophagus in such a way as to make it more difficult to pass large or sticky pieces of food not adequately cut or chewed, or food that is not eaten at a slowed pace, into the stomach, and also increases gas-bloat symptoms from eating meals too fast or too large at a time and not also spaced out more frequently. If Mr. Kohn is not careful to eat in this way, it is possible for him to clog his esophagus, which produces severe pain and regurgitation urge that, once triggered, can last for hours, or even need an emergency medical response.

These two conditions, each through a different pathology, both act in concert to make Mr. Kohn's bowel movements less frequent and less controllable, predictable, or plannable in timing, and to take far longer than is ordinary to complete. While the constipation does so by impaired motility generally throughout the entire digestive tract, the pelvic floor dyssynergia is essentially a neuromotor impairment that obstructs the defecation process and also creates very uncomfortable anismus sensations during and following bowel movements that makes it difficult to leave the toilet for some time after starting.

In summary, for the four physical disability conditions of gastroparesis, postoperative dysphagia, irritable bowel syndrome with chronic constipation, and pelvic floor dyssynergia, I recommend the following updated/expanded accommodations: 1. Permission to bring, eat, and drink food and beverages in the exam room, and to remain in the exam room subject to proctor

supervision during any meal breaks (already approved). 2. A number of stop the clock breaks for meals during each exam day equal to the lower of the test time for that day divided by 90 minutes or four such breaks, instead of a singular hour long lunch break, that can be initiated any time Mr. Kohn chooses within the exam session."

Dr. Daniel Goodman, treating visual impairments: "Again, my recommendation of 100% extra time is intended to be additive to any extra time granted for any other disability. Visual impairments affect Mr. Kohn's reading speed, endurance during all day focused visual work, and ability to transmit written responses already mentally formulated. Neuroprocessing speed, executive functioning, and attention impairments affect primarily consideration of the material already read and composition tasks before transmission, which largely do not overlap in time with those visual functional limitations. As other experts have recommended that Mr. Kohn receive extra time for autism based on these other impairments, and for completely unrelated GI conditions, 100% extra time is too little extra time to accommodate the totality of Mr. Kohn's disabilities. Based on what the other experts have recommended for those disabilities, 100% extra time plus an additional 30 minutes per day is also inadequate, especially on the written sections of the exam that are not multiple choice.

Mr. Kohn's visual impairments may be partially alleviated, though not to a degree as to substitute for all of the extra time, by using a larger screen computer monitor instead of a laptop display. I'd recommend that he be given permission to use his ~31.5" external monitor with his laptop if he is allowed to test from home due to the pandemic, with arrangements to ensure the compatibility of any examination software with that monitor, and that such a monitor and compatible with his laptop and such compatible exam software be provided to him if he is required to test in-person at a test center."

Thus the accommodations requested are "reasonable" both in plain meaning of that word, and as a matter of law under the ADA, since the treating physicians' affidavits fully support such accommodations.

4. The Accommodations do Not Pose an Undue Hardship on Defendants

The burden then shifts to the defendant to demonstrate the accommodation would pose an undue hardship in the case at hand. Further with respect to the burden, "[t]he public entity has

the burden to prove that a proposed action would result in undue burden or fundamental alteration, and the decision 'must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a *written statement* of the reasons for reaching that conclusion.' The public entity must 'take any other action that would not result in such an alteration or such burden but would nevertheless ensure that, to the *maximum extent possible*, individuals with disabilities receive the benefits or services provided by the public entity.'" *K.M. v. Tustin Unified School Dist.*, 725 F.3d 1088, 1096-97 (9th Cir. 2013).

Here, the requested accommodations pose no undue hardship on the California Bar. In the absence of extreme cost, unreasonably vague/difficult to administer requests, or those wholly unsupported by medical testimony, the bar must defer to Mr. Kohn's experts and allow the accommodations. Not to mention the fact that the Bar has never issued a written explanation detailing the undue burdens with any level of persuasiveness.

For all of Mr. Kohn's time-based requests, there is de minimus cost, other than the small amount of time for a proctor to attend, and the additional time requested is clearly delineated and simple to administer.

Mr. Kohn's request for specialized disability proctors poses no burden since the Bar almost certainly has existing resources to find such proctors, who should not cost much more than an ordinary proctor. In addition, any additional cost is entirely justified given the disabilities at hand.

Lastly, Mr. Kohn's request for ergonomic and physical testing aids to be supplied in the exam room is akin to requesting a wheelchair ramp or handrail: these are necessary physical tools without which Mr. Kohn simply cannot sit in the exam room or see the exam. As a matter of law, the Committee cannot avoid installing such physical aids simply by stating "they cost too much." To reach the legal requirement of "undue burden," the Committee must show extreme and disproportionate cost which serves little to no benefit to the test taker. In this case, these physical aids are an absolute necessity to overcome disability, as shown above by expert testimony, and the cost to the Bar would be minimal in comparison to the benefit conferred.

## II. BALANCE OF EQUITIES IS IN PLAINTIFF'S FAVOR

A preliminary injunction requires the Court to weigh the fairness to both parties in light of the evidence, and decide which party might suffer greater consequences if the injunction is or is not granted. On the one hand, while Mr. Kohn can admit that the Bar does have an interest in maintaining the integrity of the exam and keeping administrative complexity to a minimum, the Plaintiff faces much more severe repercussions if this injunction is denied, since this is likely his last attempt at the bar exam due to medical and financial hardships beyond his control. Counsel thus urges the Court to issue this injunction to prevent irreparable harm to Mr. Kohn.

Because the bar is a licensing exam, Mr. Kohn's interest in taking it with reasonable disability accommodations is enormous, having spent hundreds of thousands of dollars and years of his life working towards the exam, whereas the Bar's interest in preventing those accommodations is minimal at best.

The balance of equities favors Mr. Kohn on the procedural issues also, since he has timely filed all documents and provided extensive medical reports to the Committee, only to be told time after time that they will delay review. He submitted his current petition on March 19, 2020, as recommended by the Committee, as it was more than 6 months prior to the exam, (per State Bar Rule 4.84(B)), then he supplemented his timely petition with additional expert opinions and data on June 4, 2020, that was responsive to claims first made by the Committee on 2/14/2020, but required over twenty hours of in-person psychological testing and so was not available during the shelter-in-places imposed for the covid pandemic.

On 5/21/2020, Plaintiff inquired about the status of his petition and was then told it would be considered at a Committee meeting on 6/19/2020, over three months from submission. Even using Defendant's own procedures, a preliminary decision on the petition would have been due before the next date documents were added which was on 6/4/2020, 77 days after the petition was filed.

The addendum submitted 6/4/2020 was a month and a half before Defendant's own deadline, such that the new submission should not have slowed the process. When Plaintiff submitted the new documents on 6/4/2020, because a decision was already overdue, only the new documents should still have needed review. The 15 days remaining to the 6/19/2020

Committee meeting is a greater amount of time than the 8/21/2020 Committee meeting is from Defendant's appeal submission deadline of 8/13/2020.

On 6/17/2020, Defendant admitted to Plaintiff that its Admissions Rule 4.90(D) required consideration "as soon as is practicable."

Nonetheless, Defendant asserted that it was "impracticable" not only to consider Plaintiff's administrative petition at the 6/19/2020 Committee meeting, but also the 7/15/2020 Committee meeting specially for testing accommodations petitions and appeals, and indeed any Committee meeting prior to 8/21/2020, with a decision letter to follow no earlier than the following week, which is approximately one week after the appeal deadline of 8/13/2020. This makes little sense, since the Committee is able to decide certain appeals in less than 15 days, which proves they are capable of reviewing something like an addendum in a similar time frame.

Also note that FINRA decided Mr. Kohn's case within 10 business days, the Iowa Bar within 3 business days, and the NCBE in less than three weeks, all using the substantially similar documentation Mr. Kohn provided to the California Bar. This also proves that it is not "impracticable" to decide disability cases quickly, and pushes the balance of equities in Mr. Kohn's favor.

This improperly denies Mr. Kohn the opportunity to administratively appeal any denials, and, if waited for, would prevent court review prior to the exam. It also prevents Mr. Kohn from being able to allocate sufficient resources for adequate exam preparation, something that is required of testing agency decision timeframes for ADA requests by the US DOJ 2014 ADA regulations.

Defendant has demanded "extensive documentation" for purposes of 29 C.F.R. § 1630.2(k)(2). The Committee has consistently rejected hundreds of pages of Plaintiff's medical affidavits, obtained at great cost and burden, while simultaneously stating that more evidence is needed. Such inconsistent behavior is inherently confusing, prejudicial, and against the spirit of the ADA.

In addition the Committee has acted with unclean hands and in bad faith related to the following:

- Unduly short 10 day appeal deadline, possibly motivated by a desire to deter appeals. Furthermore, the appeal deadline begins when the Committee posts the letter, which was usually at least 5 days before receipt, with appeal also expected by mail (this applies only prior to Feb 2020 exam before electronic appeals);

- No decision on whether the exam will be online or in person until the past the deadline to make testing accommodation requests;

- Reliance on generally one expert consultant even where Defendant knew or should have manifestly been aware their key premises were false from the file, to the extent of deliberate indifference;

- Defendant's long turnaround time for procedures are not necessitated by practicability, rather Defendants' lengthy delays serve only the convenience of their staff, and have the effect of chilling assertion of disability rights by test-takers;

- Possibly maliciously selecting cherry-picked documents to send to their expert consultant as the relevant file/record.

- No lawful plan relative to Coronavirus: immunocompromised patients should not be exposed to high risk testing environments, disabled test takers' medical providers are harder to reach, and evidence for testing accommodations is harder to obtain.

Lastly, the California Bar has already admitted Mr. Kohn is disabled in previous exams, but only seems to contend that his medical experts are not credible enough, or do not "prove" the accommodations are necessary to avoid discrimination. However, as stated above, as a matter of law, the Bar must accept Mr. Kohn's experts at face value, and in the light most favorable to him, since they are the treating physicians. *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1001 (N.D. Cal. 2011)

When weighing both sides, the Court should consider the medical evidence submitted by Mr. Kohn, the risk that this is his final bar exam due to circumstances beyond his control, as well as the relative simplicity of implementing the accommodations he has requested. Also consider that the Bar's undue delay, and setting their review date AFTER the appeals deadline as described above, may be a bad faith attempt to prevent appeals entirely, and their incredulous claim that earlier review was "impracticable" may be mere pretext.

### III. NO UNDUE HARDSHIP TO DEFENDANT

An injunction may be granted where there is no undue hardship to the non-moving party. As argued above, the ADA also contains a similar element, in that there should be no "undue burden" on the testing agency in administering accommodations, so much of the same logic as above also applies here.

The ADA outlines four factors to evaluate whether the hardship to the employer is undue: (1) the nature and cost of the requested accommodation; (2) the financial resources and size of the employer's facility that would implement the accommodation; (3) the employer's financial resources and size generally; and (4) the employer's type of operations and workforce. 42 U.S.C. §§ 12111-12117.

Title II of the ADA emphasizes program access, meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons. Americans with Disabilities Act of 1990, § 201, 42 U.S.C.A. § 12131. "Congress intended the 'undue burden' standard in title II to be significantly higher than the 'readily achievable' standard in title III." 28 C.F.R. Pt. 35, App. B.

All arguments made in the previous section regarding the balance of equities apply here as well. Mr. Kohn has repeatedly shown how the Bar is fully capable of hearing his petitions in a timely manner (like they do on certain appeals and just as other testing agencies do). Thus there is little convincing evidence that the bar bears any significant burden by hearing Mr. Kohn's case by 8/3/2020, after having had his file since March.

Here, the costs of the accommodations are fairly minimal, consisting mostly of extra proctor time considering the lengthened testing time requested. The Bar could also allow Mr. Kohn to store his own equipment overnight so that they do not have to pay for it to be transported or purchased. In addition, the Bar has far more resources relative to Mr. Kohn, and the total cost of accommodating him would be no more than the cost of accommodating almost ay disabled person. Lastly, the Bar is in the regular business of administering exams, and thus should easily have the expertise and resources to provide reasonable accommodations.

## IV. RISK OF IRREPARABLE HARM

Because the bar exam could be as early as October 9th, there may not be time for a full trial before that date. Thus the necessity of this injunction, which is the only method of preventing the irreparable harm of sending Mr. Kohn into the exam with inadequate and discriminatory accommodations. If his rightful accommodations are denied by the Committee, Mr. Kohn will likely fail the bar exam. He has failed three previous exams due to inadequate accommodations, so there is reason to think the risk posed for this exam is very real and not speculative.

Specifically, Mr. Kohn posits the following forms of irreparable harm:

1. Having exhausted all financial resources on previous exams, exacerbated by the Committee's previous denials of accommodations, the upcoming exam will most likely be Mr. Kohn's final attempt. He simply has no money left to pay for additional transportation, prep courses, tutoring, and hotels to take another exam in 2021;

2. Since Moral Character determination will need extension upon further delay of bar passage, this further diminishes the likelihood of Mr. Kohn attempting another California Bar Exam and the likely delay for a license even upon passage of a future bar exam;

3. As Mr. Kohn will likely need non-legal employment not conducive to preparing for future attempts at the bar exam in order to obtain existentially necessary health insurance in 2021, after his eligibility to remain on his present insurance likely expires, and given his extremely high medical care costs, he will need to find gainful employment with healthcare before any 2021 administrations of the bar exam. Thus he will be unable to effectively study while employed, precluding any meaningful further exams beyond the upcoming one.

Even if Mr. Kohn was able to take the following exam in February 2021, he would still suffer harms such as a 5 month further delay in legal employment, lost opportunities, and possible extra time/expense in renewing moral character determination which could cause a delay of up to one year.

4. Due to the inherently difficult and burdensome nature of the California Bar (only 26.8% pass rate in February 2020), and the high cost of preparing for it each time, Mr. Kohn will be irreparably harmed if he is not granted his requested accommodations for the upcoming exam.

Not only will he potentially lose the benefit of all his current preparations, but as stated above, he likely will not be able to take the exam again. Any further delay in knowing the particular accommodations he will be granted also irreparably harms Mr. Kohn since he cannot adequately prepare until he knows the test conditions (eg, methods of studying and deciding whether to devote money to prep courses/tutoring).

5. By placing their decision date after the appeals deadline, the Committee effectively deprives Mr. Kohn of an appeal of their decision. This causes irreparable harm by not allowing him any ability to respond to their decision with more medical affidavits or testimony.

Regarding his alternative request, if the Court also denies Mr. Kohn's injunction to force the Committee to consider his petition by 8/3/2020, he also risks not having enough time to appeal the decision to this Court prior to the exam. This brings about the same result as above, namely an effective denial of his rights under the ADA to reasonable testing accommodations, and thus he will fail the bar exam.

## V. INJUNCTION IS IN THE PUBLIC INTEREST

By supporting the rights of the disabled, this Court reinforces the public interest in equality and access for all people. Those born with genetic impairments deserve an equal playing field, such that they may enjoy the same opportunities as all people, without discrimination. Counsel therefore urges the Court to consider the public interest in upholding the Americans with Disabilities Act.

In addition, the State of California has declared that protection of disabled persons in the legal professional occupations is in the public interest, via California Business and Professions Code 6001.1: "Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

## VI. PLAINTIFF NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES

Because there is no statutorily-mandated exhaustion requirement for Mr. Kohn's claims, exhaustion is prudential. See *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). And even where "the three Puga factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement 'if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, exhaustion of administrative remedies is futile, inadequate, and not efficacious, because the Committee will fail to reach a decision in time for effective court review, thus sending Mr. Kohn into the bar exam with discriminatory accommodations, setting him up for failure.

## VII. DAMAGES NOT ADEQUATE

Damages, to the extent available, will not provide an adequate remedy, since by the time this Court hears a full trial, the October 2020 Bar Exam will have passed. As stated above, the Plaintiff will likely not have the resources for another exam, with exhaustion of previous resources having been directly caused by the Committee's failure to provide reasonable accommodations on three previous exams. Any unlawful barrier to Mr. Kohn's ability to pursue his chosen career, such as inadequate disability accommodations, cannot be cured simply with money damages, since Mr. Kohn might potentially be missing out on life experiences that are invaluable, intangible, and central to his enjoyment of life. Furthemore, any damages would be difficult to measure or calculate and would certainly vastly exceed any burden on Defendant to simply grant the requested relief.

## CONCLUSION

Mr. Kohn, as a disabled person, deserves the full protections of the Americans with Disabilities Act. This requires putting him on an equal playing field with non-disabled persons, granting the altogether reasonable testing accommodations he seeks, as fully supported by the medical evidence.

Specifically, Mr. Kohn requests an injunction granting the disputed disability accommodations listed in his pending petitions before the Committee of Bar Examiners (see Exhibits, attached).

In the alternative, Mr. Kohn requests that the Court issue a preliminary injunction estopping the Committee of Bar Examiners from delaying any further their decision on Mr. Kohn's testing accommodations petition for the upcoming October 2020 California Bar Exam, ordering them to decide by 8/3/2020, or at the earliest possible lawful date, and to give him a decision on administrative appeal no later than three weeks before the bar exam, all with a detailed written explanation of their findings.

These injunctions are warranted since Mr. Kohn is severely disabled, likely to succeed on the merits, and the balance of equities tips clearly in his favor. As detailed above, Mr. Kohn comes to this court in good faith, having submitted all documents to the Committee on time and supported with vast medical reports, requesting entirely reasonable accommodations for his many disabilities. He does this for the noble reason of pursuing his chosen profession and risks irreparable harm if denied.

Dated: July 16, 2020

Respectfully Submitted,

  _/s/ Matthew M. Selvagn_____

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*

# APPENDIX A - LIST OF DISABILITIES

      Mr. Kohn typically has 5-7+ medical appointments weekly, meeting regularly with at least 11 different doctors of various specialities to treat a growing list of disabilities, fully documented by his doctors and categorized by bodily system below (ICD-10 codes for reference are listed after each one):

Neuro-Psychiatric Disorders:

      Autism Spectrum Disorder (F84.0)

      Highly variable attention and neuroprocessing speed deficit (R62.50)

      Circadian Rhythm Sleep Disorder (Delayed Phase & Irregular Sleep/Wake Types) (G47.33)

Neuro-Muscular-Skeletal:

      Gross and Fine Motor Delay (F82)

      Myofascial Pain Syndrome (M79.18)

      Cervicalgia (M54.2)

      Occipital Neuralgia (M54.81)

      Scapular Dyskinesis (G25.89)

Allergy:

      Allergic Rhinitis (J30.9)

      Allergic Sinusitis (J32.9)

      Allergic Keratoconjunctivitis (H10.45)

      Food Allergies (Fish, Airborne & Severe Untreated; Nuts and Dairy) (Z91.013)

      Allergy Drug-Induced Immunodeficiency (D84.9)

Dermatological:

      Chronic Idiopathic Urticaria (L50.1)

      Eczema (L20.84)

      Chronic Folliculitis (L73.9)

Gastroenterological/Gastrointestinal:

      Gastroparesis (K31.84)

1. Postoperative Dysphagia (R13.10)
2. Irritable Bowel Syndrome with Chronic Constipation (K58.9)
3. Pelvic Floor Dyssynergia (M62.89)
4. Recurrent Anal Hemorrhoids (K64.8)
5. Recurrent Anal Fissures (K60.2)
6. History of Gastroesophageal Reflux Disease (K21.9)

Otolaryngology:

8. Chronic Oral Aphthae (K12.0)
9. History of Sleep Apnea (G47.20)
10. History of Sinonasal Polyposis (J33.9)

Ophthalmology:

12. Keratoconus (H18.603)
13. Irregular/Asymmetric Astigmatism of Both Eyes (H52.213)
14. Dry Eye Syndrome (Severe Meibomian Gland Dysfunction & Tear Film Insufficiency)
15. (H04.123)
16. Eye Floaters (H43.399)

# APPENDIX B - LIST OF PREVIOUSLY GRANTED DISABILITY ACCOMMODATIONS

Due to his conditions, Mr. Kohn has been granted the following accommodations in the past, which the Committee is required to consider for future accommodations on the California Bar Exam, per State Bar Rule 4.85:

Springer Elementary School - IEP

Crittenden Middle School - IEP, tutoring, extra time on exams and assignments

Blach Junior High School - IEP, tutoring, extra time on exams and assignments

Mountain View High School - IEP, HSIEP, tutoring, extra time on exams and Assignments.

LSAT - 50% extra time for a 3 hr 30 min multiple choice exam.

GMAT – Similar to LSAT.

San Jose State University - 100% extra time on exams, private room, plus note taking Assistance.

University of Iowa Law School - 100% extra time on exams plus a private room, this increasing to 150% extra time on essay exams his final semester (reflected in later petition).

MPRE - 50% extra time, private room, plus a 15-minute supervised break for a 2 hr exam

FINRA - 100% extra time plus a meal break every 90 minutes, private room, and the ergonomic equipment provided to him, including Herman Miller Embody desk chair.

California Bar Exam (July 2018) - See Exhibits

California Bar Exam (Feb 2019) - See Exhibits

California Bar Exam (Feb 2020) - See Exhibits