1  MATTHEW M. SELVAGN, sbn 314509

2  123 BOWERY, 3rd fl

3  NEW YORK, NY 10002

4  Tel. 904-540-0870

5  Email mattselvagn@gmail.com

6

7  *Attorney for Plaintiff*

8  BENJAMIN KOHN

9

10                    UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12

13  BENJAMIN KOHN                    )      CASE NO. 20-4827

14  *Plaintiff,*                     )

15  v.                               )

16  THE STATE BAR OF CALIFORNIA,     )      **RESPONSE TO DEFENDANT'S**

17  CALIFORNIA COMMITTEE OF BAR      )      **MOTION TO DISMISS**

18  EXAMINERS, and THEIR AGENTS IN   )      **PLAINTIFF'S COMPLAINT**

19  THEIR OFFICIAL CAPACITY          )

20  *Defendants.*                    )

21                                   )

22  _____  )

23

24       **<u>PLAINTIFF'S RESPONSE TO MOTION TO DISMISS</u>**

25

26                    **TABLE OF CONTENTS**

27

28  **I. LEGAL STANDARD**

29  **II. ARGUMENT**

1. Ripeness

    a) Claims are ripe since all decisions of CBE for past exams were final

    b) Appeals process for current exam futile under CA Rules of Court 9.13(d)

2. Rehabilitation Act - Defendant does receive and benefit from federal funds

3. 12(b)(6)

    a) Plaintiff has stated facts that constitute violations of ADA

    b) Plaintiff need not show intentional discrimination

    c) Timing violations are cognizable under DOJ regs

    d) State Bar not immune from money damages

4. Plaintiff has stated a claim under the Rehabilitation Act, since he has pled facts showing deliberate indifference and failure to grant reasonable testing accommodations, and the State Bar is an instrumentality of the State of California, which indisputably benefits from Federal funding.

5. The California Government Claims Act Does Not Cause Any of Plaintiff's Claims to Fail.

    a) The California Government Claims Act Does Not Apply to Federal Civil Rights Claims.

    b) Plaintiff has indisputably timely complied with the Government Claims Act to the extent it applies as to the February 2020 exam onwards, and substantially complied with it for the February 2019 exam by including a preservation of right to seek judicial relief for damages in the conclusion of his appeal for that exam.

    c) Even if the Court finds the Government Claims Act applies to the Unruh Act claims, if Plaintiff did not timely comply with the Government Claims Act for the July 2018 and/or February 2019 exam claims, such was the product of excusable neglect and so does not cause those claims to fail here.

    d) If the above facts must be pleaded in the complaint for the Unruh Act Claims, Plaintiff should be granted leave to amend, not dismissal.

III. CONCLUSION

# I. LEGAL STANDARD FOR MOTIONS TO DISMISS

In *Mcgary v. Portland* from 2004, holding for the plaintiff in an ADA case on a motion to dismiss, The Ninth Circuit stated that "The Supreme Court has cautioned that, in reviewing the sufficiency of the complaint, ' [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.' *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974))." … All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Id.* Dismissal of the complaint is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Id.*" *Mcgary v. Portland*, 386 F.3d 1259 (9th Cir. 2004).

Under FRCP Rule 8, the Complaint must only contain a "short and plain statement" showing that the plaintiff is entitled to relief. This is a low standard, meaning that to avoid dismissal, the plaintiff need only show some factual allegations that, if true, would be a cause of action under the law.

Here, the ADA and Rehabilitation Act clearly require government testing agencies to supply reasonable accommodations to disabled test takers, and Mr. Kohn has alleged facts that, if true, show the denial of reasonable accommodations. "Reasonable accommodations" are those that level the playing field for disabled examinees, such that they can demonstrate their aptitude on standardized tests and access those tests without heightened barriers or adverse health effects and with equal opportunity and equal accessibility, and which the testing entity has not proven to pose an "undue burden" on the testing agency or result in "fundamental alteration." Mr. Kohn's complaint and the facts alleged therein are discussed below in Section II. Argument.

# II. ARGUMENT

## 1. RIPENESS

Each of Plaintiff's claims are ripe, since for all three past exams, the Committee of Bar Examiners has rendered a final administrative decision. Even for the upcoming October exam, the complaint presently only alleges timing and procedural violations that have already occurred, and by Defendant's own statements to the Court a final administrative decision would have now been made on 8/21/2020, and will shortly be communicated to Plaintiff, at which time Plaintiff will likely seek to amend his complaint as appropriate as to any additional count(s) for the upcoming exam.

The Committee's argument that Mr. Kohn must first appeal at least the most recent decision to the California Supreme Court is erroneous, since under California Rules of Court Rule 9.13(d), the appeals process will take a minimum of 60 days, meaning no decision can be reached prior to the date of the bar exam, which is now approximately 42 days away.

California Rules of Court Rule 9.13(d) sets forth the appeal process for decisions of the California Bar. It says that the applicant to the bar may appeal any decision, in which case the Bar has 15 days to file a responsive brief. The petitioner then has 5 days to serve a Reply. If the Supreme Court decides to review the decision, it must grant an additional 45 days to the Bar to file a "supplemental brief" in response to the petitioner's Reply. Thus the fastest a decision could be reached would be 65 days and it would likely be much longer. The October 5-6th exam is only about 42 days away. If effective appeal of an administrative decision is impossible or futile, then the case is ripe for court review. See *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

A court may waive the usual requirement of exhaustion of administrative remedies "if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)), also see *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

Here, exhaustion of administrative remedies is futile, inadequate, not efficacious, and will result in irreparable injury, because if the Committee denied Mr. Kohn's requested accommodations, and the appeals process via the California Supreme Court is set by law at a minimum of 60 days, a final decision is thus put AFTER the October Bar Exam. This means that

effective review is denied, and any appeal to the Supreme Court is futile since it will not change the testing accommodations in time for the exam. Mr. Kohn will be relegated to only money damages, rather than his preferred relief of a declaratory judgment or injunction. Money damages will not help him pass a bar exam that has already happened.

Plaintiff's claims are ripe as to the February 2019 and February 2020 bar exams where the Committee denied some of his testing accommodations, he appealed, and then was again denied. These decisions are considered final by the Bar. Plaintiff's claims related to the upcoming exam are also now ripe to the extent they arise from the CBE's latest decision, since the CBE has now made a final decision that will be communicated shortly, will not hear appeals this exam cycle, and appeal to the Supreme Court is futile given the statutorily mandated appeals timeline.

Plaintiff's claims relative to the July 2018 exam are ripe because his claim centers around inadequate proctoring of the exam. This claim is not based on any decision of the California Bar, but rather a deliberate indifference towards disability accommodations in violation of the ADA.

## 2. THE STATE BAR IS SUBJECT TO REHABILITATION ACT SINCE THEY RECEIVE AND BENEFIT FROM FEDERAL FUNDS.

The Rehabilitation Act covers any entity that receives or benefits from federal funding. In *Bartlett v. New York State Board of Law Examiners*, the Court clarified this by stating that "regulations promulgated under the Rehabilitation Act define a 'recipient' as including 'any instrumentality of a state' to which Federal financial assistance is extended directly or *through another recipient.*" 45 C.F.R. § 84.3(f)."  (Emphasis Added); See Also *T.W. v New York State Board of Law Examiners*, Memorandum and Order, September 18, 2019, U.S. District Court E.D New York, Case 16-CV-3029 (J. Dearie).  In *Bartlett*, the Court held that the New York State Bar was subject to the Rehabilitation Act because it accepted vouchers from students who had received federal funding, but the Court's key holding stated that any instrumentality of the State that in any way benefitted from federal money would be covered by the Act.

In this case, the California Bar, just like the New York Bar, clearly benefits from federal funding in a variety of ways, because just as Defendant itself asserted where it suited its

sovereign immunity argument, it is "an arm of the State." (Defendant's Opposition to Motion for Preliminary Injunction, p. 12).  Indeed, it is an administrative subdivision of the State of California created entirely to administrate attorney admissions and governance on behalf of the Supreme Court of California, the entity accorded that inherent authority by the California Constitution.  Consequently, applying *Bartlett,* it does not matter if this Court credits the allegations of Defendant and its Chief Financial Officer, John Adams, on the issue of whether the State Bar of California *directly* receives Federal funds, because the relevant fact is not that, but whether "any instrumentality" of the State of California receives Federal funding.  Since it is such manifest common knowledge in the jurisdiction that the State of California as a whole receives and benefits from federal funding, such a fact is apt for judicial notice without Plaintiff presenting specific evidence of it, but for purposes of a motion to dismiss it is in any event enough that Plaintiff has alleged such facts.  The effect of that fact is that, contrary to Defendant's argument, Defendant is subject to the Rehabilitation Act.

### 3. PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER RULE 12(b)(6)

### A. PLAINTIFF HAS STATED FACTS THAT CONSTITUTE VIOLATIONS OF THE ADA

As stated above, the standard to avoid dismissal of a complaint is simply that the complaint alleges facts that, if true, show a cause of action. The Plaintiff should be given an opportunity to "prove his case" by developing evidence rather than by dismissal. Dismissal is seen as a harsh remedy that should be rarely used, and is reserved for legal defects that do not depend on the facts, not factual disputes such as Defendant's factual arguments that it could not be considered to have been deliberately indifferent in deciding Plaintiff's accommodations as Plaintiff alleges.

In *Mcgary*, the 9th circuit held for the Plaintiff in an ADA discrimination case on a motion to dismiss. "The threshold for pleading discrimination claims under the FHAA is low. In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), the Supreme Court held that the standard for pleading an employment discrimination claim is no higher than

the relaxed notice pleading standard of Federal Rule of Civil Procedure 8(a), *viz.*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 512, 122 S. Ct. 992. In *Swierkiewicz*, the Supreme Court clarified that a plaintiff need not establish a prima facie case of discrimination in the complaint, since the prima facie case is "an evidentiary standard, not a pleading requirement," and often requires discovery to fully adduce. 534 U.S. at 510-11, 122 S. Ct. 992. The Ninth Circuit has explicitly extended the Court's holding in *Swierkiewicz* to Fair Housing Act (FHA) claims. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061-62 (9th Cir. 2004); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) (applying Federal Rule of Civil Procedure 8(a)'s liberal pleading standard to FHA claims and noting that this standard "contains `a powerful presumption against rejecting pleadings for failure to state a claim'" (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985)))." *Mcgary v. Portland*, 386 F.3d 1259 (9th Cir. 2004).

Here, Plaintiff has stated facts in his complaint that show lack of reasonable accommodations granted by the State Bar. See Plaintiff's statements in the Complaint starting on Page 7, in which he cites numerous physicians' testimony stating that, for each of his various disabilities, they believed he would require particular accommodations in order to level the playing field with non-disabled test takers. Here are some excerpts from the Complaint:

"Autism and neurological/attention disorders"

8.   According to Dr. Toren, based on the most recent comprehensive neuropsychological evaluation that she reperformed this year, Mr. Kohn requires a number of testing accommodations for autism, including at least double time for multiple choice tests and at least 150% extra time (double time and a half) for essay tests, administered over proportionally more test days so that test time each day does not exceed a standard administration, the ability to type written responses, frequent extra breaks, and a distraction free testing environment, largely a private room although problems arising on the July 2018 exam would later expand this to the training and instructions provided to the proctor(s) to whom he is assigned.

...10.   They stated "Due to this neurodevelopmental disorder, Mr. Kohn processes information and responds at a significantly slower rate than would be expected given his level of Intellectual Functioning. In order to have an accurate assessment of what he has learned during

his time in law school, he would need significantly more time to complete all parts of exams as compared to relatively neurotypical examinees." Dr. Dresden further noted that Mr. Kohn scored in the 9th percentile on processing speed." Complaint Page 7. (In 2014 testing, with Dr. Toren measuring this to now be 0.2 percentile in 2020 testing).

..."[regarding his gastroparesis] 14.   In effect, these digestive issues "significantly impair the major life function of working," since they prevent Mr. Kohn from taking a licensing exam without reasonable accommodations such as 30 minute breaks every 90 minutes of testing and 150% extra time." Complaint Page 8.

..."Mr. Kohn acquired myofascial pain syndrome subsequent to the SAT.  He requires physical therapy three to five times per week along with regular chiropractic and osteopathic treatments to manage the symptoms sufficiently to avoid substantial loss of productivity and significant impairments of his quality of life...This condition can be further aggravated by high levels of stress or anxiety, and by spending long periods of time in a sitting posture, reading, or using a computer, especially without the ergonomic setup he uses for home, study, and work. The Bar Exam requires suspension of ordinary treatment due to the need to take the exam at a substantial distance from his established providers, without any long periods of uninterrupted time during business hours, over several consecutive days, and then places him in conditions that inevitably will maximize the exacerbation of his disability....The increase in these symptoms from the sitting and computer-use postures can be partially ameliorated by using an ergonomic setup, including those components I've described previously and an adjustable height sit-or-stand desk like the Iowa Bar provided.'" Complaint Page 9.

Mr. Kohn also stated in his complaint that the bar provided inadequate proctors for his July 2018 exam, resulting in a distracting environment. And he has pled facts indicating that the bar has, for each exam, delaying deciding in such a way as to make it difficult to prepare. In Count Two, he alleged:

"The United States Department of Justice ("DOJ") has opined as follows: "Testing entities should ensure that their process for reviewing and approving testing accommodations responds in time for applicants to register and prepare for the test... Testing entities must offer examinations to individuals with disabilities in as timely a manner as offered

to others and should not impose earlier registration deadlines on those seeking testing

accommodations...  In addition, the process should provide applicants with a reasonable

opportunity to respond to any requests for additional information from the testing entity, and still

be able to take the test in the same testing cycle.  <u>Failure by a testing entity to act in a timely</u>

<u>manner, coupled with seeking unnecessary documentation, could result in such an extended</u>

<u>delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting</u>

<u>for persons with disabilities.</u>'" Complaint Page 19.

Under the Auer Doctrine, the Supreme Court has held that when a genuine ambiguity

exists in a statute, a Court must defer to agency regulations, which might otherwise not be

considering binding law, when interpreting the statute, and that the agency which promulgated

those regulations also must be given substantial deference in the interpretation of those

regulations. Here, the DOJ's regulations and its "non-binding" guidelines interpreting them

should be adopted by the Court as they deserve deference when interpreting the ADA regarding

what should be considered a timely and procedurally fair decision making process by the testing

agency, since the statute itself leaves room for interpretation on this subject. Thus, Mr. Kohn has

stated facts that, if true, could be a violation of DOJ regulations, which should be considered

valid law as an interpretation of the ADA.


**B. PLAINTIFF NEED NOT SHOW INTENTIONAL DISCRIMINATION**

Addressing Defendant's assertion that Mr. Kohn must plead facts showing "intentional

discrimination," Plaintiff points to *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).  In

that case, the 9th Circuit states: "A public entity can be liable for damages under section of

Rehabilitation Act requiring that disabled individuals not be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity

receiving federal funds if it intentionally <u>or with deliberate indifference</u> fails to provide

meaningful access <u>or</u> reasonable accommodation to disabled persons. Rehabilitation Act of 1973,

§ 504, 29 U.S.C.A. § 794."  *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008). (Emphasis

Added).

Thus, Plaintiff needs only plead facts indicating "deliberate indifference."  Defendant argues at length in its motion to dismiss that the process it alleges it used to reach a decision in each iteration of Plaintiff's administrative cases would, as a matter of law, foreclose any element of deliberate indifference, and that this entitles Defendant to dismissal of all counts.  These arguments fail both because Defendant impermissibly relies on factual claims it makes through a motion to dismiss about its testing accommodations process, and because many of the counts pleaded by Plaintiff constitute deliberate indifference under the correct legal construction even crediting Defendant on its factual allegations about the process Plaintiff was given.  (Defendant's motion to dismiss, pp. 14-16).

Moreover, Plaintiff disputes several of the allegations in Defendant's motion to dismiss about the process used.  Plaintiff particularly contests that the Committee made a "reasoned" decision in each case (see Complaint Counts One Through Three, pp. 18-20) and that Defendant ever sought expert consultant opinions from qualified experts on all disability types and requests before rejecting those of Plaintiff's experts rather than a limited subset of those issues (see administrative decision letters in Exhibits for preliminary injunction motion), that it had received any expert consultant guidance for the February 2019 exam (see Exhibits filed for motion for preliminary injunction, where decision letters dated 11/1/2017 and 12/17/2019 disclose expert opinions that had been sought, but no such expert input is referenced in either the initial decision or the appeal for the February 2019 exam), and that even where it obtained expert review its experts did enough to put the relevant facts from Plaintiff's experts into a genuine controversy (Exhibits).  These contentions raise factual issues where for purposes of Defendant's motion to dismiss, all factual disputes must be resolved in favor of the Plaintiff and to prevail Defendant must be held to win under Plaintiff's version of the facts as a matter of law.

Here, a factfinder could conclude that the Committee's actions in delaying a decision for at least the upcoming exam was due to "deliberate indifference" to Mr. Kohn's disabilities, or at least that inferences that such might plausibly be established after discovery could conceivably be drawn. Other highlights from Defendant's numerous counts of manifesting deliberate indifference duly pleaded in the complaint includes:

1.  Onboarding disability test center proctors the day before the July 2018 exam, as alleged to Plaintiff by State Bar staff in the break room upset over the proctors' mistakes causing difficulties with administering the break protocol, and failing to adequately train them or enter into clear employment agreements before the exam and then arguing about this during the test, was such a grossly negligent administration of accommodated high stakes testing for examinees with disabilities that it manifested deliberate indifference.  (See Complaint p. 15, lines 20-27).

2.  Initially failing to provide any explanations for denying most of Plaintiff's disability accommodation requests for the February 2019 exam other than "[T]he documentation that you and your specialists have provided does not adequately support those requests," and responding to the inadequacy of this explanation on appeal only by demurring any duty to provide a detailed explanation of each denial and addressing only a couple denied requests, and then largely asserting for one minor request (equal access to hotel group rates) a procedurally defective and substantively meritless fundamental alteration claim.  (See Complaint, pp. 16, 18-19).  Not only does this belie Defendant's claim that a reasoned decision making process occurred and leave it unlikely any experts were consulted (as its clear excerpts would have been provided had they been), but it also manifested deliberate indifference to Plaintiff's right to appeal the decision meaningfully and with the ability to respond to and correct the factual and legal errors made. This forced him to wait until the next exam cycles to attempt to cure any issues the Committee felt warranted the denials and that he likely could have cleared up earlier and passed on a sooner exam cycle had Defendant not so thwarted such with deliberate indifference (See Exhibits for Preliminary Injunction Motion).

3.  For the February 2020 exam, the plausible act of sending an incomplete file with cherry-picked documents to an expert consultant presented as the full file, and regardless, acting with deliberate indifference in its lack of scrutiny and complete reliance for both psychological and physical and visual disability claims on an opinion of a single non-treating psychological disabilities expert whose opinion not only grossly misstated the medical evidence and the basic background facts, but also offered sparse analysis and instead critiqued perceived defects in Plaintiff's experts only.  (See Complaint, pp. 16-17, 20).  Where even a cursory review of the file would have dispelled this expert's premises and where the expert was so clearly unqualified to

reject every disputed request and did not even purport to be or address all of them, rejecting the overwhelming medical evidence offered by Plaintiff and instead relying so completely on such a defective basis was an act of deliberate indifference, especially as the Committee did not provide its own actual reasons for denying the disputed accommodations until after appeal, when it was too late to address them before the exam, initially only offering excerpts of this single expert's opinion as explanation for the denials.  (See Complaint, pp. 16-17, 20-21; See Also Exhibits for Preliminary Injunction Motion).

4.  Defendant's general practice of setting moving targets as to what information Plaintiff needed to provide to "prove" he needs the disputed accommodations, especially when it took most or all of the time between examination administrations to provide any feedback on what its issues are and forced Applicant to wait for the next exam cycle to try again for a decision that remedies the latest concerns communicated, a process that has discriminatorily required Plaintiff to put his career on hold for years and unnecessarily repeatedly incur massive expenses to prepare for and attempt the exam each iteration.  (See Complaint, pp. 12-21; See Also Preliminary Injunction Motion Exhibits).

5.  All of the "systemic" and "procedural" issues described in the Complaint were set to be so protectionist of test agency administrative burdens and so unduly burdensome to disabled applicants and chilling to the proper exercise of disability law rights as to themselves constitute deliberate indifference for both past and current exams.  (See Complaint, pp. 10-21; See Also Preliminary Injunction Motion Exhibits).

## C.  TIMING ALLEGATIONS ARE COGNIZABLE ADA VIOLATIONS UNDER DOJ REGULATIONS AND GUIDELINES THAT INTERPRET THEM

The United States Department of Justice ("DOJ") has opined as follows:

"Testing entities should ensure that their process for reviewing and approving testing accommodations responds in time for applicants to register and prepare for the test... Testing entities must offer examinations to individuals with disabilities in as timely a manner as offered to others and should not impose earlier registration deadlines on those seeking testing accommodations... Failure by a testing entity to act in a timely manner, coupled with seeking

1  unnecessary documentation, could result in such an extended delay that it constitutes a denial of

2  equal opportunity or equal treatment in an examination setting for persons with disabilities."

3  (See https://ada.gov/regs2014/testing_accommodations.html).

4          Under the *Auer* Doctrine, the Supreme Court has held that when a genuine ambiguity

5  exists in a statute, a Court must defer to agency regulations, which might otherwise not be

6  considering binding law, when interpreting the statute.  Further, guidelines from an

7  administrative agency are given substantial deference for interpreting the agency's own

8  regulations.  Here, the DOJ's regulations and its guidelines interpreting them deserve deference

9  when interpreting the ADA regarding what should be considered a timely and procedurally fair

10  decision making process by the testing agency, since the statute itself leaves room for

11  interpretation on this subject. Thus the allegations that the Bar violated the ADA with an

12  inherently delayed process where little written explanation was given for denials is a cognizable

13  claim under the law.

14

15      **D. THE STATE BAR DOES NOT HAVE SOVEREIGN IMMUNITY FROM ADA**

16                                    **CLAIMS**

17          As a threshold matter, the Defendant has conceded in their Opposition to Plaintiff's

18  motion for preliminary injunction that the Plaintiff "may...attempt to proceed on claims for

19  injunctive relief," which is among the relief sought in this Complaint, along with declaratory

20  relief.  And yet, they now posit that the Court must dismiss this action in its entirety.  With this

21  discrepancy, Defendant has undermined their entire argument that sovereign immunity somehow

22  warrants such a complete dismissal of the Complaint.

23          The US Supreme Court has unequivocally held in at least two recent cases that Title II of

24  the ADA abrogates sovereign immunity. See *United States v. Georgia*, 546 US 151 (11th Cir.

25  2006) and *Tennessee v. Lane*, 541 US 509 (6th Cir. 2004). Further, in *Ass'n for Disabled*

26  *Americans v. Fla. Intern. Univ.*, 405 F. 3d 954 (11th Cir. 2005), the Court held that the state is

27  subject to the ADA in educational cases. Lastly and most on point, in *Bartlett v. New York State*

28  *Bd. of Law Examiners*, 156 F.3d 321 (2nd Cir. 1998), the 2nd Circuit found in favor of a visually

29  disabled applicant to the bar, and awarded compensatory damages under the ADA, clearly

erasing the defense that bar examiners can claim sovereign immunity in such cases.  Those

holdings were reaffirmed and expanded even more on point in *T.W. v New York State Board of*

*Law Examiners*, Memorandum and Order, September 18, 2019, U.S. District Court E.D New

York, Case 16-CV-3029 (J. Dearie).

In *US v. Georgia*, the Court considered "whether a disabled inmate in a state prison may

sue the State for money damages under Title II of the Americans with Disabilities Act of 1990

(ADA or Act), 104 Stat. 337, as amended, 42 U.S.C. § 12131 *et seq.* (2000 ed. and Supp. II)."

Justice Scalia, writing for the Court, stated, "In enacting the ADA, Congress "invoke[d] the

sweep of congressional authority, including the power to enforce the fourteenth amendment . . .

." 42 U.S.C. § 12101(b)(4). Moreover, the Act provides that "[a] State shall not be immune under

the eleventh amendment to the Constitution of the United States from an action in [a] Federal or

State court of competent jurisdiction for a violation of this chapter." § 12202. We have accepted

this latter statement as an unequivocal expression of Congress's intent to abrogate state sovereign

immunity. See *Board of Trustees of Univ. of Ala.* v. *Garrett,* 531 U.S. 356, 363-364 (2001)."

Next, in Tennessee v. Lane, considering a disabled person's access to a courthouse, the

Court stated that "Title II, §§ 12131-12134, prohibits any public entity from discriminating

against 'qualified' persons with disabilities in the provision or operation of public services,

programs, or activities. The Act defines the term "public entity" to include state and local

governments, as well as their agencies and instrumentalities. § 12131(1)." Clearly the California

State Bar is a "public entity" since it is an agent or instrumentality of state government.

Further the Court pointed out that "The Act specifically provides: 'A State shall not be

immune under the eleventh amendment to the Constitution of the United States from an action in

Federal or State court of competent jurisdiction for a violation of this chapter.' 42 U. S. C. §

12202. As in *Garrett,* see 531 U. S., at 363-364, no party disputes the adequacy of that

expression of Congress' intent to abrogate the States' Eleventh Amendment immunity. The

question, then, is whether Congress had the power to give effect to its intent.'" The Court then

elaborates that under the enabling clause of the 14th Amendment, Congress has authority to

abrogate state sovereign immunity for Constitutional violations involving due process or

fundamental rights, both of which are implicated in the instant case.

In *Ass'n for Disabled Americans v. Fla. Intern. Univ.*, 405 F. 3d 954 (11th Cir. 2005) the 11th Circuit addressed whether access to education constitutes a fundamental right. The Court stated "We now turn to the question of whether Title II of the ADA, as applied to access to public education, constitutes a valid exercise of Congress's enforcement power under Section 5 of the Fourteenth Amendment… We conclude that it does… the "unequal treatment of disabled persons in the administration of" education has a "long history, and has persisted despite several legislative efforts to remedy the problem of disability discrimination…. In light of the long history of state discrimination against students with disabilities, Congress reasonably concluded that there was a substantial risk for future discrimination. Title II's prophylactic remedy acts to detect and prevent discrimination against disabled examinees that could otherwise go undiscovered and unremedied. By prohibiting insubstantial reasons for denying accommodation to the disabled, Title II prevents invidious discrimination and unconstitutional treatment in the actions of state officials exercising discretionary powers over disabled students."

Lastly in *Bartlett v. New York State board of Bar Examiners*, the Court held that state bar examiners are liable for compensatory damages if they fail to grant reasonable accommodations under the ADA to disabled test takers.

Specifically the Court in *Bartlett* stated "We find no error in the conclusion of the district court that she is entitled to compensatory damages. A plaintiff aggrieved by a violation of the ADA or the Rehabilitation Act may seek Title VI remedies.  See 29 U.S.C. § 794a(a)(2);  see also 42 U.S.C. §  12133 (ADA, looking to remedies provided under the Rehabilitation Act); *Bartlett*, 970 F.Supp. at 1147 n. 39. The law is well settled that intentional violations of Title VI, and thus the ADA and the Rehabilitation Act, can call for an award of money damages.  See *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (in the context of Title IX cases, compensatory damages are available for an intentional violation); *Pandazides v. Virginia Bd. of Education*, 13 F.3d 823, 830 (4th Cir.1994) (because of the similarity between Title IX and §  504 of the Rehabilitation Act, compensatory damages are available for intentional discrimination); *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 789 (6th Cir.1996) ("Every circuit that has reached the issue after Franklin has held that compensatory damages are available under [the ADA and Rehabilitation Act]."). The Court went

on to award compensatory damages to the applicant for the state bar's failure to grant reasonable accommodations.

Clearly Mr. Kohn is a disabled individual and thus protected from discrimination by the state bar based on his disability, and is entitled to compensatory damages related to inadequate testing accommodations on the bar exam. Precedent is well settled in this area.

## PLAINTIFF'S COMPLAINT CLEARLY ALLEGES FACTS WHICH SUPPORT CLAIMS UNDER THE ADA, REHABILITATION ACT, AND UNRUH ACT

## 4. PLAINTIFF HAS STATED A CLAIM UNDER THE REHABILITATION ACT, SINCE HE HAS PLED FACTS SHOWING DELIBERATE INDIFFERENCE AND FAILURE TO GRANT REASONABLE TESTING ACCOMMODATIONS, AND THE STATE BAR IS AN INSTRUMENTALITY OF THE STATE OF CALIFORNIA, WHICH INDISPUTABLY BENEFITS FROM FEDERAL FUNDING.

As stated above in 2), Defendant is an instrumentality of the State of California, which as a whole receives and benefits from Federal funding even if the State Bar itself does not directly receive funding from the Federal government. As a matter of law, this is enough to make the Bar subject to the Rehabilitation Act and the ADA.

The reasonableness of the requested accommodations and the propriety of the denials thereof is a complicated factual issue, and Defendant's disagreements with Plaintiff's position on the same is not a proper basis for a motion to dismiss, where the facts pled by Plaintiff must be presumed as true. Nonetheless, Plaintiff will briefly respond to some of the aspersions of this nature made throughout Defendant's motion. As Mr. Kohn has already submitted hundreds of pages of evidence and medical affidavits, this section of his opposition will be kept brief, and anything not mentioned here is not deemed admitted or waived, as the evidence is already filed with the Court.

The Committee's argument essentially is that Mr. Kohn has not met his burden of proof of illustrating that he will likely win on the merits of his case regarding (1) the reasonableness of his accommodations, and (2) that some of his requested accommodations will make the exam too

difficult for them to administer (ie, will constitute a "fundamental alteration" of the exam). First, Mr. Kohn's requested additional accommodations are reasonable, since they are supported by extensive and well documented medical evidence, and second, the administration of these accommodations will not constitute a fundamental alteration of the exam or impose an undue burden on the CBE.

Plaintiff urges the Court to review the medical evidence thoroughly in order to see that he is likely to prevail on the merits of his ADA claim, namely, that his requested accommodations are reasonable. All of his experts have fully documented their reasons for why 150% extra time, meal breaks, and ergonomic equipment are necessary and appropriate to "level the playing field" in such a way that allows Mr. Kohn to demonstrate his aptitude. Take particulate note that the Defendant misstates many facts on record, which upon careful reading of the evidence, becomes clear. The CBE's expert by contrast has not personally treated Mr. Kohn, misstates the medical evidence, and is incredibly biased in favor of the bar. Their expert's opinion constantly misquotes the medical record and seems to make numerous basic errors in their understanding of the facts. Also see pages 27-35 of the Plaintiff's 8/4/2020 affidavit.

Replying to the CBE's argument that Mr. Kohn was given similar accommodations on exams other than the California Bar Exam, Mr. Kohn states the following:

1. Dr. Goodman's affidavit from July 10, 2020 states that even though Mr. Kohn passed the Iowa Bar Exam with lesser accommodations than he is currently requesting, he did so *despite* the failure of the Iowa Bar Examiners to grant proper accommodations. In other words, he was not granted a level playing field, but he managed to perform far enough above average that he passed. This is no reason to continue denying him the proper accommodations. In fact, Mr. Kohn believes that he was always denied proper accommodations going all the way back to high school, but at that time he did not have the medical evidence or personal expertise to argue for more.

2. Referencing *Enyart v. National Conference of Bar Examiners* from the 9th Circuit, "Enyart avers that hers is a progressive condition, so there is no reason to believe an accommodation that may or may not have been sufficient during Enyart's undergraduate coursework would be sufficient." This precedent aptly summarizes why Mr. Kohn is seeking

greater accommodations now than he was granted in the past. His conditions are progressively

worsening, as documented by Drs. Toren and Dreseden in their 8/4/2020 affidavits. Please see

the Plaintiff's 8/4/2020 Affidavit, pages 13-25, for a detailed discussion regarding his worsening

conditions and how they have affected each of his previous exams.

3. Again quoting Enyart: "None of those [previous] examinations compare to the bar

exam, which is a multi-day, eight hour per day examination. Hence, an accommodation that

might be sufficient for a law school examination is not necessarily sufficient for the bar exam."

The Court in Enyart understood that accommodations that may have been legally sufficient for

one exam, might not be enough for a more complicated and longer exam.

4. Quoting *Tustin*: "The public entity has the burden to prove that a proposed action

would result in undue burden or fundamental alteration, and the decision 'must be made by the

head of the public entity or his or her designee after considering all resources available for use in

the funding and operation of the service, program, or activity and must be accompanied by a

written statement of the reasons for reaching that conclusion.' The public entity must 'take any

other action that would not result in such an alteration or such burden but would nevertheless

ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or

services provided by the public entity.'" *K.M. v. Tustin Unified School Dist.*, 725 F.3d 1088,

1096-97 (9th Cir. 2013).

Regarding the time for appeal, the addendum submissions on 6/4/2020, then 7/16/2020,

then 8/5/2020, and finally 8/10/2020 do not excuse the CBE's original delay.  All of the

addendums subsequent to 6/4/2020 came after the State Bar had taken the position that none of

Plaintiff's submissions could be considered before 8/21/2020, whether at the 6/19/2020 meeting,

the 7/15/2020 meeting, or any other meeting it could have chosen to special set, even under the

Admissions Rule 4.90(D) duty it admitted it had to do so "as soon as is practicable."

Had the Committee made its preliminary decision for this exam cycle sooner than

Plaintiff could access his experts for the other documentation, and the matters those experts

address still been at issue thereafter, he would have been content to wait until appeal for those

experts' added documents to be considered, and this would have been beneficial because he'd

have had more feedback from the Committee to give those experts and to have Drs. Toren and Dresden respond again regarding.

Lastly, regarding some of Plaintiff's timing claims, let it be noted that the CBE claimed in many emails to the Plaintiff that the reason for their delay in deciding was due to insufficient administrative staff, but now for the first time in their Response they claim it was due to CoVid (which they never brought up before). This seems suspicious at best. See 6/17/2020 email from CBE to Plaintiff.

## 5.  THE CALIFORNIA GOVERNMENT CLAIMS ACT DOES NOT CAUSE ANY OF PLAINTIFF'S CLAIMS TO FAIL

## A) THE CALIFORNIA GOVERNMENT CLAIMS ACT  DOES NOT APPLY TO FEDERAL CIVIL RIGHTS CLAIMS

In *Williams v. Horvath*, 16 Cal. 3d 386, the California Supreme Court summarized the view of the 9th Circuit regarding California Tort Claims Act, which attempted to require a 100 day notice provision as a condition precedent to suing the state for federal causes of action. Quoting *Smith v. Cremins* (9th Cir. 1962) 308 F.2d 187:

"In California statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are more than procedural requirements. They are elements of the plaintiff's cause of action and conditions precedent to the maintenance of the action… California may not impair federally created rights or impose conditions upon them."

Quoting another Ninth Circuit case, *Donovan v. Reinbold* (9th Cir. 1970) 433 F.2d 738 "As Mr. Justice Harlan observed concurring in *Monroe v. Pape* (1961) 365 U.S. 167, 196 ..., 'a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.' "Congress has not evinced any intention to defer to the states the definition of the federal right created in [section 1983 of the Civil Rights Act], or to adopt the states' remedies or procedures for the vindication of that right. It has never indicated an intent to engraft onto the federal right state concepts of

1    sovereign immunity or of state susceptibility to suit, which are the concepts that are the roots of
2    the California Tort Claims Act." Id from *Williams v. Horvath*.

3          "...the filing of a claim for damages 'is more than a procedural requirement, it is a
4    condition precedent to plaintiff's maintaining an action against defendants, in short, an integral
5    part of plaintiff's cause of action.' And while it may be constitutionally permissible for the
6    Legislature to place this substantive impediment in the path of a state cause of action, it is clear
7    that the supremacy clause will not permit a like abrogation of the perquisites of a federal civil
8    rights litigant." Id from *Williams v. Horvath* quoting *Illerbrun v. Conrad* (1963) 216 Cal. App. 2d
9    521, 524.

10          In short, there are a variety of cases settling the issue of whether federal civil rights
11    claims, and by extension the ADA since it is a civil rights statute, are subject to the California
12    Government Claims Act. To require a plaintiff to file such a notice of claim is effectively
13    restricting a federal cause of action and altering the elements of the plaintiff's case, in violation
14    of the Supremacy Clause.

15

16          **B) PLAINTIFF HAS COMPLIED WITH THE GOVERNMENT CLAIMS ACT**

17          Plaintiff has complied with the California Government Claims Act, even though not
18    required to for his federal causes of action, and although there is ambiguity about whether he is
19    required to do so for his state law Unruh Act civil rights claims. For the February 2020 exam, he
20    was denied his appeal on 2/14/2020, and filed a Notice of Claim on 8/14/2020 (6 months after
21    the decision). For the upcoming October exam Plaintiff has already filed his notice of claim, also
22    on 8/14/2020. These notices were served by email on Executive Director Donna Hershkowitz
23    and General Counsel Kenneth Holloway and strictly complied with all statutory requirements of
24    the Claims Act. The email has been filed as an Exhibit.

25          For the February 2019 exam, Plaintiff notified the bar of his claim via his appeal,
26    received by the Bar on Jan 7, 2019 (the Bar had denied his accommodations on Dec 28, 2018).
27    The notice is quoted here:

28          "If Applicant's administrative remedies are exhausted without approval of all
29    accommodations requested in the 2018 petition, [Applicant reserves right to appeal] ... and

designate the appropriate procedures for challenging the decision of both examinations' rulings for what accommodations must be provided on any future exams in <u>California State Bar Court and/or United States District Court and for claiming recovery for any damages</u> not having the accommodations on the next attempt of the California Bar Exam (and thus potentially requiring extra retakes than would otherwise be needed) with costs." The notice included the Plaintiff's address and name, as required by Cal Gov. Code 910(a).

According to the Claims Act, any notice of the claim, even one which is imperfect, shall satisfy the requirement of notifying the defendant of an intention to pursue damages, stated in the statute as follows:

"If ... a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein.;" Cal Gov. Code 910.8

"...Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in Section 910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant." Cal Gov. Code 911.

Here, the Bar did not give any notice of insufficiency or any objection to the notice, thus any defects have been waived.

**C) EVEN IF THE COURT FINDS THE GOVERNMENT CLAIMS ACT APPLIES TO THE UNRUH ACT CLAIMS, IF PLAINTIFF DID NOT TIMELY COMPLY WITH THE GOVERNMENT CLAIMS ACT FOR THE JULY 2018  AND/OR FEBRUARY 2019 EXAM CLAIMS, SUCH WAS THE PRODUCT OF EXCUSABLE NEGLECT  AND SO DOES NOT CAUSE THAT CLAIM TO FAIL HERE.**

Under Cal. Gov. Code 911.6(a)(1), the Plaintiff's failure to make a claim may be waived if  "the failure to present the claim was through mistake, inadvertence, surprise or excusable

neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2."

Here, Plaintiff arguably complied with the notice requirements as stated above, however to the extent his notice contained any defects, this was purely due to mistake as to the nature of the contents of such claim, especially considering the federal causes of action under the ADA, as a reasonable plaintiff would not believe federal causes of action would be subject to the Government Claims Act. In addition, any omissions would have been inadvertent and not prejudicial to the Bar, since they did have actual notice of Mr. Kohn's complaints and intention to pursue damages in court if necessary, well within the 6 month time frame.  Further, Plaintiff sent Defendant a demand letter on June 15, 2020 in regards to his claims for past and current exams.  Finally, as Defendant's actionable conduct was and is ongoing, it was reasonably unclear to Plaintiff until more recently that a lawsuit for damages would be warranted, appropriate, and ripe, which makes any perceived failure to preserve the earliest claims all the more reasonable and justly excusable.

### D) IF THE ABOVE FACTS MUST BE PLED  IN THE COMPLAINT PLAINTIFF SHOULD BE GRANTED LEAVE TO AMEND, NOT DISMISSAL.

To address the Defendant's claim that Plaintiff's Notices of Claims should have been alleged as facts in the Complaint, Plaintiff hereby requests leave to amend the Complaint once as a matter of right under FRCP Rule 15. Plaintiff argues that as a matter of equity, such curable defects should be fixed via an amended Complaint rather than through dismissal.

### CONCLUSION

For the reasons above, Plaintiff respectfully requests that this Court deny Defendant's motion to dismiss in its entirety, or at the very least as to all claims other than those under the California disability law provisions of the California Government Code distinct from the Unruh Act claims if this Court finds Defendant to be expressly exempted as it claims, in which case Plaintiff requests those claims be dismissed without prejudice.

Dated: August 24, 2020

Respectfully Submitted,

   _/s/ Matthew M. Selvagn_____

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*