MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com


*Attorney for Plaintiff*

BENJAMIN KOHN


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| BENJAMIN KOHN | **)** | CASE NO. 20-4827 |
| *Plaintiff,* | **)** | |
| v. | **)** | |
| THE STATE BAR OF CALIFORNIA, | **)** | **NOTICE OF MOTION AND RENEWED** |
| CALIFORNIA COMMITTEE OF BAR | **)** | **MOTION FOR PRELIMINARY** |
| EXAMINERS, and THEIR AGENTS IN | **)** | **INJUNCTION** |
| THEIR OFFICIAL CAPACITY | **)** | |
| *Defendants.* | **)** | |
| | **)** | |
| | **)** | |

## **NOTICE OF MOTION AND RENEWED MOTION FOR PRELIMINARY INJUNCTION**

PLEASE TAKE NOTICE THAT Plaintiff BENJAMIN KOHN, by and through his attorney MATTHEW M. SELVAGN, requests this Court to consider this Renewed Motion for Preliminary Injunction on the papers, and further respectfully requests that the Court issue a shorter briefing schedule than prescribed by the standard 35-day rule such that a decision can be reached on this motion by 9/14/2020, at least three weeks before the California Bar Exam is

scheduled to begin on 10/5/2020, including if the Court deems it procedurally necessary construing this motion as an ex-parte application for temporary restraining order.  It is important that Mr. Kohn be able to make lodging and transportation arrangements if required to test in-person at a test center, or that he be able to make necessary equipment acquisition and installation if he would be allowed to test at home.

## INTRODUCTION AND FACTUAL BACKGROUND

On 8/13/2020, this Court denied Plaintiff's first Motion for Preliminary Injunction primarily on the grounds that the claims for relief were not yet ripe, since the Committee of Bar Examiners had not made their final decision regarding Plaintiff's testing accommodations for the upcoming October Bar Exam. That has now changed, since the CBE recently decided on 8/27/2020 which accommodations they have denied to Mr. Kohn.

Specifically, the Bar granted the following, but denied all others:

1. Double time and one half per section;

2. No more testing time per day than non-disabled students (6.5 hours/day), with a corresponding increase in the number of days to take the exam to bring it to 6 days;

3. All previously granted accommodations from prior exams were also given, which includes allowing Mr. Kohn to bring his own physical auxiliary aids (ergonomic chair, although the Bar is unclear if this also includes a large external monitor), permission to bring food/drink and eat in the testing room, and permission to remain in exam room during breaks.

However, the Bar denied the vast majority of Mr. Kohn's requests, all of which were supported by his medical evidence, and also mandated that Mr. Kohn test in-person at a test center instead of the remote testing platform it has made standard for most examinees to receive the accommodations that it has approved. The decision letter listed some of the denied requests, but omitted (without approving) many of the requests made by Mr. Kohn and mischaracterized other requests that were in the list of denials.  A list of the requests still at issue after the State Bar's denials can be found in Appendix C herein.  The purported list of the denied requests from the 8/27/2020 decision letter, in the Bar's own words, is below:

"1. Administration of the examination over weekend days only;

2. Testing in a private room;

3. Normally pre-scheduled breaks, including lunch, to instead be taken at the applicant's discretion;

4. Committee to provide complete ergonomic workstation (including $1,500 chair, motorized adjustable sit-to-stand workstation, adjustable laptop stand, external keyboard, neck and torso braces);

5. Committee to provide hotel room for applicant - check in the day before exam, check out the night following the exam (an approximate seven-night hotel stay);

6. Private room in which the applicant is allowed to leave all equipment though 11:00 am the day after the last day of testing and Committee to assume full responsibility for all of applicant's equipment and computer; and

7. Assignment to an experienced proctor." (From 8/27/2020 letter from Bar p. 1).

This list was followed by a curious note explaining that even though he was technically "denied" a private testing room and the ability to leave his ergonomic chair in the testing room overnight, he seemingly would be granted those things anyway:

"Please note that, while you have not been specifically granted the accommodation of testing in a private room, you will be assigned to a private room at the in-person test center provided by the Committee, due to the COVID-19 pandemic. You may leave your equipment in that private room for the duration of your testing days and overnight. As a matter of course, the doors to all private rooms remain locked from the end of the testing day until the next morning. The Committee, however, will not agree to assume full responsibility for all of your equipment and computer, nor will it make any guarantees of any sort." (From 8/27/2020 letter from Bar pp. 1-2).

**ARGUMENT: CASE NOW RIPE**

The Plaintiff's requests are now ripe, since the Committee of Bar Examiners has rendered a final administrative decision on 8/27/2020, notifying Mr. Kohn via a letter emailed to him on that date.

The Committee's argument that Mr. Kohn must first appeal at least the most recent decision to the California Supreme Court is erroneous, since under California Rules of Court Rule 9.13(d), the appeals process will take a minimum of 60 days, meaning no decision can be reached prior to the date of the bar exam, which is now approximately 42 days away. California Rules of Court Rule 9.13(d) sets forth the appeal process for decisions of the California Bar. It says that the applicant to the bar may appeal any decision, in which case the Bar has 15 days to file a responsive brief. The petitioner then has 5 days to serve a Reply. If the Supreme Court decides to review the decision, it must grant an additional 45 days to the Bar to file a "supplemental brief" in response to the petitioner's Reply. Thus the fastest a decision could be reached would be 65 days and it would likely be much longer. The October 5-6th exam is only about 42 days away. If effective appeal of an administrative decision is impossible or futile, then the case is ripe for court review. See *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

A court may waive the usual requirement of exhaustion of administrative remedies "if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)), also see *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

Here, exhaustion of administrative remedies is futile, inadequate, not efficacious, and will result in irreparable injury, because if the Committee denied Mr. Kohn's requested accommodations, and the appeals process via the California Supreme Court is set by law at a minimum of 60 days, a final decision is thus put AFTER the October Bar Exam. This means that effective review is denied, and any appeal to the Supreme Court is futile since it will not change the testing accommodations in time for the exam. Mr. Kohn will be relegated to only money damages, rather than his preferred relief of a declaratory judgment or injunction. Money damages will not help him pass a bar exam that has already happened.

**RELIEF REQUESTED**

Mr. Kohn requests that the Court issue a preliminary injunction granting the following disability accommodations requested in his testing accommodations petition and appeal submitted to the California Committee of Bar Examiners for the October 2020 California Bar Exam and Amended Complaint, with the exception of testing only on weekend days, as while such an accommodation granted long ago should have been provided to make the exam equally accessible to him given the difficulties with clearing an entire business week of medical appointments and reachability during business hours to manage such, the decision on this motion would arrive too close to the exam for such an accommodation to be relied upon in the scheduling of the medical appointments.

If the Court finds that Plaintiff has demonstrated the requisite likelihood of success on the merits as to some of the disputed accommodation denials, but not others, Plaintiff respectfully requests that the Court sever the requests appropriately.

Note: Mr. Kohn's petition to the Committee lists all requested accommodations for the Fall 2020 exam in the Exhibits filed with his first motion for preliminary injunction, which are more concisely summarized in Appendix C.

**FACTUAL BACKGROUND**

Plaintiff/Movant is Benjamin Kohn, aged 26, from Mountain View, CA, a law school graduate of University of Iowa College of Law, and a person with severe mental, visual, and physical disabilities who seeks admission to the California Bar. His disabilities include a wide range of conditions numbering over 25 distinctly diagnosed issues (listed in Appendix A), the most disabling being severe autism, neurodevelopmental disorder of impaired processing speed/variable attention executive functioning, fine/gross motor delay, Myofascial Pain Syndrome, Gastroparesis, Pelvic Floor Dyssynergia, irritable bowel syndrome with chronic constipation, and Keratoconus.

Mr. Kohn was first diagnosed at age 5 at Stanford University Hospital with autism spectrum disorder and Asperger's syndrome, with additional diagnoses of various mental and

physical ailments to follow throughout his life. His disability stems not only from his autism, a recognized disability under the ADA, but also from the complicated interaction of a voluminous list of disorders, illnesses, and conditions which effectively handicap him in undertaking any test requiring extended periods of sitting and concentration.

Mr. Kohn's autism and impaired processing speed necessitate extra time on any standardized test (Appendix B contains a full list of previous test accommodations granted to Mr. Kohn), and his gastroparesis and pelvic floor dyssynergia require frequent meal and restroom breaks, without which he might suffer a clogged esophagus or gas bloat. He also requires specialized ergonomic equipment for his myofascial pain, motor skill, and visual impairments. A full list of the accommodations requested by Mr. Kohn, but denied by the State Bar on 8/27/2020, can be found in Appendix C below.

Mr. Kohn is registered for the October 2020 California Bar Exam and filed his petition for testing accommodations in March 2020. Over time, as it became likely standard test conditions would change, and as shelter-in-place rules relaxed such that he could access more of his experts, Mr. Kohn supplemented his petitions with addendums that were less early, but still timely.

One of these came 6/4/2020, when it became apparent that Mr. Kohn would need to address alternative standard test conditions that might arise from the online modality and as soon after his psychological re-testing demanded by the Committee on 2/14/2020 could be completed as was possible due to the pandemic. This first addendum caused the Bar to unreasonably defer already past-due consideration of his petition from the 6/19 Committee meeting until the 8/21 Committee meeting, skipping over at least two intervening meetings set for considering testing accommodation requests to the first that would place a decision after the deadline to appeal.  Mr. Kohn objected to this deferral, noting that: (1) even going by the State Bar's own procedures, without reaching the lawfulness thereof, a decision on his 3/19/2020 Petition was overdue well before the 6/4/2020 addendum was filed; and (2) 15 days, but especially 41 days going by the 7/15/2020 meeting, was ample time to consider the new documents added, especially the subset pertaining only to accommodation requests that applied regardless of where and how the exam was to be proctored/administered; and (3) Admissions Rule 4.90(D) required consideration as

1  soon as is practicable; and (4) the effects of such a long delay would be severely prejudicial by

2  denying him time to appeal and inherently depriving him of preparation for the exam with equal

3  opportunity.

4      After the State Bar refused to budge on its timeline for considering Mr. Kohn's petition,

5  expert support that, due to the pandemic-impacted availability of his experts, was not available to

6  him in time for what he believed would be the initial petition timeframe had to be added as

7  addendums, rather than made responsive and more effective with the benefit of a preliminary

8  decision and explanation of issues from the Committee.  Since the Committee had already

9  informed Mr. Kohn that a decision on his petition would not be considered until 8/21 by the time

10 any addendums would be considered, the subsequent timely, but less early addendums on 7/16,

11 8/5, and 8/10, do not excuse the State Bar's untimely decision on 8/27.

12     Mr. Kohn now seeks relief in the form of an injunction granting him the testing

13 accommodations he seeks, listed below in Appendix C, and if the Court finds that Plaintiff has

14 demonstrated the requisite likelihood of success on the merits as to some of the disputed

15 accommodation denials, but not others, Plaintiff respectfully requests that the Court sever the

16 requests appropriately.  He also respectfully requests that the Court issue an injunction requiring

17 that the State Bar administer the accommodations in such a way that he may still test from home

18 as standard examinees are permitted unless it finds that the State Bar has proven that doing so

19 would be a fundamental alteration or an undue burden, in which case he instead respectfully

20 requests that the additional accommodations necessitated to mitigate the prejudice of being

21 required to test at the test center be granted through an injunction instead.

22

23     **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

24     Pursuant to FRCP Rule 65, this Court has the power to issue a preliminary injunction

25 binding the Defendants as an equitable remedy prior to trial, in order to prevent irreparable harm

26 to the Plaintiff. To obtain a preliminary injunction, a plaintiff must show the following:

27 (1) That he is likely to succeed on the merits at trial,

28 (2) That he is likely to suffer irreparable harm in the absence of preliminary relief,

29 (3) That the balance of equities tips in his favor,

(4) That there is no undue hardship to the opposite party, and

(5) That an injunction is in the public interest.

The Ninth Circuit has held that courts may "balance" "the elements of the preliminary injunction test so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). The elements are not separate tests, but rather "opposite ends of a single 'continuum in which the required showings of harm varies inversely with the required showing of meritoriousness.'" *Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 826 (9th Cir. 1997), *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000).

The ADA states that the remedies and procedures set forth in section 505 of the Rehabilitation Act are the remedies available to any person alleging discrimination under the ADA. 42 U.S.C. § 12133. Section 505 of the Rehabilitation Act, in turn, states that a person who is being discriminated against is entitled to injunctive relief. 29 U.S.C. § 794a. Intentional discrimination or deliberate indifference is not required, being reserved only for actions under the ADA or Section 504 seeking damages, not injunctive relief. See *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Also see Cal. Gov. Code. § 11135 et. seq. And § 12944 et. seq.

## I. PLAINTIFF LIKELY TO SUCCEED ON THE MERITS, AS THE FACTS AND LAW CLEARLY FAVOR HIS MATERIAL POSITIONS:

To succeed on the merits of his primary testing accommodations request under the Americans with Disabilities claim, Mr. Kohn must prove that he is (1) disabled, (2) that the Defendant is a covered entity under the ADA, (3) that Defendant has failed to provide "reasonable accommodations," within the definition of the ADA, which serve to "level the playing field" with non-disabled students such that Mr. Kohn can effectively demonstrate the skills purported to be tested on the exam , and (4) that there is no undue burden on the testing agency in administering such accommodations.

1. Definition of "Disabled"

Mr. Kohn qualifies as "disabled" under the American's with Disabilities Act, because his conditions "significantly impair one or more major life activities," including the life activities of working and pursuing one's chosen profession via a licensing exam. *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69 and 42 U.S.C. 12102(2) and 42 U.S.C. 423(d)(3).

"Significantly impaired" is defined as impairment that significantly restricts the ability to perform a major life activity as compared to an average, non-disabled person. 29 C.F.R. § 1630.2(j)(1)(ii). The bar examination implicates the "major life activity" of working and pursuing one's chosen profession, since if a candidate is not given a chance to compete fairly on what is essentially an employment test, he/she is precluded from potential employment in that field. *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69. "Working" is specifically listed as a "major life activity" in 28 C.F.R. § 35.108(c)(1).

Mr. Kohn's conditions indisputably qualify under this definition, as acknowledged for autism, as he has consistently been given testing accommodations throughout his life for the SAT, LSAT, MPRE, FINRA, the Iowa Bar Exam, and three previous California Bar Exams administered July 2018, February 2019, and February 2020. All of these testing agencies, including the California Committee of Bar Examiners itself, have already admitted that Mr. Kohn is "disabled" as defined by the ADA, so this is not at issue, however because the exact nature of Mr. Kohn's disabilities reflect on the reasonableness of his proposed accommodations, a full discussion is warranted.

Mr. Kohn's conditions "significantly impair" his testing abilities in the following most important ways, however see Appendix A for a full list of impairments:

<u>Autism and neurological/attention disorders</u>

Dr. Toren stated, "The highest level of executive functioning is required in writing an essay which include deficits greatly impact his ability to create and write an essay when only given standard time. He psychomotor processing speed also impacts his ability to complete written tasks. While answering multiple choice tests require visual scanning, sustained attention and psychomotor speed and memory recall, it does not require planning and organization, executive functioning particularly in planning and organization. In addition, the increased

pressure of completing a thorough essay with a huge word count is greatly hampered by his poor psychomotor speed." (See Dr. Toren's report, p.16, attached)

In their 2014 neuropsychological evaluation report for the LSAT, Drs. Preston and Pinn opined: "Results of testing are consistent with a diagnosis of F84.00 Autism Spectrum Disorder… Mr. Kohn has variable attention. Impaired/fluctuating attention may influence performance on all measures administered. Given his Very Superior score on Vocabulary, it is likely his intellectual functioning falls between the High Average and Very Superior range. His scores on the WAIS-IV were negatively impacted by his slow processing speed. Mr. Kohn achieved significantly lower scores on timed tasks versus similar untimed tasks. He demonstrated impairments on measures requiring attention and speed. He did not make errors but processing speed was slow." Thus the disabilities of autism and impaired attention may be properly accommodated simply by giving extra time on the exam.

<u>Digestive System Conditions (gastroparesis, postoperative dysphagia, pelvic floor dyssynergia, and irritable bowel syndrome with chronic constipation)</u>

According to doctor John O. Clarke from Stanford Health Care, Mr. Kohn's digestive health physician, Mr. Kohn requires frequent small breaks throughout the day to both consume small amounts of food, and to take restroom breaks. Dr. Clarke classifies gastroparesis as a "physical disability" in which the stomach cannot empty itself in a normal fashion, thus preventing the patient from consuming more than a tiny amount of food at any given time, otherwise risking gas bloat. In addition, Dr. Clarke states that Mr. Kohn has postoperative dysphagia, after his Nissen Fundoplication surgery, which also necessitates small frequent meals. In Dr. Clarke's words: "it is possible for him to clog his esophagus, which produces severe pain and regurgitation urge that, once triggered, can last for hours, or even need an emergency medical response."

Mr. Kohn also has pelvic floor dyssynergia and irritable bowel syndrome with chronic constipation. He has had the irritable bowel syndrome diagnosis since his early adolescence, diagnosed by his then pediatrician. Dr. Clarke stated that these two conditions, each through a different pathology, both act in concert to make Mr. Kohn's bowel movements less frequent and

1   less controllable, predictable, or plannable in timing, and to take far longer than is ordinary to

2   complete. While the constipation does so by impaired motility generally throughout the entire

3   digestive tract, the pelvic floor dyssynergia is essentially a neuromotor impairment that obstructs

4   the defecation process and also creates very uncomfortable anismus sensations during and

5   following bowel movements that makes it difficult to leave the toilet for some time after starting.

6   In effect, these digestive issues "significantly impair the major life function of working" since

7   they prevent Mr. Kohn from taking a licensing exam without reasonable accommodations such

8   as 30 minute breaks every 90 minutes of testing or large amounts of extra time.

9        Visual Impairments (keratoconus, dry eye syndrome, uncorrectable astigmatism, floaters)

10       Dr. Daniel Goodman is Mr. Kohn's eye specialist and has explained that Mr. Kohn's eye

11   conditions should be considered additive for the purposes of disability accommodations. Dr.

12   Goodman recommended 100% extra time just for the keratoconus, which is a disorder of the eye

13   which results in progressive thinning of the cornea. This may result in blurry vision, double

14   vision, nearsightedness, irregular astigmatism, and light sensitivity leading to poor

15   quality-of-life. He further stated, "Visual impairments affect Mr. Kohn's reading speed,

16   endurance during all day focused visual work, and ability to transmit written responses already

17   mentally formulated." -- all descriptions of "significant impairment" relative to a non-disabled

18   person.

19       Although the Committee's expert incredulously believes this is "corrected with

20   appropriate glasses," Dr. Goodman flatly disagreed, and as the treating physician, his diagnosis

21   should be deferred to, according to the ADA. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02,

22   122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002). This in effect means that use of an external monitor

23   to properly read the exam is reasonable.

24       The above conditions illustrate that Mr. Kohn is "disabled" and "significantly impaired in

25   a major life function." They also go to the reasonableness of his requested accommodations,

26   however this point will be discussed in more detail in section 3 below.

27                              Sitting Impairments:

According to Dr. Dresden, Mr. Kohn suffers from myofascial pain syndrome, which is chronic pain affecting the soft muscle tissues, and aggravated not just by autism, but also by occipital neuralgia, scapular dyskinesis, and cervicalgia:

"Mr. Kohn acquired myofascial pain syndrome subsequent to the SAT.  He requires physical therapy three to five times per week along with regular chiropractic and osteopathic treatments to manage the symptoms sufficiently to avoid substantial loss of productivity and significant impairments of his quality of life...This condition can be further aggravated by high levels of stress or anxiety, and by spending long periods of time in a sitting posture, reading, or using a computer, especially without the ergonomic setup he uses for home, study, and work. The Bar Exam requires suspension of ordinary treatment due to the need to take the exam at a substantial distance from his established providers, without any long periods of uninterrupted time during business hours, over several consecutive days, and then places him in conditions that inevitably will maximize the exacerbation of his disability....The increase in these symptoms from the sitting and computer-use postures can be partially ameliorated by using an ergonomic setup, including those components I've described previously and an adjustable height sit-or-stand desk like the Iowa Bar provided... There is a spectrum of postural support available from standard chair to "office chair" (typically equipped with a padded seat and back rest along with arm rests) to "ergonomic" office chair (typically with variations in the shape and viscosity of the back and sometimes the seat to provide lumbar and thoracic support) to the ergonomic office chair with dynamically adaptive full spinal support, which uses a matrix of small panels and mechanical devices on both the back and seat to provide disk by disk support along the entire spine and distribute one's weight evenly no matter what part of the chair is sat on or what angle the user leans into it from, allowing the user to vary seat positions without any loss of support.  I recommend the latter, equipped on the Herman Miller Embody Chair, and using an ordinary desk I believe this would be necessary to put him anywhere close to as equal a position to others without such disability as can be done compared to any alternative, but agree with the Iowa Bar that an ergonomic office chair with just the shape and viscosity to provide lumbar and thoracic support might be adequate were he also to be provided a motorized adjustable height sit-or-stand desk.  The LSAT, GMAT, MPRE, college exams, and law school exams differ from the Bar

Exams for purposes of addressing myofascial pain syndrome due to the differences in the uninterrupted length of the exam time spent in a sitting or computer work posture, the need to suspend his routine physical therapy treatment when he needs it the most due to the lack of business hours availability for such appointments on exam days for so many days in a row and from being away from home and his providers... In short, Mr. Kohn would be risking harm to his health if he took an exam lasting longer than six hours or longer than four hours per day for two or more consecutive days without access to the ergonomic equipment requested, and at any length (but increasingly so the longer the exam and with an interruption of physical therapy) this condition will otherwise have symptoms that would impair performance and speed on the exam past that already present from other disabilities... "

Dr. Dresden subsequently added: "If Mr. Kohn is allowed to test from home, he has access to a workstation that has further improvements than that we requested be provided for him in a test center, particularly the use of an external large screen monitor so that he can simultaneously keep both his monitor and keyboard/mouse at the ergonomic eye and wrist heights respectively, which is not possible using the built-in display to the laptop.  He should be able to keep his arms at a 90 degree angle to his body while typing without having to tilt his head forward and downwards (a posture that would particularly aggravate myofascial pain in areas he typically has it, including the suboccipital, posterior digastric, SCM, scalene, levator scapulae, and upper trapezius muscle groups).  While the chair is the most important component of the workstation for the effects of his myofascial pain syndrome, cervicalgia, occipital neuralgia, and scapular dyskinesis, using the sit-to-stand desk, Herman Miller "Embody" chair, adjustable external monitor, keyboard, and mouse in concert would further reduce the progression and symptoms of his myofascial pain syndrome.  I understand he's already approved to bring ergonomic items generally into the test room, and although I'm unsure what that would mean for at-home testing, I wanted to clarify that he'd benefit from using all possible aids together and that the benefits provided by the external computer equipment are not interchangeable with those provided by the chair and/or desk."

According to Dr. Toren: "He has hypersensitivity to sensory input to pain, temperature, noise, gas-bloat, and other sensory discomforts associated with his medical conditions.  When he

is in pain or experiencing digestive disturbances, this is exacerbated by Autism and he is unable to focus and attend when in his mind his medical symptoms becomes beyond the pale.  All accommodations for physical disabilities, additional to those primarily for autism, should be considered with this information in mind, and so I second the recommendation of his PCP that the ergonomic equipment and facilities requested by his PCP be provided to him."

### 2. The Defendant is a Covered Entity Under the ADA:

To state a Section 505 claim, a test taker must allege that: (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001). Also see 28 C.F.R Part 35.

Title II of the ADA emphasizes program access, meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons. Americans with Disabilities Act of 1990, § 201, 42 U.S.C.A. § 12131. "Congress intended the 'undue burden' standard in title II to be significantly higher than the 'readily achievable' standard in title III."  28 C.F.R. Pt. 35, App. B.

### 3. The Entity Failed to Provide Reasonable Accommodations:

Section 104.12 of the Code of Federal Regulations provides: "(a) A recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant or employee unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program or activity."

The Supreme Court has approved a multi-step burden shifting analysis in determining what potential accommodations are reasonable and which rise to the level of an undue hardship. *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401-02, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002). Under that approach, a plaintiff must first show that the accommodation "seems reasonable on its face, i.e., ordinarily or in the run of cases." Id.

Mr. Kohn's requests are reasonable accommodations on their face, since they allow him to illustrate his intellectual abilities and mastery of the subject, by removing any impediments

caused solely by his disabilities. Mr. Kohn relies on the affidavits of his experts to prove that his requests each act to level the playing field and are no more than are necessary to allow him to compete fairly on the bar exam. To wit:

Drs. Dresden and Toren recommend that the proctor to whom Mr. Kohn is assigned be trained on how to work with autistic individuals and how to administer the complicated set of accommodations necessary ahead of time, due to Mr. Kohn's autism.

Dr. Toren stated: "Benjamin suffers from numerous medical conditions which impact his daily life which is magnified when he is under stress.  Additionally, Benjamin has been lifelong diagnosed with Autism Spectrum Disorder, which amplifies his medical conditions.  People with Autism have more difficulty with medical conditions than typically developed individuals.  There is an insistence on sameness in their environment, inflexible adherence to routines, difficulties with transitions, and distress with small changes in their environment.  Benjamin tries to be flexible given the demands of the real world, but it is most difficult to not know ahead of time what is coming.  He becomes easily agitated when things are not exactly like he is expecting.  So, in proctoring his exam, he needs an environment which is quiet, and not overly loaded with stimuli or undue cause for anxiety.  He is easily distracted by noise or other sensory input.  The issues he's described with his proctor in July 2018 would affect someone with autism far worse than someone who is neurotypical.  His proctor should already be aware of all of his accommodations, which standard rules and instructions they modify, and all other information necessary to administer the exam, should be instructed to refrain from unnecessary conversation on the test time clock, and should have training on working with autistic individuals."

Dr. Toren recommended the following for Mr. Kohn's autism:

- Frequent stop-the-clock breaks timed around Benjamin's determinations on when symptoms best justify it.

- Assignment to proctor who's received training on working with autistic individuals, has been instructed regarding all accommodations and how the modified exam should be administered, and who refrains from unnecessary conversation during test time.

- Access to computer to write essays.

- Private Room.

- Provision of all nonportable ergonomic equipment recommended by Benjamin's PCP, Dr. Dresden, as such is further supported by autism sensory sensitivity.

- Ability to Type Written Responses."

(6/4/2020 Neuropsychological Report and Affidavit of Dr. Toren, pp. 15-18).

Dr. John O. Clarke of Stanford Health Care, regarding digestion related physical disabilities: "I previously recommended an accommodation of meal breaks of up to 30 minutes for every 90 minutes of testing time to address Mr. Kohn's medical need to distribute his eating over more frequent smaller meals more evenly spaced throughout the day to minimize idle digestion time based on his physical disability of gastroparesis."

"Postoperative dysphagia...in order to prevent excessive stomach acid damaging the esophagus, it modifies the esophagus in such a way as to make it more difficult to pass large or sticky pieces of food not adequately cut or chewed, or food that is not eaten at a slowed pace, into the stomach, and also increases gas-bloat symptoms from eating meals too fast or too large at a time and not also spaced out more frequently. If Mr. Kohn is not careful to eat in this way, it is possible for him to clog his esophagus, which produces severe pain and regurgitation urge that, once triggered, can last for hours, or even need an emergency medical response.

These two conditions, each through a different pathology, both act in concert to make Mr. Kohn's bowel movements less frequent and less controllable, predictable, or plannable in timing, and to take far longer than is ordinary to complete. While the constipation does so by impaired motility generally throughout the entire digestive tract, the pelvic floor dyssynergia is essentially a neuromotor impairment that obstructs the defecation process and also creates very uncomfortable anismus sensations during and following bowel movements that makes it difficult to leave the toilet for some time after starting.

In summary, for the four physical disability conditions of gastroparesis, postoperative dysphagia, irritable bowel syndrome with chronic constipation, and pelvic floor dyssynergia, I recommend the following updated/expanded accommodations: 1. Permission to bring, eat, and drink food and beverages in the exam room, and to remain in the exam room subject to proctor supervision during any meal breaks (already approved). 2. A number of stop the clock breaks for meals during each exam day equal to the lower of the test time for that day divided by 90

minutes or four such breaks, instead of a singular hour long lunch break, that can be initiated any time Mr. Kohn chooses within the exam session."

Dr. Goodman, Mr. Kohn's ophthalmologist, stated: "Mr. Kohn's visual impairments may be partially alleviated, though not to a degree as to substitute for all of the extra time, by using a larger screen computer monitor instead of a laptop display. I'd recommend that he be given permission to use his ~31.5" external monitor with his laptop if he is allowed to test from home due to the pandemic, with arrangements to ensure the compatibility of any examination software with that monitor, and that such a monitor and compatible with his laptop and such compatible exam software be provided to him if he is required to test in-person at a test center."  This recommendation was seconded by another of his ophthalmologists, Dr. Tearse.

Thus, the accommodations requested are "reasonable" both in plain meaning of that word, and as a matter of law under the ADA, since the treating physicians' affidavits fully support such accommodations.

5. Mr. Kohn is immunocompromised due to allergy medication, as indicated by his allergist, Dr. Rubinstein, and also by Dr. Dresden. Due to his medications, he is at a far increased risk of Coronavirus, thus requires special precautions in order to be around test proctors or to leave his house.

6. The safety precautions that must be taken in regards to CoVid are further complicated by Mr. Kohn's GI conditions.  His gastroenterologist, Dr. Clarke, stated: "While I've expressed several reasons previously for why Mr. Kohn should not be assigned to test in-person due to his need for testing accommodations, after further consideration of the effects of his digestive conditions in this pandemic and your rules for the exam, it is now even more clear to me that administering this long of an exam to him at a test center in-person would not be feasible and that to require such would be a reckless disregard for Mr. Kohn's health and that of your onsite staff and potentially other examinees... The decreased motility of gas caused by both his fundoplication surgery and his constipation, and the increased likelihood of excessive stomach gas caused by his gastroparesis, causes symptoms that include chronic cough.  Cough is also a symptom associated with Covid-19.  As a result, Mr. Kohn's disabilities likely would impede the ability of onsite staff from determining whether he is exhibiting symptoms of Covid-19 to a

degree that clinically would cause him to be an undue risk, or whether he is just experiencing the effects of his noncontagious medical conditions.  Considering the stakes of the exam and the magnitude of the resources serious examinees must commit months in advance of the exam to attempt it, and that the exam cannot be flexibly scheduled to when Mr. Kohn is experiencing the least symptoms from his chronic medical conditions, for this reason alone he should be allowed to take the exam at home as an accommodation and any in-person proctors should be instructed that coughing is not by itself a sufficient indicator that Mr. Kohn is infected to terminate his examination... Another issue with requiring Mr. Kohn to be proctored in-person is the regularity with which he must eat and drink, and that to use even his previously approved permission to do so during test time and bring food and drink into the exam room he must remove his face mask at least temporarily.  Due to the Covid pandemic, it would thus be reckless to require him to eat or drink in close proximity to others outside his household, especially as Mr. Kohn is immunocompromised due to some of the medications he needs to take... If he were granted the meal breaks as frequently as I requested, he would not need to eat during test time.  And, if there were proctors onsite (e.g. at his home), he could be remote monitored via a closed-circuit camera system or bluetooth camera system not requiring an uninterrupted internet connection during at least the meal breaks, with the proctors still able to inspect the exam room space and the restroom space personally when Mr. Kohn is able to wear a mask and then verify no detours are made if he leaves the computer to use the restroom, again while Mr. Kohn is able to wear his mask.  If you see fit, the proctors could remove any printed exam materials from the room during such time and keep them in their custody... Conversely, if his only ability to eat is during a single lunch break and proctors or any other person must be present in the room during his exam time, and/or if proctors or any other person must be present in the room during meal breaks, and/or if Mr. Kohn must stay in a hotel to access the exam feasibly with all of his other needs, then there is not even a relatively safe way to administer the exam to Mr. Kohn during the pandemic."

4. The Accommodations do Not Pose an Undue Hardship on Defendants

The burden then shifts to the defendant to demonstrate the accommodation would pose an undue hardship in the case at hand. Further with respect to the burden, "[t]he public entity has the

burden to prove that a proposed action would result in undue burden or fundamental alteration, and the decision 'must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a *written statement* of the reasons for reaching that conclusion.' The public entity must 'take any other action that would not result in such an alteration or such burden but would nevertheless ensure that, to the *maximum extent possible*, individuals with disabilities receive the benefits or services provided by the public entity.'" *K.M. v. Tustin Unified School Dist.*, 725 F.3d 1088, 1096-97 (9th Cir. 2013).

Here, the requested accommodations pose no undue hardship on the California Bar. In the absence of extreme cost, unreasonably vague/difficult to administer requests, or those wholly unsupported by medical testimony, the bar must defer to Mr. Kohn's experts and allow the accommodations. Not to mention the fact that the Bar has never issued a written explanation detailing the undue burdens with any level of persuasiveness.

For all of Mr. Kohn's time-based requests, such as stop the clock breaks for meals and restrooms, there is de minimus cost, other than the small amount of time for a proctor to attend, and the additional time requested is clearly delineated and simple to administer. Mr. Kohn's request for specialized disability proctors poses no burden since the Bar almost certainly has existing resources to find such proctors, who should not cost much more than an ordinary proctor. In addition, any additional cost is entirely justified given the disabilities at hand.

Lastly, Mr. Kohn's request for ergonomic and physical testing aids to be supplied in the exam room is akin to requesting a wheelchair ramp or handrail: these are necessary physical tools without which Mr. Kohn simply cannot sit in the exam room or see the exam. 28 C.F.R. s. 36.309 states that an entity "that offers a course covered by this section shall <u>provide</u> appropriate auxiliary aids and services for persons with impaired sensory, manual, or speaking skills, unless the private entity can demonstrate that offering a particular auxiliary aid or service would fundamentally alter the course or would result in an undue burden." Here, the bar has not offered to provide an auxiliary aid, namely Mr. Kohn's ergonomic chair, and has not demonstrated an "undue burden" when asking him to bring his own chair. By forcing Mr. Kohn to bring his own

chair, they impose on him numerous burdens including the cost of transportation and the cost of storage overnight (he can't risk leaving it in the testing room without a guarantee of its safety, which the bar has refused to provide).

The Committee cannot avoid installing such physical aids simply by stating "they cost too much." To reach the legal requirement of "undue burden," the Committee must show extreme and disproportionate cost which serves little to no benefit to the test taker. In this case, these physical aids are an absolute necessity to overcome disability, as shown above by expert testimony, and the cost to the Bar would be minimal in comparison to the benefit conferred.

5.  Plaintiff Reincorporates by Reference As If Fully Set Forth Herein the Responses to Defendant's Claims, to the Extent Material, of Sovereign Immunity and It Not Being Subject to the Rehabilitation Act From His Response to Defendant's Opposition to His First Motion for Preliminary Injunction and From His Opposition to Defendant's Motion to Dismiss.

## II. BALANCE OF EQUITIES IS IN PLAINTIFF'S FAVOR

A preliminary injunction requires the Court to weigh the fairness to both parties in light of the evidence, and decide which party might suffer greater consequences if the injunction is or is not granted. On the one hand, while Mr. Kohn can admit that the Bar does have an interest in maintaining the integrity of the exam and keeping administrative complexity to a minimum, the Plaintiff faces much more severe repercussions if this injunction is denied, since this is likely his last attempt at the bar exam due to medical and financial hardships beyond his control. Counsel thus urges the Court to issue this injunction to prevent irreparable harm to Mr. Kohn. Because the CBX is a licensing exam, Mr. Kohn's interest in taking it with reasonable disability accommodations is enormous, having spent hundreds of thousands of dollars and years of his life working towards the exam, whereas the Bar's interest in preventing those accommodations is minimal at best.

The balance of equities favors Mr. Kohn on the procedural issues also, since he has timely filed all documents and provided extensive medical reports to the Committee, only to be told time after time that they will delay review. He submitted his current petition on March 19, 2020, as recommended by the Committee, as it was more than 6 months prior to the exam, (per

State Bar Rule 4.84(B)), then he supplemented his timely petition with additional expert opinions and data on June 4, 2020, that was responsive to claims first made by the Committee on 2/14/2020, but required over twenty hours of in-person psychological testing and so was not available during the shelter-in-places imposed for the covid pandemic.

On 5/21/2020, Plaintiff inquired about the status of his petition and was then told it would be considered at a Committee meeting on 6/19/2020, over three months from submission. Even using Defendant's own procedures, a preliminary decision on the petition would have been due before the next date documents were added which was on 6/4/2020, 77 days after the petition was filed.

The addendum submitted 6/4/2020 was a month and a half before Defendant's own deadline, such that the new submission should not have slowed the process. When Plaintiff submitted the new documents on 6/4/2020, because a decision was already overdue, only the new documents should still have needed review. The 15 days remaining to the 6/19/2020 Committee meeting is a greater amount of time than the 8/21/2020 Committee meeting is from Defendant's appeal submission deadline of 8/13/2020.

On 6/17/2020, Defendant admitted to Plaintiff that its Admissions Rule 4.90(D) required consideration "as soon as is practicable." Nonetheless, Defendant asserted that it was "impracticable" not only to consider Plaintiff's administrative petition at the 6/19/2020 Committee meeting, but also the 7/15/2020 Committee meeting specially for testing accommodations petitions and appeals, and indeed any Committee meeting prior to 8/21/2020, with a decision letter to follow no earlier than the following week, after the appeal deadline. This makes little sense, since the Committee is able to decide certain appeals in less than 15 days, which proves they are capable of reviewing something like an addendum in a similar time frame. Also note that FINRA decided Mr. Kohn's case within 10 business days, the Iowa Bar within 3 business days, and the NCBE in less than three weeks, all using the substantially similar documentation Mr. Kohn provided to the California Bar. This also proves that it is not "impracticable" to decide disability cases quickly, and pushes the balance of equities in Mr. Kohn's favor.

This improperly denied Mr. Kohn the opportunity to administratively appeal any denials, and because this Court held it must be waited for due to ripeness, it has ensured that finalized accommodations after Court review would not be determined until very close to the exam, which has already prejudiced Mr. Kohn as it prevented him from being able to allocate the degree of resources for adequate exam preparation that he would have done much earlier had the feasibility of the exam been established as far in advance as such preparation typically requires, something that is required of testing agency decision timeframes for ADA requests by the US DOJ 2014 ADA regulations.

Defendant has demanded "extensive documentation" for purposes of 29 C.F.R. § 1630.2(k)(2). The Committee has consistently rejected hundreds of pages of Plaintiff's medical affidavits, obtained at great cost and burden, while simultaneously stating that more evidence is needed. Such inconsistent behavior is inherently confusing, prejudicial, and against the spirit of the ADA.

In addition the Committee has acted with unclean hands and in bad faith related to the following:

- Unduly short 10 day appeal deadline, possibly motivated by a desire to deter appeals. Furthermore, the appeal deadline begins when the Committee posts the letter, which was usually at least 5 days before receipt, with appeal also expected by mail (this applies only  prior to Feb 2020 exam before electronic appeals);

- No decision on whether the exam will be online or in person and the attending standard test conditions until the past the deadline to make new testing accommodation requests, and which necessitated some of the later expert addendums on his existing requests;

- Reliance on generally one expert consultant even where Defendant knew or should have manifestly been aware their key premises were false from the file, to the extent of deliberate indifference;

- Defendant's long turnaround time for procedures are not necessitated by practicability, rather Defendants' lengthy delays serve only the convenience of their staff, and have the effect of chilling assertion of disability rights by test-takers;

- Possibly maliciously selecting cherry-picked documents to send to their expert consultant as the relevant file/record.

- No lawful plan relative to Coronavirus: immunocompromised patients should not be exposed to high risk testing environments, disabled test takers' medical providers are harder to reach, and evidence for testing accommodations is harder to obtain.

Lastly, the California Bar has already admitted Mr. Kohn is disabled in previous exams, but only seems to contend that his medical experts are not credible enough, or do not "prove" the accommodations are necessary to avoid discrimination. However, as stated above, as a matter of law, the Bar must accept Mr. Kohn's experts at face value, and in the light most favorable to him, since they are the treating physicians. *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995, 1001 (N.D. Cal. 2011).

When weighing both sides, the Court should consider the medical evidence submitted by Mr. Kohn, the risk that this is his final bar exam due to circumstances beyond his control, as well as the relative simplicity of implementing the accommodations he has requested. Also consider that the Bar's undue delay, and setting their review date AFTER the appeals deadline as described above, may have been a bad faith attempt to prevent appeals entirely, and their incredulous claim that earlier review was "impracticable" may be mere pretext, which given the prejudices noted above has tainted the ability of Mr. Kohn to effectively provide all of the responsive support he should have been able to have considered in the administrative process for this exam.

Lastly, the Court should consider how little explanation or rationale the State Bar provided in its 8/27/2020 decision for the denial of the disputed accommodation requests, how little their single non-treating psychological disabilities expert meaningfully addressed of the overwhelming medical evidence submitted by Mr. Kohn and their improper reliance on requiring that the disability basis had worsened before recommending any expanded grants, the deference owed to Plaintiff's experts, etc., and that nowhere in the 8/27/2020 decision has Defendant asserted and preserved a claim of fundamental alteration or undue burden.

III. NO UNDUE HARDSHIP TO DEFENDANT

An injunction may be granted where there is no undue hardship to the non-moving party. As argued above, the ADA also contains a similar element, in that there should be no "undue burden" on the testing agency in administering accommodations, so much of the same logic as above also applies here.

The ADA outlines four factors to evaluate whether the hardship to the employer is undue: (1) the nature and cost of the requested accommodation; (2) the financial resources and size of the employer's facility that would implement the accommodation; (3) the employer's financial resources and size generally; and (4) the employer's type of operations and workforce. 42 U.S.C. §§ 12111-12117.

Title II of the ADA emphasizes program access, meaning that a public entity's programs and services, viewed in their entirety, must be equally accessible to disabled persons. Americans with Disabilities Act of 1990, § 201, 42 U.S.C.A. § 12131. "Congress intended the 'undue burden' standard in title II to be significantly higher than the 'readily achievable' standard in title III."  28 C.F.R. Pt. 35, App. B.

All arguments made in the previous section regarding the balance of equities apply here as well. Mr. Kohn has repeatedly shown how the Bar is fully capable of hearing his petitions in a timely manner (like they do on certain appeals and just as other testing agencies do). Thus there is little convincing evidence that the bar bears any significant burden by hearing Mr. Kohn's case by 8/3/2020, after having had his file since March.

Here, the costs of the accommodations are fairly minimal, consisting mostly of extra proctor time considering the lengthened testing time requested. The Bar could also allow Mr. Kohn to store his own equipment overnight so that they do not have to pay for it to be transported or purchased. In addition, the Bar has far more resources relative to Mr. Kohn, and the total cost of accommodating him would be no more than the cost of accommodating almost ay disabled person. Lastly, the Bar is in the regular business of administering exams, and thus should easily have the expertise and resources to provide reasonable accommodations.

## IV. RISK OF IRREPARABLE HARM

Because the bar is scheduled to start on October 5th, there may not be time for a full trial before that date. Thus, the necessity of this injunction, which is the only method of preventing the irreparable harm of sending Mr. Kohn into the exam with inadequate and discriminatory accommodations. If his rightful accommodations are denied by the Committee, Mr. Kohn will likely fail the bar exam. He has failed three previous exams due to inadequate accommodations, so there is reason to think the risk posed for this exam is very real and not speculative.

Specifically, Mr. Kohn posits the following forms of irreparable harm:

1. Having exhausted all financial resources on previous exams, exacerbated by the Committee's previous denials of accommodations, the upcoming exam will most likely be Mr. Kohn's final attempt. He simply has no money left to pay for additional transportation, prep courses, tutoring, and hotels to take another exam in 2021;

2. Since Moral Character determination will need extension upon further delay of bar passage, this further diminishes the likelihood of Mr. Kohn attempting another California Bar Exam and the likely delay for a license even upon passage of a future bar exam;

3. As Mr. Kohn will likely need non-legal employment not conducive to preparing for future attempts at the bar exam in order to obtain existentially necessary health insurance in 2021, after his eligibility to remain on his present insurance likely expires, and given his extremely high medical care costs, he will need to find gainful employment with healthcare before any 2021 administrations of the bar exam. Thus, he will be unable to effectively study while employed, precluding any meaningful further exams beyond the upcoming one.

Even if Mr. Kohn was able to take the following exam in February 2021, he would still suffer harms such as a 5 month further delay in legal employment, lost opportunities, and possible extra time/expense in renewing moral character determination which could cause a delay of up to one year.

4. Due to the inherently difficult and burdensome nature of the California Bar (only 26.8% pass rate in February 2020), and the high cost of preparing for it each time, Mr. Kohn will be irreparably harmed if he is not granted his requested accommodations for the upcoming exam. Not only will he potentially lose the benefit of all his current preparations, but as stated above, he likely will not be able to take the exam again.

5. If Mr. Kohn were forced to test in-person without the denied accommodations relating to the heightened risks of CoVid caused by his immunosuppressive medications, his need to eat/drink frequently due to his disabilities which cannot be done without taking off his mask, and his noncontagious disabilities producing chronic cough symptoms the Bar presently says in their FAQs would cause his in-person examination to be terminated, then Mr. Kohn could suffer the irreparable harm of contracting CoVid due to the manner in which the Bar Exam is administered to him specifically, and then dying or suffering permanent bodily damage.  He could also suffer the irreparable harm of having his exam terminated due to the cough symptoms he would likely exhibit at some point over the six full days of testing.

## V. INJUNCTION IS IN THE PUBLIC INTEREST

By supporting the rights of the disabled, this Court reinforces the public interest in equality and access for all people. Those born with genetic impairments deserve an equal playing field, such that they may enjoy the same opportunities as all people, without discrimination. Counsel therefore urges the Court to consider the public interest in upholding the Americans with Disabilities Act.

In addition, the State of California has declared that protection of disabled persons in the legal professional occupations is in the public interest, via California Business and Professions Code 6001.1: "Protection of the public, which includes support for greater access to, and inclusion in, the legal system, shall be the highest priority for the State Bar of California and the board of trustees in exercising their licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

## VI. PLAINTIFF NOT REQUIRED TO EXHAUST ADMINISTRATIVE REMEDIES

Because there is no statutorily-mandated exhaustion requirement for Mr. Kohn's claims, exhaustion is prudential. See *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Courts may require prudential exhaustion when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the

1  requirement would encourage the deliberate bypass of the administrative scheme; and (3)

2  administrative review is likely to allow the agency to correct its own mistakes and to preclude

3  the need for judicial review." (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). And

4  even where "the three Puga factors weigh in favor of prudential exhaustion, a court may waive

5  the prudential exhaustion requirement 'if administrative remedies are inadequate or not

6  efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury

7  will result.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir.

8  2004)).

9      Here, for the reasons above as to ripeness, any remedy of seeking discretionary review by

10  the California Supreme Court is futile, inadequate, and not efficacious, because California Rule

11  of Court 9.13(d) on its face mandates that the process take longer than the amount of time

12  between the Committee's decision and the October 2020 bar exam, thus sending Mr. Kohn into

13  the bar exam with discriminatory accommodations, setting him up for failure.

14

15                           VII. DAMAGES NOT ADEQUATE

16      Damages, to the extent available, will not provide an adequate remedy, since by the time

17  this Court hears a full trial, the October 2020 Bar Exam will have passed. As stated above, the

18  Plaintiff will likely not have the resources for another exam, with exhaustion of previous

19  resources having been directly caused by the Committee's failure to provide reasonable

20  accommodations on three previous exams. Any unlawful barrier to Mr. Kohn's ability to pursue

21  his chosen career, such as inadequate disability accommodations, cannot be cured simply with

22  money damages, since Mr. Kohn might potentially be missing out on life experiences that are

23  invaluable, intangible, and central to his enjoyment of life. Furthermore, any damages would be

24  difficult to measure or calculate and would certainly vastly exceed any burden on Defendant to

25  simply grant the requested relief.

26

27                                **CONCLUSION**

28      Mr. Kohn, as a disabled person, deserves the full protections of the Americans with

29  Disabilities Act. This requires putting him on an equal playing field with non-disabled persons,

granting the altogether reasonable testing accommodations he seeks, as fully supported by the medical evidence.

Specifically, Mr. Kohn requests an injunction granting the disputed disability accommodations listed in his petitions to the Committee of Bar Examiners (see Appendix C).

These injunctions are warranted since Mr. Kohn is severely disabled, likely to succeed on the merits as the facts and law clearly favor his positions, and the balance of equities tips clearly in his favor. As detailed above, Mr. Kohn comes to this court in good faith, having submitted all documents to the Committee on time and supported with vast medical reports, requesting entirely reasonable accommodations for his many disabilities. He does this for the noble reason of pursuing his chosen profession and risks irreparable harm if denied.

Plaintiff further respectfully requests that the Court issue a shorter briefing schedule than prescribed by the standard 35-day rule such that a decision can be reached on this motion by 9/14/2020, at least three weeks before the California Bar Exam is scheduled to begin on 10/5/2020, including, if the Court deems it procedurally necessary, construing this motion as an ex-parte application for temporary restraining order.  It is important that Mr. Kohn be able to make lodging and transportation arrangements if required to test in-person at a test center, or that he be able to make necessary equipment acquisition and installation if he would be allowed to test at home.

Dated: August 31, 2020

Respectfully Submitted,

_/s/ Matthew M. Selvagn_____

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*

**APPENDIX A - LIST OF DISABILITIES**

Mr. Kohn typically has 5-7+ medical appointments weekly, meeting regularly with at least 11 different doctors of various specialities to treat a growing list of disabilities, fully documented by his doctors and categorized by bodily system below (ICD-10 codes for reference are listed after each one):

Neuro-Psychiatric Disorders:

Autism Spectrum Disorder (F84.0)

Highly variable attention and neuroprocessing speed deficit (R62.50)

Circadian Rhythm Sleep Disorder (Delayed Phase & Irregular Sleep/Wake Types) (G47.33)

Neuro-Muscular-Skeletal:

Gross and Fine Motor Delay (F82)

Myofascial Pain Syndrome (M79.18)

Cervicalgia (M54.2)

Occipital Neuralgia (M54.81)

Scapular Dyskinesis (G25.89)

Allergy:

Allergic Rhinitis (J30.9)

Allergic Sinusitis (J32.9)

Allergic Keratoconjunctivitis (H10.45)

Food Allergies (Fish, Airborne & Severe Untreated; Nuts and Dairy) (Z91.013)

Allergy Drug-Induced Immunodeficiency (D84.9)

Dermatological:

Chronic Idiopathic Urticaria (L50.1)

Eczema (L20.84)

Chronic Folliculitis (L73.9)

Gastroenterological/Gastrointestinal:

Gastroparesis (K31.84)

Postoperative Dysphagia (R13.10)

Irritable Bowel Syndrome with Chronic Constipation (K58.9)

Pelvic Floor Dyssynergia (M62.89)

Recurrent Anal Hemorrhoids (K64.8)

Recurrent Anal Fissures (K60.2)

History of Gastroesophageal Reflux Disease (K21.9)

Otolaryngology:

Chronic Oral Aphthae (K12.0)

History of Sleep Apnea (G47.20)

History of Sinonasal Polyposis (J33.9)

Ophthalmology:

Keratoconus (H18.603)

Irregular/Asymmetric Astigmatism of Both Eyes (H52.213)

Dry Eye Syndrome (Severe Meibomian Gland Dysfunction & Tear Film Insufficiency)

(H04.123)

Eye Floaters (H43.399)

## APPENDIX B - LIST OF PREVIOUSLY GRANTED DISABILITY ACCOMMODATIONS

Due to his conditions, Mr. Kohn has been granted the following accommodations in the past, which the Committee is required to consider for future accommodations on the California Bar Exam, per State Bar Rule 4.85:

Springer Elementary School - IEP

Crittenden Middle School - IEP, tutoring, extra time on exams and assignments

Blach Junior High School - IEP, tutoring, extra time on exams and assignments

Mountain View High School - IEP, HSIEP, tutoring, extra time on exams and Assignments.

LSAT - 50% extra time for a 3 hr 30 min multiple choice exam.

GMAT – Similar to LSAT.

San Jose State University - 100% extra time on exams, private room, plus note taking Assistance.

University of Iowa Law School - 100% extra time on exams plus a private room, this increasing to 150% extra time on essay exams his final semester (reflected in later petition).

MPRE - 50% extra time, private room, plus a 15-minute supervised break for a 2 hr exam

FINRA - 100% extra time plus a meal break every 90 minutes, private room, and the ergonomic equipment provided to him, including Herman Miller Embody desk chair.

California Bar Exam (July 2018) - See Exhibits

California Bar Exam (Feb 2019) - See Exhibits

California Bar Exam (Feb 2020) - See Exhibits

**APPENDIX C - LIST OF DISABILITY ACCOMMODATIONS DENIED AND STILL AT ISSUE:**

Issue 1:  Assignment to From Home Modality as with Standard Examinees While Receiving All Approved Accommodations, Further Supported by Medical Complications with In-Person Testing Past Average Covid Pandemic Risks, Including Disability-Related Noncontagious Chronic Cough Symptoms, Immunocompromised Status, and Interference with Ability to Use Mask Uninterrupted by Need to Eat/Drink Frequently; Unless State Bar Proves All Possible Methods of Doing So Would be Fundamental Alteration or Undue Burden.

Issue 2: Denials of Other Covid Risk Mitigation Accommodations if Proctored In-Person, Regardless of Whether Such is Done In-Home or at Test Center (Unlike for Standard Applicants Due to Disabilities and Also Considering Disability-Related Noncontagious Chronic Cough Symptoms, Immunocompromised Status, and Interference with Ability to Use Mask Uninterrupted by Need to Eat/Drink Frequently):

(1) Instructions to onsite staff not to terminate exam based upon cough symptoms, which may be caused by chronic medical conditions.

(2) Camera-based supervision of Mr. Kohn during at minimum meal breaks, by onsite reviewers outside test room as to avoid need for uninterrupted internet connection, but avoid presence of others in the room while mask cannot be worn, such as during breaks for eating or drinking.

(3) To the extent such is not standard, that all proctors and staff present wear facial masks when in Mr. Kohn's presence, keep appropriate physical distance, be screened regularly for fever and symptoms of Covid, and if feasible be tested for Covid and test negative.

(4) That Mr. Kohn's personal protective equipment such as masks and gloves not be subject to inspection by any means that could contaminate it for its intended purpose of covid prevention.

Issue 3: Most Important Remaining Disability Accommodation Denials Irrespective of Modality, Which Are Necessary for Equal Accessibility and Level Playing Field:

(1) Specially trained and instructed disability proctor for autism as requested by Drs. Toren and Dresden;

(2) Stop the clock breaks for meal and restroom related conditions as requested by Dr. Clarke in 7/9/2020 affidavit, corroborated by Dr. Dresden, and also secondarily supported for autism as opined by Dr. Toren.

(3) Use of larger-screen external monitor for both the ergonomic reasons Dr. Dresden provided regarding myofascial pain syndrome, scapular dyskinesis, occipital neuralgia, and cervicalgia; and the dual keratoconus and dry eye syndrome visual disabilities basis asserted by both Drs. Goodman and Tearse.

Issue 4: Most Important Remaining Disability Accommodation Denials Specific to Remote/From Home Testing Modality if Granted Per Issue 1:

(A) Regardless of Whether Proctored Remotely or In-Person In-Home:

    (i) Permission to use restroom freely and still return to test session in progress or logon to test session past 10 minutes window depending on timing, as recommended by Drs. Clarke and Dresden based on pelvic floor dyssynergia, irritable bowel syndrome, and medication side effects.

    (ii) "Exam Room" space for rules about what can be present, as room is ordinarily personal bedroom rather than a space for which examinees bring from home only what is needed, be defined only to be the desk on which the computer equipment used to take the exam is set up and the space between the desk and the wall it faces for the width of the desk, to the extent that prohibited items are out of physical reach while taking the test and all legible text within eyesight is verifiably not related to the exam subject matter.

(B) Specific to Webcam-Based Remote and AI Proctoring Iteration:

    (i) Exemption from AI or remote proctoring security flags and exam rules intended to improve performance of such security methods that would be falsely or inherently triggered by the effects of his disabilities or the other accommodations approved for them, including:

    (a): Need to eat, drink, and take medicine during test.

(b): Need to use, and vary webcam position on, sit-to-stand desk already approved for use, and larger-screen monitor that Mr. Kohn's doctors recommend which would require webcam on laptop to monitor him from an angle off to the side.

(c): Autism-related fidgeting and self-stimulation involuntary behavior concerns raised by Dr. Dresden in his 8/4/2020 affidavit further preventing Mr. Kohn from keeping the webcam centered on his face at all times, independent of the monitor.

(d): The required access to the restroom during exam sessions.

(ii) Ensure that all remote proctors and/or security flag video reviewers are aware of all disabilities and accommodations approved, and how they change the standard protocols, and moreover, meet the training and instructions criteria for proctors that Mr. Kohn and Dr. Toren have requested for in-person proctors.

(iii) Increased login time limit and logon period flexibility based on the more extended test schedule required and approved for disabilities making it even more likely that at some point during the examination power or internet outages may occur (especially given the forecasted fire season and weather conditions) without the excessively harsh strict consequence of being unable to complete the exam should such occur.


Issue 5: Most Important Remaining Disability Accommodation Denials Specific to In-Person Test Center:

(1) Ergonomic equipment with features and components as defined by Dr. Dresden (see Exhibits) provided by Bar in test room or arrangements for storing and transporting Mr. Kohn's own such equipment, as described in 6/4/2020 narrative for administrative petition within Exhibits, as recommended by Drs. Dresden and Toren.

(2) Mitigation of Unequal Accessibility barriers relative to standard at-home testing, as described in 6/4/2020 narrative for administrative petition within Exhibits, but in summary:

(A) Location of Test Center minimal commute distance from residence and no more than 50 miles, confirmed with maximum advance notice.

(B) Commute Expenses.

(C) Hotel Lodging at Test Center or as close as possible if location is farther than 10 miles

commute, or if for any reason ergonomic equipment supplied to him is denied, at State Bar's expense and responsibility to ensure availability.

Issue 6: Comparatively less important, but still appropriate for level playing field and/or equal accessibility, accommodations:

 (1) Equal access to any hotel group rate services provided to other examinees.

(2) Removing the unduly subjective and restrictive requirement that food brought must be completely non-aromatic.