MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com


*Attorney for Plaintiff*

BENJAMIN KOHN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| BENJAMIN KOHN | **)** | CASE NO. 20-4827 |
| *Plaintiff,* | **)** | |
| v. | **)** | |
| THE STATE BAR OF CALIFORNIA, | **)** | **REPLY TO DEFENDANT'S RESPONSE** |
| CALIFORNIA COMMITTEE OF BAR | **)** | **TO PLAINTIFF'S RENEWED MOTION** |
| EXAMINERS, and THEIR AGENTS IN | **)** | **FOR PRELIMINARY INJUNCTION** |
| THEIR OFFICIAL CAPACITY | **)** | |
| *Defendants.* | **)** | |
| | **)** | |
| | **)** | |

1

# **TABLE OF CONTENTS**

**I. Plaintiff's Renewed Motion Makes a Cognizable Request for Injunctive Relief, is Supported By Competent Evidence, and Complies with Civil Local Rules…..p 5**

    **A. Plaintiff's Motion Makes a Cognizable Request for Injunctive Relief…..p 5**

    **B. Plaintiff's Renewed Motion Complies with Local Rules…..p 7**

    **C. Plaintiff's Renewed Motion is Supported by Competent Evidence in Compliance with Civil Local Rules 7-2(d) and 7- 5(a)…...p 10**

**II. Plaintiff Has Shown that The Law And Facts Clearly Favor His Position…..p C. Plaintiff's Renewed Motion is Supported by Competent Evidence in Compliance with Civil Local Rules 7-2(d) and 7- 5(a)…..p 13**

    **A. Legal Standard…..p 13**

    **B. Plaintiff Has Not Been Granted Effective and Reasonable Accommodations Even Though the Bar has Granted Some of His Requests…..p 14**

**III. Replies to Defendant's Claims That Motion is Barred as a Matter of Law…..p 27**

    **A. Sovereign Immunity. Rehabilitation Act, and Unruh Act…..p 27**

    **B. Exhaustion of Administrative Remedies…..p 27**

    **C. Irreparable Harm…..p 27**

**IV. Conclusion…..p 28**

# **TABLE OF AUTHORITIES**

Case Law:

*California School for the Blind v. Honig*, 736 F.2d 538, 545-46 (9th Cir. 1984).....................p 14

*Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733 (9th Cir. 1999)...................p 14

*Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772 CW, 1995 U.S. Dist. LEXIS 22122, at **31-32 (N.D. Cal. June 9, 1995)...................p 14

*MX Group, Inc. v. City of Covington*, 293 F.3d 326, 344-45 (6th Cir. 2002)...................p 14

*Buckingham v. U.S.*, 998 F.2d 735, 740-41 (9th Cir. 1993)...................p 15

K.M. v. Tustin Unified School Dist., 725 F.3d 1088, 1096-97 (9th Cir. 2013)...................p 24

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)...................p 12

*Clune v. Publishers' Ass'n of N.Y. City*, 214 F.Supp. 520, 531 (S.D.N.Y. (1963))...................p 12

*Langon v. Dep't of Health and Human Servs.*,959 F.2d 1053, 1060–61 (D.C. Cir. 1992)...................p 15

<u>Statutes and Administrative Law</u>

U.S. Equal Employment Opportunity Commission, Pandemic Preparedness in the Workplace and the Americans with Disabilities Act, EEOC.gov

https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act#9....................p 16

Civil Local Rule 7-2(b)(3)....................p 7, 9, 10

Civil Local Rule 7-5(A)....................p 9, 10

FRCP 6(c)(2)....................p 9

4

# ARGUMENT

## I. Plaintiff's Renewed Motion Makes a Cognizable Request for Injunctive Relief, is Supported By Competent Evidence, and Complies with Civil Local Rules.

### A. PLAINTIFF'S MOTION MAKES A COGNIZABLE CLAIM FOR INJUNCTIVE RELIEF

Plaintiff made a cognizable Request for Relief on page 5 of his Renewed Motion for Preliminary Injunction by asking for a list of accommodations contained concisely in Appendix C. The requests were fully summarized instead of highlighting the most important five that applied regardless of modality, but with the exception of omission of weekend only scheduling from the renewed motion, both motions explicitly sought the same relief: that made in the administrative petitions, and that Defendants had ample notice of from reviewing and adjudicating that petition.

Nothing in the law or Local Rules disallows Plaintiff from referencing his previous motion for preliminary injunction, his previous administrative appeals, nor an Appendix which contains the full list of requested accommodations. Due to the complexity and numerosity of Plaintiff's requests, he put them in an Appendix for ease of reading. They are clearly still part of the motion.

Replying to the Bar's assertion that the requests are difficult to understand or sometimes phrased in the alternative, Plaintiff argues that neither complexity or alternative phrasing of requests for relief, natural consequences of the variations on standard test conditions this cycle, are reasons under the law for them to be dismissed. Plaintiff urges the Court to consider each request on its merits rather than outright dismissal because they are "too complex."

Defendants complain throughout their 9/14/2020 opposition as to their allegations that Plaintiff has greatly expanded the relief sought from the first motion to the renewed motion without explanation (pp. 1:15-21; 9:4-26), that Plaintiff has thus failed to give Defendants and the Court clear notice of what relief he is seeking (*Id*.; pp. 8:8-19; 11:9-12), and also that Plaintiff

raised in his renewed motion requests for accommodations Defendants allege had not previously been raised (*Id.*; pp. 9:9-11; 12:15-21), and that it's somehow unfair for Defendants to have to read 776 pages of exhibits that comprise much of the file for the administrative case Defendants simultaneously purport to have spent the last several months reviewing and adjudicating to develop the 8/27/2020 CBE decision in order to determine the support for the same set of requests (those in Appendix C) they'd been asked to review administratively (pp. 1:27-2:3; 8:26-28; 9:9-26; 12:12-14; 13:1-6).

Yet, the record reveals that all of these allegations are demonstrably substantially false. In the first motion for preliminary injunction, Plaintiff's request for relief provided: "Mr. Kohn requests that the Court issue a preliminary injunction granting the disability accommodations requested in his testing accommodations petition and appeal submitted to the California Committee of Bar Examiners for the October 2020 California Bar Exam… the five most important accommodations are… Note: Mr. Kohn's petition to the Committee, attached as an Exhibit, lists all accommodations for the Fall 2020 exam." (see first motion, p. 2:2-12). The renewed motion in turn seeks:

"Mr. Kohn now seeks relief in the form of an injunction granting him the testing accommodations he seeks, listed below in Appendix C, and if the Court finds that Plaintiff has demonstrated the requisite likelihood of success on the merits as to some of the disputed accommodation denials, but not others, Plaintiff respectfully requests that the Court sever the requests appropriately. He also respectfully requests that the Court issue an injunction requiring that the State Bar administer the accommodations in such a way that he may still test from home as standard examinees are permitted unless it finds that the State Bar has proven that doing so would be a fundamental alteration or an undue burden, in which case he instead respectfully requests that the additional accommodations necessitated to mitigate the prejudice of being required to test at the test center be granted through an injunction instead." (Renewed Motion, p. 7:12-21).

While Plaintiff had earlier explained how he was withdrawing, for the October 2020 exam, the weekend only scheduling accommodation request for purposes of preliminary injunctive relief (see Renewed Motion, p. 5:6-11), comparing these two passages Plaintiff

otherwise sought the same relief in both motions: what he had sought from Defendants administratively. With the narrowing of confirmed standard test conditions, the two grants the CBE made between motions, and the confirmation that Defendants would require Mr. Kohn to test in-person at a test center even after the California Supreme Court confirmed a modality with standard conditions of at-home remote testing, Plaintiff deemed it appropriate to fully summarize all of the requests still at issue after the updated factual developments, and did so in Appendix C.

In contrast, when Plaintiff made the first motion, with no tentative modality assignment and standard test conditions not adequately confirmed yet, Counsel thought it appropriate to instead introduce the issues to the Court prior to it performing any review of the Exhibits by identifying the five most important requests that would apply irrespective of what modality Mr. Kohn might be assigned to. This perceived discrepancy does not change the fact that every request raised in the renewed motion had been previously raised in the first motion, and as the requests mirror the administrative case, Defendants should have had ample notice of what the requests and evidentiary support consisted of. To the extent they claim not to, such would further indicate that Defendants had failed to afford Plaintiff a meaningful administrative review and thus tip the balance of equities yet further into Plaintiff's favor.

As to the size of the evidentiary Exhibits (776 pages with the First Motion, another 51 pages with the 8/10/2020 reply, and approximately 29 pages of new evidence attached hereto), most of it Defendants purport to have just carefully reviewed for their administrative decision and has been on file with the Court largely the entire duration of the case. To Counsel, the large file size simply illustrates the overwhelming evidentiary support for Plaintiff's requests, which would tend to show that the facts and law are clearly in Plaintiff's favor.

### **B. Plaintiff's Renewed Motion Complies with Local Rules**

Appendix C of the Renewed Motion Does Make Cognizable Requests for Relief and Does Not Materially Violate Civil Local Rule 7-2(b)(3)

Civil Local Rule 7-2(b)(3) provides in its entirety: "In the second paragraph, a concise statement of what relief or Court action the movant seeks." (Emphasis Added). Plaintiff has

complied with this requirement. He has stated in the simplest possible terms within a single paragraph that he is seeking a preliminary injunction granting a specific set of disputed testing accommodations for the October 2020 California Bar Examination, he has cited to where in the record the full descriptions and explanations of those requests can be found (e.g. the administrative case file), and he has cited to the part of the renewed motion where he's reduced the requests to the most concise possible summary that encompasses all of them in at least general terms (Appendix C). The cited materials incorporated by reference need not be limited to what can be reduced to a single paragraph. Nor does length, especially necessary length to give effect to the substantive provisions of law or the requirements for accommodating medical needs of such extraordinary breadth and severity as Mr. Kohn's, render cogent and unambiguous plain language such as that in Appendix C not cognizable.

Although Defendants might prefer that Civil Local Rule 7-2(b)(3) be construed in such a way as to prohibit substantively exacting or expansive relief even where substantively supported by the law, such as to prohibit civil plaintiffs from seeking relief that can't be reduced in an integrated writing to a single paragraph, that construction would be belied not only by the plain language of the rule, but also by the purpose of procedural rules, which are not supposed to on their face be outcome-determinative or contradict what substantive remedies statutes provide for, and would have the effect of essentially barring complex civil litigation from this Court. Accordingly, this Court should find that Plaintiff has complied with Civil Local Rule 7-2(b)(3), or at the very least that any noncompliance is excusable in the circumstances of this case.

Further, the relief requested that is summarized in Appendix C is also clearly cognizable, because: (i) All accommodation requests in Appendix C were previously raised in the administrative case and thus Defendants had notice of them for months to years; and (ii) Both the first and renewed motion for preliminary injunction explicitly adopted the accommodation requests in the administrative cases, with the exception of weekend only scheduling in the renewed motion, though Appendix C more thoroughly summarizes the requests where, before the CBE announced modality, Plaintiff highlighted the five most important requests irrespective of modality.

## The Renewed Motion is Supported by Substantial Competent Evidence

(i) The Exhibits Filed to Support Plaintiff's First Motion for Preliminary Injunction and the Attachments to Plaintiff's 8-10-2020 Reply to Defendants' Opposition to that Motion, are a Collection of Affidavits Already Executed Under Penalty of Perjury, Most of Which Had Effectively Been Stipulated Authentic by Defendants Filing the Same Documents, and Have Been Verified and Authenticated Under Penalty of Perjury by Plaintiff's 8-10-2020 Declaration Since Before Initiation of the Renewed Motion.

Each of Plaintiff's medical affidavits from his experts, and narrative statements from him, clearly contains a declaration under penalty of perjury stating its truthfulness and signed by the doctor who wrote the affidavit or by the Plaintiff for most of the narratives (as the Bar has required throughout the administrative process). In addition, the Plaintiff has filed with his 8/10/2020 Reply to Defendants' opposition to his first motion a sworn affidavit stating that all doctors' affidavits, narratives, and correspondence are authentic to the best of his knowledge, which affidavit has been on file and served on Defendants since before the initiation of the renewed motion on 8/31/2020. Defendants failed to articulate any prejudice from this perceived error, nor can it do so as it was already in possession of every document therein prior to service of the renewed motion.

As further proof of the authenticity of the affidavits, Defendants' own exhibits, authenticated by the declaration of program manager for examinations Lisa Jeong Cummins, included most of the documents within Plaintiff's exhibits (although they purposefully omitted the 12/2019 appeal submission; however this submission was included with Plaintiff's exhibits for the Court's reference). The effect of Defendant filing all other portions of the administrative file as of the date of their opposition to the first motion, 8/3/2020, should be that at least those documents should be considered as stipulated to be authentic or at least that Defendants should be estopped from asserting that they are not.

Plaintiff further stresses that preliminary injunctions are an equitable remedy, and the Court has the discretion, in the interest of justice, to consider all of the material exhibits,

9

especially as Plaintiff had attached a declaration of authenticity verifying those exhibits to his 8-10 reply and there would be no prejudice to Defendants as to their notice of the authenticity of the material documents.

Accordingly, Defendant's claim that the administrative file exhibits are not authentic, are unverified, or are not signed under penalty of perjury, is spurious, misleading, and a waste of this Court's valuable time. All material exhibits are clearly the sworn testimony of Plaintiff's doctors and Plaintiff himself, or were filed as part of Defendants' exhibits for the opposition to the first motion.

**C. Plaintiff's Renewed Motion is Supported by Competent Evidence in Compliance with Civil Local Rules 7-2(d) and 7- 5(a)**

Local Rule 7-5(A) states in its entirety, "factual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration."

Local Rule 7-5(A) does not state that the supporting affidavit or declaration need be refiled as attached to the motion if the identical document is already on file with the Court. There is no logical policy reason to require such refiling, and doing so (especially with such large files) would have the undesirable effect of running up potential court costs, which are calculated in part by the page count of filings. By incorporating the Exhibits by reference in the renewed motion, Plaintiff made the proper references to the record, and because the multiplicity of supporting affidavits within those Exhibits satisfy Rule 7-5(A), especially as they are all authenticated and verified by the 8/10/2020 declaration of Plaintiff that was also on file with the Court, the factual contentions within the renewed motion are supported by competent evidence. Accordingly, Plaintiff has complied with Local Rule 7-5(A).

(iii) Plaintiff has complied with Civil Local Rule 7-2(D) and To the Extent Plaintiff May Not

Have Complied with the Letter of Civil Local Rules 7-4(A)(2) and 7-2(C), Preparing a Proposed Order Prior to a Ruling or Guidance from the Court Would Be Impractical Due to the Iterations of Conditional and Alternative Relief Raised, and Counsel's Omission of Tables is a Petty Error That Should Not Be a Basis for Denial of Plaintiff's Motion.

Aside from Civil Local Rule 7-5(A), Defendants allege Plaintiff violated Civil Local Rules 7-2(C) and (D), as well as Civil Local Rule 7-4(A)(2).

Civil Local Rule 7-2(D) states in its entirety: "Each motion must be accompanied by affidavits or declarations pursuant to Civil L.R. 7-5."  Civil Local Rule 7-5 has been substantially complied with, as explained above.

Civil Local Rule 7-2(C) states in its entirety: "Unless excused by the Judge who will hear the motion, each motion must be accompanied by a proposed order."

Although Plaintiff maintains that the relief requested in his renewed motion is cognizable, and would dispute that conditional or alternative relief in this context alters that, Counsel posits that preparing a proposed order before the Court gives any indication of what iteration of relief it finds warranted would be impractical.  Counsel would gladly prepare a proposed order upon the request and guidance of the Court.  If Counsel errs by doing so, he apologizes and respectfully asks the Court to excuse his mistake and allow him to remedy any defect.

Civil Local Rule 7-4(A)(2) states in material part: "... in support, opposition, or reply to a motion must contain:... if in excess of 10 pages, a table of contents and a table of authorities."

Counsel concedes that he erred in not including a table of contents or table of authorities as he inadvertently missed this requirement, apologizes, and respectfully asks that Plaintiff not be penalized for this mistake.  Counsel notes the asymmetry of litigation resources between the parties, the short turnaround time necessitated by the circumstances of this case, that he is a solo

practitioner without a paralegal or other support staff, and that this is the first case he's litigated in the United States District Court for the Northern District of California.

(iv) Plaintiff is Permitted to Attach New Evidence in Support of a Reply Where Relevant to Matters Put at Issue in Defendants' Opposition, And So Attaches Supplemental Declarations of Plaintiff Benjamin Kohn, Psychologist Dr. Rosalie Toren, and Gastroenterologist Physician Dr. John Clarke.

Defendants make numerous factual contentions throughout its 9/14/2020 opposition that Plaintiff disputes. In reply, Plaintiff attaches the 9/16/2020 declaration of his psychologist Dr. Toren, the 9/18/2020 declaration of his gastroenterologist Dr. Clarke, and the 9/19/2020 declaration of Plaintiff himself. Further, factual developments discovered by Plaintiff on 9/19/2020, subsequent to the renewed motion and even to Defendants' opposition, during the two "Mock Exams" Defendants required him to take to calibrate their new software for the October 2020 exam also raise issues in regards to the passing representation that Defendants' made in their opposition as follows: "Other statements appear to seek clarification on accommodations that have already been granted, such as "[u]se of a larger-screen external monitor for… ergonomic reasons." *Id*. at 33:6." (9/14/2020 opposition, p. 10:14-15).

Yet, as Plaintiff responds at pp. 1-2 of his 9/19/2020 declaration: "My existing testing accommodation approvals allows me to bring and use "other ergonomic items," but does not explicitly mention whether that will include a larger-screen external monitor, which was a new request for this exam cycle in my administrative petition supported for two independent physical/ergonomic and visual disability grounds by three of my experts, Drs. Dresden, Goodman, and Tearse. Since its prohibition is standard, and no clear exception was communicated, it was included in my renewed motion within Appendix C. In response, Defendants' Counsel seems to represent to the Court in the 9/14/2020 opposition that it had been granted. (9/14/2020 opposition, p. 10:14-15). If so, I'd want it in an integrated writing with my approvals from the Office of Admissions to be relied upon, but more importantly, Defendants would need to arrange for the settings in ExamSoft to stop blocking access to the monitor. Just

today, at Defendants' request, I took two mock exams for familiarizing myself with their new software that must be used to take the exam.  Immediately upon entering the secure mode, the external monitor went black and was blocked.  Clearly, for any accommodations granted voluntarily or by injunction, there needs to be an explicit provision of the Order requiring Defendants to ascertain the technical implementation requirements to make those modifications, especially given the built-in automated security elected due to most examinees testing from home."

## II. Plaintiff Has Shown that The Law And Facts Clearly Favor His Position

### A.  LEGAL STANDARD FOR MANDATORY INJUNCTION

Defendants again point out the heightened standard for a "mandatory preliminary injunction," which is any injunction that requires a party to affirmatively act rather than simply preserve the status quo. Mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) quoting *Clune v. Publishers' Ass'n of N.Y. City*, 214 F.Supp. 520, 531 (S.D.N.Y. 1963)).

In this case, Plaintiff will suffer imminent extreme harm not fully compensable by damages for two reasons: (1) if not granted required accommodations under the ADA, he will likely fail the bar exam, and (2) he risks his health and life due to CoVid by being forced to test in person, rather than at home as allowed for non-disabled takers.

As the upcoming exam will likely be his final attempt, as detailed previously in his motion, he will lose out on a lifetime of opportunities as a licensed attorney in his home state of California due to the Bar's violation of the ADA. In addition, because the Bar has now decided to allow non-disabled takers to test from home, they have illegally discriminated against disabled takers who must risk CoVid by being forced to test at a test center. As detailed in the motion, Mr. Kohn's immunocompromised state puts him at heightened risk of contracting CoVid as well as heightened risk of complications if he does catch it. Non-disabled takers will not face this risk,

thus the Bar has treated the two groups of examinees unequally to the detriment of disabled takers.  This is especially true in Mr. Kohn's case, due to the digestive disabilities that will require him to frequently eat or drink throughout the test day, in the presence of at least one proctor, which cannot be done while wearing a mask, and because he separately faces the risk that in-person testing will result in his exam being terminated based upon chronic cough symptoms likely to occur due to his noncontagious medical conditions.

## B. PLAINTIFF HAS NOT BEEN GRANTED EFFECTIVE AND REASONABLE ACCOMMODATIONS EVEN THOUGH THE BAR HAS GRANTED SOME OF HIS REQUESTS.

The Committee argues that Mr. Kohn has not met his burden of proof of illustrating that he will likely win on the merits of his case regarding (1) the reasonableness of his accommodations (simply because some of his requests were granted), and (2) that some of his requested accommodations will make the exam too difficult for them to administer (ie, will constitute a "fundamental alteration" of the exam).

First, Mr. Kohn's requested additional accommodations are reasonable, since they are supported by extensive and well documented medical evidence, and second, the administration of these accommodations will not constitute a fundamental alteration of the exam or impose an undue burden on the CBE. Plaintiff urges the Court to review the medical evidence thoroughly in order to see that he is likely to prevail on the merits of his ADA claim, namely, that his requested accommodations are reasonable.

Facial Discrimination

In regards to Appendix C Issue 1, the standard for outright unlawful facial disability discrimination (exclusion from being allowed standard test conditions on disability status) may be met even if the Court doesn't find a disability basis for a specific testing accommodation of testing from home in the sense of requesting that be permitted upon a disability basis where nondisabled examiness are not permitted to.  Under federal law, entities must administer

14

professional licensing examinations in a place and manner accessible to persons with disabilities. The obligation to ensure disability nondiscrimination includes an obligation to ensure equal safety. *California School for the Blind v. Honig*, 736 F.2d 538, 545-46 (9th Cir. 1984), vacated on other grounds, 471 U.S. 148 (1985); *Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772 CW, 1995 U.S. Dist. LEXIS 22122, at **31-32 (N.D. Cal. June 9, 1995).

Mandatory in-person test-center assignment deprives Plaintiff of his ability to practice social distancing and sheltering in place as recommended by the CDC and World Health Organization, and as required by local governments, which depends on staying inside their homes as much as possible. Despite this critical public health measure, Defendants are unlawfully requiring Plaintiff as a test-taker with certain disability-related accommodations to test in-person while allowing non-disabled test-takers to test remotely, safely from their homes. This two-tiered system unduly burdens Plaintiff by placing him at increased risk of coming into contact with others, contracting the virus, and spreading the disease in their households and communities. The Ninth Circuit has held that facially discriminatory laws per se violate the ADA, thereby obviating the need for a reasonable accommodations analysis. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 733 (9th Cir. 1999) (hereinafter "Bay Area Research"). In Bay Area Research, the Court held that a statute singling out methadone clinics for different zoning procedures facially discriminated against people who were addicted to heroin and seeking short-term outpatient heroin detoxification services. *Id*. at 733-34. The Court held that the reasonable modification test was inapplicable to facially discriminatory laws because modifications would "fundamentally alter the statute in question" thereby allowing defendants to "easily evade the strictures of the ADA by making statues expressly discriminatory." *Id*. at 734; see also *MX Group, Inc. v. City of Covington*, 293 F.3d 326, 344-45 (6th Cir. 2002) ("We also reject Defendants' reasonable accommodation argument because it is inapplicable inasmuch as the ordinance at issue is facially discriminatory.").

Here, Defendants' in-person requirement facially discriminates against disabled test-takers by categorically requiring in-person testing only for disabled test takers with certain accommodations. By requiring test takers to risk their lives while compromising their performance and, in some situations, preventing them from taking the test altogether, the

in-person rules disproportionately burden disabled test takers with certain accommodations. Defendants' policies thus per se violate the ADA.

Forcing disabled test-takers with COVID-19 risks to test in-person and risk their health, lives, and well-being interferes with their pursuit of a "normal life," thereby placing an undue burden on them in violation of the ADA. *Buckingham v. U.S.*, 998 F.2d 735, 740-41 (9th Cir. 1993). In similar circumstances, the Ninth Circuit has required work-at-home and relocation accommodations even where they go beyond enabling access to the job to allow employees to pursue an ordinary and healthy lifestyle equal to nondisabled employees. In *Buckingham*, the Ninth Circuit held the Postal Service could be required to reasonably accommodate an employee's request to transfer him to a location where he could better obtain medical treatment for his AIDS and perform the same job. 998 F.2d at 740-41. The Court emphasized that the ADA obligated the employer "not to interfere . . . with a [disabled] employee's efforts to pursue a normal life." Id. at 740. Similarly, in *Humphrey v. Mem'l Hosps. Ass'n*, the Ninth Circuit found a triable issue of fact as to whether an employer had a duty under the ADA to explore work-at-home accommodations for an employee with OCD where evidence showed that he could perform the essential functions of the job at home. 239 F.3d 1128, 1136-37 (9th Cir. 2001) (denying defendant's motion for summary judgment). See also *Langon v. Dep't of Health and Human Servs.*, 959 F.2d 1053, 1060–61 (D.C. Cir. 1992). In similar circumstances, the Ninth Circuit has required work-at-home and relocation accommodations even where they go beyond enabling access to the job to allow employees to pursue an ordinary and healthy lifestyle equal to nondisabled employees. The EEOC has also issued a "Pandemic Preparedness in the Workplace" guidance stating that "employees with disabilities that put them at high risk for complications of pandemic influenza may request telework as a reasonable accommodation to reduce their chances of infection during a pandemic." U.S. Equal Employment Opportunity Commission, Pandemic Preparedness in the Workplace and the Americans with Disabilities Act, EEOC.gov

https://www.eeoc.gov/laws/guidance/pandemic-preparedness-workplace-and-americans-disabilities-act#9

This same issue is presently being litigated concurrently to this matter against Defendants by other plaintiffs in this very Court, where it is also pending a motion for preliminary injunction (see 3:20-cv-06442)

However, even if this Court rejects Plaintiff's argument for inherent discrimination by denying even the standard test condition due to disability in this regards, Mr. Kohn's drug-induced immunodeficiency documented by Drs. Rubinstein and Dresden, his gastroparesis that requires him to eat frequently and thus remove his mask during the test, and the chronic cough-producing combination of GI conditions that could result in Mr. Kohn being mistakenly deemed an undue risk for CoVid during the exam and consequently having his exam terminated by onsite staff, all constituted disability basises for accommodations for more vigorous precautions to be taken to prevent CoVid transmission than might be reasonable for examinees at average risk. Drs. Dresden and Clarke noted how the exposure risk for CoVid is not just from the test itself, but from the test center assignment that effectively forces Plaintiff to stay in a hotel for at least seven nights and while so doing forego home cooking at his household for restaurant deliveries.

The following is a list of supporting evidence for each of Plaintiff's requested accommodations from Appendix C:

Appendix C Issues 1 and 2 Supporting Expert Evidence:

      - Dr. Clarke's 7/9/2020 affidavit and attachments and 8/7/2020 affidavit.

      - Dr. Rubinstein's 7/14/2020 Physical Disability Verification Form B/Affidavit and Attachments.

      - Dr. Dresden's 7/16/2020 and 8/4/2020 affidavits.

      Appendix C Issues 1 and 2 Opposing Expert Evidence:

      None Provided to Plaintiff by Defendants.

(ii) Plaintiff's Positions Supported by Overwhelming Weight of Evidence in Administrative Cases for Appendix C Issue 3.

17

(1) Specially trained and instructed disability proctor for autism as requested by Drs. Toren and Dresden;..."

Supporting Expert Evidence:
- Dr. Dresden's 1/26/2019 affidavit.
- Dr. Toren's 6/4/2020 report/affidavit and Psychological Disability Verification Form E/Affidavit.

Opposing Expert Evidence:
- State Bar Psychological Disabilities Expert Opinions Dated 12/17/2019 (explicitly), 7/27/2020 (implicitly), and 8/20/2020 (implicitly).

(2) Stop the clock breaks for meal and restroom related conditions as requested by Dr. Clarke in 7/9/2020 affidavit, corroborated by Dr. Dresden, and also secondarily supported for autism as opined by Dr. Toren.
   - Dr. Dresden's 2018 Physical Disability Verification Form B/Affidavit and Attachments.
   - Dr. Clarke's 2018 Physical Disability Verification Form B/Affidavit and Attachments.
   - Dr. Dresden's 1/26/2019 affidavit for appeal on 2/2019 exam.
  - Dr. Dresden's 12/19/2019 affidavit for appeal on 2/2020 exam.
  - Dr. Clarke's 12/20/2019 affidavit for appeal on 2/2020 exam.
  - Dr. Dresden's 3/13/2020 affidavit, 6/4/2020 affidavit, and 8/4/2020 affidavit for this Exam.
  - Dr. Clarke's 7/9/2020 affidavit and attachments and 8/7/2020 affidavit for this exam.

Opposing Expert Evidence:
None provided to Plaintiff other than summary recommendations of the psychological

disabilities expert not to provide anything denied previously.

(3) Use of larger-screen external monitor for both the ergonomic reasons Dr. Dresden
provided regarding myofascial pain syndrome, scapular dyskinesis, occipital
neuralgia, and cervicalgia; and the dual keratoconus and dry eye syndrome visual
disabilities basis asserted by both Drs. Goodman and Tearse.

Supporting Expert Evidence:
- Dr. Dresden's 6/4/2020 affidavit.
- Dr. Goodman's 7/10/2020 affidavit and attachments.
- Dr. Tearse's 7/13/2020 Visual Disabilities Verification Form H/affidavit and
  attachments.

Opposing Expert Evidence:
None provided to Plaintiff other than summary recommendations of the psychological
disabilities expert not to provide anything denied previously.

(iii) Plaintiff's Positions Supported by Overwhelming Weight of Evidence in Administrative
Cases for Appendix C Issue 4.

(A) Regardless of Whether Proctored Remotely or In-Person In-Home:
  (i) Permission to use restroom freely and still return to test session in progress or logon to
      test session past 10 minutes window depending on timing, as recommended by Drs.
      Clarke and Dresden based on pelvic floor dyssynergia, irritable bowel syndrome, and
      medication side effects... "
      Supporting Expert Evidence:
      - Dr. Dresden's 6/4/2020 affidavit and attachments.
      - Dr. Clarke's 7/9/2020 affidavit and attachments and 8/7/2020 affidavit.

<u>Opposing Expert Evidence:</u>

None provided to Plaintiff other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

(ii) "Exam Room" space for rules about what can be present, as room is ordinarily personal bedroom rather than a space for which examinees bring from home only what is needed, be defined only to be the desk on which the computer equipment used to take the exam is set up and the space between the desk and the wall it faces for the width of the desk, to the extent that prohibited items are out of physical reach while taking the test and all legible text within eyesight is verifiably not related to the exam subject matter."

<u>Supporting Expert Evidence:</u>

This largely parallels the basis for the ergonomic equipment, which is kept in the room necessitating this, which then includes:
- Dr. Dresden's 2017 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 2018 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 1/26/2019 affidavit on appeal for the 2/2019 exam.
- Dr. Dresden's 12/19/2019 affidavit on appeal for the 2/2020 exam.
- Dr. Dresden's 6/4/2020 affidavit for this exam.
- Dr. Toren's 6/4/2020 report/affidavit for this exam.

<u>Opposing Expert Evidence:</u>

None provided to Plaintiff other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

"... (B) Specific to Webcam-Based Remote and AI Proctoring Iteration:

  (i) Exemption from AI or remote proctoring security flags and exam rules intended to improve performance of such security methods that would be falsely or inherently triggered by the effects of his disabilities or the other accommodations approved for

them, including:

(a): Need to eat, drink, and take medicine during test.

(b): Need to use, and vary webcam position on, sit-to-stand desk already approved for use, and larger-screen monitor that Mr. Kohn's doctors recommend which would require webcam on laptop to monitor him from an angle off to the side.

(c): Autism-related fidgeting and self-stimulation involuntary behavior concerns raised by Dr. Dresden in his 8/4/2020 affidavit further preventing Mr. Kohn from keeping the webcam centered on his face at all times, independent of the monitor.

(d): The required access to the restroom during exam sessions..."

This is mostly an issue of making sure the new methods of exam security are implemented in a way compatible with the existing accommodation requests, rather than having an independent disability basis for experts to be at issue, though is discussed in Dr. Dresden's 6/4/2020 and 8/4/2020 affidavits briefly.

... (ii) Ensure that all remote proctors and/or security flag video reviewers are aware of all disabilities and accommodations approved, and how they change the standard protocols, and moreover, meet the training and instructions criteria for proctors that Mr. Kohn and Dr. Toren have requested for in-person proctors... "

This largely parallels the expert support for and against the proctor issue (see above).

... (iii) Increased login time limit and logon period flexibility based on the more extended test schedule required and approved for disabilities making it even more likely that at some point during the examination power or internet outages may occur (especially given the forecasted fire season and weather conditions) without the excessively harsh strict consequence of being unable to complete the exam should such occur... "

This is mostly an issue of making sure the new methods of exam security are implemented in a way compatible with the existing accommodation requests, rather than having

an independent disability basis for experts to be at issue, though similar expert reasoning as for extra time could also apply.

(iv) Plaintiff's Positions Supported by Overwhelming Weight of Evidence in Administrative Cases for Appendix C Issues 5 and 6.

Issue 5: Most Important Remaining Disability Accommodation Denials Specific to In-Person Test Center:

(1) Ergonomic equipment with features and components as defined by Dr. Dresden (see Exhibits) provided by Bar in test room or arrangements for storing and transporting Mr. Kohn's own such equipment, as described in 6/4/2020 narrative for administrative petition within Exhibits, as recommended by Drs. Dresden and Toren...

Supporting Expert Evidence:
- Dr. Dresden's 2017 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 2018 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 1/26/2019 affidavit on appeal for the 2/2019 exam.
- Dr. Dresden's 12/19/2019 affidavit on appeal for the 2/2020 exam.
- Dr. Dresden's 6/4/2020 affidavit for this exam.
- Dr. Toren's 6/4/2020 report/affidavit for this exam.
- Dr. Clarke's 7/9/2020 affidavit and attachments for this exam.

Opposing Expert Evidence:
None provided to Plaintiff other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

(2) Mitigation of Unequal Accessibility barriers relative to standard at-home testing, as described in 6/4/2020 narrative for administrative petition within Exhibits, but in summary:

    (A) Location of Test Center minimal commute distance from residence and no more than 50

miles, confirmed with maximum advance notice.

(B) Commute Expenses.

(C) Hotel Lodging at Test Center or as close as possible if location is farther than 10 miles commute, or if for any reason ergonomic equipment supplied to him is denied, at State Bar's expense and responsibility to ensure availability."

This is more about offsetting the burdens to accessibility relative to others without disability accommodations caused by the manner in which the State Bar is administering the accommodations necessitated by the disabilities (e.g. requiring me to test in-person at a test center when other examinees are permitted to test at home). As such, it is outside medical expert purview, and to Plaintiff's understanding is largely a legal dispute.

Issue 6: Comparatively less important, but still appropriate for level playing field and/or equal accessibility, accommodations:

(1) Equal access to any hotel group rate services provided to other examinees.

(2) Removing the unduly subjective and restrictive requirement that food brought must be completely non-aromatic."

The hotel group rates are also more about offsetting the burdens to accessibility relative to others without disability accommodations caused by the manner in which the State Bar is administering the accommodations necessitated by the disabilities. (e.g. based on the effects of the process for seeking accommodations, including the delay in obtaining exam schedule and location compared to others for a first-come first-serve limited capacity service, and the scope of the service offered not encompassing the expanded schedule for the accommodations). As such, it is outside medical expert purview, and to my understanding is largely a legal dispute. The second is simply an unreasonable restriction on an accommodation already approved based on uncontested expert support from Drs. Dresden and Clarke.

On 8/13/2020 this Court agreed with Defendants on the issue of ripeness, denying the first motion without reaching any other issue, in order to generously provide Defendants the opportunity to obtain responsive expert opinions on the more recent administrative addendums and the new medical evidence they contained that Plaintiff had submitted to them and to "[develop] the factual record."  (8/13/2020 Order Denying First Motion for Preliminary Injunction, p. 7:10-13).  Seemingly to Plaintiff, this Court found that Defendants doing so would be sufficiently helpful to its review of the material factual issues  as to outweigh the cogently articulated prejudice to Plaintiff of not receiving a decision until very close to the exam.

However, instead of taking the Court up on this opportunity and implicit request, in the CBE's 8/27/2020 decision letter Defendants reverted to their general pattern and practice from past exams of reaching a decision to deny exhaustively-supported testing accommodation requests *without* providing an itemized explanation of the reasons for denial.  In fact, the 8/27/2020 CBE decision letter does not even accurately or completely list the accommodations requested (see list of denials therein and compare to Appendix C of renewed motion), and of the denials it does list, only four of them (stop the clock breaks, specially trained and instructed disability proctor, private room, and ergonomic equipment supplied in the room as an accommodation) receive any clue of the purported basis for denial.

Generally, CBE communicated no specific findings of fact, no reasons for wholly accepting the recommendation of a single non-treating psychological disabilities expert over the eight treating experts and on all types of disabilities, and no explanation of its legal analysis or conclusions.  Nor did it lay out a basis for fundamental alteration or undue burden for any denial that complies with the requirements the 9th Circuit held in *Tustin*.

Although the preceding 8/20/2020 letter with updated staff recommendations (just the grant of the additional extra time scheduled over six days, and denials of everything else, with no factual or legal analysis by the Director of Admissions or any other staff themselves) does include excerpts from one reviewing psychological disabilities expert consultant and one reviewing visual disabilities expert consultant, no expert qualified or purporting to address any of the other physical disabilities was disclosed, nor was any significant refuting medical analysis by either of the reviewing experts for why the other accommodations should be denied other than a

summary recommendation to that effect by the psychological disabilities expert consultant, whose opinions have had numerous defects as attested by Mr. Kohn at pp. 12-13 of his 9/19/2020 declaration attached hereto and also as pleaded at pp. 5-6 of Plaintiff's Amended Complaint. In fact, the visual disabilities expert substantially supported Mr. Kohn's positions and those of his own experts.

While Defendants undoubtedly hope that their passing assertion that they do have access to experts in the administrative process and did for some cycles consult an expert about some of the disabilities and some of the requests causes this Court to assume that the factual posture is largely an expert-to-expert medical opinion disagreement and credibility contest, if one that must be adjudicated applying the 28 CFR Ch. 36 App. A, pp. 795-96 prescribed deference to treating experts on credibility as a matter of law. They then hope this Court would thus decline to invest its time and resources in a scrivener of the large file therefrom on a preliminary injunction and instead assume a trial is needed to reach even a tentative determination of reasonable accommodations, but that would not be an accurate description of the record of the administrative case within the Exhibits.

What Defendants appear desperate to deflect this Court's scrutiny from is the sheer volume and substance of the documentary support executed under penalty of perjury that Plaintiff's eight treating doctors have supplied for his positions, as demonstrated above, which have been in the Court file herein since July, and in the possession of Defendants since well before the Court proceedings were initiated. They were all authenticated by Mr. Kohn's declaration under penalty of perjury filed and served since 8/10/2020, and for much of the Exhibits, effectively stipulated as authentic by Defendants filing the same documents in this Court.

Defendants also appear equally desperate to deflect this Court's scrutiny from how the size and substance of the expert support from their reviewing consultant, against providing Mr. Kohn more of the disputed accommodations, is so thin as to raise the question in Plaintiff's mind of whether, if they are unable to produce more on discovery than they did in administrative review, there will even be a genuine controversy on many of those facts for purposes of summary judgment. Regardless, despite the expansive red herrings about sovereign immunity and

applicability of the Rehabilitation Act, Defendants spent little time in their opposition arguing against Plaintiff's prima facie case for the reasonableness of the accommodations (e.g. that they would best ensure he's provided equal opportunity and a level playing field), and even less time discussing the medical veracity of the expansive expert opinions on record about the subject. Rather, the topic on this issue Defendants discussed the most is the proposition that they don't have to adopt Plaintiff's experts' recommendations, even in the absence of sufficient contradictory expert testimony to overcome the treating expert deference as held to be required to reject the factual premises on the level playing field analysis in Enyart, because they're still "entitled to review such a request to… determine whether a recommended accommodation would create an undue burden on the agency or fundamentally alter the examination."

Yet, in advancing this excuse, Defendants deflected from and omitted the key holding in *Tustin* and their noncompliance therewith in the administrative case to be able to rely on it here.

(v) The ADA Places the Burden of Proof on Defendants for Fundamental Alteration and Undue Burden Claims, and Not Only Did Defendants Not Allege or Establish Undue Burden or Fundamental Alteration in Their 8/27/2020 CBE Decision Letter, They Failed to Offer Any Evidence of Such Claims in Their Opposition to the Renewed Motion.

The 9th Circuit held:

"The public entity has the burden to prove that a proposed action would result in undue burden or fundamental alteration, and the decision 'must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion.'  The public entity must 'take any other action that would not result in such an alteration or such burden but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity.'"

K.M. v. Tustin Unified School Dist., 725 F.3d 1088, 1096-97 (9th Cir. 2013).

Neither for past exams nor for the upcoming exam had or has Defendants supplied a written statement from an authorized representative detailing and proving the basis for a fundamental alteration or undue burden claim, and the lack of any better alternatives that would not be such other than what has already been granted.  Nonetheless, just as within the administrative proceedings, in the 9/14/2020 opposition Defendants seemed to argue they have absolute discretion to deny any accommodation request with legal impunity from preliminary injunctive relief wherever they allege even a cognizable doubt as to whether there might be such a claim.  This incorrect recital of the law should be rejected by this Court, which should find that the law and facts clearly favor Plaintiff's material positions as to the reasonableness of his accommodation requests.

## III. REPLIES TO DEFENDANT'S CLAIMS THAT MOTION IS BARRED AS A MATTER OF LAW

A.  Plaintiff Need Not Show Law and Facts Clearly Favor His Damages Claims, and So Defendants' Sovereign Immunity, Federal Funding, and California Government Claims Act Arguments Are Irrelevant to the Merits of the Instant Motion.  To the Extent the Court Finds Otherwise, Plaintiff Rests on His Prior Filings and Declines to Reply Further.

B.  Plaintiff Has Established That First Seeking California Supreme Court Review Would Be Procedurally Futile, Not Efficacious, and Would Result in Irreparable Harm, But Rests on His Prior Filings and Declines to Reply Further.

C.  Plaintiff Has Established Irreparable Harm if Preliminary Injunction Denied, But Rests on His Prior Filings and Declines to Reply Further.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff one of the following modalities, listed in order of Mr. Kohn's preference, with the correspondingly applicable set of accommodations from Appendix C of his renewed motion:

1.  In-Person Proctor, At Home:

2.  Remote Webcam Proctoring, At Home:

3.  In-Person Proctor, At Test Center Despite Others Being Allowed to Test At Home (Status Quo Per Decisions of California Supreme Court and CBE):

Dated: September 21, 2020

Respectfully Submitted,

   /s/ Matthew M. Selvagn_____

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*