MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com


*Attorney for Plaintiff*

BENJAMIN KOHN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


| | | |
|---|---|---|
| BENJAMIN KOHN | **)** | CASE NO. 20-4827 |
| *Plaintiff,* | **)** | |
| v. | **)** | |
| THE STATE BAR OF CALIFORNIA, | **)** | **EXHIBIT IN SUPPORT** |
| CALIFORNIA COMMITTEE OF BAR | **)** | **OF PLAINTIFF'S REPLY TO** |
| EXAMINERS, and THEIR AGENTS IN | **)** | **DEFENDANT'S OPPOSITION TO** |
| THEIR OFFICIAL CAPACITY | **)** | **RENEWED MOTION FOR** |
| *Defendants.* | **)** | **PRELIMINARY INJUNCTION** |
| | **)** | |
| | **)** | |


## <u>EXHIBIT IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO RENEWED MOTION FOR PRELIMINARY INJUNCTION</u>

I, Matthew M. Selvagn, certify that the attached is authentic, true, and correct to the best of my knowledge, under penalty of perjury.

Dated: September 21, 2020

Respectfully Submitted,

                                    /s/ Matthew M. Selvagn

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*

I, Benjamin Kohn, hereby state and declare the following under penalty of perjury:

1.  This declaration is provided in support of Plaintiff's Reply to Defendants' Opposition to the Second (Renewed) Motion for Preliminary Injunction.  I have personal knowledge of the facts stated in this declaration, except as otherwise noted.  I could and would testify competently to the facts contained in this declaration.

2.  I am the Plaintiff in this action and the Applicant in the underlying pursuit of disability testing accommodations from Defendant State Bar of California on the California Bar Examination.

3.  Due to the Committee's decision having been communicated to me at 3:34 pm on 8/27/2020, after the doctor appointments scheduled in anticipation of their decision that week once I was notified the Committee would consider my petitions on 8/21/2020, and the degree to which time was of the essence in renewing my motions given the imminence of the bar exam, my other experts were not available in the timeframe needed to elaborate or respond past what was in the affidavits provided to the State Bar within the exhibits for the administrative process in support of the motion for preliminary injunction to support my renewed motion for preliminary injunction in chief.

4.  However, Drs. Clarke and Toren were available to respond to issues raised in Defendants' Opposition.  They supply testimony regarding those of the issues that were put at issue in the Defendants' Opposition, which claims Drs. Clarke and Toren responds to.

5.  Upon information and belief, Dr. Toren's affidavit/declaration, filed by my attorney concurrently with this declaration, is a true and correct copy of the document executed under penalty of perjury and sent to me by Dr. Toren, and then emailed to my attorney to use in support of my reply to Defendants' opposition to my motion for preliminary injunction.

6.  Upon information and belief, Dr. Clarke's affidavit/declaration, also filed by my attorney concurrently with this declaration, is a true and correct copy of the document executed under penalty of perjury and uploaded to my patient portal by Dr. Clarke as a "letter," then downloaded by me and emailed to my attorney to use in support of my reply to Defendants' opposition to my motion for preliminary injunction.

7.  Other experts, including Drs. Dresden, Rubinstein, Goodman, and Tearse, were not available to provide further documentation in the timeframe needed for this reply.

8.  The FAQs regarding standard test conditions for the October 2020 California Bar Exam state that: "No, for exam security reasons, you will not be able to attach another monitor to your laptop, and the software will be able to detect if additional ports on your laptop computer were used during the exam."

9.  My existing testing accommodation approvals allows me to bring and use "other ergonomic items," but does not explicitly mention whether that will include a larger-screen external

monitor, which was a new request for this exam cycle in my administrative petition supported for two independent physical/ergonomic and visual disability grounds by three of my experts, Drs. Dresden, Goodman, and Tearse. Since its prohibition is standard, and no clear exception was communicated, it was included in my renewed motion within Appendix C. In response, Defendants' Counsel seems to represent to the Court in the 9/14/2020 opposition that it had been granted. (9/14/2020 opposition, p. 10:14-15). If so, I'd want it in an integrated writing with my approvals from the Office of Admissions to be relied upon, <u>but more importantly, Defendants would need to arrange for the settings in ExamSoft to stop blocking access to the monitor.</u> Just today, at Defendants' request, I took two mock exams for familiarizing myself with their new software that must be used to take the exam. Immediately upon entering the secure mode, the external monitor went black and was blocked. <u>Clearly, for any accommodations granted voluntarily or by injunction, there needs to be an explicit provision of the Order requiring Defendants to ascertain the technical implementation requirements to make those modifications, especially given the built-in automated security elected due to most examinees testing from home.</u>

10. Responsive to some of the allegations made in Defendants' opposition to my motion, I declare the following illustrative factual rebuttals (I do not admit or concede any factual allegations not responded to here, some of which are less pertinent to the injunctive relief):

(a) I've repeatedly stated in affidavits, my complaint, and through affidavits of my experts that the existing approvals from the State Bar does not and never has constituted reasonable accommodations for the totality of my disabilities on that exam (responsive to Defendants' 8/31/2020 reply to my opposition to their motion to dismiss at p. 8, lines 7-10, and to Defendants' 9/14/2020 opposition to my renewed motion for preliminary injunction, p. 2, lines 7-9).

(b) While I acknowledge and appreciate that the State Bar has recently granted two of the numerous disputed accommodations voluntarily, qualifying this fact as substantially granting my accommodation requests for the upcoming exam to the extent of mooting the injunctive relief sought is audaciously spurious. (See Defendants' 8/31/2020 reply, pp. 2-3, "The updated staff determination and CBE's final decision render Plaintiff's request for injunctive relief moot."; see also Defendants' 9/14/2020 opposition, pp. 8-9). As demonstrated by Appendix C of my renewed motion for preliminary injunction (which is a distillation of what my administrative petitions the State Bar claims to have just carefully reviewed[1] explicitly sought,

---

[1] In the 9/14/2020 opposition, Defendants write: "... Plaintiff appears to be asking this Court <u>and Defendants</u> to search a 776-page, unverified "exhibit" – one that was not even filed with the renewed motion – in order to find support for his claims... " (pp. 1:27-28 and 2:1) (Emphasis Added) and "... [T]hese "Exhibits" are 776 pages of unverified, non-paginated materials that were submitted with the prior, now-denied motion. Plaintiff cannot reasonably seek relief by directing the Court <u>and Defendants to sift through such materials to determine what he is asking the Court to order.</u>" (p. 8:26-28, ft. 3) (Emphasis Added). The only way Defendants could still need to sift through the materials for the most preliminary task of finally getting an accurate and complete set of the accommodation requests made to them administratively, which is largely exactly what I'm asking this Court to grant through a preliminary injunction, is if – despite attempting to

which was incorporated by reference in both iterations of both the complaint/amended complaint and the motion/renewed motion for preliminary injunction[2], and offered precisely to

[2] Defendants remarkably allege: "Plaintiff's Renewed Motion fails to offer any concise statement about what relief he asks the Court to grant, <u>fails to give Defendant</u> or the Court <u>clear notice of the precise relief sought</u>, and does not even make a cognizable request that this Court could reasonably grant."  (Defendants' 9/14/2020 opposition, p. 11:9-11) (Emphasis Added).  Not only do Defendants again imply ignorance of the "new" issues summarized in Appendix C until service of the renewed motion, they even more audaciously suggest that any ignorance was a result of lack of notice from me.  The administrative petitions put Defendants on notice of all relief sought herein since at least several months before the renewed motion, and for many of the requests since 2017-2018.  My attorney may have incorporated the full set of requests by reference to the administrative documents in the first motion rather than attempt to restate them therein, but <u>both the first and renewed motion sought the same relief, with the only difference being that instead of highlighting the most important five requests that were not conditioned on a TBD modality (while noting that the actual relief sought from the Court includes not just those, but all sought in the petitions), he attempted to summarize the full requests made in the petitions</u> (except for the two State Bar granted recently and the weekend only scheduling issue that has become futile for injunction due to the delays, and now can only be remedied by damages) still in dispute upon the CBE's final decision.  Yet, even if Defendants missed that the other accommodations sought in the petition had also been explicitly sought in the initial motion for preliminary injunction (see 7/18/2020 motion, p. 2:2-4 and 11-12), and that even the original complaint pleaded that the requests made in the administrative petition were supported by medical evidence/professionals (notwithstanding that they seemingly didn't miss those things, but still deemed it apt for their litigation strategy to muddy the waters anyway; see 9/14/2020 opposition, p. 9:9-11), they still can't claim I failed to put them on notice, as the exhibits submitted are all from their own file as they themselves (not any third party) adjudicated the same set of requests at issue in Appendix C as the entity that ostensibly just reviewed and adjudicated the administrative petition itself.  And, as above, if the large page count of those documents necessitated by both their earlier pretext for denials of "inadequate documentation" and "inadequate explanation," and the large number of distinct disability impairments to address compounded by the uncertainties around the standard test conditions of the exam (all outside my control), kept them from having fully reviewed the documentation submitted to them before they made their administrative decision, a necessary predicate of their claim to have not been aware of the full set of requests until the renewed motion and their false claim that the same had not been previously raised (see 9/14/2020 opposition, pp. 1:21 and 9:21-26), then such would expose that Defendants had never meaningfully considered the administrative petition or afforded it due process, and would confirm that Defendants' delays in reaching an

excuse their extended processing times on the administrative petition as precisely because Defendants' staff allegedly needed that much time to thoroughly review and consider that same file – Defendants had somehow not only stalled by such an unlawful amount of time, but *still* not even made a cursory review of the administrative petition and its supporting evidence *before* purporting to reach a "reasoned" decision on which requests were required by disability law or else otherwise warranted by the medical facts.  Either one would exhibit tremendous bad faith on the part of Defendants, and the former would in and of itself be yet another basis for the deliberate indifference prong of the damages claims.  They also continue to claim the exhibits are unverified despite the substantial overlap with their own exhibits in their first motion opposition, that each material administrative case document had already been executed under penalty of perjury on their face, and <u>that I'd verified all of the exhibits notwithstanding that in my 8/10/2020 affidavit/declaration for my reply to their opposition to the first motion for preliminary injunction, which was both filed in this Court and served on them before the renewed motion was made.  Despite Defendants attempt to feign ignorance of such and continue to repeatedly present their spurious argument that the exhibits are unverified, and their frivolous allusions as to an issue of authenticity, Defendants later acknowledge in the opposition that they did not forget or inadvertently omit the verification of the exhibits by my affidavit/declaration (p. 12:4-5).</u>

address the large file sifting concern Defendants complain about to give the Court a framework of the full still-disputed issues before its examination of the evidence in the file), the State Bar's latest decision constitutes a partial grant, but substantial denial of the reasonable accommodations sought administratively and now through a preliminary injunction.

I'd like to highlight and respond to a few choice excerpts of Defendants' 8/31/2020 reply and 9/14/2020 opposition as pertaining to this argument: "... CBE also clarified some additional points regarding Plaintiff's various requests, namely:..."
(i) "... (1) Plaintiff would be free to use the additional total testing time he was granted to take breaks at his discretion;..."

The stop the clock breaks requested for meals and restroom use were for completely distinct disability issues (gastroparesis, dysphagia, pelvic floor dyssynergia, irritable bowel syndrome with chronic constipation, and medication side effects) from those on which the primary extra time was requested (autism and visual disabilities). While all of my material experts (Drs. Dresden, Toren, Goodman, Tearse, and Clarke) made their recommendations additive, in good faith to the State Bar I'd offered in my 3/19/2020 narrative, my 6/4/2020 addendum to that narrative, and my 8/4/2020 responsive affidavit, to construe the visual disability recommendations as an alternative basis or margin for error in any expert disagreements over the precise amount of extra time for one or the other of the autism or visual disabilities such that I received a minimum of the amount of extra time sought for autism alone. I expressly did not extend that limitation of my request as to additivity to substitute accommodations for denials of distinct accommodations; specifically, that of additional extra time to address the basis for other, distinct requests and disability sets, such as the stop the clock breaks for meals and restroom use.

My experts recommended more extra time on the essay sections of the exam for autism than the multiple choice sections. For the essay sections, my experts effectively recommended (notwithstanding the above limitation of my requests) 250% extra time for autism + visual disabilities (150% for autism per Drs. Toren and Dresden and 100% for visual disabilities per Drs. Goodman and Tearse, all four saying the two should be additive to each other), and then if the stop the clock breaks are denied in their entirety, an additional 130-170 minutes per day past that as delineated by Dr. Clarke depending on whether the test is administered at home or at a test center. Based on this, my request in the petition for 150% extra time on the essay sections plus either the stop the clock breaks, or the 130-170 minutes per day substitute extra time recommendations of Dr. Clarke being additive (as all experts recommend) to that, are reasonable and already a compromise of substantially less than what my experts support.

administrative decision had been malicious and based on pretext. Indeed, numerous indications exist in Defendants' 9/14/2020 opposition that the latter is indeed the case, including their numerous allegations about an alleged failure to explain or address issues that I and my experts so explained and addressed at length in the administrative petitions (i.e. the allegations that I'd not addressed the exam security implications of some of my remote modality requests (see 9/14/2020 opposition, p. 6:16-26), despite that both I and Drs. Clarke and Dresden had done so, that I'd never requested the from-home modality or articulated a disability basis for such (*Id*.), and several other instances, *infra*).

For the State Bar to disagree and partially deny the requests, especially had it done so with an expert-supported detailed good faith basis for determining a level playing field could be achieved with less, and argue that despite a dispute I should not be given the sought relief, would be one thing.  But to falsely represent to this Court that they've "substantially mooted" <u>all</u> of my requests with the additional grants and explanations provided on 8/20/2020 and 8/27/2020 such that there couldn't even be a justiciable dispute on the merits of the subject, comes across to me as an audaciously spurious misrepresentation and is simply beyond the pale.

Further, notably, 150% extra time (the total amount granted that the Committee purports allows for breaks at my discretion and still have enough test time for the effects of my disabilities) is now supported by the State Bar's own expert consultants considering only autism and visual disabilities.

In the 2017 Decision Letter for the July 2018 exam, the State Bar's visual disabilities consultant opined that 16% extra time was appropriate for keratoconus alone, and after appeal the total amount granted was 100% extra time, which would mean an endorsement of at least 84% extra time for autism and an additive framework for those disabilities.  After the GI disabilities were asserted for the February 2019 exam, the additional 30 minutes per day granted for that exam and renewed on the February 2020 exam were attributed in the 2/14/2020 decision as for the gastroparesis and dysphagia as a purported <u>substitution</u> for the meal breaks.

The State Bar's own visual disabilities expert in the 8/20/2020 decision letter now recommends 66% extra time for the visual disabilities alone, so even going by the <u>prior</u> autism psychological disabilities State Bar expert recommendation of at least 84% extra time, 150% extra time is warranted for autism and the visual disabilities alone without addressing any other disability <u>such as those the stop the clock breaks are intended to accommodate</u> and, although Dr. Clarke explained 30 minutes per day is inadequate as a substitution to that, where at least that amount of further extra time for that purpose had been previously admitted as warranted by the State Bar.  And yet, also in the 8/20/2020 decision letter, the State Bar's psychological disabilities expert admits their agreement with my experts in that the neuroprocessing speed impairments from my autism have worsened since their previous recommendation, and goes on to newly support double time and a half for that reason.  So, if 84% extra time had been their original recommendation, my request for these disabilities is actually less (even for the essays, where I request the most) than the recommendations of the State Bar's own experts, especially considering that the State Bar had also previously admitted at least 30 minutes per day was reasonable for the GI conditions if stop the clock breaks for meals were not provided (not even considering the restroom conditions).  <u>This is not mooted by my request being only for 150% extra time despite additive recommendations for autism and visual conditions from my experts totaling much more, as that was explicitly contingent on not just the test day length limit granted, but also on the stop the clock breaks prescribed by Dr. Clarke being granted, and the latter was denied.</u>

On the other hand, the State Bar has provided no expert rebuttals of Drs. Clarke and Dresden on the GI disabilities and those recommendations. Instead, the Committee seems to concede those impairments exist, but claim I should have to use some of the extra time granted for breaks to alleviate their effects by eating more frequent smaller meals and using the restroom as necessary. The effect of this is that they'd be partially denying some of the extra time that had been sought for autism and the visual disabilities by repurposing some of it this way, at least for the essay sections where the increased extra time doesn't exceed the request enough to encompass an effective substitute (or at all) for the breaks, despite what was requested not only being vastly less than that recommended by my multiplicity of treating experts, but also that recommended by the State Bar's own experts.

(ii) "... (2) while Plaintiff was not granted a fully-private testing room or ergonomic equipment to be supplied in the examination room as an accommodation, in practice the State Bar's COVID-19 protocols mean that he will be tested in a private room, which will have a locking door where he may leave his own ergonomic equipment;..."

Here the State Bar's argument for mootness is more specious than fraudulent, and I'd go so far as to agree that providing a private room on this exam cycle for only one basis and not the others does moot preliminary injunction (as opposed to post-trial permanent injunction or declaratory relief for future exams were circumstances to change enough for them to be feasible) injunctive relief for this exam cycle on that one disability accommodation request for a private room. However, what the State Bar has said it will provide on this next exam (if without a guarantee for future exams and not as a disability accommodation) is not so equivalent a substitute for the other corresponding accommodation actually requested (that it provide the ergonomic equipment as an axillary aid or as a component of their facilities) as to render that request moot.

A claim that the State Bar's disability law duties to accommodate seemingly conceded disability basis for the equipment's use is inherently met by permission to bring and permission to leave overnight at my own risk rather than provision is a dispute of law going to the merits of the request (though one I posit the facts and law are clearly in my favor for on those merits), not a basis for asserting no justiciable controversy still exists on the subject at all. Several reasons exist for this, some of them purely of law discussed elsewhere, but also factually for why such a proposition would fail to make the exam equally accessible for me due to the effects of my disabilities.

First, such an arrangement still places the burden of transporting multiple pieces of large and heavy furniture at least two ways (if it were left overnight, and 12 ways if not) from my residence to a test site. This requires the involvement of third parties and a truck-sized vehicle to assist me in moving the equipment, which I lack the ability to do myself, on whom I have to ensure with certainty will have perfect punctuality and not fail to perform on time, even as I remain unreachable while in an exam for pick up on the last day since the Bar makes no mention of permitting me to leave it overnight to a day on which I would not be testing.

Such logistics would be distracting, burdensome, risky, with unknown availability, and likely to be expensive, all of which would deny me equal accessibility as compared to nondisabled examinees by placing barriers directly due to my disabilities.

Second, and causing the State Bar's proposal to not even conform to any of the courtesy compromise offers to the required provision I made during the administrative cases in inapposite circumstances from past exams where nobody was allowed to test from home, the State Bar explicitly disclaims responsibility for the equipment were I to leave it in the test room overnight. This forces me to take nonzero risk about something where I effectively relinquish control and still cannot afford a high risk tolerance; this equipment being medically necessary for me to have generally and not just for this exam, and its several thousand dollar replacement cost being something I would have tremendous difficulty affording financially if something happened and it was my loss rather than the State Bar's.

Third and last, this accommodation request is predicated on the assumption that I will not be allowed to test at home, a fact which would be the effect of the State Bar conditioning other disability accommodations on a nonstandard test condition that discriminatorily disadvantages examinees with disabilities in numerous ways precisely because of their disability needs. Even aside from the duties to supply the equipment present when everybody tested at a test center, now this is an independent basis for why the State Bar should have to provide as beneficial a setup as that I could have accessed testing at home, which is why the set of equipment requested is more expansive than just the chair in the present context of the upcoming exam, where the State Bar is presently requested to provide a Herman Miller Embody Chair, a motorized adjustable-height sit-to-stand desk, and a large-screen external computer monitor compatible with my laptop and with the exam software.

(iii) "... (3) all examination proctors would, as a matter of course, be "trained and required to perform their services to the best of their abilities." *Id*." And "Furthermore, rather than being a request for accommodation based on his disabilities, Plaintiff's request for a specially-trained proctor appears to simply express Kohn's dissatisfaction with a particular proctor at one of his three prior examinations. Compl. ¶ 46."

The Committee's assertion that all examination proctors would, as a matter of course, be "trained and required to perform their services to the best of their abilities," fails to offer sufficient assurances that standard test conditions moot the accommodation request repeatedly and explicitly made based on my autism disability and supported by Drs. Dresden and Toren for reasons explained in detail by Dr. Toren, in part because it fails to confirm that the training mentioned conforms to that requested by me and recommended by my experts, and omits the specifics of the request, specifically including:
(A) That all proctor(s) involved with my testing have at least the following <u>training</u>:
1) Advance training in the rules, protocols, and procedures for administering the bar exam, including with the changes required by the approved testing accommodations, sufficient for them to not be trying to figure it all out during the bar exam with material gaps in their understanding which create distracting logistical issues or necessitate distracting conversations

with other staff, or even cause prejudicial failures to comply with break protocols and other rules due to lack of training as happened July 2018.
2) As Dr. Toren specifically recommended, "training in working with autistic individuals."

(B) That all proctor(s) and any video reviewers involved with my testing be <u>instructed</u>:
1) How each of the accommodations granted modify the boilerplate scripts, instructions, protocols, and procedures they are taught for administering the exam according to its normal rules, providing the proctor with a less confusing individualized set of the instructions they read with examinees prior to each test session that eliminates the confusing parts rendered obsolete or contradictory to the approved accommodations.
2) Not to terminate my exam solely based upon cough symptoms, as due to my disabilities this is likely to occur during the 6-day test at times due to my noncontagious medical conditions, and my experts have opined it is not a clinically significant indicator of Covid infection in that context.
3) To minimize noise and conversations while the test is in progress.
4) Not to interrupt me while testing other than standard time warnings or for essential purposes, and not to, for example, request speculation on when the lunch break might be taken, as constantly occurred July 2018.

(C) That the State Bar, prior to the exam, make reasonable efforts to verify that the proctor(s) understand both all approved testing accommodations and their terms of employment, and that those terms clearly meet all operational requirements for smoothly administering the exam with all approved testing accommodations, and will not be argued over between the proctor and the supervisor while the exam is in-progress like with July 2018.

Dr. Toren described the autism basis for this at pp. 16-17 of her 6/4/2020 report as follows:
"Benjamin suffers from numerous medical conditions which impact his daily life which is magnified when he is under stress. Additionally, Benjamin has been lifelong diagnosed with Autism Spectrum Disorder, which amplifies his medical conditions. People with Autism have more difficulty with medical conditions than typically developed individuals. There is an insistence on sameness in their environment, inflexible adherence to routines, difficulties with transitions, and distress with small changes in their environment. Benjamin tries to be flexible given the demands of the real world, but it is most difficult to not know ahead of time what is coming. He becomes easily agitated when things are not exactly like he is expecting. So, in proctoring his exam, he needs an environment which is quiet, and not overly loaded with stimuli or undue cause for anxiety. He is easily distracted by noise or other sensory input. The issues he's described with his proctor in July 2018 would affect someone with autism far worse than someone who is neurotypical. His proctor should already be aware of all of his accommodations, which standard rules and instructions they modify, and all other information necessary to administer the exam, should be instructed to refrain from unnecessary conversation on the test time clock, and should have training on working with autistic individuals."

Contrary to the State Bar's audacious and spurious claim, this request is based on autism, one of my disabilities, and is supported by my experts (Drs. Toren and Dresden), and such had been pleaded in my complaint, which further specified that all of the accommodation requests in my petition had been supported by my medical expert affidavits from the administrative case and filed as Exhibits herein.

Moreover, I again note that the State Bar has not merely claimed to have offered adequate testing conditions for this accommodation to not be reasonable for a level playing field on the merits applying the "best ensures" disability law standard, but rather it has seemingly attempted to mislead this Court into thinking that I never asked for more than is achieved by those assurances to the extent that there is no justiciable controversy to resolve on the merits. My experts and I were not nearly so ambiguous or vague in the administrative documents as to support an inference that such had been a good faith mistake or oversight on Defendants' part, or even to give them the benefit of the doubt about such.

(c) "While Plaintiff alleges that his claims regarding timing and procedures amount to ADA violations, he does not plead that these timing and procedural issues themselves actually amount to a denial of an opportunity to participate on an equal basis in the California Bar Examination, which is what the ADA actually requires. *See* 28 CFR § 35.130(b)(1)(i), (ii)." (See Defendants' 8/31/2020 reply to my opposition to their motion to dismiss at p. 9, lines 14-17).

To the contrary, I consistently raised that very issue about denial of equal opportunity and unequal barriers from the process to seek accommodations (timing and procedural issues) in my 1/7/2019 appeal statement for the February 2019 exam, my 10/24/2019 Petition Narrative for the February 2020 exam, my 12/27/2019 appeal statement for the February 2020 exam, my 3/19/2020 and 6/4/2020 narrative statements for the upcoming exam, and in my 8/4/2020 affidavit for the addendum, as had my attorney within my Complaint.

(d) "Plaintiff does not even plead that any professional has supported his request for this Court to order that he receive a "specialized disability proctor" as an accommodation, or that he specifically be supplied with ergonomic equipment at the State Bar's expense rather than being permitted to bring his own." (See Defendants' 8/31/2020 reply to my opposition to their motion to dismiss at p. 10, lines 5-8).

To the contrary, three of my experts (Dr. Dresden in 1/26/2019 affidavit, 12/19/2019 affidavit, and 6/4/2020 affidavit; Dr. Toren in her 6/4/2020 report/affidavit; and Dr. Clarke in his 7/9/2020 affidavit) have discussed the importance of this equipment generally being provided and not just left at permission to bring, and five did so for at least the larger screen monitor specifically (as recommended by the first three and Drs. Goodman in 7/10/2020 affidavit and Tearse as well in 7/13/2020 visual disability verification form). Even were there some ambiguity in the Complaint pleadings about the experts' position on being provided the equipment at the State Bar's expense rather than permission to bring, the experts' input is largely material for the facts about why access to the equipment during the test is needed for equal accessibility or a level playing field, where the opinion excerpts were pleaded. The

financial burdens of how that is accomplished is a legal issue, with the other material facts that the logistics and costs of transporting and storing the equipment would create equal accessibility-destroying barriers further not requiring any specialized expertise by a medical professional to establish.  Similarly, whether ADA regulations require acquisition and modification of equipment and equally accessible facilities to be provided by the subject entity (i.e. for auxiliary aids and for facilities) as I've asserted is a legal issue.  I should not be required to plead that my health care experts explicitly concurred with legal opinions or reached a legal conclusion when their role is to give evidence about medical fact, though in any event they've made it clear they recommend the equipment be provided.

(e) Contrary to the allegations at page 6, lines 15-26 of the 9/14/2020 opposition, I explicitly objected to mandatory in-person test center assignment in my 6/4/2020 narrative as a matter of law, and three of my experts (Drs. Rubinstein, Clarke, and Dresden) established further medical issues with the manner in which Defendants planned to administer it in-person in regards to Covid issues based on my specific medical situation, recommending it be held at home as with others or if that is denied they collectively recommend largely the set of requests labeled "Covid Risk Mitigation" (plus the private room Defendants confirmed would be provided).  Notably, requesting to test at home is not asking for a modification of standard test conditions.  Due to the Covid pandemic, applied generally and not just to high risk individuals like me, the California Supreme Court found that the health and safety of examinees warranted making the remote administration standard.  Therefore, I'm actually requesting that the State Bar refrain from unilaterally making a discriminatory modification to standard conditions.

(f) In its 8/31/2020 misrepresentation to this Court that Defendants' 8/27/2020 decision "substantially mooted" my accommodation requests, Defendants also ignored the many requests from the petition summarized in Appendix C other than the proctor, ergonomic equipment, and stop the clock breaks, which even had those three been mooted, still would have formed a basis for justiciable controversy for purposes of injunctive relief.  Defendants changed their tune from mootness to lack of notice and "not cognizable" allegations in the 9/14/2020 opposition.  The former allegation is manifestly false as explained above, and the latter allegation is belied by a plain reading of Appendix C and of the administrative file exhibits on which it is based and founded.  Quite simply, I'm requesting one of the following in order of preference:
1.  In-Person Proctor, At Home: With all subparts of Issues 2 and 3, subpart (A) of Issue 4, and subpart (2) of Issue 6.  In this iteration, Issue 1 is complied with, I assume Issue 4 subparts (B) would be mooted due to the in-person proctor security method, and Issue 5 and subpart (1) of Issue 6 would be manifestly mooted by being allowed to test at home.
2.  Remote Webcam Proctoring, At Home: With all subparts of Issues 3 and 4.  In this iteration, Issue 1 is complied with, Issue 2 and subpart (2) of Issue 6 would be mooted by the lack of in-person proctoring, and Issues 5 and subpart (1) of Issue 6 would be mooted by being allowed to test at home.
3.  In-Person Proctor, At Test Center Despite Others Being Allowed to Test At Home (Status Quo Per Decisions of California Supreme Court and CBE): With all subparts of Issues 2, 3, and 5, subpart (2) of Issue 6, and subpart (1) of Issue 6 to the extent the Court declines to order

subpart (2)(C) of Issue 5.  In this iteration, my position on Issue 1 is assumed to be rejected by this Court, Issue 4 is considered mooted by my testing at a test center with in-person proctoring, and subpart (1) of Issue 6 is mooted to the extent subpart 2(C) of Issue 5 (newly made for October exam unlike the older request in Issue 6 due to other examinees being allowed to test at home, per level playing field standard) is granted.

Note 1: A Fourth Iteration Was Made in 6/4/2020 Narrative, but Mooted by 7/16/2020 California Supreme Court Order: In-Person Proctor, At Test Center Where At-Home Testing Not Standard: With all subparts of Issues 2, 3, and 6, and the original form of subpart (1) of Issue 5 to require only the Herman Miller Embody Chair be provided by the Bar as FINRA agreed was required, or else one of three courtesy substitution iterations be provided instead, as the Iowa Board of Law Examiners did.

Note 2: The above order of preference relies on the applicable subparts of Issue 4 being granted for a given modality.  Otherwise, taking the test at home would be outright inaccessible for me to even attempt, and I'd agree that it would be necessary to do modality 3.

Note 3: Weekend Only Scheduling would have been subpart (3) of Issue 6, with an alternative option of 11:30 am or later report time if allowed to test at home, but for the proximity of the decision in time to the exam unlawfully caused by the State Bar's delays.

Note 4: A fully private exam room would have been subpart (4) of Issue 6 but for it being mooted for the October exam by the CBE's decision to grant that for this upcoming exam only due to Covid; for the record, in case it was to become at issue later.

(g) Other factual issues that the State Bar alleges in their 9/14/2020 opposition prevents the facts from clearly favoring my positions for purposes of a mandatory preliminary injunction:

Defendants' 9/14/2020 opposition makes very clear that they do not wish for this Court to thoroughly review the record from the underlying administrative case their challenged decision arose from.  Their opposition resorts to frivolous allusions to the issue of authenticity and notice, falsely alleges the exhibits are unverified, misrepresents the contents of that record, and complains bitterly about the page count even as there is no good faith explanation for why they would not have already reviewed the entire thing in deciding the administrative petitions. To veneer legal plausibility for their claimed grievances, they cite and argue numerous civil local rules that I will leave to my attorney and/or this Court to respond to and resolve, but I find it telling that Defendants seem to perceive these things as their strongest arguments against the motion.

To me, what Defendants *don't* say is as telling or more than what they *do* say. Importantly, what they don't credibly advance, even after given an opportunity to develop a record by consulting experts about the more recent medical reports submitted to them, is that that my position on the medical facts as to what is required to place me on a level playing field and equally access the exam in a safe manner is not largely supported by the overwhelming

weight of the evidence *in the administrative case*.  Rather, where they argue there are factual disputes that raise an issue as to whether the facts clearly favor my position, they largely do so for claims that my requests might fundamentally alter the exam by compromising exam security or otherwise, or else impose an undue burden on them, claims that I'll supply responsive written testimony on below in part (h).

While Defendants undoubtedly hope that their passing assertion that they do have access to experts in the administrative process and did for some cycles consult an expert about *some* of the disabilities and *some* of the requests causes this Court to assume that the factual posture is largely an expert-to-expert medical opinion disagreement and credibility contest, if one that must be adjudicated applying the ADA's prescribed deference[3] to treating experts on credibility as a matter of law, and decline to invest its time and resources in a scrivener of the large file therefrom on a preliminary injunction and instead assume a trial is needed to reach even a tentative determination of reasonable accommodations, that would not be an accurate description of the record of the administrative case within the Exhibits.  What Defendants appear desperate to deflect this Court's scrutiny from is the sheer volume and substance of the documentary support executed under penalty of perjury that my eight treating doctors have supplied for my positions, which have been in the Court file herein and in the possession of Defendants since well before the renewed motion was initiated on 8/31/2020, all authenticated by my declaration under penalty of perjury filed and served since 8/10/2020, and for much of them stipulated authentic by Defendants filing the same documents in this Court. Defendants also appear equally desperate to deflect this Court's scrutiny from how the size and substance of the expert support from their reviewing consultant against providing me more of the disputed accommodations is so thin as to raise the question in my mind of whether, if they are unable to produce more on discovery than they did in administrative review, there will even be a genuine controversy on many of those facts for purposes of summary judgment.

As addended in my amended complaint, there are many issues with the 7/27/2020 and 8/20/2020 opinions of the State Bar's single non-treating psychological disabilities expert who, on information and belief, provides the only expert recommendation to deny any of the still-disputed accommodations in Appendix C of my renewed motion:
"- Numerous inaccurate summaries of Mr. Kohn's requests and what his experts have and have not recommended and why, including mischaracterization of the medical evidence Mr. Kohn offered, not just disagreement with the medical conclusions to be drawn from it.
- Very poor comprehension of the background facts; while more recently they claim to have read the entire file, from what they say wasn't clearly explained or the timing of when certain issues were brought up, the documents they do and don't reference, the nature of where their mistakes are compared to what they seem to be aware of, etc. it's more likely they mistakenly believe they've read the entire file, but not truly had access to the full file.
- Their recommendations are clearly predicated on the premises that all prior testing agency decisions had been correctly decided and proves that for exams at that time the approved accommodations were sufficient, that passage of an exam conclusively establishes a level

---

[3] 28 C.F.R. Ch. 36 Appendix A, pp. 795-96.

playing field had been provided, and that the only legitimate basis to grant more accommodations would be the extent to which the expanded accommodations are merited solely by an established worsening of the relevant disability since the last decision. While they did recommend increased accommodations of the newly granted increased extra time administered over six days in their most recent opinion upon reviewing the further explanations provided responsive to their 7/27/2020 opinion in the 8/4/2020 affidavits of Mr. Kohn, Dr. Toren, and Dr. Dresden, they did so on the latter basis only, and were clear that their reason for recommending denial of everything else was their use of this framework for evaluating the propriety of the requests. Plaintiff disagrees with this framework for deciding what accommodations are necessary to provide Mr. Kohn equal accessibility and a level playing field for the effects of his numerous, varied, and debilitating set of disabilities. For some of the remaining disputed requests, the State Bar has never explained (even for past exams) its medical basis for rejecting the explanations for those accommodations Mr. Kohn's experts provided them, and while for others some explanation was offered (typically for the first time on 2/14/2020) they have now not explained its medical basis (or any basis) for rejecting the thorough responses Mr. Kohn and his experts have given to those reasons. In that context, to say that past determinations for unchanged disability impairments are unreviewable now and the only relevant issue is any worsening since then would be to ensure that Mr. Kohn is still not provided a level playing field and equal accessibility going forward.
- Neither in their 12/17/2019 opinion regarding the 2/2020 exam nor in their 7/27/2020 and 8/20/2020 opinions regarding the 10/2020 exam does this expert provide any significant medical or psychological analysis of the issues raised by Mr. Kohn's experts to raise a genuine disagreement as to those facts, and instead seems to say very summarily that Mr. Kohn and his experts haven't proved they are absolutely necessary yet because we had not foreseen and volunteered every minor piece of information they'd have liked to consider, even as they take nearly the entire time between exam cycles to provide their latest concerns, often too late to respond to administratively in time for that exam cycle. Rather than provide an independent medical or psychological opinion considering all of the evidence, their focus is on raising perceived omissions and ambiguities with the explanations provided by Mr. Kohn's experts, either based on mistakes over what they did and did not say or because this expert considers it acceptable to recommend denial until an exam cycle where what they perceive as the perfect set of information has been available to them, an evolving moving target at that.
- Some of this expert's confusion over the opinions Mr. Kohn's experts had expressed might be honest, but even if so, it is not reasonable. Much of the information they claimed to be missing was amongst the file at the time of their review." (See Amended Complaint, pp. 5-6).

To illustrate for this Court the sheer extent that the accommodation requests described within Appendix C were supported by the overwhelming weight of the evidence in the administrative case, I highlight the supporting and opposing evidence, that to the best of my knowledge and belief is on record, organized by the outline structure of Appendix C as presented in my renewed motion:

"<u>Issue 1: Assignment to From Home Modality as with Standard Examinees While Receiving All Approved Accommodations, Further Supported by Medical Complications with In-Person</u>

Testing Past Average Covid Pandemic Risks, Including Disability-Related Noncontagious Chronic Cough Symptoms, Immunocompromised Status, and Interference with Ability to Use Mask Uninterrupted by Need to Eat/Drink Frequently; Unless State Bar Proves All Possible Methods of Doing So Would be Fundamental Alteration or Undue Burden."

Supporting Expert Evidence:
- Dr. Clarke's 7/9/2020 affidavit and attachments and 8/7/2020 affidavit.
- Dr. Rubinstein's 7/14/2020 Physical Disability Verification Form B/Affidavit and attachments.
- Dr. Dresden's 7/16/2020 and 8/4/2020 affidavits

Opposing Expert Evidence: None Provided by State Bar.

"Issue 2: Denials of Other Covid Risk Mitigation Accommodations if Proctored In-Person, Regardless of Whether Such is Done In-Home or at Test Center (Unlike for Standard Applicants Due to Disabilities and Also Considering Disability-Related Noncontagious Chronic Cough Symptoms, Immunocompromised Status, and Interference with Ability to Use Mask Uninterrupted by Need to Eat/Drink Frequently):
(1) Instructions to onsite staff not to terminate exam based upon cough symptoms, which may be caused by chronic medical conditions.
(2) Camera-based supervision of Mr. Kohn during at minimum meal breaks, by onsite reviewers outside test room as to avoid need for uninterrupted internet connection, but avoid presence of others in the room while mask cannot be worn, such as during breaks for eating or drinking.
(3) To the extent such is not standard, that all proctors and staff present wear facial masks when in Mr. Kohn's presence, keep appropriate physical distance, be screened regularly for fever and symptoms of Covid, and if feasible be tested for Covid and test negative.
(4) That Mr. Kohn's personal protective equipment such as masks and gloves not be subject to inspection by any means that could contaminate it for its intended purpose of covid prevention."

Supporting Expert Evidence:
- Dr. Clarke's 7/9/2020 affidavit and attachments and 8/7/2020 affidavit.
- Dr. Rubinstein's 7/14/2020 Physical Disability Verification Form B/Affidavit and attachments.
- Dr. Dresden's 7/16/2020 and 8/4/2020 affidavits

Opposing Expert Evidence: None Provided by State Bar.

"Issue 3: Most Important Remaining Disability Accommodation Denials Irrespective of Modality, Which Are Necessary for Equal Accessibility and Level Playing Field:
(1) Specially trained and instructed disability proctor for autism as requested by Drs. Toren and Dresden;..."

Supporting Expert Evidence:
- Dr. Dresden's 1/26/2019 affidavit.
- Dr. Toren's 6/4/2020 report/affidavit and Psychological Disability Verification Form E/Affidavit.

Opposing Expert Evidence:
- State Bar Psychological Disabilities Expert Opinions Dated 12/17/2019 (explicitly), 7/27/2020 (implicitly), and 8/20/2020 (implicitly).

"(2) Stop the clock breaks for meal and restroom related conditions as requested by Dr. Clarke in 7/9/2020 affidavit, corroborated by Dr. Dresden, and also secondarily supported for autism as opined by Dr. Toren."
- Dr. Dresden's 2018 Physical Disability Verification Form B/Affidavit and Attachments.
- Dr. Clarke's 2018 Physical Disability Verification Form B/Affidavit and Attachments.
- Dr. Dresden's 1/26/2019 affidavit for appeal on 2/2019 exam.
- Dr. Dresden's 12/19/2019 affidavit for appeal on 2/2020 exam.
- Dr. Clarke's 12/20/2019 affidavit for appeal on 2/2020 exam.
- Dr. Dresden's 3/13/2020 affidavit, 6/4/2020 affidavit, and 8/4/2020 affidavit for this exam.
- Dr. Clarke's 7/9/2020 affidavit and attachments and 8/7/2020 affidavit for this exam.

Opposing Expert Evidence:
On information and belief, none Provided to me other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

"(3) Use of larger-screen external monitor for both the ergonomic reasons Dr. Dresden provided regarding myofascial pain syndrome, scapular dyskinesis, occipital neuralgia, and cervicalgia; and the dual keratoconus and dry eye syndrome visual disabilities basis asserted by both Drs. Goodman and Tearse."

Supporting Expert Evidence:
- Dr. Dresden's 6/4/2020 affidavit.
- Dr. Goodman's 7/10/2020 affidavit and attachments.
- Dr. Tearse's 7/13/2020 Visual Disabilities Verification Form H/affidavit and attachments.

Opposing Expert Evidence:
On information and belief, none Provided to me other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

"Issue 4: Most Important Remaining Disability Accommodation Denials Specific to Remote/From Home Testing Modality if Granted Per Issue 1:
(A) Regardless of Whether Proctored Remotely or In-Person In-Home:
   (i) Permission to use restroom freely and still return to test session in progress or logon to test session past 10 minutes window depending on timing, as recommended by Drs. Clarke and Dresden based on pelvic floor dyssynergia, irritable bowel syndrome, and medication side effects... "

Supporting Expert Evidence:
- Dr. Dresden's 6/4/2020 affidavit and attachments.

- Dr. Clarke's 7/9/2020 affidavit and attachments and 8/7/2020 affidavit.

Opposing Expert Evidence:
On information and belief, none Provided to me other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

"    (ii) "Exam Room" space for rules about what can be present, as room is ordinarily personal
        bedroom rather than a space for which examinees bring from home only what is needed,
        be defined only to be the desk on which the computer equipment used to take the exam
        is set up and the space between the desk and the wall it faces for the width of the desk,
        to the extent that prohibited items are out of physical reach while taking the test and all
        legible text within eyesight is verifiably not related to the exam subject matter."

Supporting Expert Evidence:
This largely parallels the basis for the ergonomic equipment, which is kept in the room necessitating this, which then includes:
- Dr. Dresden's 2017 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 2018 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 1/26/2019 affidavit on appeal for the 2/2019 exam.
- Dr. Dresden's 12/19/2019 affidavit on appeal for the 2/2020 exam.
- Dr. Dresden's 6/4/2020 affidavit for this exam.
- Dr. Toren's 6/4/2020 report/affidavit for this exam.

Opposing Expert Evidence:
On information and belief, none Provided to me other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

"... (B) Specific to Webcam-Based Remote and AI Proctoring Iteration:
    (i) Exemption from AI or remote proctoring security flags and exam rules intended to
        improve performance of such security methods that would be falsely or inherently
        triggered by the effects of his disabilities or the other accommodations approved for
        them, including:
    (a): Need to eat, drink, and take medicine during test.
    (b): Need to use, and vary webcam position on, sit-to-stand desk already approved for
        use, and larger-screen monitor that Mr. Kohn's doctors recommend which would
        require webcam on laptop to monitor him from an angle off to the side.
    (c): Autism-related fidgeting and self-stimulation involuntary behavior concerns raised by
        Dr. Dresden in his 8/4/2020 affidavit further preventing Mr. Kohn from keeping the
        webcam centered on his face at all times, independent of the monitor.
    (d): The required access to the restroom during exam sessions..."

This is mostly an issue of making sure the new methods of exam security are implemented
in a way compatible with the existing accommodation requests, rather than having an

independent disability basis for experts to be at issue, though is discussed in Dr. Dresden's 6/4/2020 and 8/4/2020 affidavits briefly.

"...     (ii) Ensure that all remote proctors and/or security flag video reviewers are aware of all disabilities and accommodations approved, and how they change the standard protocols, and moreover, meet the training and instructions criteria for proctors that Mr. Kohn and Dr. Toren have requested for in-person proctors... "

This largely parallels the expert support for and against the proctor issue (see above).

"...     (iii) Increased login time limit and logon period flexibility based on the more extended test schedule required and approved for disabilities making it even more likely that at some point during the examination power or internet outages may occur (especially given the forecasted fire season and weather conditions) without the excessively harsh strict consequence of being unable to complete the exam should such occur... "

This is mostly an issue of making sure the new methods of exam security are implemented in a way compatible with the existing accommodation requests, rather than having an independent disability basis for experts to be at issue, though similar expert reasoning as for extra time could also apply.

"Issue 5: Most Important Remaining Disability Accommodation Denials Specific to In-Person Test Center:
(1) Ergonomic equipment with features and components as defined by Dr. Dresden (see Exhibits) provided by Bar in test room or arrangements for storing and transporting Mr. Kohn's own such equipment, as described in 6/4/2020 narrative for administrative petition within Exhibits, as recommended by Drs. Dresden and Toren... "

Supporting Expert Evidence:
- Dr. Dresden's 2017 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 2018 Physical Disability Verification Form B/affidavit with Attachments.
- Dr. Dresden's 1/26/2019 affidavit on appeal for the 2/2019 exam.
- Dr. Dresden's 12/19/2019 affidavit on appeal for the 2/2020 exam.
- Dr. Dresden's 6/4/2020 affidavit for this exam.
- Dr. Toren's 6/4/2020 report/affidavit for this exam.
- Dr. Clarke's 7/9/2020 affidavit and attachments for this exam.

Opposing Expert Evidence:
On information and belief, none Provided to me other than summary recommendations of the psychological disabilities expert not to provide anything denied previously.

"... (2) Mitigation of Unequal Accessibility barriers relative to standard at-home testing, as described in 6/4/2020 narrative for administrative petition within Exhibits, but in summary:
     (A) Location of Test Center minimal commute distance from residence and no more than 50

  miles, confirmed with maximum advance notice.
(B) Commute Expenses.
(C) Hotel Lodging at Test Center or as close as possible if location is farther than 10 miles commute, or if for any reason ergonomic equipment supplied to him is denied, at State Bar's expense and responsibility to ensure availability."

This is more about offsetting the burdens to accessibility relative to others without disability accommodations caused by the manner in which the State Bar is administering the accommodations necessitated by the disabilities (e.g. requiring me to test in-person at a test center when other examinees are permitted to test at home). As such, it is outside medical expert purview, and to my understanding is largely a legal dispute.
"Issue 6: Comparatively less important, but still appropriate for level playing field and/or equal accessibility, accommodations:
 (1) Equal access to any hotel group rate services provided to other examinees.
 (2) Removing the unduly subjective and restrictive requirement that food brought must be completely non-aromatic."

The hotel group rates are also more about offsetting the burdens to accessibility relative to others without disability accommodations caused by the manner in which the State Bar is administering the accommodations necessitated by the disabilities. (e.g. based on the effects of the process for seeking accommodations, including the delay in obtaining exam schedule and location compared to others for a first-come first-serve limited capacity service, and the scope of the service offered not encompassing the expanded schedule for the accommodations). As such, it is outside medical expert purview, and to my understanding is largely a legal dispute. The second is simply an unreasonable restriction on an accommodation already approved based on uncontested expert support from Drs. Dresden and Clarke.

  For these reasons, the overwhelming weight of the evidence in the administrative case reveals that far from being a genuine factual controversy on the medical aspects with compelling expert opposition provided by the State Bar that could reasonably be found to overcome the legally mandatory treating expert deference on credibility to create a trial-necessitating expert credibility contest, the facts clearly favor my position and are apt for a mandatory preliminary injunction.

(h) The State Bar further alleges: "For example, "Appendix C" includes requests such as "... [p]ermission to use restroom freely and still return to test session in progress" ... if taking the Examination remotely, which both clearly and inherently raise issues of examination security and potential cheating. Renewed Mot. at 33:14; 33:25. Plaintiff offers no attempt to resolve these issues, nor could he, and accordingly he cannot avoid the fact that, at a minimum, his requests for such accommodations raise significant factual questions that make a mandatory preliminary injunction inappropriate." (9/14/2020 opposition, pp. 20:17-21 and 21:1-2) (Emphasis Added).

To the contrary, I made detailed attempts to resolve these issues in my 6/4/2020 narrative, as did Dr. Clarke in his 7/9/2020 and 8/7/2020 affidavits, and even Dr. Dresden touched upon them briefly in his 6/4/2020 affidavit.

In summary, for the issue of restroom use (which is directly tied to the effects of my pelvic floor dyssynergia and irritable bowel syndrome with chronic constipation, as well as medication side effects), we proposed this could be solved by sending in-person proctors to my home to examine the restroom space for prohibited materials that could be used to cheat, and to verify I make no detours to and from there and the exam space during an exam session, both achievable when I'm not eating or drinking and thus able to wear a mask, or in the alternative by using a body-camera to record me from my vantage point including when I'd leave view of any computer webcam facing me. I even offered to waive any privacy issues with recording myself using the restroom if the State Bar felt it necessary to be assured I'd not cheated.

For the issue of the AI security flags, I narrowly tailored my requests to exemption only from those flags which would be falsely triggered by effects of my disabilities or by use of my approved testing accommodations for those disabilities. Neither of those things would be cheating and asking for modifications to the settings or the manual review process of the system chosen to facilitate otherwise appropriate disability accommodations does not compromise exam security. Rather, it's a necessary measure to implement reasonable accommodations. Moreover, I have no objection to being recorded by one or more cameras while taking the exam, so long as the software can store the video offline and upload it when there's an internet connection present, with a reasonable time after the exam given to do so, rather than cause me to be disqualified from the exam if my internet connections at times lags or disconnects temporarily. Nor do I have any objection to keeping only permitted items for the exam within reach of my desk, and to have no legible text pertaining to the exam within eyesight. Accordingly, I'm not demanding Defendants compromise the security of the exam in any material way; I'm simply, out of necessity to equally access the exam, complicating implementation of their preferred, minimized administrative burden method of securing the exam.

There is no fundamental alteration by adapting the rules enforcement mechanism to the modified rules necessitated by my testing accommodations, which changes themselves were not alleged to compromise exam security. If implementing this would require nonstandard software and not just changed settings, and if such software would be an undue burden to obtain on the market or commission, that might be an undue burden, but the State Bar did not provide me even an allegation, let alone evidence, of such a hypothetical in the administrative process, the CBE decision letter, or even in its 9/14/2020 opposition. As the burden of proof for both fundamental alteration and undue burden is on the subject public entity for otherwise reasonable accommodations, I do not see how my attorney and I have failed to show that the law and facts clearly favor my position on this issue on this record, when the State Bar only argues those issues and does not establish them in their decision letter or even in their opposition to my renewed motion.

**9/19/2020 Affidavit of Benjamin Kohn ISO Reply for Motion for Preliminary Injunction**

I hereby declare under penalty of perjury that the above facts are true and accurate to the best of my knowledge and belief.

*/s/ Benjamin Kohn*
Benjamin Kohn
Dated 9/19/2020.