MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*

BENJAMIN KOHN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KOHN ) | CASE NO. 20-4827 |
| *Plaintiff,* ) | |
| v. ) | |
| THE STATE BAR OF CALIFORNIA, ) | **EXHIBIT IN SUPPORT** |
| CALIFORNIA COMMITTEE OF BAR ) | **OF PLAINTIFF'S REPLY TO** |
| EXAMINERS, and THEIR AGENTS IN ) | **DEFENDANT'S OPPOSITION TO** |
| THEIR OFFICIAL CAPACITY ) | **RENEWED MOTION FOR** |
| *Defendants.* ) | **PRELIMINARY INJUNCTION** |
| ) | |
| _____ ) | |

## **EXHIBIT IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO RENEWED MOTION FOR PRELIMINARY INJUNCTION**

I, Matthew M. Selvagn, certify that the attached is authentic, true, and correct to the best of my knowledge, under penalty of perjury.

Dated: September 21, 2020

Respectfully Submitted,

    /s/ Matthew M. Selvagn

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*

**Declaration of Dr. Toren ISO Reply Re: Motion for Preliminary Injunction**

I, Dr. Rosalie Toren, PhD, declare the following, certifying under penalty of perjury all statements of fact as true to the best of my knowledge, professional expertise, and belief:

### "Foundational" Background:

1.  I have personal knowledge of the facts stated in this declaration, except as otherwise noted. I could and would testify competently to the facts contained in this declaration.

2.  I am a licensed clinical psychologist and credentialed school psychologist with substantial training, expertise, and experience in neuropsychological and psychoeducational evaluations for testing accommodations.

3.  I performed extensive neuropsychological testing for Benjamin Kohn, totaling more than twenty hours in-person, over the following dates: 5/27/2020, 5/29/2020, 5/31/2020, 6/1/2020, 6/2/2020, and 6/4/2020.

4.  Prior to this, Benjamin had previously had his most recent, similar neuropsychological evaluation performed by psychologist Drs. Preston and Pinn in regards to two shorter multiple choice exams, the LSAT and GMAT, whose report I've reviewed, and which had been provided to the State Bar since Benjamin's first petition in 2017.

5.  Benjamin contacted me to attempt to arrange this evaluation in March 2020, while awaiting results from his previous attempt at the California Bar Exam at the end of February 2020, because on 2/14/2020 the State Bar's Committee of Bar Examiners issued a decision letter on his testing accommodations appeal for that exam that he understood to decline to consider any expert input elaborating or clarifying effects of autism by his PCP Dr. Dresden once the original experts became unavailable to him, reportedly because the Committee felt that only experts who had personally performed the full testing could be considered to have evaluated him for autism.

6.  Unfortunately, as in my clinical judgment the testing needed to be performed in-person, and as I was not seeing patients in-person during the local shelter-in-place due to the covid pandemic, the dates testing occurred was the earliest I was available to administer the testing. Benjamin had impressed upon me the urgency of getting this documentation for the State Bar, and I went to considerable lengths to arrange my schedule such that the testing could be clustered and expedited to allow for a report far sooner than I ordinarily would complete such in my practice.

7.  I prepared an 18-page report based on this testing, which included a detailed set of recommendations for testing accommodations on the California Bar Exam for Benjamin's autism disability only, and an explanation of my reasoning. I also completed the State Bar's "Psychological Disabilities Verification Form E" based on my report. Both were executed as affidavits under penalty of perjury on 6/4/2020. Later, I completed a 4-page follow-up

**Declaration of Dr. Toren ISO Reply Re: Motion for Preliminary Injunction**

responsive affidavit to the State Bar's 7/27/2020 tentative decision dated 8/4/2020, which was also executed under penalty of perjury.

8. I've reviewed the documentation Benjamin submitted to the State Bar, and the State Bar's latest responses dated 7/27/2020, 8/20/2020, and 8/27/2020, along with the State Bar's "Opposition" for Court dated 9/14/2020.

<u>Highlighted Factual Clarifications for Key Disputed Issues Identified to Me:</u>

9. Based on my review of Benjamin's documents submitted to the State Bar, the request that the State Bar has consistently phrased from its decision for the February 2019 exam to the present exam as "assignment to an experienced proctor" is not accurately characterized by that phrasing. Benjamin's awareness of the necessity of an accommodation pertaining to proctor assignment may well have been precipitated by his experience on the July 2018 exam described in his 11/1/2018 narrative for the February 2019 exam, but he never has requested that the proctor have a specific amount of experience, and the State Bar was mistaken in its Court filings that it was not explicitly based on any of his medical disabilities. It always has been; even the State Bar's expert did not dispute this. How the State Bar could have missed this in its allegations to this Court after supposedly needing months to carefully review all of the hundreds of pages of documentation provided to them is inexplicable to me. Rather, his request pertained to specific training and instructions the proctor would need to have in order to provide a level playing field due to autism. Even before my involvement, Dr. Dresden clearly explained and supported this for the February 2019 and February 2020 exams.

10. Among my recommendations in my 6/4/2020 report/affidavit, based on autism, I recommended Benjamin be assigned a proctor who had been prepared to administer his exam with specific training and instructions, described therein at pages 16-17 as follows:

"Benjamin suffers from numerous medical conditions which impact his daily life which is magnified when he is under stress. Additionally, Benjamin has been lifelong diagnosed with Autism Spectrum Disorder, which amplifies his medical conditions. People with Autism have more difficulty with medical conditions than typically developed individuals. There is an insistence on sameness in their environment, inflexible adherence to routines, difficulties with transitions, and distress with small changes in their environment. Benjamin tries to be flexible given the demands of the real world, but it is most difficult to not know ahead of time what is coming. He becomes easily agitated when things are not exactly like he is expecting. <u>So, in proctoring his exam, he needs an environment which is quiet, and not overly loaded with stimuli or undue cause for anxiety. He is easily distracted by noise or other sensory input. The issues he's described with his proctor in July 2018 would affect someone with autism far worse than someone who is neurotypical. His proctor should already be aware of all of his accommodations, which standard rules and instructions they modify, and all other information necessary to administer the exam, should be instructed to refrain from unnecessary conversation on the test time clock, and should have training on working with autistic individuals.</u>"

# Declaration of Dr. Toren ISO Reply Re: Motion for Preliminary Injunction

11.  The State Bar's 8/27/2020 clarification that all examination proctors would, as a matter of course, be "trained and required to perform their services to the best of their abilities," does not satisfy, let alone "substantially moot" any debate or dispute over, my recommendation, and is inadequate for the effects of Benjamin's autism.  Specifically, there is no explanation of exactly what training is provided to the proctors to assess its conformity to Benjamin's needs.  Whatever training is offered standard has resulted in Benjamin already suffering at least one highly improperly proctored exam.  Nor does this address the specific instructions Benjamin has requested be provided to the proctor assigned in advance as to the manner in which his disabilities and accommodations will require the exam to be proctored.

12.  The basis for my extra time recommendations was explicitly limited to autism, and made additive to other disabilities.  If he is given the amount of time I recommended, which would already be a compromise as Benjamin was recommended significantly more additive time by both his own two ophthalmologists and the State Bar's visual disabilities consultant for his visual disabilities, but expected to also self-accommodate his digestive and restroom conditions out of that same time instead of being provided appropriate breaks (such breaks I'll note are independently supported by his autism alone), it would leave insufficient time to adequately accommodate even the autism weaknesses.  This is especially true because the total extra time recommendations assuming the breaks are <u>granted</u> total 250% extra time for autism and visual disabilities combined from Benjamin's two autism experts and two visual experts, and somewhere between 150% and 216% extra time adding the recommendations of the State Bar's psychological disabilities expert and visual disabilities expert (depending on how much of the worsening the psychological disabilities expert referenced pertained to neuroprocessing speed vs. physical/visual health).  If the meal breaks are <u>denied</u>, and extra time is to be used instead, Dr. Clarke recommended 80-120 minutes per day of additive time to this for the meal issues and

13.  Yet, I'm told for legal and practical reasons he agreed to limit his extra time requests not framed as a potential substitute accommodation were other non-extra time requests denied to double time plus 30 minutes per session for the MBE, and double time and a half for the essay sections (which are more severely impacted by his autism than the multiple choice sections) were the test day length limit <u>and GI meal and restroom based breaks granted</u>.  If those breaks were <u>denied</u>, Benjamin maintained that the amounts of substitute extra time prescribed by Dr. Clarke must still be additive to this, and if the test day length limit were denied, so too must the additional extra time I quantified be added.

14.  In its latest decisions for the next exam, the State Bar granted double time and a half and the test day length limit for all sections, but denied the breaks.  As a consequence, the time granted for the essay sections fails to adequately account for the additive substitute extra time recommended by Dr. Clarke for the physical disabilities basis for the breaks.  Yet, the State Bar stated in its Court filings that the breaks too had been "substantially mooted" by its "clarifications" about the extra time.  Not only does their explanations not resolve the request, as explained above, but to the extent they're claiming there's not even a dispute possible about

the subject, Benjamin's requests were not ambiguous, nor were mine and his other experts. Either they did not meaningfully review the documentation in the administrative case as they've claimed or they're attempting to purposely mislead the Court.

15. Similarly, it's been brought to my attention that in their 8/31/2020 filing to the Court, the State Bar stated: "Plaintiff does not even plead that any professional has supported his request for this Court to order that he receive a "specialized disability proctor" as an accommodation, or that he specifically be supplied with ergonomic equipment at the State Bar's expense rather than being permitted to bring his own." (Defendants' 8/31/2020 reply to my opposition to their motion to dismiss at p. 10, lines 5-8).  Yet, in my 6/4/2020 report/affidavit, I explained at page 17:
"He has hypersensitivity to sensory input to pain, temperature, noise, gas-bloat, and other sensory discomforts associated with his medical conditions.  When he is in pain or experiencing digestive disturbances, this is exacerbated by Autism and he is unable to focus and attend when in his mind his medical symptoms becomes beyond the pale.  All accommodations for physical disabilities, additional to those primarily for autism, should be considered with this information in mind, and <u>so I second the recommendation of his PCP that the ergonomic equipment and facilities requested by his PCP be provided to him.</u>"

16. Dr. Dresden, Benjamin's PCP, has been clear since petitions for past exams exactly what equipment was requested, and that the nonportable furniture portion of this be provided to Benjamin and had not been satisfied upon the grant of permission to bring.  Even Dr. Clarke makes mention of it.

17. Benjamin's attorney pleaded in his Court filings that all of his requests were as provided in the administrative case, attached as exhibits, and that all of them were supported by medical evidence and medical professionals therein.

18. The only plausible explanation in my opinion for the above discrepancies is that the State Bar is intentionally attempting to mislead the Court.  This is further supported in other instances I note Benjamin's physicians were misquoted, including the following statements in their 9/14/2020 Court "opposition" filing:
(1) "After previously being denied a preliminary injunction seeking five specific accommodations (and nevertheless having since received two of them, along with clarifications from the CBE on the other three), Plaintiff now asks this Court to order Defendants to grant "all requested accommodations." As explanation of what that entails, Plaintiff refers the Court to a four-page discussion of six "issues" with his accommodations, which appears to include at least twenty-two different requests, most of which are unclear, conditional, contradictory, and have not been previously raised." (Page 1).
From my understanding and read of the documents, Benjamin requested the injunction for all accommodations requested in his petition the first time, but highlighted five "most important" requests that applied regardless of how and where the exam was to be administered, then an issue that was before the Committee for the first time due to Covid and so uncertain.  Now, the Committee has decided to require in-person test center administration, and finalized its denials,

# Declaration of Dr. Toren ISO Reply Re: Motion for Preliminary Injunction

allowing for a more clear summary of the full requests in the petition. Every one of the requests he's made in "Appendix C" was previously made in the petition for this exam to the State Bar, so again, the State Bar appears to be intentionally misleading the Court. Those requests, in my professional opinion, were clear, reasonable, and not contradictory (although some are conditional).

(2) "For example, "Appendix C" includes requests such as "[p]ermission to use restroom freely and still return to test session in progress" ... if taking the Examination remotely, which both clearly and inherently raise issues of examination security and potential cheating. Renewed Mot. at 33:14; 33:25. Plaintiff offers no attempt to resolve these issues, nor could he, and accordingly he cannot avoid the fact that, at a minimum, his requests for such accommodations raise significant factual questions that make a mandatory preliminary injunction inappropriate." (Pages 20-21).

Dr. Clarke, to my read, clearly addressed multiple options for avoiding exam security issues with the restroom request he made in his 7/9/2020 affidavit, and Dr. Dresden touched upon it in his 6/4/2020 affidavit. Benjamin, too, did explain all of what the State Bar says he didn't and couldn't explain in his 6/4/2020 narrative.

9/16/2020

*[signature: Rosalie E. Baer]*