MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com


*Attorney for Plaintiff*

BENJAMIN KOHN


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| BENJAMIN KOHN | CASE NO. 20-4827 |
| *Plaintiff,* | |
| v. | |
| THE STATE BAR OF CALIFORNIA, | **EXHIBIT IN SUPPORT** |
| CALIFORNIA COMMITTEE OF BAR | **OF PLAINTIFF'S REPLY TO** |
| EXAMINERS, and THEIR AGENTS IN | **DEFENDANT'S OPPOSITION TO** |
| THEIR OFFICIAL CAPACITY | **RENEWED MOTION FOR** |
| *Defendants.* | **PRELIMINARY INJUNCTION** |

## **EXHIBIT IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO RENEWED MOTION FOR PRELIMINARY INJUNCTION**

I, Matthew M. Selvagn, certify that the attached is authentic, true, and correct to the best of my knowledge, under penalty of perjury.

Dated: September 21, 2020

Respectfully Submitted,

  /s/ Matthew M. Selvagn

MATTHEW M. SELVAGN, sbn 314509

123 BOWERY, 3rd fl

NEW YORK, NY 10002

Tel. 904-540-0870

Email mattselvagn@gmail.com

*Attorney for Plaintiff*



Digestive Health Center
420 Broadway, Pavilion D, M/C 5355
Redwood City, CA 94063
Tel: (650) 736-5555
Fax: (650) 498-6323
http://stanfordhospital.org

I, Dr. John O. Clarke, MD, declare the following, certifying under penalty of perjury all statements of fact as true to the best of my knowledge, professional expertise, and belief:

"Foundational" Background:

1. I have personal knowledge of the facts stated in this declaration, except as otherwise noted. I could and would testify competently to the facts contained in this declaration.
2. I am a specialized licensed physician and am board certified in gastroenterology. I practice digestive health medicine at Stanford Health Care, where I am director of the esophageal program, and also teach as a clinical professor of medicine at Stanford. I have substantial training, expertise, and experience in treating GI conditions such as those which Mr. Kohn has been diagnosed with.
3. I have evaluated and treated Mr. Kohn for the conditions in my specialty for more than two years. During that time, on at least four occasions I've supplied extensive documentation for the State Bar and appended a thorough workup of diagnostic testing procedures, labs, and scans, which reports were all also executed under penalty of perjury. I have followed Mr. Kohn's pursuit of testing accommodations for these conditions since 2018, reviewing the evolving responses from the State Bar.
4. Mr. Kohn is diagnosed with conditions that include severe gastroparesis, postoperative dysphagia, pelvic floor dyssynergia, and irritable bowel syndrome with chronic constipation. These conditions interfere with the major life activity of operating a major bodily function. I submitted 8 pages of detailed recommendations and explanations for these disabilities in affidavits for the State Bar dated 7/9/2020 and 8/7/2020 along with another 46 pages of documentation from the supporting medical testing I considered in reaching my opinion and recommendations.

Highlighted Factual Clarifications for Key Disputed Issues Identified to Me:

5. The stop the clock breaks I've recommended for meals and restroom use due to the above conditions should not come at the expense of extra test time that was requested for distinct disability functional limitations, such as autism or visual conditions. Rather, in my 7/9/2020 affidavit I delineated the proper amount of additive substitute extra time for that election as 130-170 minutes per test day, should the State Bar deem that easier to administer.
6. In reply to the State Bar's assertion in their 9/14/2020 Court filing that "For example, "Appendix C" includes requests such as "[p]ermission to use restroom freely and still return to test session in progress" ... if taking the Examination remotely, which both clearly and inherently raise issues of examination security and potential cheating. Renewed Mot. at 33:14; 33:25. Plaintiff offers no attempt to resolve these issues, nor could he, and accordingly he cannot avoid the fact that, at a minimum, his requests for such accommodations raise significant factual questions that make a mandatory preliminary injunction inappropriate... " (Pages 20-21):

Both Mr. Kohn and myself considered and addressed the examination security issues presented by my recommendations and the multiple solutions available for balancing exam security logistics and methods against the medical necessity of his ability to access the restroom freely. I specifically stated the following in my 7/9/2020 affidavit for the State Bar:

"... Mr. Kohn tells me there may be exam security considerations relating to these accommodations if he tests from home, since his home restroom would not be part of a secured test area he had been screened for prohibited items to enter, so there might be concerns about cheating if he left view of the webcam on his computer and still could return to test. He also suggests that this could be addressed by the Bar sending the proctor(s) to his home in a manner

that complies with physical distancing guidelines at that time and using the appropriate protective equipment instead of relying solely on webcam-based technology, so that a proctor could inspect the restroom before the exam starts and then monitor that it's accessed without detour. Alternatively, he suggests a body-worn camera be used that records him from his vantage point, including while using the restroom, to ensure no prohibited materials are accessed while out of sight of any computer webcam facing him. To me, either or both of these proposals would be reasonable and adequately address any security concerns from both providing the recommended accommodations and continuing to allow Mr. Kohn to test from home if that is what is otherwise offered to others due to the pandemic.

Mr. Kohn has some concern that if you decide otherwise, but grant these accommodations for a test center administration where most test from home, but specific disabled candidates and those without certain computer equipment are required to test in person, this would expose him to numerous disadvantages compared to other candidates, including greater coronavirus exposure risks, greater financial barriers and costs to accessing the exam due to his disability accommodations, the need to commute putting him at a disadvantage, uncertainty until close to the exam about where he would need to go, and most importantly the effect of a continued to denial of his myofascial pain syndrome disability accommodation request for provision of nonportable furniture ergonomic equipment he would otherwise need to bring and remove every test day to access the exam if forced to test in person. Disability accommodations should be selected to provide as little disadvantage due to total disability impairments as is possible, and so in my opinion his proposals for securing the exam while providing for his restroom access needs would be far more reasonable than conditioning their receipt on testing in person at a test center, particularly if the State Bar does not overturn its prior denial of his request for the ergonomic equipment Dr. Dresden requests to be provided as a disability accommodation.

In summary, for the four physical disability conditions of gastroparesis, postoperative dysphagia, irritable bowel syndrome with chronic constipation, and pelvic floor dyssynergia, I recommend the following updated/expanded accommodations: 1. Permission to bring, eat, and drink food and beverages in the exam room, and to remain in the exam room subject to proctor supervision during any meal breaks (already approved).

2. A number of stop the clock breaks for meals during each exam day equal to the lower of the test time for that day divided by 90 minutes or four such breaks, instead of a singular hourlong lunch break, that can be initiated any time Mr. Kohn chooses within the exam session and have a time limit of no less than 30 minutes each if he tests at a test center and no less than 20 minutes each if he tests at home; or, alternatively 120 minutes of additional extra time to any for other disabilities on each exam day if he tests at a test center and 80 minutes of such additional extra time if he tests at home.

3. Permission to use the restroom freely during all exam sessions and still be allowed to return to the exam.

4. That length of restroom trips not be held against Mr. Kohn in any exam security measures.

5. That, due to the effects of bethanechol, Mr. Kohn be allowed up to one up to 5-minute stop the clock break for restroom use for each hour of the exam; or alternatively an additive 30 minutes per exam day of additional extra time.

6. That, due to his constipation and pelvic floor dyssynergia, Mr. Kohn be allowed up to one up to 20-minute stop the clock break per exam day for bowel movements; or alternatively an additional 20 minutes per exam day of additional extra time."

I then went on to further add in my 8/7/2020 affidavit for the State Bar:
"I'm again following up to provide further documentation regarding Mr. Kohn's need for disability accommodations on the California bar exam and add to what I've previously written, most recently my affidavit dated 7/9/2020. Since I last wrote, you've released more information, through FAQs posted online on 7/20/2020, about standard test conditions both for the online modality you've now confirmed you will offer to most examinees and for the in-person assignment you've announced your intent to assign to examinees with testing accommodations you believe to "not lend themselves to online testing."

Benjamin Kohn
DOB: 12/29/1993
Stanford Health Care
2

While I've expressed several reasons previously for why Mr. Kohn should not be assigned to test in-person due to his need for testing accommodations, after further consideration of the effects of his digestive conditions in this pandemic and your rules for the exam, it is now even more clear to me that administering this long of an exam to him at a test center in-person would not be feasible and that to require such would be a reckless disregard for Mr. Kohn's health and that of your onsite staff and potentially other examinees.

The decreased motility of gas caused by both his fundoplication surgery and his constipation, and the increased likelihood of excessive stomach gas caused by his gastroparesis, causes symptoms that include chronic cough. Cough is also a symptom associated with Covid-19. As a result, Mr. Kohn's disabilities likely would impede the ability of onsite staff from determining whether he is exhibiting symptoms of Covid-19 to a degree that clinically would cause him to be an undue risk, or whether he is just experiencing the effects of his noncontagious medical conditions. Considering the stakes of the exam and the magnitude of the resources serious examinees must commit months in advance of the exam to attempt it, and that the exam cannot be flexibly scheduled to when Mr. Kohn is experiencing the least symptoms from his chronic medical conditions, for this reason alone he should be allowed to take the exam at home as an accommodation and any in-person proctors should be instructed that coughing is not by itself a sufficient indicator that Mr. Kohn is infected to terminate his examination.

Another issue with requiring Mr. Kohn to be proctored in-person is the regularity with which he must eat and drink, and that to use even his previously approved permission to do so during test time and bring food and drink into the exam room he must remove his face mask at least temporarily. Due to the Covid pandemic, it would thus be reckless to require him to eat or drink in close proximity to others outside his household, especially as Mr. Kohn is immunocompromised due to some of the medications he needs to take.

If he were granted the meal breaks as frequently as I requested, he would not need to eat during test time. And, if there were proctors onsite (e.g. at his home), he could be remote monitored via a closed-circuit camera system or bluetooth camera system not requiring an uninterrupted internet connection during at least the meal breaks, with the proctors still able to inspect the exam room space and the restroom space personally when Mr. Kohn is able to wear a mask and then verify no detours are made if he leaves the computer to use the restroom, again while Mr. Kohn is able to wear his mask. If you see fit, the proctors could remove any printed exam materials from the room during such time and keep them in their custody.

Conversely, if his only ability to eat is during a single lunch break and proctors or any other person must be present in the room during his exam time, and/or if proctors or any other person must be present in the room during meal breaks, and/or if Mr. Kohn must stay in a hotel to access the exam feasibly with all of his other needs, then there is not even a relatively safe way to administer the exam to Mr. Kohn during the pandemic.

I reconfirm the accommodation recommendations I made previously in my 7/9/2020 affidavit, and add that Mr. Kohn should be remote monitored in a manner that does not require internet as described above during at least meal breaks, and allowed to test at home as an accommodation regardless of whether that is achieved by nonstandard online exam software compatible with his accommodations or by in-home proctoring. Further, if he is proctored in-person, all appropriate staff should be instructed not to terminate his exam based upon cough symptoms."
7. The decision of the State Bar dated 8/27/2020 disregards not only these explanations, but also the extensive evidence supplied by Mr. Kohn's allergist/immunologist Dr. Rubinstein dated 7/14/2020 that he needs to take medications which induce immunodeficiencies likely to make him more vulnerable to Covid, upon which Dr. Rubinstein recommended that he not be required to test in-person at a test center as an accommodation and the elaborations upon this by his PCP Dr. Dresden dated 7/16/2020 that anything which would require (directly or practically, with the situation created by the ergonomic equipment) Mr. Kohn to stay at a hotel

(which also then involves 6+ days of meals entirely from restaurant deliveries instead of homecooking) further increases the consequential exposure to the coronavirus.

8. The State Bar did not disclose any expert opinion refuting the medical opinion I offered on any of the disabilities within my purview, and to my understanding only did so for autism and visual disabilities, also leaving unanswered the opinions offered for myofascial pain syndrome and related physical conditions, and regarding the issue of Mr. Kohn's susceptibility to Covid.

9. Specifically, the 8/27/2020 decision letter provided almost no explanation of the reasons for denying my recommendations. More importantly, it confirms the State Bar's position to put Mr. Kohn into a situation that would be a reckless disregard for his health and puts him at undue and high risk for irreparable medical harm, by:

A) Requiring him to test in-person instead of remotely, where remote testing has been found appropriate for the health and safety of nondisabled examinees, especially as unlike the average nondisabled examinee he is immunocompromised, and even with the best precautions (universal masks not inspected by proctors or staff physically handling examinees' personal equipment, no in-person supervision during meals, at least 10 feet of physical distance between proctors and examinees, and universal testing, which can still have false negatives or delays in detectability from when first contagious) in-person test center administrations will inherently have substantial risk of exposure to the coronavirus, not to mention all of the other inconveniences and costs to access disability accommodations as compared to nondisabled examinees. Further, the State Bar has not publicly committed to taking any of these precautions except implicitly having their proctors wear masks, and has publicly disclaimed others (stating examinee masks will be subject to inspection, requiring proctor presence even during meal break(s), etc.

B) Eating and drinking, which cannot be done while wearing a face mask, in close proximity to others outside his household, even though he is immunocompromised:
- By denying the stop the clock breaks that were warranted even before the pandemic, requiring Mr. Kohn to eat during test time to eat or drink more frequently than a single lunch break, as necessary due to gastroparesis, while supervised by at least one in-person proctor from outside his household sitting in the same cramped hotel room converted to test room, and likely at times other proctors who may cover for this proctor when they need to take a break.
- Requiring Mr. Kohn to be similarly supervised by a proctor during the lunch break, even when he doesn't have access to exam materials.
- In both of these instances, there is the alternative of using a closed-circuit camera system or bluetooth camera system to supervise him onsite, but from outside the room, at least during times when he cannot wear a mask.

C) Further, as the State Bar has assigned him to a test center outside reasonable commute distance, he would need to stay in a hotel for at least 7 nights and forego home cooking from his own household for restaurant deliveries, which would significantly increase his coronavirus exposure risk.

D) Especially as he'll already likely have to suspend physical therapy treatment for the week of the exam, if it were not practicable to transport and store his ergonomic equipment and the Bar was not ordered to provide equivalent equipment onsite themselves, being required to test at a test center instead of at home would risk not only impaired test performance due to distracting pain and physical discomfort flare-ups, but also irreversible progression of the underlying medical conditions, such as myofascial pain syndrome.

Even on the accommodation issues within my specialized purview, the State Bar's 8/27/2020 decision would, if allowed to stand, irreparably harm Mr. Kohn's ability to equally access the exam and perform on a level playing field to nondisabled examinees in other ways:

A) I explained in my 8/7/2020 affidavit how he would likely experience noncontagious chronic cough symptoms due to his medical conditions. The State Bar maintains its position that even as he must test in-person involuntarily despite this due to his testing accommodations, its policy of terminating exams if onsite staff perceive him of exhibiting symptoms of Covid would still be enforced, even for symptoms that would be probable without Covid infection due to disability.

B) Were he not to sacrifice the extra time he needs for other disability issues, and eat only a single lunch during exam hours, I'd expect for Mr. Kohn to experience severe gas-bloat, dyspepsia, nausea, and possibly regurgitation urge if he were to eat too much, too fast with his

surgical history. Especially with the aggravating factor of autism, this would impair his performance on any mentally intensive, sustained focus, and time pressured exam. Were he to sacrifice extra time from other disabilities, from what his other experts have said he'd not be able to perform to a level playing field on the exam due to these other disabilities.
C) Without lodging onsite, any commute would come at the expense of prime study time and transportation punctuality risks, which are not borne by nondisabled examinees testing from home.

Please feel free to contact my office if you have any further questions.

Sincerely,

John O'Brien Clarke
Clinical Associate Professor of Medicine
Stanford University
Director, Esophageal Program
Stanford Health Care