1  MATTHEW M. SELVAGN, sbn 314509

2  123 BOWERY, 3rd fl

3  NEW YORK, NY 10002

4  Tel. 904-540-0870

5  Email mattselvagn@gmail.com

6

7  *Attorney for Plaintiff*

8  BENJAMIN KOHN

9

10          UNITED STATES DISTRICT COURT

11          NORTHERN DISTRICT OF CALIFORNIA

12

13  BENJAMIN KOHN                    )    CASE NO. 20-4827

14  *Plaintiff,*                     )

15  v.                               )

16  THE STATE BAR OF CALIFORNIA,     )    **RESPONSE TO DEFENDANT'S**

17  CALIFORNIA COMMITTEE OF BAR      )    **MOTION TO DISMISS**

18  EXAMINERS, and THEIR AGENTS IN   )    **PLAINTIFF'S AMENDED**

19  THEIR OFFICIAL CAPACITY          )    **COMPLAINT**

20  *Defendants.*                    )

21                                   )

22  _____ )

23

24  **<u>PLAINTIFF'S RESPONSE TO MOTION TO DISMISS AMENDED COMPLAINT</u>**

25

26

27

28

29

1

# TABLE OF CONTENTS

I. Legal Standard for Motions to Dismiss……………………………………….………1

II. Plaintiff's Amended Complaint Sufficient to Avoid Dismissal……….……….…....2

    a) FRCP Rule 8 requires a liberal construction in favor of Plaintiff………....2

    b) Plaintiff's amendments (1) add additional facts which occurred after the first complaint, (2) elaborate on some facts alleged in the first complaint, and (3) add an additional count under each cause of action………………………….…………..….4

    c) Plaintiff left the original complaint intact for court and Defendant to see all changes. Not intended to confuse. Amendments supersede any contradictory facts in the initial complaint……………………………………………………….………...5

    d) Plaintiff's complaint contains cognizable demand for relief…………….……...5

III. Defendant Not Immune to Money Damages…………………………….………....6

    a) ADA Claims are allowed against state agencies, including those for money damages; Congress has abrogated sovereign immunity……………………………...7

    b) Even if this Court finds that a Constitutional Right must be violated to abrogate sovereign immunity, Plaintiff can show that his procedural due process rights have been violated under *Mathews v. Eldridge*……………………………………………….......*9*

IV. Defendant has pleaded facts sufficient to show a violation of the ADA………….....11

    a). Legal Standard…………………………………………………………….…....11

    b) Plaintiff has alleged that the accommodations given will not best ensure a level playing field for Mr. Kohn as compared to those accommodations requested…………...12

    c) Plaintiff has alleged that Defendants failed to establish that the requested accommodations will impose an undue burden or fundamental alteration……………...13

    d) Plaintiff need not demonstrate intentional discrimination to prevail - Only "deliberate indifference" is required……………………………………………...14

**V. Since the facts as alleged, if true, indicate that the accommodations are not reasonable, Plaintiff's state law claims for damages under the Unruh Act, Rehabilitation Act, and California Government Code are preserved**……………………………….....18

**a) Rehabilitation Act - Defendant benefits from Federal funding therefore waives sovereign immunity**…………………………………………………………….....18

**b) The Bar is covered by the Unruh Act and agency officials not immune from money damages in their official capacity**……………………………………….....19

**c) Plaintiff has complied with the Government Claims Act**………………….....20

**VI.**

**Conclusion**…………………………………………………………23

**Tables of Cases and Statutes**

Cases:

*Mcgary v. Portland*, 386 F.3d 1259 (9th Cir. 2004)..............................................................1, 11, 16

*Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003).....................................................................1

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)...........................1

*Ortez v. Washington County Oregon*, 88 F.3d 804, 807 (9th Cir.1996).........................................2

*Ashcroft v. Iqbal*,  556 U.S. 662, 129 S. Ct. 1937 (2009)..............................................................3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................................4

*Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011)..............5

*United States v. Georgia*, 546 US 151 (11th Cir. 2006)......................................................7, 10, 17

*Tennessee v. Lane*, 541 US 509 (6th Cir. 2004)............................................................................7

*Board of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-364 (2001)............................8, 9

*Ass'n for Disabled Americans v. Fla. Intern. Univ.*, 405 F. 3d 954 (11th Cir. 2005).......................8

*Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321 (2nd Cir. 1998)....................8, 17

*Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992)...............................................................................................................................................9

*Pandazides v. Virginia Bd. of Education*, 13 F.3d 823, 830 (4th Cir.1994)....................................9

*Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 789 (6th Cir.1996)............................................9

*Mathews v. Eldridge*, 424 U.S. 319 (1976)..................................................................................10

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)...................11

*Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061-62 (9th Cir. 2004).........................................11

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997)...........................................12

*Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985)...........................................12

*Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008)............................................................14

*Townsend v. Quasim*, 328 F.3d 511, 518 n.2 (9th Cir. 2003)......................................................16

*California School for the Blind v. Honig*, 736 F.2d 538, 545-46 (9th Cir. 1984)...........................16

*Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772CW, 1995 WL 873734, at *13 (N.D. Cal. June 9, 1995)...................................................................................................................................16

*Peeples v. Clinical Support Options, Inc.*, No. 3:20-cv-30144-KAR, 2020 WL 5542719 *3-4 (D. Mass. Sept. 16, 2020)......................................................................................................................17

*People's First of Alabama*, Dkt. No. 250, No. 2:20-cv-00619-AKK (D. Al. Sept. 30, 2020) at 153-54……………………………………………………………………………...17

*Steimel v. Wernert*, 823 F.3d 902, 918 (7th Cir. 2016)................................................................17

*Marino v. City University of New York*, 18 F.Supp.3d 320, 330 (E.D.N.Y. 2014)........................18

*Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 113 (2d Cir. 2001)...............18

*K.S. v. Fremont Unified School District*, NDCA, No. C 06-07218 SI, 2007……………...19, 21

Ackermann v. Carlson Indus., LLC, 2003 WL 24272653 *3 (C.D. Cal. Nov. 13, 2003) ……....19

*Annamaria M. v. Napa Valley Unified Sch. Dist.*, 2006 WL 1525733 *12 n. 2 (N.D. Cal. May 30, 2006)..................................................................................................................................19

*Han v. U.S. Dep't of Justice*, 45 F.3d 333, 338 (9th Cir. 1995)....................................................20

*Smith v. Cremins* (9th Cir. 1962) 308 F.2d 187…………………………………………………20

*Williams v. Horvath,* 16 Cal. 3d 386…………………………………………………......20, 21

*Donovan v. Reinbold* (9th Cir. 1970) 433 F.2d 738…………………………………………20

*Monroe v. Pape* (1961) 365 U.S. 167, 196……………………………………………………20

*Illerbrun v. Conrad* (1963) 216 Cal. App. 2d 521, 524……………………………………......21


Statutes:

FRCP Rule 8…………………………………………………………………………………...1, 2

FRCP Rule 8(2)-(3)………………………………………………………………………………2

Title II of the ADA - Under Section 309 of the ADA……………………………………………5

California Government Code Sections 11135 and 12944………………………………………6

Title II of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 337…………7

42 U.S.C. § 12131 *et seq.* (2000 ed. and Supp. II)......................................................7

42 U.S.C. § 12101(b)(4).................................................................................................7

29 U.S.C. §  794a(a)(2)………………………………………………………………......9

42 U.S.C. §  12133…………………………………………….…………………………......9

Title II, §§ 12131-12134…………………………………………………………………9

California Civil Code s. 52(a)...........................................................................................19

Cal Gov. Code 910(a).......................................................................................................22

# I. LEGAL STANDARD FOR MOTIONS TO DISMISS

In *Mcgary v. Portland* from 2004, holding for the plaintiff in an ADA case on a motion to dismiss, The Ninth Circuit stated that "The Supreme Court has cautioned that, in reviewing the sufficiency of the complaint, ' [t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.' *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974))." … All allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Id.* Dismissal of the complaint is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Id." Mcgary v. Portland*, 386 F.3d 1259 (9th Cir. 2004).

Under FRCP Rule 8, the Complaint must only contain a "short and plain statement" showing that the plaintiff is entitled to relief. This is a low standard, meaning that to avoid dismissal, the plaintiff need only show some factual allegations that, if true, would be a cause of action under the law.

Here, the ADA, Rehabilitation Act, and Unruh Act clearly require government testing agencies to supply reasonable accommodations to disabled test takers. Mr. Kohn has alleged in his Amended Complaint that, according to his medical evidence:

1. He was not given a "level playing field" relative to non-disabled examinees for past exams (and Defendants failed to adequately establish that any of the requested accommodations would impose an undue burden on the bar or constitute a fundamental alteration of the exam, nor did the requested accommodations constitute such); and

2. He is not being given a "level playing field" relative to non-disabled examinees for the current exam (and Defendants failed to adequately establish that any of the requested accommodations would impose an undue burden on the bar or constitute a fundamental alteration of the exam, nor do the requested accommodations constitute such).

3. On many occasions, Defendants' have committed procedural violations in deciding Plaintiff's administrative petitions and appeals by demanding excessive documentation, not

providing adequate written explanations timely, not deciding the requests timely, making bad faith pretextual denials, setting unduly burdensome deadlines for appeals, and generally making the testing accommodation petition and appeal process unreasonably burdensome on disabled examinees.  Each of these violations implicate constitutional due process and constitute a denial of equal opportunity and accessibility for disabled examinees on an exam that the State of California requires passage of to pursue Plaintiff's chosen career in his home state.

4.  Defendants have also facially discriminated against Plaintiff on the basis of disability by requiring him to test in-person when standard test conditions were from home.

These allegations, if true, constitute several distinct violations of Title II of the ADA, the Rehabilitation Act, the Unruh Act, and the California Government Code. Although both parties agree on exactly which accommodations Mr. Kohn was given, the parties disagree on whether those accommodations in fact level the playing field according to the expert testimony. This is not an issue of law to be decided on a motion to dismiss, but a contested factual issue.

In other words, if Mr. Kohn's factual allegations that the given accommodations did not level the playing field are true, then he must survive Defendants' Motion to Dismiss and proceed to discovery and trial on these contested issues of fact.  Further, if all of Mr. Kohn's factual allegations are true, the "deliberate indifference" prong of the damages claims would also be satisfied for those claims.

## II. PLAINTIFF'S AMENDED COMPLAINT SUFFICIENT TO AVOID DISMISSAL

**a) FRCP Rule 8 requires only facts which indicate a Plaintiff is entitled to relief, and may contain alternative or inconsistent theories.**

FRCP Rule 8 sections 2 and 3 state that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief." FRCP Rule 8(2)-(3).

In *Ortez v. Washington*, the 9th Circuit stated "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Ortez v. Washington County Oregon*, 88 F.3d 804, 807

2

(9th Cir.1996). From the US Supreme Court's opinion in *Ashcroft v. Iqbal*: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. Furthermore, in *Twombly*, the Supreme Court stated, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the…claim is and the grounds upon which it rests.'" 550 U.S. at 555. But "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of 4 the elements of a cause of action will not do…. Factual allegations must be enough to raise a right to relief above the speculative level…." Id. at 555.

Here, the Plaintiff alleges that the given accommodations on both the past and current exams, do not level the playing field relative to non-disabled examinees, and therefore do not allow him to accurately display his aptitude. This fact, if proven by his medical evidence, would constitute a violation of the ADA, Rehabilitation Act, Unruh Act, and California Government Code.  Plaintiff also alleges that the accommodations granted failed to make the exam equally accessible to him in ways that would allow him to test in a medically safe and healthy manner, or allow him to test without unequal financial, logistical, or safety barriers that could have been avoided through reasonable disability accommodations denied by Defendants.  Plaintiff further alleges facial disability discrimination in that for the current exam he is being required to test in-person during the pandemic while the standard test condition is remote testing from home.

To analyze this in light of the pleading standards from *Iqbal* and *Twombly*, the Plaintiff here is not merely making "conclusory" statements or simply "reciting the elements of a cause of action" under the ADA. Instead, Plaintiff puts directly at issue the medical evidence by asserting that his experts' opinions provided to Defendants were rejected largely without contradictory expert opinions, and on the subset of issues where some points were contested by the opinion of a single non-treating expert qualified to assess only his autism, are more credible than that of that expert, and that his experts have <u>in fact</u> stated that, without being granted all requested

3

accommodations, Mr. Kohn will be unable to accurately demonstrate his aptitude on the California Bar Exam, and will experience adverse symptoms, progression of medical ailments, reckless amounts of CoVid risk, and other disadvantages in order to attempt the exam. If Mr. Kohn's medical experts are correct, then Mr. Kohn has a cause of action under the ADA and the other causes of action which add remedies where an ADA violation is present, et. al.

In addition, the notice pleading standard elaborated above from *Twombly* requires that the plaintiff plead facts giving "defendant fair notice of what the…claim is and the grounds upon which it rests.'" Id at 555. Here, Plaintiff's Amended Complaint, although sometimes duplicative and requesting alternative relief (allowed under FRCP Rule 8), gives more than enough information and facts to adequately and fairly notify Defendant of the cause of action against it. The Amended Complaint contains numerous factual allegations and is over 20 pages long, meaning it is hardly a simple recitation of the elements of a cause of action, or a statement to the effect of "Defendant has wronged me." Quite the opposite, in fact the Bar has many times complained to this Court that Plaintiff gave too much information rather than too little. In this respect, it is hard to imagine how the Defendants are not on fair notice of the nature of the allegations against them.


**b) Plaintiff's amendments (1) add additional facts which occurred after the first complaint, (2) elaborate on some facts alleged in the first complaint, and (3) add an additional count under each cause of action.**

In response to Defendants' claim that some of the amendments to the Complaint are "confusing," Plaintiff shall explain here some of the additions in order to avoid confusion.

Some of the additional facts were added because they came about after the initial Complaint was filed. For example, the Bar's granting of some new accommodations for the upcoming exam (and denial of the remainder), came about after the first Complaint. Also the Plaintiff's filing of multiple Notice of Claims under the California Government Claims Act occurred after the first Complaint. Other additions were simply meant to clarify previously alleged facts, in other words, to give the Defendants even more fair notice of the nature of the claims against them. Lastly, Plaintiff added an additional (eighth count to each of his causes of

4

action for the violation that occurred after the initial complaint was filed, again in the spirit of giving even more notice to Defendants. These additions were all done in good faith and not to confuse, but rather to clarify.

**c) Plaintiff left the original complaint intact for Court and Defendant to see all changes. Such not intended to confuse. Amendments supersede any contradictory or outdated facts in the initial complaint.**

In response to Defendants' concern that the amendments were added to the beginning of the Complaint rather than woven into it, Plaintiff states that this was done for Defendants' convenience. Plaintiff's intent was for Defendants to be able to see the changes very easily at the top, rather than having to find them individually throughout a long document, almost all of which was unchanged. If the Court feels this was improper, Plaintiff humbly requests leave to correct the error rather than dismissal.

Plaintiff further states that where any facts seem contradictory (for example, where the Bar's recent granting of accommodations contradicts the original statement that they had not granted those accommodations or reached a decision on accommodations for the 10/2020 exam), common sense dictates that the amendments at the top chronologically follow the original facts, and thus should be controlling.

**d) Plaintiff's complaint does contain cognizable demand for relief.**

Plaintiff's Amended Complaint does contain a number of requests for relief based on the ADA, Rehabilitation Act, Unruh Act, and California Government Code, for both a permanent injunction and damages. Each is summarized as follows:

Title II of the ADA - Under Section 309 of the ADA, any person (including both public and private entities) that offers examinations related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes must offer such examinations "in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189. Further, *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1165 (9th Cir. 2011) states that

"reasonable accommodations" must be given to such disabled test takers, with "reasonable" meaning what "best ensures" leveling the playing field such that the taker can properly demonstrate their aptitude for the skills being tested.  *Id.*  Mr. Kohn has alleged, via his medical experts, facts indicating that Defendants have not granted accommodations which level the playing field.

Rehabilitation Act - Under Sections 504 and 505 of the Rehabilitation Act, remedies for violations of disability law are incorporated under a Federal cause of action that undisputedly has been held to validly abrogate sovereign immunity.  While Defendants allege they do not directly receive Federal funds, and claim this makes them not subject to the Rehabilitation Act, Plaintiff maintains that Defendants are an instrumentality of the State of California, and at a minimum there can be no reasonable factual dispute that at least some instrumentalities of the State of California receive Federal funding, which confers enough of a benefit on Defendants for the Rehabilitation Act to reach them.  Plaintiff rests on the authorities and arguments made in his 8/24/2020 opposition to Defendants' initial motion to dismiss as if fully set forth herein in support of his position thereon.

Unruh Act - California's Unruh Act makes any violation of the ADA a violation under state law, with $4,000 in statutory damages per violation plus unless exceeded by actual damages and treble punitive damages. Cal. Civ. Code 51.

California Government Code Sections 11135 and 12944 provide additional disability law duties on state agencies above the floor imposed by Federal law.  Defendants allege a statutory exemption in CBPC 6001 (State Bar Act).  Counsel was unable to find controlling authority addressing this point, and there is ambiguity in the statute as to the scope of any such exemption. Plaintiff defers to the Court for guidance and disposition of whether Defendants' allegation are correct on this claim, and in any event even without the additional disability law provisions of the California Government Code the facts Plaintiff has set forth state a cause of action under the ADA, Rehabilitation Act, and Unruh Act.

## III. DEFENDANT NOT IMMUNE TO MONEY DAMAGES

6

**a) Defendant not protected by sovereign immunity because Congress abrogated sovereign immunity for ADA claims.**

As a threshold matter, Defendants conceded in their Opposition to Plaintiff's motion for preliminary injunction that the Plaintiff "may...attempt to proceed on claims for injunctive relief," which is among the relief sought in this Complaint, along with declaratory relief.  And yet, they now posit that the Court must dismiss this action in its entirety.  With this discrepancy, Defendants have undermined their entire argument that sovereign immunity somehow warrants such a complete dismissal of the Complaint.

(1) Other circuits have persuasively held that Congress validly abrogated sovereign immunity for Title II as they undisputedly intended irrespective of whether constitutional rights are implicated, and *US v. Georgia* did not reach the "outer limits" of whether a constitutional violation is actually required, which remains unsettled law in the 9th Circuit.

The US Supreme Court has unequivocally held that Congress intended for Title II of the ADA to abrogate sovereign immunity, establishing a bright line that Congress had such authority where a constitutional right is implicated by the ADA violation, but declining to reach whether it had authority even without such a constitutional violation as in those cases. See *United States v. Georgia*, 546 US 151 (11th Cir. 2006) and *Tennessee v. Lane*, 541 US 509 (6th Cir. 2004).  To this day, neither the US Supreme Court nor the 9th Circuit have settled that question, so there is no binding authority on point.  Other circuits, particularly the 2nd Circuit, have held in particularly apposite ADA cases that Congress's abrogation of sovereign immunity for Title II was valid, and did not require implication of any constitutional right, and this Court should find that view persuasive here.

In *US v. Georgia*, the Court considered "whether a disabled inmate in a state prison may sue the State for money damages under Title II of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 337, as amended, 42 U.S.C. § 12131 *et seq.* (2000 ed. and Supp. II)." Justice Scalia, writing for the Court, stated, "In enacting the ADA, Congress "invoke[d] the sweep of congressional authority, including the power to enforce the fourteenth amendment . . . ." 42 U.S.C. § 12101(b)(4). Moreover, the Act provides that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or

State court of competent jurisdiction for a violation of this chapter." § 12202. We have accepted this latter statement as an unequivocal expression of Congress's intent to abrogate state sovereign immunity. See *Board of Trustees of Univ. of Ala.* v. *Garrett,* 531 U.S. 356, 363-364 (2001)."

Further the Supreme Court has pointed out that "The [ADA] specifically provides: 'A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter.' 42 U. S. C. § 12202. As in *Garrett,* see 531 U. S., at 363-364, no party disputes the adequacy of that expression of Congress' intent to abrogate the States' Eleventh Amendment immunity. The question, then, is whether Congress had the power to give effect to its intent.'"

Further, in *Ass'n for Disabled Americans v. Fla. Intern. Univ.*, 405 F. 3d 954 (11th Cir. 2005), the Court held that the state is subject to the ADA in educational cases. Lastly and most on point, in *Bartlett v. New York State Bd. of Law Examiners*, 156 F.3d 321 (2nd Cir. 1998), the 2nd Circuit found in favor of a visually disabled applicant to the bar, and awarded compensatory damages under the ADA, clearly erasing the defense that bar examiners can claim sovereign immunity in such cases.  Those holdings were reaffirmed and expanded even more on point in *T.W. v New York State Board of Law Examiners*, Memorandum and Order, September 18, 2019, U.S. District Court E.D New York, Case 16-CV-3029 (J. Dearie).

In *Ass'n for Disabled Americans v. Fla. Intern. Univ.*, 405 F. 3d 954 (11th Cir. 2005) the 11th Circuit stated: "The "unequal treatment of disabled persons in the administration of" education has a "long history, and has persisted despite several legislative efforts to remedy the problem of disability discrimination…. In light of the long history of state discrimination against students with disabilities, Congress reasonably concluded that there was a substantial risk for future discrimination. Title II's prophylactic remedy acts to detect and prevent discrimination against disabled examinees that could otherwise go undiscovered and unremedied. By prohibiting insubstantial reasons for denying accommodation to the disabled, Title II prevents invidious discrimination and unconstitutional treatment in the actions of state officials exercising discretionary powers over disabled students."

1   Lastly in *Bartlett v. New York State board of Bar Examiners*, the Court held that state bar

2   examiners are liable for compensatory damages if they fail to grant reasonable accommodations

3   under the ADA to disabled test takers.

4   Specifically the Court in *Bartlett* stated "We find no error in the conclusion of the district

5   court that she is entitled to compensatory damages. A plaintiff aggrieved by a violation of the

6   ADA or the Rehabilitation Act may seek Title VI remedies.  See 29 U.S.C. § 794a(a)(2);  see

7   also 42 U.S.C. § 12133 (ADA, looking to remedies provided under the Rehabilitation Act);

8   *Bartlett*, 970 F.Supp. at 1147 n. 39. The law is well settled that intentional violations of Title VI,

9   and thus the ADA and the Rehabilitation Act, can call for an award of money damages.  See

10  *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74, 112 S.Ct. 1028, 117 L.Ed.2d 208

11  (1992) (in the context of Title IX cases, compensatory damages are available for an intentional

12  violation); *Pandazides v. Virginia Bd. of Education*, 13 F.3d 823, 830 (4th Cir.1994) (because of

13  the similarity between Title IX and § 504 of the Rehabilitation Act, compensatory damages are

14  available for intentional discrimination); *Moreno v. Consolidated Rail Corp.*, 99 F.3d 782, 789

15  (6th Cir.1996) ("Every circuit that has reached the issue after Franklin has held that

16  compensatory damages are available under [the ADA and Rehabilitation Act]."). The Court went

17  on to award compensatory damages to the applicant for the state bar's failure to grant reasonable

18  accommodations.

19  Finally, the Bar is a "public entity" covered by the ADA.  In Tennessee v. Lane,

20  considering a disabled person's access to a courthouse, the Court stated that "Title II, §§

21  12131-12134, prohibits any public entity from discriminating against 'qualified' persons with

22  disabilities in the provision or operation of public services, programs, or activities. The Act

23  defines the term "public entity" to include state and local governments, as well as their agencies

24  and instrumentalities. § 12131(1)." Clearly the California State Bar is a "public entity" since it is

25  an agent or instrumentality of state government.

26

27  **b) Defendants' administrative adjudication of Plaintiff's statutory rights fails the**

28  ***Mathews* balancing test and so violated constitutional due process.**

Since *US v. Georgia* did not definitely address whether a constitutional right must be at stake for sovereign immunity to be validly abrogated under the ADA, Plaintiff includes an alternative theory here. Even if disability rights are considered "statutory" rather than "constitutional," Congress's choice to authorize them through the ADA makes state administrative agencies subject to constitutional due process in adjudicating those rights, which is tested by the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

Such a balancing test weighs: (1) the magnitude of the private interest; and (2) the risk of legally erroneous deprivation of that interest through the adjudication process chosen by the state administrative agency vs. the improved effect on the private interest of the greater procedural safeguards sought; and (3) the administrative costs or burden on the state agency to provide greater procedural safeguards against erroneous deprivation of the interest.

Applied here, regarding the first prong of the magnitude of the private interest: Plaintiff has relied on meaningful access, including a reasonable presumption of freedom from unlawful disability discrimination, in the process to become licensed as an attorney in his home state of California. He has spent years of his life during law school and since graduation, plus hundreds of thousands of dollars in direct expenses pursuing a career as an attorney.  His ability to realize this ambition conceivably could impact his future earning potential by millions of dollars over the course of his career, to say nothing of the intangible and intrinsic life experiences liberty interest implicated in pursuing a chosen career.  Consequently, these facts demonstrate an enormous magnitude for the weight to be accorded Plaintiff's private interest in the outcome of his administrative petitions and appeals pertaining to his statutory rights to disability accommodations on the California Bar Examination, which produced legally and factually erroneous outcomes partially due to Defendants' systemic, timing, and procedural defects discussed in the Complaint.

For the second prong of the risk of legally erroneous deprivation of the interest, Plaintiff argues that the Bar's process is fundamentally flawed in various ways, including their failure to give written findings or feedback, their extremely short appeals process, and their failure to disclose medical evidence for their decisions. For the third prong related to the burden on the agency to provide better safeguards, Plaintiff points out that the cost to the Bar would be de

1  minimus to provide better explanations and greater transparency to the medical records they rely

2  on.

3       Due Process aside, while there may not be a categorical fundamental right to practice law,

4  the Amended Complaint states facts that constitute enough unlawful restraint on Plaintiff's

5  pursuit of his chosen profession and ability to earn a living as to implicate those constitutional

6  rights in these facts.

7

8  **IV. PLAINTIFF HAS ALLEGED FACTS WHICH, IF TRUE, SHOW A VIOLATION OF**

9  **THE ADA**

10

11       **a). Legal Standard.**

12       As stated above, the standard to avoid dismissal of a complaint is simply that the

13  complaint alleges facts that, if true, show a cause of action. The Plaintiff should be given an

14  opportunity to "prove his case" by developing evidence rather than by dismissal. Dismissal is

15  seen as a harsh remedy that should be rarely used, and is reserved for legal defects that do not

16  depend on the facts, not factual disputes such as Defendant's factual arguments that it could not

17  be considered to have been deliberately indifferent in deciding Plaintiff's accommodations as

18  Plaintiff alleges.

19       In *Mcgary*, the 9th circuit held for the Plaintiff in an ADA discrimination case on a

20  motion to dismiss. "The threshold for pleading discrimination claims under the FHAA is low. In

21  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), the Supreme

22  Court held that the standard for pleading an employment discrimination claim is no higher than

23  the relaxed notice pleading standard of Federal Rule of Civil Procedure 8(a), *viz.*, "a short and

24  plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 512, 122 S. Ct.

25  992. In *Swierkiewicz*, the Supreme Court clarified that a plaintiff need not establish a prima facie

26  case of discrimination in the complaint, since the prima facie case is "an evidentiary standard,

27  not a pleading requirement," and often requires discovery to fully adduce. 534 U.S. at 510-11,

28  122 S. Ct. 992. The Ninth Circuit has explicitly extended the Court's holding in *Swierkiewicz* to

29  Fair Housing Act (FHA) claims. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1061-62 (9th

Cir. 2004); *see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997) (applying Federal Rule of Civil Procedure 8(a)'s liberal pleading standard to FHA claims and noting that this standard "contains `a powerful presumption against rejecting pleadings for failure to state a claim'" (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 386 (5th Cir. 1985)))." *Mcgary v. Portland*, 386 F.3d 1259 (9th Cir. 2004).

**b) Plaintiff has alleged that the accommodations given will not best ensure a level playing field for Mr. Kohn as compared to those accommodations requested.**

Here, Plaintiff has stated facts in his complaint that show lack of reasonable accommodations granted by the State Bar. See Plaintiff's statements in the Complaint starting on Page 7, in which he cites numerous physicians' testimony stating that, for each of his various disabilities, they believed he would require particular accommodations in order to level the playing field with non-disabled test takers. Here are some excerpts from the Complaint:

"Autism and neurological/attention disorders"

8. According to Dr. Toren, based on the most recent comprehensive neuropsychological evaluation that she reperformed this year, Mr. Kohn requires a number of testing accommodations for autism, including at least double time for multiple choice tests and at least 150% extra time (double time and a half) for essay tests, administered over proportionally more test days so that test time each day does not exceed a standard administration, the ability to type written responses, frequent extra breaks, and a distraction free testing environment, largely a private room although problems arising on the July 2018 exam would later expand this to the training and instructions provided to the proctor(s) to whom he is assigned.

...10. They stated "Due to this neurodevelopmental disorder, Mr. Kohn processes information and responds at a significantly slower rate than would be expected given his level of Intellectual Functioning. In order to have an accurate assessment of what he has learned during his time in law school, he would need significantly more time to complete all parts of exams as compared to relatively neurotypical examinees." Dr. Dresden further noted that Mr. Kohn scored in the 9th percentile on processing speed." Complaint Page 7. (In 2014 testing, with Dr. Toren measuring this to now be 0.2 percentile in 2020 testing).

...."[regarding his gastroparesis] 14.   In effect, these digestive issues "significantly impair the major life function of working," since they prevent Mr. Kohn from taking a licensing exam without reasonable accommodations such as 30 minute breaks every 90 minutes of testing and 150% extra time." Complaint Page 8.

...."Mr. Kohn acquired myofascial pain syndrome subsequent to the SAT.  He requires physical therapy three to five times per week along with regular chiropractic and osteopathic treatments to manage the symptoms sufficiently to avoid substantial loss of productivity and significant impairments of his quality of life...This condition can be further aggravated by high levels of stress or anxiety, and by spending long periods of time in a sitting posture, reading, or using a computer, especially without the ergonomic setup he uses for home, study, and work. The Bar Exam requires suspension of ordinary treatment due to the need to take the exam at a substantial distance from his established providers, without any long periods of uninterrupted time during business hours, over several consecutive days, and then places him in conditions that inevitably will maximize the exacerbation of his disability....The increase in these symptoms from the sitting and computer-use postures can be partially ameliorated by using an ergonomic setup, including those components I've described previously and an adjustable height sit-or-stand desk like the Iowa Bar provided.'" Complaint Page 9.

**c) Plaintiff has alleged that Defendants failed to establish that the requested accommodations will impose an undue burden or fundamental alteration.**

Plaintiff has alleged in his complaint that Defendants failed to establish that the requested accommodations will impose an undue burden or fundamental alteration. The Bar has offered to facts as to the cost, feasibility, or any other excuse as to why Mr. Kohn's various accommodations cannot be granted due to the burden they impose on the Bar.

In addition, Plaintiff has alleged that the requested accommodations do not fundamentally alter the exam, and Defendant has again not explained why or if there would be any fundamental alteration.

13

**d) Plaintiff need not demonstrate intentional discrimination to prevail - Only "deliberate indifference" is required.**

Addressing Defendant's assertion that Mr. Kohn must plead facts showing "intentional discrimination," Plaintiff points to *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008).  In that case, the 9th Circuit states: "A public entity can be liable for damages under section of Rehabilitation Act requiring that disabled individuals not be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal funds if it intentionally <u>or with deliberate indifference</u> fails to provide meaningful access <u>or</u> reasonable accommodation to disabled persons. Rehabilitation Act of 1973, § 504, 29 U.S.C.A. § 794." *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008). (Emphasis Added).

Here, Plaintiff has alleged that the Committee's actions in delaying a decision for at least the upcoming exam was due to "deliberate indifference" to Mr. Kohn's disabilities, or at least that inferences that such might plausibly be established after discovery could conceivably be drawn. Other highlights from Defendant's numerous counts of manifesting deliberate indifference duly pleaded in the complaint includes:

1.  Onboarding disability test center proctors the day before the July 2018 exam, as alleged to Plaintiff by State Bar staff in the break room upset over the proctors' mistakes causing difficulties with administering the break protocol, and failing to adequately train them or enter into clear employment agreements before the exam and then arguing about this during the test, was such a grossly negligent administration of accommodated high stakes testing for examinees with disabilities that it manifested deliberate indifference.

2.  Initially failing to provide any explanations for denying most of Plaintiff's disability accommodation requests for the February 2019 exam other than "[T]he documentation that you and your specialists have provided does not adequately support those requests," and responding to the inadequacy of this explanation on appeal only by demurring any duty to provide a detailed explanation of each denial and addressing only a couple denied requests, and then largely asserting for one minor request (equal access to hotel group rates) a procedurally defective and substantively meritless fundamental alteration claim. Not only does this belie Defendant's claim

that a reasoned decision making process occurred and leave it unlikely any experts were consulted (as its clear excerpts would have been provided had they been), but it also manifested deliberate indifference to Plaintiff's right to appeal the decision meaningfully and with the ability to respond to and correct the factual and legal errors made. This forced him to wait until the next exam cycles to attempt to cure any issues the Committee felt warranted the denials and that he likely could have cleared up earlier and passed on a sooner exam cycle had Defendant not so thwarted such with deliberate indifference (See Exhibits for Preliminary Injunction Motion).

3.  For the February 2020 exam, the plausible act of sending an incomplete file with cherry-picked documents to an expert consultant presented as the full file, and regardless, acting with deliberate indifference in its lack of scrutiny and complete reliance for both psychological and physical and visual disability claims on an opinion of a single non-treating psychological disabilities expert whose opinion not only grossly misstated the medical evidence and the basic background facts, but also offered sparse analysis and instead critiqued perceived defects in Plaintiff's experts only.  Where even a cursory review of the file would have dispelled this expert's premises and where the expert was so clearly unqualified to reject every disputed request and did not even purport to be or address all of them, rejecting the overwhelming medical evidence offered by Plaintiff and instead relying so completely on such a defective basis was an act of deliberate indifference, especially as the Committee did not provide its own actual reasons for denying the disputed accommodations until after appeal, when it was too late to address them before the exam, initially only offering excerpts of this single expert's opinion as explanation for the denials.

4.  Defendant's general practice of setting moving targets as to what information Plaintiff needed to provide to "prove" he needs the disputed accommodations, especially when it took most or all of the time between examination administrations to provide any feedback on what its issues are and forced Applicant to wait for the next exam cycle to try again for a decision that remedies the latest concerns communicated, a process that has discriminatorily required Plaintiff to put his career on hold for years and unnecessarily repeatedly incur massive expenses to prepare for and attempt the exam each iteration.

5. All of the "systemic" and "procedural" issues described in the Complaint were set to be so protectionist of test agency administrative burdens and so unduly burdensome to disabled applicants and chilling to the proper exercise of disability law rights as to themselves constitute deliberate indifference for both past and current exams

Plaintiff elaborates on the authorities and argument his prior filings that he incorporates by reference - including the 8/24/2020 opposition and filings pertaining to his pursuit of a preliminary injunction - as to further legal authorities supporting his position that the facts pleaded state an ADA claim as follows:

1. Where a public entity's policy "unduly burden[s]" individuals with disabilities, that policy discriminates "by reason of" disability and is unlawful." *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

Essentially, ADA violations are not just denials of reasonable accommodations for direct medical effects of the disability. They can also include requirements, including procedural and timing ones like the DOJ guidelines the Bar insists are non-binding, that factually have a disparate chilling impact to those with disabilities, as we alleged in the Complaint.

2. A law that discriminates against the "medically needy" "may be read to facially discriminate against disabled persons, because those who need the kind of long term assistance here.. are disabled within the meaning of the ADA." *Townsend v. Quasim*, 328 F.3d 511, 518 n.2 (9th Cir. 2003).

Applied to Plaintiff, the collective medical neediness of the number of disabilities he has to deal with can be considered even where certain accommodations might not be reasonable for any single one of his disabilities, and the expansiveness of the accommodation needs cannot itself be a reason why independently merited ones should be found unreasonable in light of having already received burdensome accommodations.

3. Regarding mandatory in-person testing and facial discrimination:
"A public entity's programs must be equally safe and accessible for disabled persons as for nondisabled participants. *California School for the Blind v. Honig*, 736 F.2d 538, 545-46 (9th Cir. 1984); *Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772CW, 1995 WL 873734, at *13 (N.D. Cal. June 9, 1995). This is particularly true during the pandemic. See *Peeples v. Clinical*

*Support Options, Inc.,* No. 3:20-cv-30144-KAR, 2020 WL 5542719 *3-4 (D. Mass. Sept. 16, 2020) (granting preliminary injunction requiring employer to allow an employee with moderate asthma to telework during COVID-19); See Also *People's First of Alabama*, Dkt. No. 250, No. 2:20-cv-00619-AKK (D. Al. Sept. 30, 2020) at 153-54 (holding that requiring immunocompromised individuals to vote in-person during the pandemic, a far less prolonged and risky type of exposure than that Defendants have required of Plaintiff for the 10/2020 exam, facially violated the ADA.  Last month, the Alameda County Superior Court held that under the ADA, inaccessible testing conditions due to COVID-19 for those with disabilities prohibit the UC system from using the SAT and ACT as a "plus factor" in admissions.  *Smith v. Regents*, Order Granting Preliminary Injunction (Super. Ct. Alameda County, Aug. 31, 2020, No. RG19046222) at *8-11.  As in this case, the plaintiffs there presented evidence that disabled test-takers are unable to obtain reasonable accommodations and access suitable and safe testing sites during the pandemic.  *Id.* At 3-5.  Here, Defendants [State Bar] have enacted an even more egregious denial of meaningful access.  By denying accessible locations for the mandatory bar exam, Defendants deprive disabled test-takers... this chance at admission to the State Bar."

4.  To the extent Defendants may argue Plaintiff's requested accommodations were not reasonable because by the time the administrative decision was reached, it would be too difficult to implement in that timeframe, most of the requests the State Bar had notice of months to years earlier, which as a matter of law prevents any impracticability from being an undue burden: "Defendants' own delay is a primary cause of the burden they now claim.  The state cannot avoid its duties by "painting itself into a corner and then lamenting the view."  *Steimel v. Wernert*, 823 F.3d 902, 918 (7th Cir. 2016).

5.  To the extent Defendants argue damages are not cognizable because Plaintiff might have failed the exam even if the denied accommodations had been granted, or might pass a future attempt even without the denied accommodations, the 9th Circuit held that mere denial of the ability to take a given administration of the exam with equal access was a cognizable and compensable injury. *Enyart v. Nat'l Conference of Bar Examiners*, Inc., 630 F.3d 1153, 1165 (9th Cir. 2011).

17

**V. SINCE THE FACTS ALLEGED, IF TRUE, INDICATE THAT THE ACCOMMODATIONS WERE NOT REASONABLE, PLAINTIFF'S DATE LAW CLAIMS FOR DAMAGES UNDER THE UNRUH ACT, REHABILITATION ACT, AND CALIFORNIA GOVERNMENT CODE ARE PRESERVED**

**a) Rehabilitation Act - Defendant benefits from Federal Funding and therefore waives sovereign immunity relative to Rehabilitation Act claims.**

When acting pursuant to the Spending Clause, "Congress may provide funds to the states and may require that the states, as a condition of receiving those funds, waive their sovereign immunity." *Marino v. City University of New York,* 18 F.Supp.3d 320, 330 (E.D.N.Y. 2014) (citing *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn,* 280 F.3d 98, 113 (2d Cir. 2001). Section 504 of the Rehabilitation Act prohibits a program that receives federal funding from discriminating against a person based on a disability. 29 U.S.C. § 794(a).

The Rehabilitation Act covers any entity that receives or benefits from federal funding. In *Bartlett v. New York State Board of Law Examiners*, the Court clarified this by stating that "regulations promulgated under the Rehabilitation Act define a 'recipient' as including 'any instrumentality of a state' to which Federal financial assistance is extended directly or *through another recipient.*" 45 C.F.R. § 84.3(f)." (Emphasis Added); See Also *T.W. v New York State Board of Law Examiners*, Memorandum and Order, September 18, 2019, U.S. District Court E.D New York, Case 16-CV-3029 (J. Dearie). In *Bartlett*, the Court held that the New York State Bar was subject to the Rehabilitation Act because it accepted vouchers from students who had received federal funding, but the Court's key holding stated that any instrumentality of the State that in any way benefitted from federal money would be covered by the Act.

In this case, the California Bar, just like the New York Bar, clearly benefits from federal funding in a variety of ways, because just as Defendant itself asserted where it suited its sovereign immunity argument, it is "an arm of the State." (Defendant's Opposition to Motion for Preliminary Injunction, p. 12). Indeed, it is an administrative subdivision of the State of California created entirely to administrate attorney admissions and governance on behalf of the Supreme Court of California, the entity accorded that inherent authority by the California

Constitution.  Consequently, applying *Bartlett,* it does not matter if this Court credits the

allegations of Defendant and its Chief Financial Officer, John Adams, on the issue of whether the

State Bar of California *directly* receives Federal funds, because the relevant fact is not that, but

whether "any instrumentality" of the State of California receives Federal funding.  Since it is

such manifest common knowledge in the jurisdiction that the State of California as a whole

receives and benefits from federal funding, such a fact is apt for judicial notice without Plaintiff

presenting specific evidence of it, but for purposes of a motion to dismiss it is in any event

enough that Plaintiff has alleged such facts.  The effect of that fact is that, contrary to

Defendant's argument, Defendant is subject to the Rehabilitation Act.

### b) The Bar is covered by the Unruh Act and agency officials not immune from money damages in their official capacity

In *K.S. v. Fremont Unified School District*, NDCA, No. C 06-07218 SI, 2007., the Court

stated that suits under the Unruh Act for money damages may proceed against public agency

officials in their official capacity, and they are not protected by sovereign immunity. Plaintiff has

named the Bar Committee members as Defendants in this case. To quote the Court in *K.S. v.*

*Fremont*:

"Defendants cite no case law supporting the proposition that individuals may not be held

liable  under the Unruh Act, and other cases indicate that individuals may be sued under

the Act. *See, e.g., Lentini*, 370 F.3d at 849-50 (holding individual liable for violation of

the Unruh Act); *Ackermann v. Carlson Indus., LLC*, 2003 WL 24272653 *3 (C.D. Cal.

Nov. 13, 2003) (denying motion to dismiss Unruh Act claims against individual

defendants). In addition, the Unruh Act, California Civil Code § 51, is enforceable

through California Civil Code § 52(a), *Annamaria M. v. Napa Valley Unified Sch. Dist.*,

2006 WL 1525733 *12 n. 2 (N.D. Cal. May 30, 2006), which provides that " *[w]hoever*

denies, aids or incites a denial, or makes any discrimination or distinction contrary to

Section 51 . . . is liable . . .," Cal. Civ. Code § 52(a) (emphasis added). This language

indicates that liability under the Unruh Act is not premised upon a showing that the defendant is a 'business establishment.'...

The Eleventh Amendment "does not bar a suit seeking damages against a state official in his individual capacity." *Han v. U.S. Dep't of Justice*, 45 F.3d 333, 338 (9th Cir. 1995). Nor does it bar a suit seeking prospective, injunctive relief against a state official sued in his or her official capacity. *Id.* ...

The Court also rejected the argument that "state officials may not be held liable in their personal capacity for actions they take in their official capacity." *Id.* at 27… an official may therefore be sued under state law in his or her personal capacity even for violations that are strictly the result of the official's office, i.e. vicarious liability under the doctrine of respondeat superior. For this reason, it does not appear that the Eleventh Amendment would pose any bar to plaintiff bringing damages claims against these individual defendants in their personal capacities." *K.S. v. Fremont Unified School District*, No. C 06-07218 SI, 2007.

### c) Plaintiff has complied with the Government Claims Act

In *Williams v. Horvath*, 16 Cal. 3d 386, the California Supreme Court summarized the view of the 9th Circuit regarding California Tort Claims Act, which attempted to require a 100 day notice provision as a condition precedent to suing the state for federal causes of action. Quoting *Smith v. Cremins* (9th Cir. 1962) 308 F.2d 187:

"In California statutes or ordinances which condition the right to sue the sovereign upon timely filing of claims and actions are more than procedural requirements. They are elements of the plaintiff's cause of action and conditions precedent to the maintenance of the action… California may not impair federally created rights or impose conditions upon them."

Quoting another Ninth Circuit case, *Donovan v. Reinbold* (9th Cir. 1970) 433 F.2d 738 "As Mr. Justice Harlan observed concurring in *Monroe v. Pape* (1961) 365 U.S. 167, 196 ..., 'a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may

constitute both a state tort and the deprivation of a constitutional right.' "Congress has not evinced any intention to defer to the states the definition of the federal right created in [section 1983 of the Civil Rights Act], or to adopt the states' remedies or procedures for the vindication of that right. It has never indicated an intent to engraft onto the federal right state concepts of sovereign immunity or of state susceptibility to suit, which are the concepts that are the roots of the California Tort Claims Act." Id from *Williams v. Horvath*.

   "...the filing of a claim for damages 'is more than a procedural requirement, it is a condition precedent to plaintiff's maintaining an action against defendants, in short, an integral part of plaintiff's cause of action.' And while it may be constitutionally permissible for the Legislature to place this substantive impediment in the path of a state cause of action, it is clear that the supremacy clause will not permit a like abrogation of the perquisites of a federal civil rights litigant." Id from *Williams v. Horvath* quoting *Illerbrun v. Conrad* (1963) 216 Cal. App. 2d 521, 524.

   In short, there are a variety of cases settling the issue of whether federal civil rights claims, and by extension the ADA since it is a civil rights statute, are subject to the California Government Claims Act. To require a plaintiff to file such a notice of claim is effectively restricting a federal cause of action and altering the elements of the plaintiff's case, in violation of the Supremacy Clause.

   Plaintiff has complied with the California Government Claims Act, even though not required to for his federal causes of action, or his Unruh Act claims against the individual Committee members (see *K.S. v. Fremont Unified School District*, No. C 06-07218 SI, 2007, which states that individuals need not be separately notified under Government Claims Act).

   For the February 2020 exam, he was denied his appeal on 2/14/2020, and filed a Notice of Claim on 8/14/2020 (6 months after the decision). For the upcoming October exam Plaintiff has already filed his notice of claim, also on 8/14/2020. These notices were served by email on Executive Director Donna Hershkowitz and General Counsel Kenneth Holloway and strictly complied with all statutory requirements of the Claims Act. The email has been filed as an Exhibit.

For the February 2019 exam, Plaintiff notified the bar of his claim via his appeal, received by the Bar on Jan 7, 2019 (the Bar had denied his accommodations on Dec 28, 2018). The notice is quoted here:

"If Applicant's administrative remedies are exhausted without approval of all accommodations requested in the 2018 petition, [Applicant reserves right to appeal] ... and designate the appropriate procedures for challenging the decision of both examinations' rulings for what accommodations must be provided on any future exams in <u>California State Bar Court and/or United States District Court and for claiming recovery for any damages</u> not having the accommodations on the next attempt of the California Bar Exam (and thus potentially requiring extra retakes than would otherwise be needed) with costs." The notice included the Plaintiff's address and name, as required by Cal Gov. Code 910(a).

According to the Claims Act, any notice of the claim, even one which is imperfect, shall satisfy the requirement of notifying the defendant of an intention to pursue damages, stated in the statute as follows:

"If ... a claim as presented fails to comply substantially with the requirements of Sections 910 and 910.2, or with the requirements of a form provided under Section 910.4 if a claim is presented pursuant thereto, the board or the person may, at any time within 20 days after the claim is presented, give written notice of its insufficiency, stating with particularity the defects or omissions therein.;" Cal Gov. Code 910.8

"...Any defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in Section 910.8, except that no notice need be given and no waiver shall result when the claim as presented fails to state either an address to which the person presenting the claim desires notices to be sent or an address of the claimant." Cal Gov. Code 911.

Here, the Bar did not give any notice of insufficiency or any objection to the notice, thus any defects have been waived.

Under Cal. Gov. Code 911.6(a)(1), the Plaintiff's failure to make a claim may be waived if "the failure to present the claim was through mistake, inadvertence, surprise or excusable

1  neglect and the public entity was not prejudiced in its defense of the claim by the failure to

2  present the claim within the time specified in Section 911.2."

3      Here, Plaintiff arguably complied with the notice requirements as stated above, however

4  to the extent his notice contained any defects, this was purely due to mistake as to the nature of

5  the contents of such claim, especially considering the federal causes of action under the ADA, as

6  a reasonable plaintiff would not believe federal causes of action would be subject to the

7  Government Claims Act. In addition, any omissions would have been inadvertent and not

8  prejudicial to the Bar, since they did have actual notice of Mr. Kohn's complaints and intention

9  to pursue damages in court if necessary, well within the 6 month time frame.  Further, Plaintiff

10  sent Defendant a demand letter on June 15, 2020 in regards to his claims for past and current

11  exams.  Finally, as Defendant's actionable conduct was and is ongoing, it was reasonably unclear

12  to Plaintiff until more recently that a lawsuit for damages would be warranted, appropriate, and

13  ripe, which makes any perceived failure to preserve the earliest claims all the more reasonable

14  and justly excusable.

15

16                                  **VI. CONCLUSION**

17      For the reasons above, Plaintiff respectfully requests that this Court deny Defendant's

18  motion to dismiss in its entirety, or to at least preserve the claims the Court belives should go

19  forward, in which case Plaintiff requests that any dismissed claims be dismissed without

20  prejudice.  If the Court finds that Plaintiff's First Amended Complaint is procedurally defective,

21  Plaintiff requests leave to amend.

22

23  Dated: October 5, 2020

24  Respectfully Submitted,

25                          _/s/ Matthew M. Selvagn_____

26                          MATTHEW M. SELVAGN, sbn 314509

27                          123 BOWERY, 3rd fl

28                          NEW YORK, NY 10002

29                          Tel. 904-540-0870

23

Email mattselvagn@gmail.com

*Attorney for Plaintiff*