UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN KOHN,

                Plaintiff,

     v.

STATE BAR OF CALIFORNIA, et al.,

                Defendants.

Case No.  20-cv-04827-PJH

**ORDER GRANTING MOTION TO DISMISS**

Re: Dkt. No. 34

      Before the court is defendants the State Bar of California ("State Bar") and the California Committee of Bar Examiners' (the "Committee" and, together with the State Bar, "defendants") motion to dismiss.  The matter is fully briefed and suitable for resolution without oral argument.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court GRANTS the motion, for the following reasons.

## BACKGROUND

      On July 18, 2020, plaintiff Benjamin Kohn ("plaintiff") filed a complaint alleging seven violations of the Americans with Disabilities Act ("ADA") and seven corresponding violations of California's Unruh Act, Cal. Civ. Code § 51(f).  Dkt. 1.  The same day, plaintiff filed a motion for preliminary injunction, (Dkt. 2), which the court denied on August 13, 2020, (Dkt. 26), finding that plaintiff's motion was not ripe for adjudication.  Plaintiff then filed a first amended complaint ("FAC") that brings the following fifteen claims: (1) violation of ADA related to the February 2019 Bar Exam; (2) violation of the ADA for deliberate indifference related to the February 2019 Bar Exam; (3) violation of

United States District Court
Northern District of California

United States District Court
Northern District of California

the ADA related to the February 2020 Bar Exam; (4) violation of the ADA related to the October 2020 Bar Exam; (5)–(7) violations of the ADA and California Government Code §§ 11135 et seq. & 12944 et seq. for deliberate indifference for each of plaintiff's past three exams; (8)–(14) violations of the Unruh Act, Cal. Civ. Code § 51(f) for each ADA violation; (15) violation of the ADA for failure to provide reasonable accommodations for the October 2020 Exam and defendants' deliberate indifference.  Dkt. 32.

Plaintiff is a law school graduate who registered to take the October 2020 sitting of the California Bar Examination.  FAC at 9–10.[1]  Plaintiff suffers from and has been diagnosed with several physical and psychological conditions including autism and neurological/attention disorders, digestive system conditions (gastroparesis, postoperative dysphagia, pelvic floor dyssynergia, and irritable bowel syndrome with chronic constipation), and visual impairments (keratoconus, dry eye syndrome, uncorrectable astigmatism, floaters).  Id. ¶ 2.  Because of his conditions, plaintiff has been granted several accommodations on past exams administered at various levels and by various institutions.  Id. ¶ 3.

Plaintiff has previously taken the California Bar Exam in July 2018, February 2019, and February 2020 and for each exam he was granted some testing accommodations but denied others.  Id. ¶¶ 5–6.  Examples of denied accommodations included: 150% extra time on the written portion of the exam, a cap of no more testing time per day than non-disabled test takers, ergonomic/physical equipment supplied in the exam room, specialized disability proctors, and 30 minutes of break time per 90 minutes of testing.  Id. ¶ 6.  Plaintiff alleges that his physicians have opined that plaintiff should receive testing accommodations similar to those previously requested and denied.  Id. ¶¶ 7–17. Accordingly, plaintiff alleges that he is "disabled" and "significantly impaired in a major life

---

[1] Several allegations in the FAC do not reference numbered paragraphs, in violation of Federal Rule of Civil Procedure 10(b).  Further, new allegations in the FAC duplicate the numbered paragraphs from the original complaint.  To avoid confusion, the court refers to the allegations without numbered paragraphs and the new allegations by citing the electronically stamped ECF page numbers at the top of each page.

1    function." Id. ¶ 18.

2        On March 19, 2020, plaintiff submitted a petition for testing accommodations for

3    the October 2020 exam. Id. ¶ 19. In his petition, plaintiff sought all accommodations that

4    defendants previously granted on his prior attempts at the California Bar Exam, as well

5    as accommodations that were previously denied. Id. ¶ 25. On June 4, 2020, plaintiff

6    supplemented his petition with additional expert opinions. Id. ¶ 19. Plaintiff alleges that

7    he was prejudiced by defendants' delays in deciding his accommodations for the October

8    exam and, with regard to the COVID-19 pandemic, the Committee discriminated against

9    disabled test takers by failing to offer them the opportunity to take the exam online. Id.

10   ¶ 26.

11       On August 27, 2020, the Committee issued a final administrative decision to

12   plaintiff notifying him that, in addition to affirming his previously granted requests, it

13   granted his request for increased time on written portions of the exam and no more

14   testing time per day than non-disabled students with a corresponding increase in the

15   number of days to take the exam. Id. at 2. The Committee denied the remainder of

16   plaintiff's requests for administration of the exam over weekend days only, testing in a

17   private room, pre-scheduled breaks to be taken instead at plaintiff's discretion, a

18   complete ergonomic workstation provided by the Committee, a hotel room for plaintiff

19   provided by the Committee, and assignment to an experienced proctor. Id.

20       On August 31, 2020, plaintiff filed a renewed motion for preliminary injunction,

21   (Dkt. 29), which the court denied on September 25, 2020, (Dkt. 36). Defendants now

22   move to dismiss the FAC in its entirety pursuant to Federal Rules of Civil Procedure

23   12(b)(1) and 12(b)(6).

**DISCUSSION**

24

25   **A.    Legal Standard**

26       **1.    Rule 12(b)(1)**

27       A federal court may dismiss an action under Federal Rule of Civil Procedure

28   12(b)(1) for lack of federal subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Because

1    "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary

2    affirmatively appears," the burden to prove its existence "rests on the party asserting

3    federal subject matter jurisdiction." Pac. Bell Internet Servs. v. Recording Indus. Ass'n of

4    Am., Inc., 2003 WL 22862662, at *3 (N.D. Cal. Nov. 26, 2003) (quoting Gen. Atomic Co.

5    v. United Nuclear Corp., 655 F.2d 968, 969 (9th Cir. 1981); and citing Cal. ex rel.

6    Younger v. Andrus, 608 F.2d 1247, 1249 (9th Cir. 1979)).  A jurisdictional challenge may

7    be facial or factual.  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004)

8    (citing White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000)).  When the attack is facial, the

9    court determines whether the allegations contained in the complaint are sufficient on their

10   face to invoke federal jurisdiction.  Id.  Where the attack is factual, however, "the court

11   need not presume the truthfulness of the plaintiff's allegations."  Id.

12           When resolving a factual dispute about its federal subject matter jurisdiction, a

13   court may review extrinsic evidence beyond the complaint without converting a motion to

14   dismiss into one for summary judgment.  McCarthy v. United States, 850 F.2d 558, 560

15   (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and

16   testimony, to resolve factual disputes concerning the existence of jurisdiction"); see also

17   Land v. Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District Court's

18   jurisdiction is raised . . . the court may inquire by affidavits or otherwise, into the facts as

19   they exist.").  "Once the moving party has converted the motion to dismiss into a factual

20   motion by presenting affidavits or other evidence properly brought before the court, the

21   party opposing the motion must furnish affidavits or other evidence necessary to satisfy

22   its burden of establishing subject matter jurisdiction."  Safe Air for Everyone, 373 F.3d at

23   1039.

24           **2.     Rule 12(b)(6)**

25           A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the

26   legal sufficiency of the claims alleged in the complaint.  Ileto v. Glock Inc., 349 F.3d 1191,

27   1199–1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that

28   a complaint include a "short and plain statement of the claim showing that the pleader is

1    entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule

2    12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient

3    facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th

4    Cir. 2013).

5        While the court is to accept as true all the factual allegations in the complaint,

6    legally conclusory statements, not supported by actual factual allegations, need not be

7    accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009).  The complaint must proffer

8    sufficient facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v.

9    Twombly, 550 U.S. 544, 555, 558–59 (2007).

10       "A claim has facial plausibility when the plaintiff pleads factual content that allows

11   the court to draw the reasonable inference that the defendant is liable for the misconduct

12   alleged."  Iqbal, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court

13   to infer more than the mere possibility of misconduct, the complaint has alleged—but it

14   has not 'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ.

15   P. 8(a)(2)).  Where dismissal is warranted, it is generally without prejudice, unless it is

16   clear the complaint cannot be saved by any amendment.  In re Daou Sys., Inc., 411 F.3d

17   1006, 1013 (9th Cir. 2005).

18   **B.    Analysis**

19       **1.    Claims for Injunctive and Declaratory Relief**

20       Plaintiff's fourth claim alleges a violation of the ADA for the Committee's failure to

21   provide a timely decision for the October 2020 Bar Exam.  FAC at 27.  In his prayer for

22   relief, plaintiff requests injunctive relief in the form of a court order directing defendants to

23   grant his petition and declaratory relief granting him all accommodations received for the

24   February 2020 Bar Exam plus additional requests.[2]  Id. at 28.

25       In their reply brief, defendants raise the contention that because plaintiff took the

26

27   _____

    [2] The FAC also requests the court issue a preliminary injunction granting plaintiff
    disability accommodations.  FAC at 4.  The court denied both plaintiff's initial motion for
28   preliminary injunction, (Dkt. 26), and his renewed preliminary injunction, (Dkt. 36), and
    any remaining claim for injunctive relief is moot.

United States District Court
Northern District of California

1    October 2020 Bar Examination, his claims for injunctive and declaratory relief are now

2    moot and should be dismissed for lack of jurisdiction.  Reply at 1.  Defendants submit a

3    declaration confirming that plaintiff took and completed the exam.  Dkt. 38-1.

4         Defendants present this issue for the first time in their reply brief.  As a general

5    rule, courts do not consider arguments raised for the first time on reply.  See, e.g.,

6    Bazuaye v. I.N.S., 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the

7    reply brief are waived."); Dytch v. Yoon, 2011 WL 839421, at *3 (N.D. Cal. Mar. 7, 2011)

8    ("Defendant's argument . . . was raised for the first time in her reply brief.  As a result, it is

9    improper for the Court to consider it.").  "However, courts have an 'independent

10   obligation' to police their own subject matter jurisdiction, including the parties' standing."

11   Animal Legal Def. Fund v. U.S. Dep't of Agric., 935 F.3d 858, 866 (9th Cir. 2019) (quoting

12   Summers v. Earth Island Inst., 555 U.S. 488, 499 (2009)); and citing Ruhrgas AG v.

13   Marathon Oil Co., 526 U.S. 574, 583 (1999)).

14        Here, despite defendants' failure to address mootness in their opening brief, the

15   court has an independent obligation to consider whether plaintiff's prospective injunctive

16   and declaratory relief claims are moot.  "No justiciable controversy is presented where

17   the question sought to be adjudicated has been mooted by developments subsequent to

18   filing of the complaint."  M.M. v. Lafayette Sch. Dist., 767 F.3d 842, 857 (9th Cir. 2014)

19   (citing Church of Scientology of Cal. v. United States, 506 U.S. 9, 12 (1992)).  In this

20   case, defendants have administered the October 2020 Bar Exam and any request for

21   declaratory or injunctive relief pertaining to that Exam is necessarily moot.

22        For the foregoing reasons, to the extent plaintiff's fourth claim pleads a claim for

23   relief based on prospective declaratory or injunctive relief pertaining to the October 2020

24   Bar Exam, defendants' motion to dismiss is GRANTED and plaintiff's fourth claim is

25   DISMISSED WITH PREJUDICE.

26        **2.    First through Seventh & Fifteenth Claims: ADA**

27        Plaintiff's first through seventh and fifteenth claims allege violations of the ADA

28

6

1    based on both his past Bar Exams and October 2020 Bar Exam.  FAC at 4, 25–27.[3]

2          Defendants argue that plaintiff's ADA claims fail because the State Bar is immune

3    from claims for damages under Title II of the ADA, plaintiff has failed to sufficiently plead

4    intentional conduct necessary for damages under the ADA, plaintiff has failed to plead a

5    cognizable ADA violation for procedural claims, and plaintiff has failed to plead that the

6    significant accommodations he has already been granted are not reasonable under the

7    ADA.  Mtn. at 11–12.

8          Defendants' first argument is dispositive.  The Eleventh Amendment provides:

9    "The Judicial power of the United States shall not be construed to extend to any suit in

10   law or equity, commenced or prosecuted against one of the United States by Citizens of

11   another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

12   Accordingly, no state or its agencies may be sued in federal court without consent.  See

13   Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984).  This immunity

14   extends to defendants, which are state agencies.  Hirsh v. Justices of Supreme Ct. of

15   State of Cal., 67 F.3d 708, 715 (9th Cir. 1995) (per curiam) ("The Eleventh Amendment's

16   grant of sovereign immunity bars monetary relief from state agencies such as California's

17   Bar Association and Bar Court." (citations omitted)).

18         In some instances, however, "Congress may, through its enforcement powers

19   under § 5 of the 14th Amendment, abrogate Eleventh Amendment immunity."  Vartanian

20   v. State Bar of Cal., 2018 WL 2724343, at *4 (N.D. Cal. June 6, 2018) (quoting Kimel v.

21   Fla. Bd. of Regents, 528 U.S. 62, 73 (2000)).  There are two predicate questions

22   necessary to determine whether Congress abrogated Eleventh Amendment immunity:

23   "first, whether Congress unequivocally expressed its intent to abrogate that immunity;

24   and second, if it did, whether Congress acted pursuant to a valid grant of constitutional

25

26   _____

27   [3] The FAC adds a section entitled "New Requests for Relief" that includes a new claim for
     compensatory damages, punitive damages, interest, attorney's fees, and costs based on
     the denial of reasonable accommodations requested for the October 2020 Bar Exam and
28   defendants' deliberate indifference in denying those requests.  FAC at 4.  The court
     construes this as plaintiff's fifteenth claim for violation of the ADA.

United States District Court
Northern District of California

1   authority." Kimel, 528 U.S. at 73.

2       The first question is easily met; "it is undisputed that Congress unequivocally

3   expressed its intent to abrogate Eleventh Amendment immunity in enacting the ADA."

4   Vartanian, 2018 WL 2724343, at *4; see 42 U.S.C. § 12202 ("A State shall not be

5   immune under the eleventh amendment to the Constitution of the United States from an

6   action in Federal or State court of competent jurisdiction for a violation of this chapter.").

7   The Supreme Court has held that the second question requires an inquiry into the facts

8   alleged in each case.

9       In Tennessee v. Lane, 541 U.S. 509, 518 (2004), the Court examined whether

10  Title II of the ADA validly abrogates state sovereign immunity.  In support of its holding,

11  the court noted that Title II prohibits not only "irrational disability discrimination" in

12  violation of the Equal Protection Clause, but also "a variety of other basic constitutional

13  guarantees" protected by the Fourteenth Amendment.  Id. at 522–23.  The Court

14  ultimately held that Congress validly abrogated Eleventh Amendment immunity in "the

15  class of cases implicating the fundamental right of access to the courts."  Id. at 533–34.

16  The Court left open whether other violations of the Fourteenth Amendment could

17  establish whether Congress validly abrogated state sovereign immunity.

18      In United States v. Georgia, the Court confirmed that section 5 of the Fourteenth

19  Amendment "authorizes Congress to create a cause of action through which the citizen

20  may vindicate his Fourteenth Amendment rights."  546 U.S. 151, 158 (2006) (quoting

21  Lane, 541 U.S. at 559–60 (Scalia, J., dissenting); and citing Fitzpatrick v. Bitzer, 427 U.S.

22  445, 456 (1976)).  Thus, "insofar as Title II creates a private cause of action for damages

23  against the States for conduct that actually violates the Fourteenth Amendment, Title II

24  validly abrogates state sovereign immunity."  Id. at 159.  To determine whether Congress

25  validly abrogated state sovereign immunity, Georgia requires courts to examine: "(1)

26  which aspects of [defendants'] alleged conduct violated Title II; (2) to what extent such

27  misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct

28  violated Title II but did not violate the Fourteenth Amendment, whether Congress's

8

purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." Georgia, 546 U.S. at 159.  In the wake of Georgia and Lane, courts have engaged in a case-by-case analysis to determine whether a fundamental right is at issue and whether Title II validly abrogates state sovereign immunity.  See, e.g., Viriyapanthu v. California, 2018 WL 6136148, at *3–4 (C.D. Cal. Oct. 26, 2018); Vartanian, 2018 WL 2724343, at *4–5; see also Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 793 (9th Cir. 2004) (O'Scannlain, J., concurring) (noting that Lane requires "nuanced, case-by-case analysis").

Here, defendants argue the FAC fails to allege conduct that violates the Fourteenth Amendment to the Constitution.  Mtn. at 13.  According to defendants, the Supreme Court has held that disability is not a suspect classification under the Equal Protection clause, (id. at 13–14 (citing City of Cleburne v. Cleburne Living Cent., 473 U.S. 432, 439 (1985))), nor is there a fundamental right to practice law, (id. at 14 (citing Giannini v. Real, 911 F.2d 354, 358 (9th Cir. 1990))).  Defendants assert that because plaintiff has failed to state a Title II claim arising from a violation of constitutional rights, his claim does not fall in the category of claims for which Congress validly abrogated California's sovereign immunity.  Id.

In response, plaintiff argues that United States v. Georgia and Tennessee v. Lane did not reach whether Congress had authority to abrogate state sovereign immunity in cases without a constitutional violation.  Opp. at 7.  Plaintiff cites Bartlett v. New York State Board of Law Examiners, 156 F.3d 321 (2d Cir. 1998), as a case where the Second Circuit awarded compensatory damages under the ADA to a visually disabled applicant to the New York state bar.  Opp. at 8.  Plaintiff then cites Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 74 (1992), for the proposition that intentional violations of Title VI and thus the ADA and Rehabilitation Act can sustain an award of monetary damages.  Opp. at 8.

To determine whether Congress validly abrogated defendants' sovereign immunity in this case, the court applies the three-factor test articulated in Georgia.  "Neither Lane

1    nor <u>Georgia</u> require that a constitutional violation be separately enunciated, just that the

2    "Title II claims [be] evidently based, at least in large part, on conduct that independently

3    violate[s] the constitution."  <u>Barrilleaux v. Mendocino Cty.</u>, 61 F. Supp. 3d 906, 913 (N.D.

4    Cal. 2014) (alterations in original) (quoting <u>Georgia</u>, 546 U.S. at 157).

5           With regard to the first prong, plaintiff alleges that the misconduct that violated

6    Title II included excessively burdensome procedures to seek testing accommodations,

7    delay in responding to his accommodation requests, and deliberate indifference by failing

8    to provide reasonable accommodations for all of his prior sittings of the California Bar

9    Exam.  <u>See</u> FAC 25–27.  To meet the second prong, the court examines whether this

10   purported misconduct states a claim for violation of the Fourteenth Amendment.

11          Plaintiff's Title II theory is that he did not receive sufficient accommodations to take

12   the California Bar and practice law in California.  Yet, plaintiff does not have a

13   fundamental right to take the California Bar Exam or to practice law.  As stated in

14   <u>Giannini v. Real</u>, 911 F.2d at 358, "[t]here is no fundamental right to practice law or to

15   take the bar examination."  <u>Id.</u> (citing <u>Lupert v. Cal. St. Bar</u>, 761 F.2d 1325, 1327 n.2 (9th

16   Cir. 1985)).  The <u>Giannini</u> court then applied a rational basis standard of review and held

17   that "allowing California to set its own bar examination standards is rationally related to

18   the legitimate government need to ensure the quality of attorneys within the state."  911

19   F.2d at 358; <u>see also</u> <u>Lupert</u>, 761 F.3d at 1328 ("State and federal courts generally have

20   subjected state bar admission restrictions to mere rational basis analysis." (citations

21   omitted)).

22          Plaintiff has failed to present any facts demonstrating that the procedures and

23   accommodations provided by the State Bar fail rational basis review.  <u>See</u> <u>Bd. of Trs. of</u>

24   <u>Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 367 (2001) ("[T]he burden is upon the challenging

25   party to negative any reasonably conceivable state of facts that could provide a rational

26   basis for the classification." (internal quotations and citations omitted)).  Indeed, the FAC

27   demonstrates that defendants repeatedly gave plaintiff testing accommodations and

28   responded to his accommodation petitions.  <u>See</u> FAC ¶¶ 41–52.  Together, <u>Giannini</u> and

10

Lupert foreclose the type of predicate constitutional violation necessary to abrogate state sovereign immunity and the FAC confirms that defendants meet the requirements of rational basis review.

In his opposition, plaintiff identifies two possible constitutional violations: violation of his procedural due process rights and an Equal Protection violation based on COVID-19 testing procedures.  With regard to the former, he argues that, because Congress created statutory rights through the ADA, those rights are protected by the process required by Mathews v. Eldridge, 424 U.S. 319 (1976).  Opp. at 10.  Plaintiff contends that defendants' process is fundamentally flawed in various ways, including their failure to give written findings or feedback, their extremely short appeals process, and their failure to disclose medical evidence for their decision.  Id.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  Mathews, 424 U.S. at 332.  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  Id. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  To state a procedural due process claim, plaintiff must allege facts showing a deprivation of a constitutionally protected liberty or property interest, and a denial of adequate procedural protections.  Pinnacle Armor, Inc. v. United States, 648 F.3d 708, 716 (9th Cir. 2011); Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).

Here, plaintiff's procedural due process theory fails for two reasons.  First, he has not identified a protected liberty or property interest.  While plaintiff refers to "disability rights" in his opposition, it is unclear what specific interest is claimed.  As discussed, plaintiff does not have a fundamental right to take the bar exam or practice as an attorney.

Second, even if the court were to assume that plaintiff had a protected liberty or property interest, defendants have provided both an opportunity to submit his accommodation petition, see Cal. State Bar Rules 4.80–4.92, and to appeal any adverse

11

1    determination, <u>see</u> Cal. State Bar Rule 4.90, Cal. Rule of Court 9.13(d).  Moreover, the

2    FAC alleges that for each of his prior bar examinations defendants considered plaintiff's

3    petitions and permitted him to appeal unfavorable determinations.  <u>See</u> FAC ¶¶ 41–52.

4    With regard to the October 2020 Bar Exam, defendants permitted plaintiff to file a petition

5    and, despite a delay caused by plaintiff's supplemental filing, issued a final ruling on

6    August 27, 2020 that granted several of his accommodations.  <u>Id.</u> at 2.  Thus, plaintiff has

7    not stated a claim for violation of a procedural due process right.  <u>See also</u> <u>Giannini</u>, 911

8    F.2d at 357 (finding no procedural due process claim where petitioner had opportunity to

9    present claim to California Supreme Court and in fact petitioned the court).

10         Next, plaintiff alleges that the Committee discriminated against applicants with

11   disabilities because it provided non-disabled individuals with the opportunity to take the

12   October 2020 Bar Exam online but required disabled persons to test in person at test

13   centers to receive their accommodations.  FAC ¶ 26.  Plaintiff picks up this argument in

14   his opposition, contending that defendants have denied accessible locations for the

15   October 2020 Bar Exam and have therefore deprived disabled applicants a chance at

16   admission to the state bar.  Opp. at 17.

17         Disabled people do not constitute a suspect class, but the Equal Protection Clause

18   "prohibits irrational and invidious discrimination against them."  <u>Dare v. California</u>, 191

19   F.3d 1167, 1174 (9th Cir. 1999) (citing <u>Cleburne Living Ctr.</u>, 473 U.S. at 439, 446).

20   Accordingly, defendants' COVID-19 related policies need only meet rational basis review.

21   <u>See Lupert</u>, 761 F.3d at 1328.  As the district court in <u>Gordon v. State Bar of California</u>,

22   2020 WL 5816580, at *7 (N.D. Cal. Sept. 30, 2020), recently determined, the State Bar's

23   remote testing policy does not facially discriminate against disabled individuals.  Further,

24   the State Bar's policy does not disproportionately burden disabled test takers.  As the

25   court explained, most in-person test takers for the October 2020 Bar Exam are not

26   disabled and of the "657 test takers with disability-related accommodations, the State Bar

27   approved 462 (or 70 percent) for remote testing."  <u>Id.</u>  Finally, the court determined that

28   remote-testing conditions for some test takers do not deny disabled test takers with equal

United States District Court
Northern District of California

and meaningful access to the Bar Exam.  Rather, the State Bar's testing conditions and protocols apply to all test takers and do not violate the ADA.  Id. at *7–8.  This reasoning is persuasive and demonstrates why plaintiff in this case fails to state an Equal Protection claim (much less a Title II claim) for the same conduct.

Finally, plaintiff's reliance on Bartlett v. New York State Board of Law Examiners, 156 F.3d at 331, is misplaced for several reasons.  First, the opinion is out-of-circuit and was vacated by the Supreme Court, though on other grounds.  See N.Y. State Bd. of Law Examiners v. Bartlett, 527 U.S. 1031 (1999).  Second, the opinion predates both Lane and Georgia and does not incorporate the case-by-case analysis required by those controlling opinions.  Indeed, the district court in that case determined that the ADA abrogated state sovereign immunity based solely on title 42 U.S.C. § 12202 and did not determine whether Congress validly abrogated state sovereign immunity with regard to the specific claim at issue.  See Bartlett v. N.Y. State Bd. of Law Examiners, 970 F. Supp. 1094, 1131 (S.D.N.Y. 1997).  Third, while the Second Circuit affirmed a compensatory damage award for violation of Title II, it relied on Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 74 (1992), for the proposition that Title VI and the Rehabilitation Act supported an award of monetary damages.  Bartlett, 156 F.3d at 331.  However, the court cited no case for the proposition that an intentional violation of the ADA, as opposed to Title VI and the Rehabilitation Act, supports monetary damages.  See id. Without such controlling authority, Bartlett's reasoning is unpersuasive.

In sum, the FAC does not allege that defendants' misconduct violated the Fourteenth Amendment to the Constitution.  Further, plaintiff has cited no authority demonstrating that, insofar as such misconduct violated only Title II, that Congress's purported abrogation of sovereign immunity is nevertheless valid.  Without such binding authority, the court cannot find that Congress validly abrogated sovereign immunity. Therefore, defendants are immune from suit for damages under Title II of the ADA. Despite an opportunity to amend his complaint and after two motions for preliminary injunction, plaintiff has failed to identify further facts that would state a claim.  Further

United States District Court
Northern District of California

amendment would therefore be futile.  For the foregoing reasons, defendants' motion to dismiss is GRANTED and plaintiff's first through seventh and fifteenth claims are DISMISSED WITH PREJUDICE.

### 3.     Fifth through Seventh Claims: California Government Code

Plaintiff's fifth through seventh claims also allege that defendants acted with deliberate indifference in violation of California Government Code § 11135 et seq. and § 12944 et seq.  FAC at 27.  Defendants argue that the State Bar Act, Cal. Bus. & Prof. Code § 6001, exempts the State Bar from the requirements of Division 3 of Title 2 of the California Government Code, which includes the two statutes cited by plaintiff.  Mtn. at 23.  Plaintiff does not address this argument in his opposition.

California Business and Professions Code § 6001 states in relevant part:

> No law of this state restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies, or classes thereof, including, but not by way of limitation, the provisions contained in Division 3 (commencing with Section 11000) . . . of Title 2 of the Government Code, shall be applicable to the State Bar, unless the Legislature expressly so declares.

Cal. Bus. & Prof. Code 6001.  Both sections 11135 and 12944 are located in Division 3 of Title 2 of the Government Code and do not apply to defendants.[4]  The court agrees with defendants; plaintiff cannot state a claim for violation of sections 11135 and 12944 of the Government Code against the State Bar.

For the foregoing reasons, defendants' motion to dismiss is GRANTED and plaintiff's fifth through seventh claims for violation of the California Government Code are DISMISSED WITH PREJUDICE.

/ / /

---

[4] Nor has the Legislature expressly declared these sections are applicable to the State Bar.  By way of comparison, section 11135(a) explicitly states that "[n]otwithstanding Section 11000, this section applies to the California State University," Cal. Gov. Code § 11135(a), which in turn otherwise exempts the California State University from the definition of "state agency," § 11000(a).  Because no similar language applies to the State Bar, the Legislature has not expressly declared the section to be applicable. Similarly, section 12944 provides no explicit application to the State Bar.  See Cal. Gov. Code § 12944.

United States District Court
Northern District of California

### 4.    Eighth through Fourteenth Claims: California Unruh Act

Plaintiff's eighth through fourteenth claims are for violations of the Unruh Act, Cal. Civ. Code § 51(f).  FAC at 27.  Plaintiff alleges that each predicate violation of the ADA is also a violation of the Unruh Act.  Id.

Defendants contend that plaintiff's Unruh Act claims fail because plaintiff has failed to plead compliance with the California Government Claims Act and the State Bar is not subject to claims attempting to incorporate alleged Title II ADA violations into the Unruh Act.  Mtn. at 24.  In response, plaintiff argues that he has meet the administrative notice requirements of the California Government Claims Act.  Opp. at 20–22.

California Civil Code § 51(f) provides: "A violation of the right of any individual under the [ADA] shall also constitute a violation of this section."  A brief review of the FAC confirms that plaintiff's Unruh Act claims are coextensive with his ADA claims.  Because plaintiff fails to state a claim for violation of the ADA, it follows that he cannot state a claim for violation of section 51(f).  Plaintiff's claim also fails because the Unruh Act only applies to "business establishments," Cal. Civ. Code § 51(b), and California courts have held that government entities are not "business establishments" and not subject to the Unruh Act, see, e.g., Harrison v. Rancho Mirage, 243 Cal. App. 4th 162, 175 (Ct. App. 2015).

Accordingly, defendants' motion to dismiss plaintiff's eighth through fourteenth claims for violation of the Unruh Act is GRANTED and the claims are DISMISSED WITH PREJUDICE.

### 5.    Rehabilitation Act Claim

The introduction to the FAC references violations of the Rehabilitation Act, 29 U.S.C. § 794, and alleges that defendants are governmental agencies that benefit from federal funding.  FAC at 1–2, 10.  However, plaintiff does not plead a particular cause of action for violation of the Rehabilitation Act.

Nonetheless, defendants argue that plaintiff cannot state a claim for violation of the Rehabilitation Act because the State Bar does not in fact receive any federal funds.

15

1   Mtn. at 22 (citing Dkt. 34-1).  Plaintiff contends that the State Bar benefits from federal

2   funding in a variety of ways because it is an arm of the State.  Opp. at 18.  According to

3   plaintiff, as long as the State of California receives federal funding, then any

4   instrumentality of the State indirectly receives federal funding.

5       Section 504 of the Rehabilitation Act states that: "No otherwise qualified individual

6   with a disability in the United States . . . shall, solely by reason of her or his disability, be

7   excluded from the participation in, be denied the benefits of, or be subjected to

8   discrimination under any program or activity receiving Federal financial assistance . . . ."

9   29 U.S.C. § 794(a).  The term "program or activity" includes "a department, agency,

10  special purpose district, or other instrumentality of a State."  § 794(b)(1)(A).  To state a

11  § 504 claim, plaintiff must show that "(1) he is an individual with a disability; (2) he is

12  otherwise qualified to receive the benefit; (3) he was denied the benefits of the program

13  solely by reason of his disability; and (4) the program receives federal financial

14  assistance."  Updike v. Multnomah Cty., 870 F.3d 939, 949 (9th Cir. 2017) (citation

15  omitted).

16      While plaintiff alleges defendants receive federal funding, defendants have

17  controverted these allegations with a declaration and evidence that demonstrates that the

18  State Bar does not receive federal financial assistance.  See Dkt. 34-1.  Plaintiff has not

19  produced any evidence that might rebut defendants' declaration.  Instead, he argues that

20  because the State Bar is an instrumentality of the State of California and the State

21  receives federal funds, the State Bar must also receive federal funds.

22      This contention is incorrect.  A plain reading of section 504 demonstrates that

23  Congress did not intend the Rehabilitation Act to apply to every instrumentality of a State.

24  Congress defined "program or activity" with reference to individual departments,

25  agencies, or other instrumentalities.  See § 794(b)(1)(A).  The Rehabilitation Act only

26  applies to a subset of those individual agencies or instrumentalities that receive federal

27  financial assistance.  § 794(a).  This implies there is a subset of agencies or

28  instrumentalities that could demonstrate they do not receive federal funding.

The Ninth Circuit has also addressed this issue.  "Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds."  U.S. Dep't of Transp. v. Paralyzed Veterans of Am., 477 U.S. 597, 605 (1986), superseded by statute on other grounds by Air Carrier Access Act of 1986, Pub. L. No. 99-435.  "Consequently, while those who affirmatively choose to receive federal aid may be held liable under the [Rehabilitation Act], liability will 'not extend as far as those who benefit from it,' because application of § 504 to all who benefit economically from federal assistance would yield almost 'limitless coverage.'"  Castle v. Eurofresh, Inc., 731 F.3d 901, 908–09 (9th Cir. 2013) (quoting Paralyzed Veterans, 477 U.S. at 607–08).  In other words, plaintiff must demonstrate that the State Bar affirmatively and directly receives federal funds and cannot rely solely on the fact that the State Bar is an instrumentality of the State of California.

Defendants have established that the State Bar does not receive federal financial assistance and is therefore not subject to the Rehabilitation Act.  Plaintiff has not rebutted this evidence.  For the reasons stated, defendants' motion to dismiss any purported Rehabilitation Act claim is GRANTED and the claim is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED and plaintiff's First Amended Complaint is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: October 27, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge