**TABLE OF CONTENTS**

Table of Contents........................................................................................................ 1-2
Exhibit 1: 2017 Petition for July 2018 California Bar Examination........................................ 3-100
    "Form A" by Applicant & 7/18/2017 Narrative Statement by Applicant...................... 4-15
    High School IEP............................................................................................. 16-29
    SAT Scores & Testing Accommodations Letter.......................................................... 30-32
    LSAT Scores & Testing Accommodations Letter......................................................... 33-36
    GMAT Scores & Testing Accommodations Letter........................................................ 37-45
    MPRE Testing Accommodations Letter.......................................................................... 46
    Dr. Pinn's "Learning Disability [Autism] Verification Form C"..................................... 47-56
    2014 Drs. Pinn and Preston Neuropsychological Evaluation Report for LSAT/GMAT 57-67
    2010 Dr. Toren Neuropsychological Evaluation Report for IEP................................. 68-72
    2017 "Law School Verification Form F" of Testing Accommodations 1L-2L Years..... 73-74
    8/7/2017 Letter from State Bar of California Requesting Additional Information.......... 75
    8/28/2017 Narrative Addendum by Applicant................................................................ 76-78
    2017 "Physical Disability Verification Form B" by Dr. Dresden................................. 79-86
    2017 "Visual Disability Verification Form H" by Dr. Goodman w./ Attachments....... 87-95
    11/1/2017 State Bar of CA Decision Letter on 2017 Petition for 7/2018 CBX.......... 96-100
Exhibit 2: 2017 Appeal for July 2018 California Bar Examination..................................... 101-136
    11/10/2017 Notice of Appeal Narrative Affidavit by Applicant............................. 102-116
    12/5/2017 Final Appeal Narrative Affidavit by Applicant...................................... 117-131
    11/27/2017 Dr. Goodman Affidavit w./ Attachments........................................... 132-134
    12/5/2017 Dr. Preston Affidavit.................................................................................. 135
    12/5/2017 State Bar of California Decision Letter on 2017 Appeal from NOA Only..... 136
Exhibit 3: 2018 Petition for February 2019 California Bar Examination............................ 137-180
    11/1/2018 Narrative Affidavit by Applicant........................................................... 138-147
    "Form A" by Applicant........................................................................................ 148-157
    2018 "Physical Disability Verification Form B" by Dr. Dresden w./ Attachments... 158-167
    2018 "Physical Disability Verification Form B" by Dr. Clarke................................. 168-174
    2018 Updated "Law School Verification Form F" of Testing Accommodations...... 175-176
    12/28/2018 State Bar of CA Decision Letter on 2018 Petition for 2/2019 CBX...... 177-180
Exhibit 4: 1/6/2019 "2018" Appeal for February 2019 California Bar Examination........... 181-211
    1/6/2019 Appeal Narrative Affidavit by Applicant................................................. 182-202
    1/26/2019 Dr. Dresden Affidavit.......................................................................... 203-205
    2/15/2019 State Bar of CA Decision Letter on "2018" Appeal for 2/2019 CBX...... 206-211
Exhibit 5: 2019 Petition for February 2020 California Bar Examination............................ 212-240
    10/24/2019 Narrative Affidavit by Applicant........................................................ 213-223
    2019 "Psychological Disability [Autism] Verification Form E" by Dr. Dresden....... 224-231
    2019 "[Iowa] Bar Exam Testing Accommodations Verification Form G"............... 232-234
    10/18/2019 FINRA Testing Accommodations Letter.................................................... 235
    12/17/2019 State Bar of CA Decision Letter on 2019 Petition for 2/2020 CBX...... 236-240
Exhibit 6: 2019 Appeal for February 2020 California Bar Examination.............................. 241-286
    12/27/2019 Appeal Narrative Affidavit by Applicant............................................. 242-270
    12/19/2019 Dr. Dresden Affidavit........................................................................ 271-275
    12/23/2019 Dr. Goodman Affidavit............................................................................ 276

**TABLE OF CONTENTS**

12/20/2019 Dr. Clarke Affidavit................................................................... 277

12/5/2019 Dr. Liu Affidavit...................................................................... 278-279

2/14/2020 State Bar of CA Decision Letter on 2019 Appeal for 2/2020 CBX......... 280-284

Exhibit 7: 2020 Petition for ~~July September~~ October 2020 California Bar Examination..... 285-657

3/19/2020 Submission................................................................. 286-315

3/19/2020 Narrative Affidavit by Applicant........................................... 286-313

3/13/2020 Dr. Dresden Affidavit..................................................... 314-315

6/4/2020 Addendum Submission....................................................... 316-444

6/4/2020 Addendum to 3/19/2020 Narrative Affidavit by Applicant................... 316-329

2020 "Psychological Disability [Autism] Verification Form E" by Dr. Toren........... 330-337

6/4/2020 Neuropsych. Eval. Report/Affidavit for CA Bar Exam by Dr. Toren......... 338-355

6/4/2020 Dr. Dresden Affidavit w./ Attachments................................... 356-365

2014 U.S. D.O.J. ADA Testing Accommodations Guidelines.................................. 366-375

2014 CA D.F.E.H./U.S. D.O.J. LSAC Consent Decree ADA TA Best Practices Report 376-405

6/4/2020 Alt. Narrative Affidavit for any Changed Standard Test Conditions....... 406-444

6/15/2020-6/18/2020 Email Exchange.................................................... 445-455

7/16/2020 Addendum Submission....................................................... 456-584

7/16/2020 Addendum Cover Letter by Legal Counsel Matthew Selvagn............... 456-458

7/9/2020 Dr. Clarke Affidavit w./ Attachments....................................... 459-510

7/10/2020 Dr. Goodman Affidavit w./ Attachments.............................. 511-525

7/13/2020 "Visual Disability Verification Form H" w/ Attachments by Dr. Tearse 526-537

7/14/2020 "Physical Disability Verification Form B" w./ Att. By Dr. Rubinstein..... 538-582

7/16/2020 Dr. Dresden Affidavit..................................................... 583-584

7/27/2020 Tentative Staff Recommendations by State Bar of California............. 585-595

8/5/2020 Addendum................................................................. 596-643

8/5/2020 Addendum Cover Letter by Legal Counsel Matthew Selvagn................. 596-600

8/4/2020 Dr. Toren Affidavit..................................................... 601-604

8/4/2020 Dr. Dresden Affidavit..................................................... 605-608

8/4/2020 Applicant Affidavit..................................................... 609-643

8/10/2020 Addendum................................................................. 644-645

8/7/2020 Dr. Clarke Affidavit..................................................... 644-645

8/20/2020 Updated Staff Recommendations by State Bar of California............... 646-652

8/27/2020 Committee of Bar Examiners Final 10/2020 bar exam admin decision 653-654

9/29/2020 Decision appended with 10/2020 exam testing schedule.................. 655-657

Exhibit 8: 11/16/2020 Pending Petition for February 2021 California Bar Examination.... 658-712

Legal Brief Supporting Testing Accommodations Petition on 2/2021 Exam.......... 659-684

11/15/2020 Narrative Affidavit by Applicant........................................... 685-699

9/16/2020 Dr. Toren Affidavit..................................................... 700-704

9/18/2020 Dr. Clarke Affidavit..................................................... 705-709

11/2/2020 Dr. Rubinstein Affidavit.................................................. 710-712

# EXHIBIT 1



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

# FORM A
## PETITION FOR TESTING ACCOMMODATIONS

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

## I. BACKGROUND INFORMATION

1. Full Name: <u>Benjamin</u>    <u>Sean</u>    <u>Kohn</u>
                First            Middle        Last

   Date of Birth: <u>12/29/1993</u>    File Number*: <u>0468537</u>

   (*You must be registered as a student or attorney with the Committee of Bar Examiners before filing a petition for testing accommodations.)

2. I intend to take the following examination:

   ☐ First-Year Law Students' Examination (FYLSX)

   ☑ California Bar Examination (CBX)

3. Date of examination I intend to take: <u>July / 2018</u>
                                          Month/Year

4. Have you previously taken the California Bar Examination or First-Year Law Student's Examination?

   ☐ YES   ☑ NO

   If yes, which examination(s) (list all examinations taken): _____
                                                                Month/Year

5. If yes, did you request testing accommodations to take the examination(s)?

   ☐ YES   ☐ NO

TA-FormA.0417

1

## II. DISABILITY STATUS

1. Check the disability or disabilities for which you are requesting accommodations:

☐ Visual impairment

☐ Hearing impairment

☐ Other physical disability (specify): _____

☑ Specific learning disorder/disability

☐ ADHD

☐ Psychological disability

☐ Other disability (specify): _____

2. Narrative Description (**REQUIRED**)

Attach a narrative description of the nature and extent of your specific disability or disabilities, when and how it/they were first identified, and how it/they affect your daily life. Please describe the functional limitations related to your disability that directly affect your ability to take the examination.

Please   see Attached

3. When did you first acquire the disability (approximate date and age)?

sometime before dates in 5. below

4. Who was the medical professional (name, occupation, and specialty) who first diagnosed your disability?    org. Professional's info/nam

Stanford University Hospital/clinic ( unknown)

5. When was the disability first diagnosed by a treating professional (date and age)?

N Age 5 or 6; between 12/29/1998 and 12/28/2000

6. Are you currently being treated:    ☐ YES   ☑ NO

If yes, provide the name, qualifications and contact number of your current treating professional.

N/A

7. What treatment and/or medication are currently being prescribed?

N/A

8. Are you taking the treatment and/or medication as prescribed?   ☐ YES  ☐ NO

TA-FormA.0417

2

9. Are the treatment and/or medication effective in addressing or controlling your symptoms?

☐ YES    ☐ NO    ☑ N/A

If no, explain why not.

_____

_____

_____

## III. PAST ACCOMMODATIONS

1. Did you receive disabled-student services, tutoring services, and/or testing accommodations in elementary, middle school or junior high school and/or high school?

☑ YES    ☐ NO

If yes, provide the name of the school(s) and years attended, and attach any written documentation of accommodations granted and/or documentation of other services received. Springer Elementary School (K-5)
Crittenden middle School (6); Blach Jr. High School (7-8)
Mountain View High School (9-12)

What was your disability? High School IEP attached Asperger's Syndrome/Autism

What accommodations did you receive?. See Attached IEP; HS IEP Accommodations relevant include extended time on exams.

2. Did you receive disabled-student services, tutoring services and/or testing accommodations in college?

☑ YES    ☐ NO

If yes, provide the name of the school(s) and years attended, and attach any written documentation of accommodations granted and/or documentation of other services received. San Jose State University (2012-2015)
No Documentation Retained

What was your disability? Asperger's Syndrome/Autism

What accommodations did you receive? 100% Extra Time on Exams; Note taking Assistance

TA-FormA.0417

3. Did you request testing accommodations in law school?

☑ YES  ☐ NO

If yes, were they granted?  ☑ YES  ☐ NO

If granted, in addition to responding to the following questions, you must submit a completed law school verification form (**Form F**) from each law school you attended, which must be signed by an official law school representative.

What was your disability? _Asperger's Syndrome/Autism_

What accommodations did you receive?
_100% Extra Time on Exams_
_Note taking Assistance_
_Private Room for Exams_

If your request was denied, or only partially granted, please explain:

4. Did you request accommodations to take the LSAT?

☑ YES  ☐ NO

If yes, attach a copy of the letter you received from LSAC detailing the results of your request(s) for testing accommodations for each administration of the LSAT you took.

What was your disability? _Asperger's Syndrome/Autism_

What accommodations did you receive?
_50% Extra Time_

If your request was denied, or only partially granted, please explain:

TA-FormA.0417

4

Did you request accommodations to take the Multistate Professional Responsibility Examination (MPRE)?

☑ YES    ☐ NO

If yes, attach a copy of the letter you received from NCBE/ACT/LSAC detailing the results of your request(s) for testing accommodations for each administration of the MPRE you took.

What was your disability? _Asperger's Syndrome/Autism_

What accommodations did you receive?
_50% extra time and 15 minute supervised break_
_____
_____

If your request was denied, or only partially granted, please explain:
_MPRE is all multiple choice, so my request to type_
_written responses was deemed moot; so approved for_
_50% extra time insted of 100%._

When applying for another jurisdiction's bar examination, did you request testing accommodations?

☐ YES    ☐ NO    N/A

If yes, in addition to responding to the following questions, you must submit a completed Other Jurisdiction's Testing Accommodations Verification form (**Form G**) from each state from which you requested testing accommodations, which must be signed by an official from the bar admission office administering the bar examination in that state.

What was your disability? _____

What accommodations did you receive?
_____
_____

If your request was denied, or only partially granted, please explain:
_____
_____
_____

A-FormA 0417

# V. ACCOMMODATIONS REQUESTED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

## FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination

TA-FormA.0417

, administered in a quiet environment, and applicants are allowed to use small foam arplugs.   They may leave the examination room only to use the restroom or rinking fountain, within the time allotted for the test session.

'aking into consideration this description of the examination and the functional mitations that you currently experience, what testing accommodation (or iccommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Other: _____

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice answer sheet (Scantron sheet) (choose one)

☐ Permission to circle answers in question booklet

☐ Permission to dictate answers to proctor

☐ Dictate to a voice recorder (choose one)

☐ Digital voice recorder (for use with flash memory cards)

☐ Tape recorder (for use with microcassette tapes)

☐ Other: _____

**Equipment or Facility Requirements**

☑ Computer *as an accommodation* (must have direct nexus to the effects of the disability)

☑ with SofTest installed

☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

☐ with screen-reading software (e.g., JAWS) installed

☐ with other (specify): _____

☐ Special equipment (specify): _____

TA-FormA.0417

7

☑ Private room

☐ Semi-private room

☐ Wheelchair accessibility (if table, specify height): _____

☐ Other: _____

Please provide a rationale for each request indicated above (attach additional sheets if necessary): The computer is requested on the basis that the disability includes impaired fine motor control directly and adversely affecti handwriting legibility and time/energy consumption of hand writing. The private room is requested on the basis that the impaired content and focus aspect of the disability justify minimized distractions due heightened distractability.

## Accommodation of Extra Time

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination: Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale: 100% Extra Time consistent with college and law school accommodations for reasons in psych-eval report, or alternatively 50% extra time per Form C recommendation and consistent with standard test accommodations

**California Bar Examination: Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale: \\// 1, 2, &3 request _____

**California Bar Examination: Multistate Bar Examination - MBE (each standard**

session is 3 hours):  Specify the amount of extra test time needed <u>for each MBE</u> <u>session</u> and  provide the rationale:  *\[handwritten: I'll CBE 1-3 request\]*

_____

_____

_____

**First-Year Law Students' Examination:  Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:  *\[handwritten: N/A\]*

_____

_____

_____

**First-Year Law Students' Examination:  Multiple-Choice (standard session is 3 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:  *\[handwritten: N/A\]*

_____

_____

_____

<u>Explanations</u>:  (attach additional sheets if necessary)

_____

_____

_____

_____

_____

## CERTIFICATION AND AUTHORIZATION

I am aware that it is my responsibility to file a complete petition, which includes all necessary forms, by the applicable deadline, and I understand that the petition will not be processed if found to be incomplete.  I have attached all **original** forms, supporting affidavits and/or documents in legible form.  Facsimile, scanned, or other copies are not accepted.  All original documents submitted become the property of the Committee of Bar Examiners.  I understand that if my petition is not received in the San Francisco Office of Admissions by the final application filing deadline for a particular administration of an examination, it will not be processed for that examination, but for an examination to be administered in the future.  This is a "received by" deadline and NOT a postmark deadline.  There are no exceptions to the deadline.

I understand that it is possible that my petition for testing accommodations and all supporting documents may be referred to one or more expert consultants retained by the Committee of Bar Examiners for review.  I authorize such disclos...

TA-FormA.0417

further consent to having a State Bar representative, staff or consultant contact my specialist to discuss the information provided by the specialist and my request for testing accommodations for an examination administered by the Committee of Bar Examiners. I also authorize contact with and release of information by all educational institutions and/or testing agencies that have provided me with testing accommodations and/or are considering a pending application for testing accommodations, to clarify the accommodation(s) that have been granted or will be granted or denied.

I declare under penalty of perjury under the laws of the State of California that the information I have provided in support of my petition for testing accommodations is true and correct. I understand that, if the Committee of Bar Examiners determines that I, or a third party on my behalf, submitted as part of this petition any information or documentation that is false, inaccurate or intentionally misleading, it could result in denial of my admission to practice law in California based on moral character grounds.

☑ I have read and understand and agree to the terms and conditions of this Certification and Authorization.

Benjamin John
(Applicant Signature)

7/18/2017
(Date)

TA-FormA.0417

**Narrative Description (Attachment to Form A); File No. 0468532**

The primary disability which forms the basis of my request for ADA testing accommodations on the July 2018 California Bar Exam is Asperger's Syndrome (Autism Spectrum Disorder) and Neurodevelopmental Disorder of Impaired Processing Speed/Variable Attention Executive Functioning. My mother - a special education teacher - suspected I had autism, and I was first diagnosed by an unknown professional at Stanford's clinic sometime around age 5 or 6. I have subsequently completed further and renewed testing confirming this diagnosis throughout K-12 school, and most recently completed an extensive set of tests requested by the LSAC for consideration for LSAT accommodations administered and evaluated by California licensed neuropsychologists at the Neuropsychological Assessment Group in San Jose, CA in 2014.[1]  This same practice completed my Form C for the instant application, and has indicated to me that upon their review of the tests listed on that form all were performed for that assessment.

This disability impacts my life in that I take longer to perform executive functioning tasks independent of my capacity to learn and comprehend the substance of the relevant task, impaired neuromuscular control also resulting in low - and irregularly distributed - muscle tone, impaired "social skills" and nonverbal communication comprehension, and difficulty maintaining proper posture probably resulting in my more recently diagnosed/manifested chronic medical condition of myofascial pain syndrome. For these reasons, I have received accommodations in elementary school, middle school, high school,

---

[1] Prior to completing this application I called the San Francisco office of the California State Bar Office of Admissions, which verified that test results within 5 years of the date of the instant application would be accepted. Relying on this, I opted not to spend the several thousand dollars and 10+ hours of testing time during this summer to provide 2017 results, and I will not have meaningful access to California licensed testing professionals while residing in Iowa for my 3L school year.

**Narrative Description (Attachment to Form A); File No. 0468532**

college, and law school, and been approved for and/or received accommodations on the SAT, LSAT, GMAT, and MPRE tests. I have numerous related and unrelated chronic medical conditions that require ongoing treatment, but no relevant accommodations for the bar exam apparent to me at this time.

Due to the increased processing time, distractibility, and executive functioning impairments caused by my disability, and consistent with accommodations received in college and in law school, I would respectfully request 100% extra time and a private testing room.

Due to fine motor impairments caused by my disability, I would respectfully request to type any written responses as an accommodation.

Due to my posture and myofascial issues, I would respectfully request an ergonomic workstation while testing.

Please also note visual conditions (keratoconus, astigmatism, dry eye syndrome) may increase the need for, but do not independently or proximately form the basis of, the requested accommodations.

Thank you for considering my application.

RESPECTFULLY SUBMITTED,

_/s/ Benjamin Sean Kohn_
Benjamin Kohn
460 Samoa Drive,
Iowa City, IA 52246
(650) 919-3584
Benjamin.s.Kohn@gmail.com

SANTA CLARA COUNTY
**INDIVIDUALIZED EDUCATION PROGRAM**

Page 1 of 14

**Last Name** KOHN                    **First Name** BENJAMIN S                    **IEP Date** 05/04/12

**Last IEP** 12/13/11          **Next IEP** 12/13/12          **Original SpEd Entry Date** 04/22/99
**Last Eval** 12/13/11          **Next Eval** 12/13/14
Purpose of Meeting    ☐ Initial          ☐ Annual  ☐ Triennial  ☐ Transition  ☐ Pre-Expulsion  ☐ Interim
                      ☐ Expanded IEP  ☑ Other Amendment

**Birthdate** 12/29/93    Age  18          **Gender** Male          **Grade** 12          **Migrant** ☐ Yes  ☑ No
**Native Language** English          **EL** ☐ Yes ☑ No ☐ Redesignated    Interpreter  Yes ☐ No ☑
**Student ID** KOHBE229A          **SSN #** _____          **SSID #** 6102619064
**Residency**    ☑ **Parent/Guardian**    ☐ **Foster** _____    ☐ **LCI** _____
              ☐ **Adult Student**    ☐ **Other** _____

| Parent/Guardian | Kohn, Jack and Kohn, Debbie | Home Phone | (650)_967-6783 |
| Home Address | 1913 Fordham Way | Work Phone | (650)_279-3323   ext: CELLM |
|  | Mountain View CA 94040 | Cell Phone |  |
|  |  | Email Address |  |
| Parent/Guardian |  | Home Phone |  |
| Home Address |  | Work Phone |  |
|  |  | Cell Phone |  |
|  |  | Email Address |  |

**District of Residence** MTN. VIEW/LOS AL          Residence School  MTN. VIEW HIGH

**Ethnicity:** (Select One) ☐ Hispanic or Latino  ☑ Not Hispanic or Latino
**Race:** (Enter Code; must select one or more, regardless of Ethnicity): 1. 700/White    2. /_____    3. /_____    4. /_____

**INDICATE DISABILITY/S (P = Primary, S = Secondary) Note: For Initial and triennial IEPs, assessment must be done and discussed by IEP Team before determining eligibility.**

| _____ 210 ID | _____ 220 HH * | _____ 230 Deaf * | S 240 SLI | _____ 250 VI * |
| _____ 260 ED | _____ 270 OI * | _____ 280 OHI | _____ 290 SLD | _____ 300 DB * |
| _____ 310 MD | P 320 AUT | _____ 330 TBI | _____ 281 Est. Med. Dis. (0-5) | |

* Low Incidence Disability

_____ Not Eligible for Special Education          _____ Exiting from Sp. ED. (returned to reg. ed/no longer eligible)

Describe how student's disability affects involvement and progress in the general curriculum (or for preschoolers, participation in appropriate activities)
Benjamin's disability affects his social cognition and executive functioning skills, as well as written expression.
_____
_____

| Triennial (3 Year) Re-evaluation | For Initial Placements Only |
| --- | --- |
| ☑ Triennial Re-evaluation not due prior to next IEP review date. | Has the student received IDEA Coordinated Early Intervening Services (CEIS) in the past two years? |
| ☐ Triennial Re-evaluation due prior to or on next IEP review date. | ☐ Yes  ☐ No |
| ☐ Summary of Progress and Current Educational Performance | Date of Initial Referral for Special Education Services _____ |
| ☐ Full Re-evaluation | Person Initiating the Referral for Special Education Services _____ |
| ☐ Other | Date District Received Parent Consent _____ |
|  | Date of Initial Meeting to Determine Eligibility _____ |

SANTA CLARA COUNTY                         Page 2 of 14
**INDIVIDUAL TRANSITION PLAN**

Name BENJAMIN S KOHN _____  Birth Date: 12/29/93 _____  IEP Date 05/04/12 _____

| | | |
|---|---|---|
| Student Invited: ☑ Yes ☐ No | If appropriate, and agreed upon, agencies invited: ☐ Yes ☑ No ☐ Not applicable | Describe how the student participated in the process:<br>☑ Present at meeting    ☑ Interview Prior<br>☑ Interest Inventories    ☐ Questionnaire |

Age-appropriate transition assessments/instruments were used. ☑ Yes ☐ No   Describe the results of the assessments: Benjamin completed a career interest inventory which shows that his areas of strongest interest are: Marketing, Sales and Service; Finance; and Information Technology. 12/2011 Benjamin completed a Hope & Dreams Assessment Summary and showed he wants to pursue a career in product definition marketing.  His other interests were becoming an app developer and hypnotist.

---

| Student's Post Secondary Goal:  Training *or* Education (Required): | |
|---|---|
| Upon completion of school I will go to college following high school graduation.<br><br><br><br><br>Linked to Annual Goal # 1 _____<br>Person/Agency Responsible: Counselor, RSP _____ | **Transition Service Code** (As Appropriate):<br><br>**Activities to Support Transition Service:** Ben will work as a volunteer in a company or job shadow a person in product definition marketing.<br>**Community Experiences as Appropriate:**<br><br>**Related Services as Appropriate:** |

---

| Student's Post Secondary Goal Employment (Required) | |
|---|---|
| Upon completion of school I will plan to be employed following college and eventually will found my own company.<br><br><br><br>Linked to Annual Goal # 1 _____<br>Person/Agency Responsible: Counselor, RSP _____ | **Transition Service Code** (As Appropriate): CAREER<br><br>**Activities to Support Transition Service:** Attend college awareness activities and completing Career Targets Assessment.<br>**Community Experiences as Appropriate:**<br><br>**Related Services as Appropriate:** |

---

| Student's Post Secondary Goal Independent Living (As appropriate): | |
|---|---|
| Upon completion of school I will live at home for now.<br><br><br><br>Linked to Annual Goal # 1 _____<br>Person/Agency Responsible: RSP _____ | **Transition Service Code** (As Appropriate):<br><br>**Activities to Support Transition Service:** live at home before leaving for college.<br>**Community Experiences as Appropriate:**<br><br>**Related Services as Appropriate:** |

07-01-2011                              Form 1A

SANTA CLARA COUNTY
**INDIVIDUAL TRANSITION PLAN**                    Page 3 of 14

Name BENJAMIN S KOHN _____    Birth Date: 12/29/93 _____    IEP Date 05/04/12 _____

| **District Graduation Requirements:** |
|---|

**Course of Study**

A multi-year description of student's coursework from current year to anticipated exit year, in order to enable the student to meet their post secondary goal. (See attached transcript documentation.)
  Required Courses: Graduation requirements, attached

Units/Credits                          Units/Credits
Completed:   180 _____         Pending:      40 _____

Diplomas:  ☑ Yes ☐ No
Certificate of Completion:   ☐ Yes ☑ No      Anticipated Completion Date: 06/08/12 _____

| **CAHSEE (High School Exit Exam)** |
|---|

☑ CAHSEE/ELA date:   02/02/10 _____    Score: 405 _____    ☑ Passed  ☐ Did not pass
☑ CAHSEE/Math date:   02/02/10 _____    Score: 430 _____    ☑ Passed  ☐ Did not pass
☐ CAHSEE: _____

| **Age of Majority:** |
|---|

☑ On or before the student's 17th birthday, he/she has been advised of rights at age of majority (age 18)

By whom: Lori Johnson _____    Date: 01/08/09 _____

When you reach the age of 18, the age of majority, you have the right to receive all information about your educational program and make all decisions related to your education.  This includes the right to represent yourself at an IEP meeting and sign the IEP in place of your parent or guardian.

1.  The student's IEP includes appropriate measurable postsecondary goal or goals that covers the education or training, employment, and as needed independent living?   ☑ Yes ☐ No
2.  Is (are) the postsecondary goal(s) updated annually? ☑ Yes ☐ No
3.  Is there evidence that the measurable postsecondary goal(s) were based on age appropriate transition assessment?   ☑ Yes ☐ No
4.  Are there transition services in the IEP that will reasonably enable the student to meet his or her postsecondary goal(s)? ☑ Yes ☐ No
5.  Do the transition services include courses of study that will reasonably enable the student to meet his or her postsecondary goal(s)? ☑ Yes ☐ No
6.  Is (are) there annual IEP goal(s) related to the student's transition services needs? ☑ Yes ☐ No
7.  Is there evidence that the student was invited to the IEP meeting where transition services were discussed? ☑ Yes ☐ No
8.  If appropriate, is there evidence that a representative of any participating agency was invited to the IEP Team meeting with the prior consent of the parent or student who has reached the age of majority?   ☐ Yes ☑ No

<div align="center">

SANTA CLARA COUNTY

**PRESENT LEVELS OF ACADEMIC ACHIEVEMENT AND FUNCTIONAL PERFORMANCE**
</div>

Page 4 of 14

Name BENJAMIN KOHN                                      IEP Date  05/04/12

Strengths/Preferences/Interests Motivated, persistent, very dedicated, has a sense of humor, respectful, hard working, intelligent, and innovative.  His interests are politics, history, music, computers, psychology, and philosophy.

Concerns of parent relevant to educational progress  To be discussed: Parents want Ben will continue in adaptive p.e.  (see other information on notes page)

| CA Standards Test | English/Language Arts | ☑ Adv. | ☐ Proficient | ☐ Basic | ☐ Below Basic | ☐ Far Below Basic |
| | Math | ☐ Adv. | ☐ Proficient | ☑ Basic | ☐ Below Basic | ☐ Far Below Basic |
| | Hist./Soc.Sciences | ☑ Adv. | ☐ Proficient | ☐ Basic | ☐ Below Basic | ☐ Far Below Basic |
| | Science | ☑ Adv. | ☐ Proficient | ☐ Basic | ☐ Below Basic | ☐ Far Below Basic |
| CMA | English Language Arts _____ | Mathematics _____ | Science _____ | Other _____ | | |
| CAPA | English/Language Arts | ☐ Adv. | ☐ Proficient | ☐ Basic | ☐ Below Basic | ☐ Far Below Basic |
| | Math | ☐ Adv. | ☐ Proficient | ☐ Basic | ☐ Below Basic | ☐ Far Below Basic |
| | Science | ☐ Adv. | ☐ Proficient | ☐ Basic | ☐ Below Basic | ☐ Far Below Basic |

CELDT    Listening _____    Speaking _____    Reading _____    Writing _____

Physical Fitness Testing (grades 5, 7 & 9):_____

Other Assessment Data (e.g., curriculum assessment, other district assessment, etc.) _____

Hearing ( 12/05/11 ) ☐ Pass ☑ Fail ☐ Other _____    Vision ( 04/15/11 )  ☑ Pass ☐ Fail ☐ Other _____

**Pre-academic/Academic/Functional Skills**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

Current Grades: English (Dewars) = C, Learning Skills (Wehr) = A-, Health (Boyle) = A-, Economics (Hancock) = B, Commercial Art (Nock) = A.

*See speech and language evaluation report for teacher input on academics.

**Communication Development**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

No concerns are noted at this time although Ben occasionally speaks with loud volume.

**Gross/Fine Motor Development**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

07-01-2011                    Form 2

# SANTA CLARA COUNTY

## PRESENT LEVELS OF ACADEMIC ACHIEVEMENT AND FUNCTIONAL PERFORMANCE

Name <u>BENJAMIN KOHN</u>                                                     IEP Date  <u>05/04/12</u>

Benjamin has difficulty with both fine and groass motor skills.  He is receiving adaptive P.E. services at this time.

**Social Emotional/Behavioral**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

Ben follows rules, is polite, and expresses himself well.  He shows stress in voice and gesture when he believes he cannot complete the assignment on time and express a hopeless outcome.  Seeing other possibilities are still a challenge for him.

**Vocational**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

Ben is a conscientious worker and requires more time than others to complete his work.

**Adaptive/Daily Living Skills**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

Age appropriate skills.

**Health**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

Ben needs a current hearing test because he failed hearing screening 12/05/2011.

**Areas of Need**
Authored by: Dan Wehr
Title: SDC Teacher
Date: 12/13/11

Ben needs both study and gross motor skills.

# SANTA CLARA COUNTY
## SPECIAL FACTORS

Name  BENJAMIN KOHN                                    IEP Date   05/04/12

Does the student require assistive technology devices and/or services?    ☐ No    ☑ Yes (Specify)  Access to computer for writing tasks.

Does the student require low incidence services, equipment and/or materials to meet educational goals?    ☑ No    ☐ Yes (Specify) N/A

Considerations if the student is blind or visually impaired  N/A

Considerations if the student is deaf or hard of hearing N/A

If the student is an English Learner, complete the following section:

Does the student need primary language support? ☐ No   ☐ Yes  If yes, who will provide? _____

What will be the language of instruction for the student? _____

Who will provide ELD services to student?    ☐ General Education Staff    ☐ Special Education Teacher

What type of ELD services will be provided?    ☐ English Language Mainstream    ☐ Structured English Immersion

Comments_____

Does student's behavior impede learning of self or others?    ☑ No    ☐ Yes (describe) _____

    If yes, specify positive behavior interventions, strategies, and supports _____

    ☐ Behavior Support Plan (BSP) attached    ☐ Behavior Intervention Plan (BIP) attached    ☐ Behavior Goal is part of this IEP

For student to receive educational benefit, goals will be written to address the following areas of need:

Study Skills

Gross Motor

## S A N T A   C L A R A   C O U N T Y

## STATEWIDE ASSESSMENTS

Name BENJAMIN KOHN _____  IEP Date 05/04/12 _____

**Participation in Statewide Assessment Program, STAR**
(California Standards Test, California Modified Assessment Test, California Alternate Performance Assessment)

**English Language Arts (ELA)** (Grades 2 -11; CMA only applies to Grades 3-11)
- ☐ CST without testing accommodations
- ☐ CST with testing accommodations _____ or ☐ CST with testing modifications _____
- ☐ CMA without testing accommodations (Grades 3-9 only) **(Grades 3-11 effective 11/12 school year.)**
- ☐ CMA with testing accommodations (Grades 3-9 only) **(Grades 3-11 effective 11/12 school year.)**
- ☑ Outside of testing grade range (before Grade 2 or after Grade 11)

**Math** (Grades 2-11; CMA only applies to grades 3-7 (Grades 7-11, Algebra I, Geometry end of course)
- ☐ CST without testing accommodations:
- ☐ CST with testing accommodations _____ or ☐ CST with testing modifications _____
- ☐ CMA without testing accommodations (Grades 3-7 only)
- ☐ CMA with testing accommodations (Grades 3-7only)
- ☐ Algebra without accommodations (Grades 7-11, Algebra end of course)    Check appropriate: ☐ *CMA or* ☐ *CST*
- ☐ Algebra with accommodations (Grades 7-11, Algebra end of course)    Check appropriate: ☐ *CMA or* ☐ *CST*
- ☐ Geometry without accommodations (Grades 8-11, **effective 11/12 school year.**)    Check appropriate: ☐ *CMA or* ☐ *CST*
- ☐ Geometry with accommodations (Grades 8-11, **effective 11/12 school year.**)    Check appropriate: ☐ *CMA or* ☐ *CST*
- ☑ Outside of testing grade range (before Grade 2 or after Grade 11)

**Science** (Grades 5, 8-11)
- ☐ CST without testing accommodations
- ☐ CST with testing accommodations _____ or ☐ CST with testing modifications _____
- ☐ CMA without testing accommodations (Grade 5,8 and Life Science for Grade 10)
- ☐ CMA with testing accommodations (Grade 5, 8 and Life Science for Grade 10) _____
- ☑ Out of testing range (before Grade 2 or after Grade 11)

**History/Social Science** (Grades 8-11)
- ☐ CST without testing accommodations
- ☐ CST with testing accommodations _____ or ☐ CST with testing modifications _____
- ☑ Out of testing range (before Grade 2 or after Grade 11)

**Writing** (Grade 4 & 7 <u>only</u>)
- ☐ CST without testing accommodations
- ☐ CST with testing accommodations _____ or ☐ CST with testing modifications _____
- ☐ CMA without testing accommodations  ☐ CMA with testing accommodations _____
- ☑ Out of testing range (before Grade 2 or after Grade 11)

- ☐  **CAPA  ELA** (Grade 2-11) **Science** (Grades 5,8,10) **Math**  (Grades 2-11)    **Level   1.☐   2.☐   3.☐   4.☐   5.☐**
    - The student will not participate in the CST or CMA because _____
    - Participation in the CAPA is appropriate because _____

- ☐  **Physical Fitness Test** (Grades 5, 7, 9 only) Accommodations_____    Modifications_____

**CAHSEE**
- ☐ Without testing accommodations ☐ With testing accommodations _____
- ☐ CAHSEE with testing modifications (waiver required)_____
- ☐ Exemption ☐To participate in CAPA ☐ Outside of testing group (before grade 10, or younger than 15 and 'ungraded'

- ☐ Other State-Wide/ District-Wide Assessment(s)/Alternate Assessment(s) _____
Alternate Assessment(s) appropriate because _____

| **For Preschoolers** (Ages 3, 4, and 5) **Desired Results Developmental Profile** <br> Adaptations: |
|---|

**FOR ENGLISH LEARNERS ONLY**
**CELDT**                                                            ☐ **Standards based Tests in Spanish STS**
- ☐ Listening without accommodations    ☐ Modifications        ☐ Math without accommodations
- ☐ Listening with accommodations                            ☐ Math with accommodations
- ☐ Speaking without accommodations    ☐ Modifications        ☐ Reading, Language, Spelling without accommodations
- ☐ Speaking with accommodations                             ☐ Reading, Language, Spelling with accommodations
- ☐ Reading without accommodations    ☐ Modifications
- ☐ Reading with accommodations
- ☐ Writing without accommodations    ☐ Writing with accommodations ☐ Modifications

☐  **Other** _____

SANTA CLARA COUNTY

## ANNUAL GOALS

Name BENJAMIN S KOHN _____     IEP Date 05/04/12 _____

| Area of Need: Study Skills<br><br>Baseline: 1st semester GPA 3.12 | Measurable Annual Goal: # 1     By 12/13/12:  Benjamin will use class time to complete all assignments, study or take tests, and specifically focus on harder classes first, in order to maintain at least a 3.0 GPA and pass all required classes for graduation.<br><br>☑ Enables student to be involved/progress in general curriculum/state standard<br>☑ Addresses other educational needs resulting from the disability<br>☑ Linguistically appropriate*<br>☑ Secondary Transition Goal: ☑ Education/Training ☐ Employment ☐ Independent Living<br>Person(s) Responsible  Gen. Ed. Teacher, Spec. Ed. Specialist | | |
|---|---|---|---|
| Progress Report 1: _____<br><u>Summary of progress</u><br><br><br><br><u>Comment</u> | Progress Report 2: _____<br><u>Summary of progress</u><br><br><br><br><u>Comment</u> | Progress Report 3: _____<br><u>Summary of progress</u><br><br><br><br><u>Comment</u> | Goal: Annual Review<br>Date: _____<br>Goal met ☐ Yes ☐ No<br>Comments: |

| Area of Need: Gross Motor<br><br>Baseline: Can run a quarter mile in about 2 minutes. | Measurable Annual Goal: # 2     By 12/13/12:  Ben will be able to complete a mile combining running and walking without stopping under fifteen minutes for 80% of the trials.<br><br>☐ Enables student to be involved/progress in general curriculum/state standard<br>☑ Addresses other educational needs resulting from the disability<br>☑ Linguistically appropriate*<br>☐ Secondary Transition Goal: ☐ Education/Training ☐ Employment ☐ Independent Living<br>Person(s) Responsible Spec. Ed. Specialist, APE | | |
|---|---|---|---|
| Progress Report 1: _____<br><u>Summary of progress</u><br><br><br><br><u>Comment</u> | Progress Report 2: _____<br><u>Summary of progress</u><br><br><br><br><u>Comment</u> | Progress Report 3: _____<br><u>Summary of progress</u><br><br><br><br><u>Comment</u> | Goal: Annual Review<br>Date: _____<br>Goal met ☐ Yes ☐No<br>Comments: |

NOTE:  If English learner, one of the goals must address English language development.

S A N T A   C L A R A   C O U N T Y
## OFFER OF FAPE
## SUPPLEMENTARY AIDS AND SERVICES

Name BENJAMIN S KOHN _____    IEP Date 05/04/12 _____

## SUPPLEMENTARY AIDS AND SERVICES TO BE PROVIDED TO THE CHILD OR ON BEHALF OF THE CHILD
## And PROGRAM MODIFICATIONS OR SUPPORTS FOR SCHOOL PERSONNEL

| Aids, Services, Program Accommodations/Modifications, and/or Supports | To Support: | Start/End Date | Frequency | Duration | Location |
|---|---|---|---|---|---|
| Benjamin may have extended time on assignments, and tests/quizzes. All projects and assignments must be completed for full credit within 4 weeks of the end of the | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom w/Accomm |
| Benjamin may take tests or work on class assignments in the resource room, the Tutorial Center, or other quiet area. | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom w/Accomm |
| Organize assignments/material into small chunks for both short-term and long-term projects, to help quell anxiety. | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom w/Accomm |
| Benjamin may use computers to complete class assignments, when appropriate, to help minimize the effort that goes into motoric output. | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom w/Accomm |
| Provide Benjamin with explicit and short instructions so that he may effectively retain and understand information. | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom |
| Use humor to calm Benjamin when he appears anxious or stressed. | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom |
| Preferential seating and use care in assigning Benjamin to collaborative groups. | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom |
| Due to weaknesses in auditory memory, Benjamin may have a copy of a peer's notes or the teacher's lecture notes. | ☑Student ☐Personnel | 12/13/11 12/13/12 | 1x As Needed | 50 mins | General Classroom |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |
|  | ☐Student ☐Personnel |  |  |  |  |

Programs and services will be provided according to where student is in attendance and consistent with the district of service calendar and scheduled services, excluding holidays, vacations, and non-instructional days unless otherwise specified.

S A N T A   C L A R A   C O U N T Y                    Page 10 of 14

## OFFER OF FAPE
## SPECIAL EDUCATION and RELATED SERVICES

Name BENJAMIN S KOHN _____     IEP Date _05/04/12_____

Service options considered (In selecting LRE, consideration is given to any harmful effect on the child or quality of services that the child needs)  The IEP determined that Ben will participate in 21% in special education.

_____

### SPECIAL EDUCATION and RELATED SERVICES

| Service: Resource Specialist Program | | Start Date: 12/13/11 | End Date: 12/13/12 |
|---|---|---|---|
| Provider: District of Service | | | ☐Indiv ☑Group ☐ Sec Transition |

| Frequency 4x Weekly | Duration 50 mins. | Location: Separate Class          Pull Out |
|---|---|---|

| Service: Vocational Counseling | | Start Date: 12/13/11 | End Date: 12/13/12 |
|---|---|---|---|
| Provider: Workability | | | ☐Indiv ☑Group ☑ Sec Transition |

| Frequency 1x Yearly | Duration 120 mins. | Location: Separate Class          Pull Out |
|---|---|---|

| Service: Career Awareness | | Start Date: 12/13/11 | End Date: 12/13/12 |
|---|---|---|---|
| Provider: Workability | | | ☐Indiv ☑Group ☑ Sec Transition |

| Frequency 1x Monthly | Duration 20 mins. | Location: Separate Class          Pull Out |
|---|---|---|

| Service: Adapted Physical Education | | Start Date: 12/13/11 | End Date: 12/13/12 |
|---|---|---|---|
| Provider: District of Service | | | ☑Indiv ☐Group ☐ Sec Transition |

| Frequency 1x Weekly | Duration 50 mins. | Location: Regular Classroom/Public Day School          Pull Out |
|---|---|---|

| Service: | | Start Date: | End Date: |
|---|---|---|---|
| Provider: | | | ☐Indiv ☐Group ☐ Sec Transition |

| Frequency | Duration | Location: |
|---|---|---|

| Service: | | Start Date: | End Date: |
|---|---|---|---|
| Provider: | | | ☐Indiv ☐Group ☐ Sec Transition |

| Frequency | Duration | Location: |
|---|---|---|

**Transportation:**      ☑ None      ☐ General Ed      ☐ Special Ed _____

Programs and services will be provided according to where student is in attendance and consistent with the district of service calendar and scheduled services, excluding holidays, vacations, and non-instructional days unless otherwise specified.

S A N T A   C L A R A   C O U N T Y

**OFFER OF FAPE**
**EXTENDED SCHOOL YEAR (ESY) SERVICES**

Name BENJAMIN S KOHN _____    IEP Date 05/04/12 _____

| EXTENDED SCHOOL YEAR (ESY) | | |
|---|---|---|
| ☐ Yes  ☑ No | | |

| Extended School Year (ESY): | Start Date: | End Date: |
|---|---|---|
| Provider: | | ☐Indiv ☐Group<br>☐ Sec Transition |

| Frequency | Duration | Location: |
|---|---|---|
| | | |

| Extended School Year (ESY): | Start Date: | End Date: |
|---|---|---|
| Provider: | | ☐Indiv ☐Group<br>☐ Sec Transition |

| Frequency | Duration | Location: |
|---|---|---|
| | | |

| Extended School Year (ESY): | Start Date: | End Date: |
|---|---|---|
| Provider: | | ☐Indiv ☐Group<br>☐ Sec Transition |

| Frequency | Duration | Location: |
|---|---|---|
| | | |

| Extended School Year (ESY): | Start Date: | End Date: |
|---|---|---|
| Provider: | | ☐Indiv ☐Group<br>☐ Sec Transition |

| Frequency | Duration | Location: |
|---|---|---|
| | | |

| Extended School Year (ESY): | Start Date: | End Date: |
|---|---|---|
| Provider: | | ☐Indiv ☐Group<br>☐ Sec Transition |

| Frequency | Duration | Location: |
|---|---|---|
| | | |

Programs and services will be provided according to where student is in attendance and consistent with the district of service calendar and scheduled services, excluding holidays, vacations, and non-instructional days unless otherwise specified.

S A N T A   C L A R A   C O U N T Y                         Page 12 of 14
## OFFER OF FAPE
## EDUCATIONAL SETTING

Name BENJAMIN KOHN _____    IEP Date 05/04/12 _____

Physical Education  ☐ General  ☑ Specially Designed  ☐ Other Independent PE/APE _____

**District of Service** MTN. VIEW/LOS AL _____    **School of Attendance** MTN. VIEW HIGH _____

**School Type** Public Day School _____

**Federal School Setting** Federal SettingRegular Program/    **Federal Preschool Setting** _____
Public Day School
All special education services provided at student's school of residence?  ☑ Yes  ☐ No (rationale) _____

__15__ % of time student is <u>outside</u> regular class & extracurricular & non academic activities

__85__ **% of time student is <u>in</u> the regular class & extracurricular & non academic activities**

Student will not participate in the regular class & extracurricular & non academic activities because Benjamin requires special

education services for academic success. _____

Other Agency Services

     ☐ California Children's Services (CCS)   ☐ Regional Center
     ☐ Probation          ☐ Department of Rehabilitation
     ☐ Department of Social Services (DSS)  ☐ Other _____
     ☐ County Mental Health (CMH)

Promotion Criteria  ☑ District  ☐ Progress on Goals  ☐Other _____

Parents will be informed of progress.

     ☑ Quarterly  ☐ Trimester  ☐ Semester  ☐ Other _____

How?  ☑ Annotated Goals  ☐ Progress Summary Report  ☐ Other _____

---

## ACTIVITIES TO SUPPORT TRANSITION
**(e.g., preschool to kindergarten, special education and/or NPS to general education class, 8th – 9th grade)**

_____
_____
_____
_____

## GRADUATION PLAN
(Grade 7 and Higher)

Projected graduation date and/or secondary completion date June 2012

  ☑ **To participate in high school curriculum leading to a Diploma**

  ☐ **To participate in high school curriculum leading to a Certificate of Completion**

07-01-2011          Form 5B

# SANTA CLARA COUNTY
## SIGNATURE AND PARENT CONSENT

Name BENJAMIN S KOHN _____    IEP Date 05/04/12 _____

---

### IEP Meeting Participants

| | | | |
|---|---|---|---|
| Debbie Kohn<br>Parent/Guardian | Date | Jack Kohn<br>Parent/Guardian | Date |
| Sharon Chrisman<br>LEA Representative/Admin. Designee | Date | Kathy Dewars<br>General Education Teacher | Date |
| Benjamin Kohn<br>Student | Date | Daniel Wehr<br>Special Education Specialist | Date |
| Shadi Allen<br>School Psychologist | Date | Kim Henesian<br>Speech and Language | Date |
| | Date | | Date |
| | Date | | Date |

---

## CONSENT

_____ I agree to all parts of the IEP

_____ I agree with the IEP, with the exception of _____

_____ I decline the offer of initiation of special education services.

_____ I understand that my child is <u>not</u> eligible for special education.

_____ I understand that my child is <u>no longer</u> eligible for special education.

Signature below is to authorize and approve the IEP.

Signature:_____    Date ____/____/____
☐ Parent   ☐ Guardian   ☐ Surrogate   ☐ Adult student

Signature:_____    Date ____/____/____
☐ Parent   ☐ Guardian   ☐ Surrogate   ☐ Adult student

As a means of improving services and results for your child did the school facilitate parent involvement?
Yes ☑ No ☐   No Response ☐

☑ Parent has received a copy of the Procedural Safeguards ☑Parent has received a copy of assessment report (if applicable)

☑ Parent has received a copy of IEP

☐ If my child is or may become eligible for public benefits (Medi-Cal): I authorize the district to access Medi-Cal health insurance benefits for applicable services _____
<div align="center">Parent/Guardian Signature</div>

☐ Student enrolled in private school by their parents.  Refer to Individual Service Plan, if appropriate.

# S A N T A   C L A R A   C O U N T Y
**IEP TEAM MEETING NOTES**

Page 14 of 14

Name <u>BENJAMIN S KOHN</u>                                   IEP Date <u>05/04/12</u>

## Notes

Mr. Usher needs to be notified that Ben needs to work on his strengthening and endurance skills (i.e. pulling a backpack).

Ben will continue with adaptive P.E. services.

Ben will go to Adult Ed. second semester to complete the English credit.

Notify teachers that Ben will need a note-taker when necessary.

# SAT

## YOUR SCORES

**Test Date:** OCT 01, 2011

| SAT | Score | Score Range | Percentiles College-bound Seniors National | State |
|-----|-------|-------------|-------------------|-------|
| Reading | 650 | 620-680 | 90 | 90 |
| Math | 640 | 610-670 | 83 | 83 |
| Writing | 640 | 600-680 | 89 | 88 |
| Multiple Choice | 63 | | | |
| Essay | 09 | | | |

SEQ#    0000029    TR

BENJAMIN S KOHN
1913 FORDHAM WAY
MOUNTAIN VIEW CA 94040-4009

### WHAT DOES YOUR SCORE RANGE MEAN?

our performance is best represented by the score ranges above
stead of one single score. The score range is an estimate of
ow your scores might vary if you were tested at different times
ithin a short time period. Most of the time, your score would vary
ightly within your score range, but it would likely fall within
e range given. Colleges know this, and they receive the score
nges along with your scores.

### OW DO YOU COMPARE WITH COLLEGE-BOUND SENIORS?

ercentiles compare your scores to those of other students who took
e test. The percentile for your reading score of 650 is 90,
dicating that you scored higher than 90% of last year's group of
ollege-bound seniors. The percentile for your math score of 640
83, indicating you scored higher than 83% of last year's group
college-bound seniors. The percentile for your writing score of 640
89, indicating you scored higher than 89% of last year's group
college-bound seniors.

### WHAT ARE THE AVERAGE SCORES?

For college-bound seniors in the class of 2013, the average
reading score was 496, the average math score was 514,
and the average writing score was 488.

### WILL YOUR SCORES CHANGE IF YOU TAKE THE TEST AGAIN?

Among students with reading scores of 650, 47% score higher
on a second testing, 45% score lower, and 8% receive the same
score. On average, a person with a reading score of 650
gains   3 point(s) on a second testing.

Among students with math scores of 640, 47% score
higher on a second testing, 44% score lower, and 9%
receive the same score. On average, a person with a math
score of 640 gains   3 point(s) on a second testing.

Among students with writing scores of 640, 45% score
higher on a second testing, 48% score lower, and 7%
receive the same score. On average, a person with a writing
score of 640 loses   1 point(s) on a second testing.

## SENDING YOUR SCORES

This Student Score Report, showing all your scores, is intended for your use only.
Sending official SAT® score reports through College Board is the only way to ensure that colleges receive your scores.
Score Choice gives you the option to choose which scores (by test date for the SAT and by individual test for SAT Subject
Tests™) you send to colleges -- in accordance with an institution's stated score-use practice. Visit sat.collegeboard.org/scores
or detailed information about your scores, to review your essay and to send scores.

## MARY OF SCORES

| MM/DD/YY | Grade Level | Reading [1] | Math | Writing | Multiple Choice | Essay | Test Date MM/DD/YY | Grade Level | Test 1 | Score | Multiple Choice | Writing Sample | Reading | Listening | Usage/Prof | Test 2 | Score | Test 3 | Score |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | SAT Subject Tests [2] | | | | | | | | |
| | | SAT | | | Writing Subscores | | | | | | Writing Subscores [3] | | Listening Subscores | | | | | | |
| 1/11 | 12 | 650 | 640 | 640 | 63 | 09 | | | | | | | | | | | | | |
| i/11 | 11 | 640 | 610 | 580 | 58 | 08 | | | | | | | | | | | | | |

March 2005, the reading section was known as
al section. Scores from these two sections
parable.

[2]Not all tests have subscores.

[3]Scores from the SAT Subject Test in Writing and the writing section on the SAT are not comparable.

## ID INFORMATION

egister online to take the SAT again.  To set up an online SAT account
ou will need the date you tested and the registration number below.

| Date of Birth MM/DD/YY | Registration Number | Test Center Number | High School Name and Code |
|---|---|---|---|
| 12/29/93 | 0028055245 | | |

# SAT

Report Date **02/20/14**

## STUDENT RUSH REPORT

### COLLEGES RECEIVING SCORE REPORTS*

INTERIM REPOR

**CANDIDATE COPY**

| Code |
| --- |
| 4566 |

## NAME AND ADDRESS

BENJAMIN S KOHN
913 FORDHAM WAY
MOUNTAIN VIEW CA 94040-4009

| ex | Birth Date | Current Grade Level |
| --- | --- | --- |
| M | 12/29/93 | -- |

### SAT

| Test Date MM/DD/YY | Grade Level | Reading[1] | Math | Writing | Writing Subscores | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Multiple Choice | Essay | |
| 10/01/11 | 12 | 650 | 640 | 640 | 63 | 09 | |
| 06/04/11 | 11 | 640 | 610 | 580 | 58 | 08 | |

| Test Date MM/DD/YY | Grade Level | Test 1 | Score | Writing Subscores | | SAT Subject Tests[2] | | | | Test 2 | Score | Test 3 | Scor |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | Multiple Choice | Writing Sample | Listening Subscores | | | | | | | |
| | | | | | | Reading | Listening | Usage/Prof | | | | | |

[1] Prior to March 2005, the reading section was known as the verbal section. Scores from these two sections are comparable.

[2] Not all tests have subscores.

[3] Scores from the SAT Subject Test in Writing and the writing section on the SAT are not comparable.

BENJAMIN S KOHN
1913 FORDHAM WAY
MOUNTAIN VIEW CA 94040-4009

This report shows up to ten score recipients. All your recipients are listed at sat.collegeboard.org/scores.

RECIPIENTS WILL RECEIVE A FULL OFFICIAL SAT SCORE REPORT WITH SCORES YOU

**CollegeBoard**

PO Box 6226 • Princeton, NJ 08541-0226
Voice: 609 771-7137   TTY: 609 882-4118
Fax: 609 771-7944   E-mail: ssd@info.collegeboard.org

February 21, 2014

Benjamin Kohn
1913 Fordham Way
Mountain View, CA 94040

Dear Benjamin Kohn:

You asked for confirmation that you were approved to take College Board exams, which include SAT, PSAT/NMSQT, and AP, with accommodations.

This letter confirms that you were approved to take College Board exams with Extra Breaks, Computer, and 50% Extended Time in Reading, Writing, and Mathematical Calculations accommodations. Our records indicate that you used these accommodations in June and October 2011.

We caution any reader of this letter that our confirmation of accommodations approved in the past does not mean an endorsement of the accommodations at the present time.

Sincerely,

Services for Students with Disabilities



Law School Admission Council
662 Penn Street, Box 8512, Newtown, PA 18940-8512
P: 215.968.1001 • F: 215.504.1420

**ACCOMMODATED TESTING**

# Letter of Confirmation

**Date:** 05/14/2014
**Name:** Benjamin Kohn

      1913 Fordham Way

      Mountain View, CA  94040

**LSAC Account #:** L34098237
**Candidate Phone:** 650.919.3584
**Candidate E-mail:** BENJAMIN.KOHN@SJSU.EDU

This confirms that testing accommodations have been made for you to take the Law School Admission Test (LSAT) at the test center listed below. Please contact the test center supervisor, whose name is provided below, at least one week prior to the test to confirm your testing arrangements. **If you do not contact the test center supervisor at least 48 hours prior to the nationally advertised test date, you will not be able to test, because supervisors are instructed to return the test materials to LSAC, if arrangements have not been made by this time. The accommodated administration of the LSAT will no longer be available to you.** We request that you also contact the supervisor if you will not be testing.

**Please note the standard test time is 35 minutes per section and the standard break is 15 minutes.**

## LSAT Administration Information:

**Test Date:** 6/9/2014

**Reporting Time:** 12:30 PM

**Test Center:** 1385-UNIVERSITY OF SAN FRANCISCO

**Supervisor Name:** Lissette Lizarraga

**Phone #:** 415.422.4787

**Room Type:** Separate - if deemed appropriate by LSAC, candidates with like accommodations may be tested together.

**Test Material:** 4 Section Book

## The following accommodations have been granted:

Test Time per section to include the variable section:
(does not indicate section order)

Analytical Reasoning - 53 minutes
Logical Reasoning I - 53 minutes
Logical Reasoning II - 53 minutes
Reading Comprehension - 53 minutes
Writing Sample - 53 minutes

Break Time:
- After section 1 - 10 minutes.
- After section 2 - 10 minutes.
- After section 3 - 15 minutes.
- After section 4 - 10 minutes.

**Other information:**

PLEASE CONTACT MS. LITMAN TO CONFIRM TESTING ARRANGEMENTS.

Present the letter and your admission ticket to the supervisor on the day of the test.

Unauthorized changes to the approved accommodations by the testing supervisor or the candidate may result in an invalidation of the candidate's test score.

Law School Admission Council
662 Penn Street, Box 8512, Newtown, PA 18940-8512
P: 215.968.1001 • F: 215.504.1420

**ACCOMMODATED TESTING**

July 18, 2014

Benjamin Kohn
1913 Fordham Way
Mountain View, CA 94040

Dear Mr. Kohn:

In response to your request, the Law School Admission Council (LSAC) has moved your previously approved accommodations forward to the September 2014 Law School Admission Test (LSAT). Your accommodations are:

Test format:  Regular Print

- 18 additional minutes for each multiple-choice section of the test; total time is 53 minutes per section.

- 18 additional minutes for the writing sample; total time is 53 minutes.

- extra rest breaks; 10 minutes between each section of the test.

- a 15-minute break between sections 3 and 4.

- a room separate from the standard testing candidates; if deemed appropriate by LSAC candidates with like accommodations may be tested together.

Typically two weeks prior to the published date, a letter confirming your accommodations will be available through your LSAC online account. It is imperative that you review this letter carefully as it will contain information about the center where you are scheduled to test, the name and telephone number of the test center supervisor, and other instructions (if applicable). **Please note**: LSAC cannot guarantee that you will test at the center for which you hold an admission ticket.  Additionally, your test may be scheduled for an alternate test date.

Sincerely,
Accommodated Testing

Direct Inquiries to:

Phone: (215) 968-1001
E-mail: accom@LSAC.org
Fax: (215) 504-1420

## Law School Admission Test

**Candidate Report
for**

Benjamin S Kohn

| | |
|---|---|
| **LSAC Account Number** | L34098237 |
| **Social Security/Social Ins. No.** | *****2615 |
| **Date of Report** | 10/20/14 |
| **Control Number** | 08500139 |

### CANDIDATE ITEM RESPONSE REPORT

This report shows your responses by section to all questions that contributed to your score on the current test. This report represents the machine scoring of the blackened responses on your answer sheet. Please compare the recorded responses on this report with those on your answer sheet and report any discrepancies to Law School Admission Council within 60 days of the test date. This report contains your LSAT record. The numbers in parenthesis next to the headings refer to complete explanations on the IRR Additional Information Document.

### LSAT SCORE DATA (1)

| LSAT Score Band | LSAT Score | LSAT % Rank | Admin Date |
|---|---|---|---|
| 160-166 | 163 | 88 | 09/14 |
| 158-164 | 161 | 83 | 06/14 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Legend for Score Data**

A - Absent/Delay
C - Candidate Cancel
I - Statistical Cancel
N - LSAC Cancel
P - Cancel/Possession Electronic Device
S - Security Cancel
V - Cancel/Other Test Center Violation

Band for Average Score:    160-164

| 120 | 130 | 140 | 150 | 160 | 170 | 180 |
|---|---|---|---|---|---|---|
| | | | | < > | | |

Average Score =    162

### QUESTION RESPONSE DATA (2)

| | |
|---|---|
| **Test Date** | 09/27/2014 |
| **Number of Credited Responses** | 79 |
| **Number of Responses Not Credited** | 22 |

### LSAT QUESTION RESPONSES (3)

| Question No. | Section 1 Your response | Credited response | Section 2 Your response | Credited response | Section 4 Your response | Credited response | Section 5 Your response | Credited response | Question No. |
|---|---|---|---|---|---|---|---|---|---|
| 1. | A | A | C | C | B | B | D | D | 1. |
| 2. | B | B | E | E | C | C | D | D | 2. |
| 3. | D | D | A | A | B | B | E | E | 3. |
| 4. | B | B | D | D | E | E | B | C | 4. |
| 5. | A | A | D | D | E | E | A | A | 5. |
| 6. | C | E | D | D | D | D | E | E | 6. |
| 7. | C | C | C | C | A | A | E | E | 7. |
| 8. | E | B | B | B | B | A | D | D | 8. |
| 9. | B | A | C | C | E | B | D | D | 9. |
| 10. | B | D | A | A | D | A | E | E | 10. |
| 11. | C | C | B | B | C | C | B | B | 11. |
| 12. | E | E | A | A | E | C | A | A | 12. |
| 13. | C | E | B | B | D | E | B | B | 13. |
| 14. | B | B | E | E | A | A | C | C | 14. |
| 15. | B | B | B | B | D | D | A | A | 15. |
| 16. | C | C | A | A | E | D | E | E | 16. |
| 17. | B | B | B | B | D | B | C | C | 17. |
| 18. | E | E | E | E | E | E | C | C | 18. |
| 19. | A | A | B | B | A | A | B | B | 19. |
| 20. | E | E | E | E | C | B | A | D | 20. |
| 21. | D | A | E | E | D | E | C | E | 21. |
| 22. | B | B | A | A | E | A | D | D | 22. |
| 23. | A | A | E | C | C | C | E | E | 23. |
| 24. | A | A | D | B | | | E | E | 24. |
| 25. | E | E | C | C | | | E | E | 25. |
| 26. | D | D | | | | | A | A | 26. |
| 27. | A | A | | | | | | | 27. |
| 28. | | | | | | | | | 28. |
| 29. | | | | | | | | | 29. |
| 30. | | | | | | | | | 30. |

Name and mailing address

Benjamin S Kohn

1913 Fordham Way

Mountain View, CA 94040

© Law School Admission Council, Inc. All rights reserved.



Benjamin Kohn <benjamin.kohn@sjsu.edu>

## Benjamin Kohn - regarding your request for GMAT accommodations

1 message

**testingaccommodations** <testingaccommodations@gmac.com>                    Thu, Apr 24, 2014 at 2:44 PM
To: "Benjamin.Kohn@sjsu.edu" <Benjamin.Kohn@sjsu.edu>



April 24, 2014

Dear Benjamin Kohn:

We have reviewed your request for GMAT® test accommodations in accordance with GMAT® Test Accommodations Guidelines within the framework of the Americans with Disabilities Act as recently amended. **While we are not able to grant you the exceptional accommodation of 100% additional time, you have been approved for 50% additional time and one additional break. Other accommodations: private room, adjustable chair, earplugs, permission to wear neck brace in testing room (subject to inspection at testing center)**

| | |
|---|---|
| **Analytical Writing Assessment** | 45 Minutes |
| Break | 8 Minutes (Additional Break) |
| **Integrated Reasoning** | 45 Minutes |
| Break | 8 Minutes |
| **Quantitative** | 112.5 Minutes |
| Break | 8 Minutes |
| **Verbal** | 112.5 Minutes |

**This approval may be used for one administration of the GMAT® test on or before <u>*** April 30,  2015***</u>.** You must take your test on or before the expiration date listed in this approval letter.

**In order to schedule your accommodated testing**, you will need to contact the GMAT Accommodations Scheduling Specialist in your region using the information below.  If you have already scheduled a standard testing appointment prior to receiving this approval letter, please be advised that **a standard testing appointment cannot be changed to an accommodated testing.**

**For candidates in North and South America, call:**

    **Telephone (toll-free):**  1-800-**466-0450** 7:00 a.m. to 7:00 p.m. Central Time, Monday - Friday

    **Telephone:**  1-952-681-3948, 6:00 a.m. to 7:00 p.m. Central Time, Monday - Friday

    **Fax:**  1-952-681-3681

**For candidates in the Asia-Pacific Region, call:**

    **Telephone:**  +60 3 8318 9961, 9:00 a.m. to 6:00 p.m. AEST, Monday - Friday

    **In India:**  +91 120 439 7830, 9 a.m. to 6 p.m. Indian Standard Time, Monday - Friday

    **Fax:**  +60 3 8319 1092

**For candidates in China, call:**

    **Telephone:**  86-10-82345675, Monday – Friday, 8:30 a.m. to 5:00 p.m. China Standard Time, Monday - Friday

    **Fax:**  86-10-61957800

**For candidates in Europe, Middle East, or Africa please email a copy of your accommodations letter and 5 possible dates that you would like to take the GMAT exam to GMATCandidateServicesEMEA@Pearson.com .**

**Europe, Middle East, Africa (EMEA) Region**

    **Telephone:**  +44 (0) 161 855 7219, 9:00 a.m. to 6:00 p.m. GMT, Monday - Friday

    **Fax:**  +44 (0) 161 855 7301

All testing appointments are scheduled on a first-come, first served basis.  Pearson VUE will make every effort to schedule an appointment for you within 30 days of your requested testing date.  Please be aware that no unauthorized personnel may enter the testing room or remain in the reception area.  If you have a physical disability and require assistance in activities such as reaching the testing room, using the rest room or eating lunch, you will need to request an additional accommodation and be very specific in outlining the functions this person will perform for you.  Test center staff can provide only services directly related to test taking.

**To aid your preparation**, the GMATPrep software contains free practice questions and two full-length GMAT exams.  As you have been granted 50% extra time, you can unlock this feature as follows:

» Either download the GMATPrep software from www.mba.com/gmatprep or request a copy of the software on CD when you  book your GMAT exam (it may take up to 4 weeks to arrive)

» After you have installed the software, start GMATPrep

» From the home screen, click on 'Settings' (bottom left corner).  The Settings screen will open

» Enter the following code in the Accommodations box:  **K7OJ-N39M-B3GKL-ZERT**

» Click the Submit button and 50% extra time will be activated

Additionally, the GMAT Official Guide is now available for purchase as a digital talking book.  To purchase the GMAT Official Guide digital talking book version, please visit  www.mba.com/dtb.

Cordially,

GMAT® Disability Services

Please notify the sender immediately if you received this email by mistake and promptly delete this message from your system. Any message, including attachments, is the property of the Graduate Management Admission Council and may be maintained for security or compliance purposes. Email monitoring or blocking software may also be deployed. Thank you for your cooperation.

**image001.jpg**
55K



## Benjamin Kohn - regarding your request for GMAT accommodations

**testingaccommodations** <testingaccommodations@gmac.com>                                      Tue, Mar 3, 2015 at 8:41 AM
To: "Benjamin.Kohn@sjsu.edu" <Benjamin.Kohn@sjsu.edu>



March 3, 2015


Dear Benjamin Kohn:


We have reviewed your request for GMAT® test accommodations in accordance with GMAT® Test Accommodations Guidelines within the framework of the Americans with Disabilities Act as recently amended. **You have been approved for 50% additional time and one additional break. Other accommodations: separate testing room; permission to wear neck brace into testing room (subject to inspection at testing center).  This approval may be used for <u>one administration of the GMAT® test </u>on or before <u>March 31, 2016.</u>** You must take your test on or before the expiration date listed in this approval letter.


| | |
|---|---|
| **Analytical Writing Assessment** | 45 Minutes |
|  Break | 8 Minutes (Additional Break) |
| | |
| **Integrated Reasoning** | 45 Minutes |
|  Break | 8 Minutes |
| **Quantitative** | 112.5 Minutes |
|  Break | 8 Minutes |
| | |
| **Verbal** | 112.5 Minutes |

**In order to schedule your accommodated testing**, you will need to contact the GMAT Accommodations Scheduling Specialist in your region using the information below. If you have already scheduled a standard testing appointment prior to receiving this approval letter, please be advised that **a standard testing appointment cannot be changed to an accommodated testing.**

**For candidates in North and South America, call:**

Telephone (toll-free): 1-800-466-0450 7 am to 7 pm Central Time, Monday - Friday

Telephone: 1-952-681-3948, 6 am to 7 pm Central Time, Monday - Friday

Fax: 1-952-681-3681

**For candidates in the Asia-Pacific Region, call:**

Telephone: +852-3077-4926, 9 am to 6 pm AEST, Monday - Friday

In India: +91 120 439 7830, 9 am to 6 pm Indian Standard Time, Monday - Friday

Fax: +60 3 8319 1092

**For candidates in China, call:**

Telephone: 86-10-82345675, 8:30 am to 5 pm China Standard Time, Monday - Friday

Fax: 86-10-61957800

**For candidates in Europe, Middle East, or Africa** please email a copy of your accommodations letter and five possible dates that you would like to take the GMAT exam to GMATCandidateServicesEMEA@Pearson.com.

All testing appointments are scheduled on a first-come, first served basis. Pearson VUE will make every effort to schedule an appointment for you within 30 days of your requested testing date. Please be aware that no unauthorized personnel may enter the testing room or remain in the reception area. If you have a physical disability and require assistance in activities such as reaching the testing room, using the rest room or eating lunch, you will need to request an additional accommodation and be very specific in outlining the functions this person will perform for you. Test center staff can provide only services directly related to test taking.

**To aid your preparation,** the GMATPrep® software contains free practice questions and two full-length GMAT® exams. As you have been granted 50% extra time, you can unlock this feature as follows:

· Either download the GMATPrep® software from www.mba.com/gmatprep or request a copy of the software on CD when you book your exam (may take up to 4 weeks to arrive).

· After you have installed the software, start GMATPrep®.

· From the home screen, click 'Settings' (bottom left corner). The Settings screen will open.

· Enter the following code in the Accommodations box: **K7OJ-N39M-B3GKL-ZERT.**

· Click the Submit button and 50% extra time will be activated.

Additionally, the GMAT Official Guide is available for purchase as a digital talking book. To purchase, please visit

www.mba.com/dtb.

Cordially,

GMAT® Disability Services

---



**image001.jpg**
55K

## GMAT ® - Graduate Management Admission Test ®

## Official Score Report - Test Taker Copy

BENJAMIN S KOHN
1913 Fordham Way
Mountain View, CA 94040
United States

**Issue Date:** 12 August 2015

### Test Taker Information

| | |
|---|---|
| **Telephone Number:** | 650-919-3584 |
| **E-mail Address:** | Benjamin.Kohn@sjsu.edu |
| **Date of Birth:** | 29 December 1993 |
| **Gender:** | Male |
| **Country of Citizenship:** | United States |
| **GMAT ID:** | 100002453917 |
| **Appointment Number:** | 280427702 |

### Optional Test Taker Information (Self-Reported)

| | |
|---|---|
| **Graduation Date:** | May 2015 |
| **Undergraduate GPA:** | |
| **Highest Education Level:** | Completed my undergraduate or university degree |
| **Undergraduate Institution:** | San Jose State University |
| **Undergraduate Major:** | Marketing |
| **Intended Graduate Study:** | Full-time student |

### Test Information (Score / % Below)

For the Quantitative, Verbal, Total and Analytical Writing sections, the percentages shown below represent the proportion of tests taken in the previous three years with reported scores lower than this score. The percentage shown below for the new Integrated Reasoning section represents the proportion of IR tests taken so far with reported scores lower than this score. This percentage is updated monthly for the first six months and annually thereafter.

**To view the most recent percentile table, please visit mba.com. See below for alphabetic score key.**

| Test Date | Verbal | Quantitative | Total | Analytical Writing | Integrated Reasoning |
|---|---|---|---|---|---|
| 08 August 2015 | 44 / 98% | 45 / 62% | 730 / 96% | 5.5 / 81% | 6 / 67% |
| 02 August 2014 | 39 / 89% | 44 / 57% | 680 / 84% | 4.5 / 44% | 8 / 92% |

▪ **C (Self canceled)**-Test taker voluntarily canceled the score on the day of the test.

▪ **~ (Not Available)**-Score is missing because the GMAT did not include an Integrated Reasoning section prior to June 5, 2012.

▪ **P (Policy Violation)**-GMAC® canceled the score due to a testing policy violation by the test taker. Policy violation for purposes of this identifier includes improperly accessing a mobile phone or study materials, disruptive behavior that interfered with other test takers or test center personnel or noncompliance with any term or condition in the *GMAT Handbook*, the GMAT Examination Testing Rules and Agreement, or the GMAT Non-Disclosure Agreement and General Terms of Use Statement, *other than incidents which are characterized as "serious violations," as defined at right.*

▪ **T (Testing issue)**-GMAC canceled the score due to an issue that affected the administration of the test. Examples include, but are not limited to, administrative errors, equipment problems, issues related to registration or payment, and disruptions caused by illness, natural disasters or other emergencies.

▪ **S (Serious violation)**-GMAC canceled the score because of a discrepancy in, or falsification of, a test taker's identification; improper access to or any disclosure of test content prior to, during, or after the test administration; proxy testing; or falsification of score reports. (The use of "serious violation" for this purpose is not intended to minimize the significance or seriousness of other violations of GMAT testing rules.)

**Score Report Recipients - Appt. Number 280427702**

At your request, an Official Score Report - School Copy has been sent to the graduate management program(s) listed below. All of your GMAT exam scores from the past five years were reported to each program. Please allow three weeks for the programs you have designated to receive your score reports.

University of Iowa - Henry B. Tippie College of Business - MBA, Full Time

Iowa City, Iowa, United States

To send your scores to additional programs, please visit mba.com, contact GMAT Customer Service at https://www.mba.com/service/contact-us.aspx or complete the order form provided on mba.com.

©2012 Graduate Management Admission Council® (GMAC®). All rights reserved. GMAC®, GMAT®, Graduate Management Admission Council® and Graduate Management Admission Test® are registered trademarks of the Graduate Management Admission Council® (GMAC®). VUE is a registered trademark in the US and in other countries of Pearson Education, Inc. and/or one or more of its direct or indirect affiliates.

## Answers to Frequently Asked Questions

**What does the GMAT exam measure?**
The GMAT exam measures basic verbal, mathematical, analytical writing, and integrated reasoning skills that you have developed over a long period of time in your education and work. The *Integrated Reasoning* section requires candidates to interpret and analyze information from different sources and in a variety of formats to solve complex reasoning tasks. The *Verbal* section measures your ability to understand and evaluate what you read, as well as your ability to recognize basic conventions of standard written English. The *Quantitative* section tests quantitative reasoning ability. The *Analytical Writing Assessment* section measures your ability to think critically and communicate complex ideas in writing. Your GMAT scores should not be compared with other test scores. Although the GMAT score scales may resemble those used for other tests, the scores are not directly related.

**What *doesn't* the GMAT exam measure?**
It does not measure your knowledge of business, your job skills, or subjective qualities such as motivation, creativity, and interpersonal skills. If a test taker's first language is not English, he or she may still perform well on the exam; however, the GMAT exam may not accurately reflect the abilities of someone who is not proficient in English.

**How are the Analytical Writing Assessment scores used?**
The Analytical Writing Assessment is used to provide an independent ranking of your ability to think critically and to communicate clearly when writing in English. Writing scores are computed separately from the scores for the multiple-choice sections of the test and have no effect on the Verbal, Quantitative, or Total scores.

**What do GMAT scores predict?**
GMAT scores are a valid predictor of academic performance in the first year of a graduate management program. Since creating the GMAT exam 50 years ago, we have conducted hundreds of validity studies that demonstrate this fact. In the past ten years, we've conducted almost 300 studies for graduate management programs all over the world. The median correlation between GMAT scores and first-year grades was 0.51 (perfect correlation is 1.0). The median correlation between undergraduate grade point average and first-year grades was 0.28. Thus, GMAT scores are generally a better predictor of performance in the first year of business school than undergraduate grades, though we advise admissions committees to use both when evaluating candidates.

**How reliable are GMAT scores?**
Test scores actually earned on any given occasion are only an approximation of your true ability. However, our research indicates that you will most likely earn a Total score within about 30 points of a score reflecting your true ability. Your Verbal and Quantitative scores are probably within 2.9 points of your true scores. If you take the GMAT exam more than once, you probably will not receive exactly the same scores. "Reliability" indicates the degree to which you would keep the same score if you were to take the test more than once (perfect reliability is 1.00). The average reliability of the GMAT Total score is 0.93. Average reliability is 0.87 for the Verbal score and 0.90 for the Quantitative score. Therefore, the reliability of GMAT scores is very high.

**How long are my GMAT scores valid?**
Scores are usually reported up to five years from the date you took the exam. With a special request and for an additional fee, you may report scores up to 10 years from the date you took the exam. However, scores more than five years old will be accompanied by a statement indicating that they must be

interpreted with care; many institutions will not accept scores over five years old. On behalf of GMAC, Pearson VUE destroys all score records more than 10 years old.

**How should my scores be used?**
Admissions committees typically use GMAT scores in conjunction with your academic record(s) and other information obtained from application materials. Unlike academic grades--which vary in meaning according to the grading standards of each school--GMAT scores are based on the same standard for all test takers and can be compared across all GMAT test administrations.

It is appropriate for GMAT scores to be used as an admissions tool for graduate study in management or as a basis for selecting applicants for financial aid based on academic potential. GMAT scores should not be used as a requirement for awarding a job; as a requirement for employment, job licensing or certification, or job-related rewards such as raises or promotions; or as an achievement test.

**How do I send my scores to schools?**
Approximately 20 days after your test date, your Official Score Report, including the digital photograph you provided at the test center and copies of your essays, are made available to any graduate management program you designated when you took the GMAT exam. Not all graduate management programs elect to receive photographs and essays. Once scores are made available, a school you designate can access your scores at any time. If you have not yet designated schools to receive your scores, or if you want to designate additional schools, visit www.mba.com or call GMAT Customer Service. We will report results from all tests you took in the last five years.

**Who has access to my scores?**
Score reports, which include copies of essays and a digital photograph if a designated graduate management program has elected to receive them, are released only at your specific request--like at the time you take the test, or when you request an Additional Score Report (ASR)--unless required by law, to cooperate in judicial or governmental proceedings, as necessary to detect or prevent unlawful activity, or as otherwise provided in the Privacy Policy on www.mba.com/privacy and in the *GMAT Handbook*.

**Should I decide where to apply based on my scores?**
You may be doing yourself a disservice if you rely solely on your GMAT scores to decide where to apply, or even whether to apply at all. Schools treat GMAT scores as only one of several predictors of performance. Most schools publish average and mid-80% range scores for the students they admit. Averages can be skewed by unusually high scores. For that reason, you can generally get a better understanding of the types of GMAT scores a school typically admits by looking at the mid-80% range, which indicates the scores earned by 80% of students who were admitted.

**How will retaking the GMAT exam affect my chances of admission?**
Admissions committees treat multiple scores in a variety of ways. They may use only your highest scores, your most recent scores, or an average of your scores. You should contact schools directly to learn how they use multiple GMAT scores.

**Can I now cancel my scores?**
You can cancel your scores only at the test center *immediately after you take the test.* Once your scores have been reported, they become part of your permanent score record and cannot be canceled.

NATIONAL CONFERENCE OF BAR EXAMINERS

302 South Bedford Street
Madison, WI 53703-3622
Email: mpre.ada@ncbex.org
Phone: (608) 316-3070
Fax: (608) 316-3119

07-13-2017                          **November 2017 MPRE**

BENJAMIN KOHN
460 SAMOA DRIVE
IOWA CITY, IA 52246

*Posted electronically to NCBE Number N10380994 account*

Dear BENJAMIN KOHN:

The National Conference of Bar Examiners (NCBE) has completed its review of your request for test accommodations on the MPRE. Based on the documentation provided, your request has been approved in part.

As listed in the Accommodations Confirmation posted separately to your NCBE account, you have been approved for the following:

- 50% extended testing time (extra 60 minutes)
- Supervised breaks - one 15 minute rest break

Note that your request to type written responses was not approved.  The MPRE is a multiple choice examination that does not involve writing or typing.  Examinees bubble answers on a Scantron answer sheet.

In reaching this decision, we reviewed the documentation submitted in order to evaluate the impact of your diagnosis on the skills most relevant to taking the MPRE. We considered the nature, extent, and severity of your impairment; your functional limitations; the impact of your limitations on your ability to take the MPRE; and your history of accommodations. Based on the entirety of the evidence in the documentation submitted, the approved accommodations will provide you with meaningful access to the MPRE.

The deadline for seeking reconsideration for the August 2017 MPRE has passed. If you register to take a future MPRE, you may submit additional materials along with a new Applicant Request Form at that time. Please visit NCBE's website to access the most current instructions, forms, and guidelines.

Sincerely,

MPRE Test Accommodation Services
Email: mpre.ada@ncbex.org
Website: www.ncbex.org/mpre-ada



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

# FORM C
## TESTING ACCOMMODATIONS – SPECIFIC LEARNING DISORDER/ DISABILITY VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

**NOTICE TO APPLICANT: This section of this form is to be completed by you.** The remainder of the form is to be completed by the qualified professional who is recommending testing accommodations for the California Bar Examination or First-Year Law Students' Examination for you on the basis of a specific learning disorder/ disability. Please read, complete, and sign below before submitting this form to the qualified professional for completion of the remainder of this form.

Applicant's Full Name: Benjamin Sean Kohn

File Number: 0468532

I give permission to the qualified professional completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

Benjamin Kohn
_____
Signature of Applicant

7/18/2017
_____
Date

**NOTICE TO QUALIFIED PROFESSIONAL:**

The above-named person is requesting accommodations for the California Bar Examination or First-Year Law Students' Examination. All such requests must be supported by a comprehensive evaluation report from the qualified professional who conducted an individualized assessment of the applicant and is recommending accommodations for the examination on the basis of a specific learning disorder/disability. The Committee of Bar Examiners also requires the qualified professional to complete this form. **If any of the information requested in this form is fully addressed in the comprehensive evaluation report, you may respond by citing the <u>specific page and paragraph</u> where the answer can be found.** Please attach a copy of the comprehensive evaluation report and all records and test results on which you relied in making the diagnosis and recommending accommodations for the examination administered by the Committee of Bar Examiners. Your assistance is appreciated.

TA-FormC.0417

1

*The Committee of Bar Examiners* may forward this information to one or more qualified professionals for an independent review of the applicant's request.  Print or type your responses to the items below.  **Return the original of this completed form, the comprehensive evaluation report, and relevant records to the applicant for submission to the Committee of Bar Examiners.**

## I. QUALIFICATIONS OF THE PROFESSIONAL*

Name of professional completing this form:  Jodi Pinn, Ph.D., Charles Preston, Ph.D.

Address:  2211 Moorpark Avenue, suite 260, San Jose, CA 95128

Telephone:  877-454-6469          Fax:  877-454-6469

E-Mail:  neuropsychgroup@gmail.com

Occupation, title, and specialty:  Licensed Clinical Psychologists, practicing clinical neuropsychology

License Number/State:  PSY 19171    PSY 21075

*The following professionals are deemed appropriate and qualified to provide a diagnosis of specific learning disorders/disabilities: Clinical Psychologist\*\*, Neuropsychologist\*\*, Educational or School Psychologist\*\*, Educational Diagnostician, Learning Disabilities Specialist, Educational Therapist (\*\* must be licensed).*

Please describe your specialized training in the assessment, diagnosis and remediation of specific learning disorders/disabilities with the adult population.  Experience in working with cultural and/or linguistically diverse populations is also essential.  A minimum of three (3) years of demonstrated experience with the adult population is considered appropriate and critical:

We work in a county hospital system providing neuropsychological assessment including assessment of specific learning disorders. We do the same work in our private practice with adults and adolescents.

We serve an extremely diverse county in the San Francisco Bay area, and routinely work with individuals of various cultures, languages, and socioeconomic status. We have each been practicing more than 10 years.

## II. DIAGNOSTIC INFORMATION CONCERNING APPLICANT

1. Provide the date the applicant was first diagnosed with a specific learning disorder/disability:

   unknown

2. Did you make the initial diagnosis?    ☐ YES    ☒ NO

TA-FormC.0417

2

If no, provide the name of the professional who made the initial diagnosis and when it was made, if known. Attach copies of any prior evaluation reports, test results or other records related to the initial diagnosis that you reviewed.

Dr. Toren; no longer have access to the psychoeducational report. Will ask applicant to provide a copy.

3. When did you first meet with the applicant?    3/22/2014

4. Provide the date of your last complete evaluation of the applicant:    4/26/2014

5. Provide a concise description of your diagnosis. Please include the specific DSM-5 (or most current edition) diagnosis:

F84.0 Autism Spectrum Disorder;

F88 Other Specified Neurodevelopmental Disorder- ( Impaired Processing Speed and Attention)

6. Describe the applicant's **current** level of functioning and the impact of any functional limitations on the applicant's major life activities.

see 2014 comprehensive report p. 3-4 "Behavioral Observations" section

p. 7-8 "Emotional Functioning" section and "Summary" section

7. Were the applicant's motivation level, interview behavior, and/or test-taking behavior adequate to yield reliable diagnostic information/test results?

[X] YES    [ ] NO

Describe how this determination was made, including whether any symptom validity tests were administered. If such tests were not administered, please state why they were not.

Validity indices from the PAI as well as Mr. Kohn's observed level of motivation and effort were considered.

**ATTACH A COMPREHENSIVE EVALUATION REPORT.** An applicant's specific learning disorder/disability must have been identified by an appropriate psychoeducational assessment process that is well documented in the form of a comprehensive diagnostic report. The provision of reasonable accommodations is based on assessment of the *current* impact of the disability on the specific testing activity. Although a specific learning disorder/disability normally is lifelong, the severity and manifestations can change. The Committee of Bar Examiners generally requires documentation from an evaluation conducted within the last five years to establish the current impact of the disability. Please attach to this form a copy of the comprehensive evaluation report and all records and test results on which you relied in making the diagnosis and recommending accommodations for the

TA-FormC.0417

3

**California Bar Examination or First-Year Law Students' Examination.**

The evaluation report should include the following:

A. an account of a thorough diagnostic interview that summarizes relevant components of the individual's developmental, medical, family, social, and educational history;

B. clear, objective evidence of a substantial limitation to learning or performance provided through assessment in the areas of cognitive aptitude, achievement, and information processing abilities (results must be obtained on standardized test(s) appropriate to the general adult population and be reported in age-based standard scores and percentiles);

C. interpretation of the diagnostic profile that integrates assessment data, background history, and observations made during the evaluation process, as well as the inclusion or ruling out of possible coexisting conditions (such as previously diagnosed psychological issues or English as a second language) affecting the applicant's performance;

D. a specific diagnostic statement, which should not include nonspecific terms such as "learning differences," "learning styles," or "academic problems"; and

E. a rationale for each recommended accommodation based on diagnostic information presented (background history, test scores, documented observations, etc.).

## III. FORMAL TESTING

It is important that the tests used in the evaluation are reliable, valid, and age-appropriate, and that the most recent edition of each diagnostic measure is used. Scores should be reported as age-based standard scores and percentiles. The following lists of tests are provided as a guide to assessment instruments appropriate for the adult population. The lists are not intended to be all-inclusive and will vary with the needs of the individual being evaluated.

1. Aptitude/Cognitive Ability

   - Wechsler Adult Intelligence Scale IV (WAIS IV, or most current version) (including IQ, index, and scaled scores)
   - Woodcock-Johnson IV (WJ IV): Tests of Cognitive Ability
   - Stanford-Binet Intelligence Scale (5th edition, or most current version)
   - Kaufman Adolescent and Adult Intelligence Test (KAIT)

Please note: The Slossen Intelligence Test and the Kaufman Brief Intelligence Test are primarily screening instruments and should not be considered comprehensive

TA-FormC.0417

4

measures of aptitude/cognitive ability.

2. Achievement

- Woodcock-Johnson IV (WJ IV):  Tests of Achievement
- Wechsler Individual Achievement Test (WIAT III, or most current version)
- Scholastic Abilities Test for Adults (SATA)

Please note:  The Wide Range Achievement Test: Fourth Edition (WRAT-4), the Peabody Individual Achievement Test (PIAT, PIAT-R or PIAT-R/NU), and the Nelson Denny Reading Test are not comprehensive measures of academic achievement and should not be used as sole measures in this area.

3. Information Processing

- Wechsler Memory Scale IV (WMS-IV, or most current version)

- Swanson Cognitive Process Test (S-CPT)

- Test of Adolescent/Adult Wordfinding (TAWF-2)

- Information from subtest, index, and/or cluster scores on the WAIS IV (Working Memory, Perceptual Organization, Processing Speed) and/or the Woodcock-Johnson IV (WJ IV): Tests of Cognitive Ability (Visual Processing, Short Term Memory, Long Term Memory, Processing Speed) and/or The Detroit Tests of Learning Aptitude-Adult (DTLA-4, or most current version), as well as other neuropsychological instruments that measure rapid automatized naming and/or phonological processing.

## IV. ACCOMMODATIONS RECOMMENDED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

### FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other

TA-FormC.0417

5

things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination is administered in a quiet environment, and applicants are allowed to use small foam earplugs. They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

TA-FormC.0417

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice

6

☐ Other: _____          answer sheet (Scantron sheet)
                                  (choose one)

                                  ☐ Permission to circle answers in
                                    question booklet

                                  ☐ Permission to dictate answers to
                                    proctor

                                  ☐ Dictate to a voice recorder (choose
                                    one)

                                  ☐ Digital voice recorder (for use with
                                    flash memory cards)

                                  ☐ Tape recorder (for use with
                                    microcassette tapes)

                                  ☐ Other: _____

## Equipment or Facility Requirements

☐ Computer *as an accommodation* (must have direct nexus to the effects of the
  disability)

  ☐ with SofTest installed

  ☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

  ☐ with screen-reading software (e.g., JAWS) installed

  ☐ with other (specify): _____

☐ Special equipment (specify): _____

☐ Private room

☐ Semi-private room

☐ Wheelchair accessibility (if table, specify height): _____

☐ Other: _____

Please provide a rationale for each request indicated above (attach additional sheets if
necessary):

_____
_____
_____
_____
_____
_____

TA-FormC.0417

**Accommodation of Extra Time**

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination: Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

additional 1.5 hours (50%) due to significantly slow processing speed

**California Bar Examination: Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

additional 1.75 hours (50%) due to significantly slow processing speed

**California Bar Examination: Multistate Bar Examination - MBE (each standard session is 3 hours):** Specify the amount of extra test time needed <u>for each MBE session</u> and provide the rationale:

additional 1.5 hours (50%) for each session due to significantly slow processing speed

**First-Year Law Students' Examination: Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

**First-Year Law Students' Examination: Multiple-Choice (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

TA-FormC.0417

8

**Explanations:** (attach additional sheets if necessary)

## V. PRIOR HISTORY AND PAST ACCOMMODATIONS

Please describe any previously documented history of specific learning disorders/disabilities and list accommodations that have been granted to the applicant in the past:

see 2014 comprehensive report p. 1 paragraph 4 - p.2 paragraph 1

In addition, he was granted accommodations of 50% extra time on the LSAT based on the 2014 report & diagnoses

## VI. CONFIDENTIALITY

Confidentiality policies of the Committee of Bar Examiners/Office of Admissions of the State Bar of California will be followed regarding its responsibility to maintain confidentiality of this form and any documents submitted with it. No part of the form or the accompanying medical documentation will be released without the applicant's written consent or under the compulsion of legal process.

TA-FormC.0417

## VII. CLINICIAN/LICENSED PROFESSIONAL'S SIGNATURE

I am submitting the **original** of this form and have attached copies of the comprehensive evaluation report and all records and test results that I relied upon in making this diagnosis of the applicant's condition/disability (notes and worksheets are not required as part of this submission) and completing this form.   I understand that all original documents submitted become the property of the Committee of Bar Examiners.

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct.

_____          _____
(Signature of Licensed Professional)                            (Date)

The Committee of Bar Examiners reserves the right to make final judgment concerning testing accommodations and may have all documentation related to this matter reviewed by an individual professional consultant or a panel of professional consultants if deemed necessary.

TA-FormC.0417

10

Mr. Benjamin Kohn

<div style="border:2px solid black; text-align:center;">

# NEUROPSYCHOLOGICAL
# ASSESSMENT GROUP
### 1475 SARATOGA AVENUE–SUITE 170
### SAN JOSE, CA 95129–WWW.NEUROPSYCHGROUP.COM–(877)454-6469

</div>

## Report of Results of Neuropsychological Evaluation

**Name:** Mr. Kohn                          **Date of Report:** 4/1/14
**Age:**                                    **Date(s) Tested:** 3.22.14; 3.26.14
**Date of Birth:** 12/29/1993               **Duration of Assessment:** 10 hours Face to Face
**Examiner:** Charles J. Preston, Ph.D.

**Background & Reason for Referral:** Mr. Kohn is a 20-year-old, white, Caucasian, English-speaking male. He is currently an undergraduate student, pursuing a Bachelor's of Science degree in Business Administration Marketing at San Jose State University. Mr. Kohn is in his second year of studies and currently lives on campus. He was self-referred for testing to assess his current level of psychoeducational functioning pursuant to an application for accommodations on the LSAT and GMAT. He requested documentation of disability that would qualify him for extra time on these standardized tests.

**Identifying Information/History:** (*The following information was derived from Mr. Kohn during clinical interview; additional information was obtained from a report of previous evaluation.*)

Mr. Kohn was born in Los Gatos, California to married parents, the eldest of 2 boys. He reported that he was born prematurely, but without complications or medical problems. He had some early childhood delays including being late to walk and talk, some hearing problems, and "low percentile with muscle strength". He was diagnosed with Asperger's Syndrome at age 5 or 6 at Stanford University Hospital. He reported additional diagnoses of Myofascial Pain Syndrome and Eczema. His mother stayed at home when he and his brother were young, but currently teaches Sign Language and helps translate. She has a Masters degree and teaching credential. His father is an engineer, and also has a Masters degree. He described a generally good relationship with his parents. He and his brother share an interest in the trading card game, Magic; and he reports that they generally get along.

Mr. Kohn is single, has never been married or in a romantic relationship, and has no children.

Mr. Kohn received special education resources throughout his education, beginning in preschool. As per previous report in 2010, he received physical therapy and speech/language support. He also was treated at the Michelle Garcia Winner's Center for Social Thinking, and continued private physical therapy to improve muscle strength and coordination. He reported that he is the only one in his family to have been diagnosed with a learning disability. He was on an Individualized Education Plan (IEP)

Mr. Benjamin Kohn

through high school, and got extended time for tests. He also attended study hall with "special help". He did well in his regular and Advanced Placement (AP) classes, earning mostly A's & B's and a couple C's. In college he also is granted extended time for testing, and is achieving C's in classes with memorization. He gets mostly B's and some A's when interested in the class. He has a 3.80 GPA in Business classes, and has a 3.00 cumulative GPA.

Mr. Kohn first worked during high school summer breaks in a game store where he sorted Magic cards. More recently he started his own investments barter business, since he is not a licensed investor. He noted that he makes significant income from his own investing, which he began at age 18. Before that he made money with collectables.

Mr. Kohn denied any legal history, arrests, or jail time. He reported he has "a sip" of wine on special occasions with his parents' consent. He denied tobacco use, illicit substance use, prescription medication abuse, or substance abuse treatment. He also denied any history of trauma or abuse.

Mr. Kohn reported a family medical history positive for Diabetes (maternal grandmother, paternal uncle), Alzheimers Disease (paternal grandmother), Heart Disease (maternal grandmother), Cancer (grandparents, Leukemia, Lung; aunt, Breast), Developmental Disability (maternal great uncle), Depression (mother, diagnosis unknown), and Schizophrenia (maternal uncle). He denied a childhood history of major illness, but has been on medications since childhood for allergies and eczema. He also had "motor issues", sleep apnea, and repeated ear infections which resulted in him having his adenoids removed and tubes placed.

Mr. Kohn wears glasses when working at the computer and reported that he may need them daily. He believes his hearing is less than average. He is currently prescribed: Xolair (Omalizumab) injection every 28 days for allergies, Vicodin PRN for pain related to mouth ulcers, and Modafinil (Provigil)200mg/day for allergies and help with attention. He also has an Epi pen for use PRN for fish allergy, and takes supplements, probiotics, Lutein, Allegra, and Benadryl over-the-counter.

He sought treatment for depression in 10th grade and tried different medications. He noted that Prozac made him "feel depressed". He denied all other psychiatric symptoms in interview, however on a written intake form he endorsed having experienced extreme depressed mood, extreme mood swings, rapid speech, extreme anxiety, panic attacks, phobias (stinging insects), repetitive thoughts, repetitive behaviors, and sleep disturbance in the past.

Mr. Kohn denied a history of head injury or any other significant accident or injury.

Mr. Kohn denied having serious memory problems, noting that his memory is "good for certain things". He reported problems with attention/concentration, visual spatial abilities, and getting lost if distracted. He noted that he is good at problem-solving, but bad at multi-tasking. He feels that he has "less than average" social skills.

**Behavioral Observations:**
Mr. Kohn was oriented to person, place, time, and purpose for both testing sessions. He was casually dressed. Speech was monotone and speech flow was mechanical; content was concrete, direct and void of elaboration. When test instructions directed him to repeat back stimuli exactly as the administrator presented it, he would parrot back responses with exact timing, rhythm and inflection. He made

Mr. Benjamin Kohn

minimal eye contact. His mood was reported as "fine", affect was flat. Thought processes were focused on completing tasks. Many times he expressed concern about the testing being completed in a time limit. He requested one break during which he remained in his chair answering emails on his phone. He requested a second break shortly after, however this was in the middle of administration of tasks that incorporated a built in time-delay, so his request was denied. He became agitated, which affected his focus on the next several tasks. Due to his testing behavior, notable for significantly slow (> 2 SD) processing speed, he took several hours more time than usual to complete testing.

Mr. Kohn displayed stereotypical movements including picking at his clothes, and twirling his hair, while completing complex problems. While he was able to manipulate solid objects (blocks), and correctly complete designs, he was extraordinarily slow. Mr. Kohn denied current or past suicidal and homicidal ideation.

**Validity Statement:**
Based on the level of effort exerted, and the seriousness with which he approached the assessment, results of testing are considered to be a valid and accurate representation of Mr. Kohn's current psychological and cognitive functioning.

**Tests Administered:**
Clinical Interview and Review of Previous report
Wechsler Adult Intelligence Scale-fourth edition (WAIS-IV)
Wechsler Memory Scale-fourth edition (WMS-IV)
Wechsler Individual Achievement Test-third edition (WIAT-III)
Visual Search and Attention Test (VSAT)
Delis Kaplan Executive Function System (DKEFS) Trails 1-5
Personality Assessment Inventory (PAI)

**Test Results:**

**1. Attention/Concentration:**

Mr. Kohn demonstrated variable attention. His scores ranged from Average to the Extremely Low Range. His attention fluctuated throughout this evaluation, with scores on particular types of tests Within Normal Limits for one task, then impaired on the next (e.g. Visual Scanning Average; then Symbol Search in the Borderline Range). It should be noted that Mr. Kohn took his ADHD medication on both testing dates. Therefore, results of attention testing are considered his best possible performance.

| Test | Subtest | Standard Score | Level of Intellectual Functioning |
|------|---------|----------------|-----------------------------------|
| WAIS-IV | Digit Span | 85 | Low Average Range |
| WAIS-IV | Cancellation | 75 | Borderline Range |
| DKEFS | Visual Scanning | 95 | Average Range |
| DKEFS | Number Sequencing | 85 | Low Average Range |
| DKEFS | Letter Sequencing | 85 | Low Average Range |

Mr. Benjamin Kohn

| DKEFS | Number-Letter Switching | 80 | Low Average Range |
|---|---|---|---|
| DKEFS | Motor Speed | 56 | Extremely Low Range |
| VSAT | Left | 65 | Extremely Low Range |
| VSAT | Right | 65 | Extremely Low Range |
| VSAT | Total | 65 | Extremely Low Range |

\* Fluctuating/impaired attention may influence performance on all measures administered. Therefore, results should be interpreted with this caveat in mind.

## 2. Intellectual Functioning:

Current intellectual functioning was measured by the WAIS-IV. Subtests were administered in the standard way in accordance with normative administration; after standardized administration, a process approach was utilized in order to test limits. This allows for evaluation of whether extended time and/or discontinuation thresholds results in higher scores on items. Mr. Kohn's Full Scale IQ fell in the Average Range for both standard and process approach administrations. Due to the extreme scatter in scores among all subtest scores, this Full Scale IQ score is not considered a true or valid measure of his actual intellectual functioning. There was a significant difference between Mr. Kohn's Verbal Comprehension Index (VCI) and Perceptual Reasoning Index (PRI) scores, with the VCI in the High Average Range, and his PRI in the Low Average Range. This suggests that his FSIQ is an underestimate of true intelligence. This discrepancy was magnified with the process approach administration, resulting in a VCI in the Superior Range, and a PRI at the very bottom of the Average Range. His Processing Speed Index (PSI) was the most discrepant, falling in the Borderline Range. His Working Memory Index (WMI) was in the High Average Range, consistent with his VCI.

Mr. Kohn's highest subtest score was on Vocabulary, and was in the Very Superior Range. Arithmetic was the next highest score and was likewise in the Very Superior Range. Both were obtained via standard administration. Vocabulary, often used alone as an indicator of overall intelligence, is considered a "hold" test, in that it remains relatively stable throughout one's lifetime, and is resistant to decline even in cases of neurological disease or damage. Therefore, Mr. Kohn's Very Superior score on Vocabulary is suggestive of extraordinarily high intelligence. His lowest subtest score was in the Borderline Range on two measures of visual attention and processing speed.

His pattern of performance, with significantly low processing speed and perceptual reasoning skills relative to his Vocabulary and other verbal performance, is indicative of learning disability or another neurological anomaly as a contributing factor to lowered overall intellectual functioning. Based on his VCI score in the High Average Range, and process approach score in the Superior Range of functioning, scores on subsequent tests are expected to fall in at least the High Average Range.

| Test | Index | Index Score | Level of Intellectual Functioning |
|---|---|---|---|
| **WAIS-IV** | Full Scale IQ | 98 | Average Range |
| | VCI | 118 | High Average Range |
| | PRI | 86 | Low Average Range |
| | WMI | 111 | High Average Range |
| | PSI | 76 | Borderline Range |

Mr. Benjamin Kohn

## 3. Memory: (Auditory & Visual)

Mr. Kohn demonstrated a significant difference between auditory and visual memory functioning, with severe impairment on visual memory tasks requiring visual attention, visual working memory, and recall. Auditory (verbal) memory was in the Average Range. Specific results are discussed below.

Auditory Memory: Mr. Kohn's Auditory Memory Index (AMI) was in the Average Range. He scored in the Superior Range on a measure requiring learning and recall of contextual information (Logical Memory). He scored in the Average Range on a list-learning task which employed the use of paired words as a means of cueing recall.

Visual Memory: Mr. Kohn's Visual Memory Index (VMI) was his lowest index score, falling in the Extremely Low Range. On the Designs I task, he requested a rest break, was told he needed to continue and he became frustrated and appeared less focused than on previous tasks. Therefore, he was unable to learn geometric designs for immediate or delayed recall, and scored in the Profound Impairment Range. He also had difficulty reproducing and later recalling geometric drawings.

Visual Working Memory: Mr. Kohn's second lowest index score, also in the Extremely Low Range, was on the Visual Working Memory Index (VWMI). He had trouble on both subtests that comprise this Index; both subtests require visual attention and working memory.

Immediate Memory: The Immediate Memory Index (IMI) is made up of subtests in which auditory or visual information is initially learned and recalled. He scored in the Low Average Range on the index, but had significant scatter between subtest scores that comprise the index, with a score in the Superior Range on a verbal measure, and a score in the Extremely Low Range on a visual measure.

Delayed Memory: The Delayed Memory Index (DMI) is made up of subtests in which previously learned auditory or visual information is recalled after a time delay. He scored in the Low Average Range on the index, but again had significant scatter between subtest scores that comprise the index, with substantially better scores on verbal measures, and significant impairment on visual measures.

| Test | Index | Index Score | Level of Functioning |
|------|-------|-------------|---------------------|
| WMS-IV | AMI | 107 | Average Range |
| | VMI | 57 | Extremely Low Range |
| | VWMI | 63 | Extremely Low Range |
| | IMI | 81 | Low Average Range |
| | DMI | 81 | Low Average Range |

## 4. Achievement:

Achievement in areas taught and learned via formal education was measured by the WIAT-III. Total

Mr. Benjamin Kohn

Achievement Composite Standard Score was in the High Average Range. Composite Scores varied significantly, with scores ranging from the Average Range to the Very Superior Range. There was scatter among subtest scores as well. Lower subtest scores are likely related to the requirement of speed, visual processing or attention on these measures which were timed.

Mr. Kohn demonstrated Very Superior mastery of Mathematics. His highest score on the WIAT-III was on the Math Problem Solving subtest (Very Superior Range). His Numerical Operations score was in the Superior Range. Lower composite scores (Average Range) were obtained on Math Fluency, Reading Comprehension & Fluency, and Total Reading. His performances on the Math Fluency subtests: Addition, Subtraction and Multiplication were all in the Average Range, likely lowered by the requirement of speed or visual processing or attention on these measures which were timed. This is in contrast to his exceptional Math Problem Solving performance which was untimed.

His Oral Reading Fluency and Reading Comprehension subtest scores were also in the Average Range. Word Reading and Pseudoword Decoding scores, the remainder of the Total Reading Composite, were in the High Average Range. His remaining Composite scores, Oral Language, Basic Reading, and Written Expression, were in the High Average Range. He performed in the Superior Range on the Spelling subtest which is one of the subtests that makes up the Written Expression composite.

| Test | Composite | Standard Score | Level of Functioning |
|------|-----------|----------------|----------------------|
| WIAT-III | Total Achievement | 116 | High Average Range |
| WIAT-III | Oral Language | 115 | High Average Range |
| WIAT-III | Total Reading | 107 | Average Range |
| WIAT-III | Basic Reading | 116 | High Average Range |
| WIAT-III | Reading Comp & Fluency | 98 | Average Range |
| WIAT-III | Written Expression | 110 | High Average Range |
| WIAT-III | Mathematics | 131 | Very Superior Range |
| WIAT-III | Math Fluency | 99 | Average Range |

The Nelson-Denny Reading Test was also administered as per LSAT requirements. Results indicate that under extended time administration scores for Vocabulary increased from the 12th percentile rank to the 56th percentile rank. When given more than 50 percent additional time, Mr. Kohn was able to achieve a score at the 63rd percentile rank.

For the Comprehension subtest, Mr. Kohn was able to achieve a reading rate at the 13th percentile. His Comprehension score for the regular administration was at the 36th percentile. With additional time, he was able to improve his score by over 1 standard deviation to the 48th percentile.

By having additional time, his scores on Comprehension were much closer to the scores he was able to achieve on the untimed Reading Comprehension subtest of the WIAT-III.

| Nelson-Denny | Number of Items attempted | Raw Score | Scale Score | Grade Equivalent | Grade 14 end of year Percentile Rank | Grade 13 Beginning of the year Percentile Rank |
|--------------|---------------------------|-----------|-------------|------------------|--------------------------------------|------------------------------------------------|
| Vocabulary | | | | | | |

Mr. Benjamin Kohn

| | | | | | | |
|---|---|---|---|---|---|---|
| Score at 15mins (Regular Administration) | 41 | 40 | 193 | 10.5 | 12 | 28 |
| Score at 24 mins (Extended Time Administration) | 76 | 67 | 230 | 15.4 | 56 | 79 |
| Score at end of Test (25 mins) | 80 | 70 | 234 | 16.1 | 63 | 84 |
| | | | | | | |
| **Comprehension** | | | | | | |
| 1 min reading rate | | 164 | 183 | | 13 | 19 |
| Score at 20 mins (Regular Administration) | 28 | 52 | 213 | 13.7 | 36 | 55 |
| Score at 32 mins (Extended Time Administration) | 38 | 66 | 221 | 14.7 | 48 | 65 |
| Score at end of test (30 mins) | 38 | 66 | 221 | 14.7 | 48 | 65 |
| | | | | | | |
| Total Score (Regular Administration) | 80 | 92 | 204 | 12.3 | 22 | 42 |
| Total Score (Extended Time Administration) | 38 | 133 | 227 | 15.1 | 51 | 73 |
| Total Score (End of test total time= 55 mins) | 38 | 136 | 231 | 15.8 | 58 | 79 |

## 5. Emotional Functioning:

Mr. Kohn was administered the PAI, a self-report measure of past and current psychiatric symptoms. His profile pattern indicates that he responded in a forthcoming manner. His interpersonal style can be best characterized as remote and somewhat controlling. He is not likely to be very interested or invested in social relationships. His relationships are likely to be pragmatic and business-like. He is probably skeptical of close relationships, and will be disinterested in any commitment to them. This is congruent with his report of his social functioning during interview. Mr. Kohn's profile pattern was negative for all other psychiatric concerns. He reported in interview that

## Summary:

Mr. Kohn is a 20-year-old, Caucasian male. He has 14 years of formal education and speaks English as his primary language. Mr. Kohn currently lives on the SJSU campus where he is pursuing his Bachelor's degree. He was self-referred for testing to assess his current level of psychoeducational functioning pursuant to an application for accommodations on the LSAT and GMAT. He requested documentation of disability that would qualify him for extra time on these standardized tests.

- Mr. Kohn has *variable attention*. Impaired/ fluctuating attention may influence performance on all measures administered. Therefore, results should be interpreted with this caveat in mind.

- Results of intellectual functioning test were uninterruptable due to the large amount of scatter within and between subtests and index scores. Given his Very Superior score on Vocabulary, it

Mr. Benjamin Kohn

is likely his intellectual functioning falls between the High Average and Very Superior Range. His scores on timed tasks on the WAIS-IV were negatively impacted by his slow processing speed.

- Mr. Kohn achieved significantly lower scores on timed tasks versus similar untimed tasks. He demonstrated *impairments on measures requiring attention and speed*. He did not make errors but processing speed was slow.

- Mr. Kohn demonstrated *variable fluency functions*. Fluency was impaired by slow processing speed and possibly inattention.

- Mr. Kohn demonstrated a concrete conceptualization when inferring meaning from ambiguous materials. This is likely related to his Asperger's diagnosis. This prevents him from grasping full meaning from written and verbally presented information.

- During testing sessions, Mr. Kohn reported a euthymic mood and displayed flat affect. He denied all other current psychiatric symptoms.

**Recommendations:**

1. 100 % Extended time on testing and assignments
2. Quiet, distraction free testing environment
3. Provide sufficient time to copy visually presented class/lecture materials
4. Access to instructor lecture notes
5. Class/testing seating to facilitate focused attention and concentration

**DSM 5 Diagnosis:**

299.00 Autism Spectrum Disorder
315.8 Other Specified Neurodevelopmental Disorder- ( Impaired Processing Speed and Attention)

Charles Preston, Ph.D.
PSY 21075

Jodi Pinn, Ph.D.
PSY19171

Mr. Benjamin Kohn

Summary of Scores

| WAIS-IV | | |
|---|---|---|
| **Subtest** | **Scaled Score** | **Percentile** |
| Block Design | 6 | 9 |
| Similarities | 8 | 26 |
| Digit Span | 7 | 16 |
| Matrix Reasoning | 11 | 64 |
| Vocabulary | 19 | 99.9 |
| Arithmetic | 17 | 99.1 |
| Symbol Search | 5 | 5 |
| Visual Puzzles | 6 | 9 |
| Information | 13 | 84 |
| Coding | 6 | 9 |
| Cancellation | 5 | 5 |
| **Index** | | |
| FSIQ | 98 | 45 |
| VCI | 118 | 88 |
| PRI | 86 | 18 |
| WMI | 111 | 77 |
| PSI | 76 | 5 |
| | | |
| WMS-IV | | |
| **Subtest** | **Scaled Score** | |
| Logical Memory I | 14 | 91.2 |
| Logical Memory II | 14 | 91.2 |
| Verbal Paired Associates I | 8 | 26 |
| Verbal Paired Associates II | 9 | 36 |
| Designs I | 1 | 0.17 |
| Designs II | 2 | .4 |
| Visual Reproduction I | 6 | 9 |
| Visual Reproduction II | 4 | 2.3 |
| Spatial Addition | 5 | 5 |
| Symbol Span | 3 | 0.9 |
| **Index** | **Index Score** | |
| AMI | 107 | 68 |
| VMI | 57 | 0.25 |
| VWMI | 63 | 1 |
| IMI | 81 | 10 |
| DMI | 81 | 10 |
| | | |
| WIAT-III | | |

Mr. Benjamin Kohn

| Subtest | Standard Score | Percentile |
|---|---|---|
| Listen Comprehension | 109 | 73 |
| Reading Comprehension | 100 | 50 |
| Math Problem Solving | 132 | 98 |
| Sentence Composition | 102 | 55 |
| Word Reading | 110 | 75 |
| Wssay Composition | 102 | 55 |
| Pseudoword Decoding | 119 | 90 |
| Numerical Operation | 125 | 95 |
| Oral Expression | 117 | 87 |
| Oral Reading Fluency | 97 | 42 |
| Spelling | 120 | 91 |
| Math Fluency-Addition | 91 | 27 |
| Math Fluency-Subtraction | 103 | 58 |
| Math Fluency-Multiplication | 103 | 58 |

| Composite | Standard Score | |
|---|---|---|
| Total Achievement | 116 | 86 |
| Oral Language | 115 | 84 |
| Total Reading | 107 | 68 |
| Basic Reading | 116 | 86 |
| Reading Comp & Fluency | 98 | 45 |
| Written Expression | 110 | 75 |
| Mathematics | 131 | 98 |
| Math Fluency | 99 | 47 |

| DKEFS Trail Making Condtion | Scaled Score | |
|---|---|---|
| Trail Making-Visual Scanning | 9 | 36 |
| Trail Making-Number Sequencing | 7 | 16 |
| Trail Making-Letter Sequencing | 7 | 16 |
| Trail Making-Number -Letter Switching | 6 | 9 |
| Trail Making-Motor Speed | 1 | 0.17 |

| Visual Search and Attention Test | Left =1st Percentile | Right= 1st percentile | Total= 1st percentile |
|---|---|---|---|

| Nelson-Denny | Number of Items attempted | Raw Score | Scale Score | Grade Equivalent | Grade 14 end of year Percentile Rank | Grade 13 Beginning of the year Percentile Rank |
|---|---|---|---|---|---|---|
| Vocabulary | | | | | | |

Mr. Benjamin Kohn

| | | | | | | |
|---|---|---|---|---|---|---|
| Score at 15mins (Regular Administration) | 41 | 40 | 193 | 10.5 | 12 | 28 |
| Score at 24 mins (Extended Time Administration) | 76 | 67 | 230 | 15.4 | 56 | 79 |
| Score at end of Test (25 mins) | 80 | 70 | 234 | 16.1 | 63 | 84 |
| | | | | | | |
| Comprehension | | | | | | |
| 1 min reading rate | | 164 | 183 | | 13 | 19 |
| Score at 20 mins (Regular Administration) | 28 | 52 | 213 | 13.7 | 36 | 55 |
| Score at 32 mins (Extended Time Administration) | 38 | 66 | 221 | 14.7 | 48 | 65 |
| Score at end of test (30 mins) | 38 | 66 | 221 | 14.7 | 48 | 65 |
| | | | | | | |
| Total Score (Regular Administration) | 80 | 92 | 204 | 12.3 | 22 | 42 |
| Total Score (Extended Time Administration) | 38 | 133 | 227 | 15.1 | 51 | 73 |
| Total Score (End of test total time= 55 mins) | 38 | 136 | 231 | 15.8 | 58 | 79 |

| PAI | | | |
|---|---|---|---|
| Scale | T-Score | Scale | T-Score |
| ICN | 61 | BOR | 48 |
| INF | 67 | ANT | 51 |
| NIM | 47 | ALC | 41 |
| PIM | 45 | DRG | 52 |
| SOM | 77 | AGG | 56 |
| ANX | 58 | SUI | 45 |
| ARD | 57 | STR | 48 |
| DEP | 58 | NON | 56 |
| MAN | 65 | RXT | 48 |
| PAR | 52 | DOM | 58 |
| SCZ | 64 | WRM | 30 |

Charles Preston, Ph.D.
PSY 21075

Jodi Pinn, Ph.D.
PSY19171



## Toren Psychological Services
Therapy/Assessment/Advocacy
torenpsychologicalservices.com
**650 833-8834**

**CONFIDENTIAL**
**Psychoeducational Evaluation**

**Name:** Benjamin Kohn
**Date of Birth:** 12/29/93
**Examiner:** Rosalie Toren
**Grade:** 9

**Date of Testing:** 12/1/2010
**Date of Report:** 12/10/10
**Age:** 16-11
**Sex:** Male

### REASON FOR EVALUATION:
Benjamin was tested to determine the difference between his performances on academic tests for times versus untimed tests.

### METHOD OF EVALUATION:
Student Interview
Review of Records
Woodcock Johnson Tests of Achievement

### BACKGROUND INFORMATION:
**Family Background**
Benjamin lives with his parents and younger brother in an English speaking house. His father works as an engineer and his mother was trained as a special education teacher, who made a decision to be "a stay at home mom."

**Health and Medical History and Psychological History**
. Current overall health is reported to be good. His vision and hearing are within normal limits. Benjamin was the product of normal pregnancy and delivery. He was in good health at birth. However, in early childhood he exhibited eczema, allergies, hypotonicity, frequent vomiting after feedings, and frequent ear and sinus infections which resulted with tubes being placed in his ears at 18 months and not removed until he was four and half years of age.

Concerns about his development occurred in preschool. He showed difficulty with attention, following directions, socializing, fine/gross motor development, fears and obsessions and repetitive behaviors and preoccupations. Benjamin was initially diagnosed with ADHD and then Nonverbal Learning Disability, but later the diagnosis was changed to Aspergers's Disorder.

**Educational History**
Benjamin attends Mountain High School as junior. He takes Trig/Math Analysis, Learning Skills, Physics, US History, American Lit Honors and Crossroads P.E. He began receiving special education services since preschool. In addition to resource support, he has received physical therapy and speech and language support. He received support from Michelle Garcia Winner's Center for Social Thinking and he receives private physical therapy to improve muscle strength and coordination.

## BEHAVIORAL OBSERVATIONS AND CLINICAL INTERVIEW:

Benjamin came willingly to testing and was cooperative throughout. He was able to establish a rapport. He applied himself fully to most tasks and results are considered to be a valid representation of his abilities. He presents as a very polite and motivated student. He showed good persistence on all tasks.

Benjamin believes he is auditory learner, which the testing supports. He enjoys playing Magic Gathering a card game, and is interested in hypnosis and psychology. He is interested in majoring in psychology in school and eventually getting an MBA.

## Prior Testing:

## Academic Abilities (Administered by Lori Johnson 12/08)

### Wechsler Individual Achievement Tests

| | |
|---|---|
| Word Reading | 109 |
| Reading Comp | 130 |
| Pseudoword Decoding | 110 |
| Reading Composite | 121 |
| Math Composite | 134 |
| Numeric Operations | 135 |
| Math Reasoning | 122 |
| Writing Composite | 119 |
| Spelling | 113 |
| Writing Samples | 119 |

Benjamin performs in the average to superior range for reading, writing and mathematics.

## Cognitive Abilities (Administered by Angela Tamada 10/06)

### Wechsler Intelligence Test for Children (WISC-IV)

The WISC-IV provides a measure of general intellectual functioning, and four index scores. The four index scores include Verbal Comprehension, The Perceptual Reasoning Index, Working Memory and Processing Speed Index. The VCI is composed of subtests measuring verbal abilities utilizing reasoning, comprehension, and conceptualization. The PRI is composed of subtest measuring perceptual reasoning and organization. The WMI

2

is composed of subtests, which measure attention, concentration, and working memory. The PSI is composed of subtests that measure mental and graphomotor processing.

**Composite Scores Summary**

| Scale | Composite Score | Percentile Rank | 95% Confidence Interval | Qualitative Description |
|---|---|---|---|---|
| Verbal Comprehension (VCI) | 128 | 97 | 122-132 | Superior |
| Perceptual Reasoning (PRI) | 96 | 39 | 91-101 | Average |
| Working Memory (WMI) | 102 | 55 | 97-107 | Average |
| Processing Speed (PSI) | 80 | 9 | 73-91 | Low Average |
| Full Scale (FSIQ) | 105 | 63 | 100-110 | Average |

A significant discrepancy is noted between his Verbal Comprehension and Perceptual Reasoning making his Full Scale IQ an invalid indice to measure his cognitive testing. Benjamin's strengths lies in verbal/ conceptual skills. He is less adept at visual/perceptual skills. His working memory is in the average range and his processing speed is in the low average range. His low score in processing will make it difficult to focus on lectures and to take adequate notes. He will have difficulty copy off boards and overheads. He definitely needs extra time to complete writing assignments or any task requiring paper and pencil skills.

## PROCESSING SKILLS:
### Test of Auditory Processing Skills- Third Edition (Administered by Shady Allen 12/08)

The Test of Auditory Processing Skills is an individually administered assessment of auditory skills necessary for development use, and understanding of language commonly utilized in academic and everyday activities. The test measures phonemic skills, auditory memory and auditory cohesion (reasoning).

| | Scaled Scores | Percentile |
|---|---|---|
| **Word Discrimination** | 10 | 50 |
| **Phonological Segmentation** | 9 | 37 |
| **Phonological Blending** | 7 | 16 |
| **Number Memory Forward** | 7 | 16 |
| **Number Reversed** | 5 | 5 |
| **Word Memory** | 9 | 37 |
| **Sentence Memory** | 5 | 5 |
| **Auditory Comprehension** | 8 | 25 |
| **Auditory Reasoning** | 13 | 84 |
| **Auditory Memory** | 83 | 13 |
| **Phonologic** | 91 | 30 |
| **Cohesion** | 103 | 58 |

3

| Overall | 91 | 30 |
|---|---|---|

Overall, Benjamin performed in the average range. He performed adequately on phonemic awareness and auditory reasoning. However, he shows a definite weakness in auditory memory will impact his ability to retain information from lectures readily.

**Beery-Bukentica Developmental Test of Visual Motor Integration Skills. (VMI) Standard Score 88   Percentile 21 Classification Low Average**

Consist with the Processing Speed test of WISC-III; he performed in low average range for visual motor skills.  It was noted by examiner, he had somewhat awkward grip, had some directionality issues, and had unique system of replicating the designs.

**PRESENT TESTING:**
**WOODCOCK TESTS OF ACHIEVEMENT**

The **Woodcock Johnson Tests of Achievement-III (WJ-3)** is a standardized achievement test that assesses a child's academic functioning in the areas of reading, math, written language and broad knowledge.  The information derived from the WJ-3 is most relevant for determining educational progress and the presence of intra-achievement discrepancies and learning difficulties.

| Subtests | Standard Scores | Percentile | Range | Grade |
|---|---|---|---|---|
| *Subtest Scores* | | | | |
| Passage  Comprehension | 109 | 73 | 104-114 | >18 |
| Reading Fluency | 97 | 42 | 93-100 | 10.3 |
| Calculation | 116 | 86 | 112-120 | >18 |
| Applied Problems | 115 | 84 | 112-118 | >18 |
| Math Fluency | 108 | 70 | 105-110 | 13.9 |
| Writing Fluency | 89 | 23 | 83-94 | 7.0 |
| Writing Samples | 114 | 82 | 107-121 | >18 |

Benjamin showed a significant discrepancy between his timed tests and non-timed tests: Reading Fluency 96 Reading/ Comprehension 109 Math Fluency 108/ Calculation 116. Applied Problems 115. Written Fluency 89/ Writing Samples 114.  In addition, Written Fluency is in the low average range consistent with his processing speed.  He showed the most difficulty with eye hand coordination in constructing his sentences on paper and getting his ideas on paper. He made several elementary errors inconsistent with higher cognitive processing. This verifies that he definitely needs extra time to complete academic tasks (particularly written work) in a timely and efficient manner that is representative of his cognitive level.

**SUMMARY AND CONCLUSIONS:**

Benjamin a cooperative and pleasant young man diagnosed with Asperger's and showing aspects of Executive Functioning Disorder was further testing in fluency with tasks.  The present is testing is consistent with psychomotor processing disorder.  There is a significant discrepancy between his performance on non timed tests and timed tests. Also

4

he has most difficulty with written tasks requiring visual/motor integration and psycho motor speed.

**Recommendations:**
1) Provide 100% extra time to complete written assignments and exams.
2) Provide extra time to copy off boards and overheads.
3) Access to teacher or peer lecture notes

Appropriate seating for attention and concentration
4) Placed in resource support program to help with organization and planning of his studies.
5) Needs help with breakdown of larger homework assignments.

Rosalie E. Toren, Ph.D., ABSNP
State Credentialed School Psychologist
Licensed Clinical Psychologist

The contents of this report have been communicated to me, and I have received a copy of this report.

Parent's Signature                                    Date

The contents of this report have been communicated to me, and I have received a copy of this report.

5



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

## FORM F
## LAW SCHOOL VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Please print or type; must be legible)

**NOTICE TO APPLICANT: This section of this form is to be completed by you.**
The remainder of the form is to be completed by the law school official who can confirm the testing accommodations that you received during law school. Please read, complete and sign below before submitting this form to the law school official for completion of the remainder of this form.

Applicant's Full Name:  Benjamin Sean Kohn

File Number:  0468532

> I give permission to the law school official completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

_____          8/3/2017
Signature of Applicant                              Date

**NOTICE TO LAW SCHOOL OFFICIAL:**

The above-named person is requesting accommodations for the California   Bar Examination or First-Year Law Students' Examination.   Please print or type your responses to the items below that pertain to the applicant's accommodations that he/she received in law school.

I,   Carin N. Crain   , state that my position
        *(Name of Law School Official Completing Form)*

is  Associate Dean for Student Affairs at  The University of Iowa College of Law
     *(Dean/Registrar/Disabilities Program Coordinator)*                *(Name of Law School)*

As such, it is my responsibility to authorize any testing accommodations requested by students with disabilities for the specific purpose of allowing such students to take examinations on an equal basis with other students.

TA-FormF.0417

1

The above named applicant, who ___is___ in attendance at this law school, ___was___
                                    (is/was)                                 (was/was not)
given authorization to receive testing accommodations during the administration of
examinations at this school.

Applicant was accommodated for the following disability or disabilities:

Autism Spectrum Disorder/Asperger's Syndrome

And was granted the following accommodation(s).  List all accommodations granted and
the dates thereof.  If the applicant received different accommodations over time, please
provide the full history:

Fall 2015 semester: double time

Spring 2016 semester: double time

Summer 2016 semester: double time

Fall mid-term 2016: double time and distraction free testing room

Fall 2016 semester: double time and distraction free testing room

Spring 2017 semester: double time and distraction free testing room

I declare under penalty of perjury under the laws of the State of California and/or the
United States that the above information is true and correct.

Executed on __8/1/20,7__ by ___Carin M Crain___
              (Date)                    (Signature)

Address:    University of Iowa College of Law

            280 Boyd Law Building

            Iowa City, IA 52242

Telephone:  319-335-9034         Fax:  319-335-9019

E-Mail:  Carin-Crain@uiowa.edu

**Please send the completed form to the State Bar of California's San Francisco
address listed above, Attn: Office of Admissions, or return to the applicant.**
TA-FormF.0417
                                    2



THE COMMITTEE OF BAR EXAMINERS OF
THE STATE BAR OF CALIFORNIA
OFFICE OF ADMISSIONS

180 HOWARD STREET  •  SAN FRANCISCO, CALIFORNIA  94105-1639  •  (415) 538-2300

**Committee of Bar Examiners**

KAREN M. GOODMAN
*Chair*
*Sacramento*

JEANNE C. VANDERHOFF
*Vice-Chair*
*San Diego*

TRACI C. BELMORE
*Suisun City*

JAMES A. BOLTON, Ph.D.
*Altadena*

ROBERT S. BRODY
*Pasadena*

MICHELLE DOMINGO
*Walnut Creek*

JAMES H. EFTING
*Sunnyvale*

DOLORES HEISINGER
*Belmont*

ERIKA HIRAMATSU
*San Diego*

LARRY KAPLAN
*Los Angeles*

PAUL A. KRAMER, Jr.
*Sacramento*

ALEXANDER C. LAWRENCE, Jr.
*Los Angeles*

SANDHYA RAMADAS
*Los Angeles*

LARRY SHEINGOLD
*Sacramento*

DAVID A. TORRES
*Bakersfield*

PATRICIA M. VILLALOBOS
*Montebello*

LEE H. WALLACH
*Los Angeles*

---

*Staff*

GAYLE E. MURPHY
*Director, Admissions*

AMY C. NUÑEZ
*Assistant Director, Admissions*

GEORGE C. LEAL
*Program Manager,*
*Educational Standards*

LISA JEONG CUMMINS
*Program Manager,*
*Examinations*

GREG S. SHIN
*Program Manager,*
*Operations & Management*

MARK TORRES-GIL
*Program Manager,*
*Moral Character Determinations*

August 7, 2017

Benjamin Sean Kohn
1913 Fordham Way
Mountain View, CA  94040

File No.:  468532

Dear Mr. Kohn:

A preliminary review of your petition and accompanying documentation for testing accommodations during administration of the July 2018 California Bar Examination, which was received August 2, 2017, has been completed. Some clarification regarding the requested testing accommodations and how your disability relates to the specific accommodations must be provided before a decision regarding your request can be made.

Your petition may only be considered based on a Learning Disability with the current information provided. However, reference was made in your narrative to both physical and visual disabilities, including a request for an ergonomic workstation during the examination based on a physical disability. In order to receive consideration of a physical disability, a Form B must be completed by the appropriate specialist and submitted for review. Similarly, for a visual disability to be taken into consideration, a Form H must be completed by the appropriate specialist, and submitted for review.

Please provide the additional information no later than September 7, 2017, although earlier filing would be helpful so that processing of your petition may continue. If you elect not to file any additional documentation, a determination from the information contained in the file will be made and communicated to you in advance of the examination.

Sincerely,

Lynn M. Taylor
Section Chief, Admissions

lt.0807.17

**Addendum Narrative To Petition For ADA Testing Accommodations**
**For July 2018 California Bar Exam**
**Enclosed With Additional Documentation Requested By Your Letter**
**File No. 0468532**

August 28, 2017

Attn: ADA Testing Accommodations
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

To Whom It May Concern:

This letter is a response to your letter to me (attached) dated August 7, 2017, requesting additional information and documentation by September 7, 2017, for processing and consideration of my Petition For ADA Testing Accommodations on the July 2018 California Bar Exam, which your letter indicated receipt of on August 2, 2017.[1]  Please find my narrative addendum below and my supplemental documentation Forms B and H enclosed herewith.

In support of my request for an accommodation of an ergonomic workstation based upon a physical medical condition of Myofascial Pain Syndrome, please see enclosed Form B from my doctor. Please note that he only evaluated me for this accommodation, and that his recommendation is limited in scope because other professionals evaluated me for the other accommodations requested based upon other disabilities.

No accommodations are requested solely based upon my visual disabilities unless prescription reading glasses and eye drops are not allowed in the testing center/room

---

[1] I would like to clarify and note that my primary Form A petition, and the supporting Forms C and F, narrative, and other documentation including psychoeducational reports, letters confirming approval for testing accommodations on prior standardized tests, my high school IEP, etc. were shipped to you in a package on August 3, 2017, with delivery confirmation tracking indicating delivery to you on August 4, 2017. Therefore, I am confused as to how you received my application on August 2, 2017, and ask that you please verify receipt thereof as I have not duplicated those filings herein.

1

**Addendum Narrative To Petition For ADA Testing Accommodations
For July 2018 California Bar Exam
Enclosed With Additional Documentation Requested By Your Letter
File No. 0468532**

except as an accommodation. Nonetheless, I have submitted Form H from the appropriate specialist herewith in further support of my request for accommodation of extra time and to type written responses, which are also justified by my disabilities provided in Form C, but which my visual condition adds an aggravating factor and additional basis that was not evaluated or considered by the specialists who completed Form C. This is because, even using glasses, my irregular astigmatism from keratoconus decreases my visual endurance and acuity for the lengths on incessant reading, which may further impair my cognitive processing speed and increase the amount of extra time I need.

Even prior to, and without considering, my visual disability, the professionals completing my Form C recommended 100% extra time on tests in their 2014 report, on which they relied in completing Form C. When completing Form C, they recommended 50% extra time based on the approval for the LSAT of 50% and not 100% extra time, however as their independent from LSAC recommendation on the most recent testing report (enclosed with Form C) was 100% extra time, the amount I am and was approved for in college and law school exams, I would like to clarify that I believe 100% extra time is needed to provide me adequate access to the Bar Exam in light of the totality of my disabilities, especially as it is much longer than the LSAT.

Moreover, the specialist professional evaluating my visual condition has determined and recommended extra time of 100%, as opposed to 50%, based on my disability of keratoconus, which was diagnosed July 2017 and not a factor in my SAT, LSAT, or GMAT standardized testing.

**Addendum Narrative To Petition For ADA Testing Accommodations**
**For July 2018 California Bar Exam**
**Enclosed With Additional Documentation Requested By Your Letter**
**File No. 0468532**

I hope this letter and the attached forms B and H will complete the documentation

necessary to submit my petition for review and a decision.  Please let me know if further

information is required.

Dated This 28th Day of August, 2017.

Respectfully Submitted,

*/s/ Benjamin Sean Kohn*
Benjamin Kohn
460 Samoa Drive,
Iowa City, IA 52246
(650) 919-3584
Benjamin.s.Kohn@gmail.com

3



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

# FORM B
## TESTING ACCOMMODATIONS – PHYSICAL DISABILITIES VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

**NOTICE TO APPLICANT: This section of this form is to be completed by you.**
The remainder of the form is to be completed by the qualified professional who is recommending testing accommodations for the California Bar Examination or First-Year Law Students' Examination for you on the basis of a physical disability. Please read, complete, and sign below before submitting this form to the qualified professional for completion of the remainder of this form.

Applicant's Full Name: _____

File Number: _____

> I give permission to the qualified professional completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

_____            _____
Signature of Applicant                                          Date

**NOTICE TO QUALIFIED PROFESSIONAL:**

The above-named person is requesting accommodations for the California Bar Examination or First-Year Law Students' Examination. All such requests must be supported by appropriate documentation (including evaluation reports, test results and/or medical records) from the qualified professional who conducted an individualized assessment of the applicant and is recommending accommodations for the examination on the basis of a physical disability. The Committee of Bar Examiners also requires the qualified professional to complete this form. **If any of the information requested in this form is fully addressed in the documentation submitted (evaluation reports, test results, medical records, etc.), you may respond by citing the <u>specific page and paragraph</u> where the answer can be found.** Please attach a copy of the evaluation report and/or all records and test results on which you relied in making the diagnosis and recommending accommodations for the examination administered by the

TA-FormB.0417

1

Committee of Bar Examiners. Your assistance is appreciated.

The provision of reasonable accommodations is based on assessment of the *current* impact of the disability on the specific testing activity. The Committee of Bar Examiners generally requires documentation from an evaluation conducted within the past year because of the changing manifestations of many physical disabilities. Older evaluation reports may suffice if supplemented by an update of the diagnosis, current level of functioning, and a rationale for each recommended accommodation or an explanation of why the report and/or other documentation continue to be relevant in their entirety.

The Committee of Bar Examiners may forward this information to one or more qualified professionals for an independent review of the applicant's request. Print or type your responses to the items below. **Return the original of this completed form, the evaluation report, test results, and/or other relevant records to the applicant for submission to the Committee of Bar Examiners.**

## I. EVALUATOR/TREATING PROFESSIONAL INFORMATION

Name of professional completing this form: *Graham Dresden, MD*

Address: *701 E. El Camino Real, Mountain View, CA 94040*

Telephone: *650-404-8370*       Fax: *650-404-8470*

E-Mail:

Occupation, title, and specialty: *Physician, MD, Family Medicine*

License Number/Certification/State: *A105743, California*

Describe your qualifications and experience to diagnose and/or verify the applicant's condition or impairment and to recommend accommodations.

*I am a specialist in Family Medicine and have 10+ years' experience in treating patients similar to Mr. Kohn.*

## II. DIAGNOSIS AND RESULTING FUNCTIONAL LIMITATIONS

1. What is the specific diagnosis (including diagnosis code) for which the applicant requests testing accommodations?

   *Myofascial Pain Syndrome*

   *M 79.1*

2. Describe the nature of the physical disability. Include a history of presenting

TA-FormB.0417

2

symptoms, date of onset, and description of the duration and severity of the disability.

*He has pain and stiffness in the musculoskeletal system, including neck, lumbar spine + shoulders. This has been going on for several years and it is severe enough to require extensive therapy*

3. When did you first meet with the applicant? _____ *2010*

4. When was the applicant's physical disability first diagnosed? _____ *2012*

5. Did you make the initial diagnosis?  ☐ YES  ☐ NO

   If no, provide the name of the professional who made the initial diagnosis and when it was made, if known.  Attach copies of any prior evaluation reports, test results, or other records related to the initial diagnosis that you reviewed.

   _____
   _____
   _____

6. Provide the date of your last complete evaluation of the applicant: *6/23/2017*

7. Is this a permanent condition/impairment?  ☒ YES  ☐ NO

   If no, when is it likely to abate?

   _____
   _____

8. Does the severity of the condition/impairment fluctuate?  ☐ YES  ☒ NO

   If yes, describe the settings and/or circumstances affecting severity that are relevant to taking the California Bar Examination of First-Year Law Students' Examination.

   _____
   _____
   _____

9. Describe the applicant's current functional limitations and explain how the limitations restrict the condition, manner, or duration under which the applicant can take the California Bar Examination or First-Year Law Students' Examination.

   _____
   _____
   _____
   _____
   _____

TA-FormB.0417

3

10. Briefly describe any treatment, including any prescribed medications, and the effectiveness of treatment in reducing or ameliorating the applicant's functional limitations.

*He is getting exkirsive therapy, including physical therapy, chiropractic care and home exercise regmen. No medications used. This therapy helps previously.*

## III. ACCOMMODATIONS REQUESTED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

### FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination is administered in a quiet environment, and applicants are allowed to use small foam earplugs. They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Other: _____

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice answer sheet (Scantron sheet) (choose one)

☐ Permission to circle answers in question booklet

☐ Permission to dictate answers to proctor

☐ Dictate to a voice recorder (choose one)

☐ Digital voice recorder (for use with flash memory cards)

☐ Tape recorder (for use with microcassette tapes)

☐ Other: _____

**Equipment or Facility Requirements**

☐ Computer *as an accommodation* (must have direct nexus to the effects of the disability)

☐ with SofTest installed

☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

☐ with screen-reading software (e.g., JAWS) installed

☐ with other (specify): _____

☐ Special equipment (specify): _____

☐ Private room

☐ Semi-private room

☐ Wheelchair accessibility (if table, specify height): _____

☒ Other:  *Ergonomic workstation*

Please provide a rationale for each request indicated above (attach additional sheets if necessary):

① *He has a longstanding diagnosis of myofascial pain syndrome for which he undergoes regular treatment.*

② *In addition, he needs additional accommodation for Asperger's as recommended by the neuropsychological assessment group.*

## Accommodation of Extra Time

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time.  It is important to keep in mind that breaks are included in the timed portion of the examination.  No accommodation of unlimited time will be granted.  If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination:  Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

_____
_____
_____
_____

**California Bar Examination: Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

_____
_____
_____

**California Bar Examination: Multistate Bar Examination - MBE (each standard session is 3 hours):** Specify the amount of extra test time needed <u>for each MBE session</u> and provide the rationale:

_____
_____
_____

**First-Year Law Students' Examination: Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

_____
_____
_____

**First-Year Law Students' Examination: Multiple-Choice (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

_____
_____
_____

<u>**Explanations:**</u> (attach additional sheets if necessary)

_____
_____
_____
_____
_____

## IV. CONFIDENTIALITY

Confidentiality policies of the Committee of Bar Examiners/Office of Admissions of the State Bar of California will be followed regarding its responsibility to maintain confidentiality of this form and any documents submitted with it. No part of the form or the accompanying medical documentation will be released without the applicant's written consent or under the compulsion of legal process.

TA-FormB.0417

## V. PROFESSIONAL'S SIGNATURE

I am submitting the **original** of this form and have attached  copies of all evaluation reports, test results, medical records, and/or other documents that I relied upon in making this diagnosis of the applicant's condition/disability and completing this form.  I understand that all original documents submitted become the property of the Committee of Bar Examiners.

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct.


_____          8/28/2017
(Signature of Licensed Professional)               (Date)


The Committee of Bar Examiners reserves the right to make final judgment concerning testing accommodations and may have all documentation related to this matter reviewed by an individual professional consultant or a panel of professional consultants if deemed necessary.

TA-FormB.0417                        8



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

## FORM H
## TESTING ACCOMMODATIONS – VISUAL DISABILITY
## VERIFICATION
All original documents must be filed with the Office of Admissions' San Francisco Office.
(Please type or print; must be legible)

**NOTICE TO APPLICANT**: **This section of this form is to be completed by you**.
The remainder of the form is to be completed by the qualified professional who is
recommending testing accommodations for the California Bar Examination or First-Year
Law Students' Examination for you on the basis of a visual disability.  Please read,
complete, and sign below before submitting this form to the qualified professional for
completion of the remainder of this form.

Applicant's Full Name: Benjamin Sean Kohn

File Number: 0468532

> I give permission to the qualified professional completing this form to
> release the information requested on the form, and I request the release
> of any additional information regarding my disability or accommodations
> previously granted that may be requested by the Committee of Bar
> Examiners or consultant(s) of the Committee of Bar Examiners.

/s/ Benjamin Kohn                                          8/11/2017
Signature of Applicant                                     Date

## NOTICE TO QUALIFIED PROFESSIONAL:

The above-named person is requesting accommodations for the California Bar
Examination or First-Year Law Students' Examination.  All such requests must be
supported by a comprehensive diagnostic evaluation by the qualified professional who
conducted an individualized assessment of the applicant and is recommending
accommodations for an examination administered by the Committee of Bar Examiners
on the basis of a visual disability.  The Committee of Bar Examiners also requires the
qualified professional to complete all questions on this form that pertain to the
applicant's visual impairment.  Reference specific tests or other objective data and
clinical observations, and **attach copies of test results**, if relevant.  Please also
attach a copy of any evaluation report and/or other records on which you relied in
making the diagnosis and recommending accommodations.  Your assistance is
appreciated.

TA-FormH.0417

1

The Committee of Bar Examiners may forward this information to one or more qualified professionals for an independent review of the applicant's request.  Print or type your responses to the items below.  **Return the original of this completed form, the comprehensive evaluation report, and relevant records to the applicant for submission to the Committee of Bar Examiners.**

## I. EVALUATOR/TREATING PROFESSIONAL INFORMATION

Name of professional completing this form: _Daniel Goodman, MD_

Address: _224 Bush St 2nd Floor SF CA 94115_

Telephone: _415 474 3383_     Fax: _415 474 3439_

E-Mail: _front desk @ goodman eye center . com_

Occupation, title, and specialty: _ophthalmology_

License Number/Certification/State: _G53124 / CA_

Describe your qualifications and experience to diagnose and/or verify the applicant's condition or impairment and to recommend accommodations

_patient's ophthalmologist_

## II. DIAGNOSIS

1. What is the applicant's current diagnosis?  Include a statement as to whether the condition is stable or progressive.

   _Keratoconus   stable_

2. Please state the applicant's best corrected visual acuities for distance and near vision.

   _20/30  OD   20/25 +2 OS_

3. When was the applicant's visual disability first diagnosed?  _7/7/17_

4. Did you make the initial diagnosis?    ☐ YES    ☒ NO

5. Provide the date of your last complete evaluation of the applicant: _8/4/17_

TA-FormH.0417

2

6. Is this a permanent condition/impairment?    ☒ YES    ☐ NO

   If no, when is it likely to abate?

_____

_____

7. Does the severity of the condition/impairment fluctuate?    ☐ YES    ☒ NO

   If yes, describe the settings and/or circumstances affecting severity that are relevant to taking the California Bar Examination or First-Year Law Students' Examination.

_____

_____

_____

## III. DIAGNOSIS-SPECIFIC FINDINGS; ONLY ADDRESS RELEVANT AREAS

1. Please describe the applicant's eye health (both external and internal evaluations).

   _Corneal irregularity causing fluctuating vision, glare, distortion at distance and near vision_

2. Visual Field:  threshold field, not confrontation (provide measurements and copies of reports)

   _only confrontation visual fields performed — normal findings_

3. Binocular Evaluation:  eye deviation (provide measurements), diplopia, suppression, depth perception, convergence, etc. Specify whether difficulty with distance, near point, or both.

   _Not eval_

4. Accommodative Skills:  at near point, with and without lenses (provide measurements)

   _Not eval_

5. Oculomotor Skills:  saccades, pursuits, tracking

   _Not eval_

TA-FormH.0417

3

## IV. FUNCTIONAL LIMITATIONS

1. Describe the functional impact, if any, of the applicant's visual condition on the applicant's reading ability.

   _blur when reading due to distortion of cornea_
   _fatigue after long periods of reading due to distortion_

2. Describe the applicant's current functional limitations and explain how the limitations restrict the condition, manner, or duration under which the applicant can take the California Bar Examination or First-Year Law Students' Examination.

   _Pt will experience eye/visual fatigue after long periods_
   _of reading (72 hours)_

3. Briefly describe any treatment, including any prescribed medications, and the effectiveness of treatment in reducing or ameliorating the applicant's functional limitations.

   _No treatment other than glasses — with limited visual_
   _improvement_

## V. ACCOMMODATIONS REQUESTED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

### FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

TA-FormH.0417

4

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m.  The examination is scheduled twice each year.  There is a lunch break from 12:00 noon to 1:30 p.m.  The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions.  The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing.   Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers.  The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination.  Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations.  All applicants may bring prescription medication.  The examination is administered in a quiet environment, and applicants are allowed to use small foam earplugs.  They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

### Alternative Formats

☐ Braille version of the examination

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Large print / 18-point font

☐ Large print / 24-point font

TA-FormH.0417

5

**Personal Assistance**

☐ Reader

☐ Dictate to a typist/transcriber (for written sessions)

☐ Dictate answers to proctor/scribe (Scantron answer sheet - multiple-choice sessions)

**Equipment or Facility Requirements**

☒ Computer *as an accommodation* (must have direct nexus to the effects of the disability)

☐ with SofTest installed

☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

☐ with screen-reading software (e.g., JAWS) installed

☐ with other (specify): _____

☐ Special equipment (specify): _____

☐ Private room

☐ Semi-private room

**Other**

☐ Other arrangements (e.g., elevated table, limited testing time per day, lamp, etc.). Describe the recommended arrangements and explain why each is necessary.

_____
_____
_____
_____

**Extra Time**

☒ Extra testing time

Specify the amount of **extra time** recommended for each session of the examination.

TA-FormH.0417

6

Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for recommending the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time recommended. If either the amount of time or your rationale is different for different portions of the examination, please explain. If relevant, address why extra breaks or longer breaks are insufficient to accommodate the applicant's functional limitations. **All recommendations for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the form will be returned as incomplete.**

**California Bar Examination:  Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

_Additional 3 hours_

**California Bar Examination:  Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):** Specify the amount of extra test time needed <u>for this session</u> and  provide the rationale:

_Additional 3 hours 30 min_

**California Bar Examination:  Multistate Bar Examination - MBE (each standard session is 3 hours):** Specify the amount of extra test time needed <u>for each MBE session</u> and  provide the rationale:

_Additional 3 hours_

**First-Year Law Students' Examination:  Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

_Additional 4 hours_

**First-Year Law Students' Examination:  Multiple-Choice (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

_Additional 3 hours_

TA-FormH.0417

**Explanations:** (attach additional sheets if necessary)

Patient has visual blur / distortion due to keratoconus per attached corneal topography. He has visual fatigue after extended near work due to this distortion.

## VI. CONFIDENTIALITY

Confidentiality policies of the Committee of Bar Examiners/Office of Admissions of the State Bar of California will be followed regarding its responsibility to maintain confidentiality of this form and any documents submitted with it.  No part of the form or the accompanying medical documentation will be released without the applicant's written consent or under the compulsion of legal process.

## VII. PROFESSIONAL'S SIGNATURE

I am submitting the **original** of this form and have attached  copies of all evaluation reports, test results, medical records, and/or other documents that I relied upon in making this diagnosis of the applicant's condition/disability and completing this form.  I understand that all original documents submitted become the property of the Committee of Bar Examiners.

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct.

_____          8/14/17
(Signature of Licensed Professional)                      (Date)

The Committee of Bar Examiners reserves the right to make final judgment concerning testing accommodations and may have all documentation related to this matter reviewed by an individual professional consultant or a panel of professional consultants if deemed necessary.

TA-FormH.0417

8

| Kohn,Benjamin | | |
|---|---|---|
| ID#: 12/29/1993 | | OD |

| Date: 7/17/2017 10:51:01 AM | Exam 3 |
|---|---|

| Ks: 44.61 @ 156°  Kt: 42.81 @ 66° | | AveK: 43.71 |
| MinK: 42.78 @ 75°  Es: 0.67 / Em:-0.58 | | Cyl: 1.80 |
| SRI: 0.41 | PVA: 20/20-20/25 | SAI: 1.40 |

| Kohn,Benjamin | | |
|---|---|---|
| ID#: 12/29/1993 | | OS |

| Date: 7/17/2017 10:51:04 AM | Exam 4 |
|---|---|

| Ks: 43.89 @ 69°  Kt: 43.61 @ 159° | | AveK: 43.75 |
| MinK: 43.51 @ 138°  Es: 0.12 / Em: 0.39 | | Cyl: 0.28 |
| SRI: 0.31 | PVA: 20/20-20/25 | SAI: 0.86 |



Standard



Absolute                                    Diopters

9.0  14.0  19.0  24.0  29.0  35.5  37.0  38.5  40.0  41.5  43.0  44.5  46.0  47.5  49.0  50.5  56.5  61.5  66.5  71.5  76.5  81.5  86.5  91.5  96.5 101.5



Version 4.2D



THE COMMITTEE OF BAR EXAMINERS OF
THE STATE BAR OF CALIFORNIA

OFFICE OF ADMISSIONS

180 HOWARD STREET · SAN FRANCISCO, CALIFORNIA 94105-1639 · (415) 538-2300

*Committee of Bar Examiners*

ERIKA HIRAMATSU
*Chair*
*San Diego*

DAVID A. TORRES
*Vice-Chair*
*Bakersfield*

LEO AGATEP, M.D., FACP
*Los Angeles*

JAMES A. BOLTON, Ph.D.
*Altadena*

ROBERT S. BRODY
*Pasadena*

ALEX H. CHAN
*Redwood City*

JAMES H. FETTIG
*Sunnyvale*

KAREN M. GOODMAN
*Sacramento*

DOLORES HEISINGER
*Belmont*

LARRY KAPLAN
*Los Angeles*

PAUL A. KRAMER, Jr.
*Sacramento*

LEXANDER C. LAWRENCE, Jr.
*Los Angeles*

ESTHER P. LIN
*Costa Mesa*

BETHANY J. PEAK
*Bakersfield*

LARRY SHEINGOLD
*Sacramento*

ATRICIA M. VILLALOBOS
*Montebello*

LEE H. WALLACH
*Los Angeles*

Staff

GAYLE B. MURPHY
*Director III, Admissions*

AMY C. NUÑEZ
*Director I, Admissions*

GEORGE C. LEAL
*Program Manager II,*
*Educational Standards*

LISA JEONG CUMMINS
*Program Manager III,*
*Examinations*

GREG S. SHIN
*Program Manager III,*
*Operations & Management*

MARK TORRES-GIL
*Program Manager III,*
*Moral Character Determinations*

November 1, 2017

Benjamin Sean Kohn
1913 Fordham Way
Mountain View, CA 94040

File No.: 468532

Dear Mr. Kohn:

Review of your petition for testing accommodations during administration of the California Bar Examination has been completed. During administration of the July 2018 California Bar Examination, the Committee of Bar Examiners (Committee) will provide the following accommodations:

- A total of 5 hours for the first session of the written portion of the examination;

- A total of 5 hours and 45 minutes for the second session of the written portion of the examination;

- A total of 5 hours for each Multistate Bar Examination (MBE) session of the examination;

- Administration of the examination over a 4-day period;

- Testing in a semi-private room;

- Permission to use your own laptop computer and a backup computer, both with SofTest installed, which confirm with the Committee's policies, as an accommodation; and

- Permission to bring your own adjustable ergonomic chair and other ergonomic items, subject to inspection by staff, into the examination room for each session of the examination, including the MBE.

Following the filing of an application to take the examination and payment of the appropriate fees, a letter confirming the test center to which you have been assigned, along with further examination instructions, will be forwarded to you shortly thereafter. When completing the examination application online, you should mark the box indicating that you want the same accommodations as previously granted and choose a testing accommodation test center in the area you prefer. You must file an examination application no later than the final examination filing deadline and meet all eligibility requirements in order to receive these accommodations for any future examination you decide to take.

Benjamin Sean Kohn
November 1, 2017
Page 2

Additional information regarding administration of the July 2018 examination, including the final deadline date, will be posted on the General Information page of the Admissions portion of the State Bar's website at: http://admissions.calbar.ca.gov at a later date.

Your requests, however, for additional extra time for each session of the examination and testing in a private room have been denied, as the documentation provided by you and your specialists does not adequately support those requests. The extra time and the other accommodations granted should be sufficient to address the effects of your disability. Seating at the testing accommodations test centers is limited because of the logistics associated with the test center and sometimes private rooms are assigned as a matter of course. If such happens to be assigned to you, it is not a guarantee that you will have the same sort of assignment for a future examination. Accommodations are not provided as a matter of preference or convenience.

As part of the review process, your petition was referred to three expert consultants retained by the Committee. Excerpts from one consultant's report follow:

> . . . the applicant acknowledges that he has been diagnosed with autism/ASD, and Drs. Pinn and Preston both speak of this. This is a psychiatric condition, possibly a psychiatric disability, but, such is not claimed by the applicant, nor so asserted by any expert.

>                 *        *        *

> The applicant's history of aid began in grade school, exactly when a bit unclear, he offered additional testing time, just how much, this too is unclear. In college he'd been offered time and one half. He'd had this same support for the SAT, the LSAT, and later, the MPRE. In law school he's been allowed double time, in his own room . . . .

>                 *        *        *

> The applicant offers . . . how he's long struggled in school, and for a long time he's been offered help, more time always, sometimes, more than this, and with this help, he's been able to do well. He is slow, in part for being in pain, . . . and his focus is poor. . . .

> Double time is sought, just as has been allowed in law school, but, time and one half might be considered, just as has been allowed for standardized tests.

> . . . some of those standardized tests are presented, like, the LSAT. The applicant did quite well with but time and one half. . . .

> The room sought is to limit distractions. . . .

> The LD experts basically offer that slow processing defines this condition, and this, with autism, is why the applicant needs the help that he is seeking to have.

November 1, 2017
Page 3

They offer a bit of history in their report (and the LD form, but not a PD/MD form), with their focus clearly placed on their testing, as to confirm the form). applicant's good verbal skills, his slowness, and his need for more time. His focus is also poor.

. . . They offer enough as to allow one to find ASD present, and this comes with a number of different weaknesses, like, the slowness found, the poor focus found, even the motor issues. . . .

So this is really a PD/MD claim, with the information offered enough as to establish this, even as the wrong form has been submitted.

*    *    *

The ASD well explains the found weaknesses.

*    *    *

Disability is accepted, just not quite for the reasons that have been advanced, and aid will be supported, just not quite all that has been sought.

With slowness a central issue, more time will be supported.

How much more time, as the applicant has indicated that time and one half is reasonable, this is all that I [the Committee's consultant] can support.

. . . the applicant . . . has two experts who assert that time and one half will do (Drs. Pinn and Preston), and another, who speaks of double time, as had Dr. Preston in his 2014 report. Double might indeed be best, but, one gains the aid that one needs, that is sufficient to meet one's needs, not all that might be best and/or preferred.

And the private room – no.

I would ask the applicant to think of his success in classrooms, and, pre law school, he tested with some others, so while he'd prefer to be alone, as he has been for some time, he can surely manage being around some peers.

. . . I will support a grant of a semi-private room. He'll not be alone, but potential distractions will surely have been greatly reduced.

The Committee's second consultant commented:

. . . While Mr. Kohn has been granted 100% additional time in educational settings, he has been granted 50% additional time on standardized tests. With

Benjamin Sean Kohn
November 1, 2017
Page 4

advancement. His 88th percentile performance on the LSAT suggests that 50% additional time was adequate for him to access the LSAT. Likewise, Mr. Kohn's performance on the Nelson Denny Reading Test in his 2014 evaluation with Dr. Preston was at the 36th percentile without accommodations. This performance is in the average range. Thus, there is solid evidence to suggest that Mr. Kohn can access timed standardized tests with 50% additional time.

\*    \*    \*

Mr. Kohn's Other Specified Neurodevelopmental Disorder was made by Dr. Preston in 2014 and is based upon "impaired processing speed and attention". While Mr. Kohn did indeed perform below average on several tests of processing speed and attention, it is not clear how these deficits are distinct from his better characterized ASD diagnosis. In fact, most individuals with ASD have impaired processing speed and attention. . . .

. . . The milder nature of Mr. Kohn's ASD, his history of accessing all previous standardized tests with 50% additional time and with results that permitted advancement as well as his average performance on the 2014 Nelson Denny Reading Test all suggest that 50% additional time is sufficient. This history of performance also suggests that a private testing location is not necessary in order for Mr. Kohn to access the California Bar Examination. A semi-private testing location with other candidates with similar accommodations would be a more reasonable accommodation in light of his disability and history.

The Committee's third consultant commented:

. . . The applicant . . reports a diagnosis of keratoconus which decreases his visual endurance acuity that he feels may impair cognitive processing speed and thus increasing the amount of extra time he requires.

\*    \*    \*

. . . I [the Committee's third consultant] have received a visual disability verification form from the applicant's ophthalmologist Dr. Daniel Grodman practicing in San Francisco California. Dr. Grodmans report is from a August 4, 2017 visit. The applicant's best corrected visual acuity in the right eye was 20/30 and left eye 20/25. A diagnosis of keratoconus was made based on corneal topography and Dr. Grodman acknowledged as a result of this diagnosis the applicant would experience fatigue after long periods of reading and distortion of his vision.

. . . Unfortunately no chart notes were included with Dr. Grodman's report however he essentially suggests that the rest of the ophthalmologic examination was unremarkable. . . . It does appear that this applicant has a mild . . .

Benjamin Sean Kohn
November 1, 2017
Page 5

keratoconus based on his reported visual acuity. This condition however can cause eye fatigue and I feel that granting him some testing accommodations would be reasonable because this condition might slow his reading skills. Allowing him an additional one half hour of testing time for each three hour session should give him enough time to recover from eye fatigue and slowed reading skills related to his condition of mild keratoconus which appears to be reasonably corrected with appropriate glasses. . . .

If you wish to request a review of this determination by the Committee, the appeal must be in writing, addressed to the Committee and directed to the attention of the Senior Director, Admissions, and received in the Office of Admissions in San Francisco within ten (10) days of he date of this letter. The appeal must specify the reason you do not agree with this determination and include any supporting documentation or evidence you wish the Committee to consider. All appeals filed with the Committee must be made under penalty of perjury.

Once your appeal has been received in complete form, the appeal will be considered first by staff to determine whether reconsideration of the decision is in order. If not, the Committee would consider the appeal in closed session during its next regularly scheduled meeting. The Committee's determination would be communicated to you as soon as practicable following the meeting.

If you would like further assistance, please feel free to contact the office at the above address.

Sincerely,

Lisa Jeong Cummins
Director, Examinations

mm.1101.17

# EXHIBIT 2

## NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS
## MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532

Committee of Bar Examiners
Attention: Senior Director of Admissions
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

November 10, 2017

      I received your letter dated November 1, 2017, and sent to me on that date by regular U.S. mail, providing the formal written decision of partial grant and partial denial of my Petition For ADA Testing Accommodations on the July 2018 California Bar Exam, yesterday evening, November 9, 2017.

      This responsive letter, promptly turned around overnight and to be mailed using an expedited delivery method intended for your receipt on the next business day from the first possible mailing date, is for the purpose of:
(1) Providing a timely notice of appeal of the partial denial of my petition;
(2) Respectfully requesting that the submission deadline, of 10 days from the date your office mailed the letter I received 8 days later, for the <u>receipt</u> (by mail) of the [written and properly addressed] appeal statement (to include <u>all</u> claims and arguments I do not waive any right to be considered or relied on in the outcome for), and <u>all</u> further affidavits and evaluations or other evidence (that I must seek from third party professionals) to be included in consideration of the appeal, be:

      (a) <u>Tolled</u> to the date of your receipt of this letter filing the appeal, in the event that this letter arrives after the expiration of the 10 days period from November 1, 2017, as that period is already defined and extended to no earlier than November 13, 2017, by Cal. Code Civ. Proc. § 12 and all other applicable statutes and rules of procedure; on the basis that (i) good cause is shown by the fact that this notice of appeal was filed as promptly after my receipt of the decision under appeal as was cognizably possible in the circumstances, by expedience and expense on my part that vastly exceeded <u>reasonable</u> promptness for the nature of the documentation and manner of presentation requested for proper submission of appeal; and (ii) strict enforcement of that time period would, in the circumstances, deprive me of my right of appeal without me ever having been given a meaningful opportunity to exercise it, and without having received sufficiently timely notice to maintain my right of appeal, in violation of my rights to due process and effective notice under the law.

      (b) <u>Extended</u> upon and through grant of leave to submit any further evidence or documentation from medical experts and professionals in support of my appeal I may seek and elect to submit upon a meaningful period of time to seek and obtain

1

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE**
**FILE NO. 468532**

such from the applicable professional experts; and leave to submit further narrative statements regarding my basis for appealing the partial denial of accommodations after a meaningful period of time to review your letter in more depth, seek the advice or representation of legal counsel in preparing my full appeal, consult with the medical evaluators and professionals regarding your findings, and otherwise adequately prepare my full appeal. I respectfully request a period of at least 14 days from my receipt of notice of your grant of such leave, at least 30 days from the date of your letter granting such leave, and at least 40 days from the date of this letter, for the new deadline for your receipt of my complete appeal statement and evidence, whichever of those is latest. This extension request is submitted on the basis that: (i) good cause is shown by the fact that the overnight and less than one day period of time provided before any extension from receipt of your letter to the last opportunity to mail where any mailing method might reach your office by the current deadline, to seek assistance and documentation from professionals and to meaningfully prepare an appeal, was affirmatively prohibitive, whereas the time periods I am requesting are reasonable for turning around the materials requested in the manner requested, and importantly would still leave your office ample time to review and resolve my appeal to a conclusion prior to the timely filing deadline for a petition to take the July 2018 California Bar Exam; and (ii) I posit that the time period provided to submit a fully briefed and expert-affidavit-substantiated appeal in the manner and form indicated as required by your letter is legally inadequate and, if enforced, in violation of my statutory rights under the A.D.A. and my procedural and substantive due process and equal protection rights under the California and United States constitutions;

(3) Offer the following initial statement regarding my reasons and basis for appealing the partial denial of my Petition For ADA Testing Accommodations, for the event my motion to extend and for leave presented in (2) is denied:

1. I <u>do not</u> appeal the reduction of my request for the provision of an ergonomic workstation while testing to a grant of permission to bring my own ergonomic workstation components to the testing center.
2. I <u>do not</u> appeal the reduction of my request for a private testing room to a grant of a semi-private testing room.
3. The accommodation of a computer was granted in full, and therefore is <u>not</u> under appeal.
4. I <u>do appeal</u> the denial of double (100% extra) time in favor of a lesser amount of extra time generally for all sections, or in the alternative for individual sections, and state the following in explanation thereof:

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA
TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM
PLUS
MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE
FILE NO. 468532**
<u>Issues Presented:</u>

I.  Some of the factual recitals attributed to my petition and accompanying forms and documentation, and relied upon by your expert consultants, are in error, and should be corrected, upon which point the conclusions drawn from the incorrect premises should be reconsidered.

   A.  Nowhere in the Petition does Applicant state that he considers 50% extra time to be adequate or reasonable. To the contrary, Applicant affirmatively stated that 50% extra time would be inadequate. Any finding that 100% extra time is waived by an alleged admission that less time would be adequate is not supported by the documents submitted.

   In your decision letter at p. 3, the expert consultant provided:

   "How much more time, <u>as the applicant has indicated that time and one half is reasonable, this is all that I [the Committee's consultant] can support.</u>" (emphasis added).  And further:
      "… the applicant … has two experts who assert that time and one half will do (Drs. Pinn and Preston), and another, who speaks of double time, as had Dr. Preston in his 2014 report. Double time might indeed be best, but, one gains the aid that one needs, that is sufficient to meet one's needs, not all that might be best and/or preferred."

   To the contrary, nowhere in the Petition does Applicant indicate an opinion or position that 50% extra time is reasonable, adequate, or sufficient. Applicant's sole request for 50% extra time was qualified "in the alternative" so as to indicate a preference of partial grant to full denial, but in no way did he waive seeking 100% in the petition or appeal based on his explicitly provided position that 100% is necessary to meaningfully access the bar exam. In applicant's addendum dated August 28, 2017, Applicant asserted at p. 2:
   "Even prior to, and without considering, my visual disability, the professionals completing my Form C recommended 100% extra time on tests in their 2014 report, on which they relied in completing Form C. When completing Form C, they recommended 50% extra time <u>based on the approval for the LSAT</u> of 50% and not 100% extra time, however as their <u>independent from LSAC recommendation on the most recent testing report (enclosed with Form C) was 100% extra time</u>, the amount I am and was approved for in college and law school exams, <u>I would like to clarify that I believe 100% extra time is needed to provide me adequate access to the bar exam in light of the totality of my disabilities</u>, especially as it is much longer than the LSAT."

3

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532**

(Emphasis Added).

As cited above, the consultant explicitly notes that the perceived admission from Applicant is dispositive for their decision to only establish a pre-visual baseline of 50% extra time; that otherwise the weight of the evidence in the test reports provided, disabilities established, etc. would be for 100% extra time as sought herein. However, as it was and is Applicant's position that 50% extra time is not reasonable or adequate for the bar exam, for the reasons provided in the petition and as consistent with the petition, and as elaborated on further below, Applicant respectfully requests that the decision to deny 100% extra time be overturned and at least that amount of time be granted.

As further explained in the above excerpt, Applicant's learning disability experts Drs. Pinn and Preston explicitly qualified their Form C recommendation as relying on the amount approved for the LSAT and not their own evaluation. (See Form C, p. 9). No new testing or evaluation was done since that in 2014, upon which both Drs. Pinn and Preston (not just Dr. Preston as inaccurately described by the consultant) drafted a thorough report recommending 100% extra time. (See 2014 Report at p. 8). Importantly, this recommendation was based solely on the learning (or psychiatric) disability evaluated, and could reasonably be found to require even more extra time than double time to accommodate the totality of Applicant's multitude of disabilities and medical conditions.

4

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532**

B. The finding that Applicant received 50% extra time in college prior to law school is incorrect; Applicant was granted 100% extra time on exams in college.

In your decision letter at p. 2, your expert consultant provided:

"The applicant's history of aid began in grade school, exactly when a bit unclear, he offered additional testing time, just how much this too is unclear. <u>In college he'd been offered time and one half.</u> He'd had this same support for the SAT, the LSAT, and later, the MPRE. In law school he's been allowed double time, in his own room…" (emphasis added).

To Applicant's recollection, aid began as early as first grade and no later than third grade. More importantly, as provided and not contradicted anywhere in the petition, <u>in college Applicant was provided double time on exams, not time and one-half.</u> (See Form A, p. 3; see also addendum letter dated August 28, 2017 at p. 2). This factual error belies the conclusion that Applicant has a strong history of success with only 50% extra time.

C. Applicant suffers from visual conditions besides Keratoconus in addition to it, contrary to the finding.

In your decision letter at pp. 4-5, the consultant provides that other than Keratoconus, Applicant's visual condition is "unremarkable," however, while Form H was focused on the most significant diagnoses (keratoconus and irregular astigmatism), Applicant also indicated Dry Eye Syndrome (with keratoconjunctivitis) in his Form A attachment narrative at p. 2, which increases the eye fatigue incrementally, and further contributes to the magnitude of his eye fatigue during long periods of reading. As this was impliedly overlooked by the consultant, Applicant submits it is likely that the additional 30

5

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA
TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM
PLUS
MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE
FILE NO. 468532**

minutes per 3 hour section added to the extra time granted based on autism is too little

to adequately accommodate the effects of Applicant's visual disabilities.  Additional

evidence of Applicant's visual disabilities will be sought and submitted in the event

Applicant is given leave to provide further materials based on an extension of the

deadline.

II. To the extent 50% extra time was adequate and reasonable on the SAT, LSAT, GMAT, and/or
MPRE tests, which Applicant does not concede and only stipulates that was the
accommodation then approved and dispensed on those tests, such a finding would be an
insufficient basis to conclude that same or slightly higher time will allow Applicant to access
the California Bar Exam to the same degree he would have but for the disabilities at issue.

    A. Substantial differences in length, form, and type of test, distinguish the California Bar
Exam from past standardized tests such that the amount of extra time
accommodation necessary for meaningful access is significantly higher on the former
and thus the baseline for time needed before considering subsequently acquired
disabilities and other factors should be substantially higher than time and one-half.

Throughout the excerpts provided from the evaluation of the Committee's expert

consultants, heavy reliance is made upon the fact that, prior to acquiring visual and

certain other medical conditions and impaired largely only by autism, Applicant took

the SAT, LSAT, and GMAT, with 50% extra time, to above average performance, and

despite not yet having a score presently available to measure adequacy by, attempted

the MPRE with only 50% extra time.

To them, this *per se* forecloses any finding that more than this amount of time is

needed to provide sufficient access.

Applicant submits the contrary. The SAT normally is administered over 3 hours, the

6

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532**

LSAT 2 hours and 55 minutes, the GMAT 3 hours and 30 minutes, and the MPRE only 2 hours. For these tests, even adjusting the above for time and one-half, in comparison to a four-day bar exam encompassing most of each day, endurance and fatigue will not compound the effects of the disability, which Applicant believes on an exam as inherently lengthy as the Californian Bar Exam would impair his performance by a vastly greater margin compared to the other tests than for someone who is neurotypical and medically and visually healthy; and Applicant may submit further expert evidence on this point in the event leave and an extension are granted. This alone justifies a significantly higher multiplier for comparable degrees of aid on the bar exam as these other tests, because the longer the test, the greater Applicant's focus would slip compared to someone who is neurotypical, and the more his visual condition will also affect his performance.

   Further compelling cause for a higher extra time multiplier on the bar exam being necessary than even that which is established as proper and adequate for the other tests is the form and type of the tests. The SAT, LSAT, GMAT, and MPRE are all either largely or entirely multiple choice exams, whereas the California Bar Exam requires a substantial amount of essay response answers. The cognitive demands of transmitting the actual extent of Applicant's knowledge and expertise of the law subject matter being tested compared to a neurotypical examinee would be vastly higher on the latter, and for this reason too whatever multiplier is deemed reasonable and adequate to meaningfully

7

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532**

access the SAT, LSAT, GMAT, and MPRE will be vastly lower than that which would be

reasonable and necessary for Applicant to meaningfully access the California Bar Exam.

B. The approval for 50% extra time and the outcomes of the SAT, LSAT, and GMAT does not even definitively show that Applicant had adequate accommodations on those tests to perform as well as he would have but for the disabilities then present at that time, and substantial evidence exists to the contrary.

Applicant's initial application for ADA testing accommodations on the SAT was

made while Applicant was in high school, at which time Applicant and his parents were

unfamiliar about the process and standards at issue, and Applicant did not seek further

professional testing or compile the body of evidence that he presently has access to. In

other words, Applicant believes that application was ineffective, and he cannot recall even

requesting a specific amount of extra time. He did document the disability of autism, albeit

with less quantified impact testing than the 2014 report, and was granted 50% extra time.

Applicant's score(s) on the SAT thereafter were statistically good, if not great or highly

competitive.  The fact that Applicant attained an above-average score does not confirm

that the 50% extra time was then adequate and reasonable for even that test, let alone

the proposition that it is presently adequate and reasonable for the California Bar Exam.

Based on the deficiencies with Applicant's application for the SAT, it reasonably follows

that he was under-accommodated for the effects of his disability, that he would have

scored even higher but for such, and that where the purpose of the test was to measure

Applicant's knowledge and aptitudes undistorted by the legally-excluded effects of his

disabilities he did not receive meaningful access to the test notwithstanding the above-

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA
TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM
PLUS
MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE
FILE NO. 468532**

average score and admission to a college.

The precedent and history of receiving 50% extra time on the SAT, Applicant believes, caused the ineffectiveness of his first application (for accommodations on the SAT) to taint the outcomes of all future applications, including that for the LSAT, GMAT, MPRE, and the present bar exam. Applicant believes the history of 50% extra time is the product of a snowball effect with each subsequent testing entity relying on the previous one(s) in their assessment, even after the production of compelling evidence (Drs. Pinn and Preston 2014 report, providing thorough substantiation for the recommendation of 100% extra time based on objective analytical measurements).

With respect to the LSAT specifically, Applicant believes such may also have been a product of actual disability discrimination as well. A class-action lawsuit covering the range of applications Applicant fell within, for disability discrimination, was jointly brought by the California Department of Fair Employment & Housing and the U.S. Department of Education. This lawsuit resulted in a substantial consent decree, and ever after that, the date and time of Applicant's second accommodated LSAT administration being changed at the last minute no less than three times; the second untimely and to a distant location the morning after a night midterm with refusal to provide an alternative time despite the circumstances and untimely notice, and the third without any notice after Applicant appeared at the specified time and place to find no-one present and requiring hours on the phone to track down the

## NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS
## MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE
## FILE NO. 468532

proctor at yet another location to complete the test that day, where Applicant was not expected and his testing book was not present and had to be retrieved from offsite. Accordingly, the Committee and its designees should accord minimal weight to the LSAC's findings, or those of other testing agencies that relied thereupon. It should instead rely on the 2014 report submitted with Form C, and the recommendations of other experts in Forms B and H, in addition to any new evidence Applicant may submit upon leave and an extension.

Similar to the SAT, the scores that resulted from the LSAT and GMAT do not confirm the proposition that the 50% extra time was then adequate and reasonable for even those tests, let alone the proposition that it is presently adequate and reasonable for the California Bar Exam despite the additional factors in II. A and C herein. The proper definition of "meaningful access" is not whether the accommodations permitted Applicant to attain a normal or even above-average score, but whether the results of the test accurately measured those attributes they are intended to measure without undue distortion from effects of Applicant's disability, thus providing him with as competitive a score as the abilities he's supposed to be tested on merit without substantial adverse effect from disabilities.

The expert consultant's supposition that 50% extra time has always been adequate is belied not just by the 2014 report by Drs. Pinn and Preston, demonstrating 100% extra time is appropriate in order to remedy the effects of even just autism on Applicant's cognitive performance, but also by the fact that more than once Applicant has failed to finish an exam with even 100% extra time in law school, especially where the format is essay response and

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532**

not multiple choice, like the Bar Exam.

The expert consultant also cited Applicant's 36th percentile score on the unaccommodated administration of the Nelson-Denny Reading Comprehension test as a basis for their finding that 50% extra time is adequate. The fact that Applicant's reading comprehension skills were strong enough to mitigate the clearly present impact of Applicant's disability from resulting in an outlier-low score rather than a moderately below-average score does not change the fact that Applicant scored so much higher with extra time that the impact of Applicant's disability was measured to be severe enough to recommend 100% extra time (See 2014 Report).

In conclusion, the weight of the evidence does not support a finding that 50% extra time has been adequate for a substantially similar examination to the bar exam in the past, nor that it does presently.

C. As asserted in the Petition, newly acquired disabilities have resulted in increased effects on the totality of Applicant's disabilities on his capacity to access tests and the scope of accommodation necessary to remedy such adequately.

Based on your decision letter, Applicant understands the extra time that was granted to be based upon 50% extra time for autism and related learning disability or neuropsychological conditions, and an additional approximately 16% for the visual disability of keratoconus. Applicant has already addressed above his rationale for his position that 50% is not an adequate accommodation for the former, and in this section examines that 16% is not an adequate accommodation for the latter. Neither basis relies on the other, except inasmuch as the effects of the disabilities would compound

11

## NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS
## MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532

each other rather than add incrementally, which further exacerbates the

unreasonableness of denial of even 100% extra time for both disabilities combined.

Importantly, the Form H professional expert recommendation for solely the

keratoconus and visual conditions, without accounting for autism, was already 100%

(See Form H). The denial of 84% of the time requested by my expert is unreasonable

and 16% extra time will not be sufficient to address even the effects of this disability.

Upon a decision on whether and how much to increase the extra time for autism,

Applicant also respectfully requests a review on whether and how much to increase the

extra time for keratoconus considering (as was not in your instant decision) the

additional diagnosis of dry eye syndrome (with keratoconjunctivitis) and also

considering the interdependent compounding effect[1] with the autism weaknesses.

In denying 100% extra time, the Committee's expert consultants again relied

heavily on Applicant's past above-average scores on tests taken with only 50% extra

time. None of those tests bar the MPRE (which has yet to have an available score, and

was a short all multiple choice test that required less long periods of reading) were

taken after the development of the keratoconus visual condition.  Therefore, such is

facially unreliable for evaluating extra time for this basis, even putting aside the above

---

[1] The learning disability consultant also addressed that another expert had recommended double time, but that recognition left it unclear as to whether they understood that recommendation was for another disability entirely, in addition to the autism basis that they had rejected that position upon.

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE**
**FILE NO. 468532**

issues with assuming 50% extra time had been adequate to remedy the effects of the

disability on those tests based upon an above-average score.

## CONCLUSION AND APPELLATE RELIEF REQUESTED:

The California Bar Exam is an extremely exacting and challenging test that last year had

only a 43% pass rate among largely prepared law school graduates, who on average also

obtained an above-average LSAT score to the population of law school admissions

candidates.  While Applicant is certainly not legally entitled to as much aid as would

assure him passage, Applicant should receive as much aid as to assure the prevention of

his disability from adversely affecting his performance, even to a degree minor enough to

permit a productive outcome on a less challenging test, such as the SAT, LSAT, and GMAT.

Therefore, because: (1) 50% may not have been adequate to provide Applicant

meaningful access to the prior tests as explained above; (2) The amount of extra time

necessary to provide Applicant meaningful access to the prior tests has increased from

what it would have been at the time they were taken due to newly-acquired disabilities as

explained above; (3) The amount of extra time necessary to provide Applicant meaningful

access to the California Bar Exam is vastly higher than the amount that would be adequate

to presently provide Applicant meaningful access to the same half-day or less multiple-

choice exams, due to the length and format factors explained above; (4) The significantly

higher than 50% extra time pre-visual accommodation baseline justified by (1), (2), and (3)

should be increased by a greater amount than ~16% extra time on account of the visual

13

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532**

disability, because Applicant has further visual impairments than keratoconus, because Applicant's Form H ophthalmologist recommended 100% extra time on this disability alone and so 16% additional extra time is outside the reasonable range, and because the disabilities compound each other rather than simply incrementally impairing performance, and such has not been refuted by the outcome of any other test as Applicant has yet to take a test with 50% extra time with results available since the manifestation of the keratoconus; and (5) The Committee's expert consultant mistakenly relied on inaccurate factual findings, such as a finding that Applicant had indicated 50% extra time would be reasonable on the bar exam, a finding that Applicant was only given 50% extra time in college prior to law school, and a finding that Applicant's only visual condition is keratoconus, all of which are incorrect:

Applicant respectfully requests that the amount of extra time he is provided on all sections of the California Bar Exam be increased to no less than 100% (double) time.

I hereby declare and certify, on penalty of perjury under the laws of California, that all statements of fact offered herein are true and substantially accurate to the best of my knowledge and belief.

14

**NOTICE OF APPEAL FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM PLUS**
**MOTION TO TOLL AND EXTEND MATERIALS SUBMISSION DEADLINE FILE NO. 468532**

DATED THIS 10th Day of November, 2017.

RESPECTFULLY SUBMITTED,
*/s/ Benjamin Kohn*
Benjamin Kohn
460 Samoa Drive,
Iowa City, IA 52246
(650) 919-3584
Benjamin.s.Kohn@gmail.com

15

# APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

Committee of Bar Examiners
Attention: Senior Director of Admissions
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

December 5, 2017

  I previously filed an appeal with your office of the November 1, 2017, decision on my Petition For ADA Testing Accommodations on the California Bar Exam, by means of my letter dated November 10, 2017. In that letter, I requested an extension of the time period to provide further evidence and statements in support of my appeal, which your office granted by means of a phone conversation with Lynn Taylor on November 13, 2017. Although I have not yet received any written confirmation of the agreed upon extension and leave, upon my receipt of the final supplemental affidavit from my experts that I sought, I now timely provide my amended formal statement providing the reasons for appeal, and the additional evidence from my experts enclosed herewith. This letter and the enclosed documents completes my appeal submission, and I will now await your further direction and/or decision regarding my petition and appeal.

  Attachments Enclosed Herewith:
  1. Further documentation from my ophthalmologist Dr. Goodman
  2. Further documentation from my neuropsychological evaluator Dr. Preston

### Appeal Statement:

1. I <u>do not</u> appeal the reduction of my request for the provision of an ergonomic workstation while testing to a grant of permission to bring my own ergonomic workstation components to the testing center.
2. I <u>do not</u> appeal the reduction of my request for a private testing room to a grant of a semi-private testing room.
3. The accommodation of a computer was granted in full, and therefore is <u>not</u> under appeal.
4. I <u>do appeal</u> the denial of double (100% extra) time in favor of a lesser amount of extra time generally for all sections, or in the alternative for individual sections, and state the following in explanation thereof:

1

## APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

### Issues Presented:

I.  Some of the factual recitals attributed to my petition and accompanying forms and documentation, and relied upon by your expert consultants, are in error, and should be corrected, upon which point the conclusions drawn from the incorrect premises should be reconsidered.

    A.  Nowhere in the Petition does Applicant state that he considers 50% extra time to be adequate or reasonable. To the contrary, Applicant affirmatively stated that 50% extra time would be inadequate. Any finding that 100% extra time is waived by an alleged admission that less time would be adequate is not supported by the documents submitted.

    In your decision letter at p. 3, the expert consultant provided:

"How much more time, <u>as the applicant has indicated that time and one half is reasonable, this is all that I [the Committee's consultant] can support.</u>" (emphasis added).  And further:

"… the applicant … has two experts who assert that time and one half will do (Drs. Pinn and Preston), and another, who speaks of double time, as had Dr. Preston in his 2014 report. Double time might indeed be best, but, one gains the aid that one needs, that is sufficient to meet one's needs, not all that might be best and/or preferred."

      To the contrary, nowhere in the Petition does Applicant indicate an opinion or position that 50% extra time is reasonable, adequate, or sufficient. Applicant's sole request for 50% extra time was qualified "in the alternative" so as to indicate a preference of partial grant to full denial, but he did not waive seeking 100% extra time in the petition or appeal, especially based on his explicitly provided position in the petition that 100% is necessary to meaningfully access the bar exam. In applicant's addendum dated August 28, 2017, Applicant asserted at p. 2:

"Even prior to, and without considering, my visual disability, the professionals completing my Form C recommended 100% extra time on tests in their 2014 report, on which they relied in completing Form C. When completing Form C, they recommended 50% extra time <u>based on the approval for the LSAT of 50% and not</u>

**APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532**

100% extra time, however as their <u>independent from LSAC recommendation on the most recent testing report (enclosed with Form C) was 100% extra time</u>, the amount I am and was approved for in college and law school exams, <u>I would like to clarify that I believe 100% extra time is needed to provide me adequate access to the bar exam in light of the totality of my disabilities</u>, especially as it is much longer than the LSAT." (Emphasis Added).

As cited above, your consultant explicitly notes that the perceived admission from Applicant is dispositive for their decision to only establish a pre-visual baseline of 50% extra time; that otherwise the weight of the evidence in the test reports provided, disabilities established, etc. would be for 100% extra time as sought herein. However, as it was and is Applicant's position that 50% extra time is not reasonable or adequate for the bar exam, for the reasons provided in the petition and as consistent with the petition, and as elaborated on further below, Applicant respectfully requests that the decision to deny 100% extra time be overturned and at least that amount of time be granted.

As further explained in the above excerpt, Applicant's learning disability experts Drs. Pinn and Preston explicitly qualified their Form C recommendation as relying on the amount approved for the LSAT and not their own evaluation. (See Form C, p. 9; see also 2014 Report p. 8). No new testing or evaluation was done since that in 2014, upon which <u>both</u> Drs. Pinn and Preston (not just Dr. Preston as inaccurately described by your consultant) drafted a thorough report recommending 100% extra time. (See 2014 Report at p. 8). Importantly, this recommendation was based solely on the learning (or psychiatric) disability evaluated, and could reasonably be found to require even more extra time than double time to accommodate the totality of Applicant's multitude of

3

# APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

disabilities and medical conditions.

B.  The finding that Applicant received 50% extra time in college prior to law school is incorrect; Applicant was granted 100% extra time on exams in college.

In your decision letter at p. 2, your expert consultant provided:

"The applicant's history of aid began in grade school, exactly when a bit unclear, he offered additional testing time, just how much this too is unclear. In college he'd been offered time and one half. He'd had this same support for the SAT, the LSAT, and later, the MPRE. In law school he's been allowed double time, in his own room…" (emphasis added).

To Applicant's recollection, aid began as early as first grade and no later than third grade. More importantly, as provided in the petition, in college Applicant was provided double time on exams, not time and one-half. (See Form A, p. 3; see also addendum letter dated August 28, 2017 at p. 2). This factual error belies the conclusion that Applicant has a strong history of success with only 50% extra time.

C.  Applicant suffers from visual conditions besides Keratoconus in addition to it, contrary to the finding.

In your decision letter at pp. 4-5, your consultant provides that other than Keratoconus, Applicant's visual condition is "unremarkable," however, while Form H was focused on the most significant diagnoses (keratoconus and irregular astigmatism), Applicant also indicated Dry Eye Syndrome (with keratoconjunctivitis) in his Form A attachment narrative at p. 2, which increases the eye fatigue incrementally, and further contributes to the magnitude of his eye fatigue during long periods of reading. As this was impliedly overlooked by the consultant, Applicant submits it is likely that the additional 30 minutes per 3 hour section added to the extra time granted based on autism is too little

4

## APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

to adequately accommodate the effects of Applicant's visual disabilities. <u>As Form H was not adequately clear that Keratoconus was not Applicant's only visual condition, Applicant has enclosed the supplemental addendum of his ophthalmologist Dr. Goodman herewith, which at p. 1 confirms the additional diagnosis of dry eye syndrome.</u>

II. To the extent 50% extra time was adequate and reasonable on the SAT, LSAT, GMAT, and/or MPRE tests, which Applicant disputes and only stipulates that was the accommodation then approved and dispensed on those tests, such a finding would be an insufficient basis to conclude that same or slightly higher time will allow Applicant to access the California Bar Exam to the same degree he would have but for the disabilities at issue.

    A. Substantial differences in length, form, and type of test, distinguish the California Bar Exam from past standardized tests such that the amount of extra time accommodation necessary for meaningful access is significantly higher on the former, and thus the baseline for time needed before even considering subsequently acquired disabilities and other factors should be substantially higher than time and one-half.

Throughout the excerpts provided from the evaluation of the Committee's expert consultants, heavy reliance is made upon the fact that, prior to acquiring visual and certain other medical conditions and impaired largely only by autism, Applicant took the SAT, LSAT, and GMAT, with 50% extra time, to above average performance, and then attempted the MPRE with only 50% extra time.

To them, this *per se* forecloses any finding that more than this amount of time is needed to provide sufficient access on the California Bar Exam.

Applicant submits the contrary. The SAT normally is administered over 3 hours, the LSAT 2 hours and 55 minutes, the GMAT 3 hours and 30 minutes, and the MPRE only 2

5

**APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532**

hours. For these tests, even adjusting the above for time and one-half, in comparison to a four-day bar exam encompassing most of each day, endurance and fatigue will not compound the effects of the disability, which Applicant believes on an exam as inherently lengthy as the California Bar Exam would increase the amount of extra time needed to remedy the effects of the disability as the test progresses by a vastly greater margin compared to the other tests than for someone who is neurotypical and medically and visually healthy. That proposition is shared by Applicant's neuropsychology expert(s) for the reasons provided in their addendum enclosed herewith at p. 1. The extra time is necessary to remedy the effects of the disabilities from the outset, but the magnitude of extra time needed for such is higher on longer tests. This alone justifies a significantly higher multiplier for comparable degrees of aid on the bar exam as these other, much shorter tests.

   Further compelling cause for a higher extra time multiplier on the bar exam being necessary than even that which is established as proper and adequate for the other tests is the form and type of the tests. The SAT, LSAT, GMAT, and MPRE are all either largely or entirely multiple choice exams, whereas the California Bar Exam requires a substantial amount of essay response answers. The cognitive demands of transmitting the actual extent of Applicant's knowledge and expertise of the law subject matter being tested compared to a neurotypical examinee would be vastly higher on the latter, as also agreed upon and explained at the neuropsychology expert(s) addendum enclosed herewith, p. 1, and for this reason, too, whatever multiplier is deemed reasonable and adequate to

6

**APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532**

meaningfully access the SAT, LSAT, GMAT, and MPRE will be vastly lower than that which would be reasonable and necessary for Applicant to meaningfully access the California Bar Exam.

    B. The approval for 50% extra time and the outcomes of the SAT, LSAT, and GMAT does not even definitively show that Applicant had adequate accommodations on those tests to perform as well as he would have but for the disabilities then present at that time, and substantial evidence exists to the contrary.

Applicant's initial application for ADA testing accommodations on the SAT was made while Applicant was in high school, at which time Applicant and his parents were unfamiliar about the process and standards at issue, and Applicant did not seek further professional testing or compile the body of evidence that he presently has access to. In other words, Applicant believes that application was ineffective, and he cannot recall even requesting a specific amount of extra time. He did document the disability of autism, albeit with less quantified impact testing than the 2014 report, and was granted 50% extra time. Applicant's score(s) on the SAT thereafter were statistically good, if not great or highly competitive.  The fact that Applicant attained an above-average score does not confirm that the 50% extra time was then adequate and reasonable for even that test, let alone the proposition that it is presently adequate and reasonable for the California Bar Exam. Based on the deficiencies with Applicant's application for the SAT, it reasonably follows that he was under-accommodated for the effects of his disability, that he would have scored even higher but for such, and that where the purpose of the test was to measure Applicant's knowledge and aptitudes undistorted by the legally-excluded effects of his disabilities he did not receive meaningful access to the test notwithstanding the above-

7

**APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532**

average score and admission to a college.

The precedent and history of receiving 50% extra time on the SAT, Applicant believes, caused the ineffectiveness of his first application (for accommodations on the SAT) to taint the outcomes of all future applications, including that for the LSAT, GMAT, MPRE, and the present bar exam.  Applicant believes the history of 50% extra time is the product of a snowball effect with each subsequent testing entity relying on the previous one(s) in their assessment, even after the production of compelling evidence (Drs. Pinn and Preston 2014 report, providing thorough substantiation for the recommendation of 100% extra time based on objective analytical measurements).

With respect to the LSAT specifically, Applicant believes such may also have been a product of actual disability discrimination as well. A class-action lawsuit covering the range of applications Applicant fell within, for disability discrimination, was jointly brought by the California Department of Fair Employment & Housing and the U.S. Department of Justice. This lawsuit resulted in a substantial consent decree, and even after that, Applicant believes he was personally further discriminated against, because the date and time of Applicant's second accommodated LSAT administration was changed at the last minute no less than three times; the second untimely and to a distant location the morning after a night midterm with refusal to provide an alternative time despite the circumstances and untimely notice, and the third without any notice after Applicant appeared at the specified time and place to find no-one present which required hours on the phone to track down the proctor at yet another location to complete the test that day, where Applicant was not expected and his

8

## APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

testing book was not present and had to be retrieved from offsite. Accordingly, minimal weight should be accorded to the LSAC's findings, or those of other testing agencies that relied thereupon. The 2014 report submitted with Form C, and the recommendations of other experts in Forms B and H, in addition to the new evidence Applicant enclosed herewith, should be relied upon instead.

   Similar to the SAT, the scores that resulted from the LSAT and GMAT do not confirm the proposition that the 50% extra time was then adequate and reasonable for even those tests, let alone the proposition that it is presently adequate and reasonable for the California Bar Exam despite the additional factors in II. A and C herein. The proper definition of "meaningful access" is not whether the accommodations permitted Applicant to attain a normal or even above-average score, but whether the results of the test accurately measured those attributes they are intended to measure without undue distortion from effects of Applicant's disability, thus providing him with as high a score as the abilities he's supposed to be tested on merit without substantial adverse effect from disabilities.[1]

   "Reasonable accommodations" must be sufficient to provide "meaningful access" to the examination.[2]  Since examinations are taken for the purpose of measuring knowledge and aptitude for the subject matter, sometimes as compared to a fixed scaled standard for sufficient performance, and sometimes as compared to that of one's peers on a particular

___

[1] Bartlett v. New York State Bd. of Law Examiners (2d Cir. 2000) 226 F.3d 69, citing Americans with Disabilities Act of 1990, § 3(2)(A), 42 U.S.C.A. § 12102(2)(A).
[2] 42 U.S.C.A. § 12101 *et seq.*

9

## APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

examination for the purpose of measuring ordinal rank on a curve, the <u>precise measurement being sought</u> (rank or scaled score that would be merited <u>but for</u> the adverse effects of the disabilities as precisely as such can be measured, and thus with an "even playing field") is what the disabled examinee must be provided access to barring actual impossibility or undue burden upon the entity from which accommodations are being sought (not alleged or asserted as a basis for the partial denial in your decision letter), and are what accommodations should be tailored for.

    <u>The precise measurement being sought</u>, the rank or scaled score that would be merited <u>but for</u> the adverse effects of the disabilities as precisely as such can be measured, is not what result would be sufficient to provide the applicant their subjective goal for which they attempt the examination, such as a standardized test score that is passing, "in the average range," or even sufficiently above-average as to be reasonably competitive for many educational programs evaluating admissions based on comparative ranking. Rather, that measurement is what the applicant would have achieved but for the disabilities, which may be as high performing as the top percentile or more for some disabled candidates, and that candidate's skill, knowledge, or aptitude does not abrogate their entitlement to such if, without the full degree of accommodations needed to remove the effects of their disabilities, they could still achieve scores as high as the 88th or even 96th percentile. To the contrary, one of your consultants provided:

"Double time might indeed be best, but, one gains the aid that one needs, that is sufficient to meet one's needs, not all that might be best and/or preferred." (Decision letter at p. 3).

10

## APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

The contrary legal standard relied upon by your consultant for their findings would be legally discriminatory towards high-performing, but still materially disabled applicants, and would therefore violate those applicants' legal rights. Therefore, Applicant respectfully requests that the findings relying on the standard cited by the above consultant be reconsidered applying the correct standard provided above, and that consequently Applicant be granted at least 100% extra time for the California Bar Exam.

   Moreover, the expert consultant's supposition that 50% extra time has always been adequate is belied not just by the 2014 report by Drs. Pinn and Preston, demonstrating 100% extra time is appropriate in order to remedy the effects of even just autism on Applicant's cognitive performance, but also by the fact that more than once Applicant has failed to finish an exam with even 100% extra time in law school, especially where the format is essay response and not multiple choice, like with the Bar Exam.

   The expert consultant also cited Applicant's 36th percentile score on the unaccommodated administration of the Nelson-Denny Reading Comprehension test as a basis for their finding that 50% extra time is adequate. The fact that Applicant's reading comprehension skills were strong enough to mitigate the clearly present impact of Applicant's disability from resulting in an outlier-low score rather than a moderately below-median score does not change the fact that Applicant scored so much higher with extra time that the impact of Applicant's disability was measured to be severe enough to recommend 100% extra time (See 2014 Report, p. 8).

   In conclusion, the weight of the evidence does not support a finding that 50% extra time has been adequate for a substantially similar examination to the bar exam in the past, nor

**APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532**

that it does presently, and the legal standard the consultant seemingly relied upon is

incorrect.

  C. As asserted in the Petition, newly acquired disabilities have resulted in increased effects on the totality of Applicant's disabilities on his capacity to access tests and the scope of accommodation necessary to remedy such adequately.

  Based on your decision letter, Applicant understands the extra time that was granted to be based upon 50% extra time for autism and related learning disability or neuropsychological conditions, and an additional approximately 16% for the visual disability of keratoconus.  Applicant has already addressed above his rationale for his position that 50% is not an adequate accommodation for the former, and in this section examines that 16% is not an adequate accommodation for the latter. Neither basis relies on the other, except inasmuch as the effects of the disabilities would compound each other rather than add incrementally, which further exacerbates the unreasonableness of denial of even 100% extra time for both disabilities combined.

  Importantly, the Form H professional expert recommendation for solely the keratoconus and visual conditions, without accounting for autism, was already 100% (See Form H). The denial of 84% of the time requested by my expert is unreasonable and 16% extra time will not be sufficient to address even the effects of this disability. Upon a decision on whether and how much to increase the extra time for autism, Applicant also respectfully requests a review on whether and how much to increase the extra time for keratoconus considering (as was not in your instant decision) the additional diagnosis of dry eye syndrome (with keratoconjunctivitis) and also

**APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532**

considering the interdependent compounding effect[3] with the autism weaknesses.

In denying 100% extra time, the Committee's expert consultants again relied heavily on Applicant's past above-average scores on tests taken with only 50% extra time. None of those tests bar the MPRE, which was a short all multiple choice question test that required much shorter periods of reading) were taken after the development of the keratoconus visual condition.  Therefore, such is unreliable for evaluating extra time for this basis, even putting aside the above issues with assuming 50% extra time had been adequate to remedy the effects of the disability then present on those tests based upon an above-average score.

## CONCLUSION AND APPELLATE RELIEF REQUESTED:

The California Bar Exam is an extremely exacting and challenging test that last year had only a 43% pass rate among largely prepared law school graduates, who on average also obtained an above-average LSAT score to the population of law school admissions candidates.  While Applicant is certainly not legally entitled to as much aid as would assure him passage, Applicant should receive as much aid as to assure the prevention of his disability from adversely affecting his performance, even to a degree minor enough to permit a productive outcome on a less challenging test, such as the SAT, LSAT, and GMAT.

---

[3] The learning disability consultant also addressed that another expert had recommended double time, but that recognition left it unclear as to whether they understood that recommendation was for another disability entirely, rather than the autism basis that they had rejected that position upon.

**APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532**

Therefore, because: (1) 50% may not have been adequate to provide Applicant meaningful access to the prior tests as explained above; (2) The amount of extra time necessary to provide Applicant meaningful access to the prior tests has increased from what it would have been at the time they were taken due to newly-acquired disabilities as explained above; (3) The amount of extra time necessary to provide Applicant meaningful access to the California Bar Exam is vastly higher than the amount that would be adequate to presently provide Applicant meaningful access to the same half-day or less multiple-choice exams, due to the length and format factors explained above; (4) The significantly higher than 50% extra time pre-visual accommodation baseline justified by (1), (2), and (3) should be increased by a greater amount than ~16% extra time on account of the visual disability, whereas Applicant has further visual impairments than keratoconus, whereas Applicant's Form H ophthalmologist recommended 100% extra time on this disability alone and so 16% additional extra time is outside the reasonable range, and whereas the disabilities compound each other rather than simply incrementally impair performance; (5) The Committee's expert consultant mistakenly relied on inaccurate factual findings, such as a finding that Applicant had indicated 50% extra time would be reasonable on the bar exam, a finding that Applicant was only given 50% extra time in college prior to law school, and a finding that Applicant's only visual condition is keratoconus, all of which are incorrect; (6) The committee's experts seemingly relied on an incorrect legal standard for the sufficiency of accommodations; and (7) Of the reasons and new evidence provided in the additional addendum documentation enclosed herewith:

14

## APPEAL STATEMENT FROM PARTIAL DENIAL OF PETITION FOR ADA TESTING ACCOMMODATIONS ON JULY 2018 CALIFORNIA BAR EXAM FILE NO. 468532

Applicant respectfully requests that the amount of extra time he is provided on all sections of the California Bar Exam be increased to no less than 100% (double) time, and that the number of days the exam is administered over is increased from four days to that which would allow for such an increase without extending the duration per individual day to higher than an examination without extra time.

I hereby declare and certify, on penalty of perjury under the laws of the State of California, that all statements of fact offered herein are true and substantially accurate to the best of my knowledge and belief.

DATED THIS 5th Day of December, 2017.

RESPECTFULLY SUBMITTED,
*/s/ Benjamin Kohn*
Benjamin Kohn
460 Samoa Drive,
Iowa City, IA 52246
(650) 919-3584
Benjamin.s.Kohn@gmail.com

**GOODMAN**
E Y E • C E N T E R

November 27, 2017

RE: Kohn, Benjamin
DOB:12/29/1993

To Whom It May Concern:

Benjamin has a diagnosis of Keratoconus in both eyes (ICD-10: H18.623). This condition causes distortion of vision. Additionally, he has a physical handicap and is unable to wear contact lenses. As a result, his visual functioning is reduced since he constantly perceives glare and halos. He also suffers from dry eye syndrome (ICD-10: H04.123). This condition causes his vision to fluctuate especially during long periods of focused visual work. Consequently, he will need additional time for his academic work.

In light of these eye conditions, please allow Benjamin additional accommodations as indicated on Form H for the California Bar Exam. I have attached scans of his corneas, documenting his diagnosis of keratoconus. Feel free to contact my office with any further questions.

I hereby declare on the penalty of perjury under the laws of the State of California that the facts and opinions offered herein are true to the best of my knowledge and belief.

Sincerely,

Daniel Goodman, MD

2211 Bush Street  •  Second Floor  •  San Francisco CA 94115-3121

T  415-474-3333  •  F  415-474-3939  •  goodmanEYEcenter.com





| Kohn,Benjamin | OD |
|---|---|
| ID#: 12/29/1993 | |

| Date: 7/17/2017 10:51:01 AM | Exam 3 |
|---|---|

Ks: 44.61 @ 156°  Kf: 42.81 @ 66°    AveK: 43.71
MinK: 42.78 @ 76°   Es: 0.67 / Em:-0.56   Cyl: 1.80
SRI: 0.41       PVA: 20/20-20/25    SAI: 1.40

| Kohn,Benjamin | OS |
|---|---|
| ID#: 12/29/1993 | |

| Date: 7/17/2017 10:51:04 AM | Exam 4 |
|---|---|

Ks: 43.89 @ 69°  Kf: 43.61 @ 159°    AveK: 43.75
MinK: 43.51 @ 136°   Es: 0.12 / Em: 0.38   Cyl: 0.28
SRI: 0.31       PVA: 20/20-20/25    SAI: 0.86

Standard                            Absolute                            Diopters



9.0 14.0 19.0 24.0 29.0 35.5 37.0 38.5 40.0 41.5 43.0 44.5 46.0 47.5 49.0 50.5 56.5 61.5 66.5 71.5 76.5 81.5 86.5 91.5 96.5 101.5



Version 4.2D

AUG 04 2017 CXL s/p 1mo OU           Kohn, Benjamin
noticing some eye fatigue / smearing w/
bright lights

$V_{sc}$ {  20/30
          20/25-

$T_T$ < $^{18}_{19}$ @10:46    prizeo x1    gtts
                              AT q1h

M < -0.50 +1.25 X 165  20/30
    -0.75 sph

              20/25+2        ext 2+ lid debris
              (fluctuate     sk K ok          RTC 3mo
               w/ Blnk)       @haze           if possble
                                              in 1mo.
P < 522 I 9,          FDVM
    542 ± 6.1



# Neuropsychological Assessment Group

2211 Moorpark Avenue, Suite 260, San Jose, CA  95128
(877) 454-6469   www.neuropsychgroup.com

12/5/2017

To Whom it may Concern:

This letter is to confirm the results of a neuropsychological assessment for Benjamin Kohn.  All statements made here are based the these results.

Results of testing are consistent with a diagnosis of F84.00 Autism Spectrum Disorder.

Due to this Neurodevelpmental disorder, Mr. Kohn processes information and responds at a significantly slower rate than would be expected given his level of Intellectual Functioning.

In order to have an accurate assessment of what he has learned during his time in law school, he would need significantly more time to complete all parts of exams as compared to relatively neurotypical examinees.   Given his processing difficulties, Mr. Kohn will be able to respond more quickly to multiple choice responses as opposed to essay type responses

Mr. Kohn also fatigues quickly and required more than double the typical time to complete his neuropsychological assessment.  On exams that are for long duration over multiple days, Mr. Kohn will need frequent brakes and more time for each subtest.

I hereby declare, on penalty of perjury under the laws of the State of California, that the above is true and accurate to the best of my professional knowledge.

Charles Preston, Ph.D.
PSY21075
Clinical Psychologist



THE COMMITTEE OF
THE STATE BAR OF CALIFORNIA
OFFICE OF ADMISSIONS

180 HOWARD STREET  •  SAN FRANCISCO, CALIFORNIA  94105-1639  •  (415) 538-2300

Committee of Bar Examiners

ERIKA HIRAMATSU
*Chair*
*San Diego*

DAVID A. TORRES
*Vice-Chair*
*Bakersfield*

ANGELI O. AGATEP, M.D., FACP
*Los Angeles*

JAMES A. BOLTON, Ph.D.
*Altadena*

ROBERT S. BRODY
*Pasadena*

ALEX H. CHAN
*Redwood City*

JAMES H. EFTING
*Sunnyvale*

KAREN M. GOODMAN
*Sacramento*

DOLORES HEISINGER
*Belmont*

LARRY KAPLAN
*Los Angeles*

PAUL A. KRAMER, Jr.
*Sacramento*

ALEXANDER C. LAWRENCE, Jr.
*Los Angeles*

ESTHER P. LIN
*Costa Mesa*

BETHANY J. PEAK
*Bakersfield*

LARRY SHEINGOLD
*Sacramento*

PATRICIA M. VILLALOBOS
*Montebello*

LEE H. WALLACH
*Los Angeles*

*Staff*

GAYLE E. MURPHY
*Director III, Admissions*

AMY C. NUÑEZ
*Director I, Admissions*

GEORGE C. LEAL
*Program Manager II,*
*Educational Standards*

LISA JEONG CUMMINS
*Program Manager III,*
*Examinations*

GREG S. SHIN
*Program Manager III,*
*Operations & Management*

MARK TORRES-GIL
*Program Manager III,*
*Moral Character Determinations*

December 5, 2017

Benjamin Sean Kohn
1913 Fordham Way
Mountain View, CA  94040

File No.:  468532

Dear Mr. Kohn:

Thank you for the additional information you submitted concerning the decision that was forwarded to you on November 1, 2017 relative to your request for testing accommodations during the California Bar Examination (CBX).  After review of the additional information you provided, my prior decision has been modified.  During the July 2018 administration of the CBX, in addition to the accommodations previously granted, you have now been granted additional extra time, or double time, for each session of the examination (i.e., a total of 6 hours for the first session of the written portion, a total of 7 hours for the second session of the written portion, and a total of 6 hours for each Multistate Bar Examination (MBE) session).

If you would like further assistance, please feel free to contact the office at the above address.

Sincerely,

*Gayle E. Murphy*

Gayle E. Murphy
Director III, Admissions

mm.1205.17

# EXHIBIT 3

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

Committee of Bar Examiners
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

November 1, 2018

<u>Procedural Background:</u>

      I (Applicant, File No. 468532) applied for Disability Accommodations on the July 2018 California Bar Exam by way of a separate, prior petition consisting of: (1) my Form A with attached narrative statement; (2) Form B by Dr. Dresden; (3) Form C with attached testing/eval report by Drs. Pinn and Preston; (4) Form F by University of Iowa College of Law Associate Dean Carin Crain; (5) Form H with attached cornea scans by Dr. Goodman; (6) my High School I.E.P.; (7) accommodations letters and test scores for the SAT, LSAT, GMAT, and MPRE; and (8) my supplemental narrative addendum dated August 27, 2017, responding to a letter from your office dated August 7, 2017 requesting further information[1]; (hereinafter, items (1)-(8) will be referenced collectively as "the 2017 Petition").  The accommodations requested on the 2017 Petition were approved in part and denied in part.

      I timely appealed the initial decision from the 2017 Petition, first by way of a notice of appeal with a tentative, draft statement of the reasons for appeal dated November 10, 2017, and then supplemented by a revised and expanded brief/statement in support of appeal dated December 5, 2017 (hereinafter, "2017 appeal brief") enclosed with supplemental supporting affidavits from two of my expert evaluators, Drs. Goodman and Preston (hereinafter, "the 2017 supplemental affidavits")[2].  After mailing the 2017 appeal brief and the 2017 supplemental affidavits to your office postmarked December 5, 2017, I received a decision letter granting my requested accommodations (increase of the amount of extra time granted to 100% extra time on all exam sections) on appeal, responsive to the November 10 Notice of Appeal, rendering both my expanded arguments in the 2017 appeal brief and the new evidence in the 2017 supplemental affidavits moot.

      Whereas the results of the July 2018 California Bar Exam will not be available until after 6 P.M. November 16, 2018, and therefore I am unable to determine whether I will need to retake in February 2019 prior to the November 1, 2018 Timely filing deadline for that exam and with it the final deadline for a petition seeking disability accommodations for that exam, by and through this (2018) petition I respectfully request that, <u>in the event I did not pass my July 2018 exam</u>, I be granted renewal of all accommodations approved from the 2017 Petition and Appeal, plus the additional accommodations requested herein, for the February 2019 California

---

[1] Items (1), (3), (4), (6), and (7) were postmarked August 2, 2017, and delivered to your office on August 4, 2017.  I believe items (2), (5), and (8) were sent postmarked August 27, 2017, in response to your letter dated August 7, 2017, requesting further information.
[2] USPS Tracking indicated delivery to your office on December 8, 2017.

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

Bar Exam, based on new medical conditions diagnosed after submission of the 2017 Petition and Appeal, and further based on my experience during the July 2018 California Bar Exam.

<u>New (or Newly Relevant) Facts:</u>

Subsequent to submission of the 2017 Petition, I was diagnosed with new, additional medical conditions – the effects of which were not a factor on any of the testing and evaluations relied on in the 2017 Petition – upon which I require additional accommodations not requested previously or provided on the July 2018 exam due to insufficient time to compile a new Petition between the time I was diagnosed and the Timely filing deadline for that exam: Severe Gastroparesis and Post-Nissen Fundoplication Dysphagia.

The Gastroparesis first affected my life by causing me severe morning gas-bloat from my last meal the previous night, triggered by getting up after sleeping overnight, causing or co-presenting with secondary G.E.R.D. symptoms such as heartburn and cough (also in the morning).  This delayed me from starting my day for 30-45 minutes following getting up, which caused difficulty keeping my schedule, and these symptoms also caused significant chronic discomfort.  Additionally, it causes me to suffer from postprandial bloating that makes it uncomfortable and slow for me to eat enough to sate my appetite, which is unaffected. It also caused upon diagnosis and counseling from a gastroenterologist, and still causes, medical necessity for lifestyle modifications in how frequently I eat and how much I eat at a time, from 1-2 large meals per day to 5-6 smaller meals per day.  On 8/8/2018, I underwent Nissen Fundoplication surgery that has so far successfully cured the G.E.R.D. heartburn and chronic morning cough symptoms, as well as eased some of the morning bloating from the Gastroparesis.  All other Gastroparesis symptoms remain.  Additionally, the Nissen Fundoplication surgery has, through its alterations to the anatomy of my stomach and esophagus, presented a side-effect of dysphagia that limits the size of bites I can take at a time without clogging the esophagus and triggering regurgitation or sometimes hours of severe discomfort and inability to eat or drink, and also limits the speed at which I can ingest food. Based on this, the surgeon, my gastroenterologist, and my PCP have all advised that for this reason too I require more frequent (5-6 per day), but smaller, meals, and recommended that I allow more time to eat each meal for extra cutting, chewing, and spacing of bites.

I took the July 2018 California Bar Exam with the accommodations I was approved for following appeal, and had significant difficulty on most of the exam days both with the singular meal break per day and prohibition on eating or drinking in the testing room, as well as additional distractions, stress, and close-calls with more direct prejudice, from certain circumstances in how my exam and disability accommodations were administered:

    1.  The proctor for my exam had been recruited right before the exam (I was told by at least one source on-site the day before the exam), and while he was very friendly and clearly trying to proctor the test properly, he seemingly had not received adequate training or orientation prior to the test, based on:

        a)  My proctor not having finalized negotiation of the terms of his contractual

<div align="center">2</div>

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

employment with the State Bar, as demonstrated when there was an argument between my proctor and his supervisor during the test session and in the testing room over how long he would have to stay, as the number of hours he had understood was different from that which was becoming apparent would be needed by my using the full amount of extra time I had been approved for. The dispute was resolved once my proctor understood he would get paid overtime, but the initial anxiety over whether I'd have to interrupt my testing on the clock to assert my right to the full amount of time and ensure they were providing the appropriate amount as well as the distraction of the conversation may have prejudiced my performance, especially as my disability of autism makes me particularly sensitive to distractions in my environment, which was the reason I had requested a private room and been granted a semi-private room.

(b) My proctor not knowing where the secured meal break room was and having to spend part of the allotted break time searching for it and asking for directions repeatedly, and further, not knowing on the first day of a need to set a pick-up time with me or that I would not be allowed to leave the break room when I was ready to find him and timely return to the test; this resulted in the staff present in the break room needing to search for my proctor and other similarly uninformed proctors, which was when and where I was told that many proctors had been on-boarded the night before.  Luckily, my proctor was found before it was too late to return to the test without exceeding the time limit for the break, but it had the serious potential to have turned out otherwise and nonetheless increased my anxiety and stress to an extent that would prejudice my performance on a high-stakes exam more so than for a neurotypical person.

(c) My proctor repeatedly interrupting me during the test to ask when I wanted to take my lunch break, if I was ready to take my lunch break, or whether I could take my lunch break at certain proposed times.  This was very distracting, which was especially prejudicial due to the increased distractibility effect of my autism.

(d) My proctor seemed unfamiliar with and easily confused by the start-of-test instructions he was tasked with reading to me and facilitating as well as the procedures for documenting time and other information he was tasked with; on most test days we started that process at or before the report time and this took until after the scheduled test session start time. Moreover, he needed to clarify things with his supervisor during the testing session, which was also distracting considering that a couple times a mistake was caught that if not remedied could have prejudiced the scoring of my exam, such as answer key matching.  I was not penalized for this tardiness, but at first I had been anxious that I might be or that I might be perceived by supervisors not present to have not been able to complete this pre-test task properly.

2.  The official test rules available online on the page from which I printed my admittance ticket indicated that no outside food or drink would be allowed into the test center, and that candidates could bring cash or credit cards with which to purchase food during the meal break; nowhere in my accommodations letter or any other

3

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

correspondence was it communicated that accommodated test-takers would not be allowed to leave a secured break room to purchase any food during the break, or that we were allowed to brink food and drinks to have stored outside the testing room and access within the secured break room.  Consequently, on the first test day I did not know that I could – let alone would need to in order to eat during the break – bring food when I reported, and thus did not do so.

3.  The State Bar of California negotiated a group/event discount for rooms at the hotel in which the exam was to be administered with that hotel.  However, when as soon as the admittance ticket was ready to print and I had confirmation of the location of my test and called the hotel to reserve a room, I was informed that that the State Bar had not negotiated this rate for all of the nights needed to take the accommodated test, and that the rate could only be honored for two of the nights, the number it would be if I had not had a disability requiring 100% extra testing time.  However, rooms for all necessary nights were available in the hotel's inventory, and I was offered a room for all necessary nights at a substantially higher rate.  <u>Staying at the hotel was necessary to receive my disability accommodations,</u> as I was only given permission to bring the necessary ergonomic workstation items needed to take an exam as lengthy as the Bar Exam with my disability of Myofascial Pain Syndrome, and though I was granted a computer as an accommodation due to fine motor delays from autism I had to bring my own computer equipment.  A chair with the medically necessary support features such as the Herman Miller Embody Chair I own is worth about $1,500, and the computer equipment was also worth in the thousands of dollars, yet the Bar does not accept liability for any items if I was forced to leave them unattended in the test center outside of the testing times.  Yet, moving furniture and the other ergonomic equipment long-distance for 4 days before and after the test would have required time, effort, and logistical distractions which would have prejudiced my test performance considering the effects of my autism, and put me in the position of relying on assistance from friends, family, or hired help 8 times instead of 2.  Yet, I bore the financial burden of the hotel stay for this, which was vastly higher than other non-disabled candidates would pay both due to the inability to use on all nights of the accommodated test period the rate the Bar negotiated for all candidates for the non-disabled nights, and due to the longer duration of stay.

The above is not intended to criticize my proctor or the Bar, but to illustrate the conditions at my last exam and the ways in which the accommodations then approved and especially certain of those newly requested may need additional care taken in how they are implemented and qualified, and to bring the matter to your attention and provide constructive feedback to the State Bar of California for future exams.

Moreover, although not related to the administration of the exam or my accommodations requested on the 2017 Petition, as stated in the narrative for that petition and even more so afterwards, I have a multiplicity of chronic medical conditions that require ongoing treatment, both related and unrelated to those forming the disabilities on which I had

4

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

identified specific accommodations as necessary for access to the Bar Exam. Presently, these conditions include: (1) autism with secondary neuroprocessing speed/attention and neuromotor deficits plus a severe motor delay; (2) myofascial pain syndrome resulting from the motor deficits and sometimes co-presenting with cervicalgia and/or occipital neuralgia; (3) keratoconus, irregular (not glasses correctable) astigmatism of both eyes, and dry eye syndrome; (4) gastroparesis, gastroesophageal reflux disease until fundoplication, dysphagia after fundoplication, chronic constipation, and pelvic floor dyssynergia (causing recurrent anal hemorrhoids) seemingly secondary to whole-GI-Tract-neuromotor deficits; (5) chronic urticaria, eczema, allergic keratoconjunctivitis, allergic rhinitis, and allergic sinusitis (with history of sinonasal polyps), and severe airborne food allergies with potential to cause anaphylaxis if not suppressed by medication; (6) circadian rhythm sleep disorder (delayed phase and irregular sleep/wake) and history of sleep apnea until maxillomandibular advancement with septoplasty; (7) chronic oral apthae; and (8) recent C. Difficile infection with possibility of recurrence between now and the February Bar Exam.  Over the past year, these conditions have collectively required me to attend 5-15+ medical treatment appointments per week, undergo six surgeries and associated diagnostic procedure and lab workups, pre and post-operative evaluations, do three different physical therapy prescriptions simultaneously with 6-9 sessions weekly collectively, and do countless time-interval-sensitive specialty biologic medication and allergy immunotherapy in-clinic injections.  In addition to time and scheduling logistics at these appointments, I receive an incessant workload of phone requests or ultimatums to change scheduling from one provider that cascades into unplanned necessity to drop what I am doing and spend hours on the phone or reachable by phone during business hours to resolve without adverse impact to my health, and additional billing and/or insurance coordination overhead. Accordingly, it was my experience that taking the July 2018 California Bar Exam on consecutive days and consequently having a straight week of no availability for the foregoing not only required a herculean degree of effort, planning, and pushing back against health care provider requests, but had adverse effects on my ability to treat my medical conditions and the potential prospective risk of far worse medical impact.  It would have been, and would be, far more manageable for my medical care were the exam to be scheduled over the appropriate number of weekends.

I also incorporate by reference as if fully set forth herein the narrative details in the 2017 Petition, 2017 Appeal, and 2017 supplemental affidavits as they pertain to my autism and visual disabilities.

Reasons Further Accommodations Are Necessary to Adequately Accommodate The
Effects of My Present Multiplicity of Disabilities and Medical Conditions:

I.  Disabilities of Gastroparesis and Nissen Fundoplication Postoperative State:

Due to the Severe Gastroparesis, and also considering my Nissen Fundoplication Postoperative State, to follow the recommendation of more frequent total meals per day adequately spaced so as to minimize bloating and other distracting symptoms during my exam

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

or harm to my health, and to also allow sufficient time during each meal to eat slowly and carefully enough to ensure I don't have esophagus clogging that could prevent me from finishing my remaining exam sessions that day, I respectfully request the following new accommodations:

1. A 30-Minute meal break (excluding any transit time to and from the secured room) per 90 minutes of testing time, as recommended by my PCP Dr. Dresden on his Form B and attachments.  The equivalent proportion of meal break to testing time is also recommended by my California[3] gastroenterologist Dr. Clarke on his Form B, relying on the base time unit (before extra time) of 3 hours, to calculate the relative accommodation amount of total meal time, that was printed by the Bar on that form, but from my consultation with him it was clear he also intended for such meal breaks to be taken as 30-Minute breaks after each 75-105 minutes of testing time rather than the printed unit time-block of 3 hours.  The doctors further make clear that these breaks should not count against my test time.

2. Based on: (1) my above experience on the July 2018 Bar Exam regarding interruptions during the test that are excessively distracting considering the effects of my autism disability; (2) the need for me to time my breaks using a "play it by ear" methodology based on my then appetite, restroom needs, fluctuations in my ability to concentrate, and timing of a stopping point between test questions; and (3) the exact extent of my gastroparesis symptoms on that day: I respectfully request that the accommodation meal breaks not be scheduled or relied on by the proctor for his own lunch break at any particular time, but rather that I be allowed to initiate the start and end of the break within the approved duration and number of breaks per test day at my discretion and without prior notice, just as was the procedure for the singular unaccommodated meal break, but importantly I not be disturbed during the test for updates or speculation on the timing of my breaks without a five minute extension of my test time per interruption.

3. Based on: (1) Dr. Dresden's recommendation for the gastroparesis in his Form B that I be allowed access to snacks and drinks in the testing room to further spread ingestion as needed to even more than extra meal breaks would permit; and (2) whereas I had already been approved for a semi-private room, which <u>could and should be modified to a private room</u> as I received for autism in both college and law school, to minimize the disruptions of eating or drinking to others and the different potential distractions other test-takers may in turn introduce as would disproportionately impact me due to autism for the reasons in the 2017 Petition as if fully set forth herein and adding that my ability to function in classrooms is a vastly different context from the active and time-pressured task of taking an important exam; and (3) were I required to be escorted to the secure break room for meal breaks, the increased number of times accommodation 1. would necessitate leaving the test room and being escorted to the secure break room, then incurring the additional time inefficiency to connect with my proctor and be escorted back to the testing room; and (4) to avoid any distractions from misunderstandings or logistics with my proctor regarding being escorted to and from the secured break room and the timing thereof, <u>to streamline such</u>

---

[3] My Iowa gastroenterologist, Dr. Levin, made the initial diagnosis, but transferred care to Dr. Clarke upon my permanent move back to California.

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**
<u>transitions: I respectfully request to be allowed to take my meal breaks in the testing room, supervised so as to provide confirmation I am not accessing my test during the break.</u>

4. <u>Regardless of whether my breaks from the test are allowed in the test room, I further respectfully request an accommodation adopting Dr. Dresden's recommendation that during the test I be allowed to bring, access, and eat or drink snacks or drinks in the testing room.</u>

II. Disabilities of Myofascial Pain Syndrome & Autism Motor Deficits:

      Whereas I was approved from the 2017 Petition for permission to bring ergonomic workstation components to address myofascial pain, and also for a computer as an accommodation due to fine motor deficiencies caused by my autism: I respectfully request further accommodation specifications that provide a form of relief such that, the necessary accommodations to address the effects of these disabilities are not *de facto* contingent on me assuming any undue extra financial, logistical, or other burdens compared to the "level playing field"[4] of what the policies, resources, and requirements that the State Bar of California chooses to afford to non-disabled candidates provide.  Further, I respectfully request that these disabilities be accommodated in such a way as to not add to or trigger effects from other disabilities, such as anxiety or distractibility from my autism.

      Dr. Dresden, who was also the evaluator who completed the Form B upon which the prior accommodations were granted for the 2017 Petition provides in his new Form B for this Petition that the ergonomic workstation components necessary to adequately address the effects of my myofascial pain in the provided testing conditions include an office chair with certain features that Dr. Dresden expressly acknowledges are not equipped on the typical office chair marketed as ergonomic. To my knowledge and belief, the only commercially available desk chair with all of these features is the Herman Miller Embody Chair I use at home and provided during the July exam, which costs about $1,500.  Dr. Dresden further identifies that an adequate ergonomic workstation would require an adjustable laptop stand, an external keyboard that is compatible with Applicant's laptop (Apple Bluetooth), and neck and/or torso braces.

      Under the July accommodation, Applicant was required to provide these things, the valuable computer equipment he required as an accommodation, and all other exam supplies himself on each of the four test days.  It is Applicant's position that, due to the extraordinary value of the necessary equipment, in the context of the State Bar of California's policy that it assumes no liability for items in the test room, it would place an unreasonable burden on Applicant to leave either his chair or his laptop in the test center overnight, especially if I am not guaranteed a private room (and even if I am).  While the laptop is more portable, there is a

---

[4] <u>Bartlett v. New York State Bd. of Law Examiners</u> (2d Cir. 2000) 226 F.3d 69, citing Americans with Disabilities Act of 1990, § 3(2)(A), 42 U.S.C.A. § 12102(2)(A).

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

limit to the total amount of supplies Applicant can safely transport with his autism motor limitations. Accordingly, commuting with such a large amount of supplies and with heavy furniture such as the chair particularly over the long distance between Applicant's home and the test center, and with all of the other pressures, anxiety, and logistical distractions that would cause during exam schedule, performance, and punctuality constraints, doing so would be an unreasonable and perhaps impossible burden on Applicant that would likely require hired help on each test, consume prime study time, prejudice Applicant's performance, and exacerbate the psychological effects of Applicant's other disabilities (e.g. autism).

The only adequate solution is for Applicant to stay in the hotel in which the exam is administered from the day prior to the first day of the exam (so as to allow time to move both the exam equipment in and all of the other medical equipment, medications, and living supplies Applicant will need with him outside of test hours) through all consecutive days of exam session(s) and the night after the exam to allow time to move out before being required to check out; *or* for the State Bar of California to provide all of the ergonomic equipment specified by Dr. Dresden without Applicant needing to bring his own, including a Herman Miller Embody chair or a chair certified by a physiatrist to have all of the relevant features thereof.

Accordingly, it is Applicant's position that one or more of the following supplemental accommodations is necessary to address these disabilities without violating his statutory rights as a consequence of some or all of the above concerns:

Option 1:  The State Bar of California provides all of the ergonomics equipment specified by Dr. Dresden and listed above, such that Applicant is not required to bring any.

Option 2:  The State Bar of California provides Applicant a room for his lodging in the hotel in which the test room is located as an accommodation from the day prior to the first day of all block(s) of consecutive exam day(s) (so as to allow time to move both the exam equipment in and all of the other medical equipment, medications, and living supplies Applicant would need with him outside of test hours) through all consecutive days of (each) exam session(s) and the night after the last exam day to allow time to move out before being required to check out, with responsibility for securing timely reservations and availability of the room assumed by the Bar, and the room being at the Bar's cost.

Option 3:  Applicant is guaranteed a private (not semi-private) testing room and is allowed to leave all equipment in the test room overnight after the first and through all subsequent exam day(s) and until up to 11:00 am the day after the last exam session.  As an accommodation, the State Bar of California would assume responsibility for the continued availability of all such equipment during each test session and would assume liability for full replacement cost in the event of any loss, theft, or damage that occurs while the equipment is in the Bar's care.

Moreover, regardless of whether the Bar grants a hotel room as an accommodation, the law prohibits the State Bar of California from denying equal access to any resources or services it

8

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

chooses – even where not otherwise required by law – to provide to all candidates, so where it elects to negotiate a group rate with the hotel for lodging as a convenience to any candidate it must ensure equal access to that rate on all of the nights required for an accommodated test schedule, itinerary, or amount of time or days provided.  Further, it must administer the logistics of providing the accommodated test in a manner where it confirms the location of Applicant's test center without that being subject to change in time to provide Applicant reasonable notice to book such a room within the allotted block associated with that rate on all necessary nights, so that Applicant is not forced to assume a risk of forfeiting any non-refundable deposits to reserve a room.

III.  Disabilities of Autism and Keratoconus

        Applicant incorporates the 2017 Petition and 2017 Appeal including the 2017 supplemental affidavits as if fully set forth herein.  In those materials, Applicant's separate evaluators for each of the disabilities did not consider the effects of the other disability in making their recommendation, which for both autism and keratoconus was 100% extra time on all sections. For the July 2018 Bar Exam, Applicant only requested double time in the petition, and only appealed the denial of that amount of time up to that amount; however, in the 2017 Appeal Brief Applicant argued that 100% extra time (the amount given for autism prior to the development of keratoconus in college and law school, and recommended on autism alone by his evaluators) is less than the presently appropriate amount of time for the purposes of a finding that at least 100% extra time be granted.  However, Applicant did not request the appeal provide more than was initially requested on the petition.  On appeal, 100% extra time was granted for the July exam.  Additionally, applicant's autism evaluator Dr. Preston provided one of the supplemental affidavits, that provided an additional evaluation finding that Applicant needs more time on written response tasks than on multiple choice.

    The additional documentation of the keratoconus disability and the supplemental finding of Dr. Preston was considered by my law school for accommodations in my last semester of law school, after submission of the 2017 Petition and Appeal.  Based on the new disability and the new finding, I was approved for 100% extra time on multiple choice exam sections and 150% extra time on written response sections.  (See New Form F either enclosed herein or forthcoming from the University of Iowa College of Law directly).

    When I took the July Bar Exam, I did not finish the CPT even with 100% extra time and struggled to do so on some CBE questions.  However, 100% extra time was adequate for the MBE, which was multiple choice.

A.  Extra Time

    Based on all of the arguments in the 2017 Appeal that even 100% extra time may not be adequate and more than that may be warranted, on the fact that I was separately recommended for 100% for each disability not considering the other, on my failure to finish the

9

**Form A Narrative and Brief in Support of Petition for Renewal of the July 2018 California Bar Exam Accommodations, and for Additional New Accommodations, in the Event Applicant Did Not Pass the July 2018 Exam and Retakes in February 2019; File No. 468532**

CPT in July, on the new evaluator finding(s) in the 2017 Supplemental Affidavits, and on my approval for 150% extra time on written sections and 100% extra time on multiple choice sections for exams in my last semester of law school, I respectfully request that I be given 150% extra time on the CBE and CPT, and be renewed for 100% extra time on the MBE.

B.  Scheduling

   I respectfully request that, due to the increased amount of break time required by my G.I. conditions and any additional extra time granted in A. for the reasons above, and the endurance effect longer test days would have on my performance noted in the 2017 Appeal, I be granted an adjustment in the number of days such that the total hours per test day do not exceed that of a standard (non-accommodated) test day.

   Due to the difficulty I had for July in blocking off a whole consecutive business week of effectively no business hours availability for medical appointments or response to scheduling change ultimatums, and the multiplicity of health conditions I manage ongoing, I also respectfully request that my test days be spread over three or more weekends to allow for flexible medical appointment availability that is not possible when sequestered for all-day testing so many days in a row.

C.  Minimum-Distraction Administration

   Due to my autism distractibility and anxiety, and the effects this has on my ability to concentrate during the exam, based on my experience described above during the July exam, I ask that my proctor and Bar staff minimize noise and refrain from discussion of employment terms during the test session in the test room.  I further respectfully request that, as an accommodation, I be provided a proctor who has been thoroughly trained and onboarded on all material rules and procedures well in advance of the test and that the Bar take all reasonable measures to verify the accuracy of their understanding ahead of the test.  Finally, I respectfully request that the State Bar of California arrange clear terms of employment with its proctors and other agents before the exam where all parties have had a chance to review all certain and potential requirements to fulfill all accommodations approved, and where the proctor has studied the particular accommodations they will be administering.

I hereby certify under penalty of perjury under the laws of the State of California that all statements of fact made herein are true to the best of my knowledge and belief.

Respectfully Submitted,
Benjamin Kohn



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

# FORM A
## PETITION FOR TESTING ACCOMMODATIONS
All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

## I. BACKGROUND INFORMATION

1. Full Name: __Benjamin__   __Sean__   __Kohn__
                     First         Middle        Last

   Date of Birth: __12/29/1993__   File Number*: __468532__

   (*You must be registered as a student or attorney with the Committee of Bar Examiners before filing a petition for testing accommodations.)

2. I intend to take the following examination:

   ☐ First-Year Law Students' Examination (FYLSX)

   ☑ California Bar Examination (CBX)

3. Date of examination I intend to take: __February/2019__
                                              Month/Year

4. Have you previously taken the California Bar Examination or First-Year Law Student's Examination?

   ☑ YES   ☐ NO

   If yes, which examination(s) (list all examinations taken): __July/2018__
   __California Bar Exam__                                           Month/Year

5. If yes, did you request testing accommodations to take the examination(s)?

   ☑ YES   ☐ NO

## II. DISABILITY STATUS

1. Check the disability or disabilities for which you are requesting accommodations:

[✓] Visual impairment          [✓] Specific learning disorder/disability

[ ] Hearing impairment         [ ] ADHD

[✓] Other physical disability (specify):    [ ] Psychological disability

myofascial pain syndrome      [ ] Other disability (specify):

Gastroparesis, Nissen
Fundoplication post op state

2. Narrative Description (**REQUIRED**)

Attach a narrative description of the nature and extent of your specific disability or disabilities, when and how it/they were first identified, and how it/they affect your daily life. Please describe the functional limitations related to your disability that directly affect your ability to take the examination. See attached

3. When did you first acquire the disability (approximate date and age)? Gastroparesis,
See 2017 petition for autism & keratoconus; 10/2017  8/2018 Fundoplication
          myofaciah,                                      postop

4. Who was the medical professional (name, occupation, and specialty) who first
diagnosed your disability?                      see 2017 petition
-evin for Gastroparesis, Gastroenterology, GI Surgeon;  for rest
Dr. Hawn for surgery,                                  See 2017
                                                       petition
5. When was the disability first diagnosed by a treating professional (date and age)?  for rest
2018 Gastroparesis, 8/2018 Surgery (24 years old),

6. Are you currently being treated:    [✓] YES   [ ] NO

If yes, provide the name, qualifications and contact number of your current
treating professional. See 2017 forms B, C, H, and
              2018 forms B

7. What treatment and/or medication are currently being prescribed?
N/G.

8. Are you taking the treatment and/or medication as prescribed?  [✓] YES  [ ] NO

9. Are the treatment and/or medication effective in addressing or controlling your symptoms?

☐ YES  ☑ NO  ☐ N/A

If no, explain why not _Symptomatic, no expectation of ability_
_still symptomatic, no expectation of ability_
_to fully cure or remedy. from profs._

## III. PAST ACCOMMODATIONS

1. Did you receive disabled-student services, tutoring services, and/or testing accommodations in elementary, middle school or junior high school and/or high school?

☑ YES  ☐ NO

If yes, provide the name of the school(s) and years attended, and attach any written documentation of accommodations granted and/or documentation of other services received. _See 2017 petition_

What was your disability? _See above_

What accommodations did you receive? _See 2017 petition_

2. Did you receive disabled-student services, tutoring services and/or testing accommodations in college?

☑ YES  ☐ NO

If yes, provide the name of the school(s) and years attended, and attach any written documentation of accommodations granted and/or documentation of other services received. _See 2017 petition_

What was your disability? _See above_

What accommodations did you receive? _See 2017 petition_

TA-FormA.0417

3

3. Did you request testing accommodations in law school?

☑ YES  ☐ NO

If yes, were they granted?  ☑ YES  ☐ NO

If granted, in addition to responding to the following questions, you must submit a completed law school verification form (**Form F**) from each law school you attended, which must be signed by an official law school representative.

What was your disability?  _See Above_

What accommodations did you receive?
_See Form F_

If your request was denied, or only partially granted, please explain:
_N/A_

4. Did you request accommodations to take the LSAT?

☑ YES  ☐ NO

If yes, attach a copy of the letter you received from LSAC detailing the results of your request(s) for testing accommodations for each administration of the LSAT you took.

What was your disability?  _See Above_

What accommodations did you receive?  _See 2017 Petition for Letters_

If your request was denied, or only partially granted, please explain:
_See 2017 Appeal Brief_

TA-FormA.0417

4

Case 4:20-cv-04827-PJH    Document 64-1    Filed 01/09/25    Page 152 of 356

5. Did you request accommodations to take the Multistate Professional Responsibility Examination (MPRE)?

[✓] YES    [ ] NO

If yes, attach a copy of the letter you received from NCBE/ACT/LSAC detailing the results of your request(s) for testing accommodations for each administration of the MPRE you took.

What was your disability? _See Above_

What accommodations did you receive? _See 2017 Petition_

If your request was denied, or only partially granted, please explain: _See 2017 Petition and 2017 Appeal Brief_

6. When applying for another jurisdiction's bar examination, did you request testing accommodations?

[ ] YES    [ ] NO    N/A

If yes, in addition to responding to the following questions, you must submit a completed Other Jurisdiction's Testing Accommodations Verification form (**Form G**) from each state from which you requested testing accommodations, which must be signed by an official from the bar admission office administering the bar examination in that state.

What was your disability? _N/A_

What accommodations did you receive? _N/A_

If your request was denied, or only partially granted, please explain: _N/A_

TA-FormA.0417

5

# IV. ACCOMMODATIONS REQUESTED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

## FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination

TA-FormA.0417

is administered in a quiet environment, and applicants are allowed to use small foam earplugs. They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Other: _____

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice answer sheet (Scantron sheet) (choose one)

☐ Permission to circle answers in question booklet

☐ Permission to dictate answers to proctor

☐ Dictate to a voice recorder (choose one)

☐ Digital voice recorder (for use with flash memory cards)

☐ Tape recorder (for use with microcassette tapes)

☐ Other: _____

**Equipment or Facility Requirements**

☑ Computer *as an accommodation* (must have direct nexus to the effects of the disability)

☐ with SofTest installed

☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

☐ with screen-reading software (e.g., JAWS) installed

☐ with other (specify): _____

☑ Special equipment (specify): Ergonomic workstation per FormB specs, computer Hotel Room as an accommodation

TA-FormA.0417

☑ Private room

☐ Semi-private room

☐ Wheelchair accessibility (if table, specify height): _____

☐ Other: _____

Please provide a rationale for each request indicated above (attach additional sheets if necessary):    *See Attached Brief Narrative*

_____
_____
_____
_____

## Accommodation of Extra Time

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination: Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:    *4.5 hours, See Attached*

_____
_____

**California Bar Examination: Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:    *4.5 hours, See Attached*

_____
_____

**California Bar Examination: Multistate Bar Examination - MBE (each standard**

session is 3 hours):  Specify the amount of extra test time needed <u>for each MBE</u> <u>session</u> and provide the rationale:  4.5 hours, see attachment

**First-Year Law Students' Examination:  Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

N/A

**First-Year Law Students' Examination:  Multiple-Choice (standard session is 3 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

N/A

<u>**Explanations:**</u>  (attach additional sheets if necessary)

N/A

## CERTIFICATION AND AUTHORIZATION

I am aware that it is my responsibility to file a complete petition, which includes all necessary forms, by the applicable deadline, and I understand that the petition will not be processed if found to be incomplete.  I have attached all **original** forms, supporting affidavits and/or documents in legible form.  Facsimile, scanned, or other copies are not accepted.  All original documents submitted become the property of the Committee of Bar Examiners.  I understand that if my petition is not received in the San Francisco Office of Admissions by the final application filing deadline for a particular administration of an examination, it will not be processed for that examination, but for an examination to be administered in the future.  This is a "received by" deadline and NOT a postmark deadline.  There are no exceptions to the deadline.

I understand that it is possible that my petition for testing accommodations and all supporting documents may be referred to one or more expert consultants retained by the Committee of Bar Examiners for review.  I authorize such disclosure, and

further consent to having a State Bar representative, staff or consultant contact my specialist to discuss the information provided by the specialist and my request for testing accommodations for an examination administered by the Committee of Bar Examiners. I also authorize contact with and release of information by all educational institutions and/or testing agencies that have provided me with testing accommodations and/or are considering a pending application for testing accommodations, to clarify the accommodation(s) that have been granted or will be granted or denied.

I declare under penalty of perjury under the laws of the State of California that the information I have provided in support of my petition for testing accommodations is true and correct. I understand that, if the Committee of Bar Examiners determines that I, or a third party on my behalf, submitted as part of this petition any information or documentation that is false, inaccurate or intentionally misleading, it could result in denial of my admission to practice law in California based on moral character grounds.

[✓] I have read and understand and agree to the terms and conditions of this Certification and Authorization.

_Benjamin O. John_                                    _1/1/2018_
(Applicant Signature)                                 (Date)



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

**180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300**
**845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500**

# FORM B
## TESTING ACCOMMODATIONS – PHYSICAL DISABILITIES VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

**NOTICE TO APPLICANT**: This section of this form is to be completed by you. The remainder of the form is to be completed by the qualified professional who is recommending testing accommodations for the California Bar Examination or First-Year Law Students' Examination for you on the basis of a physical disability. Please read, complete, and sign below before submitting this form to the qualified professional for completion of the remainder of this form.

Applicant's Full Name: Benjamin Sean John

File Number: 469532

    I give permission to the qualified professional completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

Benjamin John

**Signature of Applicant**

11/1/2018

**Date**

**NOTICE TO QUALIFIED PROFESSIONAL:**

The above-named person is requesting accommodations for the California Bar Examination or First-Year Law Students' Examination. All such requests must be supported by appropriate documentation (including evaluation reports, test results and/or medical records) from the qualified professional who conducted an individualized assessment of the applicant and is recommending accommodations for the examination on the basis of a physical disability. The Committee of Bar Examiners also requires the qualified professional to complete this form. **If any of the information requested in this form is fully addressed in the documentation submitted (evaluation reports, test results, medical records, etc.), you may respond by citing the specific page and paragraph where the answer can be found.** Please attach a copy of the evaluation report and/or all records and test results on which you relied in making the diagnosis and recommending accommodations for the examination administered by the

TA-FormB.0417

1

Committee of Bar Examiners. Your assistance is appreciated.

The provision of reasonable accommodations is based on assessment of the *current* impact of the disability on the specific testing activity. The Committee of Bar Examiners generally requires documentation from an evaluation conducted within the past year because of the changing manifestations of many physical disabilities. Older evaluation reports may suffice if supplemented by an update of the diagnosis, current level of functioning, and a rationale for each recommended accommodation or an explanation of why the report and/or other documentation continue to be relevant in their entirety.

The Committee of Bar Examiners may forward this information to one or more qualified professionals for an independent review of the applicant's request. Print or type your responses to the items below. **Return the original of this completed form, the evaluation report, test results, and/or other relevant records to the applicant for submission to the Committee of Bar Examiners.**

## I. EVALUATOR/TREATING PROFESSIONAL INFORMATION

Name of professional completing this form: Graham Dresden, MD

Address: 701 E. El camino Real   Mountain View, CA 94040

Telephone: 650-404-8370      Fax: 650-404-8470

E-Mail: —

Occupation, title, and specialty: Physician - Family Medicine

License Number/Certification/State: A105743 - California

Describe your qualifications and experience to diagnose and/or verify the applicant's condition or impairment and to recommend accommodations.

I am a Board Certified Family Medical Specialist with over ten years of experience diagnosing and treating patients like Mr. Kohn.

## II. DIAGNOSIS AND RESULTING FUNCTIONAL LIMITATIONS

1. What is the specific diagnosis (including diagnosis code) for which the applicant requests testing accommodations?

   ① Myofascial Pain Syndrome — M79.1
   ② Autism Spectrum Disorder — F84.0
   ③ Gastroparesis — K31.84

2. Describe the nature of the physical disability. Include a history of presenting

symptoms, date of onset, and ~~description~~
disability.

① Neck, back, shoulder pain that started in 2012. The symptoms vary in intensity but are persistent.
② Abdominal discomfort for many years, symptoms vary in intensity.

3. When did you first meet with the applicant? _2010_

4. When was the applicant's physical disability first diagnosed? ① 2012  ② 2018

5. Did you make the initial diagnosis?  →① ☒ YES   →② ☒ NO

If no, provide the name of the professional who made the initial diagnosis and when it was made, if known. Attach copies of any prior evaluation reports, test results, or other records related to the initial diagnosis that you reviewed.

② The gastroparesis was initially made by the GI doctor at the University of Iowa and confirmed at Stanford Hospital. I've attached the relevant study confirming this.

6. Provide the date of your last complete evaluation of the applicant: _October 2018_

7. Is this a permanent condition/impairment?  ☒ YES   ☐ NO

If no, when is it likely to abate?

_____

8. Does the severity of the condition/impairment fluctuate?  ☒ YES   ☐ NO

If yes, describe the settings and/or circumstances affecting severity that are relevant to taking the California Bar Examination of First-Year Law Students' Examination.

① Improper ergonomics can aggravate his symptoms.

② Prolonged sitting without proper breaks for timed meals can aggravate his condition.

9. Describe the applicant's current functional limitations and explain how the limitations restrict the condition, manner, or duration under which the applicant can take the California Bar Examination or First-Year Law Students' Examination.

① He can not sit for a prolonged time without proper ergonomics, which could lead to pain and disruption of thought.
② His ability to have frequent small meals would not allow proper nutrition and one large meal could aggravate his abdominal pain.

TA-FormB.04/17

10. Briefly describe any treatment, including any prescribed medications, and the effectiveness of treatment in reducing or ameliorating the applicant's functional limitations.

① Treatment has mainly be improve strength and flexibility through vigorous and extensive physical therapy.
② He has tried multiple different medications, but ultimately underwent surgery (pyloroplasty) to help with his symptoms due to the severity.

## III. ACCOMMODATIONS REQUESTED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

### FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

TA-FormB.0417

4

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination is administered in a quiet environment, and applicants are allowed to use small foam earplugs. They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Other: _____

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice answer sheet (Scantron sheet) (choose one)

☐ Permission to circle answers in question booklet

☐ Permission to dictate answers to proctor

☐ Dictate to a voice recorder (choose one)

☐ Digital voice recorder (for use with flash memory cards)

☐ Tape recorder (for use with microcassette tapes)

☐ Other: _____

**Equipment or Facility Requirements**

☒ Computer *as an accommodation* (must have direct nexus to the effects of the disability) *see prior approval*

TA-FormB.0417

5

☐ with SofTest installed

☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

☐ with screen-reading software (e.g., JAWS) installed

☐ with other (specify): _____

☐ Special equipment (specify): _____

☐ Private room

☐ Semi-private room

☐ Wheelchair accessibility (if table, specify height): _____

☒ Other: _____

Please provide a rationale for each request indicated above (attach additional sheets if necessary):

*See attached paperwork*

_____

_____

_____

_____

**Accommodation of Extra Time**

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination: Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

*See prior approvals and additional forms*

_____

_____

TA-FormB.0417

**California Bar Examination:   Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):** Specify the amount of extra test time needed for this session and provide the rationale:

*See prior approvals and additional forms*

**California Bar Examination:   Multistate Bar Examination - MBE (each standard session is 3 hours):** Specify the amount of extra test time needed for each MBE session and provide the rationale:

*See prior approvals and additional forms*

**First-Year Law Students' Examination:   Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):** Specify the amount of extra test time needed for this session and provide the rationale:

*See prior approvals and additional forms*

**First-Year Law Students' Examination:   Multiple-Choice (standard session is 3 hours):** Specify the amount of extra test time needed for this session and provide the rationale:

*See prior approvals and additional forms*

**Explanations:** (attach additional sheets if necessary)

## IV. CONFIDENTIALITY

Confidentiality policies of the Committee of Bar Examiners/Office of Admissions of the State Bar of California will be followed regarding its responsibility to maintain confidentiality of this form and any documents submitted with it.  No part of the form or the accompanying medical documentation will be released without the applicant's written consent or under the compulsion of legal process.

TA-FormB.0417

7

## V. PROFESSIONAL'S SIGNATURE

I am submitting the **original** of this form and have attached  copies of all evaluation reports, test results, medical records, and/or other documents that I relied upon in making this diagnosis of the applicant's condition/disability and completing this form. I understand that all original documents submitted become the property of the Committee of Bar Examiners.

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct.

_____        10/12/2018
(Signature of Licensed Professional)                                  (Date)

The Committee of Bar Examiners reserves the right to make final judgment concerning testing accommodations and may have all documentation related to this matter reviewed by an individual professional consultant or a panel of professional consultants if deemed necessary.

TA-FormB.0417

NUC GASTRIC EMPTYING SOLID
University of Iowa Hospitals and Clinics (UIHC)

**Result Impression**

Impression: Severely decreased rate of gastric emptying for solid phase.

The findings of the study were discussed with Dr. Levin, Avraham pager 4210 at 1055 hours on 5/23/2018.

**Result Narrative**

Procedure: NUC GASTRIC EMPTYING-SOLID (78264)

Indication: Postprandial fullness.

Radiopharmaceutical: Technetium-99m (Tc-99m) labeled sulfur colloid 1.08 mCi PO.

Technique: After the patient ate the standard radiolabeled meal, anterior and posterior images of the abdomen were obtained at multiple time points over the course of 2 hrs. Regions of interest were drawn around the stomach to quantify clearance of activity over time by geometric mean analysis.

Findings: Initial images show activity within the stomach. Subsequent images show slow transit of activity into the small bowel activity over the acquisition interval. Based on the time-activity curve, only 24% of the initial gastric activity is emptied at 2 hours (normal: more than 40%).

| Status | Results Details |
|---|---|
| | Encounter Summary |

---

**▼ NM Gastric Emptying Solid**                                                   5/25/2018
Stanford Health Care and University Healthcare Alliance

**Result Impression**

IMPRESSION:

1. Very severely delayed gastric emptying with 66% of radiotracer remaining in the stomach at the 4 hour time point.

"Physician to Physician Radiology Consult Line: (650) 736-1173"

Signed

**Result Narrative**

GASTRIC EMPTYING STUDY: 5/25/2018 12:00

CLINICAL HISTORY: 24 years of age, Male, with history concerning for gastroparesis, referred for evaluation of gastric emptying.

COMPARISON: None.

PROCEDURE COMMENTS:
Radiopharmaceutical: Tc-99m sulphur colloid 0.558 mCi PO.
Technique: A standard meal consisting of Eggbeater 120 ml, toast, jam and water was labeled with the radiopharmaceutical and administered orally to the patient. The patient ate the meal in 10 minutes. Subsequent static images were obtained at approximately 60, 120, 180 and 240 minutes post ingestion, to calculate percent emptying.

FINDINGS:

There is prompt radiopharmaceutical accumulation within the stomach. There is initial filling of the gastric fundus, followed by movement to the antrum. There is subsequent emptying of the radiotracer into the proximal gastrointestinal tract. The emptying fraction (at interpolated times) are as tabulated:

| Time (minutes) | % Emptying | Normal Range % Empty |
|---|---|---|
| 60 | 28 | 10-70% |
| 120 | 29 | 40-100% |
| 180 | 29 | 70-100% |
| 240 | 34 | 90-100% |

| Status | Results Details |
|---|---|
| | Encounter Summary |

**Sutter Health**
Palo Alto Medical Foundation

**We Plus You**

Benjamin Kohn
1913 Fordham Way
Mountain View CA 94040
October 12, 2018

To whom it may concern,

Re: Accommodations attachment

1.
(M79.18) Myofascial pain syndrome and
(F84.0) Autism spectrum disorder

For the myofascial pain syndrome, I request renewal of the accommodation previously approved to bring any ergonomic workstation materials. These materials include a chair with dynamic spinal support (for example, a Herman Miller Embody office chair or one with equivalent features) - the relevant features of this chair exceeds the standards of most standard office chairs. In addition, ergonomic equipment should include an adjustable laptop stand, mac-compatible bluetooth or thunderbolt external keyboard, wearable braces. He has previously been approved a computer as an accommodation based on Autism fine motor disability.

2.
(K31.84) Gastroparesis

I recommend a 30-minute supervised meal break per 90 minutes of testing time. The 30 minutes need to be used only for the completion of the meal. Any time getting to and from the testing site should be considered additional break time. This is in addition to the extra time that was previously approved to accommodate his other disabilities. The additional meal time break is based on the recommendation of six smaller meals per day due to severe gastroparesis (see attached Gastric emptying study) and more limited swallowing capacity due to his recent Nissen fundoplication. This restricts his ability to take large bites of foods (and hence makes the consumption of a meal more prolonged than an average person).

I also request permission to bring and eat snacks and drinks into the testing room. This request is due to more than typical dysphagia from his recent Nissen Fundoplication.

Patient has been approved on previous test administration to have extra time due to Autism and other disabilities. These breaks should not impact the amount of testing time offered to the patient.

Graham Dresden, MD



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

# FORM B
## TESTING ACCOMMODATIONS – PHYSICAL DISABILITIES VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

**NOTICE TO APPLICANT**: **This section of this form is to be completed by you.** The remainder of the form is to be completed by the qualified professional who is recommending testing accommodations for the California Bar Examination or First-Year Law Students' Examination for you on the basis of a physical disability. Please read, complete, and sign below before submitting this form to the qualified professional for completion of the remainder of this form.

Applicant's Full Name: _Benjamin Sean Kohn_

File Number: _468532_

I give permission to the qualified professional completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

_Benjamin Kohn_
_____
Signature of Applicant

_11/12/18_
_____
Date

**NOTICE TO QUALIFIED PROFESSIONAL:**

The above-named person is requesting accommodations for the California Bar Examination or First-Year Law Students' Examination. All such requests must be supported by appropriate documentation (including evaluation reports, test results and/or medical records) from the qualified professional who conducted an individualized assessment of the applicant and is recommending accommodations for the examination on the basis of a physical disability. The Committee of Bar Examiners also requires the qualified professional to complete this form. **If any of the information requested in this form is fully addressed in the documentation submitted (evaluation reports, test results, medical records, etc.), you may respond by citing the <u>specific page and paragraph</u>** where the answer can be found. Please attach a copy of the evaluation report and/or all records and test results on which you relied in making the diagnosis and recommending accommodations for the examination administered by the

TA-FormB.0417

1

Committee of Bar Examiners. Your assistance is appreciated.

The provision of reasonable accommodations is based on assessment of the *current* impact of the disability on the specific testing activity. The Committee of Bar Examiners generally requires documentation from an evaluation conducted within the past year because of the changing manifestations of many physical disabilities. Older evaluation reports may suffice if supplemented by an update of the diagnosis, current level of functioning, and a rationale for each recommended accommodation or an explanation of why the report and/or other documentation continue to be relevant in their entirety.

The Committee of Bar Examiners may forward this information to one or more qualified professionals for an independent review of the applicant's request. Print or type your responses to the items below. **Return the original of this completed form, the evaluation report, test results, and/or other relevant records to the applicant for submission to the Committee of Bar Examiners.**

## I. EVALUATOR/TREATING PROFESSIONAL INFORMATION

Name of professional completing this form: John CLARKE

Address: 420 Broadway Street

Telephone: 650 736 5555        Fax: 650 446 6323

E-Mail: N/A

Occupation, title, and specialty: M D

License Number/Certification/State:

Describe your qualifications and experience to diagnose and/or verify the applicant's condition or impairment and to recommend accommodations.

Dr. John CLARKE is patients GI doctor. Patient has trouble swallowing, abdominal discomfort and reoccurrent stool infection

## II. DIAGNOSIS AND RESULTING FUNCTIONAL LIMITATIONS

1. What is the specific diagnosis (including diagnosis code) for which the applicant requests testing accommodations?

    * gastroparesis K31.84

2. Describe the nature of the physical disability. Include a history of presenting

TA-FormB.0417

2

disability.

When did you first meet with the applicant?  5/29/18

. When was the applicant's physical disability first diagnosed?  5/25/18

. Did you make the initial diagnosis?  ☑ YES  ☐ NO

If no, provide the name of the professional who made the initial diagnosis and when it was made, if known.  Attach copies of any prior evaluation reports, test results, or other records related to the initial diagnosis that you reviewed.

9/20/18

6. Provide the date of your last complete evaluation of the applicant:  9/20/18

7. Is this a permanent condition/impairment?  ☑ YES  ☒ NO

If no, when is it likely to abate?

8. Does the severity of the condition/impairment fluctuate?  ☑ YES  ☒ NO

If yes, describe the settings and/or circumstances affecting severity that are relevant to taking the California Bar Examination of First-Year Law Students' Examination.

Patient needs frequent breaks for meals due to diagnosis

9. Describe the applicant's current functional limitations and explain how the limitations restrict the condition, manner, or duration under which the applicant can take the California Bar Examination or First-Year Law Students' Examination.

Patient needs frequent breaks for patients gastroparesis

TA-FormB.0417

3

effectiveness of treatment in reducing or ameliorating the applicant's functional
limitations.

*Small frequent meals*

## III. ACCOMMODATIONS REQUESTED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

### FORMAT

The California Bar Examination is a timed examination administered over two days,
consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour
afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00
a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is
scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each
day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two
one-hour essay questions plus one 90-minute Performance Test question in the
afternoon session. The written portions of the examination are designed to assess,
among other things, the applicant's ability to communicate his/her analysis effectively in
writing. Applicants may use their personal laptop computers to type their answers, or
they may handwrite their answers. The second day consists of 200 multiple-choice
questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the
morning session and 100 questions in the afternoon session. Applicants record their
answers by darkening circles using a Number 2 pencil on an answer sheet that is
scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered
in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-
hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice
each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is
administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions
are designed to assess, among other things, the applicant's ability to communicate
his/her analysis effectively in writing. Applicants may use their personal laptop
computers to type their answers, or they may handwrite their answers. The afternoon
session consists of 100 multiple-choice questions. Applicants record their answers by
darkening circles using a Number 2 pencil on an answer sheet that is scanned by a
computer to grade the examination.

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination is administered in a quiet environment, and applicants are allowed to use small foam earplugs. They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Other: _____

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice answer sheet (Scantron sheet) (choose one)

  ☐ Permission to circle answers in question booklet

  ☐ Permission to dictate answers to proctor

☐ Dictate to a voice recorder (choose one)

  ☐ Digital voice recorder (for use with flash memory cards)

  ☐ Tape recorder (for use with microcassette tapes)

  ☐ Other: _____

**Equipment or Facility Requirements**

☐ Computer as an accommodation (must have direct nexus to the effects of the disability)

TA-FormB.0417

5

☐ with SofTest installed

☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

☐ with screen-reading software (e.g., JAWS) installed

☐ with other (specify): _____

☐ Special equipment (specify): _____

☐ Private room

☐ Semi-private room

☐ Wheelchair accessibility (if table, specify height): _____

☑ Other: _____

Please provide a rationale for each request indicated above (attach additional sheets if necessary):

Small frequent breaks for
eating given patients dx
_____
_____
_____

## Accommodation of Extra Time

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination: Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

more frequent breaks for patient
beat . one hor breaks
_____

TA-FormB.0417

6

*California Bar Examination:* Essay Questions 1 & 3, and Performance Test (standard session is 3 hours and 30 minutes): Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

*One hour break*

**California Bar Examination:  Multistate Bar Examination - MBE (each standard session is 3 hours):** Specify the amount of extra test time needed <u>for each MBE session</u> and provide the rationale:

*One hour break*

**First-Year Law Students' Examination:  Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

*One hour break)*

**First-Year Law Students' Examination:  Multiple-Choice (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

*One hour break)*

<u>Explanations:</u>  (attach additional sheets if necessary)

## IV. CONFIDENTIALITY

Confidentiality policies of the Committee of Bar Examiners/Office of Admissions of the State Bar of California will be followed regarding its responsibility to maintain confidentiality of this form and any documents submitted with it.  No part of the form or the accompanying medical documentation will be released without the applicant's written consent or under the compulsion of legal process.

TA-FormB.0417



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

## FORM F
## LAW SCHOOL VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Please print or type; must be legible)

**NOTICE TO APPLICANT:** This section of this form is to be completed by you. The remainder of the form is to be completed by the law school official who can confirm the testing accommodations that you received during law school. Please read, complete and sign below before submitting this form to the law school official for completion of the remainder of this form.

Applicant's Full Name: __Benjamin Sean Kohn__

File Number: __468532__

I give permission to the law school official completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

__Benjamin Kohn__                          __11/1/2018__
Signature of Applicant                     Date

## NOTICE TO LAW SCHOOL OFFICIAL:

The above-named person is requesting accommodations for the California Bar Examination or First-Year Law Students' Examination. Please print or type your responses to the items below that pertain to the applicant's accommodations that he/she received in law school.

I, __Carin N. Crain__ _____, state that my position
(Name of Law School Official Completing Form)

is __Associate Dean for Student Affairs__ at __University of Iowa College of Law__
(Dean/Registrar/Disabilities Program Coordinator)        (Name of Law School)

As such, it is my responsibility to authorize any testing accommodations requested by students with disabilities for the specific purpose of allowing such students to take examinations on an equal basis with other students.

TA-FormF.0417

1

The above named applicant, who _was_ in attendance at this law school, _was_
(is/was)                                              (was/was not)

given authorization to receive testing accommodations during the administration of examinations at this school.

Applicant was accommodated for the following disability or disabilities:

Autism Spectrum Disorder/Asperger's Syndrom

And was granted the following accommodation(s). List all accommodations granted and the dates thereof. If the applicant received different accommodations over time, please provide the full history:

Fall 2015 semester: double time

Spring 2016 semester: double time

Summer 2016 semester: double time

Fall mid-term 2016: double time and distraction free testing room

Fall 2016 semester: double time and distraction free testing room

Spring 2017 semester: double time and distraction free testing room

Fall 2017 semester: double time and distraction free testing room

Spring 2018 semester: 150% extra time, private room, and clock in room

I declare under penalty of perjury under the laws of the State of California and/or the United States that the above information is true and correct.

Executed on _November 1, 2018_ by _Carin M Crain_
              (Date)                          (Signature)

Address: University of Iowa College of Law

280 Boyd Law Building

Iowa City, IA 52242

Telephone: 319-335-9034

E-Mail: Carin-Crain@uiowa.edu          Fax: 319-335-9019

Please send the completed form to the State Bar of California's San Francisco address listed above, Attn: Office of Admissions, or return to the applicant.

TA-FormF.0417



**The State Bar**
*of California*

THE COMMITTEE OF BAR EXAMINERS
OFFICE OF ADMISSIONS

Tel: 415-538-2300
Tel: 213-765-1500

180 Howard Street, San Francisco, CA 94105
845 S. Figueroa Street, Los Angeles, CA 90017

December 28, 2018

Benjamin Sean Kohn
1913 Fordham Way
Mountain View, CA  94040

File No.: 468532
Applicant No.: 4765

Dear Mr. Kohn:

Review of your petition for expanded testing accommodations during administration of the
February 2019 California Bar Examination has been completed.  Enclosed please find a Testing
Accommodations Notice, which specifies the accommodations that have been granted and the
test center to which you have been assigned, and a bulletin entitled: "Important Information and
Guidelines for Applicants Granted Testing Accommodations During Administration of the
February 2019 California Bar Examination."  The expanded accommodations granted are based
on a physical disability only.

Your requests, however, for additional extra time for each session of the examination; for an
additional 30 minutes for each 90 minutes of testing for meal breaks (excluding any transit time
to and from the secured lunch room or permission to take meal breaks in examination room);
permission to initiate the start and end of all lunch and other break times within the approved
duration and number of breaks per test day at applicant's discretion and without prior notice; for
testing for no more than 6.5 hours per day; for the examination to be scheduled over the
appropriate number of weekend days to accommodate numerous medical appointments; for
testing in a private room; for the Committee of Bar Examiners (Committee) to provide a
complete ergonomic workstation (including $1,500 chair, adjustable laptop stand, an external
keyboard that is compatible with applicant's laptop with Apple Bluetooth, and neck and/or torso
braces); for the Committee to pay for applicant's hotel room during the examination starting the
day before the exam throughout examination and the night following the examination with the
Bar; for a guaranteed private testing room and permission to leave all equipment in the test room
overnight after the first and through all subsequent exam days and until 11:00 am the day after
the last day of testing and the Bar will assume full liability for applicant's ergonomic equipment
and computer during the examination; and for assignment to an experienced proctor have been
denied, as the documentation that you and your specialist have provided does not adequately
support those requests.  The additional extra time and other accommodation granted should be
sufficient to address the effects of your disability.

Benjamin Sean Kohn
December 28, 2018
Page 2

Seating at the testing accommodations test centers is limited because of the logistics associated with the test center and sometimes private rooms are assigned as a matter of course. If such happens to be assigned to you, it is not a guarantee that you will have the same sort of assignment for a future examination. Accommodations are not provided as a matter of preference or convenience.

Schedule guidelines may vary at the discretion of the Committee. Applicants should carefully review the examination schedule provided in the testing accommodations notice for each administration of the examination.

If you wish to request a review of this determination by the Committee, the appeal must be in writing, addressed to the Committee and directed to the attention of the Director for Admissions, and received in the Office of Admissions in San Francisco within ten (10) days of the date of this letter. The appeal must specify the reason why you do not agree with this determination and include any supporting documentation or evidence you wish the Committee to consider. All appeals filed with the Committee must be made under penalty of perjury.

Once your appeal has been received in complete form, the appeal will be considered first by staff to determine whether reconsideration of the decision is in order. If not, the Committee would consider the appeal in closed session during its next regularly scheduled meeting. The Committee's determination would be communicated to you as soon as practicable following the meeting.

If you would like further assistance, please feel free to contact the office at the above address.

Sincerely,

Lisa Jeong Cummins
Program Manager III, Examinations

lt.1228.18

# THE COMMITTEE OF BAR EXAMINERS OF THE STATE
## TESTING ACCOMMODATIONS NOTICE

**Name of Applicant:**    **Benjamin Sean Kohn**
**File No.:**    468532
**Applicant No.:**    4765
**Examination:**    February 2019 California Bar Examination
**Date of Notice:**    December 28, 2018
**Test Center Assignment:**    **(S623)**
   Crowne Plaza Hotel
   1177 Airport Blvd.
   Burlingame
   **(Laptop)**

The exam files that contain your answers for the written portion of the examination should be uploaded as soon as possible following the examination sessions. **You must upload both (2) exam answer files by 12:00 p.m. (Pacific Time), Saturday, March 2, 2018.** There are significant sanctions for not uploading your exam files by the deadline. Please refer to the bulletin associated with your admittance ticket, which will be available online after eligibility to take the examination is verified.

**Accommodation Granted:**

- A total of 6 hours and 30 minutes for the first session of the written portion of the examination;

- A total of 7 hours and 30 minutes for the second session of the written portion of the examination;

- A total of 6 hours and 30 minutes for each Multistate Bar Examination (MBE) session of the examination;

- Administration of the examination over a 4-day period;

- Testing in a semi-private room;

- Permission to use your own laptop computer and a backup computer, both with Examplify installed, which confirm with the Committee's policies, as an accommodation;

- Permission to bring your own adjustable ergonomic chair and other ergonomic items, subject to inspection by staff, into the examination room for each session of the examination, including the MBE; and

- Permission to bring food (must be unwrapped and non-aromatic) and beverage (container must have a lid), subject to inspection by staff, into the examination room during each session of the examination, including the MBE.

Name of Applicant:
**File No.:**                 468532
**Applicant No.:**            4765
**Examination:**              February 2019 California Bar Examination
**Date of Notice:**           December 28, 2018

**Examination Schedule:**

You must be seated by the <u>report</u> time.  The examination will begin immediately following the instructions.  If you are not seated by the report time, the timing of your examination session will begin at the <u>start</u> time, regardless of whether the instructions have been completed.  Any time lost, including time used for reading instructions, will not be added to the test session.

| Date | Day | Report Time | Start Time | Session | Total Time |
|------|-----|-------------|------------|---------|------------|
| 2/26 | Tuesday | 8:30 a.m. | 9:00 a.m. | Essay Questions 1, 2, and 3 | 6 hours and 30 minutes |
| 2/27 | Wednesday | 8:30 a.m. | 9:00 a.m. | MBE - AM | 6 hours and 30 minutes |
| 2/28 | Thursday | 8:30 a.m. | 9:00 a.m. | Essay Questions 4 and 5; Performance Test | 7 hours and 30 minutes |
| 3/1 | Friday | 8:30 a.m. | 9:00 a.m. | MBE - PM | 6 hours and 30 minutes |

The sessions will not be interrupted for breaks other than one lunch break, which will be scheduled in accordance with the information contained in the "Important Information and Guidelines for Applicants Granted Testing Accommodations" bulletin.  **Applicants should bring their lunches with them each morning, as they will not be allowed to leave the secure test area after the session begins and before finishing that session of the examination.**  Applicants are not allowed to take the break in their examination rooms unless that accommodation has been specifically requested and granted.

# EXHIBIT 4

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing
Accommodations on February 2019 California Bar Exam
File No. 468532**

Committee of Bar Examiners
Attention: Senior Director of Admissions
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

January 6, 2019

      This statement and any attachments or addendums submitted therewith or forthcoming thereupon constitutes my appeal of the partial denial of supplemental ADA testing accommodations requested through my petition dated and personally delivered to your office on 11/1/2018 for the February 2019 California Bar Exam in your decision letter dated December 28, 2018 and delivered to me the afternoon of December 31, 2018.

<u>Procedural Background:</u>

      I (Applicant, File No. 468532) applied for Disability Accommodations on the July 2018 California Bar Exam by way of a separate, prior petition consisting of: (1) my Form A with attached narrative statement; (2) Form B by Dr. Dresden; (3) Form C with attached testing/eval report by Drs. Pinn and Preston; (4) Form F by University of Iowa College of Law Associate Dean Carin Crain; (5) Form H with attached cornea scans by Dr. Goodman; (6) my High School I.E.P.; (7) accommodations letters and test scores for the SAT, LSAT, GMAT, and MPRE; and (8) my supplemental narrative addendum dated August 28, 2017, responding to a letter from your office dated August 7, 2017 requesting further information[1]; (hereinafter, items (1)-(8) will be referenced collectively as "the 2017 Petition").  The accommodations requested on the 2017 Petition were approved in part and denied in part.

      I timely appealed the initial decision from the 2017 Petition, first by way of a notice of appeal with a tentative, draft statement of the reasons for appeal dated November 10, 2017, and then supplemented by a revised and expanded brief/statement in support of appeal dated December 5, 2017 (hereinafter, "2017 Appeal") enclosed with supplemental supporting affidavits from two of my expert evaluators, Drs. Goodman and Preston (hereinafter, "the 2017 supplemental affidavits")[2].  After mailing the 2017 Appeal and the 2017 supplemental affidavits to your office postmarked December 5, 2017, I received a decision letter granting my requested accommodations (increase of the amount of extra time granted to 100% extra time on all exam sections) on appeal, responsive to the November 10 Notice of Appeal, rendering both my

---

[1] Items (1), (3), (4), (6), and (7) were postmarked August 2, 2017, and delivered to your office on August 4, 2017.  I believe items (2), (5), and (8) were sent postmarked August 28, 2017, in response to your letter dated August 7, 2017, requesting further information.
[2] USPS Tracking indicated delivery to your office on December 8, 2017.

1

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

expanded arguments in the 2017 Appeal and the new evidence in the 2017 supplemental affidavits moot.

     In order to comply with my understanding that petitions for testing accommodations be received by the timely filing deadline for that examination, prior to receiving my results on the July 2018 California Bar Exam I drafted the instant 2018 Petition Form A Narrative/Affidavit Attachment requesting both renewal of prior approved accommodations and the grant of supplemental accommodations in the event I needed to retake the bar exam, completed an additional Form A and collected supplemental supporting evidence for the new requests via two Form B packets each completed by a specialist (Dr. Dresden and Dr. Clarke) and an updated Form F, collectively hereinafter referenced as the "2018 Petition" and personally delivered the completed 2018 Petition to your office on November 1, 2018.  In the 2018 Petition I requested that I be granted renewal of all accommodations approved from the 2017 Petition and 2017 Appeal, plus additional accommodations based on new disabilities, new evidence regarding the original disabilities, and my experience taking the July 2018 Bar Exam. Subsequently, I learned that I was unsuccessful on the July 2018 Bar Exam, and now that the instant petition has been approved in part and denied in part.  I now hereby timely appeal the partial denial of accommodations in your December 28, 2018 letter (hereinafter, "2018 Decision Letter") responsive to the 2018 Petition.

     In order to complete this appeal statement in time to post on this date, in an attempt to anticipate and cause delivery thereof within ten days of December 28, 2018 as instructed as required by the 2018 Decision Letter at p. 2, Applicant notes that he has been deprived of sufficient lead time to consult with or retain counsel regarding this appeal or to obtain any additional evidence or clarification affidavits from his specialists.  Should this written notice of appeal still not arrive timely, as that period is defined and extended by Cal. Code Civ. Proc. § 12 and all other applicable statutes and rules of procedure, it is Applicant's position that the deadline be tolled to the date of your receipt of this letter filing the appeal, on the basis that: (i) my reviewing your letter and drafting this appeal statement in time to ensure your receipt by January 7, 2019 after only receiving the 2018 decision letter the afternoon of December 31, 2018, and then purchasing an expedited method of delivery (or driving nearly 2 hours each way and purchasing parking to personally deliver) vastly exceeds reasonable promptness for the nature of the documentation and manner of presentation requested for proper submission of appeal, and therefore good cause exists for any delay; (ii) moreover, good cause for an extension is also independently met by the representations made to Applicant prior to the 2018 Decision Letter that State Bar of California staff made during phone inquiries that the appeal deadline was actually 2/1/2019; and (iii) strict enforcement of that time period would, in the circumstances, further deprive me of my right of appeal without me ever having been given a meaningful opportunity to exercise it, and without having received sufficiently timely notice to maintain my right of appeal, in violation of my rights to due process and effective notice under the law.

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

<u>Reasons for Appeal:</u>

<u>I.  The State Bar of California Should Be Procedurally or Equitably Estopped from Denying Any – or Alternatively Specific – Part(s) of the 2018 Petition on Appeal.</u>

   Irrespective of the actual A.D.A. *et seq.* and evidentiary merits of the requests asserted in the 2018 Petition, the State Bar of California should find that as a matter of law errors present in the procedural history in this matter leaves it with no other way to comply with the process requirements for adjudicating petitions than by granting all accommodations requested in the 2018 Petition on appeal for any or all of the following three reasons:

A.  The 2018 Decision Letter Fails to Address All Accommodation Requests Asserted in the 2018 Petition as Needed to Timely Provide Me Both a Reason for Denial and My Right to Appeal the Particular Premises and Conclusions of That Denial Following Timely Notice Thereof. Accordingly, a Denial on the Merits Given for the First Time on Appeal and Without Meaningful Lead Time for Further Appeal Violates the Statutory and/or Administrative Authorities Providing a Right of Appeal and My Constitutional Rights to Due Process and Equal Protection Where Such Right of Appeal is Afforded to Any Applicant by the Legislature and/or Committee of Bar Examiners. Therefore, the State Bar of California is Now Estopped from Failing to Approve on Appeal All Accommodation Requests Asserted in the 2018 Petition That Were Not Addressed or Identified in the 2018 Decision Letter.

P. 1 of the 2018 Decision Letter provides:

"Your requests, however, for additional extra time for each[3] session of the examination; for an additional 30 minutes for each 90 minutes of testing for meal breaks (excluding any transit time to and from the secured lunch room or permission to take meal breaks in examination room)[4]; permission to initiate the start and end of all lunch and other break times within the approved duration and number of breaks per test day at applicant's discretion and without prior notice[5];

---

[3] This summarization overstates Applicant's request as Applicant only requested "additional extra time" on the written portions of the examination, while only seeking renewal of the extra time accommodation already approved for the July 2018 Bar Exam from the 2017 Petition and 2017 Appeal for the MBE portion. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 9-10; *See Also* 2018 Decision Letter p. 1.

[4] This summarization also misstates the actual requests made in the 2018 Petition, in that Petitioner requested additional meal breaks not counting against test time as needed to make total such meal breaks of 30 minutes per 90 minutes of test time, in lieu of rather than *in addition* to the singular up to 90 minute lunch break; preferably with permission to take the meal breaks in the test room while supervised to confirm no test materials are accessed during such break(s); but if that is denied, where the time from when the test is stopped to when the test is restarted not counting against test time while the 30 minute per meal break time limit only counts time from arrival in the secured lunch room to the time at which Applicant's proctor may require him to leave the lunch room to return to the test room in order to receive full testing time. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 2, 5-7; *See Also* 2018 Decision Letter p. 1.

[5] *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 2-3, 6; *See Also* 2018 Decision Letter p. 1.

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

for testing for no more than 6.5 hours per day[6]; for the examination to be scheduled over the appropriate number of weekend days to accommodate numerous medical appointments[7]; for testing in a private room[8]; for the Committee of Bar Examiners (Committee) to provide a complete ergonomic workstation (including $1,500 chair[9], adjustable laptop stand, an external keyboard that is compatible with applicant's laptop with Apple Bluetooth, and neck and/or torso braces)[10]; for the Committee to pay for applicant's hotel room during the examination starting the day before the exam throughout examination and the night following the examination with the responsibility for securing timely reservations and availability of the room assumed by the State Bar[11]; for a guaranteed private testing room[12] and permission to leave all equipment in the test room overnight after the first and through all subsequent exam days and until 11:00 am the day after the last day of testing and the Bar will assume full liability for applicant's ergonomic equipment and computer during the examination[13]; and for assignment to an experienced proctor[14] have been denied, as the

---

[6] Applicant assumes this is an accurate quantification (excluding lunch or other breaks) of his actual request, which was that the number of days sessions are scheduled over reflects that need to have no longer (and more performance-reducing fatiguing) of a duration per test day with the accommodations than a single test day session without accommodations would be. Applicant maintains the qualitative comparative form of the request. *See* 2018 Petition Form A Narrative/Affidavit Attachment, p. 10; *See Also* 2018 Decision Letter p. 1.

[7] *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 4-5, 10; *See Also* 2018 Decision Letter p. 1.

[8] *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 6-9; *See Also* 2018 Decision Letter p. 1.

[9] Applicant notes that his request was not for a chair that costs any specific amount of money, but rather that as the chair features identified by Dr. Dresden as needed to address Applicant's disability are not present on all chairs marketed as "ergonomic" and that the specific make and model of chair Applicant used/provided for the July 2018 Bar Exam that has all relevant features identified by Dr. Dresden is worth $1,500, Applicant cannot allow – and it would be an undue burden on him to allow to access accommodations – his own chair to be left in the test room overnight at his own risk to help allow him to commute to the test center instead of stay in the hotel in order to receive adequate accommodations. Applicant would consider a chair of that same make and model to be adequate, but Applicant acknowledges that another chair might also be if a physiatrist were to determine that the features identified by Dr. Dresden are present. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 4, 7-9; *See Also* 2018 Decision Letter p. 1.

[10] Applicant notes that the additional accommodation that this equipment be provided rather than a renewal of the accommodation of permission to bring this equipment is one of three options for a singular disability issue. Applicant does not necessarily request that all three of those options be provided as accommodations so long as at least one is. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 4, 7-9; *See Also* 2018 Decision Letter p. 1.

[11] *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 4, 7-9; *See Also* 2018 Decision Letter p. 1. Applicant again notes that the hotel room as an accommodation is one of three options for one disability issue and does not necessarily request that the State Bar of California provide him all three of those additional accommodations.

[12] *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 6-9; *See Also* 2018 Decision Letter p. 1.

[13] *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 4, 7-9; *See Also* 2018 Decision Letter p. 1. Applicant again notes that permission to leave the ergonomic equipment in the test room overnight and have the State Bar of California assume liability for full replacement cost if the equipment were damaged, lost, or stolen while possessed by the State Bar as a bailment is one of three options for one disability issue and does not necessarily request that the State Bar of California provide him all three of those additional accommodations.

[14] *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 2-4, 10; *See Also* 2018 Decision Letter p. 1. Applicant maintains the request as qualified by the level of training and orientation described in the 2018 Petition

4

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

documentation that you and your specialist[15] have provided does not adequately support those requests. The additional extra time[16] and other accommodation granted[17] should be sufficient to address the effects of your disability."

(See 2018 Decision Letter at p. 1).

However, aside from the inaccuracies noted in the above footnotes[18], this summary of accommodations requested in the 2018 Petition, yet not reflected in the updated list of approved accommodations, omits other accommodations that now have no reasons asserted at the appeal stage for why they were denied; indeed, their omission makes me lack confidence that they were ever understood or considered.

As the right to both a first impression review and an appeal in which I have a meaningful opportunity to respond to the particularized reasons for denial both on issues of fact and of law are provided to me by statute and by my constitutional rights to due process and equal protection where a right to such an appeal is provided by the legislature and/or Committee of Bar Examiners for any

---

to avoid the issues described from the July 2018 Bar Exam based on his disability of autism and need for complex accommodations for all provided disabilities, so in context "experienced" does not have to be any more or less than that standard, which in Applicant's position is the minimum standard to administer the test in a non-prejudicial manner for disabled candidates that does not constitute discrimination against applicants requiring disability accommodations.

[15] Applicant is concerned by the seeming insinuation that only one specialist has provided evidence in this matter; enclosed with the 2018 Petition alone are two Form B packets from two different specialists, and the 2018 Petition explicitly incorporates by reference the 2017 Petition, 2017 Appeal, and 2017 Supplemental Affidavits, which provide numerous Forms, attached reports and test results, and supplemental affidavits from three additional specialists and one of the specialists who provided an additional Form B for the 2018 Petition, for a total of five distinct specialists: Dr. Clarke, Dr. Dresden, Dr. Goodman, Dr. Pinn, and Dr. Preston.

[16] From the 2018 Decision Letter, Applicant appears to have been granted an additional 30 minutes of extra time per test session. Based on the assertion that any accommodations granted were solely based upon a physical disability, on the fact that additional extra time was applied uniformly to all sections including the MBE section rather than to allow more for the written sections than the multiple choice sections, and on the fact that no extra meal breaks were granted, Applicant understands this additional extra time to be intended as a substitute for the additional meal breaks not counting against test time requested, which was denied, and is not based on or adequate to provide for the additional extra time request for independent reasons based on other disabilities or even to substitute for the extra meal breaks. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 9-10; *See Also* 2018 Decision Letter, pp. 1, 3.

[17] "The other accommodation granted" seems to be permission to bring and access certain food and drinks in the testing room during the test while on the clock for regular testing time, a more limited form of the accommodation requested and recommended by my specialist(s) (e.g. such permission, but not limited to unpredictable and highly subjective "non-aromatic" and in lidded vessels constraints) independent of whether I was granted my meal breaks off of the test time clock (without access to the test during the break) in the testing room as requested and of whether I was granted extra such meal breaks than the standard singular up to 90 minute lunch break. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 2, 6-7; *See Also* 2018 Decision Letter, pp. 1, 3.

[18] The foregoing footnotes may not be an exhaustive list of inaccuracies with the summarization of those accommodations that were requested yet denied, and ultimately the Committee of Bar Examiners and any other staff reviewing this appeal should rely on the 2018 Petition for the set and wording of the accommodations requested, rather than exclusively on the 2018 Decision Letter citation and commentary thereon herein.

5

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

applicant, at this point any lawful basis for the denial of such omitted accommodation requests must be considered as waived by the failure to assert such reasons in the 2018 Decision Letter. Otherwise, I would not be afforded my procedural right to challenge by appeal any findings or conclusions I disagree with when the merits are considered for the first time on appeal as, despite my Petition and Appeal having been submitted timely, at this late date any appeal decision would come too late for me to review and respond to by 2/1/2019 in time for your office to reconsider in time for the February 2019 Bar Exam. Consequently, even before reaching the merits under disability law the following accommodation requests asserted in the 2018 Petition and not addressed by the 2018 Decision Letter must be granted as their denial is procedurally and/or equitably estopped:

1. The 2018 Decision Letter does not explicitly deny Applicant's request that the meal breaks which do not count against test time that are approved, which already includes at minimum the standard up to 90 minutes lunch break, be allowed to be taken in the test room, albeit supervised to ensure no access to the test while off the clock, instead of in the secured lunch room. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 6-7.

2. The 2018 Decision Letter does not explicitly deny Applicant's request that: (1) as he is receiving disability accommodations that, out of necessity to mitigate the effects of his multitude of disabilities, lengthens the number of days his examination spans and at present requires him to furnish and remove for each and all test sessions a heavy chair and other ergonomic equipment and computer/testing supplies; and (2) as the exact test center location assignment, and schedule and number of days Applicant's test will ultimately be administered over had been and remains uncertain until the 2018 Petition has completed all levels of review/adjudication including appeal; and (3) as the State Bar of California has elected, despite not otherwise being required to by law, to provide all applicants a negotiated rate block of hotel rooms at the test center locations for their convenience; and (4) as the law prohibits the State Bar of California from denying equal access to candidates requiring disability accommodations to any resources or services it chooses – even where not otherwise required by law – to provide to all candidates: Applicant be guaranteed that, even if a paid for hotel room as an accommodation conditionally requested based on the disabilities of myofascial pain syndrome and autism is denied, so long as promptly upon receiving first notice of the decision on appeal and final schedule/location, which is available to non-disabled candidates much sooner as they have no need to wait for decisions on testing accommodations petitions, if he so chooses to act to reserve a hotel room at his assigned test center rooms will have been negotiated and kept available for all nights during the extended examination schedule as well as the nights before and after each

Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing
Accommodations on February 2019 California Bar Exam
File No. 468532

and all test sessions, through that time with the lowest block rate provided to any applicant. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 4, 8-9. In the alternative, if the Committee of Bar Examiners finds that the delays in resolving this petition for testing accommodations has left it insufficient lead time to obtain and/or preserve such availability in the block that has been negotiated, Applicant respectfully requests that the Committee recognize Applicant's faultlessness for the delay and remedy the effect of the Petition process's length necessary to access accommodations by granting Applicant a hotel room in the test center hotel as an accommodation on this alternative basis at the prevailing market rate for the necessary room and at the Bar's cost from the day before the exam throughout examination and the night following the last day of examination; and if any of the nights are sold out to the general public, the Committee utilize any hotel loyalty program status tier it enjoys from the volume of rooms it books to invoke such program's guaranteed availability benefit if possible in Applicant's behalf.

3. The 2018 Decision Letter, while denying guaranteed assignment to an "experienced" proctor, does not explicitly deny my requests that the proctor I am assigned to refrain from distracting conversations or unnecessary interruptions during the on-the-clock test time in the test room, such as arguments with a supervisor over the proctor's terms of employment and how late they will stay or interrupting me to request speculation on when I will elect to take my lunch break. *See* 2018 Petition Form A Narrative/Affidavit Attachment, pp. 2-3, 6, 10

B. Of the Accommodation Requests Asserted in the 2018 Petition That the 2018 Decision Letter Acknowledges as Made, but Denied, A Summary Holding of "the documentation that you and your specialist have provided does not adequately support those requests" is Too Vague to Meet the Notice Requirements As No Particularity is Given as to Which Factual Findings About Applicant's Disability Status, Disabilities Impact, and Comparison of Impact From Qualified Disabilities Found to the Nature of the Accommodations Denied or Basis for the Requests Asserted[19], Were Made and/or Relied Upon, Nor Were Any Holdings of Law or Application of the Law to the Facts, and Nor Were Any Other Lawful Reasons for Denial Asserted. Accordingly, Because the State Bar of California Failed to Timely Meet Its Statutory Requirements for Denying the Requests for Disability Accommodations, Including Providing Particularized Reasons for the Denial, This Appeal Remedy Does Not Provide Applicant an Adequate Opportunity to Respond to or Dispute Any Findings Relied Upon for the Denials. Consequently, Independent of the Merits of the 2018 Petition Requests, Failure of the State Bar of California to Overturn on Appeal All Denials and Grant All Requests Would Violate the Statutory and/or Administrative Authorities Providing a Right of

---

[19] E.g. that would establish that the accommodations denied are not reasonably tailored to facilitating equal access considering disabilities impact.

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

Appeal and My Constitutional Rights to Due Process and Equal Protection Where Such Right of Appeal is Afforded to Any Applicant by the Legislature and/or Committee of Bar Examiners. Therefore, the State Bar of California is Now Estopped from Failing to Approve on Appeal All Accommodation Requests Asserted in the 2018 Petition, Including Those Denied in the 2018 Decision Letter.

The ADA requires[20] that entities (and especially state actors as here) to whom (a) request(s) for disability accommodations has been made which deny some or all of that/those request(s) provide a detailed explanation of the reasons for that/those denial(s).  Just as an employer DPM cannot lawfully summarily state that an ADA request is denied due to "undue hardship" or because the accommodation would be "ineffective," without further explanation of how and why those findings were reached and apply, the 2018 Decision Letter is legally inadequate for denying the vast majority of the requested accommodations through a single sentence of: "[list in I. A. above]… have been denied, as the documentation that you and your specialist have provided does not adequately support those requests."  (*See* 2018 Decision Letter at p. 1).

Rather, a legally sufficient[21] letter acting to deny accommodation requests on the basis of insufficient evidence[22] must carefully catalog the evidence that has been considered, both that offered by Applicant and his specialists and that provided by any expert consultant reports obtained by the State Bar of California during the review process, and the inferences that could reasonably be drawn therefrom, and then find[23]: (1) whether the disabilities asserted by applicant are present and correctly diagnosed by qualified professionals; and (2) whether the disabilities relied upon affect both at least one major life activity and applicant's ability to access the California Bar Exam on a "level playing field" to candidates without such handicap(s); and (3) whether the accommodations requested could be necessary or appropriate to remedy or mitigate applicant's ability to equally access the California Bar Exam on a level playing field; and (4) whether the accommodations requested would not impose an "undue burden" upon the State Bar of California (i.e. by necessarily compromising the security and integrity of the exam results or imposing costs or administrative burdens so great as to vastly outweigh applicant's interest in accessing the career-defining examination that the State has prohibited applicant from pursuing his chosen occupation without successfully completing).

---

[20] 42 U.S.C.A. § 12101 *et. seq.* For reference of an illustrative application of this holding in employment law context and guides, see part H. At: https://www.eeoc.gov/eeoc/internal/reasonable_accommodation.cfm#_Toc531079189

[21] Sufficiency for reaching the merits of the substantive factual and legal determinations made and application thereof.

[22] Insufficient Evidence is the sole basis asserted in the 2018 Decision Letter for the denial of accommodations, such that all other lawful grounds for denial – to the extent present – are now waived for this appeal.

[23] Bartlett v. New York State Bd. of Law Examiners (2d Cir. 2000) 226 F.3d 69, citing Americans with Disabilities Act of 1990, § 3(2)(A), 42 U.S.C.A. § 12102(2)(A).

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

Such inadequacies of the 2018 Decision Letter are well illustrated by contrasting it to the 2017 Decision Letter. In the 2017 Decision Letter, numerous excerpts from the advisory reports of multiple of the Committee's expert consultants were cited as the basis for those denials made from the 2017 Petition, and the reasons for those recommendations were set forth in detail. Accordingly, the errors in procedural posture, perception of what the 2017 Petition requested and stipulated, fact findings, and legal standard raised in the 100% successful 2017 Appeal were identifiable and meaningfully rebuttable so as to allow for the corrections on appeal that resulted.

Consequently, because the particular reasons and findings relied on to deny accommodations were not specified and the denials are thus a *per se* violation of Applicant's statutory rights, and because Applicant has been prejudiced by his inability to either correct mistakes of fact (or to select and obtain appropriate new evidence to rebut such errors on appeal) or to argue for alternative positions of law during this appeal, this appeal is procedurally inadequate for satisfying Applicant's statutory and administrative right of appeal and Applicant's constitutional rights to due process and equal protection where any such statutory or administrative right exists.  Accordingly, due to this absence of any explanation or listing of the reasons my documentation was found inadequate to support the denied requests, it now seems logistically impossible to allow for an expanded explanation of denials to be prepared upon this appeal and still leave me reasonable lead time to receive it, review it, draft a new appeal statement, and collect any corroborating evidence from my specialists, and still furnish a complete supplemented appeal submission by your statutory deadline of 2/1/2019.  Therefore, all 2018 Petition accommodation requests must be summarily approved on appeal without reaching their merits.

C.  Irrespective of the Merits of the 2018 Petition Accommodation Requests, Because the Deadline Asserted[24] in the 2018 Decision Letter for Receipt in Paper Copy Form of All Legal Claims, Advocative Statements Providing All Reasons for Appeal, And All New Supporting Evidence from Specialists Thereupon, Was Only Ten Calendar Days from the Date That Decision Letter Forming the Subject of the Appeal was Postmarked, Regardless of When That Letter was Received by Applicant and Irrespective of the Lead Times for Commercially Reasonable Delivery of this Response to Your Office, and That Deadline is so Constraining on the Exercise of the Right of Appeal and Extent of What Evidentiary and Legal Research Options Can Be Feasibly Accessed In Doing So, As to Render This Appeal Procedurally Defective on its Face, or At Least Where, As Here, Substantial Prejudice Has Resulted In Fact. Applicant Has Been Deprived of Any Meaningful Opportunity to Either Consult with or Retain Counsel for Preparing This Appeal or to Seek Further Affidavits or Clarifications from his Specialists Responsive to the Implicit Finding of Insufficient Evidence to Support the Necessity of the Requested Accommodations. Accordingly, the State Bar of

---

[24] See 2018 Decision Letter at p. 2.

9

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

California is Estopped from Failing to Approve on Appeal All Accommodation Requests Asserted in the 2018 Petition, Including Both Those Denied Explicitly in the 2018 Decision Letter and Those Denied by Omission.

It is Applicant's position that the rule or policy that seems to set a default deadline for the appeal to be considered as a matter of right rather than subject to effectively discretionary review – and that only until the first of the month of the subject exam, at which point the appeal would become jurisdictionally non-justiciable by statute – is in violation of constitutional due process for administrative adjudication proceedings such as the instant petition and appeal. The method of delivery used by the Bar to deliver the 2018 Decision Letter to Applicant can take up to 5 business days (e.g. generally up to 7 calendar days, but possibly more during holidays) and USPS doesn't guarantee even that. In such cases, the right to appeal is effectively and unlawfully foreclosed by the fact that even where the applicant bears the cost and burden of the most expedited commercially available delivery methods (next business day, which could be 1-3+ calendar days depending on the day of week the decision letter is received and holidays) an applicant would be given less than a day to prepare their appeal, even if able to drop every other commitment they may have on essentially no notice. Even in less extreme examples, such as the instant case where Applicant received the 2018 Decision Letter only three calendar days into the ten calendar days period, even purchasing expedited shipping at his cost Applicant was given at most 3-4 calendar days to turnaround this appeal, one of which was a holiday. Applicant submits that such is an arbitrary and unreasonably[25] short period of time, especially considering Applicant was led to believe by Bar staff on the phone prior to receiving the written 2018 Decision Letter that he would be given until 2/1/2019 to submit an appeal if the decisions were to be adverse; and as he is a self-represented applicant with both the burden of proof and the burden of persuasion, and who has a full load of other existential and occupational responsibilities to meet immediate term financial and living needs[26] for the at least

---

[25] Applicant has been forced to exact enormous personal, health, financial, and indeed bar exam preparation opportunity sacrifices in order to turnaround even as much of an appeal as he has timely, and still has been prejudiced in the quality of appeal submission he has submitted by the inadequate lead time to conduct thorough legal research, seek supplemental evidence, and consult with or retain counsel to prepare the appeal. Candidates with disabilities generally are, as a group, particularly vulnerable to *de facto* inaccessibility where high barriers in time, schedule logistics, and financial costs are present; barriers that are vastly disproportionate to the Committee's legitimate interest in protecting the State Bar and the exam process from fraud, and sometimes insurmountable – procedural or evidentiary – or at least so exacting as to introduce a chilling effect to the proper exercise of rights or introduce further handicaps and burdens that non-disabled candidates are not required to bear for fulfilling needs that are not optional, should also be held as a constructive violation of the equal accessibility requirements under the A.D.A. *et seq.* and of Constitutional Due Process using the <u>Matthews</u> Test. Rather, the Committee of Bar Examiners should recognize and take notice of the disparate impact the current procedures have and take the appropriate steps to correct them, to avoid the appearance of deliberate indifference, and to remedy their prejudice in this appeal.

[26] This is also exacerbated by the 6-15 medical appointments per week on average necessary to address Applicant's multiplicity of ongoing medical issues, which are prejudiced by the short notice and short turnaround demanded in the 2018 Decision Letter for this appeal. *See* 2018 Petition Form A Narrative/Affidavit Attachment, p. 5.

10

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

one year period between graduation from law school and admission to the bar, working on the process to seek needed accommodations on his own time and in direct competition with the necessary health care commitments to address ongoing medical concerns and with bar exam study/preparation to an extent that such barriers/time and money commitment prejudices to even seek accommodations would destroy the "level playing field" and "equal access" the remedy is supposed to provide.  In comparison to an attorney or administrative judicial officer whose work on resolving testing accommodations petitions *is* their job and who has arguably quicker access to the expert consultants willing to complete comprehensive documentation and more resources, Applicant accordingly has a vastly superior interest in having more than 3-4 days to turnaround an appeal than does the State Bar of California in having at least sixty days for initial adjudication of a petition and seemingly at least a month to adjudicate this appeal upon receipt.  Accordingly, the mismatch of the process to any reasonable balancing of the interests of Applicant and the State in this case is so overwhelming as to constitute a substantial risk of the erroneous deprivation of a statutory right that, in the instant circumstances, is likely dispositive for Applicant's ability to lawfully pursue his chosen occupation for which he has studied over three years and invested well over $100,000 to prepare for, and which interest likely equates to millions of dollars over the course of Applicant's future career.  Consequently, applying the balancing test in <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976) *et. seq.*, to the magnitude of Applicant's interest and the risk of erroneous deprivation thereof through the ten days deadline, and to the State Bar's interest of providing its staff generous lead times to process petitions and appeals, that deadline violates procedural due process rights and is thus unconstitutional.

 <u>Accordingly, for any or all of the three independent reasons provided above in Sections I. A, B, and C, the State Bar of California should find that it is procedurally and/or equitably estopped from denying the accommodations requested in the 2018 Petition.</u>

II.  <u>Even Reaching the Merits, the 2018 Decision Letter Erroneously Decides the 2018 Petition Requests Only on the Basis of an Unspecified One of the Physical Disabilities Established, When the 2018 Petition Incorporates by Reference the 2017 Petition and Its Further Forms B, C, and H, Among Other Documents, and the State Bar of California Has Already Found Applicant to Have a Psychiatric/Learning Disability of Autism and Visual Disability of Keratoconus from That Petition.</u>

 P. 1 of the 2018 Decision Letter provides:

 "The expanded accommodations granted are based on a physical disability only."  *See* 2018 Decision Letter at p. 1.

 Yet, the 2018 Petition is methodically organized in identifying which disabilities form the primary and sometimes secondary basis for the

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

"expanded" accommodation requests in the 2018 Petition, and Applicant's learning and psychiatric disability of autism is relied upon as at least a secondary basis and sometimes a primary one for most of the requests asserted; Applicant's visual disability of keratoconus is also relied upon as a secondary factor for one of the expanded requests asserted.

Applicant identifies[27] two potential explanations for this discrepancy: (1) The State Bar of California staff member(s) deciding the 2018 Petition upon initial review (hereinafter, "Bar Decision Maker") only considered those disabilities for which one of the Forms B-E or H had been enclosed with the 2018 Petition, both of which are physical disabilities (severe gastroparesis and nissen fundoplication postoperative state) and found inadequate documentation from the absence of corresponding specialist-completed Forms for the other disabilities, and then found the substance of those Forms B and the remaining Petition as inadequate for the denied requests relying on those disabilities only; or (2) The Bar Decision Maker properly referenced the 2017 Petition that was cited and incorporated by reference "as if fully set forth herein" in the 2018 Petition, and did rely on the third Form B, Form C, and Form H therein, but found that *all* of the expanded accommodation requests relying on non-physical disabilities failed on the substance of the totality of the evidence in both petitions and affidavit narrative provided for sufficiency of the evidence, just as they did for the majority of the expanded accommodations requested relying on the physical disabilities.

If: (1) the State Bar of California decision makers on this appeal (Bar Decision Maker and/or Committee of Bar Examiners; hereinafter, "Bar Appeal Decision Makers") either: (a) reject Applicant's arguments for procedural and/or equitable estoppel asserted above in Section I. herein, or (b) if the Bar Appeal Decision Makers prefer to review the merits of the 2018 Decision Letter finding of inadequate documentation to support the denied[28] requests in order to determine whether some or all of the denials can be overturned on the merits in order to moot the issue of estoppel or else have partial relief from reconsideration by Bar Staff on the merit issues

---

[27] If neither of Applicant's speculations are accurate, then Applicant insists that as whatever the actual reason only a physical disability was considered was not explained in the 2018 Decision Letter, Applicant has not been given adequate notice to respond to or challenge such reason(s) and therefore they should be considered waived.
[28] At the merits review stage, "denied" will encompass both expanded accommodations explicitly denied in the 2018 Decision Letter as well as those implicitly denied by omission of an approval of the request asserted in the 2018 Petition (see list in I. A. herein above), and also partial denials such as the subjective and difficult to reliably comply with limitation of the permission to bring and access food and drinks in the test center to non-aromatic foods and drinks and added requirement of lidded vessels, which limitations would also lack a rational basis were Applicant granted a private test room as requested. If the omissions were inadvertent and the Bar Appeal Decision Makers require a merits review to resolve the requests, Applicant suggests the Bar Decision Maker consider granting them before referral to the Committee of Bar Examiners unless that would leave insufficient time for review by the Committee of Bar Examiners in the event any accommodation requested in the 2018 Petition cannot be approved by staff on appeal.

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

determined prior to review by the Committee of Bar Examiners of the remaining denials regarding all issues; and (2) Explanation (1) of the above paragraph is accurate[29], then the Bar Decision Maker <u>erred by refusing to consider the non-physical disabilities for deciding the expanded accommodation requests and the merits of all denied accommodation requests must be reconsidered based on all disabilities asserted and all evidence available across both the 2017 Petition and 2018 Petition</u>, after which any necessary merits review should be referred to the Committee of Bar Examiners in the event any requested accommodation would still be denied.

Such an error would be manifest error, because the State Bar's own expert consultants advising on the 2017 Petition found:

"… They offer enough as to allow one to find ASD present, and this comes with a number of different weaknesses, like, the slowness found, the poor focus found, even the motor issues… so this is really a PD/MD claim, with the information offered enough as to establish this, even as the wrong form has been submitted… The ASD well explains the found weaknesses… Disability is accepted…"

(*See* 2017 Decision Letter at p. 3).

And further, "It does appear that this applicant has a mild case of keratoconus based on his reported visual acuity. This condition however can cause eye fatigue and I feel that granting him some testing accommodations would be reasonable because this condition might slow his reading skills."

(*See* 2017 Decision Letter, pp. 4-5).

Accordingly, both the presence and effects of both autism and keratoconus, the two non-physical disabilities relied upon but seemingly not considered by the Bar Decision Maker, are undisputed facts that should be considered when deciding the merits of the 2018 Petition expanded accommodation requests. Moreover, appropriate specialist forms, corroborating evidence, narrative statements, Form A responses, and further analysis on how such weaknesses apply to the California Bar Exam and equal access thereto are in the record from the 2017 Petition, 2017 Appeal, and 2017 Supplemental Affidavits, all of which were explicitly cited, referenced, and incorporated by reference as if fully set forth therein within the 2018 Petition. No notice of a procedural defect or missing form was communicated to Applicant before the 2018 Decision Letter or explicitly therein, and there is no procedural defect or missing form that would preclude consideration of autism, keratoconus, or their effects in the manner

---

[29] If Explanation (2) of the above paragraph is accurate instead, Applicant rests his merits appellate case on Section III. of this Appeal below.

13

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

the 2018 Petition argues they would apply and form a basis for the expanded accommodation requests therein.

III.  <u>Even Reaching the Merits, the State Bar of California Has Not Asserted, and Thus Has Waived, Any Basis for Denial of the 2018 Petition Accommodation Requests Other Than Alleged Insufficiency of the Evidence, Which Finding is Erroneous. My Affidavit Narrative Statements and Those of My Specialists and Law School Enclosed Within the 2018 Petition, along with the Voluminous Evidence in the 2017 Petition Referenced or Cited in the 2018 Petition, Amply Supports Both the Presence of all Relied Upon Disabilities and the Detailed Explanations the 2018 Petition Provides for Why the Accommodations Requested Therein Are Necessary to Provide Me Equal Access to the California Bar Exam.</u>

As repeatedly stated above, the only explanation the 2018 Decision Letter provides for why those accommodation requests it denies were denied is the singular sentence: "[list in I. A. above]… have been denied, as the documentation that you and your specialist have provided does not adequately support those requests." (*See* 2018 Decision Letter at p. 1). It is unclear to Applicant whether the Bar Decision Maker intended this as a legal holding of *insufficient evidence as a matter of law* or whether they made the determination as a fact finder.[30] Either way, the finding is clearly erroneous.

First, Applicant again notes his discussion in Section I. A. above regarding the errors the Bar Decision Maker made in even the most preliminary task of determining what expanded accommodations were requested in the 2018 Petition, both in its summary as qualified by footnotes 3-18 herein above and the list in Section I. A. of those expanded accommodation requests that were seemingly not understood to be such.

Second, Applicant identifies examples[31] of the evidence on record supporting each of his expanded accommodation requests from the 2018 Petition:

---

[30] Even if the Bar Decision Maker did make the determination as a fact finder, the 2018 Petition was decided just as this appeal will be – by written submissions only and with no in person examinations of witnesses while assessing credibility – and so there is no reason for the Bar Appeal Decision Makers to give deference to any fact findings made, nor does any rule or statute applicable to this appeal that Applicant is aware of require them to. Accordingly, the Bar Appeal Decision Makers should review this issue *de novo* if it was a fact finding, and in like manner to if Applicant's claims had been adversely disposed of by summary judgment if it was a holding of legally insufficient evidence; that is, where instead of weighing the evidence or assessing credibility the Bar Appeal Decision Makers would view all evidence and any reasonable inferences that could be drawn therefrom in the light most favorable to Applicant and determine whether any reasonable mind could reach the same conclusion(s) as Applicant posited reviewing the same evidence. If one could, the Bar Appeal Decision Makers should reverse the finding.

[31] The examples provided are illustrative, not exhaustive, for the convenience of the Bar Appeal Decision Makers, and do not replace a complete review of the record/file to identify all evidence in the event that the examples cited are not independently adequately persuasive to overturn the finding for the accommodation denied.

14

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

1. <u>2018 Petition Accommodation Requests Section I., Requests 1. and 2. at 2018 Petition Form A Narrative/Affidavit Attachment, p. 6,</u> for both the additional extra time of 30 minutes per test session granted *sua sponte* in lieu of this accommodation and the singular up to 90 minutes lunch break to be substituted for more frequent smaller – and as necessary, extra – meal breaks such that I am approved for a number of meal breaks of up to that equal to one meal break per 90 minutes of test time (in each of which I am allowed up to 30 minutes for the break, that amount of time not including any transit time to/from a secured lunch room or wait time for my proctor, but with none of the time in which I have no access to the exam counting against my exam time) equal to the length of the test session(s) that day divided by 90 minutes; and that the discretion of when during the test to start and stop such meal breaks afforded to all candidates for the single up to 90 minutes lunch break apply equally to the accommodated meal breaks for equal access and for the reasons in the 2018 Petition. By extension, and due to the impact of distractions on the effects of my autism disability, I also requested an accommodation against my proctor interrupting me while testing for purposes of requesting or proposing specific meal break times or asking me to speculate on when I'll be ready to take a meal break.

   To the extent that the Bar Appeal Decision Makers, like the Bar Decision Maker, would prefer to grant additional extra time instead of this accommodation and just allow Applicant to eat and drink in the test room as desired while doing so counts against his testing time other than for the singular lunch break that does not require an accommodation, then it is Applicant's position that 30 minutes per test day is inadequate, as Applicant's doctors recommend that as many as three meal breaks would be needed during the length of testing the exam is presently at for MBE days and the first written portion day, and as many as four meal breaks for the second written portion day, and also considering that the fundoplication postoperative dysphagia and autism fine motor limitations slow Applicant's eating. If Applicant is granted on appeal the additional extra time he is seeking on the written sections of the exam for other reasons, then this would increase to five meal breaks for the first written portion day and six meal breaks for the second written portion day if they are not split over an additional two days, and two meal breaks per day for the first written portion days and three meal breaks per day for the second written portion days if they are split. Accordingly, as one meal break not counting against test time is allowed without an accommodation, the appropriate amount of additional extra time to grant for this disability, independent of the additional extra time addressed below for other disabilities, is an additional 60 minutes on each MBE day, 120 minutes on the shorter written day(s), and 180 minutes on the longer written day(s).

   <u>Supporting Evidence:</u>

   Primary Disabilities for Request: 2018 Petition Form A and Narrative/<u>Affidavit</u> Attachment, pp. 2, 5-6; 2018 Petition Form B and Letter Plus Gastric Emptying Studies Results Attachments by Dr. Dresden; 2018 Petition Form B by Gastroenterologist Dr. Clarke; Secondary Disability of Autism has warranted Extra Breaks in Addition to Extra Time (*See Also* 2017 Petition Form A Attachments High

15

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

School I.E.P., SAT Accommodations Letter, LSAT Accommodations Letter, GMAT Accommodations Letter, and MPRE Accommodations Letter and 2017 Petition Appeal Supplemental Affidavit by Dr. Preston expanding recommendations to include frequent extra breaks for autism in addition to the extra time recommended).

2. <u>2018 Petition Accommodation Requests, Section I., Requests 3. and 4. at 2018 Petition Narrative/Affidavit Attachment, pp. 6-7,</u> for permission to bring and access food and drinks (<u>without limitation to subjective and difficult to predict permissibility of "non-aromatic" items only and drinks that have a lid[32], especially given pre-existing medical dietary restrictions</u>) in the test room both during the test and on-the-clock and to take the meal breaks (extra or standard) he is approved for in the test room rather than a secured lunch room, with supervision to confirm no access to the exam during such; and renewal of the independently-grounded but facilitative of and further supported by the foregoing 2017 Petition request for a private testing room, which Applicant did not appeal the reduction of to a semi-private testing room from the 2017 Petition in the 2017 Appeal, but now does appeal the reduction of on all of the grounds from both petitions in this appeal.

   <u>Supporting Evidence:</u>

   2018 Petition Form A and Narrative/<u>Affidavit</u> Attachment, pp. 2-7, and 2018 Petition Form B and Letter Plus Gastric Emptying Studies Results Attachments by Dr. Dresden <u>for permission to bring food and drinks; and for private test room</u>, 2018 Petition Form A and Narrative/<u>Affidavit</u> Attachment, pp. 5-8, 2017 Petition Form C Attachment 2014 Neuropsychological Report by Drs. Pinn and Preston at p. 8 and generally, LSAT and GMAT Accommodations Letters Confirming private room accommodation, both Petitions' Form F by Dean Crain confirming accommodation of private test room for exams throughout law school, and use of private room (though not memorialized on letter) for the SAT, MPRE, and college exams.

3. <u>2018 Petition Accommodation Requests, Section II., Primary Requests at 2018 Petition Narrative/Affidavit Attachment, pp. 7-8</u> for one or more of the following three options to address the effects of Applicant's myofascial pain syndrome and autism neuromotor limitations: (1) provision of the complete ergonomic workstation as described by Applicant and Dr. Dresden; *or* (2) allowing Applicant to provide the workstation and leave it in the Bar's care without needing to transport heavy furniture and other equipment more than once each way as opposed to each way every day, as his autism motor delays prevent him from doing independently, if he is expected to choose between obtaining and paying for his own hotel room or commuting from home for each of the exam days, and doing so without requiring Applicant to, in order to access an adequate accommodation, assume all risk of theft, loss, or damage to his extremely valuable ergonomic equipment while forced to lose control of it and potentially share the room it is stored in if not granted a private test room; *or* (3)

---

[32] Applicant specifically seeks permission to bring and access energy drinks such as "Red Bull," which only come in cans, and which standard test takers may access in their meal breaks, as Applicant should not be penalized to a more limited selection to access accommodations.

16

providing a hotel room as an accommodation throughout examination at no cost and
ensuring availability with check in the day before and check out the day after the
exam provided to allow for move in and move out of the equipment and luggage
without compromising exam logistics.

Supporting Evidence:

Both 2017 Petition and 2018 Petition Forms B by Dr. Dresden, especially Dr.
Dresden's letter attachment to the 2018 Petition Form B (for establishment of
myofascial pain syndrome disability and what items an ergonomic workstation that
could mitigate its effects for an exam requiring such lengthy sitting and minimal
distractions consists of); 2018 Petition Narrative/Affidavit Attachment, pp. 4-5 and 7-
8 for facts and application of the law relevant to why the existing accommodation
imposes different undue handicaps preventing equal access and on what it takes for
Applicant to meaningfully exercise the existing accommodations.

4.  2018 Petition Accommodation Requests, Section II., Secondary Request at 2018
    Petition Form A Narrative/Affidavit Attachment, pp. 8-9, for Applicant's request that:
    (1) as he is receiving disability accommodations that, out of necessity to mitigate the
    effects of his multitude of disabilities, lengthens the number of days his examination
    spans and at present requires him to furnish and remove for each and all test sessions
    a heavy chair and other ergonomic equipment and computer/testing supplies; and (2)
    as the exact test center location assignment, and schedule and number of days
    Applicant's test will ultimately be administered over had been and remains uncertain
    until the 2018 Petition has completed all levels of review/adjudication including
    appeal; and (3) as the State Bar of California has elected, despite not otherwise being
    required to by law, to provide all applicants a negotiated rate block of hotel rooms at
    the test center locations for their convenience; and (4) as the law prohibits the State
    Bar of California from denying equal access to candidates requiring disability
    accommodations to any resources or services it chooses – even where not otherwise
    required by law – to provide to all candidates: Applicant be guaranteed that, even if a
    paid for hotel room as an accommodation conditionally requested based on the
    disabilities of myofascial pain syndrome and autism is denied, so long as promptly
    upon receiving first notice of the decision on appeal and final schedule/location,
    which is available to non-disabled candidates much sooner as they have no need to
    wait for decisions on testing accommodations petitions, if he so chooses to act to
    reserve a hotel room at his assigned test center rooms will have been negotiated and
    kept available at the negotiated rate for all nights during the extended examination
    schedule as well as the nights before and after each and all test sessions, through that
    time with the lowest block rate provided to any applicant. *See* 2018 Petition Form A
    Narrative/Affidavit Attachment, pp. 4, 8-9. In the alternative, if the Bar Appeal
    Decision Makers finds that the delays in resolving this petition for testing
    accommodations has left it insufficient lead time to obtain and/or preserve such
    availability in the block that has been negotiated, Applicant respectfully requests that
    they recognize Applicant's faultlessness for the delay and remedy the effect of the
    Petition process's length necessary to access accommodations by granting Applicant

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

a hotel room in the test center hotel as an accommodation on this alternative basis at the Bar's cost for the prevailing market rate outside the block from the day before the exam throughout examination and the night following the last day of examination; and if any of the nights are sold out to the general public, the Committee utilize any hotel loyalty program status tier it enjoys from the volume of rooms it books to invoke such program's guaranteed availability benefit if possible in Applicant's behalf.

 Supporting Evidence:

 2018 Petition Form A Narrative/<u>Affidavit</u> Attachment, pp. 4, 8-9; to the extent the equivalent of judicial notice cannot be taken for the facts that Applicant has disabilities requiring accommodation and this process to seek those accommodations and that modify/extend the set of dates on which Applicant's exam will be scheduled for, see the appropriate documents in the file generally.

5.  <u>2018 Petition Accommodation Requests, Section III., Request A., at 2018 Petition Form A Narrative/Affidavit Attachment, pp. 9-10,</u> for Applicant's request for additional extra time to 100% extra time on MBE sections and 150% extra time on written sections on the basis of his autism and keratoconus disabilities considering Dr. Preston's 2017 Appeal Supplemental Affidavit, Applicant's failure to finish the CPT in July 2018, and Applicant's 2017 Appeal positions for why the extra time sought for autism and keratoconus in the 2017 Petition was actually less than the up to 200% extra time cumulative amount justified by the totality of the evidence and independent disability expert recommendations.

 Supporting Evidence:

 2017 Petition Form A and Attached Narrative and Narrative Addendum Dated 8/28/2017 Plus High School I.E.P. and SAT, LSAT, GMAT, and MPRE Accommodation Letters; 2017 Petition Form C Attachments 2014 Neuropsychological Report by Drs. Pinn and Preston and Corroborating 2010 Neuropsychological Report by Dr. Toren <u>Plus 2017 Appeal Supplemental Affidavit by Dr. Preston Dated 12/5/2017</u> regarding pre-Keratoconus extra time accommodation recommendations for autism; 2017 Petition Form H and Attached Cornea Scans by Dr. Goodman Plus 2017 Appeal Supplemental Affidavit by Dr. Goodman Dated 11/27/2017 regarding extra time recommendation for keratoconus and dry eye syndrome <u>only</u>; 2017 Petition Form F by Dean Crain and <u>Updated</u> 2018 Petition Form F by Dean Crain; <u>2017 Appeal Statement Dated 12/5/2017</u> in its entirety; and 2018 Petition Form A and Narrative/<u>Affidavit</u> Attachment, pp. 5, 9-10.

6.  <u>2018 Petition Accommodation Requests, Section III., Request B., at 2018 Petition Form A Narrative/Affidavit Attachment, pp. 4-5, 10,</u> for Applicant's requests that, similar to Applicant's request for additional accommodation such that bringing the ergonomic workstation does not introduce other handicaps in order to accommodate the present disabilities: (1) where everyone experiences reduced performance over long periods of straight testing and Applicant's experts asserted that Applicant would

18

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

experience an even greater reduction, that Applicant receives an accommodation such that the extra time and extra meal breaks required to address the effects of Applicant's disabilities does not lengthen the number of hours the exam spans per day, but rather the number of days the exam is scheduled and administered over; and (2) whereas Applicant's holistic medical situation requires a multiplicity of medical appointments and business hours medical care management phone availability that makes a week of straight non-availability for either a significant risk for irreparable medical harm and inevitably a tremendous logistical and financial handicap on Applicant that would preclude equal access to require of him, Applicant receive an accommodation such that all exam days are scheduled over the appropriate number of weekend days.

Supporting Evidence:

2017 Petition Appeal Statement Dated 12/5/2017, pp. 5-6, 9-10; 2017 Petition Appeal Supplemental Affidavit by Dr. Preston Dated 12/5/2017; 2018 Petition Form A and Narrative/Affidavit Attachment, pp. 4-5, 9-10.

7.  2018 Petition Accommodation Requests, Section III., Request C. at 2018 Form A Narrative/Affidavit Attachment, pp. 2-3, 10, for Applicant's request for a minimum-distraction testing environment based on autism and Applicant's position that the proctoring and administrative incidents at his July 2018 examination would be a discriminatory burden to require applicants to risk happening to have an accommodated exam, which accommodation should include a private test room, a guarantee that Applicant's proctor will remain silent during testing excepting extraordinary circumstances and unless Applicant's test time will be extended by the length of each such conversation, that Applicant's proctor review the logistics of the accommodations Applicant is approved prior to the first test session, and that Applicant's proctor receive a reasonable level of advance training and/or orientation prior to the exam which the Bar Decision Maker qualified as "assignment to an experienced proctor."

Supporting Evidence:

Evidence supporting a private room identified in number 2. above as if fully set forth here; evidence of increased distractibility due to autism and importance of reducing distractions to address the effects of autism, regarding proctor assignment: 2017 Petition Form A and Attached Narrative and Narrative Addendum Dated 8/28/2017 Plus High School I.E.P. and LSAT and GMAT Accommodation Letters; 2017 Petition Form C Attachments 2014 Neuropsychological Report by Drs. Pinn and Preston and Corroborating 2010 Neuropsychological Report by Dr. Toren; and 2018 Petition Form A Narrative/Affidavit Attachment, pp. 2-3, 10.

As clearly demonstrated above, contrary to the 2018 Decision Letter Finding, the documents Applicant and his specialists have submitted does adequately support the expanded accommodation requests asserted in the 2018 Petition.

Conclusion:

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

    I, Applicant, Benjamin Sean Kohn, File No. 468532, hereby certify under penalty of perjury under the laws of the State of California that all statements of fact made in this appeal are true and accurate to the best of my knowledge and belief.

    Wherefore, based on the foregoing, Applicant respectfully requests that, to the extent there is sufficient time to do so without precluding review by the Committee of Bar Examiners prior to the February 2019 Bar Exam, the appropriate Bar staff reconsider[33] the 2018 Decision Letter ruling and increase the accommodations granted as close to or at the full set requested in the 2018 Petition as possible based on issue sets II. and III., plus issue set I. to the extent they have authority to grant appellate relief on that basis.  To the extent any of the accommodations requested in the 2018 Petition would still be denied, Applicant respectfully requests review thereafter by the Committee of Bar Examiners on all issue sets.

    <u>If upon this appeal, all accommodation requests made in the 2018 Petition are granted,</u> Applicant respectfully requests an additional decision letter renewing those same accommodations for the July 2019 California Bar Exam if he still is unsuccessful on the February 2019 exam, reserving any rights to timely file an additional Petition for that and future exams if new conditions are diagnosed.

    <u>If Applicant's administrative remedies are exhausted without approval of all accommodations requested in the 2018 Petition,</u> Applicant respectfully requests that the State Bar of California consider a request for accommodations on the July 2019 California Bar Exam identical to those requested in the 2018 Petition and this appeal as submitted based on those documents on file, reserving any right to file an additional Petition for that exam if new conditions are diagnosed, and complete any supplemental review necessary to exhaust all administrative remedies (including appeal) on those requests for that examination without further action from Applicant, and designate the appropriate procedures for challenging the decision of both examinations' rulings for what accommodations must be provided on any future exams in California State Bar Court and/or United States District Court and for claiming recovery of any damages not having the accommodations on the next attempt at the California Bar Exam (and thus potentially requiring extra retakes then would otherwise be needed) would cause.

<u>Dated January 6, 2019.</u>

<u>Respectfully Submitted,</u>
<u>/s/ Benjamin Sean Kohn</u>
Benjamin Kohn
1913 Fordham Way

---

[33] If expert advice regarding the 2018 Petition expanded accommodation requests was never sought from medical experts by the State Bar of California, Applicant respectfully requests the 2018 Petition and Appeal be submitted to a panel of as many of the following types of experts as possible, time allowing, to assist the Bar Appeal Decision Makers in any merits review they decide to reach: a gastroenterologist, neurophysiatrist, neuropsychiatrist, and ophthalmologist.

**Appeal Statement From Partial Denial of 11/1/2018 Petition for Supplemental ADA Testing Accommodations on February 2019 California Bar Exam**
**File No. 468532**

Mountain View, CA 94040
(650) 919-3584
Benjamin.s.Kohn@gmail.com

Name: Benjamin Kohn | PCP: Graham Dresden, MD

Palo Alto Medical Foundation
Attn: My Health Online P.O. Box 255386
Sacramento , California 95865-5386

# Letter Details

Sutter Health
Palo Alto Medical Foundation
We Plus You

State Bar of California Senior Director of Admissions and Committee of Bar Examiners:

I am the Primary Care Physician for Mr. Kohn and have previously evaluated Mr. Kohn for disability accommodations on the California Bar Exam based on myofascial pain syndrome (M79.18) in August 2017 and on myofascial pain syndrome, gastroparesis (K31.84), and fundoplication-postoperative dysphagia (R13.10) in October 2018 (please see my completed "Form B" for both evaluations and the letter and test results attachments to my most recent one). I understand that, of the accommodations I had recommended based on these conditions, Mr. Kohn has been denied the modified meal breaks, permission to take meal breaks in the exam room, and an accommodation that would allow him to reasonably access (without risking or spending thousands of dollars or commuting with furniture he cannot independently move to and from home at the same time as all other testing materials and equipment, especially with his motor delays due to autism) the ergonomic workstation I specified in my letter attached to the 2018 Form B for mitigating both the test performance reducing symptoms of his myofascial pain and the impact of being required to sit and work on a laptop or test book for many hours per day of testing several days in a row has on the flare-up risk of this condition and possible worsening of long-term severity of symptoms. However, I understand that my recommendation for Mr. Kohn to be given permission to bring food and drinks to the test room and access them during the exam, even if he is not allowed to take breaks from the exam in that room has been partially granted, but limited to what has been called "non-aromatic" items and only drinks in containers with a lid.

You should be aware that Mr. Kohn has a multiplicity of chronic medical conditions that can exacerbate the challenges of treating and accommodating his primary disabilities and collectively impose highly time consuming and time interval sensitive treatment requirements. All disability accommodations should be considered with a thorough study and comprehension of Mr. Kohn's holistic medical situation in mind. Presently these conditions include: autism spectrum disorder (F84.0); highly variable attention and neuro-processing speed deficit (R62.50); gross and fine motor delay (F82); myofascial pain syndrome (M79.18); cervicalgia (M54.2) ; occipital neuralgia (M54.81); keratoconus (H18.603); dry eye syndrome (H04.123); gastroparesis (K31.84); postoperative dysphagia (R13.10); irritable bowel syndrome with constipation (K58.9); pelvic floor dyssyngergia (M62.89); history of hemorrhoids (K64.8); Scapular dyskinesis (G25.89), history of C. Difficile infection (Z86.19), chronic idiopathic urticaria (L50.1); eczema (L20.84); allergic rhinitis (J30.9) ;

allergic sinusitis (J32.9); history of sinonasal polyposis (J33.9); severe airborne and other food allergies (Z91.013); chronic oral aphthae (K12.0); circadian rhythm sleep disorder and history of sleep apnea (G47.33), (G47.20).

Appropriate treatment for some of these conditions may deviate or be greater than standard protocols as a consequence of the collective cross-treatment logistics and contraindications.  He will require flexible scheduling arrangements of his professional commitments to not encompass most or all of weekday business hours in order to adequately treat these conditions and manage those treatments, and to perform as well as a person without such issues should start examination requiring peak performance no earlier than 11:00 am due to his delayed phase circadian rhythm sleep disorder.

As explained in my prior letter, Mr. Kohn will require an ergonomic workstation with the items I identified in order to take this exam with the least possible distractions and pain from the effects of this disability, and will also require such a workstation to reduce the aggravation that sitting for long periods of time straight and working on a laptop computer or book would cause to the underlying etymology of this condition, likely to result in increased symptoms during the test and adverse impact to his health following the exam. I would normally advise patients with this condition to avoid long periods of sitting or computer work, but given the requirements of the examination and Mr. Kohn's chosen vocation this is the minimal level of mitigation that would be adequate. Mr. Kohn's disabilities of autism and related motor delays would prevent him from transporting between his home and another location test supplies, his computer equipment, and his ergonomic equipment including a heavy office chair independently, or even just the chair independently where he would have to load or unload it into a vehicle.  I have reviewed the expanded accommodations he has requested and had denied to address the access to the ergonomic workstation, and find it reasonable and necessary that he be granted an additional accommodation to address that issue.

Until now, Mr. Kohn has not asked me to evaluate him for other effects of his autism spectrum disorder, because much of the past evaluations have been performed by other specialists.  At this time he has informed me of a deadline of 2/1/2019 for you to consider any supplemental materials for the appeal he is pursuing, and that I am the only specialist he has been able to schedule an appointment with in time to meet that deadline. I have reviewed the neuropsychological report by Drs. Pinn and Preston, which I note is based on testing that predates many of Mr. Kohn's other health concerns, such as the GI concerns and keratoconus, and the 12/5/2017 addendum by Dr. Preston.

Based on my own professional opinion treating Mr. Kohn and other patients with autism, I agree with an effect of heightened distractability that aggravates already impacted neuro-processing speed and variable attention. Based on this, I would recommend a silent testing environment with minimal interruptions, and that Mr. Kohn's proctor be instructed not to interrupt him to plan meal breaks, but rather wait for Mr. Kohn to elect to take one, and especially not to hold any conversations regarding their employment and possibility of not performing the requirements for Mr. Kohn's accommodated test. Because Mr. Kohn's disability would cause him substantial anxiety were logistical mix-ups or misunderstandings to occur that could aggravate his concentration weaknesses, I recommend Mr. Kohn request to be assigned to a proctor that has been well trained ahead of the examination and made aware of all of Mr. Kohn's accommodations that have been granted.

Given Mr. Kohn's meal needs and distractibility, in fairness to both him and others I would recommend he be tested in a private room.

Further, even if Mr. Kohn were neuro-typical his collective eye fatigue symptoms from the keratoconus and dry eyes, along with the baseline levels of myofascial pain, GI discomfort, and allergy symptoms, could justify extra testing time. I understand Mr. Kohn's ophthalmologist, Dr. Goodman, did not consider any disability or conditional aside from Mr. Kohn's vision and recommended that amount.

Having reviewed the testing and analysis by Drs. Pinn and Preston. I agree with their recommendation of at least 100% extra time based on Autism, and with Dr. Preston's opinion that the effects of autism on the speed at which Mr. Kohn can process questions and transmit cogent written responses is greater than for responding to multiple choice questions.  Accordingly, Mr. Kohn's request for 100% extra time on multiple choice sections and 150% extra time for written sections is reasonable.

I also agree that Mr. Kohn will fatigue and have greater neuro-processing delay the longer the testing duration is for a particular day, and that the measurements quantifying the proposed amount of extra time rely on the absence of an additional handicap of longer test time per day than the exam would normally be completed over. Accordingly, Mr. Kohn should be granted an accommodation of test time (excluding breaks) not exceeding the amount per day as would a normal candidate have and scheduling the exam over enough days to receive the necessary extra time and breaks without imposing that handicap.

I hereby certify under penalty of perjury under the laws of the State of California that the above statements are true and accurate to the best of my professional knowledge and belief.

Graham Dresden, M.D.
Board Certified in Family Medicine
Palo Alto Medical Foundation
650-404-8370

CC:
Benjamin Kohn
1913 Fordham Way
Mountain View CA 94040
January 26, 2019

*This letter was initially viewed by Benjamin Kohn at 1/26/2019 2:52 PM.*

MyChart® licensed from Epic Systems Corporation © 1999 - 2018



The State Bar
*of California*

**OFFICE OF GENERAL COUNSEL**

180 Howard Street, San Francisco, CA 94105        415-538-2333        Destie.Overpeck@calbar.ca.gov

February 15, 2019

Benjamin Sean Kohn
1913 Fordham Way
Mountain View, CA 94040

File No.: 468532
Applicant No.: 4765

Dear Mr. Kohn:

At its February 13, 2019, meeting, the Committee of Bar Examiners' Subcommittee on Examinations (Subcommittee) considered your appeal of the decision that was made regarding your request for expanded testing accommodations in connection with the February 2019 administration of the California Bar Examination (CBX). The Subcommittee partially granted your appeal. You have now been granted permission to remain in your examination room, with a proctor, during the lunch break period on each day of the examination. Please be advised that 60 minutes is the current standard secure lunch break period, as determined by the Committee.

The Subcommittee also affirmed the accommodations you were previously granted for the February 2019 administration of the CBX, i.e., a total of 6 hours and 30 minutes for the first session of the written portion of the examination, a total of 7 hours and 30 minutes for the second session of the written portion of the examination, and a total of 6 hours and 30 minutes for each Multistate Bar Examination (MBE) session of the examination; administration of the examination over a 4-day period; testing in a semi-private room; permission to bring food and a beverage into the examination room for all sessions of the examination, including during the MBE; permission to use your own laptop computer and a backup computer, both with Examplify installed, as an accommodation; and permission to bring your own adjustable ergonomic chair and other ergonomic items into the examination room for each session of the examination, including the MBE.

Seating at the testing accommodations test centers is limited because of the logistics associated with the test center and sometimes private rooms are assigned as a matter of course. If such happens to be assigned to you, it is not a guarantee that you will have the same sort of assignment for a future examination.

Benjamin Sean Kohn
February 15, 2019
Page 2

Schedule guidelines may vary at the discretion of the Committee. Applicants should carefully review the examination schedule provided in the testing accommodations notice for each administration of the examination.

The Subcommittee, however, continued to deny your requests for additional extra time for each session of the examination; an additional 30 minutes for each 90 minutes of testing for meal breaks (excluding any transit time to and from the secured lunch room); permission to initiate the start and end of all lunch and other break times within the approved duration and number of breaks per test day at your discretion and without prior notice; testing for no more than 6.5 hours per day; for the exam to be scheduled over the appropriate number of weekend days to accommodate numerous medical appointments; testing in a private room; provision of a complete ergonomic workstation, to be provided by the Committee, or alternatively, for the Committee to pay for your hotel stay starting the day before the exam throughout the examination and the night following the examination with the responsibility for securing timely reservations and availability of the room assumed by the State Bar, or alternatively, for you to be guaranteed a private testing room and to be allowed to leave all the equipment in the test room overnight after the first and through all subsequent exam days and until 11:00 a.m. the day after the last day of testing and the Bar will assume full liability for your ergonomic equipment and computer during the examination; and assignment to an experienced proctor who will not create distractions, as the documentation provided with your appeal still does not adequately support those requests. The accommodations granted should be sufficient to address the effects of your disability.

With regard to your January 6, 2019, Appeal Statement, you assert that the Committee of Bar Examiner's (Committee) December 28, 2018, decision granting specific testing accommodations failed to address all of your accommodation requests. However, the Committee's December 28, 2018, decision includes a Testing Accommodations Notice that specifically lists the accommodations granted. The letter then summarizes the requests that have not been granted and provides the reason: "as the documentation that you and your specialist have provided does not adequately support those requests. The additional extra time and other accommodation granted should be sufficient to address the effects of your disability." Although you cite 42 U.S.C.A. § 12101 et seq. and *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69 for the proposition that entities subject to the ADA are required to provide a detailed explanation of the reasons for denial, the legal authority does not support your claim that each request must be separately addressed. Additionally, the December 28, 2018, decision does provide a detailed list of the accommodations that were granted and the reasons for those that were denied.

While the Committee has an obligation to provide reasonable testing accommodations to applicants with sufficiently documented disabilities and functional limitations as defined under the ADA, there is no requirement that the Committee provide accommodations that compromise the security or validity of an examination or the integrity of the examination process, impose an undue burden on the Committee, or fundamentally alter the nature of the

Benjamin Sean Kohn
February 15, 2019
Page 3

examination or the Committee's ability to assess the applicant through the examination. Admissions Rule 4.82(D).

With respect to your concern that there was not adequate time to appeal the Committee's December 28, 2018, decision, the decision was issued timely. The processing of a testing accommodations petition typically takes up to 60 days and Admissions Rule 4.88(A) provides that an applicant will be notified in writing of a decision within 60 days of receipt. Your petition was received complete on November 1, 2018. The decision letter was mailed to you on December 28, 2018, within the normal 60-day processing period. In addition, State Bar Rule 4.81 provides that "(B) The Committee makes its best effort to process petitions for testing accommodations expeditiously but does not process petitions that are incomplete" and "(C) Time limits in testing accommodations rules are solely to expedite the processing of petitions and are not jurisdictional. The Committee may extend them for good cause." Due to the statutory requirements regarding when the bar examination is given and the last date to apply for the examination, applicants are requested to meet the time limits so that the State Bar will be able to consider and address an applicant's testing accommodation requests.

You also request that if the special hotel room rate is no longer available, that the special rate be offered as an accommodation. This request is not a reasonable accommodation. There are a limited number of rooms offered by the hotel at a special rate which is available until the cutoff date, unless all of the special rate rooms have been reserved by other applicants. The State Bar does not offer hotel rooms as part of its services and doing so would fundamentally alter the nature of its services. 28 C.F.R. § 35.130(b)(7) provides that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity*." (Emphasis added). You will need to contact the hotel directly regarding your hotel reservations.

Finally, with regard to your comments concerning proctors, the proctors are trained and required to perform their services to the best of their abilities.

If you would like any further assistance, please feel free to contact the office at ADMSF@calbar.ca.gov.

Sincerely,

DESTIE L. OVERPECK
Assistant General Counsel
cc:    Amy Nunez, Director, Admissions
       Lisa Cummins, Program Manager III, Admissions

(REVISED)

## THE COMMITTEE OF BAR EXAMINERS OF THE STATE BAR OF CALIFORNIA
## TESTING ACCOMMODATIONS NOTICE

| | |
|---|---|
| **Name of Applicant:** | **Benjamin Sean Kohn** |
| **File No.:** | 468532 |
| **Applicant No.:** | 4765 |
| **Examination:** | February 2019 California Bar Examination |
| **Date of Notice:** | February 15, 2019 |
| **Test Center Assignment:** | **(S623)** |
| | Crowne Plaza Hotel |
| | 1177 Airport Blvd. |
| | Burlingame |
| | **(Laptop)** |

The exam files that contain your answers for the written portion of the examination should be uploaded as soon as possible following the examination sessions. **You must upload both (2) exam answer files by 12:00 p.m. (Pacific Time), Saturday, March 2, 2019.** There are significant sanctions for not uploading your exam files by the deadline. Please refer to the bulletin associated with your admittance ticket, which will be available online after eligibility to take the examination is verified.

**Accommodations Granted:**

- A total of 6 hours and 30 minutes for the first session of the written portion of the examination;

- A total of 7 hours and 30 minutes for the second session of the written portion of the examination;

- A total of 6 hours and 30 minutes for each Multistate Bar Examination (MBE) session of the examination;.

- Administration of the examination over a 4-day period;

- Testing in a semi-private room;

- Permission to use your own laptop computer and a backup computer, both with Examplify installed, which confirm with the Committee's policies, as an accommodation;

  [Continued]

(REVISED)

**Name of Applicant:**      **Benjamin Sean Kohn**
**File No.:**               468532
**Applicant No.:**          4765
**Examination:**            February 2019 California Bar Examination
**Date of Notice:**         February 15, 2019

**Accommodations Granted [continued]:**

- Permission to bring your own adjustable ergonomic chair and other ergonomic items, subject to inspection by staff, into the examination room for each session of the examination, including the MBE;

- Permission to bring food (must be unwrapped and non-aromatic) and beverage (container must have a lid), subject to inspection by staff, into the examination room during each session of the examination, including the MBE; and

- **Permission to remain in your examination room, with a proctor, during the lunch break period on each day of the examination.**

(REVISED)

| | |
|---|---|
| **Name of Applicant:** | Benjamin Sean Kohn |
| **File No.:** | 468532 |
| **Applicant No.:** | 4765 |
| **Examination:** | February 2019 California Bar Examination |
| **Date of Notice:** | February 15, 2019 |

**Examination Schedule:**

You must be seated by the <u>report</u> time.  The examination will begin immediately following the instructions.  If you are not seated by the report time, the timing of your examination session will begin at the <u>start</u> time, regardless of whether the instructions have been completed.  Any time lost, including time used for reading instructions, will not be added to the test session.

| Date | Day | Report Time | Start Time | Session | Total Time |
|------|-----|-------------|------------|---------|------------|
| 2/26 | Tuesday | 8:30 a.m. | 9:00 a.m. | Essay Questions 1, 2, and 3 | 6 hours and 30 minutes |
| 2/27 | Wednesday | 8:30 a.m. | 9:00 a.m. | MBE - AM | 6 hours and 30 minutes |
| 2/28 | Thursday | 8:30 a.m. | 9:00 a.m. | Essay Questions 4 and 5; Performance Test | 7 hours and 30 minutes |
| 3/1 | Friday | 8:30 a.m. | 9:00 a.m. | MBE - PM | 6 hours and 30 minutes |

The sessions will not be interrupted for breaks other than one lunch break, which will be scheduled in accordance with the information contained in the "Important Information and Guidelines for Applicants Granted Testing Accommodations" bulletin.  **Applicants should bring their lunches with them each morning, as they will not be allowed to leave the secure test area after the session begins and before finishing that session of the examination.**  Applicants are not allowed to take the break in their examination rooms unless that accommodation has been specifically requested and granted.

# EXHIBIT 5

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

Committee of Bar Examiners
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

October 24, 2019

To Be Sent Via Electronic Upload

   This statement comprises my narrative in support of my Petition for renewal of the accommodations I received on the 2/2019 California Bar Exam on the 2/2020 California Bar Exam, and additionally, for those accommodations I had requested in my Petition for the 2/2019 California Bar Exam that were denied for that exam, except as amended to add the provision of a motorized adjustable (any height by up or down buttons) sit-or-stand workstation and ergonomic office chair (with such sit-or-stand workstation provided, then if necessary, though not preferred, without the dynamically adaptive full spinal support) that was provided as an accommodation on the 7/2019 Iowa Bar Exam by the Iowa Board of Law Examiners, as an additional option in lieu of or additional to one or more of the options requested for accommodating my disability of myofascial pain syndrome (as exacerbated/co-presenting with neuromotor autism symptoms) (e.g. the Herman Miller Embody Chair or physician certified to be equivalent chair with dynamically adaptive full spinal support such as by a matrix of dynamically adaptable panels to distribute weight evenly and support each disk no matter what seat position or angle the user varies between), a hotel room to facilitate bringing my own such char, or storage in the test room at the Bar's risk and liability of my own such chair; see my 2/2019 CA Bar Exam Petition and Appeal for full details); submitted as an attachment and addendum to my Form A from the present Petition.

   Enclosed with or uploaded to my Petition is a copy of the letter detailing my approval of accommodations from the Financial Industry Regulatory Authority (FINRA), an entity overseeing certain kinds of professional securities transacting services and similar licensure in behalf of and/or under the United States Securities and Exchange Commission (SEC). These accommodations are for their all multiple choice "Securities Industry Essentials" and "Series 66" exams. I'd like to note that these exams are for professional licensing/certification required by the SEC for certain kinds of vocational practice, similar to the California Bar Exam being an exam for professional licensure to practice a specific profession (law) by a governmental entity, and that some of the accommodations approved (provision of the specific Herman Miller Embody chair requested by my doctor, a guaranteed private testing room, and meal breaks of 30 minutes per 90 minutes of testing time) were among the accommodations that were denied by the State Bar of California previously and that I now renew my requests for here with these FINRA approvals as new evidence in support thereof.

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

Similarly, please see Form G from the Iowa Board of Law Examiners as new evidence of approval for a bar exam of an ergonomic office chair and the above-described sit-or-stand workstation.

Submitted directly with the present Petition for Testing Accommodations on the 2/2020 California Bar Exam is my up to date Forms E and G; for any other forms (B, C, F, and H) needed to consider the full range of disabilities asserted in my prior Petitions, and to support my present requests generally, please see all forms, evidence, and documentation in support of those petitions as if fully set forth herein.

The narratives as to set of disabilities I have, how and when they were diagnosed, what their effects are, and how those warrant the accommodations requested on the California Bar Exam are well detailed in the 2018 Petition and Appeal; please see those statements as if fully set forth herein. However, I do: (1) note that in planning for the February 2020 California Bar Exam, especially without so far successfully getting the hotel to apply the group rate and the present published rates being higher than before, and because I am even more financially limited for this retake than before due to attrition and continued delay to gainful employment, there is a significant chance I will not financially be able to stay in the hotel at my own expense during the exam as I have on my previous two attempts. Consequently, if that is the case, I likely cannot bring my chair as I have before (despite my position about being entitled to the provision of the chair under the correct ADA standards and evidence), which means if none of the options for ameliorating my disability are approved the effects of my disability will have a significant risk of creating long-term medical harm from attempting the Bar Exam (as described by Dr. Dresden in his 1/26/2019 affidavit) and interfere with my performance on the exam more than with the unsuccessful attempts; and (2) respond for the first time to the decision letter on my appeal of the denials for the February 2019 California Bar Exam below:

1. As noted in my appeal statement dated 1/7/2019, the Committee's failure to provide or explain reasons for the denials was unlawful. The appeal decision compounded that error by continuing, with notice that could not be more explicit regarding my position as to such, to not provide significantly more explanation of the denials than it did in the original decision letter. I maintain my position that all denials must be explained with the reasons set forth in enough detail to have notice of all of the Committee's relied upon findings of fact and holdings of law. Any holding that the documentation on file is legally insufficient evidence to reach the merits of any requests would be manifest error. However, without those explanations, I must largely rest on my prior explanations for why I need those accommodations to receive equal accessibility to the exam, except to the extent of the new evidence supplied by FINRA and the Iowa Board of Law Examiners.

2. Similarly, contrary to the decision letter, neither omission of a requested accommodation from the list of accommodation approvals without mention of it in the decision letter nor a statement that my documentation "does not adequately support those requests" constitutes "addressing" the requests to the extent required by the ADA and applicable California disability law.

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

3.  The 2/15/2019 decision letters asserts:

> "Although you cite 42 U.S.C.A. § 12101 et seq. and *Bartlett v. New York State Bd. of Law Examiners* (2nd Cir. 2000) 226 F.3d 69 for the proposition that entities subject to the ADA are required to provide a detailed explanation of the reasons for denial, the legal authority does not support your claim that each request must be separately addressed.  Additionally, the December 28, 2018, decision does provide a detailed list of the accommodations that were granted and the reasons for those that were denied."
> (State Bar of California Decision Letter Dated 2/15/2019, p. 2).

There are several issues with this passage.  First, it misattributes which of the propositions in my appeal statement I was citing *Bartlett* in support of, which may be why that case was found to not support the referenced proposition.  In my appeal statement dated 1/7/2019, I actually cited *Bartlett* (see also 42 U.S.C. § 12101 *et seq.*; 42 U.S.C. § 12102; 42 U.S.C. § 12132 *et seq.*; 42 U.S.C. § 423(d)(3); and California Government Code § 11135 *et seq.*) in support of my recital of the elements at issue in whether the ADA requires the grant of a disability accommodation request; specifically:

"(1) whether the disabilities asserted by applicant are present and correctly diagnosed by qualified professionals; and (2) whether the disabilities relied upon affect both at least one major life activity and applicant's ability to access the California Bar Exam on a "level playing field" to candidates without such handicap(s); and (3) whether the accommodations requested could be necessary or appropriate to remedy or mitigate applicant's ability to equally access the California Bar Exam on a level playing field; and (4) whether the accommodations requested would not impose an "undue burden" upon the State Bar of California (i.e. by necessarily compromising the security and integrity of the exam results or imposing costs or administrative burdens so great as to vastly outweigh applicant's interest in accessing the career-defining examination that the State has prohibited applicant from pursuing his chosen occupation without successfully completing)."
(See Appeal Statement Dated 1/7/2019, p. 8).

Second, my proposition that detailed explanations of ADA request denials are legally required was, in fact, correct.

Where the decision to deny an accommodation is based on fundamental alteration and/or undue burden defenses, 28 C.F.R. §§ 35.130, 35.149, and 35.150 expressly provides:

"... The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and <u>must be accompanied by a written statement of the reasons for reaching that conclusion.</u>  If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity." (Emphasis Added);

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

And Further:

"... Except as otherwise provided in § 35.150, no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."

   Such requirements are not just found in those instances.  An arbitrating panel formed pursuant to a consent decree under review by the Court held that, as posited, even the weaker Title III requires a detailed and itemized written explanation for each ADA denial.  <u>Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council Inc.</u>, No. 12-cv-01830-JCS, 2018 U.S. Dist. LEXIS 35738 (N.D. Cal. Mar. 5, 2018).

   A broad, even higher than Federal, requirement to provide disability accommodations is also present under California Government Code § 11135 *et seq.*  That statute also requires explanations of each individual denial.  <u>Id</u>.

   Moreover, the notice of the constituent findings of facts and holdings of law relied upon in the State Bar's decision is an irreducible component of a meaningful appeal remedy and of the right to be heard on the reasons those decisions must or should be overturned, because it is necessary information to properly and effectively rebut such findings and holdings, and since the State Bar of California has chosen (even where not constitutionally required) to offer such an appeal remedy, constitutional due process and equal protection of the law constitutional rights now apply to that remedy.

   Where the disposition of ADA requests constitutes formal adjudicatory proceedings of a government entity, the panoply of constitutional due process requirements also attaches.  Where, as here, the remedy of appeal within such a process has been voluntarily offered to any applicant, even where the existence of such remedy was not a constitutional right, so <u>both constitutional due process and equal protection requirements apply to ensuring the meaningfulness of the appeal remedy.  That the Order forming the subject of appeal must go into sufficient detail about the reasons for its dispositions to provide the appellant due notice of what potentially erroneous positions of fact and law have been taken on all disputed matters therein in order to be able to effectively argue for alternative positions of fact and law wherever relevant logically follows as an irreducible component of a meaningful appeal remedy.  Summary Denials deprive the applicant of such notice and opportunity to address the premises relied upon by the State Bar.</u>

   The relevant balancing test is set forth in <u>Matthews v. Eldridge</u>, 424 U.S. 319 (1976) *et seq*.  That test weighs the magnitude of Applicant's interest in the outcome of any appeal remedy against the minimal (where legitimate grounds for denials exist) costs and burden on the State Bar of having to provide a detailed description of all findings of fact and holdings of law relied upon, and the risk that the absence of such would prejudice the appeal enough to cause an erroneous outcome.

## Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam
## Form A Narrative; File No. 468532

As the vocation (practice of law) requiring a license that passage of the Bar Exam is required to obtain is one which Applicant has now invested more than four years and $200,000 pursuing to date and as the license to so practice likely represents millions of dollars in increased earning potential over Applicant's future career, the magnitude of Applicant's interest in equal access to that Exam – and of the absence of an erroneous deprivation of his statutory right to such – is enormous indeed.

While it is true that the standard for ADA accommodations is not whatever accommodations would ensure passage of a difficult exam, the difficulty of the exam is at issue in that the <u>impact of unequal access due to insufficient disability accommodations will be far more likely to be dispositive for an unsuccessful outcome than that same degree of unequal access would have been for less challenging exams.</u>  Moreover, in Applicant's case, some of the aspects of the Bar Exam that make it especially challenging (and possibly influenced the twice unsuccessful California outcome), including the unique length in both days and hours per day of uninterrupted, low distraction-tolerance mental activity (far higher than the same performance-tolerance for everyday work and tasks) and of sitting/computer posture required; and of both hours and travel that frustrate access to Applicant's normal medical appointment regime for treatments that control the severity of his symptoms and prevent progression of the underlying causes of some of his conditions; magnify the exposure of the exam to the effects of Applicant's disabilities in both scope and magnitude.

Thus, the threshold of sufficiency for disability accommodations needed for equal access will be far higher on the bar exam than for law school exams or part-day standardized tests, and insufficient disability accommodations will create a higher degree of unequal access than for those same tests, which will then have a much higher probability of resulting in an adverse outcome on the Bar Exam than for those easier exams.  Even the Iowa Bar Exam, on which Applicant received some, but not all of the expanded accommodations sought herein, and passed, Applicant believes he was still not provided complete equal access and that the passage was due to a higher tolerance for a certain degree of handicap due to the much lower cut score and less divergent subject law between the MBE and essay portions.  <u>Accordingly, the magnitude of Applicant's interest in sufficient accommodations for true equal access is not diminished by perceived evidence that curing the worst effects will be adequate for any residual handicap to be practically harmless to Applicant's legitimate interests.</u>

Next, the 2/15/2019 decision letter statement that the reasons for the denials were given in the 12/28/2018 Decision Letter is factually belied by the text of that letter, which (for some, but not all of the denials) simply notifies me the requests had been denied and that the only explanation for that was that my documentation was inadequate to support those requests, an allegation that was thoroughly rebutted in depth in my appeal brief to little acknowledgment by the State Bar of California other than the belated passage (insufficient to have avoided waiver of defenses to granting the accommodation for the 2/2019 exam under 28 C.F.R. §§ 35.130, 35.149, and 35.150, as well as similar statutory (42 U.S.C. Ch. 121) and regulatory (28 C.F.R. Ch. 35) guidelines elsewhere for the requirements to assert such basis for denial of each type of Title II disability accommodation request applicable):

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

"While the Committee has an obligation to provide reasonable testing accommodations to applicants with sufficiently documented disabilities and functional limitations as defined under the ADA, there is no requirement that the Committee provide accommodations that compromise the security or validity of an examination or the integrity of the examination process, impose an undue burden on the Committee, or fundamentally alter the nature of the examination or the Committee's ability to assess the applicant through the examination. Admissions Rule 4.82(D)."
(2/15/2019 Decision Letter, pp. 2-3).

I posit that my disabilities were and are undisputed, and that their effects and the relationship thereof to the need for the requested accommodations in order for the exam to be as equally accessible as it can be made is amply documented, which satisfies my *prima facie* burden under 42 U.S.C. Ch. 121 and 28 C.F.R. Ch. 35 for the requests to be *presumed* reasonable and obligatory subject to evidence-based factual rebuttal or proper assertion and establishment of one or more enumerated defenses to the obligation. More important at this point than any past exam's waiver is that the State Bar of California has yet to assert any claim or theory for <u>any</u> of my accommodation requests compromising the security, validity, or integrity of the exam or of the exam process, or imposing an undue burden; it is my position that none of them do either. The singular accommodation request that the denial for which was for the first time on appeal explained under an assertion of it allegedly fundamentally altering the services of the State Bar of California will be addressed below.

The 2/15/2019 Appeal Decision further states:

"You also request that if the special hotel room rate is no longer available, that the special rate be offered as an accommodation. This request is not a reasonable accommodation. There are a limited number of rooms offered by the hotel at a special rate which is available until the cutoff date, unless all of the special rate rooms have been reserved by other applicants. The State Bar does not offer hotel rooms as part of its services and doing so would fundamentally alter the nature of its services. 28 C.F.R. § 35.130(b)(7) provides that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, *unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.*" (Emphasis added). You will need to contact the hotel directly regarding your hotel reservations."
(2/15/2019 Decision Letter, p. 3).

The State Bar's legal analysis here would be sound but for its <u>choice</u> to arrange a special rate under conditions which are not equally accessible to candidates requiring disability accommodations, because of the substantial timing differences the process it creates in obtaining the confirmed test center location and testing dates, and because of the differences accommodations might create in which nights the hotel stay would be for. The State Bar's services may not ordinarily include direct provision of hotel rooms for the purpose of candidate

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

lodging (it has so rented and provided, at the very hotel, rooms which it repurposes for administering the test), but the accommodation request referenced (at 2018 Petition Narrative, pp. 8-9) (not to be confused with the unrelated request as to the Herman Miller Embody chair and ergonomic workstation access request for which the State Bar purchasing and providing a hotel room in the test center hotel is one of the options offered as a courtesy substitution to accommodate specific disability effects) only pertains to the *rate and terms* the State Bar has already brought within the scope of its services by so arranging it with the hotel to the extent it customarily chooses to, not to direct provision of a hotel room.  Negotiating supplemental or revised terms with the hotel that allow for equal accessibility or else compensating for the failure to have done so, then, is not a fundamental alteration as defined in 28 C.F.R. § 35.130(b)(7).  Further, 28 C.F.R. § 35.130(b)(1) expressly extends all equal accessibility accommodation duties to services the subject governmental entity (State Bar of California) contracts for from third parties with the purpose of providing services, programs, activities, or events.

   Moreover, the referenced accommodation request and even provision of a hotel room would also not constitute a "fundamental alteration" to the State Bar's services for purposes of 28 C.F.R. § 35.130(b)(7) for other reasons.  Most notably, while anything necessitating that the State Bar itself go into the hotel business and own suitable properties would admittedly be a fundamental alteration, an accommodation that would merely require the State Bar to acquire something both commercially available such as a hotel room reservation for specific and limited nights (especially, as here, with the existing trading partner it contracts with to obtain all other material facilities for the exam) and demonstrably instrumental in ameliorating the effects of the disability for implementing the principal service or subject (the California Bar Exam, undisputedly within the scope of the State Bar's services) in an equally accessible manner to the disabled applicant would not constitute a "fundamental alteration" to that service for purposes of 28 C.F.R. § 35.130(b)(7), and is also expressly authorized by 28 C.F.R. § 35.130(b).  And, importantly, the State Bar of California is already doing so in itself contracting with the hotel not just for the special rate, but for the hotel rooms it reserves to convert into testing rooms or other facilities used for its general purpose of administering and implementing the California Bar Exam, just as it already arranges for special rates.  The most the State Bar would do (even if providing a room for lodging) is increase the quantity of rooms it acquires by one, which is not a change that would amount to a fundamental alteration.

   The more relevant challenge to such a request would be that the commercial price of acquiring the room (or of contracting for equally accessible terms on the special rate or else compensating prejudiced disabled applicants) would be an undue burden, which I would contest.  The test for undue burden is a balancing test between the cost and administrative impact on the State Bar and the applicant's interest in equal accessibility to the subject service for which accommodations are sought.  Lower scrutiny services from private subject entities under Title III may properly assert undue burden at a much lower threshold of disproportionality between the interests than a governmental entity subject to Title II may.  A government service that is mandatory for its purpose (i.e. obtaining a law license) in which the applicant has a significant legitimate interest, such as the instant exam, carries the highest

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

threshold for the government to claim an undue burden, especially considering the comparatively vast resources of the State.

Moreover, again, the standard for the determination of an undue burden provided for under the A.D.A. statutes and regulations promulgated thereunder can only exceed, and not abrogate, those of constitutional due process and the test for which set forth in Matthews v. Eldridge, 424 U.S. 319 (1976) *et seq.* and cited above.  Where the State offers licenses to practice law, a legitimate interest, the process for obtaining such a license becomes subject to due process. The process due must have appropriate safeguards to prevent erroneous deprivations of the protected interest.  Considering the legal posture of the ADA, denial of a law license due to unequal access to the Bar Exam would constitute an erroneous deprivation of the interest, so where (as here) Applicant has demonstrated that the existing system for special hotel rates results in unequal accessibility thereto, an undue burden at a minimum has to comprise a gross disproportionality between the cost Applicant's request would have on the State Bar's interests (at most the price difference for the hotel stay between the special rate and the hotel's list price) and Applicant's interest in getting a required law license after expending years and hundreds of thousands of dollars in pursuit of a career therein.  Staying in the hotel affords many advantages impacting the probability of success on the Bar Exam (and thus the issue of the effect of equal access thereto on the degree of risk that an erroneous deprivation would occur using the standard process), not the least of which is that it may be the only feasible way for Applicant to bring the medically necessary Herman Miller Embody chair (which cannot be practically transported on test days or for more than one round trip) if the accommodation for its provision is denied, for the reasons in the previous petitions and appeals.  Even past that, the assurance of not running into unforeseen transportation delays on one or more days of the exam given the strictness of the punctuality expected on the Bar Exam and the liberation of the most impactful study time window from commute time cognizably would benefit Applicant's performance on the exam, giving Applicant a right to not be prejudiced by higher costs than other candidates need pay for such benefit directly due to his need to seek and receive disability accommodations.

The 2/15/2019 Decision Letter further provides:

"... [W]ith regard to your comments concerning proctors, the proctors are trained and required to perform their services to the best of their abilities."
(2/15/2019 Decision Letter, p. 3).

Applicant notes that the apparent competency and behavior of his proctor on the 2/2019 California Bar Exam was appropriate.  Notwithstanding that, the experience on the 7/2018 California Bar Exam Applicant described in the 2018 Petition did not reflect a degree of training (especially were the statement of onsite Bar Staff in the break room that the proctors had been onboarded only the night before to be credited) as that required to avoid becoming a source of unequal accessibility in violation of the ADA considering Applicant's autism vulnerabilities, and more importantly the ADA request denied applied not just to the training of the proctor, but to their behaviors during the exam, which is in no way addressed by the above.  While the most

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

recent exam was not prejudiced by this matter, Applicant maintains that it should be granted as an accommodation to prevent the risk of which experience occurs prospectively depending on luck of the draw.  Importantly, if the facts asserted in the 2/15/2019 Decision Letter were credited as true, there would be no prejudice or added burden to the State Bar by agreeing to provide as an accommodation something it claims it would provide customarily regardless.

Finally, the 2/15/2019 Decision Letter provides:

"With respect to your concern that there was not adequate time to appeal the Committee's December 28, 2018, decision, the decision was issued timely.  The processing of a testing accommodations petition typically takes up to 60 days and Admissions Rule 4.88(A) provides that an applicant will be notified in writing of a decision within 60 days of receipt.  Your petition was received complete on November 1, 2018.  The decision letter was mailed to you on December 28, 2018, within the normal 60-day processing period.  In addition, State Bar Rule 4.81 provides that "(B) The Committee makes its best efforts to process petitions for testing accommodations expeditiously but does not process petitions that are incomplete" and "(C) Time limits in testing accommodations rules are solely to expedite the processing of petitions and are not jurisdictional.  The Committee may extend them for good cause."  Due to the statutory requirements regarding when the bar examination is given and the last date to apply for the examination, applicants are requested to meet the time limits so that the State Bar will be able to consider and address an applicant's testing accommodations requests." (2/15/2019 Decision Letter, p. 3).

Applicant does not dispute the timeliness of the 12/28/2018 decision letter, but rather challenges the 10 days default deadline for the appeal from that letter.  The State Bar being afforded and taking 60 Days to decide the Petition in contrast illustrates the lesser gravity or urgency in needing the turnaround to be so exacting and at such prejudice and cost to the Applicant, which Applicant submits as unlawful by statute and unconstitutional for the reasons set forth in his Appeal Statement Dated 1/7/2019 as if fully set forth herein and the addended arguments below.  The "statutory requirements regarding when the bar examination is given and the last date to apply for the examination" do not excuse this defect for three reasons: (1) There is no compelling reason for the State Bar, with its dedicated staff and resources, to require 60 days when an Applicant is expected to (after round trip post mail) turnaround an even more exacting review and response in just a few days with no notice and in their own time; and (2) Both Constitutional Due Process Violations and Federal Statutes supersede state statutes, rules, and policies; and (3) Even accepting 60 days as reasonable and the validity of the cited statutes, a decision submitted by the timely filing deadline of November 1 and decided within 6 days would issue 31 days before the statutory deadline for consideration of an appeal, leaving no practical reason why the initial appeal receipt deadline could not be the much more manageable timeframe of within 30 days from the decision.  While the State Bar may have authority to so extend the deadline for good cause, this is discretionary, and applicants cannot reasonably be expected to rely on that if they learn the State Bar denies their requests only a couple calendar days before they would need to mail a complete appeal to have the delivery service get it to the State Bar timely in the event the State Bar opted not to

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

exercise its discretion and grant an extension.  Nor is calling discretionary what higher sources of law, Applicant opines, make mandatory sound public policy.  Applicant respectfully requests that the decision letter (unless granting all accommodations requested) provide for an appeal deadline of at least 30 days from the date of the decision.

42 U.S.C. § 12148(a)(1) requires that the procedures in place for seeking disability accommodations should not themselves cause, implicitly by and through the technical, degree of time consumption, documentary (extending both into time and financial burden) burdens placed upon disabled candidates so great relative to the State interest in preventing improper or fraudulent accommodations that they themselves unduly chill the proper exercise of disability rights or cause unequal accessibility through how exacting meeting the burden for approval is; e.g. that the state programs must be "readily accessible to and usable by individuals with disabilities."  (See Also 42 U.S.C. § 12203(b)).  Even stronger language that no adverse disparate impact may result from such is present under California Government Code § 12944 *et seq*.

Applicant need not speculate as to whether the norms for Bar Exam accommodations are questionable for their empirical impact on access to the bar exam by persons with disabilities. (*See Long, University of Tennessee College of Law,* "Reasonable Accommodation as Professional Responsibility, Reasonable Accommodation as Professionalism" (2014) at https://lawreview.law.ucdavis.edu/issues/47/5/Articles/47-5_Long.pdf; *See Also Hensel,* "The Disability Dilemma: A Skeptical Bench & Bar," 69 U. Pitt. L. Rev. 637, 642 (2008); *See Also Campbell v. Greisberger,* 80 F.3d 703, 704-05 (2d Cir. 1996) (discussing a challenge to mental health-related questions on bar application and the decision to condition admission on provision of medical records related to disability).  As discussed in the foregoing authorities, people with disabilities are nearly 100 times more underrepresented among lawyers as compared to the general population, and policies and practices that clearly propagate this are unlawful.

Applicant's body of documentation in the past and present petitions already comprises many hundreds of hours of his time and many thousands of dollars in financial expense to obtain.  It includes exhaustive responses and clinical testing from Applicant's primary care physician, three clinical psychologists, gastroenterologist, and ophthalmologist, all of whom are personally familiar with Applicant (see 28 CFR Part 36 Appendix A, citing 28 CFR § 36.309) unlike any the Committee may have consulted, among test accommodations records going back decades. That the volume and thoroughness of such might be so inadequate as to not reach the substance would, if implicitly claimed as had the State Bar before, would egregiously flout this requirement and the independent floor under the above-discussed Matthews balancing test for the constitutional due process requirements applicable to the process for admission to the Bar and for the process to seek statutorily entitled disability accommodations on the Bar Exam.

Moreover, Applicant notes that the documents requested by, provided to, and then found as still "inadequate to support [reaching the merits of] those [denied] requests," substantially exceeds the documentary evidence he submitted to the LSAC based on their requirements before

**Petition for ADA Testing Accommodations on 2/2020 CA Bar Exam**
**Form A Narrative; File No. 468532**

those requirements were then held (by an advisory panel with authority to arbitrate the requirements of the A.D.A. based on authority from a consent decree, the construction of which forming the primary judicial dispute) in litigation before the United States District Court for the Northern District of California to be impermissibly excessive under both United States and California law.  "In response to its charge to "establish the type and scope of documentation that may be requested," the Panel concluded that LSAC's existing requirements were "excessive for most candidates who seek testing accommodations on the LSAT and inconsistent with the documentation guidelines of other national testing entities."
Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council Inc, No. 12-cv-01830-JCS, 2015 U.S. Dist. LEXIS 104751, at *20 (N.D. Cal. Aug. 7, 2015).  Moreover, like with the EEOC pursuant to Title I (see https://www.eeoc.gov/eeoc/internal/reasonable_accommodation.cfm#_Toc531079189), that Panel held that Title III of the ADA required, as posited by Applicant above, specific, detailed, and itemized explanations setting forth the reasons for each and every ADA request denial.  Importantly, the requirements of Title II are intended to be even stricter than Title III, because public policy supports an even greater access to government services the community is required to pay for via taxes than for private commercial offerings.

Conclusion:

    Wherefore, for the reasons above, I respectfully request that all accommodations requested for the 2/2019 California Bar Exam be provided on the 2/2020 California Bar Exam, and in the alternative that the State Bar of California explain each itemized denial in detail, setting forth all relied upon findings of fact and holdings of law.  I further respectfully request that any decision partially denying my requests specify an appeal deadline of receipt of my appeal no less than 30 days from the date the decision letter is mailed.

Dated this 24th Day of October, 2019.

Respectfully Submitted,

/s/ Benjamin Kohn
Benjamin Kohn
1913 Fordham Way
Mountain View, CA 94040
Benjamin.s.Kohn@gmail.com
(650) 919-3584



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300
845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500

## FORM E
## TESTING ACCOMMODATIONS – PSYCHOLOGICAL DISABILITIES VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

**NOTICE TO APPLICANT:  This section of this form is to be completed by you.** The remainder of the form is to be completed by the qualified professional who is recommending testing accommodations for the California Bar Examination or First-Year Law Students' Examination for you on the basis of a psychological disability.  Please read, complete, and sign below before submitting this form to the qualified professional for completion of the remainder of this form.

Applicant's Full Name: _Benjamin Kohn_

File Number: _468532_

> I give permission to the qualified professional completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

_Benjamin Kohn_                                    _5/20/2019_
Signature of Applicant                                    Date

**NOTICE TO QUALIFIED PROFESSIONAL:**

The above-named person is requesting accommodations for the California Bar Examination or First-Year Law Students' Examination.  All such requests must be supported by a comprehensive evaluation report from the qualified professional who conducted an individualized assessment of the applicant and is recommending accommodations for the examination on the basis of a psychological disability.  The Committee of Bar Examiners also requires the qualified professional to complete this form. **If any of the information requested in this form is fully addressed in the comprehensive evaluation report, you may respond by citing the specific page and paragraph where the answer can be found.**  Please attach a copy of the evaluation report and all records and test results on which you relied in making the diagnosis and recommending accommodations for the an examination administered by the Committee of Bar Examiners.  Your assistance is appreciated.

TA-FormE.0417

1

assistance is appreciated.

The California Board of Legal Specialization may forward this information to one or more qualified professionals for an independent review of the applicant's request. Print or type your responses to the items below. **Return the original of this completed form, the comprehensive evaluation report, and relevant records to the applicant for submission to the California Board of Legal Specialization.**

## I. QUALIFICATIONS OF THE PROFESSIONAL*

Name of professional completing this form: _Graham Dresden, MD_

Address: _701 E. El Camino Real, Mountain View, CA 94040_

Telephone: _650-409-8370_    Fax: _650-409-8470_

E-Mail: _____

Occupation, title, and specialty: _Physician, MD Family Medicine_

License Number/State: _A105743, California_

*The following professionals are deemed appropriate and qualified to provide a diagnosis of psychological disabilities: Psychiatrist, Psychologist or other licensed mental health professional.*

Please describe your qualifications and experience to diagnose and/or verify the applicant's condition or impairment and to recommend accommodations:

_I am a board certified Family Medicine_
_physician with over ten years of experience_
_including mental health_

## II. DIAGNOSTIC INFORMATION CONCERNING APPLICANT

1. Date of last evaluation/assessment of the applicant: _5/20/2019_

2. What is the applicant's specific diagnosis based on the DSM-5 (or most current version)? Please include diagnostic codes where applicable. If diagnosis is not definitive, please list differential diagnoses.

_① Austism Developmental Disorder    F89.0_
_② Neuroprocessing Disorder          R62.50_

TA-FormE.0417

2

3. Describe the applicant's history of presenting symptoms of a psychological disability. Include a description of symptom frequency, intensity, and duration to establish severity of symptomology.

*He shows frequent signs of attention variability; easily distracted by extra sensory symptoms from the environment; anxiety prior; helms processes speed and neuroprocessing relationship delay. See 2014 Data evaluation.*

4. Describe the applicant's **current** functional limitations caused by the psychological disability in different settings and specifically address the impact of the disability on the applicant's ability to take the Legal Specialist Examination under standard conditions. Note: Psychoeducational, neuropsychological or behavioral assessments often are necessary to demonstrate the applicant's current functional limitations in cognition.

*from 2018 position.*

*Limitations as described above + these slow his ability to process questions and then transmit answers. In addition, the distractibility and anxiety properties make it difficult for the patient to cope with logistical changes/issues if his proctor is not fully cognizant of how to administer to accommodate test. A private room*

5. Describe the applicant's compliance with and response to treatment and medication, if prescribed. Explain the effectiveness of any treatment and/or medication in reducing or ameliorating the applicant's functional limitations and the anticipated impact on the applicant in the setting of the Legal Specialist Examination.

*would ameliorate anxiety flexing issues.*

*Medication trials in the past have not been effective and future trials are not planned due to no expectation of efficacy.*

**ATTACH A COMPREHENSIVE EVALUATION REPORT.** The provision of reasonable accommodations is based on assessment of the *current* impact of the disability on the specific testing activity. Due to the changing nature of psychiatric disabilities, it is essential that the applicant provide recent and appropriate medical documentation. An applicant's psychological disability must have been identified by a comprehensive diagnostic/clinical evaluation that is well documented in the form of a comprehensive report. **Please attach to this form a copy of the comprehensive evaluation report and all records and test results on which you relied in making the diagnosis and recommending accommodations for the Legal Specialist Examination.**

The evaluation report should include the following:

- psychiatric/psychological history

- relevant developmental, educational, and familial history

- relevant medical and medication history

- results of full mental status examination

TA-FormE.0417

3

- results of full mental status examination

- description of current functional limitations in different settings

- results of any tests or instruments used to supplement the clinical interview and support the presence of functional limitations, including any psychoeducational or neuropsychological testing, rating scales, or personality tests

- diagnostic formulation, including discussion of differential or "rule out" diagnoses prognosis

## III. ACCOMMODATIONS RECOMMENDED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

### FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop

TA-FormE.0417

4

computers to type their answers, or they may handwrite their answers. The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination is administered in a quiet environment, and applicants are allowed to use small foam earplugs. They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Other: _____

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice answer sheet (Scantron sheet) (choose one)

   ☐ Permission to circle answers in question booklet

   ☐ Permission to dictate answers to proctor

☐ Dictate to a voice recorder (choose one)

   ☐ Digital voice recorder (for use with flash memory cards)

   ☐ Tape recorder (for use with microcassette tapes)

   ☐ Other: _____

TA-FormE.0417

5

**Equipment or Facility Requirements**

[X] Computer *as an accommodation* (must have direct nexus to the effects of the disability)

    [ ] with SofTest installed

    [ ] with voice-recognition software (e.g., Dragon Naturally Speaking) installed

    [ ] with screen-reading software (e.g., JAWS) installed

    [ ] with other (specify): _____

[ ] Special equipment (specify): _____

[X] Private room

[ ] Semi-private room

[ ] Wheelchair accessibility (if table, specify height): _____

[X] Other: *Proctor that has been trained to work with patients with disabilities.*

Please provide a rationale for each request indicated above (attach additional sheets if necessary):

_____
_____
_____
_____
_____
_____

**Accommodation of Extra Time**

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination: Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

TA-FormE.0417

6

**California Bar Examination:   Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):**  Specify the amount of extra test time needed <u>for this session</u> and  provide the rationale:

150% = 5 hours and 15 minutes extra due to Autism, Neuroprocessing delay, motor delay related to Autism

**California Bar Examination:  Multistate Bar Examination - MBE (each standard session is 3 hours):**  Specify the amount of extra test time needed <u>for each MBE session</u> and  provide the rationale:

100% = 3 hours extra
See above

**First-Year Law Students' Examination:  Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

N/A

**First-Year Law Students' Examination:   Multiple-Choice (standard session is 3 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

N/A

<u>Explanations:</u>  (attach additional sheets if necessary)

ON All of the accommodations for Autism only, plus extra time recommended for Keratoconus and gastroparesis breaks.

The extra time allowed should not increase the total average hours per day, but instead should increase the hours per day.

TA-FormE.0417

7

## IV. PRIOR HISTORY AND PAST ACCOMMODATIONS

Please describe any previously documented history of psychological disabilities and list accommodations that have been granted to the applicant in the past:

*See prior petitions for details.*

## V. CONFIDENTIALITY

Confidentiality policies of the Committee of Bar Examiners/Office of Admissions of the State Bar of California will be followed regarding its responsibility to maintain confidentiality of this form and any documents submitted with it. No part of the form or the accompanying diagnostic report will be released without the applicant's written consent or under the compulsion of legal process.

## VI. CLINICIAN/LICENSED PROFESSIONAL'S SIGNATURE

I am submitting the **original** of this form and have attached copies of the comprehensive evaluation report and all records and test results that I relied upon in making this diagnosis of the applicant's condition/disability (notes and worksheets are not required as part of this submission) and completing this form. I understand that all original documents submitted become the property of the Committee of Bar Examiners.

I declare under penalty of perjury under the laws of the State of California that the above information is true and correct.

_____
(Signature of Licensed Professional)

5/20/19
(Date)

The Committee of Bar Examiners reserves the right to make final judgment concerning testing accommodations and may have all documentation related to this matter reviewed by an individual professional consultant or a panel of professional consultants if deemed necessary.

TA-FormE.0417

**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

**180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300**
**845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500**

# FORM G
## OTHER JURISDICTION'S TESTING ACCOMMODATIONS VERIFICATION
All original documents must be filed with the Office of Admissions' San Francisco Office.
(Please print or type; must be legible)

**NOTICE TO APPLICANT:  This section of this form is to be completed by you.** The remainder of the form is to be completed by the bar admissions administrator from the state in which you received testing accommodations to take that state's bar examination.  Please read, complete and sign below before submitting this form to the bar admission authority for completion of the remainder of this form.

Applicant's Full Name: Benjamin Sean Kohn

File Number: 468532

I give permission to the bar admissions administrator completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

/s/ Benjamin Kohn                                5/20/2019

Signature of Applicant                          Date

**NOTICE TO BAR ADMISSIONS ADMINISTRATOR:**

The above-named person is requesting accommodations for the California Bar Examination.  Please print or type your responses to the items below that pertain to the applicant's accommodations that he/she was granted to take the bar examination in your state.

I, Dan Saar                                      , state that my position
        *(Name of Bar Admissions Administrator)*
on the staff of the bar admissions authority in Iowa
                                                *(Name of Jurisdiction)*
is such that it is my responsibility to administer the program for providing testing accommodations for bar admission applicants with disabilities.

TA-FormG.0417

1

<span style="color:red">has applied to take</span>

The above named applicant, who ~~took~~ the  July 2019 _____ bar examination,

*(Date mm/yyyy)*

☑ was          ☐ was not

granted testing accommodations during that examination.

Applicant was accommodated for the following disability or disabilities:

Autism with secondary neuro-processing speed impairments,
attention variability, and neuro-motor impairments; gastroparesis
and dysphagia; myofascial pain syndrome; Keratoconus;
dry eye syndrome

And was granted the following accommodation(s):

(see attached)

I certify that the information supplied on this form is true and correct based on the information retained in our records.

Executed on 6/26/19   by _____

*(Date)*                           *(Signature)*

Address:  1111 East Court Ave

          Des Moines, IA 50319

Telephone:  515-348-4670          Fax:  515-348-4698

E-Mail:  daniel.saar@iowacourts.gov

**Please send the completed form to the State Bar of California's San Francisco address listed above, Attn: Office of Admissions, or return to the applicant.**

TA-FormG.0417

2

1. Kohn shall be allowed 100% extended testing time on all parts of the bar examination pursuant to the schedule attached to the Board's June 7, 2019 order. His request for additional time and breaks is denied.

2. The Board will allow Kohn to take the bar examination in a distraction-reduced, semi-private room. He may take breaks and use the restroom facilities on an as-needed basis, except during the last 15 minutes of each examination session. These breaks will be included in the regular time allotted for testing and will not be off-the-clock.

3. Kohn is permitted to bring non-aromatic food into the testing room as well as a beverage container with a lid. He shall have access to these items during testing. These items will be subject to inspection.

4. Kohn's request for meal breaks in testing rooms is denied, but he may bring a cooler to the facility, subject to inspection, for the purposes of storing food for these breaks. He may check the cooler in with testing personnel during testing periods.

5. Kohn's request for an ergonomic testing station is approved in part and denied in part. Mr. Kohn shall be provided a testing station containing tables of differing heights to allow him to take the exam in either a seated or standing position as he chooses throughout testing. He shall be provided with a cushioned office chair. However, his request for a specific chair such as a Herman Miller Embody desk chair is denied. Mr. Kohn is given permission to bring in a different chair of his own choosing or a more portable support accessory to be used with the chair provided by the Board, subject to inspection. He is permitted to bring appropriate neck and/or torso braces, subject to inspection. He may bring a Bluetooth-enabled external keyboard and mouse, subject to inspection.

6. Kohn's request for ILG Exam360 testing software to be provided as an accommodation, free of charge, is denied. He is, however, allowed to take the exam using the software at his own expense and subject to the same conditions as all other applicants.


Financial Industry Regulatory Authority

**MEMO**

| | |
|---|---|
| TO | Benjamin Kohn |
| FROM | FINRA Special Accommodations |
| SUBJECT | Testing Accommodations Granted - ID#T0040404 |
| DATE | October 18, 2019 |

Pursuant to your request, this has been prepared to provide you with a brief overview of how FINRA exams are delivered and to ensure that you understand the accommodations granted to you for your FINRA testing event(s).

Currently, all FINRA delivered exams are multiple choice; none contain written/narrative responses. This includes the two exams you are scheduled to take – the Securities Industry Essentials (SIE) & Series 66 (S66) Uniform Combined State Law Exams. Additionally, FINRA programs do not have a "stop the clock" feature to allow for needed breaks for candidates that qualify due to a disability. To accommodate for these needs, FINRA grants additional testing time, which is to be used for the purpose specified in the accommodation request.

Accordingly, the accommodations granted for each of your two computerized exams include:

1. Extended testing time:
   a. Double testing time plus
   b. An additional 30 minutes every 90 minutes for meal breaks
   c. Total breakdown is as follows:
      i. SIE = 105 (standard) + 105 (extra time) + 60 (meal) = 270 minutes
      ii. S66 = 150 (standard) + 150 (extra time) + 90 (meal) = 390 minutes
2. Private testing room
3. Herman Miller Embody chair
4. Adjustable computer stand
5. Ergonomic keyboard/mouse
6. Snacks/water

Remember that although you have been granted a meal break every 90 minutes of testing, the test clock will continue to run. For this reason, FINRA has granted the additional time in excess of your double testing time. The additional meal break time should be used as intended. During your breaks, you are required to continually adhere to the FINRA Rules of Conduct. This means that you will not be permitted to leave the testing site nor have any access to your locker.

If you have any questions or concerns regarding your granted accommodations, please reach out to FINRA's Accommodations team at 1-800-999-6647, option 2.

Investor protection. Market integrity.                    9509 Key West Avenue    t  240 386 4000
                                                           Rockville, MD           www.finra.org
                                                           20850-3329

Gmail - Testing Accommodations Appeal Decision [ ref:_00Dt0TZax._500t0J6413:ref ]                                3/19/20, 3:07 PM

 Gmail

Benjamin Kohn <benjamin.s.kohn@gmail.com>

## Testing Accommodations Appeal Decision [ ref:_00Dt0TZax._500t0J6413:ref ]
2 messages

**State Bar of California - Testing Accommodations**                          Tue, Dec 17, 2019 at 8:03
<testing.accommodations@calbar.ca.gov>                                                            AM
To: "benjamin.s.kohn@gmail.com" <benjamin.s.kohn@gmail.com>



The State Bar
*of California*                                    COMMITTEE OF BAR EXAMINERS

180 Howard Street, San Francisco, CA 94105                              Tel: 415-538-2300

**TA Case Number:** 00432200

**File Number:** 468532

Dear Benjamin Sean Kohn,

At its December meeting, the Committee of Bar Examiners (Committee) considered your
appeal of the decision that was made regarding your request for
accommodations originally in connection with the February 2019 administration of the
California Bar Examination (CBX), but now for the February 2020  California Bar
Examination (CBX).  The Committee declined to grant your appeal for double time and one-
half for each session of the examination, for additional 30 minute breaks for each 90
minutes of testing, for all lunch and breaks to be scheduled at the applicant's discretion
without prior notice, for no more than 6.5 hours of testing per day, for administration of the
examination over weekend days only, for testing in a private room, for the Committee to
provide a complete ergonomic workstation (including $1,500 chair, adjustable laptop stand,
external keyboard), for the Committee to provide you with a hotel room starting the day
before the examination through the night following the conclusion of the examination, for the
provision of a private testing room in which you are allowed to leave all equipment through
11:00 am the day after the last day of testing and for the Committee to assume full
responsibility for your equipment and computer, and for assignment of an experienced
proctor, as the documentation provided with your appeal still does not adequately support
those requests.

The Committee did, however, affirm the accommodations that were previously granted to you, along with one modification:  the addition of a motorized adjustable sit-to-stand desk to the list of ergonomic items you are permitted to bring into the examination room.

As part of the process, your appeal was referred to an expert consultant retained by the Committee for review.  The following are excerpts from the consultant's report for your information:

> ...the petition of Mr. Kohn has been again reviewed, he now seeking aid for the February 2020 California Bar Examination. This petitioner is quite familiar . . . as he's been pursuing aid for some time now, he found, ultimately, eligible for aid, granted some/most of what had been originally sought, he later asking for more, and granted more, but not quite all that was then sought.

> He is now asking for that which hadn't been granted, and/or, that he be offered a clear explanation for whatever is denied...

> *     *     *

> The applicant has a long history of prior aid, this somewhat fluid over time, the foundation of this aid somewhat fluid as well. Mostly, he's been granted more time, and, a special room, he alone, or nearly so.

> That was basically what had been first sought, for his having been found to have a visual disorder, and, LD. I'd [the Committee's consultant had] support[ed] aid, not for LD per se, but for the applicant having an autistic disorder. I'd supported time and one half, in a semi-private room. The PD [physical disability] consultant recommended an additional 30 minutes per phase. Such had been granted. Later, through an appeal, I'd supported double time for all phases, and continuation of the semi-private room. He's been granted 6.5 hours for the first phase, 7.5 for the second, 6.5 for the MBE, a semi-private room, four days of testing, food and a beverage in the room, and permission to use his own laptop, and to have his own chair brought in, by him.

> At the time of that appeal the applicant had also sought a specific special chair, other ergonomic tools, and, a specific exam schedule (no more than a 6.5 hour day, only weekend testing), and, that he be granted a guaranteed hotel rate, or that the CBE pay for his room. These additional . . . were denied.

> *     *     *

> Past submissions have had expert support. This submission... has a new expert, Dr.

Dresden, a family medicine expert, he offering an autism diagnosis, and, a neuro-processing disorder...  Other medical issues are suggested, but not specified.

For having the tendered diagnosis, what is sought is recommended.

In the time since the applicant's last submission he appears to have taken and failed another CA bar exam (now two), and to have also taken the Iowa Bar Examination (recently, with double time and a semi-private room, additional time and breaks denied), and, a SEC/FINRA exam with double time, plus break time (30 minutes for each 90 minutes of testing, for "meal breaks", in a private room, a special chair, and snacks/water at hand...

It is unclear as to whether the applicant has passed either exam, if the results have yet been posted.

*     *     *

The applicant offers quite a bit of argument on his own behalf, but few new facts, basically asserting that his requests ought to have been allowed, the law requiring this. He speaks of multiple medical issues, some new, some perhaps recently developing, some perhaps worsening since his last pursuit of aid.

He offers no expert verification as to establish that his medical situation has advanced/worsened over this last time period. His current expert makes no mention of this whatsoever. The applicant refers the reader to past medical experts, who can't of course be relied upon as to verify his report of his changed medical condition as they haven't apparently seen the applicant since their last submissions.

The applicant speaks of additional financial hardship, so, the hotel payment issue is more critical than it had been.

He speaks of how the Iowa Bar, and an SEC exam, had offered him what he'd sought to have, so, the CA Bar must follow, even as it does not appear to me that the Iowa Bar did any such thing, they approving but double time, and a semi-private room (basically), no break time, not a fully private room as had been apparently sought.

The SEC/FINRA did grant breaks, and a private room, as the applicant so reports.

*     *     *

The applicant does argue about the time framework for appeals, the committee's need to offer a full explanation for any denial, and, he offers a legal argument against the committee's actions, this requiring that his aid, as sought, be granted.

*     *     *

The applicant's expert, as noted, tenders a psychological disability verification form, without a report, he diagnosing autism and a neuro-processing disorder, he recommending the time now sought, a private room, and an experienced proctor, without recommending additional break time, nor the other aid now sought as pertains to the equipment, or hotel room, or weekend testing.

The expert explains that his requests arise from the diagnostic tender. That's that.

The expert does not explain why the now needed aid would be greater than the aid that had been granted the applicant in college, for the LSAT, or even that which had been granted the applicant in law school.

The applicant suggests that his needs are greater now as due to his worsened medical status, but if so, he needs an expert to say so.

His current expert does not.

His past PD experts don't, can't, speak to additional current needs. Not unless they are brought up to date.

In terms of this present material, in terms of what is now sought...

I will support a continuation of the applicant's current grant, not more. I would direct the applicant's attention to his Iowa Bar grant, noting how parallel it is to the CA grant.

And, I would note the lack of current medical experts who might speak to the applicant's worsening physical condition, and associated increased present need, if such can be established. If the applicant is more ill now than he has been, his needs may well have increased. If they have, offer the evidence and the experts that establish this.

Such would speak perhaps to the breaks that have been sought, and the additional testing time that has been sought for the written phases of the bar, these in addition to the extra testing that has been granted. Such would have a more remote connection to... the weekend testing, and a fully private room.

I would ask the applicant to again keep in mind his Iowa grant, and how this was for a test that has been, or will be taken, and to how closely this exam parallels the exam of issue. If the applicant's health has worsened, it would appear to have been a very recent change.

I will not support the sought breaks, nor any more support than has been put currently into place.

<div align="center">*     *     *</div>

The breaks are not mentioned at all by the applicant's present expert. If needed, someone, an expert, needs to say so, and, they would need to explain why they are needed. Not why they might be desirable, not how they might allow create a beneficial/optimal testing experience, but why they are required. Aid is for need, not so that one's preferences, however well explained, might be addressed.

The hotel payment issue is outside of my purview, this relating to external financial concerns, not test taking per se.

The test day limit, and the weekend testing, as presented, appear linked to the applicant's concerns about how tired he might become, or, his concern about a need for medical appointments, and the scheduling of this. Such are what might be called conditional issues, addressing what might happen, not, what will happen. Aid is not generally tendered as to address such concerns, for what might happen, won't always happen. Not all of our concerns come to pass.

Aid is for the need that has been documented as present, not as might address that which might become present.

I would again direct the applicant to the Iowa exam, and in this instance, the SEC exam, that did not appear in either instance to offer a specific test day limit, or, weekend testing.

As to the proctor, as the applicant writes, this hadn't become an issue in his last taken bar, but, as it might be an issue for a future bar, he asks for this...

In this way, this too is a conditional request... for what might happen, not, for what will certainly happen. The applicant's own words appear to recognize that his concerns do not always come to pass. I'd ask that he keep this in mind with regards this next to be taken bar.

You are eligible to receive the same accommodations that you were previously granted, and as specifically modified by the Committee on appeal.  You will receive confirmation of those accommodations and your testing schedule for the February 2020 California Bar Examination in separate correspondence within the next few weeks.  Please refer to the Applicant Community and your admittance ticket for information regarding your assigned test center.

If you would like further assistance, please feel free to contact the office at the above address.

Sincerely,

# EXHIBIT 6

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

Committee of Bar Examiners
Attention: Senior Director of Admissions
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

December 27, 2019.

    This statement and any attachments or addendums submitted therewith or forthcoming
thereupon constitutes my appeal of the partial denial of supplemental ADA testing
accommodations requested through my petition dated October 24, 2019 for the February 2020
California Bar Exam in your decision letter dated December 17, 2019.

<u>Procedural Background:</u>

    I, Applicant, Benjamin Kohn (File Number 468532) (hereinafter, "I," "me," or "Applicant,"
interchangeably) first petitioned for testing accommodations in 2017 for the July 2018 California
Bar Exam (the file of which may be hereinafter referenced as the "2017 Petition," which petition
was granted in part and denied in part. I did not appeal all denials from that Petition due to the
time constraints, but did timely and successfully appeal the partial denial of the amount of extra
time sought in that Petition through an appeal in December 2017 (the file of which, including a
revised brief and two supplemental expert affidavits that were received by the State Bar after
granting the appeal from the notice of appeal statements, but postmarked before my receipt of the
decision letter for the appeal, may be hereinafter referenced as the "2017 Appeal").

    After the acquisition and diagnosis of new medical conditions meeting the standard to
constitute additional disabilities, and also after gaining by firsthand experience additional
information about how the California Bar Exam is administered not available previously and
affecting my position on the degree of accommodations required for equal accessibility by the
effects of both my previously asserted and newly diagnosed disabilities, I submitted a new
petition with further new recommendations and documentation from both prior and new experts
through which I requested additional accommodations as well as renewal of those previously
granted, for the February 2019 California Bar Exam. The previously granted accommodations
were renewed, but most of the expanded requests were denied with a couple minor exceptions,
and the explanation decision letter only addressed some of the denied accommodation requests,
misstating or omitting others, with only the single sentence of "the documents you and your
experts have submitted are inadequate to support those requests" in explanation. I timely
appealed that decision as well (as responsive to the decision on the 2018 Petition, hereinafter
referenced as the "2018 Appeal" despite the relevant documents being dated 1/7/2019 and
1/26/2019), supplemented with a very detailed further affidavit from one of my experts, which
resulted in the denials being largely upheld with one relatively minor exception. Only one of the
requests which were still denied included an explanation of that denial, accompanied by a brief
response to my legal position as to the requirements for an explanation of each denial and my
legal challenge to the timeframe demanded for the appeal.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

Subsequent to the foregoing, I received approvals for testing accommodations by two other
testing agencies (the Iowa Board of Law Examiners and the Financial Industry Regulatory
Authority) on three other exams: the July 2019 Iowa Bar Exam, the FINRA Securities Industry
Essentials Exam, and the FINRA Series 66 Exam.  On 10/24/2019, I submitted the instant
Petition (hereinafter, "2019 Petition"), which newly included an updated Form E from Dr.
Dresden, Form G from the Iowa Board of Law Examiners, approval letter from FINRA, a copy
of all documents in the file for the 2017 Petition, 2017 Appeal, 2018 Petition, and 2018 Appeal,
and a narrative statement in support of the instant Petition incorporating by reference the
appropriate factual positions and substantiating evidence along with argumentation from the
previous Petitions and Appeals, and also including responsive briefing to the 2018 Appeal's
Decision Letter and the legal positions taken therein, citing numerous new legal authorities in
support of my rebuttal.  The 2019 Petition sought renewal of all previously granted
accommodations and grant of all accommodation requests denied from the 2018 Petition and
Appeal, except as amended to offer an additional substitution accommodation option to those
options previously offered for the myofascial pain syndrome disability effects, which additional
option the Iowa Board of Law Examiners had approved since the February 2019 California Bar
Exam.

This appeal is responsive to the decision letter dated December 17, 2019, from the 2019
Petition, granting renewal of all previously granted accommodations, but denying all expanded
accommodation requests (the expanded permission to bring an adjustable height motorized sit or
stand workstation granted does not match any request, as even the supplemental option addended
to one of the requests matched the Iowa Bar Exam accommodation for provision of both such a
workstation and an ergonomic chair of the Bar's choice; and since Applicant does not have
access to such an item, is of even less assistance than the longstanding permission to bring his
own chair).  Although that letter seems to construe the 2019 Petition as an Appeal from the 2018
Petition, it was submitted for a different sitting of the bar exam according to the deadlines for a
Petition on that Exam and contains Petition Forms not previously submitted, so although not
explicitly acknowledged as such, the decision does enjoy a Right of Appeal under the applicable
statutes and admission rules, which I am hereby exercising.  As, unlike in the past, no deadline to
appeal is mentioned in the decision letter, I posit any appeal received on or before February 3,
2020, the statutory deadline, to be timely, although to give the State Bar the maximum advance
notice and opportunity to consider my appeal, I submit it this date as quickly as was possible in
the circumstances for the issues raised, while maintaining that I may need, and constitutional due
process may entitle me to, a longer turnaround time in the future, for different appellate issues
and circumstances.

This time, additional explanation of the denials was provided in the form of an expert opinion
from one of the experts who had given an opinion to the Bar previously on the 2017 Petition and
again on the 2017 Notice of Appeal (prior to the revised appeal statement and supplemental
expert affidavits sent thereon, but received post-grant), though seemingly not on the updated
information for the 2017 Appeal, the 2018 Petition, or the 2018 Appeal.  Submitted herewith are
additional affidavits from Drs. Dresden, Clarke, and Goodman that clarifies some of the issues
the State Bar's expert posited.  I have been attempting to reach Dr. Preston, and if I can prior to

2

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the**
**February 2020 California Bar Exam**
**File No. 468532**

the decision and before 2/3/2020, I may supplement this submission with an affidavit from him
as well.

<u>Argument:</u>

<u>Introduction:</u>

Some of the accommodation request denials in the 2019 Petition, have through the expert
opinion enclosed, now been cured from the procedural deficiencies they had held in the 2018
Appeal as to explanation of the reasons for denial, and of the ADA, California Disability Law,
and Constitutional Due Process violations this gave rise to.  Specifically, explanation adequate to
reach the merits of the Bar's decision was given as to denials of the meal breaks, the additional
extra time, the scheduling for no more than 6.5 hours of testing per day, and the weekend-only
scheduling.  For your convenience, the requests that have been addressed by the expert to the
procedural extent required to provide due notice are those corresponding to numbers 1), 5), 6),
and 7) in the list of requests and corresponding supporting evidence asserted in Part III. of the
2018 Appeal.  Neither the expert nor the State Bar addressed request 4) therein in the 2019
Decision Letter, despite Applicant's challenge to the 2018 Appeal Decision focusing heavily on
his assertion of legal arguments against the reasons given by the Bar in the 2018 Appeal
Decision for their denial, but Applicant concedes the explanations in the 2018 Appeal Decision
Letter does gives Applicant sufficient notice for this to only be a procedural violation of ADA
implementing regulations and the California Government Code rather than also violating
Constitutional Due Process.  However, what remains of request 2) therein as to the limitations on
the permission to bring food/drink after the singular request granted from the 2018 Appeal as to
meal break location, and request 3) therein as amended to add the supplemental option by the
2019 Petition Narrative, inadequate explanation for the denials has been given under all theories
Applicant previously asserted, and I reassert and incorporate by reference as if fully set forth
herein my positions as to the unlawfulness and remedy for that expressed in Section I. of the
2018 Appeal and expanded upon in my 2019 Petition Narrative Statement.  I further maintain my
legal arguments as to the applicable standards under both Federal and California Disability law,
and what they do and don't require substantively in regards to provision of disability
accommodations, which were not addressed by the 2019 Decision Letter beyond the Bar's
expert's observation of their presence in the 2019 Petition Narrative and their proper abstention
from evaluating disputes at law in favor of their evaluation of the facts pertaining to the presence
and effects of Applicant's disabilities.

Now, below, I address the remaining issues, including those issues (largely of fact) discussed
by the Bar's expert, and the denials of expanded disability accommodations should be overturned
for any or all of the following five reasons elaborated upon below: (1) Both the State Bar and its
expert repeatedly misstate the record and incorrectly recite what documents and evidence are –
or are not – in the file, demonstrating the expert's factual findings and recommendations rely on
manifestly erroneous premises regarding what evidence exists; or (2) specific areas of the
expert's remaining analysis apply an incorrect legal standard or misapply a correct legal standard
to the facts they found; or (3) the new evidence from Applicant's experts accompanying this
appeal changes the State Bar's position as to the adequacy of the documents submitted for some
or all of the denied requests; or (4) the Bar's failure to respond to Applicant's challenge to the

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

legal reasons given upon the 2018 Appeal for the denial of accommodations not further
addressed in the 2019 Decision Letter waived any lawful basis for denial of those requests; or,
even with any misconceptions regarding the evidence and procedural background, the expert
consultant conceded facts that, as a matter of the substantive disability law, entitle Applicant to
some of the denied requests; and (5) that the nonportable ergonomic equipment must be treated
as facilities or auxiliary aids, and thus must be provided by the State Bar rather than brought by
Applicant.

I.  Both the State Bar and Its Expert Repeatedly Misstate the Record and Incorrectly Recite What
    Documents and Evidence Are – or Are Not – In the File, Demonstrating the Expert's Factual
    Findings and Recommendations Rely on Manifestly Erroneous Premises Regarding What
    Evidence Exists.

A.  The State Bar of California misstates the list of what accommodations the Applicant has
    requested.

    For purposes of a clear record, the State Bar's list of accommodation requests denied in the
12/17/2019 Decision Letter (hereinafter, "2019 decision letter") repeats incorrect recitals of the
requests I had made that materially misstates what was requested from identical errors in the
2018 Decision Letter, *after* I had corrected and clarified what had been requested in the 2018
Appeal within footnotes 1-18 therein.  I respond by incorporating footnotes 1-18 of the 2018
Appeal here by reference as if fully set forth herein.  Since the issue there is what *I* requested,
without consideration as to what is or should be approved, these errors should be held as
manifestly so.  Correction of them does nothing less or more than make sure all parties are on the
same page as to what the actually disputable issues are or are not, to better resolve those.

B.  The expert consultant relied upon by the State Bar of California appears to have relied upon
    a mistaken belief about the procedural posture herein that only a singular appeal separates
    the 2017 Appeal from the 2019 Petition, which seems to have caused them to rely solely on
    the Form E newly submitted for the 2019 Petition as the only expert documentation for the
    new requests since their review of the 2017 Petition and the 2017 Notice of Appeal they
    understand to exist, and thus makes assertions about lack of expert support for precisely
    the propositions the 2018 Petition and 2018 Appeal provided ample expert support for and
    explanation of, but the 2019 Petition incorporated by reference rather than reiterate.

    I.  B.  Issue:

    The expert identifies them self as one of the experts who had reviewed the 2017 Petition (and
whose opinion-excerpt was included in the 2017 Decision Letter) and further reveals they had
been consulted in the 2017 Appeal, although since that appeal was decided from my opening
notice of appeal statement they presumably had never reviewed, during that consultation, the
2017 Supplemental Expert Affidavits or the 2017 Revised Appeal Statement that the Bar
received after sending the 2017 Appeal Decision Letter, but had been postmarked the same day
that Decision Letter was mailed.  This is corroborated by the Expert's present claim that specific
expert documentation those affidavits had provided was missing from the file.  No State Bar

4

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

expert opinion was cited in the 2018 Decision Letter or the 2018 Appeal Decision Letter, leaving it unclear if this or any expert was consulted for those decisions, but what expert assertions this expert now claims are or are not on file and their description of Dr. Dresden as a "new" expert along with other circumstantial indicators makes apparent that they read the new materials from Dr. Dresden for the 2019 Petition and what they had reviewed previously for the 2017 Petition, but seem to not have read the expert documents accompanying the interim, including the 2017 Supplemental Expert Affidavits, the new Expert Forms and Affidavits supporting the 2018 Petition, or Dr. Dresden's 1/26/2019 affidavit for the 2018 Appeal.

   The expert opinion excerpt provided in the 2019 Decision Letter contains many mistakes as to what expert documentation and factual premises I do or do not have in the record.  Most of these errors seems to stem from the expert's apparent mistaken perception of the procedural posture, that the 2019 Petition was an appeal (newly supported by the 2019 Narrative Statement, the new approvals by FINRA and the Iowa Board, and Form E by Dr. Dresden) of denials of additional accommodations requested based on the body of evidence they recall from the 2017 Petition and 2017 Notice of Appeal that they previously reviewed for their input in those proceedings, rather than a new petition (as opposed to appeal) that relied on the documentation from a whole other Petition and Appeal since then both comprised of substantial further expert support to that submitted with the 2017 Petition or 2017 Appeal, but separate from the most recent submission of yet further new supporting documents in the 2019 Petition (the 2018 Petition and 2018 Appeal, the decision letters of which cited no expert input and presumably had not been put to this expert) to reassert denied requests from a subsequent Petition process. The expert seems to confirm this mistaken perception of the procedural posture below:

"That was basically what had been first sought, for his having been found to have a visual
 disorder, and, LD. I'd [the Committee's consultant had] support[ed] aid, not for LD per se, but
 for the applicant having an autistic disorder. I'd supported time and one half, in a semi-private
 room. The PD [physical disability] consultant recommended an additional 30 minutes per
 phase. Such had been granted. Later, through an appeal, I'd supported double time for all
 phases, and continuation of the semi-private room. He's been granted 6.5 hours for the first
 phase, 7.5 for the second, 6.5 for the MBE, a semi-private room, four days of testing, food and
 a beverage in the room, and permission to use his own laptop, and to have his own chair
 brought in, by him."
(2019 Decision Letter, Expert Excerpt 2).

   The recommendation summary referenced is attributable to the 2017 Decision Letter expert excerpts, except that what is attributed to a different physical disability expert was recommended by the State Bar's visual disability expert, and the increase in the amount of extra time granted matches the outcome of the 2017 Appeal, making it clear that is the appeal to which the instant expert is referring.  Yet, food and beverage in the room was granted not from the 2017 Petition or 2017 Appeal, but the 2018 Petition, and this seeming mistake of when approved accommodations were granted, in a context of Dr. Dresden being found a "new" expert, the lack of this or any expert's input in the 2018 Petition and Appeal Decision Letters as they were in the 2017 and 2019 Decision Letters, the expert's thorough recitals of the evidence in the 2017

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

Petition and of what was presented newly or separately rather than incorporated by reference in the 2019 Petition accompanied by affirmative claims of the absence of evidence and expert statements that were on record in the 2018 Petition and 2018 Appeal (incorporated by reference in the 2019 Petition), plus the totality of what the expert does and doesn't say in other regards later, <u>seems to indicate a lack of awareness by the expert of the intermediate 2018 petition's existence, or at least it's timing and scope.</u>  Indicators of this mistaken perception will be presented in chronological order, not in order of their comparative probative weight, but the above context and the prior Appeal they acknowledge being attributable to their stated involvement in the 2017 Appeal (if prior to the decision and thus the receipt thereupon of some of the missing expert documentation they claim is absent now) is also important for interpreting and drawing inferences from these indicators and their collective effect.  <u>Applicant has no way of knowing whether this mistake would have been caused by the expert believing all past submissions' support would have been captured by their recollections and notes from their prior consultations, and so did not fully re-review those files, or if instead they were only tendered by the State Bar the documents submitted that are unique to the 2019 Petition and the approvals already in place from past process, and so presumed the completeness thereof and had no choice but to rely solely upon those and the aforesaid 2017 recollections and notes.  Unfortunately, either way the Expert's opinion and recommendations are made unreliable by this incomplete review until they can reconsider after review of the full file and new evidence submitted herewith, or alternatively if it is I who is mistaken about the scope of their awareness and review, their opinion is unreliable because of how contrary their recitals of the evidence are to the record.</u>

"This submission... has a <u>new</u> expert, Dr. Dresden, a family medicine expert, he offering an autism diagnosis, and, a neuro-processing disorder...  Other medical issues are suggested, <u>but not specified</u>... The applicant's expert, as noted, tenders a psychological disability verification form, without a report, he diagnosing autism and a neuro-processing disorder, he recommending the time now sought, a private room, and an experienced proctor, <u>without recommending additional break time, nor the other aid now sought as pertains to the equipment, or hotel room, or weekend testing.</u>  The expert explains that his requests arise from the diagnostic tender. That's that...  And, I would note the lack of current medical experts who might speak to the applicant's worsening physical condition, and associated increased present need, if such can be established. If the applicant is more ill now than he has been, his needs may well have increased. If they have, offer the evidence and the experts that establish this. <u>Such would speak perhaps to the breaks that have been sought,</u> and the additional testing time that has been sought for the written phases of the bar, these in addition to the extra testing that has been granted. Such would have a more remote connection to... the weekend testing, and a fully private room... <u>The breaks are not mentioned at all by the applicant's present expert. If needed, someone, an expert, needs to say so, and, they would need to explain why they are needed.</u>"
(2019 Decision Letter, Expert Excerpts 3, 5, and 6) (Emphasis Added).

Contrary to this expert's statement, Applicant's primary care physician and only expert familiar with his disabilities across medical specialties in their totality, Dr. Dresden, was <u>not</u> a new expert, he having contributed a Form B (Physical Disability Verification) for both the 2017

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

Petition (myofascial pain syndrome only) and the 2018 Petition (myofascial pain syndrome, the gastroparesis, dysphagia, and nissen fundoplication postoperative state forming the basis for the meal breaks that this expert so repeatedly asserts lack expert support or explanation for despite Dr. Dresden's recommendation therein, and a long list of other specific medical conditions, some of which constitute the definition of a disability more collectively by collectively limiting at least one major life activity) and providing recommendations for those disabilities throughout; then addressing autism, keratoconus, and the accommodations requested solely thereupon that had previously been handled by other experts, for the first time not instantly, but for the 2018 Appeal in his 1/26/2019 affidavit, where he was needed instead of the original experts in order to respond to the denials of additional accommodations for those issues in time to timely corroborate the 2018 Appeal. Importantly, that this expert believes Dr. Dresden a new expert is best explained by assuming they did not review any of my physical disabilities in the 2017 Petition (plausible, as they seem to primarily be an expert on psychological and learning disabilities and the 2017 Decision Letter cited other experts), and did not review documents from the 2018 Petition or Appeal that were only incorporated by reference into the 2019 Petition (also plausible, as the 2018 Petition and Appeal Decision Letters cite no expert input), thus reviewing documents from Dr. Dresden only due to his Form E for the 2019 Petition, which failed to recommend the breaks and other accommodations the expert noted were missing only because Dr. Dresden had already completed a separate Form B for the 2018 Petition on which he did recommend those breaks and accommodations for the physical disabilities - to which he had no updates and had been instructed by me would be incorporated by reference separately. Dr. Dresden had not previously completed a Form E and now needed to do so for the first time in the 2019 Petition, based on the neuropsychological testing already on file from Drs. Preston and Pinn, because those disabilities applicable had been handled by Drs. Preston and Pinn until the 2018 Appeal, and because the online submission method change for the 2019 Petition from previous hard copy ones would not let me submit without a Form E and just based on the understanding this instant Bar Expert had made in the 2017 Decision Letter (that autism had already been found despite its assertion under Form C for learning disability and which understanding I had relied on without using a Form E in the 2018 Petition). That this expert had not seemingly reviewed either Dr. Dresden's two Forms B or Dr. Dresden's 1/26/2019 affidavit for the 2018 Appeal, thus not finding the other medical issues specified in detail and an additional assertion of the recommendations they claim Dr. Dresden had omitted, and thus believing him a new expert who had never made those other accommodation recommendations they list as missing, further supports (especially if they had not reviewed documentation for physical disabilities in 2017) my theory that they were not aware there was additional relevant documentation in the 2018 Petition and 2018 Appeal (or in the 2017 Appeal after the issuance of the decision and the expert's involvement therein) subsequent to the most recent time their opinion was solicited and yet prior to the most recent submission, nor were they aware that many of the requests which confuse them are based upon physical disabilities both established and "new" (to when the 2017 Petition and Appeal were submitted), and not a worsening of autism (though the "new" expert support as to autism from Dr. Preston dated 12/5/2017, the 2018 Petition Form F as to my last semester of law school, and Dr. Dresden's 1/26/2019 Affidavit for the 2018 Appeal do support the increased extra time for written sections as being partially based upon clarifications of the magnitude of the effects of my autism) or of physical conditions asserted in 2017.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

Such a proposition is further supported by their claim of no expert support for the meal breaks, even aside from Dr. Dresden's support in every material document from him other than the Form E pertaining only to mental disabilities and not the physical disabilities on which they are requested, and as also in spite of the 2018 Form B of my gastroenterologist, Dr. Clarke (a "new" expert that had not been involved with the 2017 Petition), making those recommendations in the 2018 Petition and corroborating that same recommendation; by their failure to find any expert support for more extra time on the written sections of the exam despite the original expert (Dr. Preston)'s 12/5/2017 affidavit (received by the State Bar after their review of the 2017 Notice of Appeal) explaining the autism basis for more extra time on the written sections and also supporting the provision of more breaks and Dr. Dresden's 1/26/2019 corroboration to both that and Dr. Goodman's prior evidence that 30 minutes per section was insufficient extra time to address the effects of Applicant's keratoconus visual disability as an independent basis for this that also goes to the need for more time than was granted there; by their insistence that I was suggesting my medical situation had worsened since the original requests but never specified how or provided updated expert support of it, when the 2018 Petition would have made clear which requests were based on new (or worsening) disabilities with all of the information thereupon they claim is missing actually present, which ones were based on new evidence (from experts, from my law school, and from other testing agencies) regarding the effects of previously established disabilities, and which ones were based on new (to my knowledge) aspects of the conditions in which the California Bar Exam is administered that were affected by the effects of my disabilities (the latter two of which they don't acknowledge as factor(s) and seem to not have read).

Such procedural posture mistaken perception is even further supported by their description of the record, which is thorough in its identification of the assertions in the 2019 Petition Narrative Statement, the approvals for the Iowa Bar Exam and FINRA exams, and Dr. Dresden's Form E, as a contrast point of the detail the consideration set known to them would be addressed to, that frames their findings of a lack of expert support for contentions clearly with precisely that support on file in the 2018 Petition and in the 1/26/2019 affidavit for the 2018 Appeal as even more likely to have arisen from ignorance of those documents' existence or substance and that intermediate Petition process that I hypothesized; such findings that this expert bases their recommendations to deny the expanded accommodations sought upon.

"The applicant offers quite a bit of argument on his own behalf, but <u>few new facts</u>, basically asserting that his requests ought to have been allowed, the law requiring this. He speaks of multiple medical issues, <u>some new, some perhaps recently developing, some perhaps worsening since his last pursuit of aid.</u> He offers no expert verification as to establish that his medical situation has advanced/worsened over this last time period. His current expert makes no mention of this whatsoever.</u> The applicant refers the reader to past medical experts, <u>who can't of course be relied upon as to verify his report of his changed medical condition as they haven't apparently seen the applicant since their last submissions.</u>

The applicant speaks of additional financial hardship, so, the hotel payment issue is more critical than it had been.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

He speaks of how the Iowa Bar, and an SEC exam, had offered him what he'd sought to have, so, the CA Bar must follow, <u>even as it does not appear to me that the Iowa Bar did any such thing</u>, they approving but double time, and a semi-private room (basically), no break time, not a fully private room as had been apparently sought.

The SEC/FINRA did grant breaks, and a private room, as the applicant so reports."
(2019 Decision Letter, Expert Excerpt 5) (Emphasis Added).

   The file for those prior proceedings was both attached and in the submission to the State Bar for this petition and incorporated by reference in the 2019 Petition Narrative, but if the expert only reviewed what they believed to have been "since the last submission," and believed that last submission to have been the 2017 Appeal they were seemingly last involved with (the 2017 Petition itself constituting what the expert perceived my referral "to past [PD] experts" as, and perceived the earlier "past submissions have had expert support" to mean the 2017 Petition and 2017 Appeal, and considering both the description of Dr. Dresden as a "new" expert and the finding that these experts did not update any basis for accommodations like the meal breaks or the additional extra time), as the complete body of evidence for anything not decided the last time they had been consulted (and maybe presumed that if new evidence to that had been considered before now they would have been consulted again, as they seem to not have been, the 2018 Petition and Appeal decision letters omitting such input), then their summary of the record would be a reasonable one as to the missing support for the new requests by my other experts and the substance of what Dr. Dresden had or had not established, other than one exception. That exception being the seeming misunderstanding that I ever had suggested the Iowa Board of Law Examiners granted all or most of what is sought other than the very specific ergonomic workstation substitute accommodation that I added in the 2019 Petition as being something that could be an adequate substitution here (if provided by the Bar, as the Iowa Board had done, including with at least *an* ergonomic chair, if not the specific kind Dr. Dresden and I requested, also as the Iowa Board had done) to those other requests for this issue that I had made before.

   I never claimed to be in total agreement with the adequacy of the accommodation decisions of the Iowa Board otherwise (in fact, Iowa does not provide hotel group rates to <u>any</u> examinee, eliminating the basis for that accommodation, I did not request weekend only testing as that would have made the travel to Iowa to take the exam prohibitively expensive, the Iowa Board guaranteed my proctor request was provided as a matter of course and so accommodation was not needed, and their denial of more extra time was explicitly predicated on an incorrect assumption that my keratoconus was explicitly present for prior tests such as the SAT/LSAT/GMAT and explicitly also at the time of the neuropsychological testing quantifying the recommendations for autism), or that they supported every request at issue here, though I did note in the 2019 Narrative my reasons for why inadequate disability accommodations there would be less likely to have the unequal access result in a failing outcome than such would here, as the comparative difficulties of the Iowa Bar Exam to the California Bar Exam in regards to pass score differences and degree of disparity between essay subject laws and MBE subject laws gave me a substantial buffer on the Iowa one for impaired performance due to unlawful unequal access that I did not have and won't have for the California one, and this should be kept in mind

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

when making any inferences from passage of the Iowa Bar Exam with the accommodations granted there.

The FINRA approvals did grant every request I made to them, which is offered as supporting evidence (yet not as the conclusive compulsion that the Bar's Expert attributes to me) of the propriety of any overlapping requests, and any requests absent from their approval list that I am seeking for the California Bar Exam is due to the differences in the nature of the tests; that is, the FINRA exams are entirely multiple choice, so there is no written sections to need more extra time for, are both at a length that accommodated testing can be achieved for on a single test day (Saturdays available), thus eliminating the scheduling requests, is not held in a hotel, and the proctors are never newly onboarded the night before and don't initiate conversation during the test time. The expert correctly notes the private room and meal breaks were granted, and omits that <u>provision</u> (not permission to bring) of the complete ergonomic workstation, including the specific Herman Miller Embody chair, was also approved. This is a comprehension issue separate from the procedural posture mistake and seemingly resulting failure to review all of the material documentation incorporated by reference. <u>However, with the correct procedural posture in mind, both their summary of the record and of the basis for the disputed requests attributed to me are woefully inaccurate, as are most of the premises they use to base their present recommendations to continue to deny my expanded accommodation requests.</u>

Certainly, the 2019 Petition Narrative Statement is, as it was explicitly prefaced, a response to the 2018 Appeal Decision Letter, which raised primarily issues of law rather than issues of fact, rather than a complete basis for the renewed requests, and aside from the Bar's general assertion of document "inadequacy," did not address the factual issues in the 2018 Petition and Appeal first raising the (not previously granted) accommodation requests at all. <u>If the Expert only referenced the documents uniquely in the 2019 Petition, present approvals, and recollections/notes from 2017, this would explain why the expanded (not originally asserted back in 2017) disability accommodation requests were perceived to lack the support of more than "few new facts" plus legal argument the expert could not address. There are, however, ample "new" issues of fact upon which the accommodations not requested in the 2017 Petition or 2017 Appeal, but that were subsequently requested, are based, and additional expert support from not only Dr. Dresden, but also subsequent support from Drs. Goodman, Preston, and Clarke, is present subsequent to the State Bar's consideration of the 2017 Appeal and the review by this expert prior to the 2019 Petition, with even more brand new clarification affidavits from them accompanying this appeal and/or forthcoming thereupon.</u> Again, the legal issues raised by State Bar Counsel Destie Overpeck in the 2018 Appeal Decision Letter needed response for the first time as this (the 2019 Petition) was the first opportunity to respond, that letter coming too late for any further proceedings pertinent to my last attempt at the California Bar Exam, but the previous body of facts and evidence filling all of the gaps identified by this expert had been addressed previously and was incorporated by reference and attached as a separate file.

The Expert later cites my assertion of "additional financial hardships" noted above as being a basis for accommodation based on "external financial concerns, not test taking per se," and consequently "outside their purview," (that being a correct observation regardless regarding their purview as an expert fact consultant in like manner to the legal arguments, but misleading as to

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

its recital of my purpose for raising that concern in relation to the propriety for granting the accommodation, and of the importance of that fact to my reasons for requesting that accommodation as a disability accommodation).  The additional financial hardships was never relied on as the basis for the request for a hotel room, but rather as updated context surrounding my position as to the effectiveness of the presently approved accommodation regarding the ergonomic workstation (particularly the less portable chair) (permission to bring instead of the provision of <u>equally accessible facilities – a legal term that by case law is to include nonportable equipment needed to take the exam - for the effects of the disability, and provision of auxiliary aids</u>, both prescribed by law as held by both FINRA and the Iowa Board of Law Examiners) for the effects of myofascial pain syndrome (which would prevent equal accessibility to the exam unless sufficiently ameliorated), and to correct any inferences drawn from the degree to which the disability was a problem for the prior California Bar Exam attempts regarding the degree of impairment that would come from a denial of the requests.  Without such context, I was concerned that my ability to access the ideal equipment sought during the exam both previous attempts using the existing accommodation would be cited as a basis for denying more than that.  However, I posit that I was entitled to provision of equally accessible facilities from the start, and my choice in responding to the denial of this right by expending my own resources (an added expense that made the bar exam less accessible to me than someone without such disability) to mitigate the situation does not alter that.  Increased financial hardship goes only to my ability and inclinations to repeat this choice and thus to the impact an unlawful denial would have on the exam prospectively, not to whether the accommodation should have been or must be granted. <u>This misunderstanding of my meaning also supports that the expert had not seen the request it was discussing in its original form, where the basis was quite clear, and thus my theory that the 2018 Petition was not fully reviewed by this expert.</u>

    I.  B.  Conclusion:

    Ultimately, I posit that the present State Bar expert consultant made numerous mistakes of material fact, regardless of cause, the ones with potential to be directly at issue in the determination of disability accommodations (as opposed to fact errors about procedural history, the absence of expert support for a material fact rather than a conclusive position on that fact, or the contents of the record generally/things where the record can speak for itself without need for subjective interpretation, all adequately addressed above, and to errors arising from mistakes of law, which are addressed separately later) which are listed below along with some examples of the corresponding contradictory documentation on file, but that the cause of the error appears to me to have been the seeming procedural posture misunderstanding as to the scope and documentary substance (possibly even existence) of the 2018 Petition and 2018 Appeal.

1. The Expert's findings both that the only basis asserted and the only basis for which the accommodation requests *could* be asserted for the expanded disability accommodations requests (or at the very least, the meal breaks and the additional extra test time for the written sections) is "new or worsened medical condition... since the last submission."

    "He offers no expert verification as to establish that his medical situation has advanced/worsened over this last time period... The applicant suggests that his needs are

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

greater now as due to his worsened medical status, but if so, he needs an expert to say so... And, I would note the lack of current medical experts who might speak to the applicant's worsening physical condition, and associated increased present need, if such can be established. If the applicant is more ill now than he has been, his needs may well have increased. If they have, offer the evidence and the experts that establish this." (2019 Petition Decision Letter).

Upon rereading my 2019 Petition Narrative Statement, which largely mirrors the requests and basis given in the 2018 Petition rather than reiterate them, I'm baffled as to which passage(s) therein could have given the Expert their impression that I was solely or even primarily relying on new and/or worsening medical conditions since the 2018 Petition for the requests made to so explicitly attribute such a position to me as they had, and even if I'm correct that the Expert was thinking about it in terms of since the 2017 Petition/Appeal instead of the 2018 Petition/Appeal, what could have given them the impression that basis applied so broadly to the requests that none or few of them could survive the absence of such basis sufficiently supported. Perhaps, not realizing my failure to appeal the denials other than extra time from the 2017 Petition in the 2017 Appeal was on account of time constraints to so appeal and that my failure to seek more than double time as soon as the new expert support for that appeal about the comparative effects of my disabilities as to written sections became available was because I had committed myself to that requested amount for that first exam, they construed my receiving all sought in the 2017 Appeal as eliminating any basis for accommodations past that grant other than new and/or worsened medical conditions?  If so, and if they also hadn't read the 2018 Petition/Appeal to be made aware that the otherwise expanded request list (compared to 2017 Petition before appeal) arose as much from new information about how the conditions of the exam interacted with the effects of my hitherto present conditions and new expert information about such as from new and/or worsening conditions, then that could explain their mistaken perception as to my position. However, since they did mistake my position, what it was/is and not even reaching whether they agree or disagree with it, they did not, could not speak as to what my reasoning and support thereof actually had been, and so their whole analysis and recommendations cannot be relied upon as to any of the disputed material facts pertaining to what disability accommodations I should be provided on the February 2020 California Bar Exam.

Moreover, to ensure clarity going forward, a list of requested accommodations and the expert support/explanation of the basis is present in Part III. of the 2018 Appeal Statement, at pp. 14-20 thereof (other than Form E, the Iowa Bar/FINRA approvals, and the new affidavits accompanying this appeal).

Neither I nor the State Bar are bound by the previous findings from the prior petitions such that the propriety of the grants and denials for issues present before are no longer justiciable through some issue preclusion or *res judicata* doctrine such that new accommodations can only be sought for new and/or worsening disabilities; both State Bar admission rules and the ADA implementing regulations governing disability accommodation requests explicitly allow for reconsideration of requests based upon new evidence or argument, so long as it is done timely relative to the statutory deadlines for the particular exam for which it is sought.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

2.  The Expert's finding that Applicant's current medical state, as demonstrated through his experts, does not support the meal breaks.

> "The applicant's expert, as noted, tenders a psychological disability verification form, without a report, he diagnosing autism and a neuro-processing disorder, he recommending the time now sought, a private room, and an experienced proctor, without recommending <u>additional break time</u>, nor the other aid now sought as pertains to the equipment, or hotel room, or weekend testing... <u>The breaks are not mentioned at all by the applicant's present expert. If needed, someone, an expert, needs to say so, and, they would need to explain why they are needed.</u>"
> (2019 Petition Decision Letter) (Emphasis Added).

The Expert recommends denial on the basis of their allegation that Applicant has failed to document, through sufficient expert support or any expert recommendation, a disability with effects impairing his access to the California Bar Exam which could be ameliorated by provision of the meal breaks.  However, the record belies this allegation (even prior to this appeal, see document list in 2018 Appeal Statement, pp. 15-16).  The Expert's factual errors as to the meal breaks include: (1) That it is based on a worsening of autism and/or neuroprocessing disorder or an unspecified medical condition; and (2) That no expert had (and Dr. Dresden specifically had not) recommended the meal breaks; and (3) Insufficient expert explanation is on record as to why the meal breaks are needed.  To the contrary, the meal breaks are based largely on gastroparesis and postoperative dysphagia, as had been explicitly stated (see 2018 Petition Narrative Statement, 2018 Appeal Statement, 2018 Petition Forms B and attachments from Drs. Clarke and Dresden, 2018 Appeal Affidavit from Dr. Dresden dated 1/26/2019); Dr. Dresden and Dr. Clarke both recommended the meal breaks (just not on a mental disability form), and they explained in detail why they should be provided to address these disabilities.  Based on these errors, the Bar's Expert erroneously implies a conclusion that Applicant has not met his threshold evidentiary burden.  They provide no expertise-guided medical analysis as to why the meal breaks should not be granted; their analysis is strictly clerical as to what evidence Applicant has offered.

Applicant notes that neither the State Bar nor its Expert have asserted that the disabilities of Gastroparesis and Postoperative Dysphagia are not present, or that either or both would not substantially limit any major life activity and/or the Bar Exam, or that either or both do not have the effects asserted by Applicant's experts, or that the effects asserted for either or both would not adversely affect Applicant's access to the California Bar Exam on a level playing field, or that the effects of either or both would not be meaningfully mitigated by the proposed accommodations.  Nor has the State Bar alleged that providing such would constitute a fundamental alteration or an undue burden.  Consequently, the State Bar has neither established nor preserved from waiver any lawful rebuttal to a *prima facie* presumption that the meal breaks would be a reasonable accommodation to a documented disability, which is present by law from the documentation that had, in fact, been offered.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

3.  The Expert's finding that Applicant's mental/neuropsychological disabilities do not warrant
    more extra time on written sections than that granted on multiple choice sections.

> "I will support a continuation of the applicant's current grant, not more... If the applicant is
> more ill now than he has been, his needs may well have increased... Such would speak
> perhaps to the breaks that have been sought, <u>and the additional testing time that has been
> sought for the written phases of the bar,</u> these in addition to the extra testing that has
> been granted."
> (2019 Petition Decision Letter) (Emphasis Added).

Although still challenging to finish in the time allotted and with more extra time required to
achieve equal accessibility supported by the evidence in that Applicant's experts recommended
both 100% extra test time for autism and 100% extra test time for keratoconus, separate and
additive, in a good faith attempt to reduce areas of dispute Applicant is not seeking more extra
time on the multiple choice MBE than that which has already been granted, except to the extent
elected by the State Bar as a substitute accommodation for the additional breaks.

In regards to the essay-type CBE and CPT sections, however, Applicant has consistently
failed to finish despite best efforts on all three of the bar exams taken, consistent with the
predictions of Drs. Preston and Dresden that the neuropsychological testing done indicates an
even greater impairment from the types of tasks associated with written sections than those
associated with multiple choice sections (see 2017 Appeal Dr. Preston Affidavit Dated 12/5/2017
and 2018 Appeal Dr. Dresden Affidavit Dated 1/26/2019; See Also 2019 Petition Dr. Dresden
Form E).  When this information became available to Applicant's law school during his final
semester, the law school found an accommodation of 150% extra time on the written sections of
law school exams to be reasonable (see 2018 Petition Form F).  <u>Accordingly, the multi-expert
analytical interpretation of empirical testing results measured prior to the acquisition of
keratoconus and without even accounting for the slowed reading impairment therefrom
establishes that 150% is the correct amount of extra time for autism and secondary
neuroprocessing impairments on the written sections of the exam.</u>  It always had been, but the
documentation to assert such had not been available to me for the 2017 Petition and I believed
myself bound to that position procedurally in the appeal until it became a new exam and petition.
Accordingly, and as explained in point 1. above, I do not need to assert or demonstrate that my
disability has worsened, only that more time is the proportional amount to the effects of my
disabilities. Since this primary basis for this extra time had already been clearly asserted (see
2018 Appeal Statement, pp. 18-19), the Bar's expert erred in recommending denial just because
a new and/or worsened medical state had not been asserted and proven.

150% extra time should be granted for autism on the written sections of the exam.  I'd note
that the Bar's expert has already stipulated in their 2017 opinion that autism is present,
substantially limits at least one major life activity, would impair Applicant's ability to access the
California Bar Exam without extra test time, and could be ameliorated by extra test time.  Their
sole disagreement is only as to the precise amount that should be provided, yet they offer no
explanation as to why they don't find the neuropsychological testing to support greater
impairment for the written sections than the multiple-choice sections despite the findings of Drs.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

Preston and Dresden to the contrary, nor do they offer any explanation for the uniformity across all test sections in their recommendation as to the proper amount of extra time when one should not need to be an expert to notice that the neuroprocessing involvement for the process of transmitting Applicant's knowledge of the legal subject matter tested would not be identical between those two formats. That issue is very important, as accommodations are supposed to be tailored to the nature and severity of the effects of the disability as closely as possible under the level playing field equal accessibility standard, and with such precise testing on record a uniform recommendation would not seem a correct application of that standard. The ability to interpret the raw evidence such is the area where an expert opinion adds value to a fact finder, much more so than the clerical task of reciting assertions and the contents of documents from other experts.

4. The Expert's failure to address Applicant's alternate request for more extra time on the written phases of the exam on the basis that adding 30 minutes per session is insufficient to address the effects of Applicant's visual disability.

"I will support a continuation of the applicant's current grant, not more... If the applicant is more ill now than he has been, his needs may well have increased... Such would speak perhaps to the breaks that have been sought, and the additional testing time that has been sought for the written phases of the bar, these in addition to the extra testing that has been granted."
(2019 Petition Decision Letter) (Emphasis Added).

Applicant has also been recommended, by Drs. Goodman and Dresden, double time on all sections of the Bar Exam additive to that provided for autism. The State Bar has to date granted 30 minutes per session, on average about 16% extra time, additive to the autism grant upon this basis. Applicant posits that after Dr. Goodman rebutted the Bar's 2017 Visual Disability Expert's premises for the vast disparity in recommendations (that Applicant's keratoconus could largely be corrected by appropriate glasses, which was incorrect, as well as the heightened severity in the effects as regards eye fatigue and slowed reading due to the aggravating medical condition of severe dry eye syndrome that the 2017 Bar visual expert failed to acknowledge or address) in his affidavit dated 11/27/2017 for the 2017 Appeal, and after Dr. Dresden corroborated the double time recommendation in his 1/26/2019 Affidavit for the 2018 Appeal, the weight of the evidence became so overwhelming that the amount of additive extra time for visual disabilities was and is inadequate to address the effects of that disability, especially as neither the Bar's present expert nor its original one has offered any rebuttal as to why the effects of this condition correspond to less need than that found by Applicant's experts and by such a large margin.

Despite the strong expert support for more than an extra 30 minutes per session added on this basis, Applicant is not necessarily insisting additional extra time to that granted on the MBE, nor am I insisting the full 200%-250% extra time that my experts would collectively support. This is not an admission that 200%-250% extra time would be unreasonable for the totality of my disabilities, but rather is a good faith effort to narrow the issues in dispute. However, the past and present underaccommodation of Applicant's visual disabilities is asserted as an independent basis for at least 150% extra time on the written portions of the

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

exam.

Again, as Applicant need not prove new and/or worsened medical state, as explained above, the absence of such in regards to autism is not a basis to deny the request as the Bar's Expert recommended instantly.  In the context of the expert recommendations offered, it is reasonable to attribute Applicant's failure to finish the CPT and struggle to finish the CBE with answers reflecting the full scope of his knowledge consistently across all attempts at the exam to insufficient disability accommodations to create a level playing field on that exam. Applicant does, however, note that keratoconus was not present and/or diagnosed at the time he applied for accommodations on college exams, law school exams prior to his final semester, the SAT, the LSAT, the GMAT, or the MPRE.  It has only been asserted for the California and Iowa Bar Exams and the FINRA exams, the latter being all multiple choice and approving all time sought.

5.  The Expert's finding that Applicant's disabilities do not warrant the ergonomic equipment and/or the hotel room to facilitate his bringing the same, to the extent made.

"The applicant's expert, as noted, tenders a psychological disability verification form, without a report, he diagnosing autism and a neuro-processing disorder, he recommending the time now sought, a private room, and an experienced proctor, without recommending additional break time, nor the other aid now sought <u>as pertains to the equipment, or hotel room</u>, or weekend testing... The expert does not explain why the now needed aid would be greater than the aid that had been granted the applicant in college, for the LSAT, or even that which had been granted the applicant in law school... I would ask the applicant to again keep in mind his Iowa grant, and how this was for a test that has been, or will be taken, and to how closely this exam parallels the exam of issue... The hotel payment issue is outside of my purview, this relating to external financial concerns, not test taking per se."
(2019 Petition Decision Letter) (Emphasis Added).

Applicant is unclear whether the Bar expert is declining to address the ergonomic equipment or recommending the denial of its provision.  Applicant is similarly unclear as to whether the State Bar's limitation of accommodation for this issue to permission to bring, rather than provision or offered substitution for provision, turns on any issues of fact that either of our respective experts could speak to, or whether that limitation is a purely legal conclusion as to the extent of the State Bar's obligations upon a finding that such equipment is in fact necessary to provide Applicant equal accessibility to the exam.  Applicant addresses that scenario separately in a later section, but to the extent that provision or one of the substitutions becomes approvable in the Committee's analysis upon certain factual showings or expert recommendations, Applicant addresses the Expert's position here.

As addressed thoroughly above, the expert was wrong that Dr. Dresden had not recommended the equipment.  To the contrary, Dr. Dresden has been recommending this accommodation from the start, since the 2017 Petition, and in greater detail each successive

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

submission, including within his 2018 Petition Form B attached letter, his 1/26/2019 affidavit for the 2018 Appeal, and now his 12/19/2019 affidavit for this appeal. The basis for his recommendation is the physical disability of myofascial pain syndrome, although the severity and impact of its effects are aggravated by the autism, as he wrote. I even sought another opinion from another of my doctors, neurologist Dr. Chien-Ye Liu, who wrote an affidavit on the narrow issue of the chair that a chair with the features at issue is reasonable for addressing this condition, which is also enclosed. The documentation amongst all submissions collectively is exhaustive at explaining the reasons for access to the equipment during the exam.

Permission to bring is not sufficient to ensure access to the equipment for the exam. I am unable to independently transport the chair physically, as corroborated by my expert(s), and do not have a vehicle that fits it fully assembled. I do not own or have access to an adjustable height motorized sit-or-stand desk, nor would I have had any more ability to transport that. The punctuality constraints and lack of a margin for error or delay for any agency issues with regards to the performance of third parties on the exam days themselves prevents the feasibility even of securing the services of a mover both ways on each day of the exam, or on exam days, nor would imposing upon me the burden of acquiring such provide me equal accessibility. I can maybe do so as a courtesy the days before and after testing, but this would require me to stay in the hotel the test is held in, as I've done previously. To require that I do so at my own expense and my own responsibility to ensure availability would not be providing me equal access to the exam as compared with someone without such disability. I have been as flexible as possible on this issue, offering the State Bar four different options for accommodating this issue, of which provision was one, storage from orientation check in to the test and between test sessions and immediately following the exam until the next day if needed with the Bar's acceptance of responsibility for my equipment being another, the iteration on which equipment is to be provided that worked for the Iowa Bar being another, and the provision of the hotel room being another. Only one is required. I have been even more flexible in the past, by staying in the hotel at my own expense and arranging moving assistance for the chair before and after the exam, but I should not have been required to do so then and this is therefore not a basis for requiring me to do so now.

Again, I do not need to establish that the medical basis is new or worsened since the last submission to challenge the propriety of past denials, and I am allowed to submit new evidence on appeal. I not only have done so for this appeal, but I <u>submitted highly probative new evidence in the 2019 Petition for this accommodation than that before: the approval of provision of the ergonomic equipment to include the specific chair at issue by FINRA, and the provision of alternative equipment by the Iowa Board that I conceded would be an adequate substitution if elected here. Those approvals make the California Bar the only testing agency from which this accommodation has been requested to deny it. The Expert complains of inadequate explanation for why accommodations requested here, perhaps including this one, were not provided on the SAT, LSAT, in college, or in law school. It was not requested for those tests. The disability on which it was based was not yet present for the SAT. As Dr. Dresden explains in greater detail in his affidavit for this appeal, the access to my normal physical therapy treatment is not impacted by those exams, given for part of one day and not depriving me of sufficient business hours availability or requiring relocation from where my established providers are, and the California</u>

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the February 2020 California Bar Exam**
**File No. 468532**

<u>Bar Exam's length and conditions expose me to greater symptoms from my disabilities than would those other exams, increasing the importance of better support than is offered standard.</u>

6.   The Expert's finding that the effects of Applicant's disabilities Applicant has asserted, both as to diminishing ability to concentrate over the periods of testing at the length of the bar exam and the nonlinear growth in extra time relative to base time required to create a level playing field for this disability the longer the base time the test is designed to take is, a basis for scheduling the test over no more test time per day than a standard candidate would have and instead administering extra time by increasing the number of exam days sufficiently to provide this, is measured solely as a product of how "tired" Applicant may become, and that the variable severity of effects dependent on that factor amounts to "conditional" impairment, where that term at law is defined as "more than a mere hypothetical" or something possible yet not probable.

"<u>The test day limit</u>, and the weekend testing, as presented, appear linked to the applicant's concerns about <u>how tired he might become</u>, or, his concern about a need for medical appointments, and the scheduling of this. Such are what might be called <u>conditional issues</u>, addressing what might happen, not, what will happen. Aid is not generally tendered as to address such concerns, for what might happen, won't always happen. Not all of our concerns come to pass."
(2019 Petition Decision Letter) (Emphasis Added).

     The scheduling accommodation that extra time accommodations increase the number of days the exam is scheduled for rather than the length of testing per day compared to a standard administration, is asserted as an issue of attention and concentration impairment severity as to Applicant's autism and neuroprocessing impairments and avoiding handicaps there that could make the amount of extra time proportional to the effects measured and quantified by Drs. Preston and Pinn unreliable for autism.  Tiredness could become a secondary handicap, if not for the lengths of test days present now, then for the hypothetical where the 150% extra time on written phases and meal breaks were granted, but the State Bar insisted at keeping to a schedule for completion over four days, but the Expert was wrong to assume sole and total reliance on such.

     This would be no more of a conditional impairment than the need for extra time generally; that such diminishing attention and concentration would arise from test days longer than standard is well established in the neuropsychological testing and is asserted by Dr. Preston in his 12/5/2017 affidavit as well as by Dr. Dresden in his 1/26/2019 affidavit.  This is based on a stable and consistent impairment rather than a transient and unpredictable one like the rules for conditional impairments and temporary disabilities address.  The effects are not speculative, and are far more substantiated as likely to occur than a mere hypothetical, the legal standard at issue.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

7. The expert's determination that how tired Applicant may become was a basis asserted for the weekend only scheduling request, or that the scheduling constraints for the degree of medical treatment appointments appropriate for Applicant's health care is sufficiently variable and speculative that a substantial adverse health care effect or unduly burdensome strain to avoid such with standard conditions relative to someone requiring only ordinary health care would be merely hypothetical and improbable, such as to make Applicant's medical need for the nature, quantity, and distribution of appointments a conditional disability requiring no accommodation, and thus that weekend only scheduling should be denied.

> "The applicant's expert, as noted, tenders a psychological disability verification form, without a report, he diagnosing autism and a neuro-processing disorder, he recommending the time now sought, a private room, and an experienced proctor, without recommending additional break time, nor the other aid now sought as pertains to the equipment, or hotel room, or weekend testing... The expert does not explain why the now needed aid would be greater than the aid that had been granted the applicant in college, for the LSAT, or even that which had been granted the applicant in law school... I would ask the applicant to again keep in mind his Iowa grant, and how this was for a test that has been, or will be taken, and to how closely this exam parallels the exam of issue...The test day limit, and the weekend testing, as presented, appear linked to the applicant's concerns about how tired he might become, or, his concern about a need for medical appointments, and the scheduling of this. Such are what might be called conditional issues, addressing what might happen, not, what will happen. Aid is not generally tendered as to address such concerns, for what might happen, won't always happen. Not all of our concerns come to pass."
> (2019 Petition Decision Letter) (Emphasis Added).

The weekend testing is not requested for any basis for which how tired Applicant might become has any relevance. My need for medical appointments and the other business hours management tasks thereupon as frequently, inflexible, and time interval sensitive as I've needed it, has been consistent enough that the treatment difficulties blocking off a full business week would cause are not speculative or hypothetical. Dr. Dresden spoke to this in his 1/26/2019 affidavit. I have had such a level of chronic treatment needs since no later than 2015, and this has escalated substantially 2017-2019. 2020 is not likely to be different.

The only other exam to take all of business hours for several consecutive business days was the Iowa Bar Exam. I did not request this accommodation there on account of the location of the exam, in Iowa, with any change to such clearly a fundamental alteration. I could not have afforded the travel expenses of a several weeks long trip to Iowa, nor of multiple weekend trips, and so I decided that the unequal accessibility the business day testing would cause due to its impact on my medical scheduling would not be avoidable by reasonable accommodation, and I could not access the exam at all without enduring such.

19

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

8.  The expert erred in finding the lack of an accommodation for single day FINRA exams
    relevant to what scheduling accommodations the effects of Applicant's disabilities might
    require for the multi-day California Bar Exam, and moreover, concluding weekend testing
    was not offered because it was not a disability accommodation (the FINRA exam was taken
    on a Saturday).

    "I would again direct the applicant to the Iowa exam, <u>and in this instance, the SEC exam</u>,
    that did not appear in either instance to offer <u>a specific test day limit, or, weekend testing.</u>"
    (2019 Petition Decision Letter) (Emphasis Added).

    The FINRA exam approvals is also irrelevant to both of the scheduling accommodations
requested (weekend and number of days).  Both the SIE and Series 66 are single day tests, and
do not unduly strain medical treatment needs even if scheduled for a weekday, though in any
case are also offered on Saturdays.  Neither are long enough for accommodated testing to pose a
length at which the autism and neuroprocessing issues would materially increase beyond that
accommodated by the extra time.  Accordingly, the Expert should reconsider their
recommendations on these accommodations.

9.  The expert erred in finding that Applicant was not provided test days no longer than a
    standard test day would have been for the Iowa Bar Exam, when like with assignment to a
    proctor with Applicant's criteria, that had been determined as what would be provided
    without a specific accommodation.

    "I would again direct the applicant <u>to the Iowa exam,</u> and in this instance, the SEC exam,
    that did not appear in either instance to offer <u>a specific test day limit, or,</u> weekend testing."
    (2019 Petition Decision Letter) (Emphasis Added).

    The Iowa Bar Exam schedule did not have any day substantially longer than a standard test
day, and did what is requested as an accommodation here as a matter of course, omitted as not
needing an accommodation (like with the proctor request) for provision.

10.  The expert erred in finding that the Iowa Board denied Applicant weekend scheduling of
    testing, because such was not requested of them despite necessity for equal accessibility due
    to the travel expenses being such for the location of the exam that Applicant would not be
    able to access the exam at all with such a schedule over that number of weeks, unlike here,
    and a location outside the jurisdiction was not requested as it would have been a
    fundamental alteration.

    "I would again direct the applicant <u>to the Iowa exam,</u> and in this instance, the SEC exam,
    that did not appear in either instance to offer a specific test day limit, or, <u>weekend
    testing.</u>"
    (2019 Petition Decision Letter) (Emphasis Added).

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

 In addition to finding that Applicant should not be provided weekend only scheduling due to the conditional issue, the Expert appears to have found that the Iowa Board had denied such. As explained above in 7) above, it was not requested of them for the reasons therein.

11.  The expert's failure to identify the effects of disabilities other than autism and the neuro-processing disorder and analyze their effects to determine independently whether they would be ameliorated towards a level playing field by the proposed accommodations therefor; or if they found themselves unqualified to evaluate such, their failure to recommend that the State Bar secure the opinion of a different expert in the appropriate specialty (unless they did so in a redacted portion of their opinion outside the excerpts, in which case the State Bar erred in not securing and furnishing to Applicant such an opinion).

"... he offering an autism diagnosis, and, a neuro-processing disorder... Other medical issues are suggested, but not specified... for his having been found to have a visual disorder, and, LD. I'd [the Committee's consultant had] support[ed] aid, not for LD per se, but for the applicant having an autistic disorder. I'd supported time and one half, in a semi-private room. The PD [physical disability] consultant recommended an additional 30 minutes per phase. Such had been granted. Later, through an appeal, I'd supported double time for all phases, and continuation of the semi-private room. He's been granted 6.5 hours for the first phase, 7.5 for the second, 6.5 for the MBE, a semi-private room, four days of testing, food and a beverage in the room, and permission to use his own laptop, and to have his own chair brought in, by him."
(2019 Petition Decision Letter).

The Expert is wrong that other medical issues were not specified.  Dr. Dresden included a full list in his 1/26/2019 affidavit for the 2018 Appeal, but explicitly stated the myofascial pain syndrome, gastroparesis, and postoperative dysphagia before that, while relying on Dr. Goodman to support the keratoconus and dry eye syndrome at the time of the 2018 Petition.  Regardless, since the 2019 Petition incorporated all of the previous submissions by reference, all of the conditions should have been addressed by the appropriate expert.  This expert mostly addresses autism and the neuroprocessing disorder, and while the presence of physical conditions is acknowledged, they don't offer analysis as to the effects those conditions have and the relationship between those and the accommodations at issue.  This may be somewhat understandable if this expert is a specialist, which is suggested by their focused role on autism and learning disabilities in the 2017 Petition, where (unlike here) they were one of multiple experts consulted.  However, if that is the reason for the narrow analysis here, their opinion should have suggested the State Bar consider a different expert for the physical and visual disabilities, or if they did and that was redacted, the State Bar should have done so.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

12. The expert's failure to address the sub-requests as to minimum distraction test environment other than proctor assignment and fully private room (e.g. concerning when questions regarding timing of lunch break(s) would be or proctor conversations in the test room) or the request for permission to bring food and drinks without the dietary restrictions of only "non-aromatic" food, and the prohibition on drinks that are only sold in a can, would unnecessarily impose.

"As to the proctor, as the applicant writes, this hadn't become an issue in his last taken bar, but, as it might be an issue for a future bar, he asks for this... In this way, this too is a conditional request... for what might happen, not, for what will certainly happen. The applicant's own words appear to recognize that his concerns do not always come to pass. I'd ask that he keep this in mind with regards this next to be taken bar."
(2019 Petition Decision Letter).

While I dispute that the proctor requests are categorized as conditional for purposes of what accommodations are due, I believe the error was a misunderstanding of the applicable law by the medical expert, and not a mistake of fact, so this will be addressed separately in a subsequent section.

The scope of the relevant request as asserted in the 2018 Petition, however, goes far beyond the training and experience of the proctor to whom I am assigned. The Expert has explained their reasons, in the 2017 Decision Letter, for recommending the denial of a guaranteed fully private test room, and I don't have anything to add to my response in the 2018 Petition Narrative Statement. The Expert does not, however, address the requests pertaining to proctor conversation in the test room, Applicant-initiation of any breaks that Applicant does get, or any other subpart of the requests in the 2018 Petition Narrative at p. 10. Similarly, the expert does not address the remaining limitations on the permission to bring food or drink (at pp. 5-7) and the impact with existing medical dietary restrictions. Therefore, it was not appropriate of the Expert to recommend denial of any accommodation not currently in place.

13. The expert's failure to provide any independent medical analysis as to why the disabilities that are undisputed do not justify the additional extra time for written sections, the meal breaks, the scheduling accommodations, or the ergonomic equipment, and sole reliance on the mistaken claim that Applicant's experts had not supported them, and for the first three, that the Iowa Bar did not provide such (only true for the first two as weekend scheduling was not requested and scheduling for no more per day than standard was provided without an accommodation).

"He offers no expert verification as to establish that his medical situation has advanced/worsened over this last time period. His current expert makes no mention of this whatsoever. The applicant refers the reader to past medical experts, who can't of course be relied upon as to verify his report of his changed medical condition as they haven't apparently seen the applicant since their last submissions... The applicant's expert, as noted, tenders a psychological disability verification form, without a report, he

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

diagnosing autism and a neuro-processing disorder, he recommending the time now sought, a private room, and an experienced proctor, without recommending additional break time, nor the other aid now sought as pertains to the equipment, or hotel room, or weekend testing... The expert does not explain why the now needed aid would be greater than the aid that had been granted the applicant in college, for the LSAT, or even that which had been granted the applicant in law school. The applicant suggests that his needs are greater now as due to his worsened medical status, but if so, he needs an expert to say so. His current expert does not. His past PD experts don't, can't, speak to additional current needs. Not unless they are brought up to date... I will support a continuation of the applicant's current grant, not more. I would direct the applicant's attention to his Iowa Bar grant, noting how parallel it is to the CA grant. And, I would note the lack of current medical experts who might speak to the applicant's worsening physical condition, and associated increased present need, if such can be established. If the applicant is more ill now than he has been, his needs may well have increased. If they have, offer the evidence and the experts that establish this. Such would speak perhaps to the breaks that have been sought, and the additional testing time that has been sought for the written phases of the bar, these in addition to the extra testing that has been granted. Such would have a more remote connection to... the weekend testing, and a fully private room. I would ask the applicant to again keep in mind his Iowa grant, and how this was for a test that has been, or will be taken, and to how closely this exam parallels the exam of issue. If the applicant's health has worsened, it would appear to have been a very recent change. I will not support the sought breaks, nor any more support than has been put currently into place... The breaks are not mentioned at all by the applicant's present expert. If needed, someone, an expert, needs to say so, and, they would need to explain why they are needed."
(2019 Petition Decision Letter) (Emphasis Added).

   Summarizing and cataloging the assertions of others, even when done with greater accuracy than here, is a clerical task. The value medical expert consultants can offer is in interpreting the symptoms reported, clinical test results, and the medically studied nature and effects of established disabilities to address issues as to disabilities' presence, effects, and the effectiveness of proposed accommodations at ameliorating those effects. The instant Expert provides no expertise-guided medical analysis as to why any of the expanded disability accommodations should not be granted; they either rely on their (usually inaccurate) perception of lack of evidence from Applicant's experts for the propositions they see as the dispositive issue (sometimes also not matching the correct legal standard) or else on decisions of other test agencies that should not be so open-and-shut conclusive, especially where they were off-point for the reasons discussed above or else circularly formed from earlier errors of the California Bar. If an expert is to recommend a denial, they should do an independent, detailed evaluation that impartially follows the undisputed facts to test whether the accommodation and its basis has merit, not just how well documented it may be by others.

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

II.  Other Issues with the Excerpt of the Consultant Expert Opinion:

A.  The Consultant, in their recital of what Applicant's experts must assert to justify the meal breaks, repeated their legal error from their 2017 Petition Decision Letter Opinion that was challenged in the 2017 Appeal as to the ADA standard for the duty to provide reasonable accommodations for found disabilities, in that contrary to the expert's analysis, a showing of absolute necessity to making an attempt at the exam is not required where Applicant shows the effects of a condition substantially limiting at least one major life activity would impair a material aspect of taking the exam, or cause an adverse condition or effect due to taking the exam, to the extent of preventing equal accessibility to the exam or a level playing field thereon compared with someone without such impairment or adverse effect, that could be mitigated by the proposed accommodations and without a timely and duly substantiated assertion of fundamental alteration or undue burden therefrom.

"The breaks are not mentioned at all by the applicant's present expert. If needed, someone, an expert, needs to say so, and, they would need to explain why they are needed. Not why they might be desirable, not how they might allow create a beneficial/optimal testing experience, but why they are required. Aid is for need, not so that one's preferences, however well explained, might be addressed."
(2019 Petition Decision Letter).

   This present expert made a similar legal error in their recital for the standard governing the obligation to provide disability accommodations under Title II of the ADA back in 2017, when they opined:

"Double time might indeed be best, but, one gains the aid that one needs, that is sufficient to
  meet one's needs, not all that might be best and/or preferred."
(2017 Petition Decision Letter, p. 3).


   Applicant responded in his Revised Appeal Statement for the 2017 Appeal dated 12/5/2017, pp. 9-12.  Applicant elaborated on the correct legal standard governing Title II ADA duties, a recital continued into the 2018 Appeal Statement dated 1/6/2019 at p. 8, and most importantly, addressed in the 2019 Petition Narrative, pp. 3-11.  Maintaining the positions therein as if fully set forth herein, Applicant notes that the Expert's implication that medical necessity is a required element to create the statutory right in "aid" (disability accommodations) is incorrect.  To the contrary, all Applicant need show for a threshold presumption in his favor that the accommodation is reasonable and must be provided is that the proposed accommodation addresses adverse effects for or from taking the exam due to the disability (mental or physical impairment substantially limiting at least one major life activity) and is as reasonably proportional as is possible to the magnitude of amelioration to put Applicant at as little a disadvantage compared to people without such impairment.  Even upon such, at the proper stage of considering the request the State Bar can rebut that presumption,

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

such as by establishing fundamental alteration or undue burden.  However, to reach the *prima
facie* threshold where the presence of disability is already undisputed, Applicant need only
establish adverse effects relating to the exam with that disability and articulate how the
proposed accommodation would mitigate such effects and be reasonably measured where
possible to creating a level playing field.  Not that Applicant couldn't possibly attempt the exam
without such accommodation or even that Applicant couldn't possibly pass the exam without
the accommodation, and/or not that Applicant would suffer grievous injury should the
accommodations not be provided.  If the cause is the disability, and the effect is going to be a
barrier (whether performance impairments on the exam not relating to actual knowledge of the
subjects tested, avoidable uncomfortable medical symptoms, financial, or otherwise) to equal
accessibility as compared to an examinee without any disability, aid is presumed mandatory
subject to specific legal defenses even if the absence of that aid would not be insurmountable
to the outcome sought.  Absolute necessity is too high a bar for the intent of Congress.  And to
the extent that the State of California has prescribed additional aid for a different or lesser
threshold test, Applicant had asserted such rights in the 2019 Petition pursuant to California
Government Code § 11135 *et seq.* and any other applicable California statute.

    This doesn't mean that Applicant is entitled to anything he wants just because he is disabled.
If the "preference" bears no rational relationship to addressing the effects of the disability or is
grossly and unnecessarily disproportional to them, for example, provision of that would not be
required.  Yet, "optimizing" the testing experience for the adverse effects of the disability to be
as mitigated as possible for equal accessibility, and not merely to the minimum required for strict
accessibility, is the correct guideline for what should be granted, the Expert was wrong to claim
otherwise, and the Expert's recommendations cannot be found reliable unless and until this
mistake of law is no longer relied upon.

B.  The Expert Consultant appears both to mistake the legal standard for a conditional disability
and incorrectly asserts that a high variability (without accommodation) of proctor behaviors
largely within the control of the State Bar through selection, training, and instruction, can make
any disability basis for a request such as Applicant's a conditional disability, wherefore there is
no duty to accommodate for speculative conditions where the effects would be "mere
hypotheticals" or unlikely possibilities, because that rule applies specifically to whether the
effects of the medical condition constituting disability occur only sporadically and cannot be
predicted or measured for the time of the exam and not to whether a disability that would
consistently and demonstrably create predictable adverse effects upon the conditional external
trigger will be triggered by the variable behavior of the State Bar's proctors.

"Such are what might be called conditional issues, addressing what might happen, not, what
will happen. Aid is not generally tendered as to address such concerns, for what might happen,
won't always happen. Not all of our concerns come to pass... Aid is for the need that has been
documented as present, not as might address that which might become present... As to the
proctor, as the applicant writes, this hadn't become an issue in his last taken bar, but, as it
might be an issue for a future bar, he asks for this... In this way, this too is a conditional

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the**
**February 2020 California Bar Exam**
**File No. 468532**

request... for what might happen, not, for what will certainly happen. The applicant's own words appear to recognize that his concerns do not always come to pass. I'd ask that he keep this in mind with regards this next to be taken bar."
(2019 Petition Decision Letter) (Emphasis Added).

   While the Bar's Expert is correct that conditional disabilities, as they are correctly defined by law, are not entitled to disability accommodations under the ADA.  However, the Expert's error is that they conflate the external standard testing conditions created and controlled by the State Bar itself, which in this specific instance might but not necessarily will prejudice Applicant's testing experience more severely due to effects of autism compared to a neurotypical examinee, as what the law requires not be conditional to require accommodation. It's not the actual need or the standard conditions at issue, but rather the presence and effects of the *disability* itself that must be sufficiently stable and predictable that the adverse disability effects be "more than a mere hypothetical."  Someone who occasionally gets migraine headaches at random, for example, might not be entitled to accommodations, since the effects of the headaches does not have a consistent or predictable measurability where they are not present most of the time and there is no pattern to establish when they would be present.

   In contrast, the effects of my autism in a particular set of conditions, such as those present on the July 2018 California Bar Exam, is consistent and predictable.  Since the disability itself is not transient and the effects for a particular triggering circumstance are predictable and adversely affect equal accessibility to the California Bar Exam due to that disability, the State Bar cannot get out providing an accommodation against the triggering conditions solely in its control just by asserting that they might, but do not guarantee that they will, moot it with what the standard testing conditions are.  Such a rule would allow for the denial of any accommodation against the presence of flashing lights for disabilities like epilepsy, for example, which would only produce effects in the event of a trigger but would consistently do so when that trigger is present, just by asserting uncertainty as to whether there would be flashing lights otherwise.  For this reason, the presence and effects of the disability must be inherently variable and unpredictable, such that they are inherently a mere hypothetical prospectively, not simply patterned to be more severe in specific circumstances that are not a certainty.

C.  General Seeming Misconceptions Regarding Applicant's Burden of Proof.

"And, I would note the lack of current medical experts who might speak to the applicant's worsening physical condition, and associated increased present need, if such can be established. If the applicant is more ill now than he has been, his needs may well have increased. If they have, offer the evidence and the experts that establish this."
(2019 Petition Decision Letter).

   Applicant believes it probable that the Expert's perception was in terms of just not having seen all of the expert support in the 2018 Petition and 2018 Appeal submissions, but to the extent they're claiming that I must prove all recommendations are "up to date" to be admissible as

26

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

evidence in support of a Petition by having each past expert certify such for each individual bar exam that those remain their recommendations. Stable, typically permanent disabilities do not require such; to require this, the Expert would have to assert that the original disability would be temporary or highly fluctuating in the severity of its effects. If the condition is a permanent disability, prior recommendations remain valid. A contrary requirement would impose an undue chilling effect on readily accessible disability accommodations, because of the substantial expense, time, and scheduling lead time burden to see every specialist, if they're even still available and in the same geographic proximity, without any change in symptoms, right before compiling a Petition for Testing Accommodations twice per year. That documentary burden, like the documentary burden I have been forced into expending immense and debilitating resources to provide in my pursuit of bar exam disability accommodations only to constantly be held as not present or inadequate to reach the merits even where such a claim lacks any credulity, violates 28 C.F.R. § 36.309(b)(iv), 42 U.S.C. § 12148(a)(1), 42 U.S.C. § 12203(b), and California Government Code § 12944 *et seq*.

III.  The New Expert Affidavits Accompanying This Appeal:

   Please find enclosed or attached:
1.  The new affidavit of PCP Dr. Dresden regarding all disabilities.
2.  The new affidavit of Gastroenterologist Dr. Clarke regarding the meal breaks for gastroparesis and postoperative dysphagia.
3.  The new affidavit of Ophthalmologist Dr. Goodman regarding extra test time for keratoconus and dry eye syndrome.
4.  The new affidavit of Neurologist Dr. Liu corroborating the propriety of the chair for myofascial pain syndrome.

   Other affidavits may be forthcoming from other experts hereupon post-submission. I do not summarize the letters, which reaffirm and expand upon the previously provided information, because they speak for themselves. They should independently cure any evidentiary defect the Bar's Expert may have perceived.

IV.  Accommodations That Must Be Granted Due to Waiver Irrespective of Disputed
Substantive Law and/or Disputed Facts, or Where the Correct Substantive Law Requires
Provision Relying Only on Undisputed Facts:

   Neither the expert nor the State Bar addressed the requests grouped as 4) from Part III. of the 2018 Appeal Statement dated 1/7/2019 in the 2019 Decision Letter, despite Applicant's challenge to the 2018 Appeal Decision focusing heavily on his assertion of legal arguments against the reasons given by the Bar in the 2018 Appeal Decision for their denial, but Applicant concedes the explanations in the 2018 Appeal Decision Letter does gives Applicant sufficient notice for this to only be a procedural violation of ADA implementing regulations and the California Government Code rather than also violating Constitutional Due Process. However, what remains of request 2) therein as to the limitations on the permission to bring food/drink after the singular request granted from the 2018 Appeal as to meal break location, and request 3) therein as amended to add the supplemental option by the 2019 Petition Narrative, inadequate

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the
February 2020 California Bar Exam
File No. 468532**

explanation for the denials has been given under all theories Applicant previously asserted, and I reassert and incorporate by reference as if fully set forth herein my positions as to the unlawfulness and remedy for that expressed in Section I. of the 2018 Appeal and expanded upon in my 2019 Petition Narrative Statement and the foregoing above.

<u>V.  Upon a Finding That Ergonomic Equipment is Required to Make the Exam Equally Accessible to Applicant, the Presence of Furniture Equipment Not Reasonably Portable Goes to Equally Accessible Facilities and Must Be the Responsibility of the State Bar to Provide, or Alternatively Should Be Treated in Like Manner to Auxiliary Aids with the Same Result, Although, as a Courtesy Applicant Has Offered Several Substitution Accommodations.</u>

The ADA, California Government Code, and implementing regulations such as 28 C.F.R. § 35.130(b)(1) and 28 C.F.R. § 36.309(b)(iii) requires equally accessible facilities to be provided at the burden of the subject entity.  Similarly, 28 C.F.R. § 36.303(b)(3) requires the acquisition or modification of equipment to ensure equal accessibility for disabled persons.  Read together, there is clear intent for the suitability of onsite furniture for a disability to be the responsibility of the subject public entity.  Even were it not, the actual burdens, financial and otherwise, to providing the equipment himself would be a barrier to accessing the exam grossly above that of an examinee without such disability.  Accordingly, upon a finding that the ergonomic equipment is an appropriate accommodation, at least the nonportable furniture part of that equipment must be provided by the State Bar, unless one of the courtesy substitutions offered is elected instead.

<u>Overall Conclusion and Request for Relief:</u>

I hereby certify under penalty of perjury under the laws of the State of California that all statements of fact made herein are true to the best of my knowledge and belief.

Wherefore, based on the foregoing, Applicant respectfully requests:

1.  That the legal arguments in sections II), IV), and V) of this appeal and those responsive to the 2018 Appeal Decision Letter in the 2019 Petition Narrative be addressed by the appropriate State Bar Counsel/Attorney, so that I am provided notice and explanation of the State Bar's Holdings of Law, any disputed accommodation denials that can be overturned solely on the law to narrow the factual issues can be identified, and the Bar's Expert can be provided instructions for their review regarding the legal misunderstandings I believe they relied on that I identified in Section II) herein above.

2.  That legal instructions from 1), this appeal statement, all expert affidavits and forms from both the 2017 <u>and</u> 2018 Petitions and their respective appeals, and all expert affidavits prepared for this appeal be submitted to the Expert who was consulted for this petition, so that they may reconsider their findings and recommendations per all relevant issues herein.

3.  That both the Counsel and Expert responses be disclosed in the Decision Letter hereupon, and

**Appeal Statement from Partial Denial of ADA Testing Accommodations for the**
**February 2020 California Bar Exam**
**File No. 468532**

the above steps be taken with sufficient urgency as to be timely for such information to be
reviewed and relied upon for consideration no later than the January meeting of the
Committee of Bar Examiners, or such special meeting as may be necessary to provide request
6) below, whichever is sooner.

4.  That the Committee, upon this appeal, weigh any expert disagreements with the deference to
    Applicant's experts prescribed under 28 CFR Part 36 Appendix A, citing 28 CFR § 36.309, grant
    all accommodations requested in the 2018 Petition, with those concerning proctor behavior in
    the test room, at least 150% extra time on the written sections of the exam, scheduling of the
    exam over no more hours per day than a standard session, and provision of the ergonomic
    equipment or else one of the substitutions I've offered for that, being of particular importance
    (though all requests meet the standard for equal accessibility and all are requested).

5.  That all findings of fact and holdings of law made for each individual denial upon appeal, if
    any, be explained in detail.

6.  Without prejudice to the ability to get a meaningful review of this appeal by the Bar's Expert
    as well as the Committee, that the Committee's Decision be communicated sufficiently
    expeditiously (e.g. by the second week of January) as to allow Applicant a meaningful
    opportunity to seek injunctive relief from a Court of competent jurisdiction that would
    control accommodations for the upcoming February 2020 California Bar Exam were
    particularly important accommodation(s) denied without sufficient explanation; Applicant
    reserving all right to proceed with such while this appeal is still pending, at his discretion, if a
    decision is not received by 1/9/2020.

Dated this 27th Day of December, 2019.

*/s/ Benjamin Kohn*
Benjamin Kohn
1913 Fordham Way
Mountain View, CA 94040
(650) 919-3584
Benjamin.s.Kohn@gmail.com

29



**Sutter Health**
Palo Alto Medical Foundation

**We Plus You**

To Committee of Bar Examiners
Attention: Senior Director of Admissions
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105
December 19, 2019

Mr. Kohn has brought to my attention the outcome of his Petition for Disability Accommodations for the February 2020 California Bar Exam and the input an expert consultant for the California Bar had most recently provided regarding his requests. I have now reviewed the excerpts of their opinion that you provided to Mr. Kohn, particularly the concerns regarding perceived omissions from my recommendations of certain accommodations requested by Mr.Kohn and a perception that all of these requests were based on new medical concerns since his last submission or worsening of his established medical conditions, as well as a perceived lack of specificity in my list of medical issues other than autism and a neuro-processing disorder that Mr. Kohn has been diagnosed with and treated for.

Many of the positions attributed by this expert to myself and to Mr. Kohn are not accurate descriptions of the documentation that I and other experts have submitted to you for Mr. Kohn. I'd ask that the expert whose opinion was provided and any other appropriate persons at the California Bar reread my affidavit to you dated 1/26/2019, my most recent physical disability verification form and its attached letter and test results first submitted for the February 2019 bar exam that Mr. Kohn told me he would "incorporate by reference" in the new petition and I now reconfirm as being up to date, which contains my recommendations for physical disabilities only, including myofascial pain syndrome and some secondary issues such as scapular dyskinesis and occipital neuralgia, and also for gastroparesis and postoperative dysphagia. An accommodation for scheduling of the exam based on the collective treatment requirements of numerous other medical issues listed in the 1/26/2019 affidavit is also recommended. All of these documents are intended to be read together, including my more recent and separate psychological disability verification form containing my recommendations for autism and the neuroprocessing disorder only. Those recommendations are based on my independent opinion from the test results taken by Drs. Pinn and Preston in 2014 which, as prior to Mr. Kohn's acquisition of keratoconus and the GI conditions, are reflective only of the impairments caused by Mr. Kohn's autism and neuroprocessing disorder, and my opinion considers both their report as clarified by Dr. Preston's 12/5/2017 affidavit to you (and provided to me by Mr. Kohn) as well as my professional expertise and experience with patients with autism. As all of these documents are intended to be read together and not treated as a complete list of recommendations for all disabilities, and the absence of any recommendation for particular disability accommodation(s) on any individual form or subsequent form does not indicate that I no longer recommend anything I had previously or separately recommended, nor does it necessarily imply my



**Sutter Health**
Palo Alto Medical Foundation
**We Plus You**

disagreement with any other recommendation Mr. Kohn's other specialized professionals would have made. If I believed any previous recommendation was no longer warranted due to improvement in Mr. Kohn's health, I would have said so. I'll further clarify that your expert was mistaken in their statement that I had not recommended the meal breaks, the additional test time for written sections, the provision of the ergonomic equipment, the weekend testing, or any other accommodation that I've recommended on any of the documents above.

I believe that the effects of Mr. Kohn's autism and neuro-processing weaknesses have been stable from the 2014 testing to the present and independently support 100% extra time on the Multiple Choice "MBE" sections and 150% extra time on the essay exam sections. This is consistent with the recommendations of Neuropsychologist Drs. Pinn and Preston based on their thorough testing as later clarified in the affidavit of Dr. Preston that Mr. Kohn will need more time for written sections than for multiple choice sections, which has also been my understanding of the neuroprocessing delays autism causes. This extra time should be additive to any extra time Mr. Kohn is given for any other disabilities that impair his ability to respond to the exam and demonstrate the extent of his knowledge of the subject matter compared to a person without such impairment in a different way, such as by reading the material as opposed to processing the contents and concentrating through consideration and transmittal of his responses, or by adding other tasks as compared to the degree of a person without such disabilities (i.e. eating, changing posture, or using the restroom with his dyssynergetic pelvic floor and irritable bowel disorders with a tendency to develop hemorrhoids) during the timed portion of the exam. It should especially be additive where the other disabilities were not present during the 2014 testing upon which the autism recommendations are based. There are a number of reasons why he would need more extra time on the Bar Exam than on other types of exams, including the length and format of those exams. Mr. Kohn will fatigue and have greater neuro-processing delay the longer the testing duration is for a particular day, and that the measurements quantifying the proposed amount of extra time rely on the absence of an additional handicap of longer test time per day than the exam would normally be completed over. Accordingly, Mr. Kohn should be granted an accommodation of test time (excluding breaks) not exceeding the amount per day as would a normal candidate have and scheduling the exam over enough days to receive the necessary extra time and breaks without imposing that handicap.

His Keratoconus was acquired subsequent to his routine eye exam July 2016 as I believe signs of it would have been detected then if present, but was acquired no later than its diagnosis July 2017. The only exams for which Mr. Kohn had opportunity to seek disability accommodations based on keratoconus were those for his last semester of law school, for the California and Iowa Bar Exams, and for FINRA exams. The accommodations approved for the SAT, LSAT, GMAT, MPRE, and school exams prior to his final semester in law school are not relevant. His ophthalmologist, Dr. Goodman, completed your Visual Disability Verification Form and recommended 100% extra time based on this condition. I believe his recommendation is reasonable, and supports at the very least a minimum of 150% extra time together with autism on the essay sections of the exam. You received another expert opinion recommending 30 minutes extra time per exam section, approximately 16% extra time, but that expert based his



**Sutter Health**
Palo Alto Medical Foundation

**We Plus You**

opinion in part on a finding that Mr. Kohn's visual acuity was mostly corrected by appropriate glasses, which Dr. Goodman disagreed with in another affidavit to you that Mr. Kohn provided me, due to the asymmetry of his astigmatism and cornea scans taken. The Iowa Bar also received input from their expert, optometrist Dr. Damari, who recommended 50% extra time for the keratoconus, but that this not be additive to the extra time for autism, the latter based explicitly on Mr. Kohn's reading comprehension in the 2014 Neuropsychological Testing that (seemingly missed by Dr. Damari) predated Mr. Kohn's acquisition of keratoconus entirely. I understand that the Iowa Bar relied on your decision for the California Bar Exam not to grant further extra time despite this mistake, but if their expert recommended 50% extra time if there was not an issue of the autism and Dr. Goodman and I recommend 100%, then 30 minutes per section seems clearly unreasonable to me. Mr. Kohn was provided all accommodations sought (100% extra time on multiple choice and 150% extra time on written sections) for his last semester of law school and for the FINRA exams. It is only the California Bar (and the Iowa Bar based in part on the California Bar) that has denied this. Mr. Kohn might be able to compensate for this by being far above the level of competency tested that is required to pass, enough to pass an exam with only the extra time given, as he was for the Iowa Bar Exam, but if the question is whether he would be able to demonstrate a given level of competency equally as to someone without disability than he would not be able to do so with less extra time than sought.

Mr. Kohn acquired myofascial pain syndrome subsequent to the SAT. He requires physical therapy three to five times per week along with regular chiropractic and osteopathic treatments to manage the symptoms sufficiently to avoid substantial loss of productivity and significant impairments of his quality of life. When this treatment lapses for several consecutive days or more, he experiences severe flare ups. This condition can be further aggravated by high levels of stress or anxiety, and by spending long periods of time in a sitting posture, reading, or using a computer, especially without the ergonomic setup he uses for home, study, and work. The Bar Exam requires suspension of ordinary treatment due to the need to take the exam at a substantial distance from his established providers, without any long periods of uninterrupted time during business hours, over several consecutive days, and then places him in conditions that inevitably will maximize the exacerbation of his disability. The symptoms he may experience will likely impair his ability to perform as well as he would otherwise be capable on the exam, and the extra sensory sensitivity people with autism experience would amplify these effects and greatly increase the concentration difficulties he would experience from that quantified on the neuropsychological testing. Exams not only subject him to the aggravating factors, but require heightened sustained mental focus and consistent productivity compared to ordinary work or study, and preclude the use of ordinary medications Mr. Kohn takes, such as Gabapentin, due to the need to avoid cognitively-dampening or drowsiness-inducing side effect risk. The increase in these symptoms from the sitting and computer-use postures can be partially ameliorated by using an ergonomic setup, including those components I've described previously and an adjustable height sit-or-stand desk like the Iowa Bar provided.

There is a spectrum of postural support available from standard chair to "office chair" (typically equipped with a padded seat and back rest along with arm rests) to



**Sutter Health**
Palo Alto Medical Foundation

**We Plus You**

"ergonomic" office chair (typically with variations in the shape and viscosity of the back and sometimes the seat to provide lumbar and thoracic support) to the ergonomic office chair with dynamically adaptive full spinal support, which uses a matrix of small panels and mechanical devices on both the back and seat to provide disk by disk support along the entire spine and distribute one's weight evenly no matter what part of the chair is sat on or what angle the user leans into it from, allowing the user to vary seat positions without any loss of support. I recommend the latter, equipped on the Herman Miller Embody Chair, and using an ordinary desk I believe this would be necessary to put him anywhere close to as equal a position to others without such disability as can be done compared to any alternative, but agree with the Iowa Bar that an ergonomic office chair with just the shape and viscosity to provide lumbar and thoracic support might be adequate were he also to be provided a motorized adjustable height sit-or-stand desk. The LSAT, GMAT, MPRE, college exams, and law school exams differ from the Bar Exams for purposes of addressing myofascial pain syndrome due to the differences in the uninterrupted length of the exam time spent in a sitting or computer work posture, the need to suspend his routine physical therapy treatment when he needs it the most due to the lack of business hours availability for such appointments on exam days for so many days in a row and from being away from home and his providers.

In short, Mr. Kohn would be risking harm to his health if he took an exam lasting longer than six hours or longer than four hours per day for two or more consecutive days without access to the ergonomic equipment requested, and at any length (but increasingly so the longer the exam and with an interruption of physical therapy) this condition will otherwise have symptoms that would impair performance and speed on the exam past that already present from other disabilities.

Mr. Kohn acquired and was diagnosed with Severe Gastroparesis and GERD in 2018, subsequent to all tests other than the Bar Exams and FINRA exams, and also after his Petition for accommodations on the July 2018 Bar Exam. Even later in 2018 Mr. Kohn acquired postoperative dysphagia from the nissen fundoplication surgical response to the GERD. The food and drink permissions, meal break location, and extra meal breaks for a total number equal to 30 minutes per 90 minutes of test time that are requested based on these conditions are indeed based on new or worsened medical state compared to Mr. Kohn's first submissions to you. In order to avoid symptoms of bloating and dyspepsia that would, like myofascial pain, impair his productivity and performance on the test, especially with his sensory sensitivity, he should eat many small meals to minimize idle digestion time, as his digestion is much slower than that of an ordinary person. The accommodations requested are necessary for that reason, as a singular lunch break will not have the desired effect.

The weekend testing is recommended because there is a near certainty of Mr. Kohn needing an average of multiple medical appointments per weekday average, some requiring scheduling at specific intervals relative to each other, to collectively treat his extraordinary number of chronic health issues, and requiring one or more full business weeks for the entirety of business hours puts a strain on the ability of his providers to adequately treat his medical needs.



**Sutter Health**
Palo Alto Medical Foundation

**We Plus You**

As I listed in my affidavit dated 1/26/2019, the full list of these conditions includes:

Autism spectrum disorder (F84.0)
Highly variable attention and neuro-processing speed deficit (R62.50)
Gross and fine motor delay (F82)
Myofascial pain syndrome (M79.18)
Cervicalgia (M54.2)
Cccipital neuralgia (M54.81)
Keratoconus (H18.603)
Dry eye syndrome (H04.123)
Gastroparesis (K31.84)
Postoperative dysphagia (R13.10)
Irritable bowel syndrome with constipation (K58.9)
Pelvic floor dyssyngergia (M62.89)
history of hemorrhoids (K64.8)
Scapular dyskinesis (G25.89)
History of C. Difficile infection (Z86.19)
Chronic idiopathic urticaria (L50.1)
Eczema (L20.84)
Allergic rhinitis (J30.9)
Allergic sinusitis (J32.9)
history of sinonasal polyposis (J33.9)
Severe airborne and other food allergies (Z91.013)
Chronic oral aphthae (K12.0)
Circadian rhythm sleep disorder and history of sleep apnea (G47.33), (G47.20).

I certify under penalty of perjury under the laws of the State of California that all statements herein are true and accurate to the best of my professional knowledge and belief.

Graham Dresden, M.D.
Board Certified in Family Medicine
Palo Alto Medical Foundation
650-404-8370



GOODMAN
EYE·CENTER

Committee of Bar Examiners
Attention: Senior Director of Admissions
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

December 23, 2019

RE: Kohn, Benjamin
DOB: 12/29/1993

To Whom It May Concern:

Benjamin Kohn has a diagnosis of Keratoconus in both eyes (ICD-10: H18.623). This condition causes irregular bulging of the normally round cornea. It's characterized by protrusion of the central cornea, resulting in distortion of vision including ghosting, glare, photophobia, and halos around lights, decreased vision, and monocular diplopia (double vision). In addition to keratoconus, Mr. Kohn also has asymmetric astigmatism (ICD-10: H52.213). All of these visual disabilities cannot be fully corrected in glasses. Unfortunately, Mr. Kohn cannot wear contact lenses due to a fine motor delay. He also suffers from dry eye syndrome (ICD-10: H04.123). This condition causes his vision to fluctuate, especially during long periods of focused visual work, which in turn can cause substantial eye fatigue during test taking.

In light of these eye conditions, I reconfirm my previous recommendation as indicated on the previously completed Visual Disability Verification (Form H) for the California Bar Exam. Note that these recommendations are based solely on Mr. Kohn's visual disabilities and should be additive to any extra time provided to accommodate other disabilities that slow his test taking. Feel free to contact my office with any further questions.

I hereby declare on the penalty of perjury under the laws of the State of California that the facts and opinions offered herein are true to the best of my knowledge and belief.

Sincerely,

Daniel Goodman, MD

2211 Bush Street • Second Floor • San Francisco CA 94115-3121

T  415-474-3333 • F  415-474-3939 • goodmanEYEcenter.com



## Stanford
### HEALTH CARE

Digestive Health - Blake Wilbur
900 Blake Wilbur Dr, 2nd Flr
Palo Alto CA 94305
Tel: (650) 736-5555
Fax: (650) 498-6323
http://stanfordhospital.org

Digestive Health - Redwood City

Subhas Banerjee, MD
Laren S Becker, MD, Ph.D
Ann Mei-Tzu Chen, MD
Nielsen Fernandez-Becker, MD, Ph.D
Christine A. Cartwright, MD
Shai Friedland, MD
Lauren Gerson, MD
Gary M. Gray, MD
Aida Habtezion, MD
Uri Ladabaum, MD
Anson W. Lowe, MD
Linda Anh B.Nguyen, MD
Walter G. Park, MD
Jay Pasricha, MD
Michael Rothenberg, MD
Shamita B. Shah, MD
Trevor A Winter, MD


Clinical Assistant Professor
Clinical Director
Inflammatory Bowel Disease
Dr. Shamita Shah


Clinical Assistant Professor
Director of Motility
Dr. Linda Nguyen

Clinical Assistant Professor
Advanced Endoscopy
Dr. Ann Chen

To committee of bar examiners
Attention: Senior Director of Admissions
Office of Admissions
State bar of California
180 Howard Street
San Francisco, CA 94105

December 20, 2019

I am the gastroenterologist of Mr.Benjamin Kohn and have previously completed a physical disability verification (Form B) for the California Bar. I'm writing to reconfirm that I am up to date with Mr. Kohn's upper GI issues, including Gastroparesis (please see gastric emptying studies provided to you previously), Dysphagia, and Nissen Fundoplication postoperative state, with eating in an appropriate manner sometimes affected by a fine motor delay. I maintain my recommendations based on these conditions as follows:

1. Permission to bring food and drinks into the test room and take all meal breaks in the test room, subject to supervision.

2. Short (e.g. up to 30-minute) meal breaks per 90 minutes of testing time, balancing a need for frequent small meals due to the slowed digestion of gastroparesis requiring minimization of idle digestion time with a slowed ability to eat a fixed quantity of many foods due to the bite size constraints required for the food pass his surgically altered esophagus without clogging it and triggering slow, painful regurgitation,and the fine motor delay can slow his ability to cut food into such bite size where required.

I certify under penalty of perjury under the laws of the state of california that all statements herein are true and accurate to the best of my professional knowledge and belief.

John O. Clarke, MD
Clinical Associate Professor of Medicine
Director, Esophageal Program
Stanford University

Benjamin Kohn
DOB: 12/29/1993
Stanford Health Care
1



Palo Alto Medical Foundation
Attn: My Health Online P.O. Box 255386
Sacramento , California 95865-5386

Name: Benjamin Kohn | DOB: 12/29/1993 | PCP: Graham Dresden, MD

# Letter Details



12/5/2019

RE: Benjamin Kohn

To Whom It May Concern:

Benjamin Kohn is under my care for myofascial pain. He also has autism. My medical opinion is as follows:

With his medical conditions, he would benefit from the dynamic active support of a specialized chair during the bar exam. The benefit of such a chair would reduce his symptoms of myofascial pain. Other measures such as oral medications would impact cognition and mental processing ability which would impair test taking performance.

I testify under the penalty of perjury that the above is true and correct to the best of my knowledge.


Chien-Ye Liu, MD
Board Certification, American Academy of Psychiatry and Neurology
650-934-7300


*This letter was initially viewed by Benjamin Kohn at 12/28/2019 12:01 AM.*

MyChart® licensed from Epic Systems
Corporation © 1999 - 2018
Copyright © 2019 Sutter Health. All rights
reserved. Sutter Health is a registered trademark
of Sutter Health ®, Reg. U.S. Patent & Trademark
office.

**TA Case Number:** 00491832
**File Number:** 468532

Dear Benjamin Sean Kohn,

At its January 31, 2020 meeting, the Committee of Bar Examiners (Committee) considered your third appeal of the decision that was made regarding your request for expanded accommodations, originally in connection with the February 2019 administration of the California Bar Examination (CBX), but now for the February 2020 CBX. The Committee declined to grant your appeal for additional extra time for each session of the written portion of the examination; for additional 30 minute breaks for each 90 minutes of testing (excluding any transit time to/from); for all lunch and breaks scheduled at your discretion; for your total testing time not to exceed 6.5 hours per day; for administration of the examination on weekend days only; for testing in a private room; for the Committee to provide you with a complete ergonomic workstation according to your detailed specifications; for the Committee to provide you with a hotel room starting the day prior to the start of the examination, through the night following the conclusion of the examination; for a private room in which you are allowed to leave all of your equipment though 11:00 am the day after the last day of testing and for the Committee to assume full responsibility for all of your equipment and computer; and for assignment to an experienced proctor. The documentation provided with your appeal still does not adequately support those requests. No substantive new information or evidence of changed circumstances was provided with the documentation to justify the need for additional accommodations. The fact that you have not been successful on the examination is not grounds for granting additional accommodations.

In addition –

*Admissions Rule* 4.82(D) sets forth the following definition:

    A "reasonable testing accommodation" is an adjustment to or modification of standard testing conditions that addresses the functional limitations related to an applicant's disability by modifications to rules, policies, or practices; removal of architectural, communication, or transportation barriers; or provision of auxiliary aids and services, provided that they do not

        (1)  compromise the security or validity of an examination or the integrity or of the examination process;

        (2)  impose an undue burden on the Committee; or

        (3)  fundamentally alter the nature of an examination or the Committee's ability to assess through the examination whether the applicant

        (a)  possesses the knowledge, skills, and abilities tested on an examination; and

    (b)  meets the essential eligibility requirements for admission.

- Denial of additional extra time (double time and one-half) for each session of the examination: You state in your appeal letter that the decision regarding the accommodations that you were granted for the July 2019 administration of the Iowa Bar Examination was based on the accommodations that you were granted for the California Bar Examination, yet the accommodations that you were granted for that examination were actually different from, although similar to, those granted for the February 2019 CBX, and were sufficient for you to pass that examination on your first attempt. Your decision not to pursue the accommodations for the Iowa Bar Examination that you are now appealing for the February 2020 CBX suggests that these accommodations are, in fact, preferred, and not absolutely necessary based on your functional limitations.  In addition, even though Dr. Dresden recommends more time, he has not actually evaluated and treated you for autism/Asperger Syndrome or visual problems.  The specialists who have done so recommended from time and one-half to double time. Further, Dr. Dresden's opinions are very conclusory, particularly those related to accommodations for autism.  There was no current functional limitation analysis provided to support the doctor's conclusions.

- Denial of additional 30 minute breaks for each 90 minutes of testing (excluding any transit time to/from lunches and breaks):  Part of the explanation for this request is that the impairment of your fine motor skills slows your ability to cut your food into bite-sized pieces (per Dr. Clarke, gastroenterologist). There is no explanation for why this couldn't be done in advance before coming to the test center. In any event, although this request was not granted as phrased, consideration of an extra 30 minutes per session has already been granted.

- Denial of discretionary lunch breaks:  Dr. Dresden recommendation based on his review of reports from the autism specialists.  He does not, and has not been asked to, evaluate or treat you for autism.

- Denial of testing time not to exceed 6.5 hours per day and testing on weekend days only: Your reasoning and your specialist's (Dresden, M.D.) recommendations, and the bases therefor, lack enough specificity to adequately evaluate the necessity for and reasonableness of these requests, balanced against whether such accommodations would (1) compromise the security or validity of the examination or the integrity of the examination process; (2) impose

an undue burden on the Committee; or (3) fundamentally alter the nature of the examination. Dr. Dresden's opinions and recommendations are conclusory and vague and not supported by medical documentation or testing. You state that you did not request weekend-only testing in Iowa for financial reasons. This makes questionable your other statements that weekend-only testing is necessary for you due to medical appointments. You argue that you are entitled to greater accommodation in California than you received in Iowa because the California Bar Exam is more difficult to pass than the Iowa Bar Exam. Thus, you seem to be saying that your request for more accommodations for the CBX than for the Iowa exam is not because of medically necessary reasons, but rather because the CBX is a harder exam. You argue that you need to test on weekends only because you cannot possibly miss medical appointments (that can only be on week days) for a full week, yet you did so for the Iowa Bar Exam. While that schedule may not have been your preference, you were in fact successful on that exam. There is no documentation from your treating specialists that this experience in Iowa in July 2019 created any medical issues for you. You have not offered any specifics as to what medical appointments you might need to attend during any given week, let alone a willingness to cluster those appointments or to minimize them (or what the effect of doing so might be) in order to take the CBX during the week. At no point does anyone explain what the appointments are for, how long they are, what day of the week and time of day do they happen, etc. Rather, Dr. Dresden states in conclusory terms without any specifics, that "weekend testing is recommended because there is a near certainty of Mr. Kohn needing an average of multiple medical appointments per weekday average, some requiring scheduling at specific intervals relative to each other, to collectively treat his extraordinary number of chronic health issues . . ." Dr. Dresden also states that your testing during the week would be a burden to your medical providers, which is not a basis for granting testing accommodations.

Your current testing schedule requires you to test Tuesday through Friday of one week. If you were to be granted your requested timing and schedule in full (double time and one-half, extra 30 minute breaks per 90 minutes of testing, 6.5 hours per day limit, weekends only), you would not complete the exam until March 21, three and a half weeks after all standard applicants have finished testing. In addition, in order to administer the exam according to your desired schedule: (a) the exam components would have to be split up in ways they were not intended to be; (b) you would be getting significantly more rest time in between exam sessions, which would give you an advantage over standard applicants and, according to the Committee's psychometrician, since the scores that applicants receive are normative in nature (i.e., scaled to all other applicants who receive the same amount of rest), your scores might not be directly interpretable relative to the other applicants; (c) it is unknown whether the National Conference of Bar Examiners (NCBE) will allow the MBE to be administered over such an extended period of time;

(d)  there is greater risk to exam security, given the potential for access to all of the exam questions and purported answers in advance, through their wide dissemination via blogs on the internet and other means.  All of these issues weigh heavily against granting such accommodations because they compromise the security and validity of the exam and the integrity of the exam process, fundamentally alter the nature of the exam, and impose an undue burden on the Committee, especially when the rationale and medical necessity for the requested accommodations are not adequately supported.

- Denial of testing in a private room:  You were granted a "distraction-reduced, semi-private room" for the Iowa Bar Exam, which was all you needed to pass that exam on your first attempt.

- Denial of request that the Committee provide a complete ergonomic workstation (including $1500 chair, motorized adjustable sit-to-stand workstation, adjustable laptop stand, external keyboard, neck and torso braces): For the Iowa Bar Exam, you were provided with "a testing station containing tables of differing heights to allow him to take the exam in either a seated or standing position" and "a cushioned office chair."  You were explicitly denied "a specific chair such as a Herman Miller Embody desk chair," but given "permission to bring in a different chair of his own choosing."  You were also "permitted to bring appropriate neck and/or torso braces" and your own external keyboard and mouse. In your appeal letter, you conceded that this would be an adequate substitution. Dr. Dresden states that you need the expensive complicated ergonomic setup that you've requested, including the Herman Miller Embody chair, but that the accommodations that the Iowa Bar Examiners provided were sufficient, as they provided a sit-to-stand desk and a padded adjustable office chair. You have already been granted the ability to bring the items you are requesting into the examination room.

- Denial of request that Committee provide hotel room for you – check in the day before exam, check out the night following the exam – and a private room in which you are allowed to leave of your all equipment, though 11:00 am the day after the last day of testing, and that the Committee assume full responsibility for all of your equipment and computer: You argue that providing you with a hotel room in this manner does not constitute a "fundamental alteration" to the State Bar's services because it would only require "negotiating supplemental or revised terms with the hotel that allow for equal accessibility or else compensating for the failure to have done so."  However, the State Bar does not offer as part of its "services" the provision of hotel rooms for applicants, whether

at discounted group rates or otherwise. Hotel room arrangements are to be handled through the hotel directly, as the hotel has sole control over how many rooms they provide at any particular rate.

- Denial of request for assignment to an experienced proctor: This request is based on your complaints about your proctor for a prior CBX that you took. Thus, this request is conditional and based on what could happen, not what is sure to happen.

You will, however, continue to receive the accommodations that were previously granted. The Testing Accommodations Notice dated January 7, 2020, which was previously sent to you, remains in effect.

Please refer to the Applicant Community and your admittance ticket for information regarding your assigned test center.

If you would like further assistance, please feel free to contact the office at the above address.


Sincerely,


Committee of Bar Examiners

# EXHIBIT 7

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the July 2020 California Bar Exam**
**File No. 468532**

Committee of Bar Examiners
Attention: Senior Director of Admissions
Office of Admissions
State Bar of California
180 Howard Street
San Francisco, CA 94105

3/19/2020

<u>Procedural Background:</u>

   I, Applicant, Benjamin Kohn (File Number 468532) (hereinafter, "I," "me," or "Applicant," interchangeably) first petitioned for testing accommodations in 2017 for the July 2018 California Bar Exam (the file of which may be hereinafter referenced as the "2017 Petition," which petition was granted in part and denied in part.  I did not appeal all denials from that Petition due to the time constraints, but did timely and successfully appeal the partial denial of the amount of extra time sought in that Petition through an appeal in December 2017 (the file of which, including a revised brief and two supplemental expert affidavits that were received by the State Bar after granting the appeal from the notice of appeal statements, but postmarked before my receipt of the decision letter for the appeal, may be hereinafter referenced as the "2017 Appeal").

   After the acquisition and diagnosis of new medical conditions meeting the standard to constitute additional disabilities, and also after gaining by firsthand experience additional information about how the California Bar Exam is administered not available previously and affecting my position on the degree of accommodations required for equal accessibility by the effects of both my previously asserted and newly diagnosed disabilities, I submitted a new petition with further new recommendations and documentation from both prior and new experts through which I requested additional accommodations as well as renewal of those previously granted, for the February 2019 California Bar Exam.  The previously granted accommodations were renewed, but most of the expanded requests were denied with a couple minor exceptions, and the explanation decision letter only addressed some of the denied accommodation requests, misstating or omitting others, with only the single sentence of "the documents you and your experts have submitted are inadequate to support those requests" in explanation.  I timely appealed that decision as well (as responsive to the decision on the 2018 Petition, hereinafter referenced as the "2018 Appeal" despite the relevant documents being dated 1/6/2019 and 1/26/2019), supplemented with a very detailed further affidavit from one of my experts, which resulted in the denials being largely upheld with one relatively minor exception.  Only one of the requests which were still denied included an explanation of that denial, accompanied by a brief response to my legal position as to the requirements for an explanation of each denial and my legal challenge to the timeframe demanded for the appeal.

1

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

Subsequent to the foregoing, I received approvals for testing accommodations by two other testing agencies (the Iowa Board of Law Examiners and the Financial Industry Regulatory Authority) on three other exams: the July 2019 Iowa Bar Exam, the FINRA Securities Industry Essentials Exam, and the FINRA Series 66 Exam.  On 10/24/2019, I submitted a new Petition ("2019 Petition"), which newly included an updated Form E from Dr. Dresden, Form G from the Iowa Board of Law Examiners, approval letter from FINRA, a copy of all documents in the file for the 2017 Petition, 2017 Appeal, 2018 Petition, and 2018 Appeal, and a narrative statement in support of the Petition incorporating by reference the appropriate factual positions and substantiating evidence along with argumentation from the previous Petitions and Appeals, and also including responsive briefing to the 2018 Appeal's Decision Letter and the legal positions taken therein, citing numerous new legal authorities in support of my rebuttal.  The 2019 Petition sought renewal of all previously granted accommodations and grant of all accommodation requests denied from the 2018 Petition and Appeal, except as amended to offer an additional substitution accommodation option to those options previously offered for the myofascial pain syndrome disability effects, which additional option the Iowa Board of Law Examiners had approved since the February 2019 California Bar Exam.  All expanded accommodation requests (requests other than those previously approved, which were renewed) were denied in a decision letter dated December 17, 2019 (the expanded permission to bring an adjustable height motorized sit or stand workstation granted did not match any request, as even the supplemental option addended to one of the requests matched the Iowa Bar Exam accommodation for <u>provision</u> of both such a workstation and an ergonomic chair of the Bar's choice; and since Applicant does not have access to such an item, is of even less assistance than the longstanding permission to bring his own chair).  In that decision letter ("2019 Decision Letter"), additional explanation of the denials was provided in the form of an expert opinion from one of the experts who had given an opinion to the Bar previously on the 2017 Petition and again on the 2017 Notice of Appeal (prior to the revised appeal statement and supplemental expert affidavits sent thereon, but received post-grant), though seemingly not on the updated information for the 2017 Appeal, the 2018 Petition, or the 2018 Appeal.

I timely appealed the 2019 Decision in an appeal dated 12/27/2019, accompanied by additional affidavits of Dr. Dresden (dated 12/19/2019), Dr. Clarke (dated 12/20/2019), and Dr. Goodman (dated 12/23/2019) (collectively, "2019 Appeal").  Attempts to obtain a further affidavit from Dr. Preston failed, as after submission I learned that Dr. Preston is now deceased; the practice he was a part of with Dr. Pinn permanently closed, and that Dr. Pinn now exclusively sees Medi-Cal patients in her present mission-based practice and was not reachable by Applicant.  In a decision letter dated 2/14/2020 ("2019 Appeal Decision Letter," as responsive to the 2019 Appeal despite dating in 2020), the 2019 Appeal was denied in its entirety.

This 2020 Petition seeks renewal of all previously approved accommodations and grant of those heretofore denied accommodations from the 2018 Petition, on the July 2020 California Bar Exam, in case of the event Applicant is unsuccessful on the last taken February 2020 exam

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

and retakes. Submitted herewith is yet another affidavit from Dr. Dresden responsive to the 2019 Appeal Decision Letter. Due to the lengthy shelter-in-place order and restrictions on types of medical appointments and causes therefor permissible due to the COVID-19 pandemic, none of the other specialists are available to write further in the timeframe to submit this Petition and still be able to appeal any denials therefrom prior to the July 2020 exam. I should not be penalized for this unforeseeable emergency situation.

Below is my response to the latest (2/14/2020) 2019 Appeal Decision Letter by the Committee and the reasons for denial contained therein. The contents of my past submissions, from most recent to least recent (2019 Appeal, 2019 Petition, 2018 Appeal, 2018 Petition, 2017 Appeal, and 2017 Petition) are incorporated by reference as if fully set forth herein.

1. Response to the General Reasons Asserted for Denial:

(A) That I failed the previous attempts was only ever argued to go to: (1) the proposition that even if I've passed other exams with different accommodations than sought instantly, whether the differences arose from different requests or because other testing agencies denied some of the accommodations I posit was legally required of them too, this does not mean even that same degree of handicap won't adversely affect the outcome of this (taken, pending results) February 2020 exam or didn't cause other harm to me and/or wouldn't adversely affect the outcome of any future bar exam, because it is possible to pass exams even if unlawfully handicapped from incomplete amelioration of an impairment to a certain degree for the reasons given by Dr. Dresden at p. 3 of his 12/19/2019 affidavit and at pp. 9-10 of my 12/27/2019 appeal statement, and so my passing another exam without a requested accommodation is not a valid basis for denial of that accommodation; and (2) that my performance on the failed exams, where I failed to finish parts of the written portions but not the MBE, corroborates the predictions of my experts that my autism disability impacts written sections more than multiple choice sections.

(B) Similar to (A), my position that the California Bar Exam is a harder exam than the Iowa counterpart as presented at p. 5 of my 2019 Petition Narrative is not a claim that more testing accommodations should be due on this basis, but rather was asserted to preempt exactly the kind of collateral inference from passing the Iowa Bar Exam with unequal accessibility to it that the Committee made in support of the reasons to deny the scheduling requests:

"You argue that you are entitled to greater accommodation in California than you received in Iowa because the California Bar Exam is more difficult to pass than the Iowa Bar Exam. Thus, you seem to be saying that your request for more accommodations for the CBX than for the Iowa exam is not because of medically necessary reasons, but rather because the CBX is a harder exam."

I am not requesting "more" accommodations for this reason (I did request more for California on account of facts like the location of the exam and the difference between whether the California and Iowa Bars offered hotel group rates to other applicants, as these facts impacted the standard for what accommodations were legally due under the ADA standards, and because I

3

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

was told others were already in place standard for Iowa without accommodation, such as the
proctor criteria and the limitation on test day length to that of a standard candidate), but rather
arguing against the inferences that were made based on my passage of the Iowa Bar Exam with
the accommodations granted for it, because sufficiency to pass a given exam and sufficiency for
equal access to the exam as that of nondisabled candidates are not the same thing, but the
likelihood of the latter's absence preventing passage is greater on a more difficult exam than an
easier one.

(C) While I believe I have in fact provided material "additional substantive information or
evidence of changed circumstances" in regards to at least the ergonomic workstation equipment,
and between the 2017 Appeal and 2018 Petition, the meal breaks, discretionary timing of breaks,
and proctor criteria/behavior, etc., even crediting the Committee's finding on this, it is not a
proper basis for denial for the reasons at pp. 11-12 of my 2019 appeal statement. The purpose of
appeals includes correcting errors, not merely reconsidering for new facts or circumstances. Nor
were all of these "prior" unchanged circumstances adequately addressed in the decision letters
for the February 2019 and February 2020 California Bar Exams for the reasons given in the
respective appeals.

(D) Any rights Applicant has from any of the legal authorities relied upon, including the Federal
and California Constitutions, Federal statutes, Federal regulations, and the California
Government Code, are not subject to abrogation by any admission rules promulgated, and
moreover, I posit that all of my disability accommodation requests have no facial conflict with
the criteria in Admission Rule 4.82(D), which seem largely drafted to generally mirror the
criteria prescribed by my cited legal authorities.

(E) You posit that in a hypothetical where all of my requests were granted, the exam components
would be split in ways they were not designed to be, create additional risk of cheating, allow
undue rest, and possibly create a conflict with NCBE rules:

"Your current testing schedule requires you to test Tuesday through Friday of one week. If you
were to be granted your requested timing and schedule in full (double time and one half, extra 30
minute breaks per 90 minutes of testing, 6.5 hours per day limit, weekends only), you would not
complete the exam until March 21, three and a half weeks after all standard applicants have
finished testing."

   Without exceeding 6.5 hours of test time (breaks and instructions not counted towards limit,
so session would exceed this, but such is consistent with Applicant's requests), in one day (for four
days) Applicant could complete one CBE question with 150% extra time over up to 2.5 hours,
pause the clock for one of the breaks and switch out prohibited MBE equipment such as the laptop
for MBE supplies with his proctor (who would hold the prohibited items in the next portion), and
after the break wait until the new instructions are given to restart the clock, then do 50 MBE
questions. 50 MBE questions with double time plus 30 minutes would be 3.5 hours, totaling 6
hours test time. After four days of this, one CBE question and the CPT would remain. Even with
150% extra time, 2.5 hours standard time + 3.75 hours extra time = 6.25 hours, still under the limit.
So, at most, 5 days would be required instead of 4 to provide the additional extra time and meal

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

breaks consistent with the test day limit, a 25% increase in the duration and 50% increase in the delay over standard from that of present approvals, hardly a fundamental alteration.  Applicant is aware that in the past the CBX was a 3-day test standard and sometimes the Committee approved accommodated testing over as many as 6 days.  Applicant would not object to limiting the effect of his requests to testing over no more than 6 days, but no fewer than 5 days.

Even adding in a requirement for weekend-only testing, then, for the previous exam it would have consisted of 2/29, 3/1, 3/7, 3/8, and 3/14.  Accordingly, the Committee's math was wrong in finding it would not complete until 3/21.  For the instant July 2020 exam, it could be 8/1, 8/2, 8/8, 8/9, and 8/15.  However, Applicant does note the purpose of weekend-only testing is defeated if the State Bar cannot grant it without an appeal, as by the time the decision on appeal is typically provided the medical logistics costs/adversity is already sunk, due to the lead time for the needed appointments.

"In addition, in order to administer the exam according to your desired schedule: (a) the exam components would have to be split up in ways they were not intended to be;..."

While the State Bar has not specified or explained past a vague allusion how the manner in which the exam would be split up to provide the requested accommodations would be contrary to design to the point of a fundamental alteration, Applicant can guess as to what may be alleged to comprise such, though disagrees that such a split amounts to a fundamental alteration or would have the degree of impact on the validity and integrity of the exam as was implied.  As established above, the exam components can be split in such a way that all of the requests could be provided <u>without</u> allowing any specific CBE, MBE, or CPT question to be completed over more than one test session (such that it can be re-accessed after leaving the secure test center, the seemingly purported issue with splitting sessions up differently).

"... (b) you would be getting significantly more rest time in between exam sessions, which would give you an advantage over standard applicants and, according to the Committee's psychometrician, since the scores that applicants receive are normative in nature (i.e., scaled to all other applicants who receive the same amount of rest), your scores might not be directly interpretable relative to the other applicants;..."

Applicant posits that the undisclosed expert opinion as to a possible advantage of rest (especially where, even if there is such an advantage, there is no explanation as to why the difference between a 1+ day break between sessions that Applicant is unlikely to be able to spend resting or even necessarily working on anything relating to the exam, which Applicant cannot afford to work on exclusively for weeks or months or do during medical appointments, would provide such an advantage past the refresh of a full night sleep - as with all candidates - that it'd outweigh the obvious disadvantages, such as that past studying would stay less fresh, let alone enough so to constitute the level of reliability impact as to be a fundamental alteration) does not constitute the amount of disparity to constitute a sufficient basis for a fundamental alteration claim.

Moreover, the State Bar's argument about interpretability of a curved test result where modifications due to measured disability accommodations might deprive a testing agency of

5

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the**
**July 2020 California Bar Exam**
**File No. 468532**

sufficient data of how similarly situated candidates would perform relative to each other for this kind of statistical analysis was unsuccessfully made by the Law School Admission Council (LSAC) in regards to whether they could publish LSAT scores of accommodated candidates with an asterisk (*) denoting a disclaimer about the reliability of the result for those reasons, and that wasn't even a dispute about whether this basis could be used to deny the provision of the accommodation, yet the LSAC ultimately had to discontinue the practice on compliance grounds. (Applicable authorities discussed in the exam scheduling request section below).

The State Bar has not disclosed its psychometrician's opinion and analysis in their own words to allow me and my expert(s) to better respond, nor why the above disadvantages and clear limitations on any possible advantage were weighed to the outcome they were.

"... (c) it is unknown whether the National Conference of Bar Examiners (NCBE) will allow the MBE to be administered over such an extended period of time;..."

The State Bar has not articulated any attempts to inquire of the NCBE what their position would be, and for that reason alone any issue of that kind is not a basis to deny any accommodation, and it is the Committee and not Applicant that is in a position of privity with NCBE to readily inquire about it. Similarly, the Committee has not articulated why all 200 MBE questions (on which Applicant is not seeking more extra time than has already been granted) could not be completed before starting the CBE/CPT (that NCBE is not involved with), which would allow for the MBE to be completed before any material delay past that of the already approved accommodations has occurred. Regardless, even if the NCBE objected, it also is a subject entity to Title II of the ADA, and for the same reasons the State Bar must accommodate Applicant, so too must the NCBE. No reason is articulated as to why any difference in when Applicant would complete the test would impose an undue burden or fundamental alteration upon the NCBE or MBE, and so there's no reasonably anticipatable legitimate/lawful objection from the NCBE. Even if an objection was made by the NCBE, to the extent it is illegitimate or unlawful, the Committee/State Bar has a duty as the entity solely responsible for the mandatory process for admission to the practice of law in California, that is vicariously liable for the disability law compliance of its contractors/vendors/facilities, to pursue such a dispute in my behalf and seek compliance.

"... (d) There is greater risk to exam security, given the potential for access to all of the exam questions and purported answers in advance, through their wide dissemination via blogs on the internet and other means..."

In regards to the concerns about cheating or security, the State Bar already requires Applicant to sign an affidavit that he will not seek out any information about the exam from such sources. Like Applicant, all other candidates for the exam must also sign an affidavit that they will not disclose information about the exam to others. These documents stress the consequences for breaching either pledge include disqualification from the exam, denial or reversal of moral character findings required for admission, attorney discipline (disbarment) if already admitted, civil liability, and criminal liability. Applicant's candor has already been found sufficient for a finding of good moral character, which is by clear and convincing evidence. Together, Applicant

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

posits this is a sufficient safeguard to establish at least a rebuttable presumption that if Applicant is granted accommodations extending the test period, he will not cheat. Applicant concedes there might be a cumulative increase in the risk of the opportunity to cheat the longer the test goes on, but without any evidence that Applicant will cheat, with the other remedies available, Applicant disagrees with the contention the slight cumulative increase in risk for opportunity in the totality of the circumstances amounts to a fundamental alteration defense to otherwise appropriate accommodations, where the alternative is an uneven playing field/unequal access to the exam on the basis of disability status.

"... All of these issues weigh heavily against granting such accommodations because they compromise the security and validity of the exam and the integrity of the exam process, fundamentally alter the nature of the exam, and impose an undue burden on the Committee, especially when the rationale and medical necessity for the requested accommodations are not adequately supported."

   Applicant posits that the State Bar misconstrues the procedural aspects of asserting these defenses and seems to conflate the burden of proof for rebutting a rebuttable presumption, which is what these claims are in the broader legal context.  (See 2019 Appeal Statement, pp. 24-25). This is discussed in detail below for the accommodation issue it was numbered under (exam scheduling requests), as is the above, but because they're not easily separable from the denials of additional extra time and meal breaks, they're addressed here to the extent above as well.

2.  Individualized Reasons Asserted for Denial of Additional Extra Time:

"You state in your appeal letter that the decision regarding the accommodations that you were granted for the July 2019 administration of the Iowa Bar Examination was based on the accommodations that you were granted for the California Bar Examination, yet the accommodations that you were granted for that examination were actually different from, although similar to, those granted for the February 2019 CBX, and were sufficient for you to pass that examination on your first attempt..."

   What I actually said in my appeal statement was that the Iowa Board relied on the California Bar decision in its decision not to grant more than double time, which is what the decision letter from the Iowa Board specified both from the Petition and in the decision responsive to my appeal to explain the continued denial, upon which appeal I had pointed out that their visual disability expert had recommended that his recommendation of 50% extra time for keratoconus not be additive to any extra time of at least 50% for autism explicitly because of my performance on the reading comprehension subpart of my 2014 neuropsychological testing report, which predates my acquisition of keratoconus, and so relied on a manifest factual misunderstanding, which eliminated that basis for denying more extra time yet did not change the outcome due to the original decision's "consistency with past exams" (according to the Iowa Board).  Consequently, relying on the Iowa Bar Exam decision in turn simply creates a circular loop that does not go to any facts as to the severity of my disabilities' effects.

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

As to double time being sufficient for me to pass the Iowa Bar Exam on my first attempt, please see 1. (B) above.

"... Your decision not to pursue the accommodations for the Iowa Bar Examination that you are now appealing for the February 2020 CBX suggests that these accommodations are, in fact, preferred, and not absolutely necessary based on your functional limitations..." (Emphasis Added)

I made no such decision not to pursue the amount of extra time sought on the California Bar Exam on the Iowa Bar Exam. To the contrary, I sought the same amount of extra time on both exams, and was partially denied that request (both initially and following an appeal, for the reasons explained above) on both exams. Nothing indicating the contrary exists anywhere in the record, so this assumption (without evidence) cannot be relied upon to deny me more extra time.

"... In addition, even though Dr. Dresden recommends more time, he has not actually evaluated and treated you for autism/Asperger Syndrome or visual problems. The specialists who have done so recommended from time and one-half to double time. Further, Dr. Dresden's opinions are very conclusory, particularly those related to accommodations for autism. There was no current functional limitation analysis provided to support the doctor's conclusions."

Dr. Dresden may not have repeated the same diagnostic testing the other experts had already done for these stable and permanent disabilities, but for both autism and visual disabilities he did provide an independent corroborating opinion, that also supplemented them as he responded to specific contentions or concerns of the State Bar in past process when the original experts were unavailable, to that of the others' opinions, which does bolster the overall credibility of both experts in the event of a conflict with the opinion of the State Bar's expert(s) (such as that an additional 30 minutes per session is adequate for the visual disabilities or that double time is adequate on the written sections for autism). Regarding the autism, while he may have relied on the pre-existing testing results, Dr. Dresden did review the raw data and analyze it to make independent interpretive evaluations of the "functional limitation analysis," and while he reviewed and considered that of Drs. Preston and Pinn, this part was not a conclusory ratification of either their premises or their end conclusions. He clarifies this in yet another affidavit, which is enclosed with this Petition/Appeal, but even his prior correspondence is sufficient to establish that:

"Those recommendations are based on my independent opinion from the test results taken by Drs. Pinn and Preston in 2014, which as prior to Mr. Kohn's acquisition of keratoconus and the GI conditions, are reflective only of the impairments caused by Mr. Kohn's autism and neuroprocessing disorder, and my opinion considers both their report as clarified by Dr. Preston's 12/5/2017 affidavit to you (and provided to me by Mr. Kohn) as well as my professional expertise and experience with patients with autism... that Mr. Kohn will need more time for written sections than for multiple choice sections, which has also been my understanding of the neuroprocessing delays autism causes."
(2019 Appeal Dr. Dresden Affidavit dated 12/19/2019, pp. 1-2) (Emphasis Added).

As to your finding that Dr. Dresden's opinions are "overly conclusive," it appears that your sole rationale for determining this is that he didn't repeat a full neuropsychological evaluation

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

personally, because he goes into detail about the reasons for the amount of extra time recommended.

Dr. Dresden has gone above and beyond to spend, on numerous occasions, several hours more time on this than the point where his practice gets further reimbursement from my insurance for longer time spent providing documentation, even for the State Bar of California alone. He has spent probably double that documenting disability accommodations for the multiplicity of public and private entities from which I need disability accommodations. Yet, he is still a primary care physician whose practice is designed for handling large volumes of patients for brief checkups and office visits, and is not ordinarily set up to be a medical expert opinion witness that drafts 10+ page academia-type reports. As Dr. Dresden is the most familiar with my medical situation as a whole, all others treating me for a subset of my very broad set of chronic medical issues, and the most available to respond without months of scheduling lead time, his opinions are valuable for outlining the holistic picture and cross-disability contraindications, and it's unreasonable to disregard his opinions just because he doesn't have the time to reinvent what the other specialists have provided where further detail from *an* expert is material, from scratch, into as detailed an independent report for all disabilities (even where, as for autism and the visual disabilities, he was not the only expert) as the specialists had for a single issue.

If the Committee is rejecting or according only minimal weight to Dr. Dresden's opinions just because he has not redone the "functional limitation analysis" himself to the extent of redoing the testing itself, where he's already opined he believes my autism has been stable since the ones that were already obtained at great cost (many thousands of dollars out of pocket and nearly 30 hours) (see 2019 Appeal Statement, pp. 26-27), then such a finding is clearly untenable and capricious. That cannot, consistent with the duty to provide "readily accessible accommodations" (see 28 C.F.R. § 36.309(b)(iv), 42 U.S.C. § 12148(a)(1), 42 U.S.C. § 12203(b), and California Government Code § 12944 *et seq*.), be the initial threshold standard of sufficient evidence before the State Bar has to at least rebut the *prima facie* case with evidence (See Also 2019 Appeal Statement, pp. 24-25). Maybe that can go to the weight, at most, where the facts discussed are actually in a genuine controversy and not a clerical one, and the State Bar has offered enough expert support to the contrary for a reasonable fact finder to weigh the evidence as against me on the directly at issue facts of the amount of extra time that would give me a level playing field for the effects of my autism and/or visual disabilities. To date, the State Bar's expert has not been able to rebut Dr. Dresden's general analysis or conclusions with any substantive medical expertise guided analysis (see my 2019 Appeal Statement at pp. 22-23). Setting aside their errors about what he did or did not say, their focus was only clerical.

Further, Drs. Pinn and Preston had practiced fee-for-service with the specialized focus of evaluating such disabilities for testing accommodations. They collectively spent 20 hours of face-to-face time on the initial rounds of testing, plus the time spent on the follow-up Nelson-Denny testing (both timed and untimed), plus the time to draft an 11-page report. For this, back in 2014, they charged $3,000 out of pocket.

Presently, Applicant doubts that getting such an extensive, in-person, psych-eval would be considered an essential purpose for the Santa Clara County shelter-in-place order, and it is

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

unknown whether the COVID-19 situation would even stabilize in time for me to seek an updated evaluation in time to seek disability accommodations for the next bar exam even were I able to afford it financially.

Even in ordinary conditions, my understanding of the present pricing near my location with new providers is that doing so would approach $10,000 out of pocket. To the extent I could not find a cheaper provider, I cannot afford to do this even if the State Bar had better cause to need an updated set of results, and the State Bar has a duty to set its procedures and proof standards for receiving accommodations such that accommodations are "readily accessible" to disabled persons (see above), not merely entertained for extraordinarily wealthy disabled persons able to noncontingently self-fund documenting their case to (or even past) the standards of a massive personal injury matter, both on points of law and on points of medical fact. Drs. Preston and Pinn themselves are unavailable to expand upon the evidence they've already offered, because, as I learned when attempting to get ahold of Dr. Preston for my last appeal after submission, Dr. Preston is now deceased. Due to Dr. Preston's demise, the practice permanently closed and Dr. Pinn is now working solely for a mission-based practice that only accepts Medi-Cal patients, even where a patient would be willing to pay out of pocket, neither a group I am presently part of.

I would, if asked timely for arrangements compatible with my schedule to be arranged, and the ongoing situation with COVID-19 allowing, submit to any psychological examination/evaluation by a local expert of the State Bar's choice the State Bar may direct, at the State Bar's expense, at least to the extent of any out of pocket portion were the expert willing and able to collect from my insurance.

Contrary to the State Bar's claim, however, none of my experts "who did evaluate me for autism and visual conditions" (Drs. Toren, Preston, Pinn, and Goodman to the extent Dr. Dresden is excluded for not doing the underlying testing personally) ever recommended less than double time, and that specifically for one or the other disability type to be added to what the other set recommends (explicitly stated as such by visual evaluator Dr. Goodman in his affidavit). As explained in the 2017 Appeal, the 2017 Petition Form C's reference to 50% extra time accommodations for autism by Dr. Pinn was to cite the LSAC's approval of that on the LSAT to support a general request for extra time, not to supplant the general double time base recommendation in their report, which predated the visual conditions and was consistent with past neuropsychological evaluations recommending double time by other evaluators during K-12 IEP testing. (See 2010 Dr. Toren neuropsychological evaluation). And, most importantly, in his 12/2017 affidavit for the 2017 Appeal, Dr. Preston (the now deceased primary evaluator for autism) himself reaffirmed the prior recommendations in the report itself (double time at the baseline/minimum) specifically for the CBX and subsequent to the Form C, and attested to the need for further extra time on written testing compared to multiple choice exams like the MBE part of the Bar Exam or the LSAT (the test his original report was geared towards).

"This letter is to confirm the results of a neuropsychological assessment of Benjamin Kohn... given his processing difficulties, Mr. Kohn will be able to respond more quickly to multiple choice responses as opposed to essay type responses. Mr. Kohn... required more than double the typical time to complete his neuropsychological assessment."

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

(2017 Appeal Dr. Preston Affidavit dated 12/5/2017).

My law school agreed that 150% extra time should be provided on written testing based on this as well (See 2018 Petition Updated Form F).

Accordingly, and perhaps most importantly, even without crediting Dr. Dresden at all, the State Bar has not granted what those specialist evaluators it claims to be relying upon have requested either.  Dr. Goodman requested 100% extra time added to anything granted for autism and any other non-visual disabilities; with the State Bar's latest position that the extra 30 minutes/session is for the GI conditions/meal break substitute, double time remains the amount of extra time for autism and the visual conditions combined, which is between half and less than half of the sum of what Drs. Pinn and Preston recommend for autism prior to acquiring keratoconus and what Dr. Goodman requests be additive to anything granted for autism based on the distinct visual functional limitations.  Moreover, to the extent 30 minutes per session is for GI conditions as stated now in this latest decision letter, it is also then less than even just double time for autism plus the minimal amount of extra time that the State Bar's own 2017 visual expert recommended for keratoconus, despite missing the issue of dry eye syndrome or inability to correct with glasses clarified later by Dr. Goodman (see 2019 Appeal Dr. Goodman Affidavit dated 12/23/2019), for the portion of extra time attributed to autism and visual disabilities.

3.  Individualized Reasons Asserted for Denial of Meal Breaks:

"Part of the explanation for this request is that the impairment of your fine motor skills slows your ability to cut your food into bite-sized pieces (per Dr. Clarke, gastroenterologist).  There is no explanation for why this couldn't be done in advance before coming to the test center...."

The primary explanation and basis for the request is that, separate from fine motor issues, severe gastroparesis slows digestion and causes uncomfortable gas-bloat (which cannot escape due to the surgical alterations to address GERD), or worse, regurgitation attempts that can take hours to resolve, which, to address, Dr. Clarke recommends that, instead of a singular larger lunch, Applicant distribute food intake over more time and reduce idle digestion time to allow for proper food intake relative to the slowed digestion.

The fine motor concern for bite-sized pieces addresses only a collateral issue, which reduces the reduction in time a meal will take despite the smaller size of a given meal that follows the guidelines of more frequent smaller individual meals (where given more frequent meal breaks).  Accordingly, the greatest impact even a hypothetical solution of pre-cut meals would have would be to slightly reduce the length of the meal breaks, not their frequency or the appropriateness of having more than one such break (for example, a 20-minute meal break every 90 minutes test time instead of a 30-minute break at that same frequency).  So even if there was no explanation, this would only be a basis to shorten the breaks, not to deny the request for meals to be spread over a less concentrated window of time.

Despite the limited relevance, the explanation for why the food might not necessarily already be cut into bite-sized pieces is the practical/logistical considerations of doing so.  Applicant, who

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

already has significant direct medical dietary restrictions without adding others, has a legitimate interest in the availability of a similar variety of fresh, healthy, and optimal performance supporting foods and beverages as other applicants may access unimpeded by the effects of disabilities or the State Bar's preferred method of accommodating those disabilities. Anything less would compromise the equal accessibility standard for the accommodation. Applicant so far has been required to stay in a hotel to access the exam with his chair, so this food must necessarily come from restaurants while they are open and able to fulfill a delivery with certainty of arriving outside exam hours and fairly close in time to when the food will be consumed. Logistically, it would be unreasonably burdensome on Applicant (and not even necessarily possible) to need to pre-cut the food between receipt and the time I am required to report to the test center.

"... In any event, although this request was not granted as phrased, consideration of an extra 30 minutes per session has already been granted."

I'd note that the additional extra time granted from the 2018 Petition of 30 minutes per session left it unclear until now that this was its basis, as the record best supported a grant of double time for autism plus 30 minutes per session for the visual conditions, considering that would match the recommendation for the visual conditions of the State Bar's 2017 Petition Visual Expert (See 2017 Decision Letter). Even if it was, 30 minutes per session is vastly less than the 30 minutes per 90 minutes of test time recommended by my expert, as addressed in greater detail within the 2018 Appeal Statement dated 1/6/2019, pp. 15-16.

"To the extent that the Bar Appeal Decision Makers, like the Bar Decision Maker, would prefer to grant additional extra time instead of this accommodation and just allow Applicant to eat and drink in the test room as desired while doing so counts against his testing time other than for the singular lunch break that does not require an accommodation, then it is Applicant's position that 30 minutes per test day is inadequate, as Applicant's doctors recommend that as many as three meal breaks would be needed during the length of testing the exam is presently at for MBE days and the first written portion day, and as many as four meal breaks for the second written portion day, and also considering that the fundoplication postoperative dysphagia and autism fine motor limitations slow Applicant's eating. If Applicant is granted on appeal the additional extra time he is seeking on the written sections of the exam for other reasons, then this would increase to five meal breaks for the first written portion day and six meal breaks for the second written portion day if they are not split over an additional two days, and two meal breaks per day for the first written portion days and three meal breaks per day for the second written portion days if they are split. Accordingly, as one meal break not counting against test time is allowed without an accommodation, the appropriate amount of additional extra time to grant for this disability, independent of the additional extra time addressed below for other disabilities, is an additional 60 minutes on each MBE day, 120 minutes on the shorter written day(s), and 180 minutes on the longer written day(s)."

Furthermore, if accommodating the GI conditions is the purpose of the additional extra time, it would mean that the State Bar is not providing extra time for the visual conditions, even to the extent recommended by its own experts (see above).

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

4.  Individualized Reasons Asserted for Denial of "Discretionary Lunch Breaks" (Start Times to Meal Break(s)):

"Dr. Dresden recommendation based on his review of reports from the autism specialists.  He does not, and has not been asked to, evaluate or treat you for autism."

See the above response in 2) and Dr. Dresden's new affidavit enclosed herewith as to the scope of Dr. Dresden's evaluations/treatment role, and the 2018 Petition Narrative dated 11/1/2018 at pp. 5-6 to note that the basis for this request is not limited to autism.

5.  Individualized Reasons Asserted for Denial of Exam Day Scheduling Accommodations:

"Your reasoning and your specialist's (Dresden, M.D.) recommendations, and the bases therefor, lack enough specificity to adequately evaluate the necessity for and reasonableness of these requests, balanced against whether such accommodations would (1) compromise the security or validity of the examination or the integrity of the examination process; (2) impose an undue burden on the Committee; or (3) fundamentally alter the nature of the examination.  Dr. Dresden's opinions and recommendations are conclusory and vague and not supported by medical documentation or testing."

Applicant posits that the State Bar misconstrues the procedural aspects of asserting these defenses and seems to conflate the burden of proof for rebutting a rebuttable presumption, which is what these claims are in the broader legal context.  (See 2019 Appeal Statement, pp. 24-25).

For purposes of the appeal governing the February 2020 California Bar Exam, this was an unlawful basis on both (2) and (3), and (1) is just another form of asserting (3) for purposes of which defense to a *prima facie* case it applies under.  Even as to a new exam and fresh Petition posture, without expansion before any appeal, the attempted assertions of Undue Burden and Fundamental Alteration would be procedurally inadequate as a matter of law, since it would fail to comply with the timeliness and assertion of resources considered in making the determination requirements, some of which are provided in 28 C.F.R. § 35.150 (See Also 28 C.F.R. § 35.130(b)(7)):

"... The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion.  If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity." (Emphasis Added).

Further, for the reasons latest asserted at pp. 3, 7-8 of the 2019 Petition Narrative, the standard for undue burden is not met just by some logistically complicated modifications or the need to expend several thousand dollars to provide an otherwise appropriate (per level playing field standard) set of accommodations.

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the**
**July 2020 California Bar Exam**
**File No. 468532**

"A government service that is mandatory for its purpose (i.e. obtaining a law license) in which the applicant has a significant legitimate interest, such as the instant exam, carries the highest threshold for the government to claim an undue burden, especially considering the comparatively vast resources of the State.  Moreover, again, the standard for the determination of an undue burden provided for under the A.D.A. statutes and regulations promulgated thereunder can only exceed, and not abrogate, those of constitutional due process and the test for which set forth in Matthews v. Eldridge, 424 U.S. 319 (1976) *et seq*. and cited above.  Where the State offers licenses to practice law, a legitimate interest, the process for obtaining such a license becomes subject to due process.  The process due must have appropriate safeguards to prevent erroneous deprivations of the protected interest.  Considering the legal posture of the ADA, denial of a law license due to unequal access to the Bar Exam would constitute an erroneous deprivation of the interest, so where (as here) Applicant has demonstrated that the existing system for special hotel rates results in unequal accessibility thereto, an undue burden at a minimum has to comprise a gross disproportionality between the cost Applicant's request would have on the State Bar's interests (at most the price difference for the hotel stay between the special rate and the hotel's list price) and Applicant's interest in getting a required law license after expending years and hundreds of thousands of dollars in pursuit of a career therein..."
(2019 Petition Narrative, pp. 7-8).

    And, for all three of the State Bar's assertions, Applicant notes that (like with affirmative defenses), it is the State Bar's burden to prove and establish these claims, not Applicant's to show that the need is so much greater than the equal accessibility standard that the assertions are disproven by me.  Dr. Dresden's opinion, once sufficient to establish the general elements of disability and adverse effects on the subject exam that could be ameliorated by a proposed accommodation, does not have to be nearly so detailed and exhaustive as the State Bar suggests before a rebuttable presumption forms and the burden shifts from Applicant to the State Bar, as here.  Dr. Dresden's opinion and Applicant's previous narratives established some of what was claimed to be missing, and for the rest, there are good reasons for Dr. Dresden's opinion to omit those details for reasons discussed in greater depth below, either because they are unknowable until close enough to the exam that there is no longer enough time to seek accommodations, or for some of the reasons about the practice-model and time constraints Dr. Dresden is under when providing documentation discussed above.

    Applicant posits that neither the undisclosed expert opinion as to a possible advantage of rest (especially where, even if there is such an advantage, there is no explanation as to why the difference between a 1+ day break between sessions that Applicant is unlikely to be able to spend resting or even necessarily working on anything relating to the exam, which Applicant cannot afford to work on exclusively for weeks or months or do during medical appointments, would provide such an advantage past the refresh of a full night sleep - as with all candidates - that it'd outweigh the obvious disadvantages.  Such disadvantages include the issue that past studying would stay less fresh, so it is questionable whether a net advantage even exists, let alone enough so to constitute the level of results reliability impact as to be a fundamental alteration, nor does the speculation about what (irrelevant, for reasons discussed later) objections the NCBE may or may not even have (but the Committee was in the best position to ascertain, yet chose not to) about the

14

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the**
**July 2020 California Bar Exam**
**File No. 468532**

delay in completion of the MBE, comprise the amount of disparity to constitute a sufficient basis for a fundamental alteration claim.

   Moreover, the State Bar's argument about interpretability of a curved test result where modifications due to tailored disability accommodations might deprive a testing agency of sufficient data of how similarly situated candidates would perform relative to each other for this kind of statistical analysis was unsuccessfully made by the Law School Admission Council (LSAC) in regards to whether they could publish LSAT scores of accommodated candidates with an asterisk (*) denoting a disclaimer about the reliability of the result for those reasons, and that wasn't even a dispute about whether this basis could be used to deny the provision of the accommodation. Yet, the LSAC ultimately had to discontinue the practice on compliance grounds. See Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council Inc, No. 12-cv-01830-JCS, 2015 U.S. Dist. LEXIS 104751 (N.D. Cal. Aug. 7, 2015); See Also Dep't of Fair Emp't & Hous. v. Law Sch. Admission Council Inc., No. 12-cv-01830-JCS, 2018 U.S. Dist. LEXIS 35738 (N.D. Cal. Mar. 5, 2018).

   The State Bar has not disclosed its psychometrician's opinion and analysis in their own words to allow me and my experts to better respond, nor why the above disadvantages and clear limitations on any possible advantage were weighed to the outcome they were.

   The State Bar has similarly not articulated any attempts to inquire of the NCBE what their position would be, and for that reason alone any issue of that kind is not a basis to deny any accommodation, since it is the Committee and not Applicant that is in a position of privity with NCBE to readily inquire about. Similarly, the Committee has not articulated why all 200 MBE questions (on which Applicant is not seeking more extra time than has already been granted) could not be completed before starting the CBE/CPT (that NCBE is not involved with), which would allow for the MBE to be completed before any material delay past that of the already approved accommodations has occurred. Regardless, even if the NCBE objected, it also is a subject entity to Title II of the ADA, and for the same reasons the State Bar must accommodate Applicant, so too must the NCBE. No reason is articulated as to why the difference in when Applicant would complete the test would impose an undue burden or fundamental alteration upon the NCBE or its MBE, and so there's no reasonably anticipatable legitimate/lawful objection from the NCBE. Even if an objection was made by the NCBE, to the extent it is illegitimate or unlawful, the Committee/State Bar has a duty, as the entity solely responsible for the mandatory process for admission to the practice of law in California and vicariously liable for the disability law compliance of its contractors/vendors/facilities (see 28 C.F.R. § 35.130(b)(1)), to pursue such a dispute in my behalf and seek compliance.

   While the State Bar has not specified or explained past a vague allusion how the manner in which the exam would be split up to provide the requested accommodations would be contrary to design to the point of a fundamental alteration, Applicant can guess as to what may be alleged to comprise such, though disagrees that such a split amounts to a fundamental alteration or would have the degree of impact on the validity and integrity of the exam as was implied.

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

Presently, the test is divided into "Day 1 AM portion," "Day 1 PM portion," "Day 2 AM portion," and "Day 2 PM portion." Two of these are comprised of 100 MBE questions, an easily divisible unit without prejudice to the design of the exam. The UBE (i.e. Iowa) receives from the NCBE test books of 50 questions each instead of 100 for accommodated testing since they do not secure lunch areas, so Applicant knows this is available. The remaining two Applicant concedes are slightly more complicated to split, but so long as no single CBE essay question or the CPT is given/split over more than one test day (such that it could be answered after Applicant has left the secure test center area), Applicant does not find a material difference in the security, integrity, or validity of the exam.

For example, without exceeding 6.5 hours of test time (breaks and instructions not counted towards limit, so session might exceed this, but such is consistent with Applicant's requests), in one day (for four days) Applicant could complete one CBE question with 150% extra time over up to 2.5 hours, pause the clock for one of the breaks and switch out prohibited MBE equipment such as the laptop for MBE supplies with his proctor (who would hold the prohibited items in the next portion), and after the break wait until the new instructions are given to restart the clock. 50 MBE questions with double time plus 30 minutes would be 3.5 hours, totaling 6 hours test time. After four days of this, one CBE question and the CPT would remain. Even with 150% extra time, 2.5 hours standard time + 3.75 hours extra time = 6.25 hours, still under the limit. So, at most, 5 days would be required instead of 4 to provide the additional extra time and meal breaks consistent with the test day length limit. Applicant is aware that in the past the CBX was a 3-day test standard and sometimes the Committee approved accommodated testing over as many as 6 days. Applicant would not object to limiting the effect of his requests to testing over no more than 6 days, but no fewer than 5 days.

Even adding in a requirement for weekend-only testing, then, for the previous exam it would have consisted of 2/29, 3/1, 3/7, 3/8, and 3/14. The Committee's math was wrong in finding it would not complete until 3/21, so for this reason too both the security and NCBE objection claims are even weaker. For the instant July 2020 exam, it could be 8/1, 8/2, 8/8, 8/9, and 8/15. However, Applicant does note the purpose of weekend-only testing is defeated if the State Bar cannot grant it without an appeal, as by the time the decision on appeal is typically provided the medical logistics costs/adversity is already sunk, due to the lead time for the needed appointments.

Lastly, in regards to the concerns about cheating or security, the State Bar already requires Applicant to sign an affidavit that he will not seek out any information about the exam from such sources. Like Applicant, all other candidates for the exam must also sign an affidavit that they will not disclose information about the exam to others. These documents stress the consequences for breaching either pledge include disqualification from the exam, denial of moral character required for admission, attorney discipline if already admitted, civil liability, and criminal liability. Applicant's candor has already been found sufficient for a finding of good moral character, which is by clear and convincing evidence. Together, Applicant posits this is a sufficient safeguard to establish at least a rebuttable presumption that if Applicant is granted accommodations extending the test period, he will not cheat. Applicant concedes there might be a cumulative increase in the risk of the opportunity to cheat the longer the test goes on, but without any evidence that Applicant will cheat, with the other remedies available, Applicant disagrees with the contention the slight

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

cumulative increase in risk for opportunity in the totality of the circumstances amounts to a
fundamental alteration defense to otherwise appropriate accommodations, where the alternative is
an uneven playing field/unequal access to the exam on the basis of disability status.

"You state that you did not request weekend-only testing in Iowa for financial reasons. This makes
questionable your other statements that weekend-only testing is necessary for you due to medical
appointments... You argue that you need to test on weekends only because you cannot possibly
miss medical appointments (that can only be on week days) for a full week, yet you did so for the
Iowa Bar Exam. While that schedule may not have been your preference, you were in fact
successful on that exam. There is no documentation from your treating specialists that this
experience in Iowa in July 2019 created any medical issues for you."

I will address most of this below, but there's a spectrum of degree between strict absolute
"necessity" and equal accessibility for a level playing field where the adverse effects are due to a
medical impairment impacting major life activity, and the law prescribes the latter standard (See
2019 Appeal Statement, pp. 24-25).

The schedule provided on the Iowa Bar Exam in July 2019 did impact the equal accessibility
of that exam, but for the reasons in my 2019 Appeal at p. 19, unlike for an exam located that much
farther from my residence, there is an accommodation that does not constitute the fundamental
alteration of an extra-jurisdiction venue or impose upon me dire financial hardship.

"I did not request this accommodation there on account of the location of the exam, in Iowa, with
any change to such clearly a fundamental alteration. I could not have afforded the travel
expenses of a several weeks long trip to Iowa, nor of multiple weekend trips, and so I decided
that the unequal accessibility the business day testing would cause due to its impact on my
medical scheduling would not be avoidable by reasonable accommodation, and I could not
access the exam at all without enduring such." (2019 Appeal Statement, p. 19).

This does not change the underlying medical reasons for the accommodation that the law
requires accommodation for in certain circumstances (such as those in California), but not in other
circumstances (such as those in Iowa). The key distinction is upon whom the law places the risks
and burdens. Because in the Iowa Board's position of providing an exam located thousands of
miles from my residence, there was no accommodation possible to provide me equal accessibility
(ability to access without either encountering adverse disability effects or me spending materially
more money than other applicants to avoid that) that the law wouldn't have provided a defense to,
while the California Bar Exam is offered close enough to my residence that there is such an
accommodation possible without, I posit, rising to the standards for the defenses, and so I posit I
am entitled to equal accessibility. The presence of unequal accessibility does not require that I am
necessarily medically unable to do the weekdays schedule. As stated in my 2019 Appeal
Statement:

"Applicant notes that the Expert's implication that medical necessity is a required element to
create the statutory right in "aid" (disability accommodations) is incorrect. To the contrary, all
Applicant need show for a threshold presumption in his favor that the accommodation is

17

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

reasonable and must be provided is that the proposed accommodation addresses adverse effects
for or from taking the exam due to the disability (mental or physical impairment substantially
limiting at least one major life activity) and is as reasonably proportional as is possible to the
magnitude of amelioration to put Applicant at as little a disadvantage compared to people
without such impairment. Even upon such, at the proper stage of considering the request the
State Bar can rebut that presumption, such as by establishing fundamental alteration or undue
burden. However, to reach the *prima facie* threshold where the presence of disability is already
undisputed, Applicant need only establish adverse effects relating to the exam with that disability
and articulate how the proposed accommodation would mitigate such effects and be reasonably
measured where possible to creating a level playing field. Not that Applicant couldn't possibly
attempt the exam without such accommodation or even that Applicant couldn't possibly pass the
exam without the accommodation, and/or not that Applicant would suffer grievous injury should
the accommodations not be provided. If the cause is the disability, and the effect is going to be a
barrier (whether performance impairments on the exam not relating to actual knowledge of the
subjects tested, avoidable uncomfortable medical symptoms, financial, or otherwise) to equal
accessibility as compared to an examinee without any disability, aid is presumed mandatory
subject to specific legal defenses even if the absence of that aid would not be insurmountable to
the outcome sought. Absolute necessity is too high a bar for the intent of Congress. And to the
extent that the State of California has prescribed additional aid for a different or lesser threshold
test, Applicant had asserted such rights in the 2019 Petition pursuant to California Government
Code § 11135 *et seq.* and any other applicable California statute.  This doesn't mean that
Applicant is entitled to anything he wants just because he is disabled. If the "preference" bears
no rational relationship to addressing the effects of the disability or is grossly and unnecessarily
disproportional to them, for example, provision of that would not be required. Yet, "optimizing"
the testing experience for the adverse effects of the disability to be as mitigated as possible for
equal accessibility, and not merely to the minimum required for strict accessibility, is the correct
guideline for what should be granted, the Expert was wrong to claim otherwise, and the Expert's
recommendations cannot be found reliable unless and until this mistake of law is no longer relied
upon." (See 2019 Appeal Statement, pp. 24-25).

"You argue that you are entitled to greater accommodation in California than you received in Iowa
because the California Bar Exam is more difficult to pass than the Iowa Bar Exam.  Thus, you
seem to be saying that your request for more accommodations for the CBX than for the Iowa exam
is not because of medically necessary reasons, but rather because the CBX is a harder exam."

  Again, please see 1. (B) above.

"You have not offered any specifics as to what medical appointments you might need to attend
during any given week, let alone a willingness to cluster those appointments or to minimize them
(or what the effect of doing so might be) in order to take the CBX during the week.  At no point
does anyone explain what the appointments are for, how long they are, what day of the week and
time of day do they happen, etc.  Rather, Dr. Dresden states in conclusory terms without any
specifics, that "weekend testing is recommended because there is a near certainty of Mr. Kohn
needing an average of multiple medical appointments per weekday average, some requiring
scheduling at specific intervals relative to each other, to collectively treat his extraordinary number

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the**
**July 2020 California Bar Exam**
**File No. 468532**

of chronic health issues... Dr. Dresden also states that your testing during the week would be a burden to your medical providers, which is not a basis for granting testing accommodations."

   The State Bar seems to assume that a burden on my medical providers would not result in adverse impact to me that could deprive me of equal accessibility. Sometimes that may be true, but some providers are more accommodating than others, and some medical situations are more able to be worked-around than others or to do so with less impact on insurance/billing/cost issues. If a provider refuses to provide appointments that don't conflict with the bar exam, which with months of planning and collaboration (for major surgeries needed as soon after the July 2018 exam as possible, 20+ business hours was spent trying to reach the appropriate persons at and arguing with – causing missed bar prep course time – Stanford Health Care to allow the surgery to proceed in time to avoid irreparable medical harm without missing the exam, after the original surgeon changed his vacation schedule midway through the summer prep course, and they very nearly refused to accommodate this; even once they did, a preliminary endoscopy operation scheduled the Monday after the exam and needed to safely do the main fundoplication/pyloroplasty surgery on time (the following week) was cancelled by voicemail due to other doctor vacation preferences during the July exam, and I barely was able to get them to reschedule it with a different doctor in time without being able to call at length during their business hours during the exam days) has only happened (as opposed to nearly happened) to date on less essential (but still needed for equal accessibility) health care. Nonetheless, it is discriminatory to put Applicant in the position where the risk is needlessly so high due to disabilities, as any future exam could be the one where nearly becomes actually, and the probability of this is higher than the "mere hypothetical" for conditional issues.

   What wasn't separately above "mere hypothetical" in probability of occurrence during a specific week and thus was conditional, was Applicant's chronic oral apthae, but nonetheless a particularly painful and distracting mouth ulcer that adversely affected my performance on this last February 2020 California Bar Exam could have been treated such that it wouldn't have had that degree of symptoms for the exam had I business hours availability sufficient to see the appropriate specialist and have it cauterized by laser or silver nitrate without trying to report to urgent care the day before the exam was to start and expose myself to such a disastrously-timed potential case of flu or COVID-19.

   Applicant cannot fully predict to what extent which appointment needs will fall into which category sufficiently far in advance to disclose that with certainty to the State Bar during the Petition process, but he is vastly more confident than a "mere hypothetical" in the probability that the specifics of those issues most pressing then is more likely to be addressed prospectively with a good outcome were the test scheduled only for weekend days. And, the burden that even the best case imposes includes, as the State Bar points out, needing to "cluster" or "minimize" appointments around the exam, which, like with the extremely time consuming process and degree of documentation the Committee demands to even consider providing disability accommodations in violation of "readily accessible" accommodation duties under 28 C.F.R. § 36.309(b)(iv), 42 U.S.C. § 12148(a)(1), 42 U.S.C. § 12203(b), and California Government Code § 12944 *et seq.*, has increased the length of disruption to both my professional and medical needs around and following the exam. It is difficult to quantify the full extent this prejudices my treatments, and it

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

certainly places a burden on me that diminishes the equality of the exam's accessibility even where medical prejudice is averted at great time and monetary cost, but it does prevent me from accessing the recommended treatment regime in terms of physical therapy (which I'm recommended to have 5-9 times per week over several prescriptions for different issues at different clinics, each PT appointment ~1.5-2 hours including driving time and administrative issues), throw off the timing of my allergy immunotherapy (~ 1.25 hours + driving and scheduling/billing admin time every 28 days) and specialty biologic medication in-clinic injections (~ 2 hours + driving and scheduling/billing admin every 21 days) that are supposed to be taken at specific intervals and not at the same time, makes working with clinic schedulers, pharmacies (for over 20+ ongoing prescription meds, many esoteric or specialty), and insurers, during their respective hours, challenging, and delays access to visits with my more than a dozen specialist across about 9 practice groups. It has also caused me to delay essential surgeries by months. No one expert could detail this for you. To document the whole situation through experts would take me a year of visits to collect affidavits from over a dozen doctors, as I see some more frequently than others. And they certainly couldn't all specify in March exactly what will be needed a specific week in July, other than that many things will collectively be due any given week.

6.  Individualized Reasons Asserted for Denial of Guaranteed Fully Private Test Room:

"You were granted a "distraction-reduced, semi-private room" for the Iowa Bar Exam, which was all you needed to pass that exam on your first attempt."

    I was denied a guarantee of a fully private test room on all taken bar exams to date in both jurisdictions (the Iowa Board no doubt influenced by the California Committee's precedent), and yet provided a fully private room operationally despite this on all taken bar exams in both jurisdictions to date. No inferences about the extent to which I need a private vs. semi-private room based on my performance on past exams can be drawn until one or more of those exams is *actually* taken and passed in a semi-private room. And again, more generally, the conditions of my successful Iowa Bar Exam do not conclusively establish equal accessibility had been provided on that exam or will be provided on the California Bar Exam with the same or similar accommodations (see I. (B) above).

7.  Individualized Reasons Asserted for Denial of Provision of the Ergonomic Equipment or Offered Substitutes:

    In his 12/19/2019 affidavit at pp. 3-4, Dr. Dresden recommended:

"Mr. Kohn acquired myofascial pain syndrome subsequent to the SAT. He requires physical therapy three to five times per week along with regular chiropractic and osteopathic treatments to manage the symptoms sufficiently to avoid substantial loss of productivity and significant impairments of his quality of life. When this treatment lapses for several consecutive days or more, he experiences severe flare-ups. This condition can be further aggravated by high levels of stress or anxiety, and by spending long periods of time in a sitting posture, reading, or using a computer, especially without the ergonomic setup he uses for home, study, and work. The Bar Exam requires suspension of ordinary treatment due to the need to take the exam at a substantial

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the**
**July 2020 California Bar Exam**
**File No. 468532**

distance from his established providers, without any long periods of uninterrupted time during business hours, over several consecutive days, and then places him in conditions that inevitably will maximize the exacerbation of his disability.  The symptoms he may experience will likely impair his ability to perform as well as he would otherwise be capable on the exam, and the extra sensory sensitivity people with autism experience would amplify these effects and greatly increase the concentration difficulties he would experience from that quantified on the neuropsychological testing.  Exams not only subject him to the aggravating factors, but require heightened sustained mental focus and consistent productivity compared to ordinary work or study, and preclude the use of ordinary medications Mr. Kohn takes, such as Gabapentin, due to the need to avoid cognitively-dampening or drowsiness-inducing side effect risk.  The increase in these symptoms from the sitting and computer-use postures can be partially ameliorated by using an ergonomic setup, including those components I've described previously and an adjustable height sit-or-stand desk like the Iowa Bar provided.

There is a spectrum of postural support available from standard chair to "office chair" (typically equipped with a padded seat and back rest along with arm rests) to "ergonomic" office chair (typically with variations in the shape and viscosity of the back and sometimes the seat to provide lumbar and thoracic support) to the ergonomic office chair with dynamically adaptive full spinal support, which uses a matrix of small panels and mechanical devices on both the back and seat to provide disk by disk support along the entire spine and distribute one's weight evenly no matter what part of the chair is sat on or what angle the user leans into it from, allowing the user to vary seat positions without any loss of support.  I recommend the latter, equipped on the Herman Miller Embody Chair, and using an ordinary desk I believe this would be necessary to put him anywhere close to as equal a position to others without such disability as can be done compared to any alternative, but agree with the Iowa Bar that an ergonomic office chair with just the shape and viscosity to provide lumbar and thoracic support might be adequate were he also to be provided a motorized adjustable height sit-or-stand desk.  The LSAT, GMAT, MPRE, college exams, and law school exams differ from the Bar Exams for purposes of addressing myofascial pain syndrome due to the differences in the uninterrupted length of the exam time spent in a sitting or computer work posture, the need to suspend his routine physical therapy treatment when he needs it the most due to the lack of business hours availability for such appointments on exam days for so many days in a row and from being away from home and his providers

In short, Mr. Kohn would be risking harm to his health if he took an exam lasting longer than six hours or longer than four hours per day for two or more consecutive days without access to the ergonomic equipment requested, and at any length (but increasingly so the longer the exam and with an interruption of physical therapy) this condition will otherwise have symptoms that would impair performance and speed on the exam past that already present from other disabilities."
(12/19/2019 Dr. Dresden Affidavit for 2019 Appeal, pp. 3-4).

    The Committee offered the following "explanation" of the denial of the above:
"For the Iowa Bar Exam, you were provided with "a testing station containing tables of differing heights to allow him to take the exam in either a seated or standing position" and "a cushioned office chair."  You were explicitly denied "a specific chair such as a Herman Miller Embody desk chair," but given "permission to bring in a different chair of his own choosing."  You were also

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

"permitted to bring appropriate neck and/or torso braces" and your own external keyboard and mouse.  In your appeal letter, you conceded that this would be an adequate substitution.  Dr. Dresden states that you need the expensive complicated ergonomic that you've requested, including the Herman Miller Embody chair, but that the accommodations that the Iowa Bar Examiners provided were sufficient, as they provided a sit-to-stand desk and a padded adjustable office chair.  You have already been granted the ability to bring the items you requested into the examination room." (Emphasis Added).

    While the above correctly recites the contents of the approval letter from the Iowa Board, on the exam itself they implemented this substitute accommodation grant for the Herman Miller Embody Chair request they denied by providing both a wheeled desk that could move its height to any precise degree up or down through motorized adjustability controlled by up and down buttons, and an ergonomic office chair that had all of the relevant features except for the dynamically adaptive full spinal support described by Dr. Dresden in his 12/19/2019 affidavit (e.g. what Dr. Dresden labeled an "ergonomic office chair" therein).  Not all arrangements matching the description that they approved would be adequate, but as noted in my 2019 Petition and 2019 Appeal, what was provided for the Iowa Bar Exam, and then requested in the 2019 Petition as a possible substitute accommodation, was adequate.  The Committee's point with that fact about my concession on the adequacy of that accommodation, however, is unclear to me, since it did not elect to provide what the Iowa Board provided any more than any of the other three options Applicant requested previously, since the 2018 Petition (for the other three options), and since the 2017 Petition as to provision of the Herman Miller Embody Chair (or another chair with all relevant features thereof).

     Importantly, on all four taken bar exams across both jurisdictions, so far Applicant has only not suffered medical or performance harm because Iowa provided adequate equipment denied by California, and on the California attempts (including this last one, after finally obtaining a better rate than before offered on the hotel room at my own expense, after much uncertainty as to my ability at time of submission; although the more bar exam attempts I have to finance with debt before getting a California license, the less able and inclined I will be to continue to stay in the hotel, and thus access the exam without the greater accommodation sought), I did bring my own Herman Miller Embody Chair and so a sit-to-stand desk was not necessary.

     Even so, that I have had to expend enormous resources on 5 nights of hotel stay during popular dates over three attempts (15 nights to date), needing to stay another 5-6 nights, not to mention the dependency on moving assistance, is a burden vastly higher than the level playing field equal accessibility standard the law prescribed.  As stated at pp. 17-18 of my 2019 Appeal Statement:

"Permission to bring is not sufficient to ensure access to the equipment for the exam.  I am unable to independently transport the chair physically, as corroborated by my expert(s), and do not have a vehicle that fits it fully assembled.  I do not own or have access to an adjustable height motorized sit-or-stand desk, nor would I have had any more ability to transport that.  The punctuality constraints and lack of a margin for error or delay for any agency issues with regards to the performance of third parties on the exam days themselves prevents the feasibility even of securing the services of a mover both ways on each day of the exam, or on exam days, nor would

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

imposing upon me the burden of acquiring such provide me equal accessibility.  I can maybe do
so as a courtesy the days before and after testing, but this would require me to stay in the hotel
the test is held in, as I've done previously.  To require that I do so at my own expense and my
own responsibility to ensure availability would not be providing me equal access to the exam as
compared with someone without such disability.  I have been as flexible as possible on this issue,
offering the State Bar four different options for accommodating this issue, of which provision
was one, storage from orientation check in to the test and between test sessions and immediately
following the exam until the next day if needed with the Bar's acceptance of responsibility for
my equipment being another, the iteration on which equipment is to be provided that worked for
the Iowa Bar being another, and the provision of the hotel room being another.  Only one is
required.  I have been even more flexible in the past, by staying in the hotel at my own expense
and arranging moving assistance for the chair before and after the exam, but I should not have
been required to do so then and this is therefore not a basis for requiring me to do so now.

    Again, I do not need to establish that the medical basis is new or worsened since the last
submission to challenge the propriety of past denials, and I am allowed to submit new evidence on
appeal.  I not only have done so for this appeal, but I submitted highly probative new evidence in
the 2019 Petition for this accommodation than that before: the approval of provision of the
ergonomic equipment to include the specific chair at issue by FINRA, and the provision of
alternative equipment by the Iowa Board that I conceded would be an adequate substitution if
elected here.  Those approvals make the California Bar the only testing agency from which this
accommodation has been requested to deny it.  The Expert complains of inadequate explanation
for why accommodations requested here, perhaps including this one, were not provided on the
SAT, LSAT, in college, or in law school.  It was not requested for those tests.  The disability on
which it was based was not yet present for the SAT.  As Dr. Dresden explains in greater detail in
his affidavit for this appeal, the access to my normal physical therapy treatment is not impacted by
those exams, given for part of one day and not depriving me of sufficient business hours
availability or requiring relocation from where my established providers are, and the California
Bar Exam's length and conditions expose me to greater symptoms from my disabilities than would
those other exams, increasing the importance of better support than is offered standard."
(2019 Appeal Statement dated 12/27/2019, pp. 17-18).

        Then, as now, I should not have been required to do what I did then and this is therefore not a
basis to require me to do so now.

    At p. 28 of my 2019 Appeal Statement, I added:

"The ADA, California Government Code, and implementing regulations such as 28 C.F.R. §
35.130(b)(1) and 28 C.F.R. § 36.309(b)(iii) requires equally accessible facilities to be provided at
the burden of the subject entity.  Similarly, 28 C.F.R. § 36.303(b)(3) requires the acquisition or
modification of equipment to ensure equal accessibility for disabled persons.  Read together, there
is clear intent for the suitability of onsite furniture for a disability to be the responsibility of the
subject public entity.  Even were it not, the actual burdens, financial and otherwise, to providing
the equipment himself would be a barrier to accessing the exam grossly above that of an examinee
without such disability.  Accordingly, upon a finding that the ergonomic equipment is an

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

appropriate accommodation, at least the nonportable furniture part of that equipment must be
provided by the State Bar, unless one of the courtesy substitutions offered is elected instead."
(2019 Appeal Statement dated 12/27/2019, p. 28).

8.  Individualized Reasons Asserted for Denial of Equal Access to Hotel Group Rates for Disabled
Applicants:

"You argue that providing you with a hotel room in this manner does not constitute a "fundamental
alteration" to the State Bar's services because it would only require "negotiating supplemental or
revised terms with the hotel that allow for equal accessibility or else compensating for the failure
to have done so."  However, the State Bar does not offer as part of its "services" the provision of
hotel rooms for applicants, whether at discounted group rates or otherwise.  Hotel room
arrangements are to be handled with the hotel directly, as the hotel has sole control over how many
rooms they provide at any particular rate."

The State Bar/Committee conflates which accommodation request the referenced arguments
pertained to.  There are two accommodation matters pertaining to equal access to a hotel room:
(1) The issue of the group rate the State Bar negotiates for all applicants (e.g. that it be negotiated
for all nights pertaining to my exam test sessions as provided to other applicants with more
standard test schedules, and that the State Bar act to preserve availability for Applicant through
the more extended timeframe the disability petition process creates to have a confirmed test center
assignment and test schedule); and (2) the substitute accommodation for the provision of a hotel
room for the nights noted at the State Bar's cost and responsibility for availability that was offered
as one of the four myofascial pain syndrome options, instead of provision of the ergonomic
equipment, and as a courtesy; Applicant agrees that the latter is not independently required by
disability law, but posits that provision of the ergonomic equipment is so required, for the reasons
above and in my past submissions, so as I believe the room would allow me to bring my own chair
at less cost to me, I offer to exchange what I posit to be a legal right for an alternative the State
Bar is not otherwise mandated to provide, if that substitution is the State Bar's preference.  So long
as the State Bar decides the Petition while it still has the *ability* to transact what it needs with the
hotel for (1), the requests are independent of each other; though Applicant noted before that
provision of a hotel room would be appropriate upon the State Bar's delay in approving the group
rate request resulting in an avoidable loss of that option.  The legal arguments referenced by the
Committee were made in the 2019 Petition Narrative Statement, pp. 6-8, as responsive to the 2018
Appeal Decision's explanation for denial of the former, a request first made in the 2018 Petition,
not the requested accommodation of the latter (2) the Committee attributes it to.

Any position that the State Bar does not offer as part of its services a negotiated rate for
applicants for hotel rooms at test center hotels is belied by written statements on the State Bar's
own website[1] to the contrary, oral conversations with both State Bar Staff and Hotel Staff, and past
experience seeking a hotel room for the test center hotel that I believe to be the likely test center
assignment and for the dates available (which has been a subset of the nights needed for my

---

[1] http://www.calbar.ca.gov/Admissions/Examinations/California-Bar-Examination/Hotel-Information and
http://www.calbar.ca.gov/Admissions/Examinations/California-Bar-Examination/Testing-Accommodation-Hotels

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

accommodated test schedule, unlike the experience of other applicants), but I request this option for all nights needed and a guarantee of availability if my prediction about the test center assignment does not come to pass and the room I reserve does not correspond to my test center.

As for the hotel having sole control over the availability and rates for rooms, 28 C.F.R. § 35.130(b)(1) provides:

"A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability—

(i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;

(ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

(iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others;

(iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is pro- vided to others unless such action is necessary to provide qualified individuals with disabilities with aids, bene- fits, or services that are as effective as those provided to others;

(v) Aid or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;

(vi) Deny a qualified individual with a disability the opportunity to participate as a member of planning or advisory boards;

(vii) Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service."

Accordingly, as 28 C.F.R. § 35.130(b)(1) expressly extends all equal accessibility accommodation duties to services the subject governmental entity (State Bar of California) contracts for from third parties with the purpose of providing services, programs, activities, or events, the State Bar is vicariously responsible for ensuring that arrangements with third (including private) parties for facilities facilitate equal accessibility.

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

9.  Individualized Reasons Asserted for Denial of Assignment to Proctor That Meets Certain
Criteria:

"This request is based on your complaints about your proctor for a prior CBX that you took.  Thus,
this request is conditional and based on what could happen, not what is sure to happen."

Applicant rests on his explanation of why this request does not fall within the legal standard
for accommodation requests pertaining to conditional disabilities made at pp. 25-26 of the 2019
Appeal, incorporated by reference as if fully set forth herein.

However, Applicant concedes that his proctor for the February 2020 California Bar Exam also
acted appropriately.  To the extent this pattern indicates that the Committee is informally taking
my concerns with the July 2018 CBX proctor situation seriously and taking remedial action other
than granting an explicit disability accommodation, I appreciate that.  Accordingly, I am willing
to accept, in the alternative to my original request about proctor assignment, assurances that the
proctor to whom I am assigned will be trained in all appropriate procedures to administer the exam
smoothly and will be briefed on how the accommodations granted will modify the norms, to
minimize the risk of confusion or disagreement during the exam.  They do not have to be an
"experienced" proctor as long as this basic threshold is met, and it is fine if the above is provided
even by assurances of what standard testing conditions constitute rather than as a modification to
accommodate a disability.  If this is not provided, I maintain my position as to what disability law
would entitle me to, based upon my autism and its effects as attested to by Dr. Dresden in past
submissions.

10.  Omitted Requests That Continue to be Denied Without Individualized Explanation:

Since the 2018 Petition, four specific disability accommodation requests made and
reasserted in each successive submission have consistently not even been included in the list of
accommodations acknowledged, but denied.  They are denied by omission without any
explanation, which if persistent on the 2020 Petition Decision prior to appeal, would again
violate California and Federal disability law in addition to constitutional due process for the
reasons at pp. 3-11 of my 2018 Appeal Statement and pp. 2-5 of my 2019 Petition Narrative
Statement, incorporated by reference as if fully set forth herein.

These requests include:

1. Permission to bring food into the exam room irrespective of whether it may have a slight
   (ordinary for fresh/hot unprocessed meals) degree of aroma.

2. Permission to bring into the exam room beverages that are only offered in a can, so long as
   they are placed on a different surface than my exam materials to reduce harm of any spill.

3. Equal access to the hotel group rate across all nights from the night before the first test day
   until the night of the last test day, specially reserved at all possible test center hotels

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

Applicant might be assigned until the disability accommodation petition/appeal process is concluded and a final test center location confirmed.

4. Instructions to proctor (regardless of how experienced they might be) to minimize distractions during test time, and not to interrupt without essential cause or standard time warnings, especially regarding questions calling for speculation on when I might take my lunch break.

Applicant rests on the explanations and documentation supporting these requests in his past submissions, incorporated by reference as if fully set forth herein.

<u>Conclusion and Request for Appellate Relief:</u>

I hereby certify under penalty of perjury under the laws of the State of California that all statements of fact made herein are true to the best of my knowledge and belief.

Wherefore, based on the foregoing, Applicant respectfully requests that the State Bar of California, upon considering this Petition and weighing any expert disagreements with the deference due to Applicant's experts over its own experts prescribed under 28 CFR Part 36 Appendix A, citing 28 CFR § 36.309, renew all previously granted accommodations and grant all heretofore denied accommodation requests from the 2018 Petition, for the July 2020 California Bar Exam in case Applicant were to have been unsuccessful on the February 2020 California Bar Exam (results pending) and opt to register to again retake the exam; and, moreover:

1. The opinions and recommendations of all State Bar-solicited experts received in regards to any disability accommodation issue herein, including the referenced psychometrician, to be disclosed, and for updated expert input to be obtained for all disabilities, and not just autism, from the appropriate specialists.

2. For each and every point of both fact and law in this narrative, and any material point reincorporated but not yet addressed in prior submissions, to be addressed in detail to the extent any requested accommodation is denied, with individualized explanations for every denial thereupon.

3. For any deadline to appeal to be set no earlier than the later of 7/1/2020 or 30 days from his receipt of the 2020 Petition Decision, if any accommodation request is denied.

4. As Applicant posits that the length of time required by the Petition and Appeal deadline relative to the amount of time between exams not only denies readily accessible accommodations and imposes upon him undue hardship and burden with the time pressured and time intensive tasks associated with seeking accommodations, including by substantially interfering with his ability to earn a living, but more importantly, presently

**Narrative Statement for 2020 Petition for ADA Testing Accommodations for the
July 2020 California Bar Exam
File No. 468532**

deprives him of meaningful access to his right to seek judicial review with exhaustion of administrative remedies, Applicant posits that the procedural rule allowing 60 days to process petitions is unreasonable and excessive relative to Applicant's interest in meaningful access to all remedies allowed by law, especially as Applicant not passing the bar exam before or from the July 2020 session would prevent his admission to practice law prior to the expiration of the moral character determination, and so Applicant respectfully requests a decision within 40 days rather than within 60 days.  If I am not provided the decision within 40 days, I hereby preserve the argument that the dispute herein would be ripe for judicial review without necessarily having first exhausted all administrative remedies for the July 2020 California Bar Exam.

Dated this 19th Day of March, 2020.

*/s/ Benjamin Kohn*
Benjamin Kohn
1913 Fordham Way
Mountain View, CA 94040
(650) 919-3584
Benjamin.s.Kohn@gmail.com



**Sutter Health** Palo Alto Medical Foundation

Benjamin Kohn
1913 Fordham Way
Mountain View CA 94040
March 13, 2020

TA Case Number: 00491832
File Number: 468532

To:
Committee of Bar Examiners
State of California

This is my appeal and response to the most recent letter sent to Mr. Kohn regarding accommodation requests.

1. I have known Mr. Kohn for almost a decade. During that time, I have evaluated him in many respects. I have personally reviewed the previous neuropsychologic testing that initially gave him a diagnosis of Autism. In addition, it is quite clear to me that he has this diagnosis. I did not need to review that formal document to come to this diagnosis as well. There is no specific medication/treatment for Autism. It is a pervasive disease, so it affects how I manage all of his other conditions. Therefore, I respectfully disagree that I have not evaluated or treated him for Autism. I have independently reviewed the neuropsychological testing done and wanted to further explain. Specifically, he scored in the extremely low range on the processing speed (9th percentile), as well as below average on reading and writing fluency exams. In addition, there was significant discrepancy between the timed and un-timed tests for those specific domains compared to other domains more associated with tasks done in multiple choice. Taken together, I find that this justifies additional time on the writing section compared to the multiple choice section. Specifically, I feel that 150% extra time on the writing section is a reasonable recommendation based on the diagnoses of Autism and Neuro-processing disorder. The appeals process for the Bar exam is quite onerous, and obtaining new testing would be a significant burden to Mr. Kohn, especially given the timing of the appeal relative to the testing dates. Because there is no 'cure' for Autism, it is expected that previous recommendations for extra time on tests would continue to be relevant for any future testing. Clinically, we would not ask Mr. Kohn to constantly get retested so as to have a new set of guidelines around timing.

2. Regarding the additional meal breaks. While it is true that he could potentially cut his food up into smaller pieces prior to the test (although this would be somewhat of a challenge given that he is staying in a hotel room), this would still not offset the need for more regular breaks. This recommendations was given based on the advice of an expertise in Gastroenterology due to his gaastroparesis. Gastroparesis is the technical term for when the stomach has a hard time (I.e. Slow) emptying itself. Because of this



Sutter Health
Palo Alto Medical Foundation

(and also because of his fundoplication surgery, which complicates the process), he is not able to consume nor digest food in the normal manner. It requires him to take small bites slowly and to stagger his food intake throughout the day.

3. Regarding the discretionary lunch breaks - see above.

4. Regarding the weekend only testing. He has a huge amount of appointments scheduled through the year. In my system, I counted 49 appointments in the year 2019. These appointments ranged from visits with me, but most were with specialists including ENT, Gastroenterology, Colorectal and Vascular Surgery, Cardiology, Dermatology, and Neurology. Some of these appointments were for routine things but most were for specific issues that needed to be addressed at that time. This does not include appointments outside of my system such as with other hospitals or places such as Physical Therapy. This is by far the most number of appointments of any of my patients (I have over 2000 patients in my panel). In addition, he is meticulous about scheduling his appointments in the future, and pre-determining which days that he has appointments six months in advance is quite difficult. I personally have had to deal with this as he has had significant trouble in the past with scheduled Physical Therapy appointments and I had to get involved with the doctors at El Camino Hospital to assist with his schedule. Because of the multitude of medical appointments, it would be reasonable to say that he accomodation on timing would be beneficial to his health. In terms of whether this would compromise the security or validity of the exam, I can not say.

5. I don't believe that he is asking for more accommodations for the CBX because it is harder. Instead, he has stated that because the Iowa Bar exam was easier, despite not having the requested accommodations, he was able to pass. This doesn't mean that he should not be granted the appropriate accommodations for the CBX.

6. Finally, regarding the ergonomic set up. The patient tells me that he was granted an ergonomic chair and a sit-stand desk for the Iowa bar, but not for the CBX. Due to the long standing diagnosis of myofascial pain syndrome, which has required more Physical Therapy that any patient I have seen in my 15+ years of practice, I believe that the specific requests that we have asked for in the past would allow him to not be at a disadvantage when taking the CBX.

I certify under penalty of perjury under the laws of the State of California that all statements herein are true and accurate to the best of my professional knowledge and belief.

Graham Dresden, M.D.
Board Certified in Family Medicine
Palo Alto Medical Foundation
650-404-8370

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

Committee of Bar Examiners
Attention: Senior Director of Admissions at Office of Admissions
180 Howard Street
San Francisco, CA 94105

6/4/2020

<u>Background:</u>

Upon completing my 2/2020 CBX attempt, this time without waiting for the results of my latest exam to allow as much time for further process as possible regardless of the uncertainty as to whether this tremendously time-intensive task would ultimately prove necessary, I promptly and diligently began my response to the 2019 Appeal Decision Letter within this 3/19/2020 Petition, and thankfully one of my experts, PCP Dr. Dresden, was able to write an affidavit addressing specific points in the 2019 Appeal Decision Letter, dated 3/13/2020, just before the Santa Clara County shelter in place began and health care provider policies began to shift. On 3/19/2020, I filed this testing accommodations petition, largely responsive to the State Bar's decision letter dated 2/14/2020 on the 2019 Appeal, for testing accommodations on the July 2020 CBX for the event that I failed the then-pending results 2/2020 CBX.

The complete Petition that was filed 3/19/2020 for the then-July (now to be reconstrued as for the September) 2020 Bar Exam sought the same for that exam, for the event that I was unsuccessful with the 2/2020 exam and opted to retake, as did the 2019 Petition: renewal of those accommodations previously approved, and grant of those denied before, except for the 2019 Petition amendment to add another substitute option to one request, and now by this addendum this date to add a request for stop-the-clock restroom breaks based on updated expert support necessitated by that issue becoming even more important for anticipated modality change hypotheticals arising from the rules disseminated for the June 2020 FYLSE. The requests in this 3/19/2020 Petition, which has been "pending internal review" for 77+ days as of this writing, would assume no changes in standard testing conditions or modality from those in place for my completed exam attempts, and does not contemplate the differing conditions anticipated from a possible modality change that could unequally adversely impact me due to my disabilities, which modality changes will instead be addressed in a forthcoming Petition.

On 5/8/2020, you notified me that I indeed was again unsuccessful on the CBX, this 2/2020 failed attempt marking my third failed attempt. Due to both the need to continue seeking adequate disability accommodations for possible future exams that may take place after the pandemic conditions, if that occurs and I still am attempting the bar exam, and also the uncertainty as to whether a modality change will occur for some or all applicants for this next upcoming exam, along with the degree of overlap in the disputed requests at issue

1

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

between possible modalities, this Petition is not moot and would not be mooted by a modality change or any supplemental Petition filed in anticipation thereof.  Rather, this 3/19/2020 Petition should still be resolved to a conclusion based on its own submission date, but considering the new evidence, arguments, and request hereby addended.

While at the time of the 3/19/2020 narrative statement I did not believe I would be able to obtain a fully redone neuropsychological evaluation in time to seek accommodations on the next bar exam, as discussed therein, post-submission I continued to make good faith best efforts to reconsider whether that would be possible for a future submission or exam.  Through such investigation, while nearly all specialists who perform such time-consuming evaluations that typically only have educational and legal, rather than clinical/treatment, applications do not accept insurance, Dr. Toren (who is able to perform such evaluations, and in fact had been the one to perform the high school IEP evaluation for me in 2010, though was not involved in the previously most recent and much more thorough evaluation by Drs. Preston and Pinn in 2014) has enough behavioral health practice to justify maintaining in network status with my new 2020 year health insurance, and so I reached out to her to determine whether my insurance would cover some of the costs of redoing the 2014 evaluation and how feasible such a project would be.  Initially, she was not able to proceed for some time as due to Covid-19 she was not willing to see patients in person, and did not believe the testing involved could be done through a videoconference format.  This would have precluded availability before appeal for a Petition in time for a July 2020 CBX, but with the incremental adjustment to deadlines from the postponement of that exam to September, it has become available timely.  Very recently, she reopened in person appointments where necessary and determined my insurance would cover much of the cost of the evaluation.  Between 18-21 hours of testing time was condensed from immediately after Memorial Day to yesterday to accomplish this (with physical distancing and PPE), in parallel to my drafting of this addendum, and so I now have supplemental documentation highly material to accommodation requests for all modalities and anticipated iterations of the standard test conditions in the form of her detailed report and her new Form E, both dated this date, 6/4/2020.  Accordingly, filed to this Petition with this addendum is Dr. Toren's Form E and report, as is a new affidavit from Dr. Dresden in support of a restroom breaks request, supported by two anorectal manometries and a defecogram, the results of which are also attached, which addresses the modality change issues to concurrently provide support for the forthcoming supplemental Petition, but a form of which will now be requested for this modality too.

This Petition, as amended by this addendum, should continue to be processed to a conclusion based on its own submission date and procedural timeline, in parallel to the forthcoming supplemental Petition addressing hypothetical modality changes, because:

(1) The requests made herein remain my position on what I should be provided on any future in-person bar exam under the previous standard testing conditions, to the extent those standard conditions remain in force and effect for all (including standard) applicants or to Applicant individually if in person assignment is elected based on equipment deficiencies rather than required while standard candidates can test from home due to disability accommodation

2

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

needs; now as to the September (or otherwise next) 2020 exam in the event that an online or from-home modality is later deemed impossible by the California State Bar, and/or as to future bar exams scheduled for after the present context of the Covid-19 pandemic were I to be unable to take the next exam(s) until then or else continue to be unsuccessful on any exam(s) taken in the modified modality until then but opt again to retake (whereas early filing for later exams is permissible and mutually desirable and allows more time to communicate collaboratively through appeal(s) if needed past what time allows for the next exam);

And (2) Were the Committee to deny any accommodations applicable to both modalities from this 3/19/2020 Petition, which has been "pending internal review" for 77+ days and counting as of this writing and thus is overdue for a decision, the explanations of any full or partial denials could be addressed through an Appeal for this modality from this Petition before full review and resolution of the forthcoming supplemental Petition, allowing one further iteration of collaborative communication about the propriety of the requested overlapping accommodations and facilitating a more proper result on the forthcoming supplemental Petition prior to the next iteration thereof (last expected from that Petition in time to implement on the September 2020 exam) through any Appeal of any denial(s) from that Petition relying on the information thus gleaned from the petition review considering the information from any appeal of this petition.

Accordingly, while this 3/19/2020 Petition addresses testing accommodations for any future in-person bar exam under the previous standard testing conditions, to the extent those standard conditions remain in force and effect for all (including standard) applicants (whether on the next exam/Covid-19 pandemic impacted exam(s) or post-pandemic exams) or to Applicant individually if while an online modality is offered to some applicants, in person assignment is elected for me based on equipment deficiencies rather than required while standard candidates can test from home due to disability accommodation needs, it does not contemplate either: hypothetical (1) for the case where I'd be taking the exam in the modified from-home and/or online with remote/electronic proctoring modality, anticipated to have substantially different standard test conditions for that modality that moot some prior testing accommodations requests while necessitating new such requests responsive to any changes in standard conditions which may present or increase handicaps relative to other candidates arising from disability impairments to an extent that adversely affects the equal accessibility of the exam for me; or hypothetical (2) for the case where the exam is offered as a from-home, online with remote/electronic proctoring modality to some candidates, which numerous competitive advantages can be attributed to, affecting the comparative reference for what the metaphorical playing field must be leveled to, but proximately due to my need for disability accommodations the State Bar mandates that I take the exam in person in physically-distanced, limited space facilities designated for such use, thereby entitling me to additional accommodations designed to counterbalance any additional handicaps due to disability from deprivation of the benefits and advantages other non-disabled candidates would be accorded by being allowed to test from home.  Those are the scenarios that, for the cycles of bar exams affected (if any) by Covid-19, are addressed by the forthcoming supplemental petition.

3

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

Please find enclosed my supplemental expert support/documentation from Drs. Toren and Dresden, and please find below supplemental discussion and argument applying the new support to my previous requests. Also attached hereto and discussed below is an ADA Testing Accommodations best practices guide published by the United States Department of Justice based on a model consent decree it entered into with the Law School Admission Council (LSAC). Some of this guidance, along with legal authorities cited thereby, further support my previous arguments for the grant of many of the testing accommodations at issue; for the proposition that the State Bar has heretofore required a documentary proof standard for sufficiency to support accommodation requests that is unlawful; that, moreover, compliance with the ADA and its implementing regulations would necessitate that the State Bar adopt a fundamental redesign of its routine procedures for the testing accommodations process for its exams, which presently are not "readily accessible" as required by law; that the State Bar is obligated to explain all of its findings of fact and holdings of law on which it bases any denial(s) of testing accommodation requests in full detail, including disclosures of all evidence and legal authorities for and against its contentions, and additional information and certifications past that to permissibly rely on a claim of fundamental alteration and/or undue burden; etc.

<u>Statement of the New Evidence:</u>

<u>1. Introduction:</u>

In the 2019 Appeal Decision Letter (dated 2/14/2020), the Committee repeatedly relies on the purported lack of a "current functional limitation analysis" or evaluation of me for autism by Dr. Dresden, which seems to be given the effect of the Committee improperly treating his autism-based discussion or recommendations as inadmissible or at least to be accorded minimal weight. I maintain my objections to this treatment of Dr. Dresden's expert opinions just because he had not personally redone the testing in terms of remeasuring the raw data points (he did perform an independent interpretive evaluation, which is no less than the most the State Bar's own expert consultants are capable of performing). Nonetheless, Dr. Toren has completely eviscerated any possible factual basis the State Bar could have claimed to base this notion on before, by reperforming all neuropsychological evaluations and testing, then determining that the results do support similar conclusions as to those maintained by Dr. Dresden, which conclusions Dr. Preston had already clarified in the 12/5/2017 affidavit prior to his death as having been his opinion as well, if unfortunately muddied slightly by the confusing way his practice partner, Dr. Pinn, completed Form C based on LSAT approvals and mixed up which field to use their recommendations in, and with less than ideal amount of follow-up clarifications to a report that was geared for a largely multiple-choice, partial-day LSAT domain, those things made difficult to clear up as unequivocally as would have been ideal until Dr. Toren's involvement by Drs. Preston and Pinn becoming unavailable.

<u>Issue of Additional Extra Time Denials (Issue Number 2. In 3/19/2020 Narrative):</u>

Among the propositions that Dr. Toren opines as supported by her testing and expertise with autism are:

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

1. Dr. Toren opines that the neuroprocessing impairments associated with my autism, which forms one of the basis factors for my request for extra time, is of greater severity for formative consideration of content generation and transmittal thereof (written composition) than for selecting a pre-defined multiple-choice response. Based on this, she has confirmed the up-to-date measurements she personally has taken for my autism impairments can be most precisely ameliorated proportionate to severity compared to neurotypicality by, assuming the test day length limit heretofore denied, a similar amount of extra time as sought herein, and this for autism alone, which she thus recommended and which I'll note that Dr. Preston had before alluded to (saying his 2014 report recommended double time for a multiple choice test, the LSAT, and that I would need more time for an essay response domain than that recommended for a multiple choice domain; See 12/5/2017 Dr. Preston affidavit), and Dr. Dresden had quantified this to what is sought based on his own interpretation of the evidence after Dr. Preston became unavailable, consistent with the determination of my law school. Specifically, Dr. Toren recommends, additive to any extra time from other disabilities, double time for autism on the multiple choice domains and double time and one half (150% extra time) on the written domains, if the test day length limit is granted, and this goes up to double time and a quarter (125% extra time) for the multiple choice domains and up to triple time for the written domains if the test day length limit is denied. She notes that her testing and measurements reflect much shorter lengths of testing per day than the CBX is even standard, let alone longer than standard, and that in her expert opinion the handicap would increase for longer testing per day. I posit that Dr. Toren's re-evaluation not only provides impeccable documentation for the request independently, which should cure even the perceived inadequacies with the older evaluations and substituted expert applications thereof to the CBX thereupon posited by the Committee and its Expert, but confirms Dr. Dresden's point that the 2014 testing supported the same conclusion and remained reliable for autism.

Now that the State Bar has unnecessarily put me through exorbitant time, financial, and coronavirus exposure risk burdens to provide this, I hope it will now be satisfied of the propriety of this amount of extra time, particularly given the deference Drs. Toren, Dresden, Goodman, Pinn, and Preston are owed as experts who have evaluated me personally face-to-face and/or treated me for my disabilities:

"Reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviewers who have never conducted the requisite assessment of the candidate for diagnosis and treatment. This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations." (See D.O.J. guidelines at https://www.ada.gov/regs2014/testing_accommodations.html#_ftn6 ) (See Also D.O.J. best practices model guide based on the consent decree of the LSAC in regards its litigation with them over disability law compliance for the LSAT even for the weaker Title III):

"Under the relevant ADA Guidance, a testing entity, such as LSAC, should accept, without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of a candidate that supports the need for the modification,

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

accommodation, or aid requested," and provide the testing accommodation. *See* 28 C.F.R. pt. 36, app. A, at 795. "Reports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." *Id.* at 796." (See DOJ Best Practices Guide, p. 10).

2. Notably, Dr. Toren's recommendations are explicitly limited to addressing the effects of the psychological disabilities for which she evaluated me, and she acknowledges that the test results therefor upon which she quantified her recommendation wouldn't necessarily fully reflect all handicaps affecting the amount of extra time needed for equal accessibility where other impairments are functionally distinct, e.g. those from visual and physical disabilities.  Like Dr. Goodman (visual evaluator, see 12/23/2019 affidavit), and consistent with Dr. Dresden's opinion, she explicitly makes her recommendations additive to those of other evaluators for other disability types, which could then total as much as 433% total extra time for written sections (no test day length limit, so 200% autism + 100% visual per Dr. Goodman + 30 mins per 90 minutes meal breaks substituted into extra time for GI), or 300% extra time for multiple choice in the same circumstances.

       As a good faith offer of compromise in exchange for lack of further dispute, contingent on the test day length limit being granted, I'd allow the marginal extra time warranted for the visual disabilities to be margin for error or reasonable expert disagreements on precise amount of time justified for autism, so long as the base amount of time after autism and visual disabilities are accounted for is at least the present grant of double time plus 30 minutes per session for multiple choice, and at least double time and one half for written composition sections.  Even were the State Bar to continue to posit my autism only warrants somewhere between time and a half to double time, thus, then even halving Dr. Goodman's recommendation for visual conditions, the sum of (50% extra time for autism on multiple choice plus 50% for visual conditions, and 100% extra time for autism on written sections plus 50% for visual conditions) these two disability sets would still equal my instant request.  If you rely on the 2017 Petition visual disability expert who has seemingly yet to have been re-consulted after either Dr. Goodman's 2017 Appeal affidavit or his 12/23/2019 2019 Appeal affidavit for the dry eye syndrome aggravating factor and for the inability of my case of keratoconus to be corrected by glasses, in lieu of Dr. Goodman, it would still only have to be ~84% extra time for autism on the multiple choice domains and ~134% extra time for autism on the written domains, well under the recommendations for autism of all of my experts, and particularly of Dr. Toren as the expert who's personally completed a brand new/current neuropsychological evaluation to measure such.

       As my position is that the physical disabilities are best accommodated by stop-the-clock breaks, any substitution accommodation for the physical conditions would still be additive to these amounts, however.  Yet, to the extent the meal breaks continue to be denied, I'll note that in its 2019 Appeal Decision Letter (dated 2/14/2020), the Committee for the first time revealed that the extra 30 minutes per test day additive to double time that it granted from the 2018 Petition is based on my GI conditions as a purported substitute for the denied breaks,

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

which my position remains is an inadequate substitution to address those effects, but I still note that by the Committee's own admission in the hypothetical it continues to deny the extra meal breaks, <u>at least</u> 30 minutes per test day must be added to the amount of extra time it adjudges appropriate for the autism, visual, and any other physical disability effects.  Present approvals would thus be not even double time (e.g. no more than ~84% extra time on any section for autism, after subtracting both the 30-minute GI grant and 30 minutes/session attributable to the State Bar's 2017 visual expert; not even reaching my expert support for more on written sections, which this amount for autism is less than half of to just over half of) whereas even with mistaken premises the State Bar's 2017 visual expert recommended at least 30 minutes per day be for that basis.

3.  150% extra time for tests may be somewhat less routine and, as a so-called "category 3" request may permissibly be given some additional scrutiny rather than granted as a matter of course, but it is not an unheard of[1] accommodation, and my needs genuinely are greater than most due to the multiplicity (rather than just singular) of very debilitating disabilities that I suffer from and have documented in this area, my documentation is now already more exhaustive than that a candidate could reasonably be expected to produce, and I am requesting that amount of extra time not as a cookie-cutter number, but tailored only for the most severely impacted sections of the exam.  In other words, my request herein dovetails with the criteria to be an exception that proves the rule.

        This is reflected in the DOJ Best Practices Guidelines, which allows a testing entity a more in-depth examination of the individualized evidence than the summary grant upon expert request that is recommended to be automatic for time and a half for one of a multiplicity of disabilities' mere presence (without reaching individual effects) and similarly automatic for more select disabilities for double time, but even then the guidelines provide for grant upon a "reasonable explanation" of why that much time is needed to ensure the examination results reflects the domains intended to be measured and not others impacted by disability.  Yet, guidelines to consider more than double time do exist therein, and explicitly contemplates the combination of both a non-visual disability and a visual impairment, especially with yet further impairments, such as here, as being the case profile most likely to warrant such an approval. And, such is at the conservative end of that recommended by my experts when summing their recommendations as they've all now confirmed should be done for the distinct impairments, with a history of approval provided in my final semester of law school.  (See DOJ Best Practices Guidelines, pp. 4, 7-8).

        <u>Issue of Extra Stop-the-Clock Breaks and Unscheduled, Discretionary Timing Thereof (Issues Numbered 3. And 4. In the 3/19/2020 Narrative Statement):</u>

1.  Dr. Dresden, in a new affidavit  dated 6/4/2020 enclosed herewith with anorectal manometries and defecogram medical testing, addresses how my restroom needs due to my

---

[1] See SAT extra time accommodation discussion at https://blog.prepscholar.com/how-long-is-the-sat-with-extended-time

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

medical conditions of pelvic floor dyssynergia and irritable bowel syndrome with constipation, particularly with my use of the medications bethanechol and linzess and their associated side effects for the conditions of gastroparesis and IBS-C respectively, could be untenable with the rules and format disseminated for the June 2020 FYLSE that I'm anticipating could also impact a possible changed modality for the next CBX, but I submit that new expert support here for the traditional modality to provide a supplemental and/or alternative basis of greater likelihood of needing more frequent and/or longer restroom uses during exam hours than a person without such condition that could be ameliorated by the stop-the-clock breaks that the DOJ Best Practice Guidelines say are *per se* reasonable, separately and independently so, for irritable bowel syndrome (at p. 11), a psychiatric disability such as autism (at p. 17), or upon establishment of a pain related disability such as myofascial pain syndrome (at p. 18).  In other words, for at least three of my disabilities at issue herein.  The request that a number, equal to one per 90 minutes of testing time, of unscheduled, usable at my discretion as to timing within the exam session, stop-the-clock breaks, each with a time limit of no less than 30 minutes, and which breaks (unlike testing time, but like instruction readings, I do not insist be counted towards the test day length limit of no more test time per day than for standard applicants), be substituted for the scheduled singular lunch break that is standard, should address the effects of all 4 GI conditions asserted.

Dr. Toren, in her 6/4/2020 report, like with the recommendations for frequent breaks made by Dr. Preston before her, supplies supplemental and/or alternative grounds for a similar accommodation, as she opines that very long periods of uninterrupted testing, much longer than the lengths of the testing used to evaluate my impairments for extra time, could (without sufficient stop-the-clock breaks), have greater than measured thereby aggravating effects on the primary autism impairments.  Further, she confirms that the symptoms could be variable and dynamic, necessitating my being able to take the breaks at my discretion and not necessarily per a fixed schedule.  Moreover, she opines that the sensory sensitivity caused by my autism would in fact amplify the adverse sensory impact of the GI/Physical Disabilities upon which this request is primarily based.

<u>Issue of Test Day Length Limit (Part of Issue Numbered 5. In 3/19/2020 Narrative):</u>

1.  Like Dr. Dresden, and from the perspective of having just completed a full neuropsychological evaluation to measure the effects of my autism and the "current functional limitation analysis" therefrom, Dr. Toren recommends that extra time to accommodate disabilities be scheduled such that it proportionally increases the number of days the exam is scheduled over, rather than the amount of time per day the exam is scheduled for, and thus that the max test day length be that of a standard test session.

Dr. Toren is clear that the basis of this request is her opinion, based on her professional expertise, that the severity of the impairments attributed to autism necessitating extra time would significantly increase if that extra time was instead administered over very long test days rather than an equalized constant to that of standard applicants, especially because the severity measurements taken were from neuropsychological testing done in a sitting much

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

shorter than even a standard CBX test day.  She provides increased extra time recommendations for autism for the event such scheduling is denied, in substitution.

2.  While it is also logical that I would likely become more tired and lower-performing as a result of longer than standard test days without adequate breaks, Dr. Toren does not make dispositive reliance on that proposition for this recommendation, though I'd posit it (a) wouldn't be a conditional issue any more than the need for extra time generally, contrary to the 2019 Petition State Bar expert consultant's opinion, as only the most discrete variations in magnitude are merely hypothetical in advance, and (b) is a plausible handicap that strengthens the reasonableness and merit of my request for this accommodation.

3.  I continue to be willing to limit the effect of this accommodation request, with all others approved, of number of days the test is administered over to 6 (which the State Bar has in the past been able to provide without undue burden for accommodated testing when the standard length was 3 days), but no fewer than over 5 days.

4.  The dates I calculated for scheduling of the exam based on these factors were my requests all granted, in my 3/19/2020 Petition Narrative Statement, reflected the then published dates for a July 2020 administration.  Since the exam has been postponed, I hereby amend them to reflect the current September 2020 published dates as follows:

<u>With Weekend Only Scheduling:</u> 9/12, 9/13, 9/19, 9/20, and 9/26, finishing barely over two weeks (and not three and a half weeks) after standard applicants finish testing.

<u>Were Weekend Only Scheduling Denied:</u> 9/9, 9/10, 9/11, 9/12, and 9/13, finishing before the first business day after the test would complete with <u>present</u> approvals.

> **<u>Issue of Fully Private (vs. Semi-Private) Test Room (Issue Numbered 6. In the 3/19/2020 Narrative Statement):</u>**

1.  As of the 2018 Petition, not all of the reasons for this request were based on autism, but like my past experts, Dr. Toren believes the degree of distractibility and sensory sensitivity caused by my autism would cause much more material adverse effects on high-stakes, time-pressured exam conditions than in other group settings such as lectures in classrooms, the example that my supposed ability to access (with accommodations like notetaker services) was cited by the State Bar's expert consultant in the 2017 Decision Letter to justify guaranteeing no more than a semi-private room, the present approval that despite such lack of a guarantee has been implemented as a private room on all three of the CBX administrations I've taken previously as well as on the Iowa Bar Exam, the SAT/GMAT/MPRE, both college and law school exams, the FINRA exams, etc. (where for some, but not all, a private room was a guarantee).

And, while not as directly at issue for disability law standards, practically in making any discretionary decisions relative to this request the Committee might consider that any extra burden providing me a private room instead of a semi-private room might impose would be

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

avoided at the expense of another applicant being disadvantaged by my already approved accommodations' distractions to others, including the permission to eat in the room during the exam and the permission to use an electric motorized sit-to-stand desk that operating makes a lot of noise.  The importance of minimizing coronavirus exposure, too, currently weighs in favor of a fully private room, especially as I must take medications that could be considered immunocompromising and as I have many pre-existing health conditions.

> Issue of Provision of the Ergonomic Workstation Equipment Facilities, or Offered Courtesy Substitutions Therefor, Rather Than Limitation of Permission to Bring and Remove the Equipment (Including Nonportable Furniture) Myself Each Day of the Exam (Issue Numbered 7. In the 3/19/2020 Narrative Statement):

1.  While this is largely a physical-disability based request, as part of her discussion of my autism Dr. Toren does opine that the sensory sensitivity and distractibility issues thereof amplifies the prejudicial effect to the exam of the symptoms of my myofascial pain syndrome and other pain-related physical conditions this accommodation is requested for, which creates an aggravating factor.  She explicitly recommends that what Dr. Dresden has requested be provided.

2.  Since the 2018 Petition, I have both requested provision (rather than permission to bring) this equipment for reasons amply explained in past submissions, but offered the State Bar courtesy substitutions where I feel they (for a context that I'm not being required to test in person only due to disability accommodation needs) adequately facilitate my bringing, and more reasonably share the burdens of doing so, that same equipment from home.  In all prior administrations of the CBX accommodated administration, the test center for applicants with disabilities was already published to be a hotel, where I could transport the equipment to and from outside of exam days and keep under my secure control when not testing in the same building as where I'd test, with one such hotel offered within 30 miles of my residence.  For that reason, one of my offered substitutions was provision of a hotel room thereat for my lodging.

Due to Covid-19 issues, the test centers at which I would be assigned for in person testing is now TBD instead, and could anticipatedly not be a hotel.  I do not have the ability to reliably and reasonably transport the ergonomic equipment even to a walking-distance outside facility on exam days, and certainly not independently.  So that courtesy substitution is only an adequate substitution to the extent I am assigned to a hotel for my test center, and where that hotel is within 50 miles of my residence[2] for purposes of the burdens tolerable to me of moving the equipment one round trip on non-exam days.

---

[2] 1913 Fordham Way, Mountain View, CA 94040

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

<u>Proctor Assignment Criteria & Instructions Re: In Test Room Proctor Behaviors (Issue 9.
And Part as Part of Issue 10. In 3/19/2020 Petition Narrative Statement):</u>

1.  For the reasons amply discussed in my 2019 Appeal and 3/19/2020 Petition Narrative
Statement, these requests are not conditional issues in the legally relevant sense of whether
accommodations would be obligatory under the ADA.  I'll further illustrate that here with
particularly apt present examples:

    A.  Using the same logic as the Committee and its Expert, where standard test
conditions neither assuring a relevant factual context to whether disabilities would
impose a material handicap on the exam or not will be present nor that it won't be
present, such uncertainty makes any modification affecting that issue an
accommodation request of a conditional disability, no matter how consistent a
disability's effects in a given reasonably anticipatable circumstance where present, the
Committee could repudiate any duty to provide any testing accommodations for any
applicant for this upcoming CBX, by asserting that as no particular modality is confirmed
to "certainly occur" for that exam, every possible request would be conditional and non-
obligatory.  I'd posit such a contention would be frivolous, absurd, and legally
untenable.

    B.  In comparison, because of the rules regarding the extent of the duty to
accommodate conditional disabilities, applicants do not have a legal right to, for
example, preemptively requested accommodations for the event they were infected
with a symptomatic case of Covid-19, even though the symptoms would very clearly
impair ability to even take the exam from home in a way that would accurately reflect
the domains and knowledge intended to be measured by the exam while obviously be
conclusively disqualifying for any other examination modality, and even as the risk that
such an infection could occur would still reasonably be material and weighty to an
assessment of the risks of not being able to access the exam meaningfully after
expending vast resources preparing to do so.  This is because, unless and until infection
actually occurs, such <u>disability presence</u> would be "merely hypothetical."

    In other words, it is the disability presence/effects factors that conditionality is
material to, not to whether standard test conditions would or would not necessitate an
accommodation due to those consistently measurable/verifiable factors if it is
foreseeable they might.

2.  Dr. Toren opines that the conditions against which I am requesting a guaranteed
absence or else modification mitigating, which I posit did occur on the CBX at least once,
would impair my ability to equally access the CBX due to the effects of autism, and she,
like Dr. Dresden, recommends that such accommodations be provided.

3.  I maintain my willingness to accept either such accommodation or assurances of
what standard test conditions would constitute without disability accommodation as to

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

the request within Issue 9. of my 3/19/2020 Narrative Statement, while maintaining the material part of Issue 10. thereof regardless.


<u>**Conclusion:**</u>

I hereby certify under penalty of perjury under the laws of the State of California that all statements of fact I make herein are true and accurate to the best of my knowledge and belief.

Wherefore, based on the foregoing, Applicant respectfully requests that the California State Bar Committee of Bar Examiners (Committee):

1.  Review and consider my 3/19/2020 Petition as amended by today's addendum no later than the 6/19/2020 scheduled meeting of the Committee of Bar Examiners.

2.  Allow revisions and/or new testing accommodation requests to be made in time for consideration in time to appeal any denial(s) for the September 2020 CBX if they are made within 30 days of confirmation of all final standard test conditions for that exam.

3.  That processing times for testing accommodation petitions that must be submitted closer to the exam due to delay in disclosure about standard test conditions be processed more expeditiously, such that applicants receive a decision within 10 business days (14 calendar days), or by 15 business days (21 calendar days) before the appeal deadline, whichever comes first, which appeal deadline should be made no earlier than 9/1/2020.  Appeals should be processed to a decision within 7 business days (9 calendar days) and by no later than 9/5/2020 (the end of the business week immediately prior to that in which the exam starts) for any filed by 9/1/2020.

4.  The forthcoming 6/4/2020 Petition for Testing Accommodations should not be construed as a superseding successor of this pending 3/19/2020 Petition for Testing Accommodations on the July 2020 (later postponed to now be in September 2020) CBX and/or any Appeal(s) I might file hereupon, either for purposes of adjudication and responsive decision procedural timeline and filing deadlines or for my request that the 3/19/2020 Petition and/or any Appeal I might file thereupon be considered in parallel to that one and any Appeal filed thereupon, except to the extent that any Appeal filed on one Petition addressing overlapping disability accommodation requests and new evidence presented therewith be treated as an addendum as if fully set forth therein to the latest pending Petition or Appeal for the other modality to that extent of overlapping request materiality.

5.  That in adjudicating the testing accommodation petitions, and both what constitutes the *prima facie* case for accommodations to be provided subject to fundamental alteration, undue burden, or rebuttals to the presumptions I reach the standard to be accorded, the Committee and its expert evaluators comply with the limits to documentation a testing agency can require

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

to find sufficiency for a particular factual finding in its disability accommodation review process provided by 29 C.F.R. § 1630.2(k)(2) and any other applicable authorities.  (See 3/19/2020 Petition Narrative Statement, pp. 9, 13-14, 17-19; See Also limits on documentation requirements testing agencies can lawfully mandate for disability accommodation requests: "The documentation necessary to demonstrate disability "should not demand extensive analysis."" (DOJ Best Practices Guidelines, p. 15, citing  29 C.F.R. § 1630.2(k)(2).).

6.  That in adjudicating the testing accommodation petitions, any issues of fact in this Petition where resolution of disagreement between any of my experts who have evaluated and treated me personally be given deference in credibility over that of reviewing experts the State Bar consults with, if not to a binding extent, then, as required by law, to an extent where if the State Bar adopts or relies on the conflicting factual position of its own experts (as it has categorically done so far) over that of my experts (including for the propositions that no more extra time is due for autism for written sections than for multiple choice sections, that 30 minutes per test day is adequate extra time for keratoconus, etc.), it articulate how its determination of credibility was made and why the factors weighing in favor of its expert are sufficient to overcome the legally mandatory degree of deference provided by ADA implementing regulations and discussed in U.S. D.O.J. guidelines:

"Reports from qualified professionals who have evaluated the candidate should take precedence over reports from testing entity reviewers who have never conducted the requisite assessment of the candidate for diagnosis and treatment.   This is especially important for individuals with learning disabilities because face-to-face interaction is a critical component of an accurate evaluation, diagnosis, and determination of appropriate testing accommodations." (See D.O.J. guidelines at https://www.ada.gov/regs2014/testing_accommodations.html#_ftn6 ) (See Also D.O.J. best practices model guide based on the consent decree of the LSAC in regards its litigation with them over disability law compliance for the LSAT even for the weaker Title III):

"Under the relevant ADA Guidance, a testing entity, such as  LSAC, should accept, without further inquiry, "documentation provided by a qualified professional who has made an individualized assessment of a candidate that supports the  need for the modification, accommodation, or aid requested," and provide the testing accommodation. *See* 28 C.F.R. pt. 36, app. A, at 795.  "Reports from experts who have  personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." *Id*. at 796." (See DOJ Best Practices Guide, p. 10).

7.  That in adjudicating the testing accommodation petitions, the opinions and recommendations of all State Bar-solicited experts received in regards to any disability accommodation issue herein, including the psychometrician referenced by the State Bar in the 2019 Appeal Decision Letter, be disclosed, and that updated expert input be obtained for all disabilities, and not just for autism, from the appropriate specialists, which experts should be given legal standards corrective instructions by State Bar Counsel based on issue set II. (pp. 24-27) of my 2019 Appeal Statement dated 12/27/2019, as if fully set forth herein.

**Addendum to 3/19/2020 Testing Accommodations Petition Narrative; File No. 468532**

8.  For each and every point of both fact and law in this narrative, and any material point reincorporated from, but not yet fully addressed or explained from prior submissions, to be addressed in detail to the extent any requested accommodation is denied, with individualized explanations for every denial thereupon, if any, which I continue to posit to be required by law.

9.  That to the extent the State Bar relies on an assertion of fundamental alteration or undue burden to justify any denial herein:

"... The decision that compliance would result in such alteration or burdens must be made by the head of a public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity, and must be accompanied by a written statement of the reasons for reaching that conclusion.  If an action would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that individuals with disabilities receive the benefits or services provided by the public entity."

Dated this 4th Day of June, 2020.

/s/ Benjamin Kohn

Benjamin Kohn
1913 Fordham Way
Mountain View, CA 94040
(650) 919-3584
Benjamin.s.Kohn@gmail.com



**THE STATE BAR OF CALIFORNIA**
**COMMITTEE OF BAR EXAMINERS/OFFICE OF ADMISSIONS**

**180 Howard Street • San Francisco, CA 94105-1639 • (415) 538-2300**
**845 S. Figueroa Street • Los Angeles, CA 90017-2515 • (213) 765-1500**

# FORM E
# TESTING ACCOMMODATIONS – PSYCHOLOGICAL DISABILITIES VERIFICATION

All original documents must be filed with the Office of Admissions' San Francisco Office.
(Must be completed by the applicant; please type or print legibly)

**NOTICE TO APPLICANT:  This section of this form is to be completed by you**. The remainder of the form is to be completed by the qualified professional who is recommending testing accommodations for the California Bar Examination or First-Year Law Students' Examination for you on the basis of a psychological disability.  Please read, complete, and sign below before submitting this form to the qualified professional for completion of the remainder of this form.

Benjamin Kohn
Applicant's Full Name: _____

468532
File Number: _____

I give permission to the qualified professional completing this form to release the information requested on the form, and I request the release of any additional information regarding my disability or accommodations previously granted that may be requested by the Committee of Bar Examiners or consultant(s) of the Committee of Bar Examiners.

6/4/2020

_/s/ Benjamin Kohn_____        _____
Signature of Applicant                                    Date

**NOTICE TO QUALIFIED PROFESSIONAL:**

The above-named person is requesting accommodations for the California Bar Examination or First-Year Law Students' Examination.  All such requests must be supported by a comprehensive evaluation report from the qualified professional who conducted an individualized assessment of the applicant and is recommending accommodations for the examination on the basis of a psychological disability.  The Committee of Bar Examiners also requires the qualified professional to complete this form.  **If any of the information requested in this form is fully addressed in the comprehensive evaluation report, you may respond by citing the specific page and paragraph where the answer can be found.**  Please attach a copy of the evaluation report and all records and test results on which you relied in making the diagnosis and recommending accommodations for the an examination administered by the Committee of Bar Examiners.  Your assistance is appreciated.

TA-FormE.0417

1

The Committee of Bar Examiners may forward this information to one or more qualified professionals for an independent review of the applicant's request.  Print or type your responses to the items below.  **Return the original of this completed form, the comprehensive evaluation report, and relevant records to the applicant for submission to the Committee of Bar Examiners.**

## I. QUALIFICATIONS OF THE PROFESSIONAL*

Name of professional completing this form:  Dr. Rosalie Toren, PhD

Address:  2427 Benjamin Dr, Mountain View, CA 94043

Telephone:  (650) 833-8834                    Fax:

E-Mail:  rtoren57@gmail.com

Occupation, title, and specialty:  Clinical Psychologist

License Number/State:  CA PSY 21581

*The following professionals are deemed appropriate and qualified to provide a diagnosis of psychological disabilities:  Psychiatrist, Psychologist or other licensed mental health professional.*

Please describe your qualifications and experience to diagnose and/or verify the applicant's condition or impairment and to recommend accommodations:

I am a licensed clinical psychologist and state credentialed school psychologist specializing in neuropsychological and psychoeducational evaluations.  I have extensive experience evaluating both children and adults for autism and other psychological and learning disabilities, both for special education services and testing accommodations.

## II. DIAGNOSTIC INFORMATION CONCERNING APPLICANT

1. Date of last evaluation/assessment of the applicant:  5/27/2020-6/4/2020

2. What is the applicant's specific diagnosis based on the DSM-5 (or most current version)?  Please include diagnostic codes where applicable.  If diagnosis is not definitive, please list differential diagnoses.

Autism Spectrum Disorder (299.00)

Highly Variable Attention and Neuroprocessing Disorder (315.8)

3. Describe the applicant's history of presenting symptoms of a psychological disability.

TA-FormE.0417

2

Include a description of symptom frequency, intensity, and duration to establish severity of symptomology.

See Attached Report.

_____

_____

_____

4. Describe the applicant's **current** functional limitations caused by the psychological disability in different settings and specifically address the impact of the disability on the applicant's ability to take the California Bar Examination or First-Year Law Students' Examination under standard conditions. Note: Psychoeducational, neuropsychological or behavioral assessments often are necessary to demonstrate the applicant's current functional limitations in cognition.

See Attached Report.

_____

_____

_____

5. Describe the applicant's compliance with and response to treatment and medication, if prescribed. Explain the effectiveness of any treatment and/or medication in reducing or ameliorating the applicant's functional limitations and the anticipated impact on the applicant in the setting of the California Bar Examination or First-Year Law Students' Examination.

See Attached Report.

_____

_____

_____

**ATTACH A COMPREHENSIVE EVALUATION REPORT.** The provision of reasonable accommodations is based on assessment of the *current* impact of the disability on the specific testing activity. Due to the changing nature of psychiatric disabilities, it is essential that the applicant provide recent and appropriate medical documentation. An applicant's psychological disability must have been identified by a comprehensive diagnostic/clinical evaluation that is well documented in the form of a comprehensive report. **Please attach to this form a copy of the comprehensive evaluation report and all records and test results on which you relied in making the diagnosis and recommending accommodations for the California Bar Examination or First-Year Law Students' Examination.**

The evaluation report should include the following:

- psychiatric/psychological history

- relevant developmental, educational, and familial history

- relevant medical and medication history

TA-FormE.0417

- results of full mental status examination

- description of current functional limitations in different settings

- results of any tests or instruments used to supplement the clinical interview and support the presence of functional limitations, including any psychoeducational or neuropsychological testing, rating scales, or personality tests

- diagnostic formulation, including discussion of differential or "rule out" diagnoses prognosis

## III. ACCOMMODATIONS RECOMMENDED FOR THE CALIFORNIA BAR EXAMINATION OR FIRST-YEAR LAW STUDENTS' EXAMINATION (check all that apply)

## FORMAT

The California Bar Examination is a timed examination administered over two days, consisting of a 3-hour morning session (9:00 a.m. to 12:00 noon) and a 3½-hour afternoon session (2:00 p.m. to 5:30 p.m.) on the first day, and two 3-hour sessions (9:00 a.m. to 12:00 noon and 2:00 p.m. to 5:00 p.m.) on the second day. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. each day. The examination is administered in a proctored setting.

The first day consists of three one-hour essay questions in the morning session and two one-hour essay questions plus one 90-minute Performance Test question in the afternoon session. The written portions of the examination are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop computers to type their answers, or they may handwrite their answers. The second day consists of 200 multiple-choice questions (Multistate Bar Examination or "MBE"), with 100 questions administered in the morning session and 100 questions in the afternoon session. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

The First-Year Law Students' Examination is a one-day timed examination administered in two sessions, a four-hour morning session from 8:00 a.m. to 12:00 noon and a three-hour afternoon session from 2:00 p.m. to 5:00 p.m. The examination is scheduled twice each year. There is a lunch break from 12:00 noon to 1:30 p.m. The examination is administered in a proctored setting.

The morning session consists of four one-hour essay questions. The essay questions are designed to assess, among other things, the applicant's ability to communicate his/her analysis effectively in writing. Applicants may use their personal laptop

TA-FormE.0417

computers to type their answers, or they may handwrite their answers. The afternoon session consists of 100 multiple-choice questions. Applicants record their answers by darkening circles using a Number 2 pencil on an answer sheet that is scanned by a computer to grade the examination.

## SETTING

Applicants are assigned seats, two per six-foot table, in a room set for as few as 100 to 400 applicants for the First-Year Law Students' Examination to as many as 1,500 applicants for the California Bar Examination. Applicants are not allowed to bring food, beverages, or certain other items into the testing room unless approved as accommodations. All applicants may bring prescription medication. The examination is administered in a quiet environment, and applicants are allowed to use small foam earplugs. They may leave the examination room only to use the restroom or drinking fountain, within the time allotted for the test session.

Taking into consideration this description of the examination and the functional limitations that you currently experience, what testing accommodation (or accommodations, if more than one would be appropriate) are you requesting?

**Alternative Formats**

☐ Audio CD version of the examination

☐ Electronic versions of the Essay and/or Performance Test questions in Microsoft Word format on CDs for use with screen-reading software

☐ Other: _____

**Personal Assistance**

☐ Dictate to a typist (for written sessions)

☐ Reader

☐ Assistance with multiple-choice answer sheet (Scantron sheet) (choose one)

   ☐ Permission to circle answers in question booklet

   ☐ Permission to dictate answers to proctor

☐ Dictate to a voice recorder (choose one)

   ☐ Digital voice recorder (for use with flash memory cards)

   ☐ Tape recorder (for use with microcassette tapes)

   ☑ Other: Instructions to proctors _____

TA-FormE.0417

**Equipment or Facility Requirements**

☑ Computer *as an accommodation* (must have direct nexus to the effects of the disability)

☐ with SofTest installed

☐ with voice-recognition software (e.g., Dragon Naturally Speaking) installed

☐ with screen-reading software (e.g., JAWS) installed

☐ with other (specify): _____

☑ Special equipment (specify): Ergonomic Workstation desc. by PCP further supported by autism.

☑ Private room

☐ Semi-private room

☐ Wheelchair accessibility (if table, specify height): _____

☑ Other:   No longer testing per day than standard; See R

Please provide a rationale for each request indicated above (attach additional sheets if necessary):

Autism results in greater distractability, sensory sensitivity, and anxiety from logistical issues. Exams rely on sustained top mental performance and have higher stakes than classroom settings, so he should receive a private room, the workstation requested by his PCP for a phys. disability that produces effects his autism will make him more sensitive to and distracted by, and a proctor familiar with the changes his accommodations and affected rules, who refrains from distracting behaviors. See R

**Accommodation of Extra Time**

Specify the amount of **extra time** requested for each session of the examination. Indicate why the specified extra time is needed (based on the diagnostic evaluation), provide the rationale for requesting the amount of time for each test format of the examination, and explain how you arrived at the specific amount of extra time requested. If either the amount of time or your rationale is different for different portions of the examination, please explain. **All requests for extra time must specify the exact amount of extra time. It is important to keep in mind that breaks are included in the timed portion of the examination. No accommodation of unlimited time will be granted. If extra testing time is requested, but the specific amount of extra time is not indicated, the petition will be returned as incomplete.**

**California Bar Examination: Essay Questions 1, 2 & 3 (standard session is 3 hours):** Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

TA-FormE.0417

6

Additional 4.5 Hrs/150% extra time for psych. disabilities if <= standard total length per day and up to 200% extra time if significantly longer per day than standard. Recs additive to any extra time for distinct visual and physical handicaps or impairments.

**California Bar Examination:   Essay Questions 4 & 5, and Performance Test (standard session is 3 hours and 30 minutes):**  Specify the amount of extra test time needed <u>for this session</u> and  provide the rationale:

Additional 4.5 Hrs/150% extra time for psych. disabilities if <= standard total length per day and up to 200% extra time if significantly longer per day than standard. Recs additive to any extra time for distinct visual and physical handicaps or impairments.

**California Bar Examination:   Multistate Bar Examination - MBE (each standard session is 3 hours):**  Specify the amount of extra test time needed <u>for each MBE session</u> and  provide the rationale:

Additional 3 Hrs/100% extra time for psych. disabilities if <= standard total length per day and up to 125% extra time if significantly longer per day than standard. Recs additive to any extra time for distinct visual and physical handicaps or impairments.

**First-Year Law Students' Examination:   Essay Questions 1, 2, 3 & 4 (standard session is 4 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

N/A

**First-Year Law Students' Examination:   Multiple-Choice (standard session is 3 hours):**  Specify the amount of extra test time needed <u>for this session</u> and provide the rationale:

N/A

**<u>Explanations:</u>**  (attach additional sheets if necessary)

As demonstrated by my testing and reflected in my observations, Mr. Kohn's autism has severerely impaired his neuroprocessing speed, though to unequal degrees between domains, and has made his attention extremely variable, with a large standard deviation between test administrations in the severity of that impairment. This condition is associated with a multiplicity of additional handicaps, which include heightened distractability from both sensory and stress or anxiety induced distractors, and increased propensity for anxiety from circumstances such as he's described relating to the behavior of his proctor on the July 2018 CBX or from proctor unfamiliarity with his accommodations and which rules they'd affect. He'd already had a nearly lifelong autism diagnosis, and these results remain consistent.

TA-FormE.0417

## IV. PRIOR HISTORY AND PAST ACCOMMODATIONS

Please describe any previously documented history of psychological disabilities and list
accommodations that have been granted to the applicant in the past:

Mr. Kohn reports the time of his autism diagnosis to have been when he was 5 to 6
years old, which was made at Stanford. He's had an IEP providing assistance with
this diagnosis for most of his K-12 schooling. He received testing accommodations
in both college and law school, including a private room and at least double time,
though this increased to 150% extra time his last semester in law school due to
diagnosis with a new visual disability. He's received from 50%-just over 100% extra
time on standardized tests, all but the bar exams being partial day shorter multiple
choice exams. He has a multitude of other medical issues, of varying recency.

## V. CONFIDENTIALITY

Confidentiality policies of the Committee of Bar Examiners/Office of Admissions of the
State Bar of California will be followed regarding its responsibility to maintain
confidentiality of this form and any documents submitted with it. No part of the form or
the accompanying diagnostic report will be released without the applicant's written
consent or under the compulsion of legal process.

## VI. CLINICIAN/LICENSED PROFESSIONAL'S SIGNATURE

I am submitting the **original** of this form and have attached copies of the comprehensive
evaluation report and all records and test results that I relied upon in making this
diagnosis of the applicant's condition/disability (notes and worksheets are not required
as part of this submission) and completing this form. I understand that all original
documents submitted become the property of the Committee of Bar Examiners.

I declare under penalty of perjury under the laws of the State of California that the above
information is true and correct.

_____          6/4/20
(Signature of Licensed Professional)                                (Date)


The Committee of Bar Examiners reserves the right to make final judgment concerning
testing accommodations and may have all documentation related to this matter reviewed
by an individual professional consultant or a panel of professional consultants if deemed
necessary.

TA-FormE.0417

8

**Toren Psychological Services**
**2427 Benjamin Dr.**
**Mountain View, CA 94043**
**(650) 833-8834**
**rtoren57@gmail.com**

**CONFIDENTIAL**
**Psychoeducational Evaluation**

**Name:** Benjamin Kohn                    **Date of Testing: 5/27/20, 5/29/20, 5/31/20,**
**6/1/20, 6/2/20, 6/4/20**
**Date of Birth:** 12/29/1993              **Date of Report:** 6/4/2020

**Examiner:** Rosalie Toren                **Age:** 26
**Grade:** Postgraduate                    **Sex:** Male

**Reason for Evaluation:**
Benjamin was self-referred for testing to assess his current psychoeducational functioning
pursuant for application for accommodations for taking the California bar examination.

**Method of Evaluation:**
Clinical Interview and Review of Records
Weschler Adult Intelligence Scale-fourth edition
Weschler Memory Scale fourth edition
Wechsler Individual Achievement Test third edition
Nelson Denny Reading Test
Visual Search and Attention Test
Delis Kaplan Executive Function System Trails 1-5
Behavior Assessment System, Third Edition (BASC-3)

**BACKGROUND INFORMATION:**
**Family Background**
Benjamin is a 26-year-old Caucasian male who resides with his parents while studying
for the bar and is self-employed.

**Health and Medical History and Psychological History**
Benjamin is a product of a normal pregnancy and delivery. Developmental history is
positive for Autism Spectrum Disorder and delays in speech and gross motor
development. Medical and developmental history is negative for seizures or head
injuries, drug or alcohol dependence, or abuse, or suicidal ideation or attempts. Benjamin
identifies the following psychological and neurological, and medical issues associated
with autism: sleep disturbance, distractibility, inattention and highly variable attention,
poor concentration, obsessive thoughts, compulsive behavior, anxiety, memory
impairment, headaches, and introversion. Benjamin was provided speech therapy in
elementary school; privately, Benjamin's parents paid for "social thinking," occupational,

1

and physical therapies through 8th Grade. Benjamin still receives physical therapy for these and other issues to this day.

He has no incidents of problems with the law other than a couple traffic tickets.

Benjamin has many neurological/psychological and medical conditions which interact with each other and impinge on his learning, achievement, and other major life activities. Due to the breadth and extraordinary scope of these health concerns, while my testing accommodation recommendations are only for his psychological disabilities in scope, many of his testing needs are affected by multiple interacting, but distinct, functional limitations, where the effects of these conditions and his medical conditions intermingle, and all of his disability concerns should be considered with his holistic medical situation in mind.

<u>Medical Synopsis:</u>

<u>Neuro-Psychiatric:</u>

Autism Spectrum Disorder (F84.0)

Highly variable attention and neuroprocessing speed deficit (R62.50)

Circadian Rhythm Sleep Disorder (Delayed Phase & Irregular Sleep/Wake Types) (G47.33)

<u>Neuro-Muscular-Skeletal:</u>

Gross and Fine Motor Delay (F82)

Myofascial Pain Syndrome (M79.18)

Cervicalgia (M54.2)

Occipital Neuralgia (M54.81)

Scapular Dyskinesis (G25.89)

<u>Allergy:</u>

Allergic Rhinitis (J30.9)

Allergic Sinusitis (J32.9)

Allergic Keratoconjunctivitis (H10.45)

Food Allergies (Fish, Airborne & Severe Untreated; Nuts and Dairy) (Z91.013)

2

Dermatological:

Chronic Idiopathic Urticaria (L50.1)

Eczema (L20.84)

Chronic Folliculitis (L73.9)


Gastroenterological/Gastrointestinal:

Gastroparesis (K31.84)

Postoperative Dysphagia (R13.10)

Irritable Bowel Syndrome with Chronic Constipation (K58.9)

Pelvic Floor Dyssynergia (M62.89)

Recurrent Anal Hemorrhoids (K64.8)

Recurrent Anal Fissures (K60.2)

History of Gastroesophageal Reflux Disease (K21.9)


Otolaryngology:

Chronic Oral Aphthae (K12.0)

History of Sleep Apnea (G47.20)

History of Sinonasal Polyposis (J33.9)


Ophthalmology:

Keratoconus (H18.603)

Irregular/Asymmetric Astigmatism of Both Eyes (H52.213)

Dry Eye Syndrome (Severe Meibomian Gland Dysfunction & Tear Film Insufficiency) (H04.123)

Eye Floaters (H43.399)


Prescription Medication List:


Regularly:

Modafinil (200 mg Tablet Daily for Circadian Rhythm Sleep Disorder)

DyMista Nasal Spray (Twice Daily for Allergic Rhinitis)

Bethanechol (25 mg Tablet up to 3 times daily 30 minutes before meals for gastroparesis)

Linzess (290 mcg daily before bed for irritable bowel syndrome and constipation)

Montelukast Sodium (10 mg Tablet daily for allergic sinusitis)

Famotidine (20 mg Tablet up to twice daily after meals for gastroparesis)

Pulmicort Respules (0.25-0.75 mg twice daily in 16 oz. saline sinus rinses for allergic sinusitis and to prevent recurrence of sinonasal polyposis)

Xolair (300 mg subcutaneous injections in-clinic every ~21 days for chronic idiopathic urticaria, eczema, food allergy suppression, some benefit for allergic rhinitis, sinusitis, and keratoconjunctivitis)

Restasis Eye Drops (0.4 ml twice daily for dry eye syndrome)

Xiidra Eye Drops (0.2 ml twice daily for dry eye syndrome)


As Needed:

Losartan 25 mg Tablets (for hypertension associated with myofascial pain syndrome)

Nortriptyline 10 mg Tablets (for myofascial pain syndrome)

Gabapentin 100-400 mg Capsules (for myofascial pain syndrome)

Cyclobenzaprine 5 mg Tablets (for myofascial pain syndrome)

Rectiv Ointment (for anal fissures and hemorrhoids)

Hydrocortisone/Pramoxine 2.5%/1% Rectal Cream (for anal hemorrhoids)

Compounded Magic Mouthwash (for oral aphthae)

Dexamethasone Mouthwash (for oral aphthae)

Oral Benzocaine Cream (for oral aphthae)

Valacyclovir 1 G Tablets (for oral aphthae)

Desloratadine 5 mg Tablets (for eczema)

Eucrisa Ointment (for eczema)

Tacrolimus 0.1% Ointment (for eczema)

Desonide Cream (for eczema)

Clindamycin/Benzoyl Peroxide Topical Gel 1%/5% (for folliculitis)

Tretinoin 0.025% Cream (for folliculitis)

Pazeo 0.7% Eye Drops (for allergic keratoconjunctivitis)

Epipen (for allergic emergencies)

Prednisone (for severe allergy condition flare-ups)


**Educational History**
Benjamin attended school in Mountain View through 12th grade. He was on IEP (Individualized Educational Plan) for Autism.  He received speech therapy, had one to one aide from second to fifth grade, was in special day class for sixth grade.  In middle school and high school, he received double time for examinations and extra time to complete assignments and also received adaptive physical education in high school. Benjamin achieved a 3.0 in high school. He then attended San Jose State University and got a degree in Business Administration and Marketing in which he had a GPA of 3.1. He attended University of Iowa for law school and passed the Iowa Bar after attending school between his second and third attempt at the California Bar. He's attempted to take the California Bar three times and did not pass.

**Behavioral Observations and Clinical Interview:**
Benjamin attended many sessions to assess cognitive, academic, processing and personality assessment.  He showed appropriate concentration, attention, effort and motivation.  Benjamin appeared stressed, and his speech was pressured. His affect was within normal range. He appeared somewhat anxious about getting all the testing done. His eye contact was good, as he maintained contact with this examiner.  His speech was somewhat slurred when he was talking fast, but understandable.  He exhibited no abnormalities of flow of thought and mental content. There was no evidence of perceptual disturbances and he was oriented to time, place, and person. At all times, he was cooperative with the examiner.  Insight and judgement were generally good.  He exhibited stereotypical autistic traits, including picking on his clothes and doing flapping motions with his hands, when the tasks became more difficult. This appears to be related to Autism Diagnosis.

   Benjamin denies the use of drugs and occasionally drinks.  He denied suicidal or homicidal ideation.  Processing time was paper and pencil tasks that were timed. Therefore, also, time and a half and double time and double time and a half were administered and noticeable differences were noted on these tasks that were timed. Based on his level of effort and the seriousness of his approach, these testing results are considered a valid and accurate representation of his current academic, cognitive, and psychological functioning.

**Prior Testing:**
I'd previously evaluated Benjamin with a more limited scope in 2010 for his high school IEP.  In 2014, Benjamin was tested with the same testing protocol by Drs. Preston and Pinn in order to seek accommodations to take LSAT and GMAT.  He was noted to have variable attention, and poor psychomotor processing.  Academic tests ranged from

5

average to superior range with the exception of fluency test which measured speed along with conceptual understanding. Cognitive testing ranged from high average to superior range. His verbal/conceptual skills were more developed than visual/perceptual skills. Memory skills were consistent with his cognitive functioning with auditory memory much higher than visual memory. Personality testing suggested no social/emotional concerns.

| COGNITIVE ABILITIES |
|---|

**Cognitive Skills:**
**TEST RESULTS AND INTERPRETATION:**

Benjamin was administered standardized tests to evaluate current intellectual functioning and/or how he processes information. The scores will show how he compares to others of the same age across the United States that took the same tests. Most tests use Standard Scores, Scaled Scores, Percentiles Ranks, and Confidence Intervals. *Standard Scores* range from the highest possible score of 160, to a low of 55. Half of all students will score less than 100 and half will score more than 100. Scores from 90 to 109 are average. *Scaled Scores* range from a high of 19, to a low of 1. The average range is 8 to 12. *Percentiles* show how well SUDENT ranks in the national comparison group. For example, a percentile rank of 55 would mean that Student scored higher than approximately 55 out of 100 children the same age. *Confidence Interval*: It is important to remember that no test score is perfectly accurate. Any score might be slightly higher or lower if student were tested again a different day. The confidence interval for a score of 100, using a 95% probability, would range from 90-110. The *Classification Range* provides another means to show relative position compared to others.

| Classification Range | Standard Scores (Composite Scores) | Scaled Scores (Subtest Scores) | Percentile |
|---|---|---|---|
| Very Superior | 130 and above | 16-19 | 98 and above |
| Superior | 120-129 | 14-15 | 91-97 |
| High Average | 110-119 | 12-13 | 75-90 |
| Average | 90-109 | 8-11 | 25-74 |
| Low Average | 80-89 | 6-7 | 9-24 |
| Low | 70-79 | 4-5 | 3-8 |
| Very Low | 69 and below | 1-3 | 2 and below |

6

## **COGNITIVE ABILITIES**

## **Wechsler Adult Intelligence Scale Fourth Edition**

The WAIS-4 is a formal measure of cognitive functioning comprised of four factor-based indices including Verbal Comprehension, Perceptual Reasoning, Working Memory, Processing Speed and an overarching Full-Scale Intelligence Quotient; the average range is from 90 to 109. An analysis of the various subtests comprising each portion of the test yields a profile of individual strengths and weaknesses; subtests scaled scores of 8 through 12 are considered average. The WAIS-4 has demonstrated validity and reliability for the measurement of intelligence in individuals aged 18 through Adulthood.  It should be noted that intelligence tests measure only a portion of the competencies involved in human intelligence. Scores may be limited to external factors, and are considered to represent a sample of that individual's performance at that time.

| Test | Scaled Scores | Standard Scores | Percentile | Description |
|---|---|---|---|---|
| Similarities | 12 | -- | 75 | Measures verbal concept formation and abstract reasoning.  It also involves crystallized intelligence, word knowledge, cognitive flexibility, auditory comprehension, long-term memory, associative and categorical thinking, distinction between nonessential and essential features and verbal expression. |
| Vocabulary | 16 | -- | 98 | Measures word knowledge and verbal concept formation. It also measures crystallized intelligence, fund of knowledge, learning ability, verbal expression, long-term memory, and degree of vocabulary development. Other abilities that may be used during this task include auditory perception and comprehension and abstract thinking. |
| Verbal Comprehension | -- | 122 | 93 | |
| Block Design | 6 | -- | 9 | Measures the ability to analyze and synthesize abstract visual stimuli. It also involves nonverbal concept formation and reasoning, broad visual intelligence, visual perception and organization, simultaneous processing, visual-motor coordination, learning and the ability to separate figure-ground in visual stimuli. |
| Visual Puzzles | 6 | | 9 | Measures mental, non-motor construction ability, which requires visual and spatial reasoning, mental rotation, visual working memory, |

| | | | | |
|---|---|---|---|---|
| | | -- | | understanding part-whole relationships, and the ability to analyze and synthesize abstract visual stimuli. |
| Perceptual Reasoning | -- | 81 | 10 | |
| Digit Span | 7 | -- | 16 | Measures auditory rehearsal and temporary storage capacity in working memory.  Digit Span Backward involves working memory, transformation of information, mental manipulation, and may involve visuospatial imaging. |
| Arithmetic | 14 | -- | 91 | Measures mental math calculation |
| Working Memory | -- | 102 | 55 | |
| Coding | 2 | -- | 1 | Measures short-term visual memory, procedural and incidental learning ability, psychomotor speed, visual perception, visual-motor coordination, visual scanning ability, cognitive flexibility, attention, concentration, and motivation.  It may also involve visual sequential processing and fluid intelligence. |
| Symbol Search | 2 | -- | 1 | Measures visual-perceptual and decision-making speed, the subtest involves short-term visual memory, visual-motor coordination, inhibitory control, visual discrimination, psychomotor speed, sustained attention, and concentration. |
| Processing Speed | -- | 56 | 0.2 | |
| Full Scale | -- | 91 | 27 | |

The Full-Scale IQ is derived from a combination of seven subtest scores and is considered the most representative estimate of global intellectual functioning. Benjamin's full-scale IQ score fell within the average range (SS 91indicating his thinking and reasoning abilities exceed or are equal to approximately 27% of peers his age. Because there was a discrepancy between index scores, the full-scale IQ should be reported with care.

To obtain a more global perspective of Benjamin's intellectual functioning, the examiner administered additional subtests beyond the standard seven subtest battery. A total of ten subtests were given; yielding a more reliable estimate of Benjamin's cognitive processing skills within the four indices as measured by the WAIS-4.

The Verbal Comprehension Index (VCI) measures verbal abilities that utilize reasoning, conceptualization, and knowledge acquired from one's environment. The VCI measures the ability to understand and communicate using language. The VCI composite is comprised of two subtests, Similarities and Vocabulary. Benjamin's performance fell within the superior range. (SS 122).

The Perceptional Reasoning Index measures the ability to analyze and synthesize abstract visual information. Additionally, subtests are administered within a specified time limit. The VSI composite is comprised of two subtests, Block Design and Visual Puzzles. Benjamin achieved a low average score (SS 81), revealing that his ability to solve problems using visual perception and organization, mental rotation, and simultaneous processing are more developed for his age, and equal to or better than 10% of his same-age peers.

The Working Memory Index (WMI) measures the ability to hold information in immediate awareness while performing a mental operation on the presented information. This composite also taps into auditory and visual short-term and working memory, sequencing skills, attention, and concentration. The WMI composite is comprised of two subtests, Digit Span (auditory working memory) and arithmetic. Benjamin achieved an average range score, (SS 102). He did much better with arithmetic than digit span. He had difficulty sequencing information in his head, which we view as mental control which is foundation of working memory.

The Processing Speed Index (PSI) measures individuals' ability to fluently and automatically perform cognitive tasks using psychomotor speed. This index indicates the rapidity in which an individual can mentally process simple or routine visual information without making errors within a time limit. This composite is comprised of two subtests, Coding and Symbol Search. Within this domain, Benjamin achieved a score that fell within the low range (SS 56). He had particular difficulty with this index.  While he made no errors on either task, in comparison to normative sample, he performed in 0.2 Percentile in comparison to normal peers his age. Therefore, he was given extended time for this particular index and you can see how extra time affected his scores greatly.

9

**Processing Speed Index with Extended Time**

| | | | | |
|---|---|---|---|---|
| Processing Speed | -- | 79 | 8 | Time and Half |
| Processing Speed | -- | 92 | 30 | Double Time |
| Processing Speed | -- | 124 | 95 | Double Time and Half |

**Academic Testing**
**WIAT-3**

| Composite | Standard Score | Percentile | Qualitative Description |
|---|---|---|---|
| Oral language | 102 | 55 | Average |
| Total Reading | 120 | 91 | Above Average |
| Basic Reading | 129 | 97 | Above Average |
| Reading Comprehension | 108 | 70 | Average |
| Written Expression | 126 | 96 | Above Average |
| Mathematics | 133 | 99 | Superior |
| Math Fluency | 74 | 4 | Below Average |

Benjamin performed in the average to superior range for academic performance. However, for math fluency, there the client is timed on how many simple problems in division, addition and subtraction can be completed, Benjamin performed in the below average range in comparison to his superior score in mathematics which was not timed. While, he performed in average range for written expression, he was not able to complete the task within the standard time constraints. Therefore, the examiner also tested Benjamin for written expression and math fluency with extended time increments. Benjamin will benefit from using a computer to write his answers due to autism-related fine motor delays.

It must be made clear that answering multiple choice answers versus actual essay writing are different tasks. Benjamin had difficulty organizing an essay and completing all the steps. The WIAT prompt asks for Benjamin to write an essay about his favorite game and to give three reasons. In addition, he gets credit tor topic sentence, number of words, transition sentences, conclusion and elaborations to the theme. He was able to complete the essay only when he was given double time and half. It was clear he had difficulty with organizing his essay and he went through several permutations until he completed the essay. He greatly requires extra time when completing an essay. The highest level of executive functioning is required in writing an essay which include initiation, sustained attention and follow through to complete the task. Benjamin's deficits greatly impact his ability to create and write an essay when only given standard time. He psychomotor processing speed also impacts his ability to complete written tasks.

While answering multiple choice tests require visual scanning, sustained attention and psychomotor speed and memory recall, it does not require planning and organization, mental control as essay requires.

10

Benjamin's Autism Spectrum Disorder impacts his executive functioning particularly in planning and organization.  In addition, the increase pressure of completing a thorough essay with a huge word count is greatly hampered by his poor psychomotor speed.

| | | | | |
|---|---|---|---|---|
| Essay Writing | -- | 117 | 87 | Time and Half |
| Essay Writing | -- | 138 | 99 | Double Time |
| Essay Writing | -- | 160 | 99 | Double Time and Half |

Only on double time and half, did Benjamin complete the essay with all the components.

| | | | | |
|---|---|---|---|---|
| Addition Fluency | -- | 87 | 19 | Time and Half |
| Subtraction Fluency | -- | 111 | 77 | Time and Half |
| Multiplication Fluency | -- | 110 | 75 | Time and Half |

| | | | | |
|---|---|---|---|---|
| Addition Fluency | -- | 114 | 82 | Double Time |
| Subtraction Fluency | -- | 113 | 81 | Double Time |
| Multiplication Fluency | -- | 120 | 91 | Double Time |

| | | | | |
|---|---|---|---|---|
| Addition Fluency | -- | 114 | 82 | Double Time and Half |
| Subtraction Fluency | -- | 115 | 84 | Double Time and Half |
| Multiplication Fluency | -- | 120 | 91 | Double Time and Half |

**Nelson Denny (Standard Time)**

| | Percentile | Grade Level |
|---|---|---|
| **Vocabulary** | 42 | 14.6 |
| **Comprehension** | 25 | 9.3 |

**Time and Half**

| | Percentile | Grade Level |
|---|---|---|
| **Vocabulary** | 92 | 12,8 |
| **Comprehension** | 50 | 10.0 |

**Double Time**

| | Percentile | Grade Level |
|---|---|---|
| **Vocabulary** | 99 | 18.9 |
| **Comprehension** | 67 | 18,3 |

11

**Double Time and Half**

|  | Percentile | Grade Level |
|---|---|---|
| Vocabulary | 99 | 18.9 |
| Comprehension | 99 | 18,9 |

**Particularly with comprehension where there were increasingly longer and more complex passages with the increased time, Benjamin was able to perform equitably close to WIAT reading score.  Attention and processing speed impact his ability to do his best on reading tasks due to Autism and extremely slow processing speed.**

**Memory WMS-IV**

| Index | Index Score | Percentile | Level \ |
|---|---|---|---|
| AMI | 93 | 32 | Average |
| VMI | 55 | .02 | Poor |
| VWM | 89 | 22 | Low Average |
| IMI | 61 | 0,5 | Poor |
| DLM | 78 | 7 | Borderline |

Benjamin performed in average range for auditory memory.  However, he performed better on list learning task where there were multiple repeated trails than on task requiring the learning and recall of contextual information.  It appeared that variable attention impacted his memory which would require to look over reading over and over in order for him to get the useful information. Therefore, extra time would allow Benjamin to perform adequately despite attentional and memory impairments.

Benjamin demonstrated a significant difference between auditory memory and visual memory, with cognitive testing which showed a significant difference between verbal/conceptual learning and visual/perceptual learning.  Benjamin overall performed better on delayed memory than on immediate memory. This may suggest that Benjamin may need additional time to consolidate his memory for both visual and auditory inputs. Also given Benjamin's poor visual memory he needs time to process the visual words of passage into auditory mental schemas for better access to information. This slow processing time inhibits Benjamin from accessing visual information in a timely manner.

**Attention and Concentration**

| Test | Time | Level |
|---|---|---|
| Trails A | 101 seconds | Deficient |
| Trails B | 190 seconds | Deficient |

**The trail making testis neuropsychological test of visual attention and task switching.  It consists of two parts in which one with just connecting numbers with ascending, and other with switching between numbers and letters.  (Average is 29 seconds for Trail A, Deficient is greater than 78 seconds.  For trail B Average is 75 seconds and deficient greater than 150 seconds.)**

Benjamin performed in the deficient range suggesting difficulty with visual attention and task switching which is hallmark of standardized testing, being to be able to accurate and efficient between reading a passage and answering question directly related to a passage.  Benjamin will have difficulty with comprehension tasks where he will have to quickly scan over passages for relevant information.

12

**VISUAL SPATIAL ATTENTION TASK (STANDARD ADMINISTRATION)**

|  | PERCENTILE | LEVEL |
|---|---|---|
| LEFT | 1 | EXTREMELY LOW |
| RIGHT | 1 | EXTREMELY LOW |
| TOTAL | 1 | LOW |

**VISUAL SPATIAL ATTENTION TASK (TIME AND HALF)**

|  | PERCENTILE | LEVEL |
|---|---|---|
| LEFT | 1 | EXTREMELY LOW |
| RIGHT | 3 | EXTREMELY LOW |
| TOTAL | 2 | LOW |

**VISUAL SPATIAL ATTENTION TASK (DOUBLE TIME)**

|  | PERCENTILE | LEVEL |
|---|---|---|
| LEFT | 74 | AVERAGE |
| RIGHT | 61 | AVERAGE |
| TOTAL | 67 | AVERAGE |

**VISUAL SPATIAL ATTENTION TASK (DOUBLE AND HALF)**

|  | PERCENTILE | LEVEL |
|---|---|---|
| LEFT | 85 | ABOVE AVERAGE |
| RIGHT | 91 | ABOVE AVERAGE |
| TOTAL | 89 | ABOVE AVERAGE |

**The Visual Spatial Attention Task measures visual scanning and sustained attention. Also, the client needs to be able determine vital from unimportant information, and be able to ignore distractions. Due to Benjamin disabilities, sustained attention, and visual scanning are difficult for him and makes it hard for him in reading long passages and discerning vital information from distracting information in answering questions. Also, poor psychomotor speed impinges on his ability to perform in even average range in completing these tasks. As with all the timed tests, his scores go from extremely low range to above average when allowing for extra time.**

**Social-emotional Functioning:**
**SOCIO-EMOTIONAL TESTING**

BEHAVIOR ASSESSMENT SYSTEM FOR CHILDREN (BASC-3)

| T-Score Levels | | |
|---|---|---|
| T-Score | Clinical Scales | Adaptive Scales |

| 70+ | Clinically Significant | Very High |
|---|---|---|
| 60-69 | At-Risk | High |
| 41-59 | Average | Average |
| 31-40 | Low | At-Risk |
| -30 | Very Low | Clinically Significant |

| Clinical Scales | Description |
|---|---|
| Aggression | *Tendency to do physical or emotional harm to others or property* |
| Anxiety | *Feelings of nervousness, worry and fear; the tendency to be overwhelmed by problems* |
| Attention Problems | *Tendency to be easily distracted and inability to maintain attention* |
| Atypicality | *Behavior considered odd or strange, such as appearing disconnected with one's surroundings* |
| Conduct Problems | *Socially deviant and disruptive behaviors: cheating, stealing, truancy, lying, running away from home, and alcohol and drug use* |
| Depression | *Feelings of unhappiness, sadness, or stress* |
| Hyperactivity | *Overly active, difficulties taking turns, rushing through work or acting without thinking* |
| Learning Problems | *Writing, reading, math or spelling difficulty* |
| Somatization | *To be overly sensitive and complain about relatively minor physical problems and discomforts* |
| Withdrawal | *Tendency to evade others, avoid social contact, lack of social interest* |
| **Adaptive Scales** | |
| Adaptability | *The ability to adjust to changes in the environment* |
| Functional Communication | *Ability to express ideas and communicate in an understandable way* |
| Leadership | *Behaviors that contribute to good community and school adaptation* |
| Social Skills | *Interpersonal skills: complimenting or encouraging others, offering help, saying "please" and "thank you"* |
| Study Skills | *Organizational skills, study skills and turning in assignments on time* |
| **Composite Scales** | *Summarize problems of behavior, personality and positive behavior* |

14

| Externalizing Problems | Disruptive behavior problems; tend to lead toward relationship problems |
|---|---|
| Internalizing Problems | Emotional difficulties not marked by "acting-out"; inwardly focused distress |
| School Problems | Academic difficulties, motivational, attention, learning and cognitive problems |

| Scale | Self-Report T – Scores |
|---|---|
| Atypicality | 64* |
| Locus of Control | 76** |
| Social Stress | 68* |
| Anxiety | 59 |
| Depression | 51 |
| Sense of Inadequacy | 65* |
| Somatization | 88** |
| Attention Problems | 69* |
| Hyperactivity | 56 |
| Sensation Seeking | 48 |
| Alcohol Abuse | 55 |
| Social Maladjustment | 47 |
| Relations with Parents | 38* |
| Interpersonal Relations | 32* |
| Self-Esteem | 58 |
| ** = Clinical          * = At Risk | |

Social/emotional functioning is consistent with his medical conditions and his diagnosis of Autism.

## SUMMARY OF RESULTS

Benjamin has average to high average cognitive ability.  Verbal/conceptual skills are more developed than visual/perceptual skills. Academic Testing is from average to superior range and with exception of academic fluency tasks which are in low range

15

when extra time is not given.  Auditory memory is more developed than visual memory. Delayed memory is better than immediate memory.  Benjamin has difficulty with working memory tasks where mental control is a key feature. He has difficulty holding something in his immediate memory and working on that information to do operation on information. His delayed memory allows for memory consolidation. His attention and visual scanning are viable.  Benjamin performs poorly on psychomotor speed tests.  His processing speed is very poor, performing worse than 99.8% of others his age. With additional time, his performance is greatly enhanced.

The testing results taken allow for tailored measurements of the effects of the neuropsychological impairments evaluated such as to calculate the amount of extra time that, for a particular testing domain and set of other contextual factors, I'd expect to allow for his exams to measure the domains they are intended to as accurately as is possible without reflecting these adverse effects of autism.  Based on the test results, this is not identical for all formats of examination, but is higher for written composition exam components than for multiple choice exam components.

The highest level of executive functioning is required in writing an essay which include initiation, sustained attention and follow through to complete the task.  Benjamin's deficits greatly impact his ability to create and write an essay when only given standard time.  He psychomotor processing speed also impacts his ability to complete written tasks.  While answering multiple choice tests require visual scanning, sustained attention and psychomotor speed and memory recall, it does not require planning and organization, mental control as essay requires.  Benjamin's Autism Spectrum Disorder impacts his executive functioning particularly in planning and organization.  In addition, the increase pressure of completing a thorough essay with a huge word count is greatly hampered by his poor psychomotor speed.

Similarly, the amount of extra time calculated to achieve this effect will vary based on how that exam time is scheduled and would need to be adjusted if longer testing per day than the control variable of standard length per sitting was introduced, as impairments for these conditions will be greater the longer the standard time per sitting is for a particular exam.  While autism may be considered as an aggravating factor based on sensory sensitivity to physical conditions, the extra time I recommend for autism is based on the other weaknesses, and should be additive to any extra time that may be appropriate for a distinct impairment, which would be beyond the design of the evaluations and testing I've performed to reflect, such as physical impairments and visual impairments.  This is particularly important for an exam given over much longer sittings than the testing I performed.

Benjamin suffers from numerous medical conditions which impact his daily life which is magnified when he is under stress.  Additionally, Benjamin has been lifelong diagnosed with Autism Spectrum Disorder, which amplifies his medical conditions.  People with Autism have more difficulty with medical conditions than typically developed individuals.  There is an insistence on sameness in their environment, inflexible adherence to routines, difficulties with transitions, and distress with small changes in

16

their environment. Benjamin tries to be flexible given the demands of the real world, but it is most difficult to not know ahead of time what is coming. He becomes easily agitated when things are not exactly like he is expecting. So, in proctoring his exam, he needs an environment which is quiet, and not overly loaded with stimuli or undue cause for anxiety. He is easily distracted by noise or other sensory input. The issues he's described with his proctor in July 2018 would affect someone with autism far worse than someone who is neurotypical. His proctor should already be aware of all of his accommodations, which standard rules and instructions they modify, and all other information necessary to administer the exam, should be instructed to refrain from unnecessary conversation on the test time clock, and should have training on working with autistic individuals. Success, with accommodations, in classroom lectures would not equate to what Benjamin would need in a time-pressured, high-stakes examination setting, and he should also be guaranteed assignment to a private test room.

He has hypersensitivity to sensory input to pain, temperature, noise, gas-bloat, and other sensory discomforts associated with his medical conditions. When he is in pain or experiencing digestive disturbances, this is exacerbated by Autism and he is unable to focus and attend when in his mind his medical symptoms becomes beyond the pale. All accommodations for physical disabilities, additional to those primarily for autism, should be considered with this information in mind, and so I second the recommendation of his PCP that the ergonomic equipment and facilities requested by his PCP be provided to him.

His attention and concentration can not be sustained for long periods of time without taking frequent breaks, and such stop-the-clock breaks should be timed around present symptoms and observed effects, along with any other considerations or symptoms from his physical medical issues, restroom needs, etc. and not be committed to a scheduled time in advance.

For these reasons, I recommend the following accommodations to "level the playing field" for Benjamin, which I believe are necessary to avoid these disability impairments adversely impacting his testing.

**Recommendations:**
- 100% extra time for autism on multiple choice exam portions if daily test time limited to standard length and extra time scheduled over proportionally more days, and 125% extra time if not so limited and scheduled; additive to any extra time recommended by other experts for visual and/or physical impairments.

- 150% extra time for autism on written composition exam portions if daily test time limited to standard length and extra time scheduled over proportionally more days, and 200% extra time if not so limited and scheduled; additive to any extra time recommended by other experts for visual and/or physical impairments.

- Frequent stop-the-clock breaks timed at Benjamin's determinations on when symptoms best justify it.

limited to standard length and extra time scheduled over proportionally more days, and 200% extra time if not so limited and scheduled; additive to any extra time recommended by other experts for visual and/or physical impairments.

- Frequent stop-the-clock breaks timed at Benjamin's determinations on when symptoms best justify it.

- Assignment to proctor who's received training on working with autistic individuals, has been instructed regarding all accommodations and how the modified exam should be administered, and who refrains from unnecessary conversation during test time.

-    Access to computer to write essays.

- Private Room.

- Provision of all nonportable ergonomic equipment recommended by Benjamin's PCP, Dr. Dresden, as such is further supported by autism sensory sensitivity.

- Ability to Type Written Responses.

**DSM 5 Diagnosis**
**299.00 Autism Spectrum Disorder**
**315.8 Other Specified Neurodevelopmental Disorder (Impaired Processing Speed and Attention)**

I certify under penalty of perjury under the laws of the State of California that I have performed the above tests for Benjamin Kohn, and that all statements herein are true and accurate to the best of my knowledge and professional opinion.

_____ Rosalie E. Toren Ph.D.

State Credentialed School Psychologist
Licensed Educational Psychologist

The contents of this report have been communicated to me, and I have received a copy of this report.

_____                    6/4/2020
Client's Signature                                                        Date



**Sutter Health**
Palo Alto Medical Foundation

Committee of Bar Examiners
Office of Admissions
Attn: Senior Director of Admissions
State Bar of California
180 Howard St,
San Francisco, CA 94105
June 4, 2020

I'm again writing in follow-up to provide further documentation regarding Mr. Kohn's need for disability accommodations on the California Bar exam, and to add-on to what I've previously written for Mr. Kohn's "Form B" evaluations and appeals. He has updated me on the post-ponement of the next exam to September and that you are considering making the exam available from home, online, and possibly using remote and/or electronic proctoring of the exam by using webcam recordings. Mr. Kohn reports that the finalized rules, exam format and composition, and standard conditions of this new modality is still being determined and is unknown at this time. This makes it difficult for me to determine the precise updates to my recommendations of what testing accommodations he would need due to his disabilities.

My present recommendations address the concerns Mr. Kohn has discussed with me about what he anticipates may create new disability issues due to the more plausible changes being considered. I'd request that we please be provided 30 days from the knowledge of standard conditions and modalities to revise the requests. If changes to the way the exam is administered do not allow Mr. Kohn to use the restroom freely, or flag perceived unusual lengths of restroom trips, such conditions will cause Mr. Kohn difficulties arising from his conditions of irritable bowel syndrome with constipation (K58.1) and pelvic floor dyssynergia (M62.89). Please see attached anorectal manometry studies for the medical details of this. He was diagnosed with this condition in Spring 2018 by his Iowa gastroenterologist, Dr. Avraham Levin, based on an anorectal manometry test and defecogram scan (which are attached to my 6/4/2020 affidavit attached hereto). Additionally, a colonoscopy ruled out other causes of symptoms. Months of specialized physical therapy and electromyography (EMG) biofeedback, along with rectal botulinum toxin injection was attempted through 2018, but to little improvement per a follow-up anorectal manometry performed at Stanford in December 2018 (also attached to my 6/4/2020 affidavit). In addition, he is using a medication, bethanechol, off label, for his Gastroparesis (K31.84) due to the potential benefits on smooth muscle from its cholinergic effect.

Briefly, because of these conditions, he has symptoms of anismus and anorectal pressure hyposensitivity, both of which result in significant difficulty detecting a bowel movement until close to when it becomes painfully urgent. Because of this, he cannot go to the restroom during more convenient times within a range (I.e. the standard breaks), but must use the restroom more spontaneously when the need occurs. In addition, due to the pelvic floor dysfunction and anal sphincter neuromotor impairment, he often needs a substantially longer time required to complete a bowel movement. He is current presently prescribes Linzess as a partial treatment, which reduces some of the discomfort with bowel movements and irritable lower GI digestion due to this