Benjamin Kohn
*Pro Se* Plaintiff pending appointment of counsel, Dkts. 64, 72.
1913 Fordham Way,
Mountain View, CA 94040
(650) 919-3584
Benjamin.s.Kohn@gmail.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN KOHN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,<br><br>Defendants. | Case No.: 4:20-cv-04827-PJH<br><br>**CASE MANAGEMENT STATEMENT**<br><br>JUDGE: HON. PHYLLIS J. HAMILTON<br><br>DATE: November 6, 2025 (CMC)<br>TIME: 10:00 a.m.<br>COURTROOM: Room 3–3rd Floor (Remotely via Zoom). |

**Individual Statement Pursuant to Civil Local Rule 16-9.**

**PLAINTIFF'S INDIVIDUAL STATEMENT**

Between October 24, 2025, and October 30, 2025, Plaintiff Bejamin Kohn (*pro se* pending the Court's decision on his Motion to Appoint Counsel, Dkts. 64, 72), met and conferred with Defendants' counsel by email and by phone regarding their positions for any Joint CMS addressing each item listed in the N.D. Cal.'s Standing Order. Although drafts were exchanged for a Joint CMS, the parties could not fully agree on a joint presentation of the issues given the limited number of iterative exchanges feasible by the Court's deadline. Kohn therefore submits his statement separately.

**1. Jurisdiction and Service**

This Court has subject matter jurisdiction over Kohn's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Kohn's state law claims pursuant to 28 U.S.C. § 1337(a). All filings have been, and will continue to be, appropriately served.

**2. Facts**

On August 31, 2020, Plaintiff filed a first amended complaint (FAC)[1] asserting federal and state disability discrimination claims against Defendants, including facial challenges to the State Bar's procedures for handling disability-based requests for accommodations; policies for some disabled applicants on the October 2020 exam to be required to test at in-person test centers instead of the remote testing modality offered standard; and denials of certain accommodation requests Kohn made for the February 2019, February 2020, and October 2020 exams. Dkt.32.[2] The FAC sought damages, injunctive relief, attorneys' fees, expenses, costs, and pre-judgment and post-judgment interest. *Id*. Concurrent with the FAC on August 31, 2020, Kohn filed a renewed motion for preliminary injunction motion, seeking that Defendants be

[1] The FAC originally filed on August 31, 2020 was mistakenly mislabeled as a motion for leave to file an FAC, and an otherwise identical document was refiled as the correct filing type on September 7, 2020. The original filing was made on the FRCP 15(b)(1) deadline, four days after the issuance of the State Bar's administrative decision for the October 2020 exam, accompanied by a concurrent motion for preliminary injunction in connection with that exam.

[2] Kohn filed his initial complaint on July 18, 2020, and asserted Title II, Rehabilitation Act, and Unruh Act claims. Dkt.1. He concurrently filed a motion for preliminary injunction, (Dkt.2), which the court denied as unripe on August 13, 2020, (Dkt.26). Defendants moved to dismiss the complaint on August 10, 2020 (Dkt.22) and Kohn amended on August 31, 2020 (Dkt.30).

compelled to provide requested accommodations and remote testing for the October 2020 exam. Defendants opposed the preliminary injunction, which was subsequently denied (Dkt.26), and on September 21, 2020, filed a motion to dismiss the FAC, pursuant to FRCP rules 12(b)(1) and 12(b)(6). Dkt.34. On October 27, 2020, this Court granted Defendants' motion to dismiss and dismissed the FAC with prejudice. Dkts.41–42. Kohn appealed. Dkt.44. The appeal resulted in the following decisions: *Kohn v. State Bar of California*, 87 F.4th 1021, 1037 (9th Cir. 2023) (en banc), *cert. denied*, 144 S. Ct. 1465 (2024) (Dkt.56) ("*Kohn I*"); *Kohn v. State Bar of California*, No. 20-17316, 119 F.4th 693 and 2024 WL 4533446 (9th Cir. 2024), *cert. denied,* No. 24-6921, 2025 WL 2823867 (2025) (Dkts.60–61) ("*Kohn II*"). The mandate issued on October 14, 2025 (Dkt.69).

**<u>Kohn's Position on Law of the Case:</u>**

While the Ninth Circuit did not overturn this Court's denial of leave to amend for the Rehabilitation Act claims, Kohn reserves any right to seek enlarged leave to amend concerning the Rehabilitation Act claims from this Court pursuant to, *i.e.*, FRCP 60, based on facts and evidence discovered after dismissal, during the pendency of his appeal–much of which through disclosure by the State Bar–contradicting the declaration of its then-CFO John Adams, which was relied upon in this Court's October 21, 2020 order dismissing the Rehabilitation Act claims with prejudice and without leave to amend pursuant to a factual challenge to its subject matter jurisdiction asserted under Rule 12(b)(1). That declaration had denied the State Bar's direct receipt of federal financial assistance in 2020 to the best of Mr. Adams's knowledge.

Kohn concedes the holding that the State Bar is an arm of the State constituted law of the case, but notes two potential intervening developments he reserves the right to argue permit revisiting that issue pursuant to any applicable exceptions to that doctrine:

(1) The U.S. Supreme Court's subsequent grant of *certiorari* to two consolidated petitions concerning harmonization of the test for whether a State instrumentality is an "arm of the State" that shares its sovereign immunity, including on the question of: "whether a State's formal financial liability for a judgment against a state-created entity carries more weight in assessing whether that entity is an arm of the State than other factors, including the State's own

characterization of that entity?" See pending appeals in U.S. Supreme Court Nos. 24-1021, 24-1113 (*N.J. Transit Corp. v. Colt* and *Galette v. N.J. Transit Corp.*). If the Supreme Court's disposition of these appeals produces a test or analysis materially different from that applied by the Ninth Circuit herein, Kohn reserves the right to revisit this issue;

(2) The California Supreme Court's promulgation of relevant, intervening changes to California law (California Rules of Court) that govern the State Bar on September 25, 2025, that was expressly relied upon in evaluating the "State Control" arm-of-the-State factor in *Kohn I*. See 87 F.4th at 1031 (an arm of the State determination applies "unless and until there are relevant changes in the state law governing the entity"). Specifically, the Ninth Circuit *en banc* panel majority relied upon the requirements that the California Supreme Court approve any amendments to the State Bar's admission rules, including those pertaining to accommodation requests like those here. 87 F.4th at 1035, citing Then-Cal. Rules Ct. 9.5. However, the California Supreme Court subsequently repealed this requirement, Sept. 25, 2025 administrative order in Cal. Sup. Ct. No. S290966, and proceeded to interpret its amended rules of court as authorizing the State Bar's CBE and Board to independently amend admission rules concerning accommodation procedures without the California Supreme Court's approval, Oct. 22, 2025 administrative order in Cal. Sup. Ct. No. S285541. That Court relied upon this conclusion to dismiss a petition by the State Bar for amendments to those rules, allowing the State Bar's proposal to take effect without that Court making a judicial determination on the proposed rules' lawfulness or policy propriety, both of which had been challenged by applicant Shirleen Claiche (who Kohn represented), and a large coalition of disability rights public interest organizations. *Id.* The California Supreme Court thereby also declined to address the alternative amendments to those procedures counter-proposed by those respondents. *Id.* Kohn accordingly reserves the right to argue that these changes in California law constitute a sufficient diminishment of California's degree of State control over the State Bar to permit reassessment of whether it constitutes an arm of California for sovereign immunity purposes.

**Issues Roadmap:** Due to the preliminary need for this Court to assess the complexity of the issues this case will raise for the pending motions to appoint pro bono counsel (Dkts. 64, 72),

which is the most pressing matter for this Court to decide, Kohn will provide greater detail than is customary for an initial case management statement as to the numerous layers of nested, consequential legal issues this Court will need to untangle here even to resolve Defendants' remaining arguments for dismissal of the forthcoming SAC, let alone augmentation of the appropriate factual record by development of medical expert opinion witnesses as expected at later stages. The following roadmap is still both preliminary and illustrative, and is not intended to identify all issues nor to fully brief any issue discussed.

**Kohn's Title II Issues Roadmap:**

Damages are available under Title II of the ADA for violations thereof committed intentionally or with deliberate indifference. Kohn intends for the SAC to argue several distinct categories of Title II violations, each constituting one or more of the three disparate treatment, disparate impact, and failures to reasonably accommodate Title II violation types, *see Payan v. L.A. Community College Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (delineating the types of Title II claims, and affirming that beyond proscribing disparate treatment against the disabled and failures to reasonably accommodate individuals with disabilities, Title II independently proscribes policies that adversely disparately impact the disabled as a class).

Summary of Title II Claim Types Kohn Intends to Plead in SAC:

Most fundamentally, Kohn will assert both facial and as-applied challenges to the State Bar's accommodation request, review, and appeal procedures in effect at the relevant times, both under the ADA and the Fourteenth Amendment; and that its maintenance and enforcement of said procedures–and related policies and practices–was committed with: (i) at least deliberate indifference to federally-protected rights, and knowingly inconsistent with U.S. Department of Justice guidelines on testing accommodations;[3] and (ii) in some instances with intent to minimize the administrative workload of admissions staff by deterring applicants from exercising their rights, *i.e.* by causing initial decisions on accommodation requests to issue right

[3] Kohn argues that these U.S. Department of Justice guidelines are *Auer*-deference-entitled interpretations of regulations that have binding effect, even if the guidelines did not adduce new legal requirements beyond those regulations it interpreted.

after the deadline to submit an appeal, or with a capriciously short deadline timed to run over the holiday season, depending on the timing of the initial submission.

Kohn will further assert that the State Bar's October 2020 exam "Forced In-Person Policy" concerning exclusions from then-standard remote testing eligibility for applicants approved certain accommodations–on the basis that adapting examination security methods for remote testing to those accommodations would lead to an increase in the administrative workload for admissions staff and/or incur additional expenses–also constituted all three of disparate treatment, disparate impact, and–as applied to him–failure to reasonably accommodate Title II violations; was deliberately indifferent to federally-protected rights; and also violated his Fourteenth Amendment rights, including under the state-created danger doctrine.

Kohn will also plead failure to reasonably accommodate claims, with deliberate indifference, arising from Defendants' substantive testing accommodation denials for the February 2019, February 2020, and October 2020 exams, and intends the SAC to clarify the administrative record concerning the nature and bases for his accommodation requests on each exam, which the original complaint and FAC did not adequately or accurately plead. Kohn will further plead that Defendants' proctoring of his July 2018 bar exam constituted disparate treatment and disparate impact Title II claims with deliberate indifference.

Sovereign Immunity Analysis for Title II Claims:

Assuming–without conceding–that the State Bar is an arm of California and that State sovereign immunity in federal court applies to claims brought under federal question jurisdiction, this Court must apply *U.S. v. Georgia*, 546 U.S. 151 (2006) to determine whether Congress effected a valid abrogation of sovereign immunity for those claims–as it expressly sought to do for all ADA claims through 42 USC 12202. This first requires claim-by-claim sifting among the asserted Title II claims to determine which claims: (i) are invalid under Title II (if any); (ii) are valid Title II claims premised on conduct that also violates the Fourteenth Amendment, for which any immunity is validly abrogated; and (iii) valid Title II claims premised on prophylactic immunity abrogation, for which the Court would need to decide whether Congress had the Constitutional authority to validly do so for the class of conduct at

issue here: the administration of a bar exam. Here, Kohn anticipates that the SAC will plausibly plead coextensive Fourteenth Amendment violations for many–if not all–of his Title II claims, through procedural due process violations, state-created danger doctrine–*Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023)–substantive due process violations, and equal protection violations. This Court had previously held in its Oct. 27, 2020 ruling that there was no threshold protected interest implicated by bar exam accommodations for purposes of Constitutional due process, but consistent with binding precedents, Defendants conceded a threshold protected liberty interest was implicated even if they argued Kohn received all the process that he was due. Ninth Circuit No. 20-17316, Dkt.66, p.33; *Schware v. N.M. Bd. of Bar Exam.*, 353 U.S. 232, 238 (1957); *Hallinan v. CBE*, 65 Cal.2d 447, 452 n.3 (1966). Nonetheless, an assessment of prophylactic abrogation will likely be required for at least some of Kohn's Title II claims.

At the third *Georgia* step, even assuming–without conceding[4]–that Congress only has the Constitutional authority to prophylactically abrogate immunity for classes of conduct where either the States effected an "immunity surrender in the plan of the Convention" implied by the Constitution's structure, or where Congress satisfied the *City of Boerne v. Flores*, 521 U.S. 507 (1997) test to effectuate such abrogation pursuant to Section 5 of the Fourteenth Amendment, Congress had the requisite authority to do so for bar exam claims. The Supreme Court has already resolved most of the *Boerne* analysis for Title II upon which prophylactic immunity abrogation would be validated at the third *Georgia* step. As at least three circuits have agreed post-*Georgia*,[5] and another three circuits–including the Ninth Circuit–have held without intervening precedent *on that point*:[6] the Supreme Court in *Tennessee v. Lane*, 541 U.S. 509,

---

[4] Kohn will preserve for future appeals whether *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) wrongly limited Congressional power to abrogate State sovereign immunity to Section 5 of the Fourteenth Amendment absent a "plan of the Convention" immunity surrender, as opposed to Congress enjoying broader powers to do so under other Constitutional provisions.

[5] *Bowers v. Nat'l Coll. Athletic Ass'n*, 475 F.3d 524, 553 (3rd Cir. 2007); *Klingler v. Dir.,* 455 F.3d 888, 896 (8th Cir. 2006); *Nat'l Ass'n of Deaf v. Fla.*, 980 F.3d 763, 772 (11th Cir. 2020).

[6] *Constantine v. Rectors*, 411 F.3d 474, 487 (4th Cir. 2005); *McCarthy v. Hawkins*, 381 F.3d 407, 423 (5th Cir. 2004); *Phiffer v. Colum. River Corr. Inst.*, 384 F.3d 791 (9th Cir. 2004).

522-35 (2004) held the first two *Boerne* prongs satisfied for all Title II claims, and all three *Boerne* prongs satisfied for Title II claims implicating "judicial services," leaving open which scope of Title II claims satisfy the third prong beyond that. The Supreme Court explained that, because Title II is sweeping non-discrimination legislation that applies to all public services, programs, and activities, it would be impracticable for Congress to anticipate–let alone justify with evidence–every context in which that law may apply. *Id* at 529-31. Thus, the Supreme Court rejected the proposition that Congress was required to do so to make an adequate legislative record to support prophylactic immunity abrogation. *Id*. Before *Kohn II*, pre-*Georgia* Ninth Circuit precedent established that all three *Boerne* prongs were satisfied for all Title II claims, if not expressly relying on *Lane*. Those holdings are still binding on this Court for the first two *Boerne* prongs, as *Kohn II* had not expressly held *Georgia* "clearly irreconcilable" for all three prongs, and can be read consistent with Circuit consensus as premising its holding that *Phiffer* was clearly irreconcilable with *Georgia* only to application of the third *Boerne* prong. As the three-judge panel was only authorized to overrule circuit precedent that was clearly irreconcilable with *Georgia*, the extent of circuit precedent disturbed should be read as narrowly as possible and to only constitute the minimum purportedly required to bring the analysis into compliance with *Georgia*.

Next, the Court would need to define the scope of the class of conduct for which subset of Title II it would apply the third "congruence and proportionality" *Boerne* prong, and whether it implicates the very "judicial services" for which the Supreme Court already held it satisfied in *Lane*. As attorney licenses are issued by the California Supreme Court, which Court generally requires passing this exam to obtain, the bar exam class of conduct does implicate judicial services, not just occupational licensing. Therefore, upholding prophylactic immunity abrogation here is required by *Lane*.

Even if judicial services were not implicated by this class of conduct and further analysis is required, its breadth would still span an *occupational* licensing[7] and educational testing crossover, and applying Title II's requirements and remedies to that context would be congruent and proportional. Education is implicated because the exam is designed to assess legal education and affects whether graduates may fully utilize it to become contributing members of society[8]–and also as both the exam content and alumni passage statistics are used to regulate and accredit law schools, and to influence their curriculum. *See, e.g.*, State Bar Rule 4.160(D)(4)(d); Cal. Bus. & Prof. Code § 6060; 42 U.S.C. § 12101(a)(7)-(8).

In any event, Title II's requirements and remedies are congruent and proportional to the extensive body of Congressional findings regarding States' unconstitutional disability discrimination held in *Lane*; see also 154 CONG. REC. H8286, 8296 (Sept. 17, 2008) (ADAA Congressional findings regarding standardized testing). First, in *Lane* the Supreme Court opined that the breadth of Constitutional rights Congress intended Title II to enforce, not merely the judicial scrutiny afforded when such rights are asserted, shapes congruence and proportionality review. *Id* at 522-35. On that basis, the *Lane* Court distinguished Title II–which it noted Congress intended to enforce virtually all Constitutional rights disabled individuals possess–with Title I of the ADA, where the narrower scope of rights Congress intended to enforce had resulted in a different outcome in *Garrett*. *Id*; see also Derek Warden, *Abrogation of State Sovereign Immunity in Kohn v. State Bar of California*, a scholarly article about this case by a law clerk to Louisiana Supreme Court Justice Piper Griffin, available at: https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4563450. Second, for this class of conduct, the judicial scrutiny afforded to the Constitutional rights implicated thereby under existing law[9] varies from the "with bite" rational basis variant (more searching than traditional rational basis review)–the floor both for generic disability discrimination under the Equal Protection Clause if

---

[7] The U.S. Department of Justice discusses at length the significance of the distinction between *occupational* and *professional* licensing in its 10th Cir. brief supporting rehearing in *Guttman v. Khalsa* (*Guttman II)*, 669 F.3d 1101, 1117 (10th Cir. 2012), and argues why the former is an apter analysis than the latter approach applied by the Tenth Circuit–there for physician licensing discipline–and later imported by the Second Circuit to the bar exam in *T.W. v. N.Y. Bd. of L. Examiners (T.W. II)*, 110 F.4th 71, 83 (2nd Cir. 2024).

[8] See *Nat'l Ass'n of Deaf*, 980 F.3d at 772 (11th Cir. 2020).

[9] Kohn will preserve for appeal whether disability discrimination should be reviewed with at least intermediate scrutiny under the Equal Protection Clause.

not intersecting another right, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 466 (1985), and also independently for State occupational restrictions–to strict scrutiny where the conduct increases the risk of bodily harm, not just an inferior opportunity to have exam performance fully and accurately reflect aptitude for the tested knowledge and skills. *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (if state action ordinarily subject to rational basis intersects an interest subject to strict scrutiny, the state action is reviewed with strict scrutiny); *Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023) (reciting legal standard for "state-created danger" substantive due process claims under the Fourteenth Amendment). Third, the attorney admission context is especially apt for finding Title II is congruent and proportional, because of the unique role attorneys and judges have in enforcing the Constitutional rights of individuals with disabilities that Congress intended Title II to advance, and whose Constitutional rights are better protected by improved representation of the disabled in the legal profession and judiciary. According to the State Bar, only 5-6% of California attorneys report having a disability, while the Judicial Council of California has indicated only about 2% of California judges so report[10]–both in stark contrast to California's adult population, at least 23% of whom report having a disability. This underrepresentation of the disabled in the legal profession and judiciary not only illustrates the disparate impact that the State Bar's procedures, policies, and practices have on applicants with disabilities, but also undermines the enforcement of Constitutional rights that Congress intended Title II to deter and remedy violations of, both for the public generally and the disabled especially. The public is harmed by attorney shortages resulting from the improper exclusion of otherwise qualified law graduates with disabilities just because the State Bar accommodating their disabilities might cause inconvenience to its staff, and attorneys and judges with disabilities also have unique insights and perspectives that should be fairly represented among advocates and the judiciary alike to ensure a fairer legal system and access to justice. Fourth, Title II's *requirements* are thus congruent and proportional in this context, because Congress tailored them to maximizing *equal* access to public services without causing fundamental alterations or undue burdens, and so to minimize *inferior* access thereto caused by disability-related functional limitations, and not as, *i.e.*, an affirmative action requiring *superior* access to compensate for all unrelated life

[10] *See* https://publications.calbar.ca.gov/2022-diversity-report-card/diversity-2022-california-licensed-attorneys (State Bar); https://www.courts.ca.gov/documents/2022-JO-Demographic-Data.pdf (Judicial Council).

disadvantages disabilities might cause in outside contexts. Title II's *remedies* are congruent and proportional in this context, because the *Ex Parte Young* doctrine renders abrogation of States' immunity to prospective injunctive relief claims minimally intrusive, while for damages claims Title II narrowly tailors that remedy to intentional or deliberately indifferent violations. Kohn posits that state actors' intentional or deliberately indifferent violations of rights or duties validly imposed by federal statute–in contexts where the plaintiff has Constitutionally-protected liberty and/or property interest(s)–will generally either state procedural due process violations or at least hew closely enough to the deterrence and remediation of States' Constitutional violations to warrant prophylactic sovereign immunity abrogation.

**Unruh Act Issues Roadmap:**

To analyze under Rule 12(b)(6) whether Kohn has stated a claim under the Unruh Act, the Court will need to determine, through a nested entity-or-activity analysis, whether the SAC plausibly pleads facts that establish either the State Bar generally–or alternatively its bar exam function–are covered by the Unruh Act, applying the standard in *Brennon B. v. Superior Court*, 13 Cal. 5th 662, 682 (2022). This would be satisfied either by establishing the State Bar is a "business establishment of any kind whatsoever" within the esoteric meaning of the act developed by California case law, or by establishing its administration of the bar exam has sufficiently "businesslike" attributes. Next, assuming this threshold coverage, the Court would also need to assess to what extent Kohn states the predicate Title II violations, though the California Supreme Court has resolved that, unlike for the federal claims directly under Title II, Unruh's remedies–including damages–are available for any Title II violation, without the precondition that the violation was committed intentionally or with deliberate indifference. *Munson v. Del Taco, Inc.*, 46 Cal.4th 661 (2008).

After identifying the extent to which the SAC States Unruh claims, and assuming the vitality of some Title II claims or other discretionary exercise of supplemental jurisdiction, the Court would also need to address any assertions by Defendants that some or all of those Unruh claims are barred by sovereign immunity in federal court, or else by the California Government Claims Act. The SAC will adduce extensive further facts regarding Title II violations, CGCA compliance (i.e. post-FAC claim rejections), the State Bar's attributes supporting a finding it's a

business establishment as the Act uses that term, and the bar exam's attributes supporting a finding it's a businesslike function.

Threshold Coverage Under *Brennon*:

On the issue of statutory coverage, Kohn will argue, among many other supporting facts, that administering the bar exam is far more businesslike than Constitutionally-mandated gratuitous provision of public education at issue in *Brennon*. For example, the regular exam registration fees applicants pay the State Bar, coupled with the California Supreme Court's policymaking discretion over whether and how the State Bar uses the exam in its recommendations for that Court's attorney admission decisions–instead of a mandate enshrined in the California Constitution–distinguish the exam from public education. Notably, the California Supreme Court's policy to typically only admit applicants who've passed the bar exam is identical to that for the NCBE's MPRE, and also analogous to how State universities require credentials from particular standardized test vendors to grant admission, and makes the State Bar's exam services just as businesslike as these vendors and especially like the NCBE, which in many jurisdictions performs *every* attorney-admission function the State Bar does for the California Supreme Court.

Sovereign Immunity:

The Court will primarily need to decide to what extent the forthcoming amendments to the Unruh claims in the SAC invalidate the State Bar Defendants' waiver of any sovereign immunity–as held to have occurred in this case by the Ninth Circuit as to those claims in the FAC–to some or all of those claims as amended.

If there are any Unruh claims for which the Court finds the prior waiver invalidated and the State Bar has asserted sovereign immunity against, Kohn also reserves the right to alternatively argue independent reasons why sovereign immunity does not bar his Unruh claims–or preserve challenges to precedent binding on this Court for future appeal–including: (1) that the California Legislature waived any immunity for state law Unruh Act claims that would apply to the State of California or its arms within the confines of the statute, especially since it intentionally incorporated the federal ADA into the Unruh Act, and thereby expressed an intent to subject covered entities to federal jurisdiction in that regards; (2) that separately or together, compliance with the California Government Claims Act also effected a valid waiver of

sovereign immunity, even in federal court; (3) that State sovereign immunity in federal court applies only to claims premised on diversity jurisdiction; and (4) that should an exception to the law of the case doctrine be present or manifest prospectively, the State Bar is not an arm of the State.

**Motions**

Currently pending since October 22, 2025, is Kohn's Motion for Kathleen Becket and Andrew Rozynski to Be Appointed Pro Bono Counsel (Dkt.72) pursuant to Kohn's prior motion to appoint pro bono counsel which was filed on January 9, 2025, before mandate had issued.[11] Dkt.64. The State Bar has indicated it does not oppose the request for counsel to be appointed.

The parties agree that the Case Management Conference may proceed as scheduled for November 6, 2025, even if the motion to appoint pro bono counsel is pending, though Kohn nonetheless respectfully requests that it be ruled upon in advance of the CMC, and failing that be addressed during the CMC. The parties agree that the pending motion to appoint pro bono counsel may impact other deadlines, including the deadline to file a Second Amended Complaint.

Defendants anticipate moving to dismiss the forthcoming Second Amended Complaint. The parties agree that scheduling matters should be determined at the Case Management Conference, but were unable to agree on a deadline for the Second Amended Complaint.

**Amendment of Pleadings**

As discussed, Kohn intends to file a Second Amended Complaint. The parties anticipate that the SAC will include claims arising under (1) Title II of the Americans with Disabilities Act and (2) California's Unruh Act; however, Kohn does not waive his right to move for leave to add Rehabilitation Act claims or relief pursuant to FRCP 60. The prayer for damages will also be amended.

The parties agree that there should be a briefing schedule for the motion, opposition, and reply, and that due to the complexity of the issues, the parties will each need more time than set

[11] Kohn was represented by counsel, Matthew Selvagn, from the filing of his initial complaint through the ruling dismissing the FAC. Mr. Selvagn's representation terminated on November 30, 2020. Mr. Kohn was appointed pro bono counsel for his Ninth Circuit appeal.

forth in Civil L.R. 7-3 for responsive pleadings. The parties have discussed and generally agree that a 35/30/15 briefing schedule for the motion to dismiss would be reasonable and appropriate, and once the deadline to file the SAC is set, the parties are confident they will be able to agree on a briefing schedule.

However, the parties could not reach agreement on the deadline for filing the SAC. Kohn maintains the SAC deadline requests he asserted in the pending Motions to Appoint Pro Bono Counsel, for the reasons argued in those motions. The FAC was botched by the circumstances discussed at Dkt.64, so the SAC factual presentation needs to be rewritten from scratch, not lightly edited. Notably, the FAC had not been a meaningful opportunity to make corrections in part because Rule 15(b)(1) required that to file it as of right, it be filed only four days after the State Bar issued its administrative decision for the October 2020 exam, and that this time was largely required to work on the concurrent renewed motion for preliminary injunction that had been equally urgent at the time. Due to the exigent circumstances surrounding the instantiation of this suit, and the original amendments, the SAC will be a first, not a third or even second, meaningful attempt at refining these facts and claims.

Beyond repairing the original deficiencies with the FAC, Kohn intends to adduce massively expanded factual pleadings regarding relevant facts; both those in the voluminous administrative record attached to Dkt.64, and those not yet in the record gleaned from years of voluminous public records request productions and interactions with the State Bar over years of public meetings and rules revision initiatives. Most of the work of drafting the SAC will be identifying–and cohesively and clearly narrating–this considerable fact posture and for the first time properly itemizing all of the types and counts of Title II and Unruh claims he asserts. Even assuming omission of the claims on which Kohn does not have leave to amend, there would be only a de minimis reduction in work and complexity in drafting the SAC would result, contrary to Defendants' argued basis for less time being required, because the Rehabilitation Act claims would have been coextensive with the Title II claims except for additional facts regarding the State Bar's receipt of federal financial assistance Kohn largely already had drafted, even if they would have a different sovereign immunity analysis than Title II claims will.

Moreover, Kohn's chronic conditions require extensive inelastically scheduled medical treatment currently comprising 8-15+ medical appointments on average per week, with complex pharmacy and insurance overhead tasks and many hours per week of transit time. Kohn's unusually generous health insurance coverage to date and through 2025 was received through a voluntary policy of his father's employer, which was recently acquired by another corporation that offers far less generous health insurance benefits. Kohn will consequently need to transition to a far less expansive plan–which needs to be thoroughly researched and timely selected–and considerable transition of care arrangements need to be researched and accomplished before 2026, or for some providers early in 2026, which may include a completely reshuffled compilation and pursuit of gap exception requests as the networks shift among Kohn's dozens of specialized health care providers.

A lot of the benefit of the stay of mandate to progressing on SAC drafting around Kohn's substantial medical needs and assisting Mr. Rozynski on the cert petition and reply was diverted to pro bono and low bono assistance to others by the explosion of applicant needs for legal advice, political lobbying, and legal representation stemming from calamities with the February 2025 bar exam; its precursor extraordinary circumstances like the bar exam experiment; and the effects of its fallout on the State Bar's options for multiple choice questions, and consequential shifts in position on key prior voluntary reforms involving remote testing caused by the increased reliance on the NCBE, that Kohn felt (and feels) morally compelled to provide. Indeed, most of these same matters continue to take up a substantial portion of Kohn's impact advocacy time, which this case is but one piece of. Most of this impact advocacy must be done on personal time Kohn can survive expending without monetary compensation despite high health care needs.

Kohn estimates that completing the SAC would still require more than 100 additional hours of his time, even with the assistance of counsel once a first draft is complete (and after which considerable collaboration with any counsel would be needed). Between a first draft and any deadline, prospective counsel would need to get up to speed on this extraordinarily complex

case and collaborate on editing, expanding, and restructuring it without unduly burdening them (or Kohn), especially over the holiday season and in light of their pro bono generosity.

For the foregoing reasons, Kohn proposes that the SAC be filed February 10, 2026, or 90 days after the motion to appoint pro bono counsel is decided, whichever is later.

3. Evidence Preservation:

Although the parties agree that discovery is premature for the reasons discussed below, the parties have undertaken steps to preserve evidence relevant to the issues reasonably evident in this action.

4. Disclosures: See below, No. 8.

5. Discovery

To facilitate a tentative position pending the Court's decision on the motion to appoint pro bono counsel, Kohn agrees that the jurisdictional issues are not anticipated to require additional discovery, unless the State Bar Defendants raise any factual jurisdictional challenges under Rule 12(b)(1), or as appropriate to facilitate resolution of a Rule 60 motion should he make one. Absent either of those circumstances, he tentatively agrees that the pleading stage Rule 12 issues should be determined before the parties expend resources on full discovery or trial preparation. He asks that this position not bind him or prejudice any contrary one if the advice of counsel he might subsequently access departs from the above.

9. Class Actions: Not Applicable.

10. Related Cases: None.

11. Relief:

Kohn will seek compensatory, statutory, and punitive damages to be identified and accounted in the forthcoming Second Amended Complaint; reasonable attorney fees, expert fees, and litigation expenses; any court costs; pre-judgment and post-judgment interest; and such other relief as the law might allow that is just and proper in the circumstances.

12. Settlement and ADR:

The parties have complied with ADR L.R. 3-5(b) and Civil L.R. 16-8 (b). Dkts.39–41.

Other References:

This matter is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

13. Narrowing of Issues:

As discussed in the Legal Issues section above, No. 3, the issues in this case have been narrowed by the Ninth Circuit's decision and order. Dkts.40–41.

14. Scheduling: See above, No. 4.

15. Trial:

Based on the threshold jurisdictional issues the Court must first decide, the parties agree it is appropriate to defer trial preparation until after the pleadings are settled.

16. Disclosure of Non-party Interested Entities or Persons:

Kohn is not aware of any intervening changes since 2020 to any positions concerning conflicts, interested entities or persons, or citizenship. He is a citizen of the United States and of California residing in the Northern District of California. He is unaware of any corporation with a financial interest in this case, or such interest by any other individual other than past and prospective counsel who may be entitled to a fee award if he achieves prevailing party status. Kohn is unaware of any conflicts between the assigned judge and the parties to this case. If the Court requires any new certificates be filed to perfect compliance with any Civil Local Rules at this point, he respectfully requests it defer any such requirement pending its decisions on the motion to appoint pro bono counsel, and set a clear and reasonable deadline once those motions have been decided.

Other: Federal Rule of Civil Procedure 5.1

As Defendants' own CMS, Dkt.73, admits, Defendants challenge the Constitutionality of 42 U.S.C. 12202, which provides express abrogation of State sovereign immunity for ADA claims, on the basis that Congress purportedly did not act pursuant to a valid grant of Constitutional authority in enacting the same, at least as applied to claims in this context.

Defendants did not notice an identical challenge in this Court when seeking to dismiss the original complaint or the FAC, and Kohn posits that certification was improperly avoided

then. Defendants similarly did not notice that challenge in the Ninth Circuit, and unsuccessfully opposed certification when Kohn requested it in the Ninth Circuit. Although they equivocate on framing their challenge as such prior to seeing the SAC where discussing this issue in their CMS, the rest of their CMS confirms that Defendants continue to contest Congress's Constitutional authority to have validly enacted 42 U.S.C. 12202, just as it has throughout its prior filings in this Court and in the Ninth Circuit. There is no conceivable, let alone plausible, iteration of how Kohn might plead his SAC on which it could be reasonably anticipated Defendants might drop this challenge, at least based on the precise nuances of the SAC. Re-certification to the U.S. Attorney General of that challenge is thus ripe and mandatory pursuant to FRCP 5.1 and 28 U.S.C. 2403. See Ninth Circuit No. 20-17316 Dkt.83 (holding that this very challenge required certification herein pursuant to FRAP 44 and 28 U.S.C. 2403, and making said certification over the State Bar's objections). Although Defendants' CMS argues that the Ninth Circuit's prior certification is a reason not to make one in this Court–and misleadingly frames that certification as voluntarily made by Defendants and not by the Court over Defendants' opposition–the U.S. Department of Justice's reasons for not intervening in response to the Ninth Circuit's notice in 2022 have all been undermined by the subsequent decisions in the case, and the Ninth Circuit's decision to certify inescapably rejected their position argued in their CMS that certification need not be made because their challenge is "as applied," which Defendants also had unsuccessfully argued to the Ninth Circuit. *Id*; Ninth Circuit Dkt.96 (DOJ response in Ninth Circuit that intervention would be premature for this challenge as it expected that the Rehabilitation Act and Arm-of-the-State questions then live in the appeal would prevent the Ninth Circuit from reaching Title II's prophylactic immunity abrogation validity, both of which assumptions have been undermined by the Ninth Circuit's intervening decisions in this case to hold that the State Bar is an arm of the State, and to affirm the dismissal with prejudice of Kohn's Rehabilitation Act claims).

Given the above, the plain text and purpose of the statutory and procedural rules as already construed and applied by the Ninth Circuit, the litigation economy interest in having any briefing offered by the United States sufficiently prior to the deadline for any opposition

briefing to Defendants' intended motion to dismiss the intended SAC to allow both parties a fair opportunity to respond–and the lead time of at least 60 days for a response from the U.S. Department of Justice under the rule–Kohn respectfully requests that this Court issue the certification to the U.S. Attorney General by the Case Management Conference, or at least upon the filing of the SAC, unless the State Bar Defendants agree to forego their prior challenges to the Constitutionality of 42 U.S.C. 12202 as applied to the claims in this case.

Dated: October 30, 2025

Benjamin Kohn, *Pro Se* Plaintiff

By: */s/ Benjamin Kohn*
1913 Fordham Way
Mountain View, CA 94040
(650) 919-3584
Benjamin.s.Kohn@gmail.com