ELLIN DAVTYAN (238608)
General Counsel
KIRSTEN GALLER (227171)
Deputy General Counsel
JENNIFER SPERLING (310551)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
845 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 765-1008
Email: Jennifer.Sperling@calbar.ca.gov

BRADY R. DEWAR (252776)
Assistant General Counsel
JEAN R. KRASILNIKOFF (280450)
Assistant General Counsel
THE STATE BAR OF CALIFORNIA
OFFICE OF GENERAL COUNSEL
180 Howard Street
San Francisco, CA 94105-1639
Telephone: (415) 538-2309

Attorneys for Defendants
THE STATE BAR OF CALIFORNIA;
CALIFORNIA COMMITTEE OF BAR
EXAMINERS

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN KOHN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,<br><br>Defendants. | Case No.: 4:20-cv-04827-PJH<br><br>**THE STATE BAR OF CALIFORNIA AND COMMITTEE OF BAR EXAMINERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: December 17, 2026<br>TIME: 1:30 p.m.<br>COURTROOM: 3, 3rd Floor<br>JUDGE: HON. PHYLLIS J. HAMILTON |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO PLAINTIFF IN PRO PER:**

**PLEASE TAKE NOTICE** that on December 17, 2026, at 1:30 p.m., or as soon thereafter as this matter may be heard, before Judge Phyllis J. Hamilton, Courtroom 3, 3rd Floor, of the United States District Court for the Northern District of California, located at the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, Oakland, CA 94612, defendants State Bar of California and Committee of Bar Examiners (together hereinafter, the "State Bar") will and hereby do move the Court for an Order dismissing Plaintiff Bejamin Kohn's Third Amended Complaint ("TAC") based on:

**Lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)** because (1) the State Bar is an arm of the State of California and therefore entitled to sovereign immunity against Kohn's federal and state-law claims because the Ninth Circuit's decision remains binding after *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026), and (2) under the three-step test of *United States v. Georgia*, 546 U.S. 151, 159 (2006), Congress has not validly abrogated that sovereign immunity as to Kohn's claim under Title II of the Americans with Disabilities Act because (a) Kohn fails to plausibly allege any violation of Title II, (b) even if a Title II violation were plausibly stated, Kohn does not allege conduct violating the Fourteenth Amendment, and (c) Congress lacks authority to abrogate immunity in this context involving professional licensing.

**Failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)** because, even if the Court had jurisdiction over Kohn's federal and state-law claims (which it does not) (1) the TAC fails to plead facts sufficient to state any claim under Title II or any available remedy; and (2) Kohn's Unruh Act claim under California Civil Code sections 51–52 fails as a matter of law because Kohn (a) did not comply with the California Government Claims Act, (b) the State Bar is not a business establishment for purposes of the Unruh Act, and (c) Kohn's Unruh Act claims are derivative of his Title II theories, which themselves fail.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently

herewith, and records incorporated therein, all pleadings and papers on file in this action and any related actions, and oral argument as may be presented to the Court.

Dated: July 24, 2026                    STATE BAR OF CALIFORNIA
                                        OFFICE OF THE GENERAL COUNSEL


                                        By: /s/ JENNIFER SPERLING
                                            JENNIFER SPERLING
                                            Assistant General Counsel
                                            Attorneys for Defendants
                                            THE STATE BAR OF CALIFORNIA and
                                            CALIFORNIA COMMITTEE OF BAR
                                            EXAMINERS

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................2

      A.      The State Bar of California Administers the California Bar Exam as
Administrative Arm of the California Supreme Court .................................2

      B.      The State Bar Testing Accommodation Process ........................................3

      C.      Kohn's Attempts to Pass the Bar Exam and Initiation of This Lawsuit................3

      D.      Relevant Procedural History and the TAC.................................................7

III.    LEGAL STANDARD ..........................................................................................8

IV.     ARGUMENT .......................................................................................................9

      A.      The TAC Should Be Dismissed Pursuant to Rule 12(b)(1) Because the
State Bar Has Sovereign Immunity .............................................................9

            1.      The State Bar Is an Arm of the State Entitled to Sovereign
Immunity ...........................................................................................9

                  a.      The Mandate Rule Bars Revisiting the Ninth Circuit's
Decision That the State Bar Is an Arm of California ..................10

                  b.      Even if This Court Could Decide the Question Anew under
*Galette*, the State Bar Remains an Arm of California .................12

            2.      There Has Been No Abrogation of the State Bar's Immunity ................16

                  a.      Kohn's Claims Fail at the First *Georgia* Step Because Kohn
Has Not Alleged a Cognizable Violation of Title II Under
Any Theory of Disability Discrimination ...................................16

                        i.      The TAC Does Not Plausibly Allege Failure to
Provide Reasonable Accommodation ..............................17

                        ii.     Kohn Has Not Identified a Policy Having a
Disproportionate Adverse Effect on Disabled
Applicants......................................................................20

                  b.      Even if the Court Reaches the Second *Georgia* Step, Kohn
Has Not Alleged a Fourteenth Amendment Violation .................22

                  c.      Kohn's Claims Also Fail at the Third *Georgia* Step Because
Congress' Prophylactic Power Under Section 5 of the
Fourteenth Amendment Does Not Extend to Professional
Licensing ...................................................................................24

-iii-

i.      The Relevant Level of Inquiry Is Professional Licensing ..............................................................25

ii.     The Congressional Record Contains No Evidence of a Pattern of Unconstitutional Discrimination by States Concerning Professional Licensing ......................26

iii.    Title II's Accommodation Requirements Go Well Beyond What Would Be Proportional to Preventing Unconstitutional Discrimination ....................................27

B.     The TAC Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6)...........................................................................................................29

1.     Kohn's Title II Claim Fails as a Matter of Law and the Remedies He Seeks Are Unavailable...........................................................................29

2.     Kohn's Unruh Act Claims Fail as a Matter of Law ................................32

a.     Kohn Failed to Comply with the Government Claims Act for His Unruh Act Claim .............................................................32

b.     Kohn Fails to Establish that the Unruh Act Applies to the State Bar's Administration of the Bar Exam Which Fulfils a Public Purpose, Not a Private Enterprise.................................34

c.     Kohn's Unruh Act Claim Also Fails Because Kohn Has Not Stated a Claim for Violation of the ADA.............................35

V.     CONCLUSION ......................................................................................................35

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

# TABLE OF AUTHORITIES

**Cases**

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69,*
815 F.3d 1195 (9th Cir. 2016)......................................................................................17

*Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.,*
139 F.4th 773 (9th Cir. 2025)........................................................................................10

*Allen v. Cooper,*
589 U.S. 248 (2020) .........................................................................................24, 25, 26, 27

*Alsbrook v. City of Maumelle,*
184 F.3d 999 (8th Cir. 1999).........................................................................................28

*Arizona Dream Act Coal. v. Brewer,*
855 F.3d 957 (9th Cir. 2017).........................................................................................16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................8, 31

*Barnes v. Gorman,*
536 U.S. 181 (2002) ....................................................................................................32

*Bayer v. Neiman Marcus Grp., Inc.,*
861 F.3d 853 (9th Cir. 2017).........................................................................................30

*Bd. of Trustees of Univ. of Ala. v. Garrett,*
*531 U.S. 356 (2001)* ............................................................................................passim

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................8, 31

*Brennon B. v. Superior Court,*
13 Cal. 5th 662 (2022).............................................................................................7, 34

*Byrd v. Maricopa Cnty. Sheriff's Dep't,*
629 F.3d 1135 (9th Cir. 2011).........................................................................................8

*Cf. CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.,*
601 U.S. 416 (2024) ....................................................................................................14

*Chin v. Rutgers,*
2016 WL 2653908 (D.N.J. May 9, 2016),
*aff'd*, 697 F. App'x 751 (3d Cir. 2017) .........................................................................19

*City of Boerne v. Flores,*
521 U.S. 507 (1997) ..............................................................................................24, 27

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983) ..........................................................................................................30

*Clegg v. Cult Awareness Network,*
    18 F.3d 752 (9th Cir. 1994) ..............................................................................................8

*Cohen v. City of Culver City,*
    754 F.3d 690 (9th Cir. 2014) ..........................................................................................16

*Coleman v. Ct. of Appeals of Md.,*
    566 U.S. 30 (2012) ....................................................................................................24, 25

*Colombo v. Wash. Dep't of Natural Resources,*
    2026 WL 1999654 (9th Cir. July 10, 2026) ....................................................................12

*Constantin v. Navarrete,*
    2025 WL 770359 (N.D. Cal. Mar. 10, 2025) ..................................................................21

*Dare v. California,*
    191 F.3d 1167 (9th Cir. 1999)........................................................................................28

*DiCampli-Mintz v. County of Santa Clara,*
    55 Cal. 4th 983 (2012)....................................................................................................32

*Disabled Rts. Action Comm. v. Las Vegas Events, Inc.,*
    375 F.3d 861 (9th Cir. 2004) ..........................................................................................31

*Doe v. Cal. Lutheran High Sch. Assn.,*
    170 Cal. App. 4th 828 (2009)..........................................................................................35

*Duvall v. Cnty. of Kitsap,*
    260 F.3d 1124 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001)..............30

*Eng v. EPA,*
    172 F.4th 747 (9th Cir. 2026)..........................................................................................11

*Equal Rts. Ctr. v. D.C.,*
    741 F. Supp. 2d 273 (D.D.C. 2010) ................................................................................31

*Est. of Benson v. Guiding Hands Sch., Inc.,*
    2026 WL 1131294 (E.D. Cal. Apr. 27, 2026) ................................................................34

*Falchenberg v. N.Y. State Dep't of Educ.,*
    338 Fed. App'x 11 (2d Cir. 2009) ..................................................................................19

*FCC v. ITT World Commc'ns, Inc.,*
    466 U.S. 463 (1984) ........................................................................................................30

*Galette v. New Jersey Transit Corp.,*
    607 U.S. 509 (2026) ...................................................................................................passim

*Giannini v. Real,*
911 F.2d 354 (9th Cir. 1990)..................................................................22, 31

*Goldfarb v. Va. State Bar,*
421 U.S. 773 (1975) ......................................................................................28

*Gordon v. State Bar of California,*
2020 WL 5816580 (N.D. Cal. Sept. 30, 2020)............................................20

*Guttman v. Khalsa,*
669 F.3d 1101 (10th Cir. 2012)...........................................................24, 25, 26

*Harland v. City of W. Hollywood,*
120 Cal. App. 5th 1166 (Cal. App. 2d Dist. June 2, 2026) .......................33, 34

*Highway Comm'n of Wyoming v. Utah Constr. Co.,*
278 U.S. 194 (1929) ......................................................................................15

*Hopkins v. Clemson,*
221 U.S. 636 (1911) ......................................................................................15

*Huffman v. Lindgren,*
81 F.4th 1016 (9th Cir. 2023)........................................................................9

*Hunsaker v. Contra Costa Cnty.,*
149 F.3d 1041 (9th Cir. 1998).................................................................20, 22

*In re Att'y Disc. Sys.,*
19 Cal. 4th 582 (1998)...............................................................................3, 14

*In re Molasky,*
843 F.3d 1179 (9th Cir. 2016).......................................................................10

*In re Rose,*
22 Cal. 4th 430 (2000)..............................................................................2, 13

*Kocsis v. Delta Air Lines, Inc.,*
963 F. Supp. 2d 1002 (D. Haw. 2013) ..........................................................21

*Kohn v. State Bar of California,*
119 F.4th 693 (9th Cir. 2024).................................................................passim

*Kohn v. State Bar of California,*
2024 WL 4533446 (9th Cir. Oct. 21, 2024) ...............................................7, 10

*Kohn v. State Bar of California,*
87 F.4th 1021 (9th Cir. 2023).................................................................passim

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) ......................................................................................8

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

*Leis v. Flynt,*
   439 U.S. 438 (1979) ...............................................................................................28

*Lewis v. Clarke,*
   581 U.S. 155 (2017) ...............................................................................................15

*Loper Bright Enterprises v. Raimondo,*
   603 U.S. 369 (2024) ...............................................................................................11

*Lopez v. Garland,*
   116 F.4th 1032 (9th Cir. 2024) ...............................................................................11

*Louisiana v. Callais,*
   146 S. Ct. 1131 (2026) ...........................................................................................28

*Luong v. E. Side Union High Sch. Dist.,*
   265 F. Supp. 3d 1045 (N.D. Cal. 2017) ..................................................................31

*Lupert v. Cal. State Bar,*
   761 F.2d 1325 (9th Cir. 1985) .............................................................................9, 31

*Matter of Beverly Hills Bancorp,*
   752 F.2d 1334 (9th Cir. 1984) ................................................................................10

*Memmer v. Marin Cnty. Cts.,*
   169 F.3d 630 (9th Cir. 1999) ..................................................................................17

*Miller v. Gammie,*
   335 F.3d 889 (9th Cir. 2003) ..................................................................................11

*Mlikotin v. City of Los Angeles,*
   643 F.2d 652 (9th Cir. 1981) ..................................................................................23

*Montoya v. City of San Diego,*
   434 F. Supp. 3d 830 (S.D. Cal. 2020) ....................................................................35

*Nichols v. Ala. State Bar,*
   2015 WL 3823929 (N.D. Ala. June 19, 2015),
   *aff'd*, 815 F.3d 726 (11th Cir. 2016) ......................................................................25

*Obrien v. Jones,*
   23 Cal. 4th 40 (2000)..........................................................................................13, 15

*Payan v. Los Angeles Cmty. Coll. Dist.,*
   11 F.4th 729 (9th Cir. 2021)...............................................................................17, 20

*Pell v. Nuñez,*
   99 F.4th 1128 (9th Cir. 2024)..................................................................................23

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC        Case No. 4:20-cv-04827-PJH

*Pennhurst State Sch. & Hosp. v. Halderman,*
 465 U.S. 89 (1984) ..............................................................................................9, 29

*Pottenger v. Potlatch Corp.,*
 329 F.3d 740 (9th Cir. 2003) ......................................................................................21

*R.L. v. Merced City Sch. Dist.,*
 114 Cal. App. 5th 89 (2025) .......................................................................................33

*Raytheon Co. v. Hernandez,*
 540 U.S. 44 (2003) ......................................................................................................21

*Renner v. Supreme Ct. of Fla.,*
 2022 WL 1658361 (11th Cir. May 25, 2022).........................................................25, 27

*Roe v. Johnson,*
 334 F. Supp. 2d 415 (S.D.N.Y. 2004) ...................................................................26, 27

*Rosenthal v. Justices of the Sup. Ct.,*
 910 F.2d 561 (9th Cir. 1990)..........................................................................................3

*Savage v. Glendale Union High Sch.,*
 343 F.3d 1036 (9th Cir. 2003) .......................................................................................8

*Schwarz v. Georgia Composite Med. Bd.,*
 2020 WL 7773481 (N.D. Ga. Dec. 30, 2020),
 *aff'd*, 2021 WL 4519893 (11th Cir. Oct. 4, 2021)......................................................25

*Scott v. Breeland,*
 792 F.2d 925 (9th Cir. 1986) .........................................................................................8

*Scott v. Pasadena Unified Sch. Dist.,*
 306 F.3d 646 (9th Cir. 2002).......................................................................................29

*Selene v. Legis. of Idaho,*
 514 F. Supp. 3d 1243 (D. Idaho 2021) ........................................................................17

*Sibbald v. United States,*
 37 U.S. (12 Pet.) 488 (1838) .......................................................................................10

*Singer v. Waters,*
 | 2026 WL 836507 (E.D. Cal. Mar. 26, 2026)...............................................................12

*Stockett v. Assn. of Cal. Water Agencies Jt. Powers Ins. Auth.,*
 34 Cal. 4th 441 (2004)..................................................................................................34

*Strojnik v. State Bar of Arizona,*
 446 F. Supp. 3d 566 (D. Ariz. 2020),
 *aff'd*, 829 Fed. App'x. 776 (9th Cir. 2020) ............................................................23, 25

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

*T.W. v. New York State Bd. of Law Examiners,*
110 F.4th 71 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2700 (2025) ................23, 25, 27, 28

*Tennessee v. Lane,*
541 U.S. 509 (2004) ...........................................................................................23, 25

*Turner v. Nat'l Council of State Bds. of Nursing, Inc.,*
561 F. App'x 661 (10th Cir. 2014)..............................................................................26

*United States v. Georgia,*
546 U.S. 151 (2006) .........................................................................................passim

*United States v. Thrasher,*
483 F.3d 977 (9th Cir. 2007)....................................................................................10

*Updike v. Multnomah Cnty.,*
870 F.3d 939 (9th Cir. 2017).....................................................................................30

*Vartanian v. State Bar of California,*
794 F. App'x 597 (9th Cir. 2019)................................................................................31

*Walker v. Waronicki,*
2026 WL 1030009 (11th Cir. Apr. 16, 2026).............................................................11, 12

*Washington v. Davis,*
426 U.S. 229 (1976) ...............................................................................................28

*Whitaker v. Tesla Motors, Inc.,*
985 F.3d 1173 (9th Cir. 2021)...................................................................................31

*Whittlestone, Inc. v. Handi-Craft Co.,*
618 F.3d 970 (9th Cir. 2010).................................................................................30, 32

*Williams v. Charleston County Sheriff's Office,*
2026 WL 2043182 (4th Cir. July 15, 2026) ...................................................................12

*Willis v. City of Carlsbad,*
48 Cal. App. 5th 1104 (2020).....................................................................................32

*Wolf v. City of Millbrae,*
2021 WL 3727072 (N.D. Cal. Aug. 23, 2021)................................................................17

*Zivkovic v. Southern California Edison Co.,*
302 F.3d 1080 (9th Cir. 2002)....................................................................................17

**Statutes**

42 U.S.C. § 12131 .................................................................................................16

42 U.S.C. § 12133 ...................................................................................................8

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

42 U.S.C. § 12189 ........................................................................................................27

Cal. Bus. & Prof. Code § 6001 ......................................................................................2

Cal. Bus. & Prof. Code § 6001.1 .................................................................................35

Cal. Bus. & Prof. Code § 6008.................................................................................13, 14

Cal. Bus. & Prof. Code § 6008.1 .................................................................................13

Cal. Bus. & Prof. Code § 6008.2 .................................................................................14

Cal. Bus. & Prof. Code § 6046 ......................................................................................3

Cal. Bus. & Prof. Code § 6060.................................................................................2, 35

Cal. Bus. & Prof. Code § 6063 ....................................................................................35

Cal. Bus. & Prof. Code § 6066 ....................................................................................15

Cal. Bus. & Prof. Code § 6082 ....................................................................................15

Cal. Civ. Code §§ 51–52 ..............................................................................................34

Cal. Gov. Code § 11135 .................................................................................................7

Cal. Gov. Code § 910 .............................................................................................32, 33

Cal. Gov. Code § 911.2 ..........................................................................................32, 33

Cal. Gov. Code § 912.4 ................................................................................................32

Cal. Gov. Code § 945.4 ..........................................................................................32, 33

N.J. Stat. § 27:25-4 ......................................................................................................13

**Other Authorities**

H.R. Conf. Rep. No. 101-558 (1990) ...........................................................................26

H.R. Conf. Rep. No. 101-596 (1990) ...........................................................................26

H.R. Rep. No. 101-485 pts. 1, 2, 3 & 4 (1990) ......................................................26, 27

S. Rep. 101-116 (1990) ................................................................................................26

**Rules**

Fed. R. Civ. P. 12 ...................................................................................................passim

Cal. Rule of Court, rule 9.13 ..........................................................................................3

Cal. Rules of Court, rule 9.13.................................................................................................15, 23

Cal. Rules of Court, rule 9.5........................................................................................................15

Cal. Rules of Court, rule. 9.3.................................................................................................13, 14

Rules of the State Bar of Cal., rule 4.85.......................................................................................3

Rules of the State Bar of Cal., rule 4.88.......................................................................................3

Rules of the State Bar of Cal., rule 4.90.......................................................................................3

Rules of the State Bar of Cal., rules 4.80-4.92. .....................................................................3, 23

**Regulations**

28 C.F.R. § 35.135 ......................................................................................................................18

28 C.F.R. § 35.164 ......................................................................................................................17

28 C.F.R. § 36.309 ......................................................................................................................27

**Constitutional Provisions**

U.S. Const. amend. XI.......................................................................................................9, 25, 26, 27

U.S. Const. amend. XIV...........................................................................................................passim

Cal. Const., art. VI, § 9.........................................................................................................2, 13

## I.    INTRODUCTION

Plaintiff's Third Amended Complaint ("TAC") should be dismissed—again—in its entirety. After nearly six years of litigation and two prior unsuccessful iterations of his pleadings, Kohn still cannot articulate a viable claim under Title II of the Americans with Disabilities Act ("ADA"), still cannot identify a single unlawful act by the State Bar, and seeks to relitigate sovereign immunity issues the Ninth Circuit has already resolved. This continued effort to manufacture liability out of the bar exam process that repeatedly granted him substantial accommodation and ended years ago, does not state a claim; it underscores why dismissal with prejudice is overdue.

The threshold defect remains dispositive: the State Bar is an arm of the State of California and Kohn's federal and state-law claims are barred by sovereign immunity. The Ninth Circuit, sitting en banc, has affirmed that the State Bar is an arm of the state entitled to sovereign immunity. That decision remains binding after *Galette v. New Jersey Transit Corporation*, 607 U.S. 509 (2026), which did not overrule the Ninth Circuit's precedent specifically holding that the State Bar is an arm of the state. Even if this Court were to revisit the issue (and it should not), *Galette*'s analytical framework confirms the same result: the State Bar is structured, controlled, and financed as an integral part of California's judicial branch, unlike the independent transit agency in *Galette*.

Further, sovereign immunity has not been validly abrogated for a Title II claim under the three-step analysis required by *United States v. Georgia*, 546 U.S. 151 (2006). Indeed, the inquiry can stop at the first step, because Kohn does not plausibly allege any violation of Title II. His own TAC establishes that the State Bar repeatedly granted him reasonable accommodations for every bar exam, and he fails to establish any State Bar conduct or policies that deprived him, or any disabled applicants, of full and fair access to the exam. Kohn's misguided theory of liability reduces to the proposition that anything short of unlimited, preference-tailored accommodations constitute discrimination. That is not the law.

Even if the Court proceeds beyond step one of the *Georgia* analysis, Kohn's claims fail at steps two and three. This Court previously held that Kohn's allegations fail at step two,

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC            Case No. 4:20-cv-04827-PJH

because they do not come close to alleging conduct violating the Due Process or Equal Protection Clauses of the Fourteenth Amendment. Kohn's TAC fails to cure that deficiency. And courts have uniformly held at step three that Congress could not prophylactically abrogate sovereign immunity for licensing-related ADA claims. Professional licensing is not an area of documented unconstitutional discrimination, and Title II's broad accommodation mandate and prohibition on disparate impact is not congruent and proportional to what the Fourteenth Amendment actually requires.

Kohn's state-law Unruh Act claim fares no better. It, too, is barred by the State Bar's sovereign immunity. In addition, Kohn filed suit before timely submitting a government claim, a defect which cannot be cured and which is fatal to his ability to meet the presentation requirements of the Government Claims Act. He also has failed to plausibly allege that the State Bar operates as a business within the meaning of Unruh. And his Unruh Act claim merely repackages his same deficient ADA theories and thus also fails to state a claim.

After years of amendments and appeals, the TAC still presents no viable federal claim and no state-law claim within this Court's jurisdiction. The TAC should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    The State Bar of California Administers the California Bar Exam as Administrative Arm of the California Supreme Court

"The State Bar is a constitutional entity, placed within the judicial article of the California Constitution, and thus expressly acknowledged as an integral part of the judicial function." *In re Rose*, 22 Cal. 4th 430, 438 (2000); Cal. Const., art. VI, § 9. It operates as the administrative arm of the California Supreme Court in attorney admissions, licensing, discipline, and regulation. *See* Cal. Bus. & Prof. Code § 6001; *In re Rose*, 22 Cal. 4th at 438. The State Bar administers the California Bar Exam, which applicants must pass to become licensed attorneys in California. Cal. Bus. & Prof. Code § 6060(g). The Committee of Bar Examiners ("CBE") is established by the State Bar's Board of Trustees to "examine all applicants," "administer the requirements for admission," and "certify to the Supreme Court for

admission" applicants who fulfill those requirements. Cal. Bus. & Prof. Code § 6046. The California Supreme Court retains inherent power to control all matters related to attorney admissions and discipline. *In re Att'y Disc. Sys.,* 19 Cal. 4th 582, 598–99 (1998); *Rosenthal v. Justices of the Sup. Ct.,* 910 F.2d 561, 566–67 (9th Cir. 1990).

**B.    The State Bar Testing Accommodation Process**

Under the State Bar's rules, applicants with mental and/or physical impairments that limit their ability to demonstrate their knowledge, skill, and ability under standard testing conditions are granted reasonable testing accommodation for the bar exam. Rules of the State Bar of California ("State Bar Rules") 4.80–4.92 (2008).[1] To seek accommodation, prospective exam-takers must complete an initial petition. *Id.*, rule 4.85. Once the State Bar reviews the petition, the applicant is informed whether the request is granted, partially granted, denied, or whether additional information is necessary. *Id.*, rule 4.88. The State Bar's notice states reasons for the decision and advises of appeal rights. *Id.*, rule 4.88(D). If the State Bar does not grant all accommodation requested, the applicant may seek review by the CBE. *Id.*, rule 4.90. If an applicant requests review, the State Bar's Director of Admissions may grant the requested accommodation. *Id.*, rule 4.90(C). Otherwise, the CBE considers the request and may review any accommodation denied by staff and either affirm that denial or grant the accommodation, in whole or in part. *Id.*, rule 4.90(D). Pursuant to California Rule of Court 9.13(d), an applicant may thereafter seek review by the California Supreme Court.

**C.    Kohn's Attempts to Pass the Bar Exam and Initiation of This Lawsuit**

Kohn passed the bar exam in October 2020, on his fourth attempt. At all relevant times, to varying degrees, Kohn alleges that he had a diagnosis of autism spectrum disorder and additional physical ailments, including neurological/attention disorders, digestive system conditions, and visual impairments. Dkt. 88 (hereinafter "TAC") ¶ 7. Kohn alleges that these conditions impaired activities including "reading, typing, concentrating, extended sitting, eating,

---

[1] Notwithstanding certain amendments to the rules have been made effective December 21, 2025, all references to the State Bar Rules herein are to the 2008 version of the rules, which were in effect during the time period at issue. *See* RJN Ex. 1.

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC                Case No. 4:20-cv-04827-PJH

and performing bodily functions." *Id.* ¶ 11. For each of the four bar exams he sat for, Kohn sought and received multiple testing accommodations to address his disabilities or impairments.

For the July 2018 exam, Kohn acknowledges that the State Bar substantially granted his requests. TAC ¶ 139. Those included: (1) 100% additional time on all sections of the exam (granted on appeal after Kohn submitted supplemental documentation), *id.* ¶¶ 108, 114; (2) exam in a semi-private room (Kohn's request for testing in a fully private room was denied based on Kohn's demonstrated abilities in a classroom setting), *id.* ¶ 107; (3) the use of a laptop to type responses; and (4) permission to bring specific ergonomic equipment to the exam (Kohn's request that the State Bar provide the specific equipment was denied, and Kohn did not appeal this decision for this exam), *id.* ¶ 121. *Id.* ¶ 99. Kohn's complaints about the July 2018 Bar Exam center on allegations he was denied equal access to discounted hotels near testing sites because the discounts were offered on a first-come basis but were limited to standard testing dates and, due to the timing of his accommodation requests, Kohn was unable to book before the discount cutoff date. *Id.* ¶¶ 122–23. He also claims that the proctor assigned to his exam location interfered with his performance due to his apparent inexperience with autism, *id.* ¶¶ 126–33, and that the State Bar knew or should have known that refusing to modify proctoring scripts for disabled testers has a disparate impact on individuals with disabilities, *id.* ¶¶ 137–38.

Kohn did not pass the July 2018 exam. The overall pass rate for the July 2018 exam was 40.7%. RJN Ex. 8; *see also* TAC ¶ 63(h).

For the February 2019 exam, Kohn renewed his accommodation requests from the July 2018 exam and requested further accommodation based on his "greater knowledge of the conditions of the bar exam," and supplemental affidavits which discussed newly diagnosed digestive disabilities requiring frequent meal breaks. TAC ¶¶ 8, 145–47. Kohn was granted the previously approved accommodations of 100% extra time, semi-private room, and permission to bring and use ergonomic equipment and a laptop. *Id.* ¶ 143. Based on Kohn's supplemental records, the State Bar also granted Kohn permission to bring food, drinks, and medicine into the test room and to eat on-the-clock as needed during the exam, and an additional 30 minutes of examination time per day. *Id.*; *see also id.* ¶ 157. The State Bar did not grant Kohn's preferred

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

accommodation for his gastrointestinal condition that the State Bar stop-the-clock for him to take a meal break every 30 minutes per 90 minutes of testing. *Id.* Kohn's requests for 150% time on the essay sections over correspondingly more test days, a private room, for the State Bar to provide ergonomic equipment to Kohn on-site, scheduling of the exam on weekends only, a proctor specially trained to work with autistic individuals, and extended access to first-come hotel discounts, were also denied, and Kohn was informed that the documentation provided did not adequately support those requests. *Id.* ¶ 143; *see also id.* ¶ 159. Kohn appealed. *Id.* ¶ 161. Kohn's request stay in the exam room during lunch with supervision was granted on appeal, but otherwise the State Bar affirmed its initial decision. *Id.* ¶ 165. Kohn alleges the State Bar failed to reasonably accommodate him for this exam cycle, *id.* ¶ 167, including by failing to follow the U.S. Department of Justice's guidance for accommodation requests on standardized tests administered by private actors, *id.* ¶ 168, demanding "excessive documentation" to request accommodation, *id.* ¶ 172, setting a "capriciously" short deadline to appeal, *id.*, failing to adequately address the reasons for denial, *id.* ¶¶ 165–66, and failing to hold hearings on the denial, *id.* ¶ 171, all of which he alleges has a disparate impact on disabled test takers, *id.* ¶ 184.

Kohn did not pass the February 2019 exam. *Id.* ¶ 182. The overall passage rate on the February 2019 exam was 33%. RJN Ex. 8; *see also* TAC ¶ 63(h).

Thereafter, Kohn sought "largely" the same accommodations for the February 2020 exam as for the February 2019 exam, TAC ¶ 189, and the State Bar granted all of Kohn's previously approved accommodations, *id.* ¶ 191. Kohn revived his request that the State Bar provide him with ergonomic equipment, specifically the same sit-stand desk that the Iowa state bar had provided during the Iowa bar exam. *Id.* ¶ 189. The State Bar declined to provide the desk, but approved Kohn's use of the equipment. *Id.* Kohn also renewed his request for 150% time on essays, for stop-the-clock breaks, and for a private room, but because Kohn had not presented new or worsened functional limitations since the last exam or otherwise presented documentation to show why the accommodations he was granted were not sufficient, those requests were denied. *Id.* ¶¶ 191–92; *see also id.* ¶¶ 197, 204. Kohn appealed; the appeal was denied. *Id.* ¶¶ 207, 210. Kohn alleges that the State Bar failed to reasonably accommodate his

disabilities for this exam cycle because they failed to establish that granting his requests would be a fundamental alteration of the exam or an undue burden or otherwise explain their reasons. *Id.* ¶ 193; *see also id.* ¶ 212. Kohn alleges that the State Bar's policies for handling accommodation decisions have a disparate impact on the disabled and were committed with deliberate indifference to Kohn's federally protected rights. *Id.* ¶¶ 213–14.

Kohn did not pass the February 2020 exam. *Id.* ¶ 230. The overall passage rate on the February 2020 bar exam was 28% for all test takers. RJN Ex. 8; *see also* TAC ¶ 63(h).

The July 2020 exam was postponed to October 2020 due to the COVID-19 pandemic. TAC ¶ 229. Kohn submitted his initial application for testing accommodations for this exam on March 19, 2020, *id.* ¶ 220, which he supplemented on June 4, 2020, *id.* ¶ 235, and again on July 16, 2020, *id.* ¶ 245. Two days later, on July 18, 2020, Kohn filed his initial civil complaint in this action, Dkt. 1, and sought injunctive relief directing the State Bar to provide all of the accommodations he had requested for the October 2020 exam, Dkt. 2. The court denied injunctive relief on August 13, 2020, finding the motion not ripe. Dkt. 26. The State Bar moved to dismiss the complaint on August 10, 2020, Dkt. 22, and Kohn amended his complaint on September 7, 2020, Dkt. 32 (FAC). Kohn also revived his request for preliminary injunctive relief. Dkt. 29. The State Bar opposed the preliminary injunction, Dkt. 33, which was subsequently denied, Dkt. 36. On September 21, 2020, the State Bar moved to dismiss the FAC in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 34.

For the October 2020 exam, Kohn initially received all accommodations that he had been approved to receive in February 2020, including 100% extra time, extended testing days, use of a laptop and other ergonomic equipment, a semi-private room, and permission to eat, drink and take medicine during the exam and remain in the exam room supervised during lunch. Following submission of additional documentation considered on appeal, he received 150% additional time on all sections of the exam, and the exam was administered over six test days (replacing the extra 30 minutes per day of additional time provided on the previous exam). TAC ¶¶ 245, 249. For the State Bar to administer these accommodations, Kohn was required to take the exam in person. *Id.* ¶ 255. Kohn's additional requests for heightened COVID-19 safety

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

mitigation protocols at the test center were denied, including his request that all proctors test negative for COVID-19 (masking and distancing were standard), that Kohn be permitted to stay in the exam room during lunch by himself without a proctor present, and that Kohn's personal items be exempt from examination or inspection. *Id.* ¶ 267. Kohn alleges that the State Bar failed to reasonably accommodate his disabilities for the October 2020 exam and did so with deliberate indifference. *Id.* ¶ 266.

Kohn passed the October 2020 bar exam. The pass rate for the October 2020 exam was 60.7%, the highest rate of any exam since July 2008. RJN at Ex. 8.

**D.      Relevant Procedural History and the TAC**

On October 27, 2020, this Court granted the State Bar's motion to dismiss Kohn's FAC with prejudice. Dkt. 43. Kohn appealed. Dkt. 44. The appeal resulted in the following decisions: *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) (Dkt. 56) ("*Kohn I*"), which reaffirmed en banc that the State Bar of California enjoys sovereign immunity, *id.* at 1037–38; *Kohn v. State Bar of California*, 119 F.4th 693 (9th Cir. 2024) (Dkt. 60) ("*Kohn II*"), which vacated the dismissal of Kohn's claims under Title II of the ADA and remanded to this Court for further analysis consistent with *United States v. Georgia*, 546 U.S. 151, 159 (2006); and *Kohn v. State Bar of California*, No. 20-17316, 2024 WL 4533446, at *2 (9th Cir. Oct. 21, 2024) (Dkt. 61) ("*Kohn III*") (unpublished), which affirmed the dismissal with prejudice of Kohn's claims under the Rehabilitation Act and did not disturb this Court's dismissal with prejudice of Kohn's claims under California Government Code section 11135, but vacated the dismissal of Kohn's claims under the Unruh Act and directed this Court to afford Kohn an opportunity to amend his Unruh Act claims to state a claim that the State Bar is operating a business establishment under the standard set forth in *Brennon B. v. Superior Court*, 13 Cal. 5th 662, 682 (2022). Dkt. 61 at 4–5.

On May 28, 2026, Kohn filed his TAC, asserting that the State Bar violated Title II of the ADA based on denial of certain accommodation requests Kohn made for the July 2018, February 2019, February 2020, and October 2020 bar exams. TAC ¶¶ 278–82. Kohn asserts the State Bar acted with deliberate indifference in violating his rights to due process and equal

protection and that its policies for handling accommodations requests and its bar exam policies effected both disparate impact and treatment. *Id.* ¶¶ 280–81. He seeks compensatory damages, nominal damages, and relief consistent with 42 U.S.C. § 12133. *Id.* ¶¶ 282–84. Kohn also asserts that these Title II violations establish that the State Bar denied Plaintiff equal treatment in a business establishment because of his disabilities, violating California's Unruh Act. *Id.* ¶¶ 286–88. Under Unruh, Kohn seeks actual damages, statutory damages, emotional distress damages, treble damages, and attorneys' fees and costs. *Id.* ¶ 289.

## III.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) tests the Court's subject matter jurisdiction. *See, e.g., Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). When subject matter jurisdiction is challenged, "the party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists[.]" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Accordingly, in response to a Rule 12(b)(1) motion to dismiss, the court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376–78 (1994).

To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); that is, the plaintiff must allege facts that consist of more than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions, *Twombly*, 550 U.S. at 570, that "plausibly give rise to an entitlement to relief," *Iqbal*, 556 U.S. at 679. A plaintiff must also allege more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A plaintiff must allege *facts* sufficient to "raise a right to relief above the speculative level." *Id.* The "court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994). That Kohn is appearing pro se does not lessen his need to plead facts instead of conclusions. *See Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1140 (9th Cir. 2011) (en banc). Indeed, as a practicing attorney,

the liberal pleading standard for pro se litigants is inapplicable to Kohn. *Huffman v. Lindgren*, 81 F.4th 1016, 1021 (9th Cir. 2023).

## IV.     ARGUMENT

### A.     The TAC Should Be Dismissed Pursuant to Rule 12(b)(1) Because the State Bar Has Sovereign Immunity

The TAC should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. The State Bar is an arm of the state under binding precedent that the Ninth Circuit established in this case and is therefore immune to suit in federal court (for federal or state-law claims) under the Eleventh Amendment. *Kohn I,* 87 F.4th at 1023; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) (sovereign immunity also applies to pendent claims). Kohn has not met his burden to establish that jurisdiction exists, nor presented grounds that would free this Court to revisit an issue already resolved by the Ninth Circuit's mandate in Kohn's prior appeal. Nor do Kohn's claims under the ADA implicate any valid abrogation of the State Bar's immunity. He does not plead a violation to begin with, any purported violation of the ADA would not be a violation of the Fourteenth Amendment that could support abrogation in this case, and the scope of Kohn's claims sweep far beyond an appropriate prophylactic waiver tailored to prevent constitutional violations.

### 1.     The State Bar Is an Arm of the State Entitled to Sovereign Immunity

During Kohn's prior appeal, the Ninth Circuit, en banc, held the State Bar is an arm of the state. The Ninth Circuit reaffirmed its longstanding precedent and noted that its conclusion "the State Bar enjoys Eleventh Amendment protection" was "[c]onsistent with every other circuit." *Kohn I,* 87 F.4th at 1023 (citing *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 (9th Cir. 1985)). Both the mandate rule and the precedential status of *Kohn I* preclude Kohn's attempt to revisit the issue. Although he points to the Supreme Court's intervening decision in *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026), that decision did not abrogate *Kohn I*, and the answer would be the same at any rate under *Galette*: the State Bar is an arm of the California Supreme Court.

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

###### a.    The Mandate Rule Bars Revisiting the Ninth Circuit's Decision That the State Bar Is an Arm of California

The Ninth Circuit's mandate in the prior appeal established that the State Bar has sovereign immunity as an arm of the state. While Kohn argues that *Galette* renders this mandate meaningless, this case does not satisfy the exception to the mandate rule for intervening precedent because *Galette* neither overruled *Kohn I* as applied here nor clearly altered the test for deciding arm-of-state status.

The mandate rule is a special subset of law of the case that safeguards the "hierarchical structure of the court system." *United States v. Thrasher*, 483 F.3d 977, 982 (9th Cir. 2007). "Whatever was before" the Ninth Circuit, "and is disposed of, is considered as finally settled," binding this Court to "the decree as the law of the case." *Sibbald v. United States*, 37 U.S. (12 Pet.) 488, 492 (1838). This Court "is without jurisdiction" to reconsider issues that "fall[] outside the scope of [the Ninth Circuit's] remand." *Alaska Dep't of Fish & Game v. Fed. Subsistence Bd.*, 139 F.4th 773, 788 (9th Cir. 2025).

The Ninth Circuit's mandate does not authorize this Court to revisit whether the State Bar is an arm of the state. In *Kohn I*, the en banc panel reaffirmed "that the California State Bar is entitled to immunity from suit in federal court" and "remand[ed] to the original three-judge panel for consideration of the *remaining* issues." 87 F.4th at 1037–38 (emphasis added). The three-judge panel then instructed this Court to revisit whether Congress properly abrogated the State Bar's sovereign immunity and whether the State Bar is a "business establishment" under the Unruh Act. *Kohn II*, 119 F.4th at 699–700; *Kohn III*, 2024 WL 4533446, at *2. Although the three-judge panel also stated that Kohn should be given leave to amend his complaint before this Court addressed those remaining issues, "such amendment cannot be inconsistent with the appellate court's mandate." *Matter of Beverly Hills Bancorp*, 752 F.2d 1334, 1337 (9th Cir. 1984).

No exception to the mandate rule applies here. As with law of the case, the mandate rule does not foreclose applying "an intervening change in controlling authority." *In re Molasky*, 843 F.3d 1179, 1184 n.5 (9th Cir. 2016). Kohn contends that *Kohn I* is no longer controlling after

the Supreme Court's decision in *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026). TAC ¶ 42. Because *Kohn I* is a published precedent of the Ninth Circuit that squarely resolves that the State Bar is an arm of the state (as against claims brought by this very plaintiff), *Galette* could be an intervening change in controlling authority only if—as Kohn himself concedes—*Galette* is "clearly irreconcilable" with *Kohn I*. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see* TAC ¶ 42. *Galette* falls short of that demanding standard for two reasons.

First, even if Kohn were correct that *Galette* changed the "test and legal standard" for deciding arm-of-the-state status, TAC ¶ 42, a change in the *general* test would not allow district courts to reconsider *specific* applications of the arm-of-the-state test in published Ninth Circuit precedent. The Ninth Circuit rejected a similar workaround to circuit precedent in *Lopez v. Garland*, 116 F.4th 1032 (9th Cir. 2024). After the Supreme Court abandoned *Chevron* deference in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), a litigant argued that prior Ninth Circuit decisions that had deferred under *Chevron* were clearly irreconcilable with *Loper Bright*. *Lopez*, 116 F.4th at 1045. The Ninth Circuit held that decisions applying the defunct *Chevron* test "remain[] precedential authority" as to the interpretation of the specific statutes addressed in those decisions. *Id.*; *accord Eng v. EPA*, 172 F.4th 747, 755 n.4 (9th Cir. 2026). The same is true here: even if *Galette* announced a new general test, that decision (which addressed whether a transit entity was an arm of New Jersey) does not abrogate the Ninth Circuit's longstanding decisions specifically holding that the State Bar is an arm of the State of California. *See, e.g.*, *Walker v. Waronicki*, 2026 WL 1030009, at *3 (11th Cir. Apr. 16, 2026) (per curiam) (holding that prior precedent establishing that state courts are arms of the state remained binding after *Galette* and such precedent also foreclosed claims against the Florida bar).

Second, Kohn is incorrect in any event to argue that the test that the Supreme Court applied in *Galette* is clearly irreconcilable with the test that the Ninth Circuit applied in *Kohn I*. The Ninth Circuit held that courts should consider state intent, state control, and the financial consequences of a judgment against the entity. *Kohn I*, 87 F.4th at 1030. The Supreme Court applied the same three factors. *Galette*, 607 U.S. at 528–30. The Ninth Circuit also recognized

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

that sovereign immunity exists *both* to protect the state's treasury *and* to protect the dignity of the state. *Kohn I*, 87 F.4th at 1030. So did the Supreme Court. *Galette,* 607 U.S. at 519. And since *Galette*, the Ninth Circuit has continued to apply "the factors outlined in *Kohn*" and has noted that analysis in *Galette* "maps onto" *Kohn*. *Colombo v. Wash. Dep't of Natural Resources*, 2026 WL 1999654, at *1 & n.1 (9th Cir. July 10, 2026); *see also Singer v. Waters*, 2026 WL 836507, at *10 (E.D. Cal. Mar. 26, 2026) (observing that *Galette* applied "the same test utilized in *Kohn*"). (Other circuits have likewise held that their respective arm-of-the-state tests have not been abrogated or overruled by *Galette. E.g., Walker*, 2026 WL 1030009, at *3; *Williams v. Charleston County Sheriff's Office,* 2026 WL 2043182, at *1 (4th Cir. July 15, 2026).)

Nothing else is inescapably incompatible about *Kohn I* and *Galette*. Kohn asserts that *Galette* "expressly cited" *Kohn I* "with disapproval." TAC ¶ 42. But *Galette* mentions *Kohn I* only in a footnote listing, without comment, appellate decisions analyzing arm-of-the-state status using various tests. 607 U.S. at 518 n.3. Kohn also stresses that "the State Bar is a separately chartered public corporation." TAC ¶ 42. But *Galette* cautioned that "the 'corporation' label is not dispositive." 607 U.S. at 530. Although the Supreme Court ultimately held that the New Jersey Transit Corporation was not an arm of the state, the conclusion that the same three factors yielded a different answer on a different fact pattern does not demonstrate that *Kohn I* is clearly irreconcilable with *Galette*.

> **b.    Even if This Court Could Decide the Question Anew under *Galette*, the State Bar Remains an Arm of California**

Even if Kohn could demonstrate that *Kohn I* is clearly irreconcilable with *Galette*, the State Bar would still qualify as an arm of the state under *Galette*. California law structures the State Bar as part of the judicial branch, brings the State Bar's property for paying adverse judgments within the judicial branch, and ensures comprehensive control of the State Bar's actions as an administrative arm of the California Supreme Court.

First, California has not "structured" the State Bar "as a legally separate entity," a factor that, under *Galette*, turns on how state law treats the entity. 607 U.S. at 528–29. Here, California

-12-

law structures the State Bar as an arm of the State within the judicial branch. The California Constitution places the State Bar in the judicial article and enshrines its constitutional function of regulating admission to practice in California. Cal. Const. art. VI, § 9. The California Supreme Court also understands the State Bar to be "its 'administrative arm' for attorney discipline and admission purposes," which are core governmental powers, and considers the State Bar's "assistance . . . in the disciplinary process [to be] an integral part of the judicial function." *Kohn I*, 87 F.4th at 1032–33 (quoting *In re Rose*, 22 Cal. 4th at 438; *Obrien v. Jones,* 23 Cal. 4th 40, 49 (2000)). Indeed, the California Rules of Court specifically provide that the State Bar "serves as the administrative arm of the Supreme Court for admissions matters and in that capacity acts under the authority and at the direction of the Supreme Court." Cal. R. Ct. 9.3(a). The State Bar thus looks starkly different from the New Jersey Transit Corporation, which was nominally housed within the New Jersey Department of Transportation but remained "independent of any supervision or control by the department." *Galette*, 607 U.S. at 516 (quoting N.J. Stat. § 27:25-4(a)).

The State Bar's public corporation status does not reflect an intent to establish a legally separate entity outside of the judicial branch. Again, "the 'corporation' label is not dispositive." *Galette*, 607 U.S. at 530; *accord Kohn I*, 87 F.4th at 1032–33. The State Bar is not separate from the judicial branch despite its corporate status, as the Ninth Circuit has already determined. *Kohn I*, 87 F.4th at 1032–34. By statute, "[a]ll property of the State Bar is … held for essential public and governmental purposes *in the judicial branch of the government*." Cal. Bus. & Prof. Code § 6008 (emphasis added). Any State Bar debt is also held "in the judicial branch of state government." *Id.* § 6008.2. Those statutes divest the State Bar of "traditional corporate powers" to "hold property" and "incur debt" in its own name rather than on behalf of the judicial branch. *Galette*, 607 U.S. at 524; *see Kohn I*, 87 F.4th at 1032.

Second, the State Bar's liability for its own judgments does not defeat arm-of-the-state status. California is "not formally liable" for the State Bar's debts. *Galette*, 607 U.S. at 529; *see* Cal. Bus. & Prof. Code § 6008.1. Formal liability for the state makes an entity "more likely" to be an arm of the state. *Galette*, 607 U.S. at 525. But unlike with the transit corporation in

-13-

*Galette*, California law provides that all debts of the State Bar *are* the judicial branch's debts: "Bonds, notes, debentures and other evidences of indebtedness of the State Bar are hereby declared to be issued for essential public and governmental purposes *in the judicial branch of the government*." Cal. Bus. & Prof. Code § 6008.2 (emphasis added). Any assets to pay a judgment also would come out of the judicial branch: "All property of the State Bar is … held for essential public and governmental purposes *in the judicial branch of the government*." *Id.* § 6008 (emphasis added). As a result, Kohn's claims seek to recover from property held within the judicial branch. The Supreme Court has never held that arm-of-the-state status hinges on whether a claim would recover from a state's general treasury or instead from property held specially within one of its branches. *Cf. CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*, 601 U.S. 416, 425 (2024) (interpreting term "Treasury" in the Appropriations Clause to include "surplus funds in the Federal Service System" in addition to "the general fund of the Treasury").

Third, the degree of state control in this case only confirms that the State Bar is an arm of the state. *Galette* reiterated that "courts may consider the degree of control the State exerts over the entity," but only "with caution." 607 U.S. at 526. That caution is appropriate because states, in a sense, control all entities they create with the power to reshape or even to destroy. *Id*. In *Galette*, for example, the government could appoint all and remove most of the board members of the New Jersey Transit Corporation, and the governor also could veto the board's actions. *Id.* at 530. That baseline "level of control does not meaningfully affect" the arm-of-the-state analysis. *Id.* But this case involves much more control than was present in *Galette*. In addition to California's appointment and removal powers over the State Bar's governing board and the CBE, "the California Supreme Court exercise[s] significant control over the State Bar's functioning." *Kohn I*, 87 F.4th at 1035. The State Bar "acts under the authority and at the direction" of the California Supreme Court for admissions matters. Cal. R. Ct. 9.3. The State Bar also is an "arm" of the California Supreme Court "in matters of discipline and disbarment," with the Court "retain[ing] its power to control any such disciplinary proceeding at any step[.]" *In re Att'y Discipline Sys.*, 19 Cal .4th 582, 600 (1998). The State Bar's admission and disciplinary decisions are subject to direct California Supreme Court review. *See* Cal. Bus. &

-14-

Prof. Code §§ 6066, 6082; Cal. R. Ct. 9.13. And the Supreme Court also issues sua sponte orders directing the State Bar's activities on everything from remote administration of the October 2020 bar exam and reduction of the passing score (on the exam Kohn passed), to changes to the Conflict of Interest Code for the State Bar's Board of Trustees, to procedures for recommending candidates for appointment to the Board of Trustees and the State Bar Court. *See, e.g.,* RJN Exs. 2, 6–7.

Kohn cites a 2025 amendment to California Rule of Court 9.5, which now requires the California Supreme Court to approve only changes to the prerequisites to be certified for admission to practice law, as an apparent example of the California Supreme Court's "diminishing" control over the State Bar. TAC ¶ 41(f). But the Supreme Court's choice no longer to require prior approval of *all* admissions-related rule changes does not diminish its control. Indeed, the California Supreme Court's extensive rewrite of the rules for attorney admissions is a *demonstration* of its control. No change in state law has undermined the Ninth Circuit's conclusion that state control supports treating the State Bar as an arm of the state.

Finally, even if the State Bar were not an arm of the state (and it is), the State's sovereign immunity still "require[s] dismissal of the action" where, as here, the State is, in effect, the "real party in interest." *Galette,* 607 U.S. at 527. The "remedy sought is truly against the sovereign" in this case because Kohn challenges the admissions process superintended by the State and seeks to recover against property held within the judicial branch. *Lewis v. Clarke*, 581 U.S. 155, 162 (2017). Indeed, the California Supreme Court is the state entity with the "'inherent judicial authority'" to "regulate and control the attorney admission and disciplinary system … at every step." *Obrien*, 23 Cal. 4th at 48. The arm-of-state and real-party-in-interest analyses thus point in the same direction because the legal liability falls on the judicial branch. *State Highway Comm'n of Wyoming v. Utah Constr. Co.,* 278 U.S. 194, 199 (1929); *Hopkins v. Clemson*, 221 U.S. 636, 649 (1911). As such, the State's sovereign immunity requires dismissal of this lawsuit, either because the State Bar is considered an arm of the state or because the State is the real party in interest in matters concerning attorney admissions.

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC        Case No. 4:20-cv-04827-PJH

## 2.    There Has Been No Abrogation of the State Bar's Immunity

This Court should grant the motion to dismiss also on the specific question that the Ninth Circuit *did* remand in *Kohn II*: whether Congress could abrogate the State Bar's sovereign immunity to Kohn's claims in Title II of the ADA. To assess whether Congress could validly abrogate sovereign immunity in a particular case, the district court must evaluate, on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Kohn II*, 119 F.4th at 697, 699–700. Congress could not validly abrogate the State Bar's sovereign immunity as to Kohn's claims under *Georgia*.

### a.    Kohn's Claims Fail at the First *Georgia* Step Because Kohn Has Not Alleged a Cognizable Violation of Title II Under Any Theory of Disability Discrimination

The first *Georgia* step is to determine "which aspects of the State's alleged conduct violated Title II." 546 U.S. at 159. If no Title II claim is stated, the court need not address the remaining factors. *Kohn II*, 119 F.4th at 699 ("[I]f a plaintiff fails to state a claim under Title II, dismissal is appropriate" without applying remainder of *Georgia* test). Starting with this threshold inquiry is consistent with the doctrine of constitutional avoidance. *See Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957, 963 (9th Cir. 2017).

Title II of the ADA, 42 U.S.C. § 12131 *et seq*., prohibits discrimination on the basis of disability in the programs, services, or activities of a public entity. "To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). A Title II claim may advance under a theory of disparate treatment, disparate impact, or failure to

-16-

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

make reasonable accommodation. *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021) (the difference being that a reasonable accommodation claim is "based on an individualized request or need" while disparate impact is focused on modifying a policy or practice "to improve systemic accessibility").

The TAC fails to plausibly allege that Kohn was denied a reasonable accommodation or otherwise excluded from participation in the bar exam on the basis of disability, and Kohn fails to identify either an intentionally discriminatory policy or a policy that had a disparate impact on disabled persons. As a result, the Court may stop its analysis here and affirm that sovereign immunity could not be validly abrogated by the conduct alleged.

### i.   The TAC Does Not Plausibly Allege Failure to Provide Reasonable Accommodation

To establish discrimination under Title II, Kohn must show that the State Bar "failed to make reasonable modifications that would accommodate [his] disability without fundamentally altering the nature of the program or activity…and that the accommodation would have enabled [him] to meet the [exam]'s essential eligibility requirements." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016) (cleaned up). "[T]he ADA does not require the public entity to provide the "accommodation that an individual requests or prefers; instead, the ADA requires only a reasonable accommodation." *Wolf v. City of Millbrae*, 2021 WL 3727072, at *3 (N.D. Cal. Aug. 23, 2021) (citing *Zivkovic v. Southern California Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002)) (Hamilton, J.); *see also, e.g., Selene v. Legis. of Idaho,* 514 F. Supp. 3d 1243, 1256 (D. Idaho 2021) (same). It is the plaintiff's burden to plead plausibly that the accommodation offered was not reasonable. *Memmer v. Marin Cnty. Cts.*, 169 F.3d 630, 634 (9th Cir. 1999). Moreover, the ADA does not require the public entity "to take any action that it can demonstrate would result in a fundamental alteration in the nature of the service, program, or activity or in undue financial and administrative burden." 28 C.F.R. § 35.164.

Kohn sat for the bar exam four times, each time receiving numerous accommodations which were based on the information Kohn provided to the State Bar before each exam about

his functional limitations. TAC ¶¶ 99, 143, 267. The TAC fails to establish that the State Bar failed to provide reasonable accommodation or that the accommodation that was provided resulted in denial of meaningful access to the exam. Indeed, the gravamen of Kohn's complaint is not that the State Bar did not provide reasonable accommodations, but rather that the State Bar did not grant *every* accommodation that Kohn preferred. For example, on multiple exams, Kohn requested testing in a private room "for autism." *Id.* ¶¶ 99, 143. The State Bar accommodated Kohn's autism-related impairments with testing in a semi-private room, based on Kohn's demonstrated experience with a classroom setting. *Id.* ¶¶ 99, 107, 143. While Kohn protests that he had been allowed to test in a private room by others in other circumstances, *id.* ¶¶ 19, 24, 152, he fails to allege how testing in a semi-private room failed to address his functional limitations or failed to provide him with equal access to the exam.

Kohn's allegations regarding ergonomic equipment suffer from the same defects. Kohn made multiple requests for the State Bar to provide ergonomic equipment for him to use during the exam, such as a chair with special features or a sit-to-stand desk. *See, e.g.*, *id.* ¶¶ 99, 143. The State Bar granted Kohn permission to bring and use the ergonomic equipment in the exam. *Id.* Kohn's alleges that the State Bar failed to reasonably accommodate him by denying his request to provide the equipment and move and store it for him, as he would have preferred. *Id.; see also id.* ¶¶ 153, 207. However, Kohn fails to plausibly allege that the accommodation the State Bar provided (*e.g.*, permission to bring and use his ergonomic equipment) did not reasonably meet his request for the use of specialized equipment on the exam. *See also* 28 C.F.R. § 35.135 (Title II does not require public entities to supply personal devices).

Likewise, Kohn's allegations regarding his requests for accommodation of digestive issues establish only that he did not get the accommodation he wanted, not that he did not receive reasonable accommodations. In February 2019, Kohn sought further accommodation for allegedly worsened digestive conditions, including multiple stop-the-clock meal breaks instead of a single standard lunch break. *Id.* ¶¶ 143, 145. Based on Kohn's additional supporting documentation, the State Bar expanded Kohn's accommodations in 2019 to include 30 additional minutes per day of testing time as well as permission to bring food, drinks, and

-18-

medicine into the testing room and to eat during the exam, on-the-clock. *Id.* ¶¶ 143, 147, 157. Again, Kohn complains that what the State Bar provided fell short of what he *preferred*, *id.* ¶ 167, but he does not allege that the flexibility to eat around his symptoms during the exam and extended testing time failed to reasonably meet his need for digestive accommodation or denied meaningful access to the exam.

For the February 2019 exam, Kohn requested that his exam be scheduled only on weekend days to accommodate his medical appointments. *Id.* ¶¶ 143, 154. The TAC fails to articulate how his preferred weekend-only schedule was reasonable or relates to his functional limitations and does not explain how the schedule was necessary to provide equal access to the exam. Given that Kohn had received significant additional testing time for February 2019, this would have resulted in the exam taking place over the course of at least nine days. Extending testing over a non-consecutive prolonged period of time would also be a fundamental alteration of the exam, which is administered twice each year in February and July over two days on the fourth Tuesday and Wednesday, RJN Ex. 9, and applicants with extended-time accommodations test over additional consecutive days, not on a bespoke schedule based on an applicant's personal commitments. *See, e.g.*, *Chin v. Rutgers*, 2016 WL 2653908, at *7 (D.N.J. May 9, 2016), *aff'd*, 697 F. App'x 751 (3d Cir. 2017) (request to waive school policies limiting the number of exam retakes and required graduation within six years was not a reasonable accommodation because it would fundamentally alter the nature of the program); *Falchenberg v. N.Y. State Dep't of Educ.*, 338 Fed. App'x 11, 13 (2d Cir. 2009) (request to take a liberal arts exam orally would fundamentally alter exam because it would no longer measure written skills the exam was intended to test).

The State Bar also denied Kohn's request for remote administration of the exam with accommodation during the October 2020 exam (Kohn could have tested remotely without accommodation). Although Kohn insists it theoretically could have been done, in reality, certain accommodations that he was granted and wished to avail himself of had to be administered in person to ensure exam security. TAC ¶¶ 242–43. Exam security and integrity are fundamental components of the exam, and Kohn cannot plausibly allege that permitting an unsupervised

remote exam would have been a reasonable accommodation under the circumstances. *Gordon v. State Bar of California*, 2020 WL 5816580, at *8 (N.D. Cal. Sept. 30, 2020) (holding that on the record presented during COVID-19, the State Bar's security-related remote-testing conditions were reasonable, and the relief sought by plaintiffs, including virtual webcam proctoring and collection of exams by courier, would be a fundamental alteration of the exam).

Kohn's TAC fails to identify a single accommodation that he was denied that prevented him from equally accessing the exam or fundamentally altering the nature of the exam. *See Payan*, 11 F.4th at 738. Rather, the TAC advances the circular premise that his failing the exam is proof he was denied reasonable accommodation, and inversely, if he had been reasonably accommodated, he would have passed. *Id.* ¶ 31. That is pure conjecture. As Kohn acknowledged, the California exam "has a reputation as being among the hardest bar exams to pass of any jurisdiction in the United States." TAC ¶ 63(h). Working backwards from Kohn's test results would distort Title II's purpose of ensuring equal *access*, not outcome.

In sum, Kohn's TAC does not plausibly allege that the State Bar failed to reasonably accommodate him, nor can he amend his claims to plausibly allege a Title II violation.

**ii.    Kohn Has Not Identified a Policy Having a Disproportionate Adverse Effect on Disabled Applicants**

Kohn also alleges that the State Bar's policies and practices disparately impact applicants with disabilities. To state an ADA disparate impact claim, Kohn must "allege that a facially neutral government policy or practice has the effect of denying meaningful access to public services" to people with disabilities. *Payan*, 11 F.4th at 735 (affirming that disparate impact theories are enforceable under Title II) (cleaned up); *see also Hunsaker v. Contra Costa Cnty.*, 149 F.3d 1041, 1043 (9th Cir. 1998) ("denial of 'meaningful access' is a necessary element of an actionable disparate impact claim.") (quotations in original). The TAC fails to identify a facially neutral State Bar policy that disproportionately burdens people with disabilities relative to standard applicants.

The TAC broadly critiques the "the totality of Defendants' attorney admissions programs, policies, and practices" as having a disparate impact on applicants with disabilities.

-20-

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

TAC ¶ 66; *see also id.* ¶ 271. He also challenges, without specificity, the State Bar's timelines for processing initial requests and appeals, that fact that the State Bar does not require hearings on denials of requests for accommodation, and the "vague and inconsistent feedback" he alleges receiving in written correspondence from the State Bar. *Id.* ¶¶ 179, 184. At the outset, these general allegations are too vague to meet the first element of a disparate impact claim, which is the identification of a specific policy or practice. *Kocsis v. Delta Air Lines*, *Inc.,* 963 F. Supp. 2d 1002, 1014 (D. Haw. 2013) ("the [plaintiff] is responsible for isolating and identifying the *specific* [ ] practices that are allegedly responsible for any observed statistical disparities."); *see also Pottenger v. Potlatch Corp.,* 329 F.3d 740, 749 (9th Cir. 2003) (in the age discrimination context, "[a] disparate impact claim must challenge a specific business practice.").

Kohn's allegations concerning the State Bar's process for requesting testing accommodation (*see, e.g.*, TAC ¶ 100 (critiquing the State Bar's accommodation request documentation requirements as "excessively burdensome"); *id.* ¶¶ 110, 121 (critiquing accommodation request appeal timelines)), even if construed to challenge a specific policy, are insufficient to state a claim for disparate impact because there is no allegation that the State Bar's process of granting testing accommodations—the sole purpose of which is to provide equal access to the exam—has the effect of denying meaningful access to the exam. Further, even if Kohn had alleged that the State Bar's interactive process was not sufficient (it was), there is no standalone claim for failure to engage in the interactive process under Title II. *Constantin v. Navarrete*, 2025 WL 770359, at *5 (N.D. Cal. Mar. 10, 2025). Moreover, Kohn makes no allegation that he was intentionally subjected to a different process from any other individual seeking testing accommodations because of his disability, undercutting his allegations that the State Bar's accommodation procedures constituted "disparate treatment against the disabled." TAC ¶¶ 139,184; *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 55 (2003) (distinguishing disparate impact from disparate treatment).

Kohn's general attacks on the State Bar's "proctoring policies and practices," TAC ¶¶ 124–38, are insufficient for the reasons discussed above. To the extent Kohn makes (unsupported) allegations that the State Bar had a "general practice" of assigning "better trained

contractors" to standard applicant sites than to testing accommodation sites, *id.* ¶ 135, Kohn also alleges that "proctoring issues are not uncommon and occur[ed] on virtually every exam cycle for which Kohn obtained records," *id.* ¶ 136, thus undercutting any argument that this alleged "practice" resulted in proctoring issues falling disproportionately on disabled applicants.

Kohn also attempts to mount an attack on the State Bar's alleged policy of offering first-come hotel discounts to registered applicants. *Id.* ¶¶ 120–22. Kohn alleges that this policy has a disparate impact on disabled examinees, since they often receive confirmation of their testing location at a later date than standard examinees, resulting in "higher costs and more difficult logistics." *Id.* The policy at issue here, disparate impact or not, is not actionable under Title II because staying at a hotel is not required either to register or to sit for the bar exam. *Hunsaker*, 149 F.3d at 1044 (disparate impact discrimination is "actionable only if it involved a denial of 'meaningful access' to public benefits") (citations omitted). Fundamentally, Kohn's allegations concerning hotel discounts are conflating the logistics of getting to the exam—for which the State Bar is *not* obligated to ensure equality—with access to the exam itself.

Because the TAC fails to identify a facially neutral policy that has a disproportionate impact on persons with disabilities, Kohn has failed to state a disparate impact claim.

**b.     Even if the Court Reaches the Second *Georgia* Step, Kohn Has Not Alleged a Fourteenth Amendment Violation**

This Court should reaffirm its analysis as to the second *Georgia* step: even if Kohn could state a claim under Title II (and he cannot), Kohn's allegations do not demonstrate any violation of the Fourteenth Amendment. Dkt. 41 at 10–14. The Ninth Circuit did not question the correctness of this Court's step-two conclusion. *Kohn II*, 119 F.4th at 699–700. And there is no reason for this Court to change its conclusion that the purported ADA violations involve neither a deprivation of due process nor a denial of equal protection.

This Court correctly held that a due process theory "fails for two reasons": Kohn lacks a protected liberty or property interest, and he was offered adequate process. Dkt. 41 at 11–12. First, "there is no fundamental right to practice law or to take the bar examination." *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990); *Oliver*, 312 F. Supp. 3d at 529–30 (same); *see* Dkt. 41

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC                    Case No. 4:20-cv-04827-PJH

at 10; *see also T.W. v. New York State Bd. of Law Examiners*, 110 F.4th 71, 85 (2d Cir. 2024), *cert. denied*, 145 S. Ct. 2700 (2025). Second, Kohn's "opportunity to submit his accommodation petition" and "to appeal any adverse determination" more than satisfied due process. Dkt. 41 at 11–12 (citing Cal. State Bar Rules 4.80–4.92, Cal. R. of Ct., rule 9.13(d)). Moreover, Kohn does not allege he petitioned the California Supreme Court after the denial of his requests for reasonable accommodation, which is fatal to his ability to bring a claim for a due process violation in the context of attorney admissions. *Pell v. Nuñez,* 99 F.4th 1128, 1132 (9th Cir. 2024). As such, there is no due process violation.

This Court also correctly held that Kohn has not stated a violation of the Equal Protection Clause under the rational basis test. Dkt. 41 at 12–13. "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366 (2001). Even if Plaintiff had received *no* accommodation, being treated the same as others is not an equal protection violation. *See Mlikotin v. City of Los Angeles*, 643 F.2d 652, 654 (9th Cir. 1981) ("unequal treatment of persons similarly situated … [is] the gravamen of a complaint for denial of equal protection."). "If special accommodations for the disabled are to be required [by the constitution], they have to come from positive law and not through the Equal Protection Clause." *Garrett*, 531 U.S. at 368; *see Oliver*, 312 F. Supp. 3d at 529 (Title II claim for bar exam testing accommodations did not constitute an equal protection violation).

Kohn invokes the right of access to courts that the Supreme Court addressed in *Tennessee v. Lane*, 541 U.S. 509 (2004). TAC ¶ 70. But the right of access to courts does not provide anyone with the right to practice law or represent clients. *Strojnik v. State Bar of Arizona*, 446 F. Supp. 3d 566, 575–76 (D. Ariz. 2020), *aff'd*, 829 Fed. App'x. 776 (9th Cir. 2020). As the Second Circuit recently determined, "the right of access to courts in *Lane* did not involve the right of individuals to earn a living in courts *as a licensed lawyer*." *T.W.*, 110 F.4th at 85. Kohn's claims thus implicate only "professional licensing," which has never been "afforded heightened scrutiny." *Id.* Simply put, "the area of professional licensing does not

implicate a traditional category of fundamental rights." *Guttman v. Khalsa*, 669 F.3d 1101, 1123 (10th Cir. 2012).

Accordingly, this Court should hold again that Kohn's allegations do not satisfy step two of the *Georgia* analysis.

### c. Kohn's Claims Also Fail at the Third *Georgia* Step Because Congress' Prophylactic Power Under Section 5 of the Fourteenth Amendment Does Not Extend to Professional Licensing

The Ninth Circuit recently reiterated that, even if an ADA claim does not establish a violation of the Fourteenth Amendment, abrogation may be appropriate under step three of the *Georgia* analysis when "there is a 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Kohn II*, 119 F.4th at 699 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)). The Ninth Circuit sent the case back down for this Court to do a more detailed analysis of this step. *Id.* at 699–700. But in doing so, the Ninth Circuit did not suggest that prophylactic abrogation would be valid.

Congress can legislate beyond actual Fourteenth Amendment violations under only narrow circumstances. "For an abrogation statute to be 'appropriate' under Section 5, it must be tailored to 'remedy or prevent' conduct infringing the Fourteenth Amendment's substantive prohibitions." *Allen v. Cooper*, 589 U.S. 248, 260 (2020). "Congress cannot use its power to enforce the Fourteenth Amendment to alter what that Amendment bars. That means a congressional abrogation is valid under Section 5 only if it sufficiently connects to conduct courts have held Section 1 to proscribe." *Id.* (cleaned up). The Court applies a "means-end test": "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 260–61. In other words, "[t]o ensure Congress' enforcement powers under § 5 remain enforcement powers … rather than powers to redefine the substantive scope of § 1, Congress must tailor legislation enacted under § 5 to remedy or prevent conduct transgressing the Fourteenth Amendment's substantive provisions." *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 36 (2012) (cleaned up). This "means-end" analysis involves basically three elements: (1) the level of granularity to be applied in

-24-

determining the constitutional harm at issue, (2) review of the Congressional record to determine "the evidence Congress had before it of a constitutional wrong," and (3) "how far, and for what reasons, Congress has gone beyond redressing actual constitutional violations." *Allen*, 589 U.S. at 261. Those elements confirm that a prophylactic waiver would be inappropriate for Kohn's claims.

### i.      The Relevant Level of Inquiry Is Professional Licensing

To determine whether regulation of constitutional conduct is within the scope of Congress' prophylactic power under Section 5 of the Fourteenth Amendment, the Court must first determine "the metes and bounds of the constitutional right in question." *Garrett*, 531 U.S. at 368. That inquiry cannot be based on "Title II, with its wide variety of applications, as an undifferentiated whole." *Lane*, 541 U.S. at 530–31; *see Coleman*, 566 U.S. at 36–37 (family care provisions of FMLA were sufficiently connected to history of unconstitutional sex-discrimination to abrogate the Eleventh Amendment, but self-care provisions of the FMLA were not).

Here, the relevant area of state action is professional licensing. The "metes and bounds" of professional licensing have been consistently analyzed in cases considering whether Title II abrogates sovereign immunity in federal court for claims involving licensing or regulation of professions. All of those courts held that Congress could not abrogate immunity in this context. *T.W.*, 110 F.4th at 91; *Guttman*, 669 F.3d at 1123–24; *Strojnik*, 446 F. Supp. 3d at 575–76 (Title II does not abrogate Eleventh Amendment immunity to retaliation claim concerning state bar discipline); *Renner v. Supreme Ct. of Fla.*, No. 19-14981, 2022 WL 1658361, at \*5–7 (11th Cir. May 25, 2022) (Title II does not abrogate Eleventh Amendment immunity to challenge regarding conditions of bar admission); *Schwarz v. Georgia Composite Med. Bd.*, No. 1:18-CV-1142-MLB, 2020 WL 7773481, at \*3 (N.D. Ga. Dec. 30, 2020), *aff'd*, No. 21-10288, 2021 WL 4519893 (11th Cir. Oct. 4, 2021) (Title II does not abrogate Eleventh Amendment immunity as to state medical licensing); *Nichols v. Ala. State Bar*, No. 2:15-CV-179-WMA, 2015 WL 3823929, at \*5 (N.D. Ala. June 19, 2015), *aff'd*, 815 F.3d 726 (11th Cir. 2016) (Title II does not

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC                Case No. 4:20-cv-04827-PJH

abrogate Eleventh Amendment immunity as to state regulation of attorney conduct); *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 668 (10th Cir. 2014) (Title II does not abrogate Eleventh Amendment immunity as to denial of accommodations on nursing licensing exam); *Oliver*, 312 F. Supp. 3d at 527–35 (Title II does not abrogate Eleventh Amendment as to bar exam accommodations claim); *Roe v. Johnson*, 334 F. Supp. 2d 415, 422–23 (S.D.N.Y. 2004) (same).

          **ii.**       **The Congressional Record Contains No Evidence of a Pattern of Unconstitutional Discrimination by States Concerning Professional Licensing**

"For an abrogation statute to be 'appropriate' under Section 5, it must be tailored to 'remedy or prevent' conduct infringing the Fourteenth Amendment's substantive prohibitions." *Allen*, 589 U.S. at 260. "[A] congressional abrogation is valid under Section 5 only if it sufficiently connects to conduct courts have held Section 1 to proscribe." *Id.* That analysis requires "a history and pattern of unconstitutional [ ] discrimination by the States against the disabled." *Garrett*, 531 U.S. at 368. Courts look to the legislative history of a statute to determine whether it was directed at such a history and pattern. *Allen*, 589 U.S. at 261 ("[C]ourts are to consider the constitutional problem Congress faced—both the nature and the extent of state conduct violating the Fourteenth Amendment. That assessment usually (though not inevitably) focuses on the legislative record, which shows the evidence Congress had before it of a constitutional wrong."). Here, "nothing in the congressional record suggests Title II was a response to pervasive discrimination in the area of professional licensing." *Guttman*, 669 F.3d at 1124 (holding that Title II is "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.") (quoting *City of Boerne*, 521 U.S. at 532).

Title II's legislative history is found at S. Rep. 101-116 (1990), H.R. Conf. Rep. No. 101-596 (1990), H.R. Conf. Rep. No. 101-558 (1990), and H.R. Rep. No. 101-485 pts. 1, 2, 3 & 4 (1990). There is no reference to state discrimination against the disabled in professional licensing in this record; the only reference to professional licensing is a single report with regard to Title III—governing public accommodations by *private* entities—noting that the ADA would

require testing accommodations, "which includes physical access as well as accommodations in the way the test is administered, e.g. extended time or assistance of a reader." H.R. Rep. 101-485, 69 (1990), 1990 U.S.C.C.A.N. 445, 492; *see* 42 U.S.C. § 12189; 28 C.F.R. § 36.309. Section 309 of Title III was enacted to cover the circumstance where such tests are administered by *private* parties. Regardless, the record contains no history of discrimination in such exams.

Nothing else in the ADA's legislative history discusses bar exams or other professional licensing, much less a history of irrational state discrimination with respect to the same. *See T.W.*, 110 F.4th at 85–87; *Oliver*, 312 F. Supp. 3d at 530–31; *Roe*, 334 F. Supp. 2d at 422–23. Congress was not thus legislating based on unconstitutional state discrimination against the disabled in professional licensing. *See Renner*, 2022 WL 1658361, at *6. The Supreme Court reached a similar conclusion with respect to discrimination in government employment against the disabled, noting the near absence of evidence of such discrimination in the Congressional record. *Garrett*, 531 U.S. at 370 (in the absence of specific legislative findings, refusing to infer a parallel issue with state actors from evidence of discrimination in the private sector); *see also Allen*, 589 U.S. at 266 (holding purported abrogation of sovereign immunity in Copyright Remedy Clarification Act failed the congruence and proportionality test where the evidence of constitutional injury in the legislative record was "exceedingly slight").

### iii.    Title II's Accommodation Requirements Go Well Beyond What Would Be Proportional to Preventing Unconstitutional Discrimination

Even assuming Congress enacted Title II of the ADA based on evidence of a history of unconstitutional discrimination in professional licensing (which the Congressional record does not support, as every court to consider this issue has held), Title II's broad sweep would not be a congruent and proportional response, and abrogation would fail on that ground. "[W]hat Congress has done must be in keeping with the Fourteenth Amendment rules it has the power to 'enforce.'" *Allen*, 589 U.S. at 261. Congress cannot validly abrogate the Eleventh Amendment to create new rights rather than enforce those already created by the Fourteenth Amendment. *City of Boerne*, 521 U.S. at 519.

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC                Case No. 4:20-cv-04827-PJH

Abrogating the State Bar's immunity for failure to accommodate claims would not be congruent and proportional to the Fourteenth Amendment. The Equal Protection Clause requires only a rational basis for the State's actions toward disabled individuals; it does *not* require that the State Bar provide the disabled with special accommodations. *See Garrett*, 531 U.S. at 366. Thus, the accommodation requirements of Title II go well beyond prophylactically preventing unconstitutional discrimination. *See id.* at 372–74; *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (finding no valid abrogation in Title II case challenging visual acuity exam for law enforcement certification). Abrogation of immunity is particularly problematic in this context given the states' historical and exclusive power to regulate the practice of law. *Leis v. Flynt*, 439 U.S. 438, 442 (1979). "The interest of the states in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice." *Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975). As the Second Circuit held in *T.W.*, the broad provisions of the ADA are not congruent and proportional in the professional licensing context and thus exceed the scope of Congressional prophylactic power under section 5 of the Fourteenth Amendment. *T.W.*, 110 F.4th at 87–91.

Abrogating the State Bar's immunity for Kohn's disparate impact claims also would be equally inappropriate under the Fourteenth Amendment. Even when a State facially legislates on the basis of disability, the Equal Protection Clause prohibits only "irrational and invidious discrimination." Dkt. 41 at 12 (quoting *Dare v. California*, 191 F.3d 1167, 1174 (9th Cir. 1999)). Kohn's disparate impact theory falls yet further outside the Fourteenth Amendment's scope. Even for classifications subject to heighted scrutiny (like race), a law that prohibits "mere disparate impact would fail to enforce a right that the Amendment secures." *Louisiana v. Callais*, 146 S. Ct. 1131, 1155 (2026); s*ee also Washington v. Davis,* 426 U.S. 229, 242 (1976). This case follows a fortiori from *Callais*: Because the disability classifications are subject only to rational basis review, abrogating immunity from claims based on mere disparate impact on disabled individuals necessarily sweeps too far beyond what the Fourteenth Amendment actually prohibits.

*        *        *

-28-

Kohn's claims fail every *Georgia* step. He does not state a violation of the ADA. Nor does the conduct alleged represent a violation of the Fourteenth Amendment. And Congress could not prophylactically waive immunity immunity from Kohn's claims that the State Bar denied him accommodations or had policies that disparately impacted disabled individuals—theories that bear little resemblance to the Fourteenth Amendment's actual requirements.

Accordingly, the Court should find that Kohn's Title II claims against the State Bar are barred by sovereign immunity and dismiss those claims without leaving to amend. It should also dismiss Kohn's state-law claim under the Unruh Act, which also is barred by the State Bar's sovereign immunity. *Pennhurst*, 465 U.S. at 120. Moreover, because Kohn's federal claim is subject to dismissal on subject matter jurisdiction grounds, this Court has no authority to retain jurisdiction over Kohn's state-law claim in any event. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002).

**B.      The TAC Should be Dismissed Pursuant to Federal Rule of Civil Procedure 12(b)(6)**

Even if sovereign immunity did not bar Kohn's federal and state-law claims, Kohn fails to state a claim upon which relief can be granted, and the complaint should be dismissed pursuant to Rule 12(b)(6). For the same reasons discussed in Section IV.A.2.a., *supra*, Kohn has failed to state a cognizable claim under Title II of the ADA. His Title II claim also fails because the remedies he seeks are unavailable to him as a matter of law. Kohn's Unruh Act claim likewise fails as a matter of law because he failed to comply with California Government Claims Act, the State Bar is not a business establishment, and the derivative Unruh Act claim fails for the same reasons as the ADA claim.

**1.      Kohn's Title II Claim Fails as a Matter of Law and the Remedies He Seeks Are Unavailable**

As discussed in step one of the *Georgia* analysis, Kohn has not alleged any conduct that violates Title II. See *supra*, Section IV.A.2.a. The TAC fails to establish any accommodation that the State Bar failed to provide that deprived Kohn of meaningful access without otherwise fundamentally altering the exam. *Id.* at a.i. Kohn also failed to allege any State Bar policy or

-29-

practice that had a disparate impact on disabled applicants seeking accommodation. *Id.* at a.ii. Kohn's ADA claim also fails as a matter of law because he seeks remedies that are unavailable to him. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) (a Rule 12(b)(6) motion is proper procedure to challenge damages not recoverable as a matter of law).

As an initial matter, Kohn's request for declaratory relief fails as a matter of law because such relief must be prospective rather than retrospective in nature. *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 n.5 (1984) (doubting Article III standing to seek "only a declaration that past conduct was unlawful"). Such prospective relief requires Kohn to allege a "real and immediate threat" that he would again be subject to the challenged accommodations process and policies. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). As the Court observed in its earlier ruling, "any request for declaratory or injunctive relief pertaining to [previously administered exams] is necessarily moot." Dkt. 41 at 6. Kohn also passed the October 2020 bar exam and was admitted to practice in 2021. At this point, "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction." *Bayer v. Neiman Marcus Grp., Inc.,* 861 F.3d 853, 868 (9th Cir. 2017).

Kohn also cannot seek damages for past violations because he has failed to plausibly allege that the State Bar acted with deliberate indifference, as required under Title II. *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138–39 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). Deliberate indifference requires both knowledge that harm to a federally protected right is substantially likely, and a failure to act upon that likelihood. *Id.*; *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017). "[A] failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Duvall*, 260 F.3d at 1139.

Kohn cannot allege knowledge of harm to a federally protected right because, as discussed in Section IV.A.2.b, *supra*, there is no harm to a federally protected right at issue. In failure to accommodate cases, a plaintiff can state a claim for deliberate indifference by pleading that the public entity was on notice of the need for accommodation and failed to investigate, *Luong v. E. Side Union High Sch. Dist.*, 265 F. Supp. 3d 1045, 1051 (N.D. Cal.

2017), but here there is no allegation that the State Bar failed to investigate Kohn's requests. To the contrary, Kohn's TAC describes the voluminous correspondence between Kohn and the State Bar, resulting in Kohn receiving multiple accommodations on all exams, including requests that were granted on appeal after further investigation. TAC ¶¶ 102–16, 144–66, 189–211, 220–67. Kohn's conclusory allegations that certain former State Bar officials held personal bias and animus against the disabled in general are insufficient to support a claim that the State Bar acted with deliberate indifference in handling Kohn's accommodation requests. *Id.* ¶¶ 73, 85. Moreover, there is no federal right to a specific procedure for handling accommodation requests under Title II, and the (advisory) DOJ guidance Kohn claims the State Bar failed to follow is applies only to private entities administering licensing exams under Title III and is inapplicable to the State Bar. *See Disabled Rts. Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 872 (9th Cir. 2004) (Title III does not apply to public entities); *see also Equal Rts. Ctr. v. D.C.*, 741 F. Supp. 2d 273, 284 (D.D.C. 2010).

With respect to the October 2020 bar exam, which Kohn passed, Kohn alleges that the State Bar acted with deliberate indifference to his liberty interests in requiring Kohn to test in person during COVID-19, TAC ¶ 266, but again Kohn fails to articulate a federally protected right at issue. Kohn in fact did have the option to test remotely, but to avail himself of other accommodations that he wanted for the exam, he (and everyone else with the same accommodations) was required to test with those accommodations in-person for exam security. *Id.* ¶ 242. Regardless, Kohn does not have a liberty interest in taking the bar exam. *Lupert*, 761 F.2d at 1327 n.2 (the right to pursue one's chosen profession is not a fundamental right subject to strict scrutiny analysis for equal protection claims); *see also Vartanian v. State Bar of California*, 794 F. App'x 597, 601 (9th Cir. 2019) (citing *Giannini*, *supra*). To the extent Kohn intends to rely on discovery to support his claims of deliberate indifference, *id.* ¶ 280, "discovery cannot cure a facially insufficient pleading." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (citing *Iqbal* and *Twombly*).

In sum, Kohn has not plausibly stated a claim for deliberate indifference, which is fatal to his request for compensatory damages. Furthermore, punitive damages are not available

-31-

under Title II of the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002). Indeed, other than a single reference in his introduction, Kohn makes no attempt to establish a legal basis for his request for punitive damages against the State Bar. *See generally* TAC.

Because Kohn cannot state a claim for relief as a matter of law, dismissal under Rule 12(b)(6) is appropriate. *Whittlestone,* 618 F.3d at 974–75.

### 2.    Kohn's Unruh Act Claims Fail as a Matter of Law

Kohn cannot state an Unruh Act claim where he filed suit before complying with the claim presentation requirements of the California Government Claims Act ("GCA"). Even if Kohn could surmount that procedural hurdle, which he cannot, Kohn fails to plausibly allege that the State Bar is a business establishment as required for the Unruh Act to apply to the State Bar's conduct. Moreover, to the extent Kohn's Unruh Act claims are coextensive with his ADA claims, the TAC fails to state a claim for violation of the ADA.

### a.    Kohn Failed to Comply with the Government Claims Act for His Unruh Act Claim

The Unruh Act claim is subject to dismissal because the GCA mandates that suits against a public entity cannot be brought "until a written claim … has been presented to the public entity and has been" acted upon or rejected. Cal. Gov. Code § 945.4. Claims for personal injury must be presented within six months of accrual; all other claims must be presented within a year. *DiCampli-Mintz v. County of Santa Clara*, 55 Cal. 4th 983, 990 (2012) (Cal. Gov. Code § 911.2). A claim cannot be presented before it has accrued, Cal. Gov. Code § 910, and a claimant cannot sue the public entity until the entity has either denied the claim or failed to act upon the claim within 45 days, *id.* §§ 945.4, 912.4(a). Adherence to these procedures "is an *element* that a plaintiff is required to prove," and failure to allege compliance is grounds for dismissal. *Willis v. City of Carlsbad*, 48 Cal. App. 5th 1104, 1119 (2020) (emphasis in original). Kohn's TAC fails to establish compliance with these claim presentation requirements.

Kohn first alleges that his January 7, 2019, administrative appeal statement should be considered a written demand for purposes of the GCA because it put the State Bar on preemptive notice that he would "judicially contest any upheld denials." TAC ¶ 164. However, a

government claim does not accrue until the loss has occurred. *R.L. v. Merced City Sch. Dist.*, 114 Cal. App. 5th 89, 115 (2025) ("Since a claim must fairly describe what the entity is alleged to have done, it cannot be presented prematurely, i.e., before liability under the substantive law is established.") (cleaned up); *see also* Cal. Gov. Code § 910 (requiring a description of the "loss incurred" which cannot be known in advance). Since Kohn's harms from the denial of his accommodation requests did not accrue until his appeal was in fact denied on February 15, 2019, TAC ¶ 165, he could not have presented a valid written government claim in January. There is no allegation that Kohn thereafter presented his claim to the State Bar within six months of the decision on appeal, which is fatal to Kohn's ability to state a claim for compliance with the GCA based on the January appeal statement. Cal. Gov. Code § 911.2.

Kohn also points to a demand letter he sent on June 17, 2020, that he claims complied with the requirements of the GCA for presentation of claims related to the February 2020 bar exam and prior exams, TAC ¶ 215. Kohn does not allege that the State Bar responded to this demand (which would be deemed rejected after 45 days by operation of law) but adds that a "more formal" claim was submitted on August 14, 2020 (and resubmitted on August 21, 2020)—a month after he filed the underlying complaint in this action—which was affirmatively rejected by the State Bar on September 28, 2020. *Id.* ¶¶ 215–16; *see also* RJN Exs. 3–5. Even if such claims were presented timely (which they were not), this timeline does not comply with the GCA, which requires both timely presentation of the claim *and* a response or expiration of the response period *before filing suit*. Cal. Gov. Code § 945.4. As the California Court of Appeal has recently explained, a lawsuit against a public entity "cannot stand" where the plaintiff sues the public entity before the 45-day period in which the entity has to respond to the claim has elapsed. *Harland v. City of W. Hollywood*, 120 Cal. App. 5th 1166, 2026 WL 1552678, at *3 (Cal. App. 2d Dist. June 2, 2026) (the purpose of the GCA is to give public entities the ability to investigate and resolve claims without the expense of litigation). Because Kohn filed suit on July 18, 2020, before the State Bar had responded or its time to respond had elapsed, he failed to

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

comply with the GCA. Amendment of the complaint does not cure this defect. *Id.* For this reason alone, Kohn's Unruh Act claim should be dismissed without leave to amend.[2]

**b.     Kohn Fails to Establish that the Unruh Act Applies to the State Bar's Administration of the Bar Exam Which Fulfils a Public Purpose, Not a Private Enterprise**

The Unruh Act prohibits discrimination by "business establishments." *Brennon B. v. Superior Court*, 13 Cal. 5th 662, 682 (2022) ("*Brennon B.*"). Kohn asserts that the State Bar is a "business establishment" under California Civil Code sections 51–52, or that its administration of the bar exam has "sufficient businesslike attributes" to warrant liability under Unruh. TAC ¶ 286; *see id.* ¶ 41 (citing to the imposition of exam fees, contracts with vendors providing bar exam services, and other alleged "businesslike attributes"). Although *Brennon B.* did not categorically foreclose that a public entity could be subject to Unruh, courts evaluating public entity liability under Unruh must assess whether the entity's economic functions are fulfilling a public purpose or are merely for the purpose of "protecting economic value" of the enterprise. 13 Cal. 5th at 679–81 (holding Unruh Act did not reach public school districts providing a free and public education to students). Cases applying this standard confirm that "the appropriate method for determining whether an entity is a 'business establishment' is to analyze the attributes of the entity in question … with respect to the entity's actions that are at issue in the suit." *Est. of Benson v. Guiding Hands Sch., Inc.*, No. 2:25-CV-00670-DJC-CSK, 2026 WL 1131294, at *10 (E.D. Cal. Apr. 27, 2026) (citation omitted) (distinguishing the educational function of a public school district from the economic function of a private entity).

Here, Kohn has not plausibly alleged that the State Bar is functioning as a commercial enterprise in its administration of the bar exam, including the accommodations process. The State Bar's mission is to serve the public as the administrative arm of the California Supreme Court for admissions and discipline. *See* Section II.A (discussing the State Bar's role in the bar

---

[2] Even if Kohn's August letters complied with the GCA's requirements, Kohn's state-law claims are limited to what was presented therein; thus, he cannot proceed on theories, first articulated in the TAC, of failure to accommodate on the July 2018 exam and disparate impact on all exam cycles. *See Stockett v. Assn. of Cal. Water Agencies Jt. Powers Ins. Auth.,* 34 Cal. 4th 441, 447 (2004).

-34-

exam); *see also* Cal. Bus. & Prof. Code § 6001.1 ("Protection of the public … shall be the highest priority for the State Bar of California … in exercising their licensing, regulatory, and disciplinary functions."). Applicants also take the bar exam not because they choose the State Bar's offering in the marketplace, but because they are required to take the State Bar-administered exam as a condition of admission to practice law in California. Cal. Bus. & Prof. Code § 6060(g). The State Bar cannot charge fees to maximize profit and is authorized to charge admissions fees only as necessary to "defray the expense" of admissions administration. *Id.* § 6063. Ensuring that the bar exam is administered securely and with integrity are functions the State Bar must undertake to serve its public protection mission in administering its licensing activities. *Id.* § 6001.1.

In sum, the TAC does not plausibly allege—nor could it—that the State Bar's administration of the bar exam is undertaken with the same economic motives as an ordinary for-profit business. *Doe v. Cal. Lutheran High Sch. Assn.*, 170 Cal. App. 4th 828, 838 (2009) (finding that an entity's engagement in business activities by themselves "do not demonstrate that the organization has become a commercial purveyor" subject to Unruh, where the core functions of the entity at issue serve the public). Because Kohn cannot allege the State Bar is functioning as a business establishment, Kohn cannot allege discrimination by a business establishment, thus Kohn's Unruh Act claim should be dismissed without leave to amend.

### c. Kohn's Unruh Act Claim Also Fails Because Kohn Has Not Stated a Claim for Violation of the ADA

Kohn's Unruh Act claim fails for the additional reason that it is derivative of his ADA claim. As such, Kohn has failed to state a viable claim for discrimination under the Unruh Act for the same reasons he failed to state a claim for violation of the ADA. *See* Section IV.A.2.a, *supra*; *see also Montoya v. City of San Diego*, 434 F. Supp. 3d 830, 853 (S.D. Cal. 2020) ("to the extent Plaintiffs' Unruh Act claim … is premised on a violation of the ADA, it fails for the same reason that Plaintiff's Title II claim fails.").

## V.    CONCLUSION

This Court should dismiss the TAC without leave to amend.

State Bar and Comm. of Bar Examiners' Motion to Dismiss TAC          Case No. 4:20-cv-04827-PJH

Dated: July 24, 2026

STATE BAR OF CALIFORNIA
OFFICE OF THE GENERAL COUNSEL


By: */s/ JENNIFER SPERLING*
JENNIFER SPERLING
Assistant General Counsel

Attorneys for Defendants
STATE BAR OF CALIFORNIA and
CALIFORNIA COMMITTEE OF BAR
EXAMINERS

-36-

## DECLARATION OF SERVICE

I, Ryan Sullivan, hereby declare: that I am over the age of eighteen years and am not a party to the within above-entitled action, that I am employed in the City and County of San Francisco, that my business address is The State Bar of California, 180 Howard Street, San Francisco, CA 94105.

On July 24, 2026, following ordinary business practice, I filed via the United States District Court, Northern District of California electronic case filing system, the following:

**THE STATE BAR OF CALIFORNIA AND COMMITTEE OF BAR EXAMINERS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Participants in the case who are registered CM/ECF users will be served.

See *the CM/ECF service list.*

I also served a copy on the following parties:

Benjamin Kohn
1913 Fordham Way,
Mountain View, CA 94040
Benjamin.s.Kohn@gmail.com

By the following means:

☒　　**(*By Email or Electronic Transmission*)** By emailing the document(s) to the person(s) at the email address(es) listed above, from e-mail address ryan.sullivan@calbar.ca.gov. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at Oakland, California, on July 24, 2026.

*Ryan Sullivan*
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Ryan Sullivan