ANDREW ROZYNSKI (admitted pro hac vice)
EISENBERG & BAUM, LLP
24 Union Square East, Penthouse
New York, New York 10003
Telephone: (212) 353-8700
Email: arozynski@eandblaw.com

MATTHEW D. VALENTI (SBN 253978)
VALENTI LAW APC
10174 Austin Drive #1116
Spring Valley, California 91979
Telephone: (619) 540-2189
Email: mattvalenti@valentilawapc.com

Attorneys for Plaintiff Benjamin Kohn

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| BENJAMIN KOHN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,<br><br>Defendants. | Case No. 4:20-cv-04827-PJH<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE THIRD AMENDED COMPLAINT**<br><br>DATE: December 17, 2026<br>TIME: 1:30 p.m.<br>COURTROOM: 3, 3rd Floor<br>JUDGE: Hon. Phyllis J. Hamilton |

## TABLE OF CONTENTS

Page

SUMMARY OF ISSUES ........ 1

STATEMENT OF FACTS ........ 1

LEGAL STANDARD ........ 1

ARGUMENT ........ 3

I. DEFENDANTS ARE NOT ENTITLED TO SHARE IN CALIFORNIA'S ELEVENTH AMENDMENT IMMUNITY ........ 3

A. The Mandate Rule Does Not Bar Applying *Nilsen* ........ 3

1. *Galette* Satisfies the Intervening Precedent Exception ........ 3

2. California Has Narrowed the Approval Rule *Kohn I* Relied On ........ 5

B. Under *Galette*, the State Bar Is Not an "Arm of California" ........ 5

Factor One: Form and Treatment under State Law ........ 5

Factor Two: Formal Liability for Judgments ........ 6

Factor Three: Control ........ 6

II. THE TAC STATES TITLE II DAMAGES CLAIMS NOT BARRED BY SOVEREIGN IMMUNITY, WHETHER OR NOT DEFENDANTS SHARE THE STATE'S IMMUNITY ........ 7

A. *Georgia* Step One: Validity Under Title II ........ 7

1. Kohn's TAC Is Replete with Facts That Establish Title II Violations ........ 7

(a) Disparate Treatment ........ 9

(b) Disparate Impact and Facially Invalid Procedural Rules ........ 12

(i) Defendants' Processing Times ........ 13

(ii) Defendants' Deadlines and Custom of Aligning Them with December Holidays ........ 14

(iii) Defendants' Excessively Burdensome Documentation Requirements ........ 14

(iv) Defendants' Inversion of the Treating Doctor Deference Rule ..... 15

(v) Defendants' Failure to Genuinely Explain Reasons for Denial ..... 15

(vi) Defendants' Refusal to Offer Live Hearings Before Finalizing Denials ..... 16

(c) Failures to Reasonably Accommodate ..... 16

2. The TAC Pleads Deliberate Indifference ..... 17

B. *Georgia* Step Two: Some or All of Kohn's Title II Claims State Coextensive Fourteenth Amendment Violations ..... 19

1. Constitutional Due Process ..... 19

(a) Threshold Protected Interests ..... 19

(b) Due Process Violations ..... 20

(i) Procedural Due Process ..... 20

(ii) State-Created Danger ..... 21

2. Equal Protection ..... 23

C. *Georgia* Step Three: Defendants Fail to Demonstrate That Prophylactic Immunity Abrogation Under 42 U.S.C. § 12202 Is Unconstitutional, Even As Applied to Bar Exam Claims ..... 23

1. The Relevant Class of Conduct Is Broader Than "Professional Licensing" ..... 23

2. *Lane* Categorically Resolved the First Two *Boerne* Prongs for Title II ..... 24

3. Prophylactic Abrogation Is Congruent and Proportional Here ..... 25

III. THE TAC STATES UNRUH DAMAGES CLAIMS THAT ARE NOT BARRED BY SOVEREIGN IMMUNITY, WHETHER OR NOT DEFENDANTS SHARE THE STATE'S IMMUNITY ..... 26

A. Sovereign Immunity Does Not Bar Kohn's Unruh Claims ..... 26

1. No Amendment to Kohn's FAC Revived the Immunity Defense Defendants Disclaimed for Unruh ........ 26

2. The California Legislature Waived Immunity for Unruh Claims ........ 27

B. Kohn's TAC States Valid Unruh Claims ........ 28

1. The Unruh Act Covers the State Bar and Its Bar Exam ........ 28

2. The California Government Claims Act Does Not Bar Kohn's Unruh Claims ........ 30

(a) Prematurity ........ 31

(b) Timeliness ........ 32

(c) Scope and Remedy ........ 33

CONCLUSION ........ 34

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195 (9th Cir. 2016) ..................... 17

*Angelucci v. Century Supper Club*, 41 Cal. 4th 160 (2007) ..................... 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................... 2

*Auer v. Robbins*, 519 U.S. 452 (1997) ..................... 13

*Bartlett v. N.Y. State Bd. of L. Exam'rs*, 226 F.3d 69 (2d Cir. 2000) ..................... 13

*Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725 (9th Cir. 1999) ..................... 9

*Bell v. Hood*, 327 U.S. 678 (1946) ..................... 2

*Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014) ..................... 20

*In re Bliemeister*, 296 F.3d 858 (9th Cir. 2002) ..................... 27

*Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001) ..................... 25

*Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007) ..................... 24

*Brennon B. v. Superior Ct.*, 13 Cal. 5th 662 (2022) ..................... 28, 29

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213 (10th Cir. 2006) ..................... 3

*Burks v. Poppy Constr. Co.*, 57 Cal. 2d 463 (1962) ..................... 28, 29

*Carmack v. Reynolds*, 2 Cal. 5th 844 (2017) ..................... 28

*Chaney v. State Bar of Cal.*, 386 F.2d 962 (9th Cir. 1967) ..................... 19

*City of Boerne v. Flores*, 521 U.S. 507 (1997) ..................... 7, 23, 24, 25

*City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432 (1985) ..................... 20, 23

*Cohen v. City of Culver City*, 754 F.3d 690 (9th Cir. 2014) ..................... 8

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) ..................... 27

*Conn v. Gabbert*, 526 U.S. 286 (1999) ..................... 19

*Constantin v. Navarrete*, No. 22-cv-07075-VKD, 2025 WL 770359 (N.D. Cal. Mar. 10, 2025) ..................... 8

*Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) ..................... 24

*Cory v. City of Huntington Beach*, 43 Cal. App. 3d 131 (1974) ..................... 30, 31

*Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996) ........ 12

*Crowe v. Or. State Bar*, 112 F.4th 1218 (9th Cir. 2024) ........ 4

*Curran v. Mount Diablo Council of the Boy Scouts of Am.*, 17 Cal. 4th 670 (1998) ........ 29

*DiCampli-Mintz v. Cnty. of Santa Clara*, 55 Cal. 4th 983 (2012) ........ 31

*Dupree v. Owens*, 92 F.4th 999 (11th Cir. 2024) ........ 3

*Duvall v. Cnty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) ........ 8, 16, 17

*Embury v. King*, 361 F.3d 562 (9th Cir. 2004) ........ 27

*Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.*, 630 F.3d 1153 (9th Cir. 2011), *cert. denied*, 565 U.S. 929 (2011) ........ 9, 16

*Estill v. Cnty. of Shasta*, 25 Cal. App. 5th 702 (2018) ........ 33

*Fed. Land Bank of St. Louis v. Priddy*, 295 U.S. 229 (1935) ........ 6

*Franceschi v. Yee*, 887 F.3d 927 (9th Cir. 2018) ........ 20

*Franklin v. City of Kingsburg*, No. 1:18-cv-0824 AWI SKO, 2023 WL 2976285 (E.D. Cal. Apr. 17, 2023) ........ 31

*Galette v. N.J. Transit Corp.*, 607 U.S. 509 (2026) ........ 1, 3, 4, 5, 6, 7

*Giannini v. Real*, 911 F.2d 354 (9th Cir. 1990) ........ 19, 21

*Goldsmith v. U.S. Bd. of Tax Appeals*, 270 U.S. 117 (1926) ........ 21

*Gordon v. State Bar of Cal.*, No. 20-cv-06442-LB, 2020 WL 5816580 (N.D. Cal. Sept. 30, 2020) ........ 11, 12

*Guckenberger v. Bos. Univ.*, 974 F. Supp. 106 (D. Mass. 1997) ........ 12, 14

*Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012) ........ 24

*Hallinan v. Comm. of Bar Exam'rs*, 65 Cal. 2d 447 (1966) ........ 19, 21

*Harland v. City of W. Hollywood*, 120 Cal. App. 5th 1166 (2026) ........ 30, 31

*Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162 (2015) ........ 29

*Hernandez v. City of San Jose*, 897 F.3d 1125 (9th Cir. 2018) ........ 22

*Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121 (2d Cir. 1999) ........ 2

*Hopkins v. Clemson Agric. Coll. of S.C.*, 221 U.S. 636 (1911) ........ 7

*Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128 (9th Cir. 2001) ........ 9

*Ingraham v. Wright*, 430 U.S. 651 (1977) .......... 19
*Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72 (1985) .......... 28, 29
*ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3 F.3d 1289 (9th Cir. 1993) .......... 1, 2, 7
*Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034 (9th Cir. 2004) .......... 2
*Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) .......... 22
*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......... 1
*Kisor v. Wilkie*, 588 U.S. 558 (2019) .......... 13
*Klingler v. Dir., Dep't of Revenue*, 455 F.3d 888 (8th Cir. 2006) .......... 24
*Kohn v. State Bar of Cal.*, 87 F.4th 1021 (9th Cir. 2023) (en banc) ("Kohn I") .......... 2, 3, 4, 5, 6, 7
*Kohn v. State Bar of Cal.*, 119 F.4th 693 (9th Cir. 2024) ("Kohn II") .......... 2, 3, 24
*Kohn v. State Bar of Cal.*, No. 20-17316, 2024 WL 4533446 (9th Cir. Oct. 21, 2024) (mem.) ("Kohn III") .......... 2, 27, 28
*L.W. v. Grubbs*, 92 F.3d 894 (9th Cir. 1996) .......... 22
*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) .......... 1, 8
*Leite v. Crane Co.*, 749 F.3d 1117 (9th Cir. 2014) .......... 2
*Lewis v. Clarke*, 581 U.S. 155 (2017) .......... 7
*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) .......... 4
*Lopez v. Garland*, 116 F.4th 1032 (9th Cir. 2024) .......... 4
*Louisiana v. Callais*, 608 U.S. 85, 146 S. Ct. 1131 (2026) .......... 26
*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) .......... 17
*Lowry v. Port San Luis Harbor Dist.*, 56 Cal. App. 5th 211 (2020) .......... 30, 31
*Lupert v. Cal. State Bar*, 761 F.2d 1325 (9th Cir. 1985) .......... 19
*Malear v. State*, 89 Cal. App. 5th 213 (2023) .......... 30, 31
*Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008) .......... 17, 18
*Martinez v. City of Clovis*, 943 F.3d 1260 (9th Cir. 2019) .......... 22
*Mathews v. Eldridge*, 424 U.S. 319 (1976) .......... 20, 21
*McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004) .......... 24

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) .... 2, 12, 14
*Memmer v. Marin Cnty. Cts.*, 169 F.3d 630 (9th Cir. 1999) .... 16
*Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008) .... 20
*Meyer v. Nebraska*, 262 U.S. 390 (1923) .... 20
*Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc) .... 3
*Mitchell v. Bailey*, 982 F.3d 937 (5th Cir. 2020) .... 2
*Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000) .... 22
*Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009) .... 28
*Murguia v. Langdon*, 61 F.4th 1096 (9th Cir. 2023) .... 22
*Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763 (11th Cir. 2020) .... 24
*Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012) .... 2
*Nilsen v. Univ. of Wash.*, 186 F.4th 1133 (9th Cir. 2026) .... 1, 3, 4, 5, 6
*Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997) .... 20
*O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790 (1983) .... 28, 29
*Orloff v. L.A. Turf Club, Inc.*, 36 Cal. 2d 734 (1951) .... 28
*Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69 (Tex. 2015) .... 20
*Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729 (9th Cir. 2021) .... 7, 9, 12, 14
*Pell v. Nuñez*, 99 F.4th 1128 (9th Cir. 2024) .... 19, 20
*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984) .... 27
*Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791 (9th Cir. 2004), *overruled in part by* *Kohn v. State Bar of Cal.*, 119 F.4th 693 (9th Cir. 2024) .... 24
*Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699 (1989) .... 32, 33
*Pierce v. Dist. of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015) .... 8
*Pistor v. Garcia*, 791 F.3d 1104 (9th Cir. 2015) .... 2
*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004) .... 28
*Polanco v. Diaz*, 76 F.4th 918 (9th Cir. 2023) .... 22
*Polich v. Burlington N., Inc.*, 942 F.2d 1467 (9th Cir. 1991) .... 2
*Principality of Monaco v. Mississippi*, 292 U.S. 313 (1934) .... 23

*Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772CW, 1995 WL 873734 (N.D. Cal. June 9, 1995) ..... 11

*Radar v. Rogers*, 49 Cal. 2d 243 (1957) ..... 30, 31

*Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533 (2002) ..... 34

*Roger v. Cnty. of Riverside*, 44 Cal. App. 5th 510 (2020) ..... 33

*Scheuer v. Rhodes*, 416 U.S. 232 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ..... 2

*Schware v. Bd. of Bar Exam'rs of N.M.*, 353 U.S. 232 (1957) ..... 19

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) ..... 23

*Smith v. Regents of the Univ. of Cal.*, No. RG19046222 (Cal. Super. Ct. Alameda Cnty. Aug. 31, 2020) ..... 11

*Snapp v. United Transp. Union*, 889 F.3d 1088 (9th Cir. 2018) ..... 8

*Sossamon v. Texas*, 563 U.S. 277 (2011) ..... 27

*State v. Superior Ct. (Bodde)*, 32 Cal. 4th 1234 (2004) ..... 31

*Steimel v. Wernert*, 823 F.3d 902 (7th Cir. 2016) ..... 12

*Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441 (2004) ..... 33

*Stoumen v. Reilly*, 37 Cal. 2d 713 (1951) ..... 28

*Students of Cal. Sch. for the Blind v. Honig*, 736 F.2d 538 (9th Cir. 1984), *vacated as moot*, 471 U.S. 148 (1985) ..... 11

*Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138 (9th Cir. 1983) ..... 2

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ..... 2

*T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71 (2d Cir. 2024) ..... 24, 26

*Tennessee v. Lane*, 541 U.S. 509 (2004) ..... 7, 24, 25, 26

*Toledo v. Sanchez*, 454 F.3d 24 (1st Cir. 2006) ..... 24

*Tritchler v. Cnty. of Lake*, 358 F.3d 1150 (9th Cir. 2004) ..... 1

*United States v. Georgia*, 546 U.S. 151 (2006) ..... 1, 2, 7, 19, 23, 24, 34

*Updike v. Multnomah Cnty.*, 870 F.3d 939 (9th Cir. 2017) ..... 8, 15

*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) ..... 14, 15

*Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594 (1995).................................. 28, 29

*Washington v. Davis*, 426 U.S. 229 (1976)................................................................................ 26

*Willner v. Comm. on Character & Fitness*, 373 U.S. 96 (1963).......................................... 20, 21

*Windsor v. United States*, 699 F.3d 169 (2d Cir. 2012)............................................................ 20

*Wolf v. City of Millbrae*, No. 21-cv-00967-PJH, 2021 WL 3727072 (N.D. Cal. Aug. 23, 2021)........................................................................................................................ 9, 16

*Wolff v. McDonnell*, 418 U.S. 539 (1974).................................................................................. 21

*Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807 (9th Cir. 1999)............................................ 8

*Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002)..................................................... 9

**Constitutional Provisions** **Page(s)**

U.S. Const. art. IV, § 1 (Full Faith and Credit Clause)............................................................ 19

U.S. Const. amend. XI...................................................................................................... 3, 26, 27

U.S. Const. amend. XIV...................................................................... 1, 7, 19, 20, 21, 23, 26

Cal. Const. art. VI, § 9...................................................................................................................... 5

**Statutes** **Page(s)**

28 U.S.C. § 1367(d)........................................................................................................................ 34

28 U.S.C. § 2403(a)........................................................................................................................ 34

42 U.S.C. § 12101(a)(7)-(8)............................................................................................................ 24

42 U.S.C. § 12189.................................................................................................................... 12, 13

42 U.S.C. § 12202................................................................................................................ 1, 23, 34

42 U.S.C. § 12206(c)........................................................................................................................ 13

Cal. Bus. & Prof. Code § 6001(b)..................................................................................................... 5

Cal. Bus. & Prof. Code § 6008.......................................................................................................... 6

Cal. Bus. & Prof. Code § 6008.1....................................................................................................... 6

Cal. Bus. & Prof. Code § 6008.2....................................................................................................... 6

Cal. Bus. & Prof. Code § 6008.3....................................................................................................... 6

Cal. Bus. & Prof. Code § 6060 .................... 24
Cal. Bus. & Prof. Code § 6063 .................... 6
Cal. Bus. & Prof. Code § 6144(a) .................... 6
Cal. Civ. Code § 51(b) .................... 29
Cal. Civ. Code § 51(f) .................... 29
Cal. Gov't Code § 911.2 .................... 30, 32
Cal. Gov't Code § 911.3 .................... 32, 33
Cal. Gov't Code § 911.8(b) .................... 33
Cal. Gov't Code § 913 .................... 33
Cal. Gov't Code § 915 .................... 31
Cal. Gov't Code § 945.6 .................... 32, 33
Cal. Gov't Code § 946.6 .................... 33

**Rules** **Page(s)**

Fed. R. Civ. P. 5.1 .................... 34
Fed. R. Civ. P. 12(b) .................... 10, 11, 16, 21, 23
Fed. R. Civ. P. 12(b)(1) .................... 1, 2
Fed. R. Civ. P. 12(b)(6) .................... 1, 2, 20, 30
Fed. R. Civ. P. 41(b) .................... 2
Cal. R. Ct. 8.1115(e)(1) .................... 30
Cal. R. Ct. 9.3 .................... 1
Cal. R. Ct. 9.5 .................... 1, 5
State Bar Rules 4.80-4.92 (Admissions) .................... 9
State Bar Rule 4.90 .................... 14
State Bar Rule 4.160(D)(4)(d) .................... 24

**Regulations** **Page(s)**

28 C.F.R. § 35.130(b)(1)(ii) (2025) .................... 10, 12

28 C.F.R. § 35.130(b)(1)(iii) (2025) .......... 10, 16
28 C.F.R. § 35.130(b)(3)(i) (2025) .......... 13
28 C.F.R. § 35.130(b)(4) (2025) .......... 17
28 C.F.R. § 35.130(b)(6) (2025) .......... 12
28 C.F.R. § 35.130(b)(7)(i) (2025) .......... 8
28 C.F.R. § 35.130(b)(8) (2025) .......... 12, 13, 14
28 C.F.R. § 35.133(a) (2025) .......... 16
28 C.F.R. § 35.135 (2025) .......... 17
28 C.F.R. § 35.150 (2025) .......... 11
28 C.F.R. § 35.160(b)(1) (2025) .......... 17
28 C.F.R. § 35.160(b)(2) (2025) .......... 8
28 C.F.R. § 35.164 (2025) .......... 8, 15, 16
28 C.F.R. pt. 35, app. A (2025) .......... 12
28 C.F.R. pt. 35, app. B (2025) .......... 11, 13
28 C.F.R. § 36.309 (2025) .......... 12, 13, 14, 15, 17
28 C.F.R. pt. 36, app. A (2025) .......... 15
56 Fed. Reg. 35694 (July 26, 1991) .......... 13
75 Fed. Reg. 56164 (Sept. 15, 2010) .......... 13
75 Fed. Reg. 56236 (Sept. 15, 2010) .......... 15

**Other Authorities** **Page(s)**

154 Cong. Rec. H8286 (daily ed. Sept. 17, 2008) .......... 25
Admin. Orders 2019-08-21-01 and 2025-10-22-04 .......... 1
Br. of United States, *Guttman v. New Mexico*, No. 2:03-CV-00463-MCA-KBM (D.N.M. Dec. 4, 2009) .......... 1
Marc P. Florman, Comment, *The Harmless Pursuit of Happiness: Why "Rational Basis with Bite" Review Makes Sense for Challenges to Occupational Licenses*, 58 Loy. L. Rev. 721 (2012) .......... 20

Harold W. Horowitz, *The 1959 California Equal Rights in "Business Establishments" Statute: A Problem in Statutory Application*, 33 S. Cal. L. Rev. 260 (1960) ........................ 29

Pet. of United States for Reh'g En Banc, *Guttman v. Khalsa*, Nos. 10-2167, 10-2172 (10th Cir. Feb. 27, 2012) ........................ 1, 24

Jayne Ponder, Note, *The Irrational Rationality of Rational Basis Review for People with Disabilities: A Call for Intermediate Scrutiny*, 53 Harv. C.R.-C.L. L. Rev. 709 (2018) ........ 23

U.S. Dep't of Justice, *ADA Requirements: Testing Accommodations*, https://www.ada.gov/resources/testing-accommodations/ (last visited Sept. 3, 2026) ........................ 13, 14

Derek Warden, *Abrogation of State Sovereign Immunity in Kohn v. State Bar of California* (Sept. 6, 2023) (unpublished manuscript), https://ssrn.com/abstract=4563450 ........................ 25

Derek Warden, *Constitutionalizing Three Theories of Disability Discrimination—Disparate Treatment, Reasonable Accommodation, and Integration—Through a Jurisprudential Pluralistic and Constitutional Pluralistic Reading of the Ninth Amendment* (2022) (S.J.D. dissertation, Tulane University Law School), https://ssrn.com/abstract=3798016 ........................ 23

## SUMMARY OF ISSUES

Defendants' motion presents: (1) whether the State Bar is entitled to share California's sovereign immunity after *Galette v. N.J. Transit Corp.*, 607 U.S. 509 (2026), and *Nilsen v. Univ. of Wash.*, 186 F.4th 1133 (9th Cir. 2026); (2) whether valid Title II claims are pled at *United States v. Georgia*, 546 U.S. 151 (2006) step one; (3) whether valid Fourteenth Amendment violations are pled at *Georgia* step two; (4) whether Defendants demonstrated prophylactic abrogation under 42 U.S.C. § 12202 is unconstitutional as applied here, at *Georgia* step three; (5) whether immunity bars the Unruh claims; (6) whether the TAC states Unruh claims; and (7) whether, *if* dismissal is warranted, leave to amend should be granted.

## STATEMENT OF FACTS

Kohn incorporates the facts pled in his Third Amended Complaint (TAC), including but not limited to: his disabilities, accommodation history, and injuries (¶¶ 4-40); Defendants, their decision-makers, and the pled animus (¶¶ 41-58); the exam, its role in admission, and its disparate impact (¶¶ 59-73); Defendants' procedures and "reform" history (¶¶ 74-98); and the July 2018 (¶¶ 99-142), February 2019 (¶¶ 143-188), February 2020 (¶¶ 189-216), and October 2020 (¶¶ 217-275) exam cycles.

## LEGAL STANDARD

Defendants' motion invokes both Rules 12(b)(1) and 12(b)(6). Its 12(b)(1) challenge to subject matter jurisdiction is facial, as Defendants proffer no declarations disputing purportedly "jurisdictional" pled facts.[1] The Ninth Circuit is not uniform on whether sovereign immunity is properly analyzed under 12(b)(1) or 12(b)(6). *Compare ITSI T.V. Prods., Inc. v. Agric. Ass'ns*, 3

---

[1] Defendants seek judicial notice of various materials, Dkt. 89-1, but do not assert any factual challenge. Kohn does not oppose the RJN as to the existence, dates, or text of the cited materials, but would oppose consideration of these materials for inferring disputed factual allegations against him. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Kohn concurrently requests judicial notice of Cal. R. Ct. 9.3, 9.5; Admin. Orders 2019-08-21-01 and 2025-10-22-04, the docket entries cited herein, and briefs filed by the U.S. Department of Justice in *Guttman v. New Mexico*, No. 2:03-CV-00463-MCA-KBM (D.N.M. Dec. 4, 2009), at 8-27, and Nos. 10-2167, 10-2172 (10th Cir. Feb. 27, 2012) (rehearing pet.), at 6-15, for existence and text only. Docket citations are to ECF header pagination.

F.3d 1289, 1291-92 (9th Cir. 1993), *and Tritchler v. Cnty. of Lake*, 358 F.3d 1150, 1153-54 (9th Cir. 2004), *with Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (concerning tribal immunity). Here, the Ninth Circuit affirmed the dismissal of Kohn's Rehabilitation Act claim–pursuant to a 12(b)(1) factual challenge–and vacated 12(b)(6) dismissal of his remaining claims. *Kohn v. State Bar of Cal.*, No. 20-17316, 2024 WL 4533446, at *1-2 (9th Cir. Oct. 21, 2024) (mem.) ("*Kohn III*").[2] Defendants assert no factual challenge, and *Georgia* steps one and two are identical to the merits of Kohn's claims, foreclosing Rule 12(b)(1). *Bell v. Hood,* 327 U.S. 678, 682-83 (1946); *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.,* 711 F.2d 138, 139 (9th Cir. 1983). <u>The Court should apply Rule 12(b)(6).</u>

Even under 12(b)(1), the party asserting sovereign immunity bears the burden to establish it. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014); *ITSI T.V. Prods.*, 3 F.3d at 1291-92. That is especially so for the Title II claims, because Defendants' theory requires holding a federal statute unconstitutional, and the challenger bears that burden. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538, 563 (2012). Under either rule, pled facts are presumed true and construed in Plaintiff's favor. *Leite*, 749 F.3d at 1121; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]egal conclusions can provide the framework of a complaint," *Iqbal,* 556 U.S. at 679, but are evaluated on their merits and not automatically presumed true as with pled facts. *Id.* All reasonable inferences in Plaintiff's favor supported by the pled facts must also be credited. *McGary v. City of Portland,* 386 F.3d 1259, 1261 (9th Cir. 2004) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Discrimination plaintiffs need not plead *prima facie* cases to survive dismissal. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). If dismissal is warranted, Kohn requests leave to amend, which must be granted unless "the complaint could not be saved by any amendment." *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991). Any Rule 12(b)(1) dismissal must be without prejudice. Fed. R. Civ. P. 41(b); *Kelly v. Fleetwood Enters., Inc.*, 377 F.3d 1034, 1036 (9th Cir. 2004); *Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999); *Mitchell v. Bailey*, 982

[2] Short forms follow the parties' usage: *Kohn v. State Bar of Cal.*, 87 F.4th 1021 (9th Cir. 2023) (en banc) ("*Kohn I*"); *Kohn v. State Bar of Cal.*, 119 F.4th 693 (9th Cir. 2024) ("*Kohn II*").

F.3d 937, 944 (5th Cir. 2020); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *Dupree v. Owens*, 92 F.4th 999, 1007 (11th Cir. 2024).

## ARGUMENT

### I. DEFENDANTS ARE NOT ENTITLED TO SHARE IN CALIFORNIA'S ELEVENTH AMENDMENT IMMUNITY[3]

#### A. The Mandate Rule Does Not Bar Applying *Nilsen*

Defendants concede that the mandate rule "does not foreclose applying 'an intervening change in controlling authority' that is 'clearly irreconcilable.'" Mot. 10-11 (citations omitted).[4] *Nilsen*, a published opinion that postdates both the mandate and this motion, addressed "whether *Kohn*'s three-factor test is 'clearly irreconcilable' with *Galette*." *Id.* at 1137. *Nilsen* answered that while "*Galette* did not effectively overrule the *Kohn* test," it "did refine and rebalance" it. *Id.* at 1138. It then announced a revised and reweighted test. *Id.*

#### 1. *Galette* Satisfies the Intervening Precedent Exception

*Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) establishes the clear irreconcilability standard. "[T]he issues decided by the higher court need not be identical"; what matters is whether it "undercut the theory or reasoning underlying the prior circuit precedent." *Id.* at 900. District courts apply that rule, *id.*, and so did the Ninth Circuit in this case. *Kohn II*, 119 F.4th at 698. *Miller*'s standard is met here. *Kohn I* would ordinarily bind as law of the case, but *Nilsen* confirms that *Galette* established an analytical framework for arm-of-State determinations that diverges far more significantly from *Kohn I* than Defendants portray.[5] <u>*Nilsen* restated the post-*Galette* circuit test as now:</u>

---

[3] Kohn preserves for appeal his positions that: the CGCA also waives immunity–even in federal court–once its requirements are satisfied; and that States' constitutionally-derived immunity in federal court applies only to claims premised upon diversity jurisdiction.

[4] While Defendants frame the mandate rule as "jurisdictional," this concession admits jurisdiction to consider and apply the intervening-authority exception here. The exception constitutes a *condition* on the mandate, not a departure from it.

[5] Defendants' other citations do not fill the gap. *Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024) holds a decision construing a statute remains precedential after *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *Kohn I* construed no statute. *Colombo*, *Walker*, *Williams*, and *Singer*, Mot. 11-12, are unpublished or district court decisions that predate *Nilsen* and bind nobody.

> "(1) whether the State intended to create a legally independent entity, which is shown by the entity's form and treatment under state law; (2) whether the State is formally liable for the entity's debts or liabilities, including judgments; and (3) the degree of control the State exercises over the entity. The first factor bears the most weight, and the third bears the least." *Id.* at 1138.

*Nilsen* recognized that this reweighting departed from *Kohn I*, where "the factors appeared to bear equal weight." *Id.* at 1138. *Nilsen* described the result as a "reweighted three-factor test, which emphasizes who pays any judgment that might ultimately be rendered against" the entity. *Id.* at 1135. *Nilsen*'s application of that test also changes what counts under the first and second factors, and those changes together foreclose reconciliation with *Kohn I*.

**Factor One (Intent):** *Nilsen*'s application of the intent factor held that *Galette* had promoted corporate "form and treatment" considerations, along with capacity to exercise "traditional corporate powers," as "[t]he clearest evidence that a State has created a legally separate entity," 607 U.S. at 524; *Nilsen*, 186 F.4th at 1137. This is clearly irreconcilable with *Kohn I*'s holdings downplaying the State Bar's public corporation form as merely the reason for applying the test at all, with no further significance, while describing "some of the *Mitchell* factors," particularly the same "traditional corporate powers" *Galette* underscores, as "of questionable relevance." 87 F.4th at 1028. Conversely, *Galette* demoted other considerations the *Kohn I* majority had found controlling for California's intent here. 87 F.4th at 1032-33. Indeed, *Nilsen* held that *Galette* had "dismissed as irrelevant whether the entity exercised traditional governmental or public powers," holding "[t]o the extent *Kohn* differs from *Galette* in its emphasis on these considerations under the first factor, *Galette* clarifies what is relevant to our assessment." 186 F.4th at 1137.

**Factor Two (Treasury):** *Kohn I* analyzed the treasury factor (its third) under the criterion of "the entity's overall effects on the state treasury," 87 F.4th at 1030, and still found it "a closer call" that could not "overcome the first two," *id.* at 1037, following analysis that strongly implied it ultimately cut against immunity. Under *Nilsen*, this factor is expressly controlled by the State's

---

*Crowe v. Or. State Bar*, 112 F.4th 1218, 1232 (9th Cir. 2024) also predated *Galette* and *Nilsen*. *Nilsen* itself did not treat prior precedent as insulated from reassessment.

formal legal liability for judgments, and on that dimension of the analysis even the *Kohn I* majority left no doubt that California had none, 87 F.4th at 1036. *Galette* is categorical:

> "This Court has never once found a corporation that was liable for its own judgments to be an arm of the State, even when the State had significant control over the entity." 607 U.S. at 526.

**2. California Has Narrowed the Approval Rule *Kohn I* Relied On**

*Kohn I*'s control analysis relied on the California Supreme Court's requirement that it approve amendments to the testing accommodation rules. 87 F.4th at 1035 (citing Cal. R. Ct. 9.5). Effective October 2025, this was narrowed to "changes recommended by the examiners to the prerequisites to be certified for admission to practice law." Cal. R. Ct. 9.5(a); TAC ¶ 82(B). As the amendment postdates the 2017-2020 conduct, Kohn offers it only to show how California structures the State Bar now. As the state-law predicate changed, *Kohn I* directs reassessment.

**B. Under *Galette*, the State Bar Is Not an "Arm of California"**

**Factor One: Form and Treatment under State Law**

*Galette* makes the traditional corporate powers "the clearest evidence" of a legally separate entity and directs courts to presume that such a corporation "is no longer part of the State itself." 607 U.S. at 524-25. While "public corporation" status under Cal. Const. art. VI, § 9 may not be dispositive, *id.* at 530, Cal. Bus. & Prof. Code § 6001(b) confers each power *Galette* names:

> "perpetual succession and a seal and it may sue and be sued," and may "[m]ake contracts," "[b]orrow money, contract debts, issue bonds, notes, and debentures," and "[o]wn, hold, use, manage, and deal in and with real and personal property."

The contrast with *Nilsen* is exact. The Ninth Circuit held the University of Washington an arm of Washington because "[i]t appears . . . that UW is not a corporation under state law" and "lacks the express power to sue and be sued," and because state law "expressly classifies it as" a state agency, "subject to the obligations imposed on state agencies." 186 F.4th at 1138-40.

**Factor Two: Formal Liability for Judgments**

*Kohn I* expressly held: "There is no dispute that California law makes the State Bar responsible for its own debts and liabilities, so California would not be liable for a judgment against the State Bar." 87 F.4th at 1036; Cal. Bus. & Prof. Code §§ 6008.1, 6008.3, 6063, 6144(a). *Kohn I* also rejected Defendants' argument–Mot. 13-14–that §§ 6008 and 6008.2 place State Bar

property and debt "in the judicial branch," so a judgment would be paid from judicial-branch property. "These aspects of the State Bar's financial administration do not prove that California is responsible for funding the State Bar or paying its debts or judgments." *Id.* It added that they are "indicia of California's intent… and control," *id.*, but *Galette* holds that "an entity's practical financial relationship with the State, such as its expectation that the State would cover its judgments if needed, has less relevance" than formal liability. 607 U.S. at 525-26. And *Galette* rejects importing entity status from tax-immunity and other constitutional contexts: an entity "can count as part of the State for some but not other purposes," and "[i]mmunity of corporate government agencies from suit and judicial process… is less readily implied than immunity from taxation." 607 U.S. at 535 (quoting *Fed. Land Bank of St. Louis v. Priddy*, 295 U.S. 229, 235 (1935)). *Nilsen* held that Washington's disclaimer was not enough to carry this factor, because it "stopped short of totally renouncing its responsibility for all of UW's obligations," 186 F.4th at 1143, unlike the categorical New Jersey disclaimer in *Galette*, which *Kohn I* found California law provides for the State Bar.

**Factor Three: Control.** *Galette* notes that control is "not especially probative," because states retain ultimate control over every entity it creates, "even those that are not arms of the State," and gauging actual control is "an uncertain and unreliable exercise." 607 U.S. at 526. Judge Bumatay, concurring in part and dissenting in part, concluded that control "also cuts against immunity," 87 F.4th at 1051, and whatever Defendants showed in 2023 cannot carry the result now. *Supra* § I.A.2. Defendants cannot carry their immunity burden on a facial attack.[6] *ITSI*, 3 F.3d at 1292.

---

[6] The fallback theory that California is "the real party in interest," Mot. 15, also fails. While *Galette* reserved it, 607 U.S. at 527-28 & n.6, the authority *Galette* cited forecloses that use of it: "neither public corporations nor political subdivisions are clothed with that immunity from suit which belongs to the State alone by virtue of its sovereignty," and a suit "against the College itself for its own corporate act" is not a suit against the State. *Hopkins v. Clemson Agric. Coll. of S.C.*, 221 U.S. 636, 645, 647 (1911). The State becomes the real party where the decree would operate on its property or compel its officials to act. *Hopkins,* 221 U.S. at 649. The TAC seeks only damages paid from State Bar assets. *See Kohn I,* 87 F.4th at 1036. *Lewis v. Clarke*, 581 U.S. 155 (2017) involved individual-capacity suits against tribal employees.

## II. THE TAC STATES TITLE II DAMAGES CLAIMS NOT BARRED BY SOVEREIGN IMMUNITY, WHETHER OR NOT DEFENDANTS SHARE THE STATE'S IMMUNITY.

Defendants' application of *Georgia*, 546 U.S. at 159–for the abrogation issue–is even weaker. The *Georgia* test requires claim-by-claim sifting between:

(1) claims that are wholly invalid under Title II; (2) valid Title II claims premised on conduct that also violated the Fourteenth Amendment, where abrogation is always valid; and (3) valid Title II claims premised on prophylactic immunity abrogation, for which validity is determined by identifying what "class of conduct" the Title II claims fall within, and then whether–as applied to that class of conduct–Title II satisfies the third prong of *Boerne*.[7]

### A. *Georgia* Step One: Validity Under Title II

#### 1. Kohn's TAC Is Replete with Facts That Establish Title II Violations.

Defendants do not dispute that Kohn was an otherwise qualified disabled individual, only whether Defendants discriminated against Kohn's disabilities. That element is satisfied by one or more of disparate treatment, disparate impact, or failure to reasonably accommodate. *Payan v. L.A. Cmty. Coll. Dist.*, 11 F.4th 729, 738 (9th Cir. 2021). All three theories have broad coverage: "a public entity may violate the ADA even if no regulation expressly proscribes its particular conduct." *Cohen v. City of Culver City*, 754 F.3d 690, 695 (9th Cir. 2014). Indeed, Title II's "broad language" brings "anything a public entity does" within its scope. *Id.* (quoting *Lee,* 250 F.3d at 691). Title II requires public entities to investigate accommodation requests *by consulting the applicant and their treating professionals. Updike v. Multnomah Cnty.*, 870 F.3d 939, 954 (9th Cir. 2017) (quoting *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), and *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999)). A denial made "without consulting" the applicant and their supporting professionals collaboratively is "a conspicuous failure to carry out the obligation 'conscientiously' to explore possible accommodations." *Id.* at

---

[7] *City of Boerne v. Flores*, 521 U.S. 507 (1997); as left partially open for Title II by *Tennessee v. Lane,* 541 U.S. 509 (2004) (holding Title II categorically satisfied the first two *Boerne* prongs concerning its legislative record, and the third prong in the "judicial services" context, but leaving the third prong open for other contexts).

955 (quoting *Wong*, 192 F.3d at 819). "A public entity shall give primary consideration to the requests of individuals with disabilities," 28 C.F.R. § 35.160(b)(2) (2025), and if the entity "does not defer to the [individual's] request, then the burden is on the entity to demonstrate [a lawful basis for denial or substitution]." *Updike*, 870 F.3d at 958. Where the entity asserts that compliance would fundamentally alter its program or impose an undue burden, it "has the burden of proving" so, in the manner required by 28 C.F.R. § 35.164 (2025); *cf.* § 35.130(b)(7)(i). "A denial of a request without investigation is sufficient to survive summary judgment on deliberate indifference." *Updike*, 870 F.3d at 954. And "[n]othing in [Title II] even remotely suggests that covered entities have the option of being passive in their approach to disabled individuals as far as the provision of accommodations is concerned." *Pierce v. Dist. of Columbia*, 128 F. Supp. 3d 250, 269 (D.D.C. 2015) (Jackson, J.). Defendants' purportedly contrary authority, *Constantin v. Navarrete*, No. 22-cv-07075-VKD, 2025 WL 770359, at *5 (N.D. Cal. Mar. 10, 2025)–Mot. 21– likewise holds: a public entity "has an affirmative obligation to 'engage in an interactive process to consider [the disabled individual's] requested accommodations.'" *Id.* (quoting *Duvall*, 260 F.3d at 1139). *Constantin*'s only limit, borrowed from an employment case, *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018), is that a failure to engage must produce a plausibly alleged failure to accommodate to support damages. *Constantin*, 2025 WL 770359, at *5. That limit overlooks the independent harms of procedural inaccessibility and does not bind under Title II, but *Constantin* confirms that the process applies under Title II, and the TAC pleads resulting failures to accommodate. The same process governs under Title I, where it "requires communication and good-faith exploration of possible accommodations," and "neither side can delay or obstruct the process." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001). *Here*, Defendants allege Kohn failed to identify any predicate "policy" for disparate impact, while simultaneously requesting judicial notice of Then-Admission Rules 4.80-4.92, which set forth many (if not all) of the policies expressly described and facially challenged throughout the TAC. Dkt. 89-1, Ex. 1; Mot. 5:10-15. For failure to reasonably accommodate, Defendants demur as "not the law" the standardized testing reasonableness standard set by a case involving this same exam: what best ensures a level playing field to the nondisabled, subject to rebuttal by negation of

that premise or by timely establishing fundamental alteration or undue burden. Mot. 1; *Enyart v. Nat'l Conf. of Bar Exam'rs, Inc.,* 630 F.3d 1153, 1163 (9th Cir. 2011), *cert. denied*, 565 U.S. 929 (2011).[8] Defendants' claim of complete Title II compliance fails under all three theories of disability discrimination.

**(a) Disparate Treatment**

Disparate treatment includes facially discriminatory policies and the denial of an opportunity or standard condition that the defendant offered, or would have offered, to the nondisabled. *Payan*, 11 F.4th at 738. Public entity policies–and even state or local laws–amount to disparate treatment under Title II where the distinction used is intertwined enough with the effects of one or more disabilities and/or the needs of those who suffer them. *Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 735 (9th Cir. 1999) (ordinance restricting methadone clinics was facially discriminatory under Title II). Examples pled that injured Kohn, apart from those pled to show a pattern of animus, include: (1) accommodation denials are uniquely not afforded any live hearing, while all other similar adverse admissions determinations are, TAC ¶¶ 81(c), 183-86; (2) confirmed testing locations/schedules later than nondisabled applicants, TAC ¶¶ 120-23; independent of when the accommodation decision issued, let alone when the accommodation requests were submitted (contrary to Mot. 4:13), TAC ¶¶ 100, 144, 189, 217-48; (3) lower priority for better trained proctors than standard, TAC ¶¶ 124-38, 141-42, worse for accommodated applicants, which remains disparate treatment even if everyone was poorly proctored to a lesser degree. *Id.* ¶ 135; and (4) flagging essay answers of accommodated applicants, *id.* ¶ 63(f)(iii).

---

[8] NCBE's petition argued that the Ninth Circuit now required "preference tailored *best*" accommodations dictated solely by the applicant and their doctor(s), and that this exceeded the "reasonable accommodation" requirement. Kohn reads *Enyart*'s holding as consistent with the plain text of ADA regulations promulgated to implement the ADA Amendments Act of 2008, and as controlling over the Title I employment rule of *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002), on which Defendants rely at Mot. 17. This Court's citation of *Zivkovic* in *Wolf v. City of Millbrae*, No. 21-cv-00967-PJH, 2021 WL 3727072, at *3 (N.D. Cal. Aug. 23, 2021), was only for the uncontroversial point that the ADA imposes no duty to automatically grant every accommodation requested; it did not define reasonableness for standardized testing (or any other context).

*Perhaps the most serious disparate treatment violation Kohn faced was the Forced In-Person Policy for the October 2020 exam.* TAC ¶¶ 186(A), 221-22, 227-28, 242-43, 245, 248-49, 255-71. The standard condition was remote testing from home. *Id.* ¶ 239. Applicants whose testing accommodations "do not lend themselves to online testing," as determined in the "sole discretion" of staff, had to travel to test centers and test in person. *Id.* ¶ 242. The classification turned expressly on disability accommodations. That it keyed on the exercise of the right to accommodation, rather than on disability itself, is irrelevant to a policy as categorical as the one pled. Fundamental alteration and undue burden are defenses to requests for nonstandard conditions; they do not justify unequal standard conditions. Seemingly recognizing this limitation, Defendants allege that "Kohn in fact did have the option to test remotely, but to avail himself of other accommodations... he was required to test with those accommodations in-person for exam security." Mot. 31. Yet Title II prohibits conditioning benefits offered to everyone else–and especially equal safety during public health emergencies–on surrender of accommodations that were already found necessary to afford equal access. *See* 28 C.F.R. § 35.130(b)(1)(ii)-(iii) (2025). Recasting the policy as a limit on the scope of approved accommodations would have required an individualized determination tied to functional limitations, not accommodation type, and none is pled. Even so, and ignoring Defendants' failure to timely assert either defense, the distinction matters only if the Court credits disputed facts, which Rule 12(b) forbids, including:

> "Although Kohn insists [secure implementation of his approved accommodations remotely] theoretically could have been done, in reality, certain accommodations that he was granted and wished to avail himself of had to be administered in-person to ensure exam security." Mot. 19:25-27; TAC ¶¶ 234-35, 242-45, 267-69.

Nor do accommodations affecting exam security, *per se*, constitute fundamental alteration. They would be such only if they inherently foreclosed measurement of the knowledge and skills the exam tests, not merely Defendants' preferred or cheapest security methods. The affidavit Defendants require from every accommodated applicant, promising not to use accommodations to cheat, likely sufficed. TAC ¶ 243. If not, Kohn offered bodycam recording of everything in view beyond a webcam's range, including, if necessary, to confirm that restroom breaks were not used to cheat. TAC ¶¶ 243, 261, 267-68. Rejecting that offer would require a finding, contrary to the

TAC, that Defendants timely showed the offer's burdens were grossly disproportional to Kohn's interest in the opportunity to qualify to practice law. 28 C.F.R. pt. 35, app. B (2025) (discussing § 35.150) (Congress intended Title II's undue burden standard "to be significantly higher than the 'readily achievable' standard in title III").

Defendants' reliance upon *Gordon v. State Bar of Cal.*, No. 20-cv-06442-LB, 2020 WL 5816580, at *8 (N.D. Cal. Sept. 30, 2020), is misplaced for several reasons. First, *Gordon* denied a mandatory preliminary injunction on a factual record; it did not apply Rule 12(b). The excerpts this Court previously quoted were fact findings on disputed issues, some now contradicted by the TAC, or holdings bound up with those findings. Neither can be considered here. Second, Kohn made his security proposals months before the *Gordon* plaintiffs made theirs, which Defendants opposed largely on lead-time grounds for October 2020, so his proposals better answered *Gordon*'s concerns. Third, *Gordon* is not precedential, and was wrongly decided. Courts have long recognized that providing the disabled with facilities less safe than those provided to others is prohibited discrimination. *Putnam v. Oakland Unified Sch. Dist.*, No. C-93-3772CW, 1995 WL 873734, at *11 (N.D. Cal. June 9, 1995); *Students of Cal. Sch. for the Blind v. Honig*, 736 F.2d 538, 547 (9th Cir. 1984), *vacated as moot*, 471 U.S. 148 (1985). Other courts recognized the barriers that pre-vaccine in-person testing posed to disabled test-takers, including by enjoining the University of California from using such scores, which served as a "plus factor," in admissions. *Smith v. Regents of the Univ. of Cal.*, No. RG19046222, slip op. at 10-11, 14 (Cal. Super. Ct. Alameda Cnty. Aug. 31, 2020) (order after hearing granting preliminary injunction). The *Gordon* Court erred by holding, *inter alia*: that inferior safety was lawful if the magnitude of the danger was sufficiently "low"; that Defendants' choice to permit some nondisabled applicants to test in-person upon affirmative request was relevant to whether it could require disabled applicants to do so involuntarily; and that Defendants could claim undue burden from self-inflicted lead-time problems they could have avoided by investigating alternative security methods when they designed the remote modality, or when applicants proposed them before suit, rather than waiting until *Gordon* was filed. *Steimel v. Wernert*, 823 F.3d 902, 918 (7th Cir. 2016). Since the denied remote testing standard condition had inherently superior safety in October 2020 (and no collateral

travel costs) compared to in-person test center conditions, Defendants' Forced In-Person Policy violated Title II under all three theories. Each count above identifies a benefit afforded to nondisabled applicants and withheld from disabled applicants, which violated 28 C.F.R. §§ 35.130(b)(1)(ii), 35.130(b)(6) (2025). If the Court finds any of these does not state disparate treatment, many state violations under the disparate impact or accommodation theories below.

**(b) Disparate Impact and Facially Invalid Procedural Rules**

A disparate impact claim requires a facially neutral policy or practice with the "effect of denying meaningful access to public services," including where they "tend to screen out" disabled individuals. *Payan*, 11 F.4th at 738; 28 C.F.R. § 35.130(b)(8) (2025). Congress "intended to prohibit outright discrimination, as well as those forms of discrimination which deny disabled persons public services disproportionately due to their disability." *Crowder v. Kitagawa*, 81 F.3d 1480, 1483-84 (9th Cir. 1996). This also applies to policies that unduly burden those with disabilities, even where consistently enforced against both the disabled and nondisabled. *McGary*, 386 F.3d at 1265. Even before the 2008 amendments and 28 C.F.R. § 36.309(b)(1), courts analyzed deficient accommodation procedures under the disparate impact standard. *Guckenberger v. Bos. Univ.*, 974 F. Supp. 106, 121, 134-44 (D. Mass. 1997) (concluding, *inter alia*, that medical evaluations costing hundreds of dollars were excessively burdensome to require). The Department of Justice (DOJ) reads section 309 itself, 42 U.S.C. § 12189, to bind public entities: because it "reaches '[a]ny person that offers examinations,'" "public entities also are covered by this section of the ADA," and the Title III testing regulation, § 36.309, "is useful as a guide for determining what constitutes discriminatory conduct by a public entity in testing situations." 28 C.F.R. pt. 35, app. A (2025); 75 Fed. Reg. 56164, 56236 (Sept. 15, 2010); *accord* 28 C.F.R. pt. 35, app. B (2025); 56 Fed. Reg. 35694, 35702 (July 26, 1991); U.S. Dep't of Justice, *supra* note 9, n.3 (section 309 binds "any person (including both public and private entities)"); *Bartlett v. N.Y. State Bd. of L. Exam'rs*, 226 F.3d 69, 78 n.2 (2d Cir. 2000) (bar exam; Titles II and III "impose largely the same requirements"). Section 309, as § 36.309 implements it, is thus incorporated into Title II's floor. Per 42 U.S.C. § 12206(c), the DOJ further elaborated on these procedural and substantive

requirements for standardized testing in technical guidance interpreting its regulations,[9] which are entitled to *Auer* deference consistent with *Kisor*. *Kisor v. Wilkie*, 588 U.S. 558, 573-79 (2019); *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Defendants' own reports indicate disabled attorneys comprise only 5-6% of California licensed attorneys, despite constituting at least 23% of California's adult population–TAC ¶¶ 66, 73(a)–and causation by the array of challenged policies and practices, TAC ¶ 69, is pled. Examples are set forth below, each pled to deny meaningful access. Defendants' procedures are facial Title II violations under 28 C.F.R. §§ 35.130(b)(3)(i), 35.130(b)(8), 36.309(b)(1) (2025).

**(i) Defendants' Processing Times**

Section 36.309(b)(1)(vi), effectively adopted as Title II's floor, requires testing entities to respond "in a timely manner to requests for modifications, accommodations, or aids to ensure equal opportunity." The DOJ reads this to require that requests received by the latest registration deadline for nondisabled examinees be decided early enough for applicants to answer any concerns and still receive a decision far enough before the next exam to have equal opportunity to prepare. *Supra* note 9. Applied to the window between the repeaters' registration deadline and the next exam, and to the preparation this curved exam demands, that rule requires Defendants to render and explain initial decisions within two weeks of the request. TAC ¶¶ 75-80. The Court should so hold as a matter of law, and the TAC plausibly pleads *prima facie* disparate impact violations from Defendants' internal rules' timelines (providing for sixty days or longer).

**(ii) Defendants' Deadlines and Custom of Aligning Them with December Holidays**

The TAC pleads a systemic custom (¶ 205) of timing denials to issue after the firm Rule 4.90(B) appeal cutoff unless the applicant petitioned months before the repeaters' registration deadline, and, for applicants who did petition early, at least for the February exam, of timing initial decisions so that the Rule 4.90(A) ten-day deadline falls over the December holidays. Defendants do so to deter appeals, and thus contain staff workload. TAC ¶¶ 121, 140, 157-58, 172-74, 176-78, 191, 205-07, 236-38, 240-41. This practice and the capricious deadlines–for receipt of

[9] U.S. Dep't of Justice, *ADA Requirements: Testing Accommodations*, https://www.ada.gov/resources/testing-accommodations/ (last visited Sept. 3, 2026).

responsive medical documents from doctors, and appeal *statements*, not merely notices of appeal–set by Rule 4.90 to enable it, can easily be inferred to unduly burden and disparately impact disabled applicants. *Payan*, 11 F.4th at 738; *McGary*, 386 F.3d at 1265. Such deadlines prejudice the appeal submissions and substantive outcomes, and further disrupted preparations for a surgery and law school finals in 2017, and then prevented Kohn from fully celebrating the December holidays in both 2018 and 2019. TAC ¶¶ 108-10, 157-58, 205-07.

**(iii) Defendants' Excessively Burdensome Documentation Requirements**

Section 36.309(b)(1)(iv), effectively adopted as Title II's floor, permits testing entities to require only documentation that "is reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested." Title II also bars policies that "tend to screen out" the disabled. § 35.130(b)(8). Excessively burdensome documentation requirements violate both rules. *Guckenberger*, 974 F. Supp. at 134-44. Defendants' rules require exacting documentary standards to even deem petitions "complete," a prerequisite finding to even submit the requests to Defendants' processing queue. Even this lowest, procedural threshold exceeds the DOJ's guidance–*supra* note 9–for what documentation testing entities should find sufficient *to validate reasonableness on testing accommodation requests substantively*. Defendants' threshold "complete" procedural requirements go far beyond the information and evidence needed to supply notice of disability status, functional limitations, and requested accommodations, which is all that Title II requires to trigger its accommodation duties. "A public agency may not… insist on data supporting a claim of disability beyond that which would satisfy a reasonable expert in the field." *Vinson v. Thomas,* 288 F.3d 1145, 1153 (9th Cir. 2002). Worse, even documents that satisfy Defendants for their procedural "complete" finding seemingly fall well short of Defendants' bar for a substantive grant. The TAC pleads Defendants' repeated reliance on summary assertions of "inadequate documentation" to deny many of Kohn's requests even after overwhelming documentation had been provided and never genuinely rebutted. TAC ¶¶ 100-03, 111-13, 144-56, 159, 161-63, 165-66, 170, 172-73, 190-91, 210-11, 217-25, 234-35, 245-55. Defendants' documentation requirements far exceed those allowed by Title II, especially for applicants' threshold burden to require Defendants to identify rebuttal evidence.

**(iv) Defendants' Inversion of the Treating Doctor Deference Rule**

The DOJ's guidance on § 36.309 provides that:

> "Reports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate or conducted the requisite assessments for diagnosis and treatment." 28 C.F.R. pt. 36, app. A (2025) (discussion of § 36.309); 75 Fed. Reg. 56236, 56297 (Sept. 15, 2010).

Accordingly, Defendants were obligated to resolve ordinary credibility contests between treating experts and reviewing consultants in favor of the treating doctors. Defendants instead did the complete opposite. TAC ¶¶ 106, 159, 165-66, 170, 175, 193, 211, 246-47, 250-55. Testing entities are only permitted to credit reviewing consultants over treating doctors' sworn attestations–regarding factual premises of disability presence, effects, and most effective accommodations for ameliorating those effects to minimize unequal access thereto–where no reasonable expert in the field could sincerely reach them. *Vinson*, 288 F.3d at 1153. None of Defendants' consultants even alleged this, nor could they have. Defendants' consistent summary defaults to consultants' recommendations (or less, but never more) violated Title II.

**(v) Defendants' Failure to Genuinely Explain Reasons for Denial**

As discussed *supra*, the interactive process applies under Title II. It includes the duty to explain the reasons for denial: where a public entity declines to defer to the individual's request, "the burden is on the entity…" *Updike*, 870 F.3d at 958, and a denial resting on fundamental alteration or undue burden "must be accompanied by a written statement of the reasons for reaching that conclusion," 28 C.F.R. § 35.164 (2025). Defendants did not do so prior to–or after–its decision on appeal for February 2020 (at best). TAC ¶¶ 106, 159, 165-66, 170-71, 192-93, 211, 246-47, 250. Instead, Defendants asserted that its internal procedures did not require such detailed explanations. TAC ¶ 166. As described by this pled concession, Defendants' procedures therefore facially violate Title II for this reason too.

**(vi) Defendants' Refusal to Offer Live Hearings Before Finalizing Denials**

Title II's duty to engage in an interactive process also includes the right to a live hearing, at least for appeals that cannot be granted on the papers. Such hearings are especially important given how weighty disabled applicants' interests are in their testing accommodations and

Defendants' policy to offer such hearings in other admission contexts. Defendants refused, TAC ¶¶ 183-86, which constitutes at least disparate impact under Title II.

**(c) Failures to Reasonably Accommodate**

"[A] public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." *Duvall*, 260 F.3d at 1139. An accommodation that is not as effective in affording "equal opportunity to obtain the same result… or to reach the same level of achievement" is unreasonable–§ 35.130(b)(1)(iii)–absent timely assertion and establishment of fundamental alteration or undue burden, § 35.164. See *Enyart*, 630 F.3d at 1163. *Wolf*, 2021 WL 3727072, at *3, does not hold otherwise, and neither does *Memmer v. Marin Cnty. Cts.*, 169 F.3d 630, 634 (9th Cir. 1999): a summary judgment case discussing evidence and the burden of proof. Here, the TAC easily states failure to reasonably accommodate violations during the February 2019, February 2020, and October 2020 exams under Rule 12(b), given: (1) the extent of evidence Kohn pled the administrative record comprised for each exam, including detailed affidavits from several treating doctors who consistently recommended what Kohn requested; (2) the express assertions that the accommodations requested–including those denied–would have better ensured Kohn received equal access on the corresponding exams than those Defendants granted; and (3) that Defendants never asserted fundamental alteration or undue burden–let alone demonstrated those exceptions' prerequisites–when initially rendering the accommodation denials for each exam. The TAC further pleads that Defendants failed to implement all approved accommodations, which independently constituted failure to reasonably accommodate. TAC ¶ 270; 28 C.F.R. § 35.133(a) (2025). Defendants' challenges to Kohn's failure to reasonably accommodate claims at best assert factual disputes that cannot be resolved at the pleading stage.[10]

---

[10] Defendants argue that Title II did not require them to supply equipment such as nonportable ergonomic furniture, even if necessary for equal access (Mot. 18), or to make travel to exam sites equally accessible (Mot. 22). Both arguments fail. Their regulation, 28 C.F.R. § 35.135, concerns personal and individually prescribed devices, such as wheelchairs and prescription eyeglasses, that an individual would need regardless of the activity. It does not reach commercially available furniture Kohn needed to sit for the exam. *See* 28 C.F.R. §§ 35.160(b)(1), 35.130(b)(4), 36.309(b)(3). Nor does Defendants' duty stop at the exam itself. Title II reaches every program,

**2. The TAC Pleads Deliberate Indifference**

Damages under Title II require intentional discrimination or deliberate indifference. Where a public entity "facially discriminates against the disabled, it is chargeable with notice that federal rights are implicated," and, "by its very terms, facial discrimination is 'intentional.'" *Lovell v. Chandler*, 303 F.3d 1039, 1057 (9th Cir. 2002). Otherwise, the standard "may be met by showing 'deliberate indifference,' and not only by showing 'discriminatory animus,'" *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008), meaning "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that… likelihood," *A.G. v. Paradise Valley Unified Sch. Dist. No. 69,* 815 F.3d 1195, 1204 (9th Cir. 2016) (quoting *Duvall*, 260 F.3d at 1139). Knowledge that harms to federally-protected rights are substantially likely is established where the plaintiff "alerted the public entity to [his] need for accommodation." *Duvall*, 260 F.3d at 1139. Kohn did so by petitioning Defendants for accommodations for each exam, submitting sworn evaluator forms and affidavits from at least eight treating specialists, executed under penalty of perjury. TAC ¶¶ 12, 146. A physician warned Defendants, before the October 2020 exam, that in-person testing would be "reckless" for him. *Id.* ¶ 245. Defendants were aware "every exam cycle," from its own incident reports, that "a substantial portion" of applicants granted accommodations have some or all of them repudiated by onsite proctors, *id.* ¶ 63(d)(v), a share the TAC puts at "at least 20%," *id.* ¶ 137. Defendants knew at all relevant times that their internal procedures for deciding accommodation requests departed from DOJ guidelines interpreting the ADA's procedural requirements, which Defendants have long dismissed as "nonbinding policy proposals." TAC ¶¶ 73(d), 74-98, 139-40, 168-74, 183-84, 205-06, 213, 236(E), 237-41, 250, 271. The failure to act is pled with similar specificity. Both before and after Kohn's exams, Defendants disregarded overwhelming public comment criticizing these procedures and advancing reform proposals based on the DOJ guidelines. TAC ¶¶ 84, 87-88, 92-93, 95-98. Defendants decided the February 2019 cycle without consulting any expert on any relevant disability, *id.* ¶¶ 169, 174. Staff

---

service, and activity of a public entity, including arranging hotel group rates once Defendants chose to do so for nondisabled applicants, and the testing location, including needed transit to it, is ancillary to the exam.

selected and manipulated what documents the February 2020 consultant would see, *id.* ¶¶ 195, 207-09. Defendants tacitly refused to consider Dr. Dresden's opinions and recommendations because he'd not personally duplicated the 20+ hours of neuropsychological testing performed by the deceased Dr. Preston, *id.* ¶ 170. The October 2020 consultant "effectively acknowledge[d]" that Defendants directed removal of a recommendation addressing the digestive disabilities and Covid, *id.* ¶ 254. Appeal deadlines were intentionally timed to deter appeals, *id.* ¶ 177, and in June 2020 Defendants informed Kohn no decision on his requests would issue until after the cutoff to appeal had passed, *id.* ¶ 236(E). Defendants repeated the tactic when the California Supreme Court postponed the exam to October, extending the general deadline for accommodation petitions by disproportionately little. *Id.* ¶¶ 239-41. Defendants assert "there is no allegation that the State Bar failed to investigate Kohn's requests." Mot. 31. TAC ¶ 169 pleads the contrary, and in any event the duty to act requires good-faith efforts to comply with Title II, not merely investigation. Nor do reasons for noncompliance other than a purpose to exclude foreclose deliberate indifference. *See Mark H.*, 513 F.3d at 938. The TAC pleads further direct and circumstantial evidence of animus, especially by Ms. Cummins. TAC ¶¶ 43-58, 63(d)-(f), 65, 73-98, 139-42, 159-60, 165-66, 168-78, 183-88, 193-95, 205-06, 208-09, 211, 213-14, 218-19, 232-33, 236(E), 237-44, 246-47, 250-51, 254-55, 258, 260, 264, 271-72, 275. Ms. Cummins was the primary administrative decision-maker on Kohn's accommodation requests and the agent who committed most of the misconduct that grounds Defendants' liability. TAC ¶¶ 48-52, 82-85, 194-95, 208-09, 214, 232, 244, 260.

### B. *Georgia* Step Two: Some or All of Kohn's Title II Claims State Coextensive Fourteenth Amendment Violations

#### 1. Constitutional Due Process

##### (a) Threshold Protected Interests

At *Georgia* step two, Kohn's Title II claims implicate at least two threshold interests: the opportunity to practice his chosen profession free of unlawful governmental restraint, see *infra*; and bodily integrity, see *Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (liberty protects against "unjustified intrusions on personal security"). Typically premised upon medical needs, disability accommodations intersect with due process interests against bodily harms. <u>Defendants attempt to</u>

retract a concession they'd already made to the Ninth Circuit that Kohn had a protected liberty interest in the opportunity to qualify to practice law. *Compare* Appellees' Answering Br. 32-33, No. 20-17316, 9th Cir. Dkt. 66 ("While a prospective bar examinee has a liberty interest in having an opportunity to qualify for the practice of law, *Schware*, 353 U.S. at 238-39, Kohn received all the process to which he is entitled."), *with* Mot. 22. The impetus for that concession–*Schware v. Bd. of Bar Exam'rs of N.M.,* 353 U.S. 232, 238 (1957)–is binding on this Court. The California Supreme Court has long agreed. *Hallinan v. Comm. of Bar Exam'rs,* 65 Cal. 2d 447, 452 n.3 (1966). Kohn does not claim this interest is a freestanding right triggering strict scrutiny; it marks a class of state action to which procedural and substantive due process requirements attach. *See Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (recognizing "some generalized due process right to choose one's field of private employment... subject to reasonable government regulation"). *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990), and *Lupert v. Cal. State Bar*, 761 F.2d 1325, 1327 n.2 (9th Cir. 1985), Mot. 22, hold that neither the Full Faith and Credit Clause nor the Equal Protection Clause entitles a lawyer licensed elsewhere to practice law in another jurisdiction, or automatically to sit for its bar exam. Kohn claims neither. *Pell v. Nuñez*, 99 F.4th 1128, 1131-34 (9th Cir. 2024), Mot. 23, held that where California law exclusively reserves a decision to the California Supreme Court, such as admitting an applicant or exempting one from an admission requirement (there, timely passage of the First Year Law Students Exam), the State Bar's action is "legally simply a recommendation" to that court, *id.* at 1132 (quoting *Chaney v. State Bar of Cal.*, 386 F.2d 962, 966 (9th Cir. 1967)), so it cannot cause a constitutional violation supporting declaratory or injunctive relief against the State Bar that it would lack capacity to perform without California Supreme Court approval, *id.* at 1134. *Pell* does not apply. Defendants could grant Kohn's accommodations, and handle his requests properly, without the California Supreme Court's permission, and their decisions affected his practical access to the exam, not his legal eligibility to sit for it or to be admitted on passing, neither of which Defendants contested. Moreover, accommodation denials can cause bodily harms distinct from their impact on admission outcomes, and Kohn does not seek any order to grant him admission he long ago attained or to alter his exam results, both of which further distinguish Pell.

**(b) Due Process Violations**

**(i) Procedural Due Process**

Kohn's primary due process claim is procedural, under the framework supplied by *Willner v. Comm. on Character & Fitness*, 373 U.S. 96 (1963) and the controlling balance test established in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976) for determinations affecting his statutory rights under federal and state law. *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018). For his secondary substantive due process claims, he concedes that the standard of review for general State occupational restrictions is rational basis, which he argues should be applied with the rigor some courts have described as "with bite,"[11] unless the claim intersects another interest subject to heightened scrutiny. *Nunez ex rel. Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997). There, the higher scrutiny applies. *Id. Willner,* 373 U.S. at 102 squarely holds "the requirements of procedural due process must be met before a State can exclude a person from practicing law." Discretionary language in admission rules "must be construed to mean the exercise of a discretion to be exercised after fair investigation, with such a notice, hearing and opportunity to answer for the applicant as would constitute due process." *Id.* at 103 (quoting *Goldsmith v. U.S. Bd. of Tax Appeals*, 270 U.S. 117, 123 (1926)). Defendants therefore violated procedural due process if their procedures created an undue risk of erroneously depriving Kohn of a statutory or constitutional right affecting those interests. *Mathews,* 424 U.S. at 335. Fourteenth Amendment procedural due process also applies to substantive rights under state law. *Wolff v. McDonnell*, 418 U.S. 539, 556-

---

[11] Courts and commentators have described a more searching form of rational basis review, under which the government's actual justification, rather than any conceivable one, is examined. *See City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 446-50 (1985); *Bishop v. Smith*, 760 F.3d 1070, 1098-99 (10th Cir. 2014) (Holmes, J., concurring); *cf. Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012). The label is a descriptor, not a separate doctrine, and Kohn's argument does not depend on it. Applying Rule 12(b)(6), where Defendants' various disputed administrative concerns cannot be credited (and Kohn's claims regarding animus must be), the TAC also states substantive Fourteenth Amendment violations even under this standard. *See also infra* § II.B.2 (discussing Equal Protection); *compare Merrifield v. Lockyer*, 547 F.3d 978 (9th Cir. 2008), *and Patel v. Tex. Dep't of Licensing & Regul.*, 469 S.W.3d 69 (Tex. 2015), *with* TAC ¶¶ 63-64; *see also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); Marc P. Florman, Comment, *The Harmless Pursuit of Happiness: Why "Rational Basis with Bite" Review Makes Sense for Challenges to Occupational Licenses*, 58 Loy. L. Rev. 721 (2012).

58 (1974). Whether the risk was undue turns on the private interest, the risk of error and the value of better procedures, and the burden those procedures would impose. *Mathews*, 424 U.S. at 335.

If Defendants' procedures facially violate Title II beyond accommodation outcomes, as Kohn argues *supra*, they necessarily deprived Kohn of legal rights. Even if only the resulting accommodation decisions were at issue, they massively increased the risk of error in those decisions. And the California Supreme Court has correctly acknowledged just how weighty this particular private interest is, *Hallinan*, 65 Cal. 2d at 452 n.3. Defendants cannot justify their procedures on cost at the pleading stage, even for the constitutional floor. This Court should hold that–*where a protected interest is at issue*–state actors' *deliberately indifferent* violations of valid statutory duties *affecting that interest* state *prima facie* procedural due process violations on the 12(b) standard. Acting with deliberate indifference to complying with valid legal duties is, by definition, taking reckless risks of effecting an erroneous substantive rights deprivation. *Giannini* does not foreclose this challenge: it rejected procedural due process challenges to *grading*: the applicant could see his examination and petition the California Supreme Court. 911 F.2d at 357. Seeing one's answers does not remedy any of the procedural deficiencies the TAC pleads. And *Giannini* was a generalized constitutional challenge that did not involve Title II or intersect any statutory rights.

**(ii) State-Created Danger**

Defendants' Forced In-Person Policy for the October 2020 exam states a state-created-danger substantive due process claim, for which plaintiffs must allege "affirmative conduct" by a governmental actor exposing them to "an actual, particularized danger" they "would not otherwise have faced," with deliberate indifference. *Polanco v. Diaz*, 76 F.4th 918, 926 (9th Cir. 2023) (affirming denial of qualified immunity on motion to dismiss state-created danger claims based on Covid exposure). The conduct need only leave the plaintiff "in a situation that was more dangerous than the one in which they found him," and deliberate indifference suffices without any added requirement "that the conscience of the federal judiciary be shocked." *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1062, 1064-65 (9th Cir. 2006) (quoting *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1086 (9th Cir. 2000), and *L.W. v. Grubbs*, 92 F.3d 894, 900 (9th Cir.

1996)). Even if the danger at issue is something the plaintiff might have faced to a lesser degree otherwise, any appreciable increase in risk suffices. Polanco, 76 F.4th at 926; *Martinez v. City of Clovis*, 943 F.3d 1260, 1272-73 (9th Cir. 2019). The hazard itself can be (and usually is) external to the defendant, so long as their conduct increased the risks posed by that hazard to the plaintiff. *Polanco*, 76 F.4th at 926; *Murguia v. Langdon*, 61 F.4th 1096, 1111-12 (9th Cir. 2023); *Martinez*, 943 F.3d at 1272-73; *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018).

Here, the standard condition was remote testing from home. TAC ¶ 239. Defendants conditioned Kohn's approved accommodations on travel to and testing at a hotel open to the public over six days, *id.* ¶¶ 242, 249, 255, 267, after several physicians attested that doing so would be "reckless," *id.* ¶¶ 33, 245, due to Kohn being immunocompromised and having multiple other comorbidities increasing his risks of new or worsened chronic health conditions due to its sequelae, *id.* ¶¶ 221, 245, 248-49, 265-66. That placed him in a "worse position" than he would have been in otherwise. *Polanco*, 76 F.4th at 926. Exposure to Covid "at least in a pre-vaccine world" is a qualifying danger–*Polanco*, 76 F.4th at 927–and the class excluded from the standard modality was discrete. The TAC pleads far broader health risks from Covid's sequelae and degree of airborne contagiousness than those considered in *Polanco*. TAC ¶¶ 221, 245, 248-49, 256-67. Worse, beyond refusing Kohn remote or even at-home testing, Defendants summarily denied–without explanation–every accommodation Kohn requested to mitigate safety risks from forced in-person testing. *Id.* ¶ 267. Most of those denied requests could not possibly impact exam security.

**2. Equal Protection**

Under existing law, disability discrimination–not intersecting another right subject to heightened scrutiny–is reviewed under the Equal Protection Clause applying rational basis (as *Cleburne* actually applied it, *see supra* note 11). Kohn's deliberately indifferent disparate treatment claims state equal protection violations under that standard applying Rule 12(b). Kohn concedes his disparate impact Title II claims–and failure to reasonably accommodate claims stemming only from unequal opportunity to perform on the exam–would not. Kohn preserves for

appeal that at least intermediate scrutiny should apply as the floor for disability-based equal protection claims, under which Kohn may argue more of his claims would state such violations.[12]

**C. *Georgia* Step Three: Defendants Fail to Demonstrate That Prophylactic Immunity Abrogation Under 42 U.S.C. § 12202 Is Unconstitutional, Even As Applied to Bar Exam Claims**

Even assuming–without conceding[13]–that Congress only enjoys Constitutional authority to prophylactically abrogate immunity for classes of conduct where either the States effected a "surrender of this immunity in the plan of the convention," *Seminole Tribe*, 517 U.S. at 68 (quoting *Principality of Monaco v. Mississippi*, 292 U.S. 313, 322-23 (1934)), implied by the Constitution's structure, or where Congress satisfied the *Boerne* test to effectuate such abrogation pursuant to § 5 of the Fourteenth Amendment, Congress had the requisite authority to do so for bar exam claims.

**1. The Relevant Class of Conduct Is Broader Than "Professional Licensing"**

Defendants ascribe "professional licensing" as the relevant class of conduct here, Mot. 25, but that scope is too narrow. The Court should instead apply *Boerne* to a crossover of public licensing, educational testing, and judicial services; or alternatively, at minimum occupational licensing and educational testing. Even the licensing dimension is framed too narrowly. The Department of Justice has argued that occupational licensing, or the still broader category of public licensing, is the apt class of conduct. Pet. of United States for Reh'g En Banc at 6-8, *Guttman v. Khalsa*, Nos. 10-2167, 10-2172 (10th Cir. Feb. 27, 2012); *but see Guttman v. Khalsa*, 669 F.3d 1101, 1120 (10th Cir. 2012) ("*Guttman II*") (adopting the narrower professional-licensing category for physician license discipline, a context with no educational-testing or judicial-services nexus);

---

[12] *Cleburne*, 473 U.S. at 455-78 (Marshall, J., concurring in the judgment in part and dissenting in part); Derek Warden, *Constitutionalizing Three Theories of Disability Discrimination—Disparate Treatment, Reasonable Accommodation, and Integration—Through a Jurisprudential Pluralistic and Constitutional Pluralistic Reading of the Ninth Amendment* (2022) (S.J.D. dissertation, Tulane University Law School), https://ssrn.com/abstract=3798016; Jayne Ponder, Note, *The Irrational Rationality of Rational Basis Review for People with Disabilities: A Call for Intermediate Scrutiny*, 53 Harv. C.R.-C.L. L. Rev. 709 (2018).

[13] Kohn preserves for appeal whether *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996) wrongly limited Congressional power to abrogate State sovereign immunity to § 5 of the Fourteenth Amendment absent a "plan of the convention" immunity surrender, as opposed to Congress enjoying broader powers to do so under other constitutional provisions.

*T.W. v. N.Y. State Bd. of L. Exam'rs*, 110 F.4th 71, 84-85 (2d Cir. 2024) ("*T.W. II*") (applying that category to the bar exam). And the bar exam implicates more than just licensing. The crossover with educational testing is established by the exam's purpose of assessing legal education; Defendants' use of the exam to regulate and accredit law schools,[14] which results in both exam content and alumni passage statistics directly influencing law schools' curriculum and administration; and the exam's effect on whether graduates can put their education to use. TAC ¶ 71. The exam's connection to judicial services, TAC ¶¶ 66-70, would independently resolve the *Boerne* analysis, because *Lane* held that Title II validly abrogates immunity for claims implicating access to judicial services. The California Supreme Court's role as the attorney licensing body, requiring passage of this exam, evinces that connection.

**2. *Lane* Categorically Resolved the First Two *Boerne* Prongs for Title II**

The Supreme Court already resolved most of the *Boerne* analysis for Title II upon which prophylactic immunity abrogation would be validated at the third *Georgia* step. As at least three Circuits have agreed post-*Georgia*,[15] and three other circuits–including the Ninth Circuit–have held without intervening precedent *on that point*:[16] the Supreme Court in *Lane*, 541 U.S. at 522-34, held the first two *Boerne* prongs satisfied for all Title II claims, and all three satisfied for Title II claims implicating "judicial services," leaving the third prong open for other contexts.

**3. Prophylactic Abrogation Is Congruent and Proportional Here**

In any event, Title II's requirements and remedies are congruent and proportional to the extensive body of Congressional findings regarding States' unconstitutional disability

[14] *See* State Bar Rule 4.160(D)(4)(d); Cal. Bus. & Prof. Code § 6060; 42 U.S.C. § 12101(a)(7)-(8).

[15] *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 553 (3d Cir. 2007); *Klingler v. Dir., Dep't of Revenue*, 455 F.3d 888, 896 (8th Cir. 2006); *Nat'l Ass'n of the Deaf v. Florida*, 980 F.3d 763, 772-73 (11th Cir. 2020).

[16] *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 487 (4th Cir. 2005); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 423 (5th Cir. 2004); *Phiffer v. Columbia River Corr. Inst.*, 384 F.3d 791, 792 (9th Cir. 2004), *overruled in part by Kohn II*, 119 F.4th at 698 (overruling its "categorical holding"), a holding that went to the third *Boerne* prong. Three circuits disagree: *Toledo v. Sanchez*, 454 F.3d 24, 36 (1st Cir. 2006); *T.W. II*, 110 F.4th at 83-84; *Guttman II*, 669 F.3d at 1117-18.

discrimination held in *Lane*; *see also* 154 Cong. Rec. H8286, H8296 (daily ed. Sept. 17, 2008) (floor statement regarding standardized testing under the ADAAA).

First, in *Lane* the Supreme Court opined that the breadth of Constitutional rights Congress intended Title II to enforce, not merely the judicial scrutiny afforded when such rights are asserted, shapes congruence and proportionality review. *Id.* at 522-34. On that basis, the *Lane* Court distinguished Title II–which it noted Congress intended to enforce virtually all Constitutional rights disabled individuals possess–with ADA Title I, where the narrower scope of rights Congress intended to enforce had resulted in a different outcome in *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001). Id.[17]

Second, the attorney admission context is especially apt for finding Title II congruent and proportional, because of the unique role attorneys and judges have in enforcing the Constitutional rights of disabled individuals that Congress intended Title II to advance, and whose Constitutional rights are better protected by improved representation of the disabled in the legal profession and judiciary. TAC ¶¶ 67-70.

Third, for this class of conduct (as discussed *supra* § II.B), the judicial scrutiny afforded to the Constitutional rights implicated thereby–both under existing law and the arguments for changed law Kohn preserves for appeal–is more searching than traditional rational basis review, flooring at the "with bite" variant.

Fourth, Title II's requirements are tailored to this context: they require equal access without fundamental alteration or undue burden, and they do not require superior access to offset disadvantages a disability causes elsewhere. Title II's *remedies* are congruent and proportional in this context, because the *Young* doctrine renders abrogation of States' immunity to prospective injunctive relief claims minimally intrusive, while for damages claims Title II narrowly tailors that remedy to intentional or deliberately indifferent violations. State actors' deliberately indifferent violations of duties validly imposed by federal statute–in contexts where the plaintiff has

---

[17] *See also* Derek Warden, *Abrogation of State Sovereign Immunity in Kohn v. State Bar of California* (Sept. 6, 2023) (unpublished manuscript), https://ssrn.com/abstract=4563450 (analyzing this case).

Constitutionally-protected interest(s)–will generally either state procedural due process violations or at least hew closely enough to deterrence and remediation of States' Constitutional violations to warrant prophylactic immunity abrogation. *T.W. II* is nonbinding and was wrongly decided; and neither authority Defendants cite at Mot. 28 is on point. *Washington v. Davis*, 426 U.S. 229, 242 (1976) merely held that disparate impact alone does not violate the Fourteenth Amendment, and *Louisiana v. Callais*, 608 U.S. 85, 146 S. Ct. 1131, 1155-56 (2026), construed § 2 of the Voting Rights Act, a Fifteenth Amendment enforcement statute, to reach intentional discrimination, but it accepted a reading that "does not demand a finding of intentional discrimination" so long as liability arises "only when the circumstances give rise to a strong inference that intentional discrimination occurred." *Id.* at 1156. *Callais* does not mention Title II or *Lane*, and Kohn's damages claims fit its framework: they require intentional discrimination or deliberate indifference. *Supra* § II.A.2. The Court should uphold Congress's decision to abrogate immunity for Title II claims.

## III. THE TAC STATES UNRUH DAMAGES CLAIMS THAT ARE NOT BARRED BY SOVEREIGN IMMUNITY, WHETHER OR NOT DEFENDANTS SHARE THE STATE'S IMMUNITY

### A. Sovereign Immunity Does Not Bar Kohn's Unruh Claims

Even if the State Bar remains an arm of California, sovereign immunity does not bar the Unruh claims, for two reasons under existing law beyond those preserved in *supra* note 3.

#### 1. No Amendment to Kohn's FAC Revived the Immunity Defense Defendants Disclaimed for Unruh

> "Before the district court, the State Bar affirmatively disclaimed that it was asserting an Eleventh Amendment immunity defense with regard to Kohn's Unruh Act claims. Should Kohn choose to amend his Unruh Act claims, we direct the district court to consider in the first instance whether the State forfeited its Eleventh Amendment immunity defense to these claims." *Kohn III*, 2024 WL 4533446, at *2 n.4 (citing *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002)).

The record bears out that characterization. Defendants' motion to dismiss the FAC attacked the Unruh claims on two grounds only: that Kohn "failed to plead compliance with the California Government Claims Act," and that "the State Bar… is not subject to claims attempting to

incorporate alleged Title II ADA violations into the Unruh Act." Dkt. 34 at 32:6-9. Its immunity argument was captioned to the ADA alone. *Id.* at 20:5-6. When Kohn's opposition addressed sovereign immunity, Defendants answered:

> "This argument proceeds under the mistaken impression that Defendants have argued that they are immune to suit under the Unruh Act pursuant to the Eleventh Amendment. Defendants have made no such argument." Dkt. 38 at 17:11-13. They then identified the ground they were asserting instead. *Id.* at 17:14-15.

Amendment does not restore what was disclaimed. *Embury v. King*, 361 F.3d 562, 565 (9th Cir. 2004). That *Embury*'s waiver holding arose in the removal context is irrelevant to the material holding. *Kohn III* directed the forfeiture inquiry in the same sentence in which it contemplated an amendment. While immunity "may be raised at any point in a proceeding," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984), this speaks to timeliness of assertion, not retractability of express disclaimers.

**2. The California Legislature Waived Immunity for Unruh Claims**

The California Legislature independently waived any immunity for Unruh claims–coextensive with the statutory coverage–since it chose to incorporate the ADA into the Unruh Act, thereby knowingly subjecting covered entities to federal jurisdiction. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) (a State may waive its immunity by a clear declaration of intent to submit to federal-court jurisdiction). *Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011), likewise requires clarity about the federal forum, and Unruh's incorporation of the ADA supplies it. This Unruh-specific argument is distinct from the CGCA compliance-effected waiver argument Kohn preserves for appeal (*see supra* note 3).

**B. Kohn's TAC States Valid Unruh Claims**

The Unruh Act provides its remedies–including damages–upon ADA violations, not ADA damages claims. *Munson v. Del Taco, Inc.*, 46 Cal. 4th 661 (2009), and so does not require intentionality or deliberate indifference as Title II damages claims do. Defendants do not argue otherwise, and neither their coverage nor CGCA theories withstand scrutiny.

**1. The Unruh Act Covers the State Bar and Its Bar Exam**

The Ninth Circuit's mandate directs this Court to apply *Brennon B. v. Superior Ct.*, 13 Cal. 5th 662 (2022) to the amendments from Kohn's FAC that the panel held would be required for Kohn to state Unruh claims, and thereby analyze whether the State Bar is a "business establishment" within Unruh's unique meaning, or alternatively administers its bar exam function with sufficiently "businesslike" attributes. *Kohn III*, 2024 WL 4533446, at *2. California's interpretive rules govern, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 930 (9th Cir. 2004), and where a phrase is unclear or ambiguous they look to legislative history and "the wider historical circumstances of its enactment" to "effectuate the purpose of the statute." *Carmack v. Reynolds*, 2 Cal. 5th 844, 849-50 (2017); *see also Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 167 (2007) (construing these statutory interpretation principles as applied to the Unruh Act).

The California Supreme Court previously explained that Unruh defines the term "business establishment of any kind whatsoever" not only "in the broadest sense reasonably possible"– *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 75-76 (1985)–*but also as encompassing more than can be "determined invariably by reference to the apparent 'plain meaning' of the term 'business establishment'*." *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 616 (1995) (emphasis added). This holding followed California Supreme Court guidance that the term's coverage can extend to nonprofits and public entities. *O'Connor v. Vill. Green Owners Ass'n*, 33 Cal. 3d 790, 795-96 (1983); *Stoumen v. Reilly*, 37 Cal. 2d 713, 716 (1951); *Orloff v. L.A. Turf Club, Inc.*, 36 Cal. 2d 734, 737-38 (1951). Because the Legislature deleted a lengthy list of covered entities from earlier drafts in the belief that "business establishment of any kind whatsoever" already encompassed them, and to avoid "surplusage," *Burks v. Poppy Constr. Co.*, 57 Cal. 2d 463, 469 (1962), the California Supreme Court looks to those drafts to decipher the term's scope. *Isbister*, 40 Cal. 3d at 79; *O'Connor*, 33 Cal. 3d at 795-96. Among the coverage contemplated by these earlier Unruh bill drafts was "any and all business or professional organizations formed or maintained by licensees of the State of California," and "any professional person, group or association licensed or certified by the State of California," which seemingly would encompass

the State Bar. *See* Harold W. Horowitz, *The 1959 California Equal Rights in "Business Establishments" Statute: A Problem in Statutory Application*, 33 S. Cal. L. Rev. 260, 268 & n.35 (1960) [hereinafter *Horowitz*]; *Warfield*, 10 Cal. 4th at 608 n.8 ("The complete progression of the [Unruh] bill . . . is set forth in detail in [*Horowitz*]").

The requisite holistic analysis "need not rely exclusively on the similarity to a commercial business," *Isbister*, 40 Cal. 3d at 83, contrary to Defendants' arguments at Mot. 35 (which isolate that criterion from the longer list of "businesslike" traits *Brennon* recited at 682). *Harrison v. City of Rancho Mirage*, 243 Cal. App. 4th 162 (2015), held that coverage did not extend to legislative acts, but that does not exclude government defendants, or all of their activities, categorically. The school district in *Brennon* pressed that bright-line rule, as Defendants do here; the California Supreme Court instead ruled narrowly on free public education and applied its framework testing whether the defendant generally, or alternatively the activity giving rise to suit, had "businesslike attributes." *Brennon*, 13 Cal. 5th at 681-82. Accordingly, *Brennon* did not materially redefine either "business establishment of any kind whatsoever" or "businesslike attribute" from earlier case law. *See Curran v. Mount Diablo Council of the Boy Scouts of Am.*, 17 Cal. 4th 670, 697 (1998); *Warfield*, 10 Cal. 4th at 599, 615-20; *O'Connor*, 33 Cal. 3d at 795-96; *Burks*, 57 Cal. 2d at 468; *Brennon*, 13 Cal. 5th at 682. *Brennon* concluded that, because public education is mandated by the California Constitution and is publicly funded–then provided gratuitously to a limited subset of the public–that specific context fell outside the scope of Unruh's coverage. *Brennon*, 13 Cal. 5th at 684.

Concededly, *Brennon* forecloses Kohn's earlier argument that Cal. Civ. Code § 51(f) adopts the ADA's covered entities. Here, however, the State Bar and/or bar exam satisfy § 51(b). TAC ¶¶ 41, 59, 61, 63. The regular exam registration fees applicants pay the State Bar, *id.* ¶ 41(b)(ii), coupled with the California Supreme Court's policymaking discretion over whether and how Defendants use the exam for recommendations on that Court's attorney admission decisions–instead of a mandate enshrined in the California Constitution, *id.* ¶ 63(a)–distinguish the exam from public education. That Court's policy to typically only admit applicants who've passed the bar exam is identical to that for the NCBE's MPRE, and also analogous to how State

universities require credentials from particular standardized test vendors to grant admission. *Id.* ¶ 60. This makes Defendants' exam services just as businesslike as these vendors and especially like the NCBE, which in many jurisdictions performs *every* attorney-admission function the State Bar does for the California Supreme Court. *Id.* The State Bar employs hundreds of staff; contracts with numerous vendors; and leases real estate to tenants. *Id.* ¶¶ 41, 63(a). Its own officials have described the exam as its "business model" in December 2022. *Id.* ¶ 41(b)(ii). And its own budget describes the Admissions Fund that holds exam fees as "self-supporting and sustained by fees paid by licensees or applicants that are set by the Board," accounted for within an "Enterprise Fund, which reports all business-type activities." Dkt. 34-1 at 34. Kohn's TAC sufficiently establishes coverage under Rule 12(b)(6).

**2. The California Government Claims Act Does Not Bar Kohn's Unruh Claims**

Defendants argue that the CGCA bars the Unruh claims because Kohn sued less than 45 days after presenting his claim, TAC ¶ 215, a "prematurity" they say amendment cannot cure, and because some claims were untimely under Cal. Gov't Code § 911.2. Mot. 32-34. Defendants' prematurity theory relies on nonbinding holdings from one side of a split among California Courts of Appeal that is currently pending review by the California Supreme Court.[18] On Defendants' side, *Harland v. City of W. Hollywood*, 120 Cal. App. 5th 1166 (2026) held that the safe harbor of *Malear v. State*, 89 Cal. App. 5th 213 (2023) did not permit voluntarily dismissing and then refiling a premature action to cure prematurity; *see also Lowry v. Port San Luis Harbor Dist.*, 56 Cal. App. 5th 211, 220 (2020) (rejecting *Cory* without discussing its abatement reasoning or citing *Radar*). On Kohn's side, *Cory*, 43 Cal. App. 3d at 135-36, applies *Radar* and treats prematurity as grounds for abatement, not dismissal, curable once the waiting period runs; that analysis does not depend on the *Malear* safe harbor *Harland* declined to extend. *See also Franklin v. City of Kingsburg*, No.

[18] Pet. for review pending, No. S297247. The California Supreme Court extended its time to act to Oct. 9, 2026; if review is granted, *Harland* will have "no binding or precedential effect." Cal. R. Ct. 8.1115(e)(1). Even if denied, lower state courts do not bind federal courts–even on state law–and other California courts hold that existing California Supreme Court precedent requires otherwise. *See Cory v. City of Huntington Beach*, 43 Cal. App. 3d 131, 135-36 (1974) (applying *Radar v. Rogers*, 49 Cal. 2d 243, 250 (1957)). At least for now, this Court is bound to follow *Radar*.

1:18-cv-0824 AWI SKO, 2023 WL 2976285, at *5-6 (E.D. Cal. Apr. 17, 2023) (declining to follow *Lowry*, following *Malear*, and concluding that "*Cory* remains good law").

**(a) Prematurity**

*Harland* never conducted the analysis *Radar* requires, and *Lowry* read more into *State v. Superior Ct. (Bodde)*, 32 Cal. 4th 1234 (2004), and *DiCampli-Mintz v. Cnty. of Santa Clara,* 55 Cal. 4th 983 (2012) than either of those cases stand for. *Bodde* did not reject *Radar*; it distinguished *Radar* and *Cory* because "[n]one of these cases considered whether failure to allege compliance or circumstances excusing compliance subjected a complaint to a general demurrer," and described the line as one in which "the courts refused to dismiss the action because the plaintiffs had substantially complied." 32 Cal. 4th at 1243-44. *DiCampli-Mintz* rejected substantial compliance where a claim was delivered to the wrong statutory recipient under § 915; it says nothing about premature filing. 55 Cal. 4th at 992-95.

Defendants' rule would force a plaintiff seeking emergency injunctive relief, here in the midst of a pandemic, to choose between forfeiting accrued damages claims and delaying the injunction at least 45 days. *Cory*'s abatement approach avoids that choice. The TAC pleads a claim presented "[a]round 6/17/2020" that "substantially complied" with the Act, TAC ¶ 215, and the motion accepts that a claim is "deemed rejected after 45 days by operation of law," Mot. 33. Forty-five days from June 17, 2020 is August 1, 2020. Suit was filed July 18, 2020. Any prematurity therefore lasted fourteen days and ended by operation of law in August 2020, after which Defendants expressly rejected Kohn's CGCA claims on September 28, 2020, RJN Ex. 5, postdating the FAC. Defendants first raised prematurity in 2026, against a pleading filed after the claim had been presented and expressly rejected. The FAC that the rejection postdated was dismissed without leave to amend, and Kohn pleaded the rejection at the first opportunity the Ninth Circuit's mandate afforded him. No purported prematurity under the CGCA bars Kohn's Unruh claims, let alone incurably so.

**(b) Timeliness**

Defendants do not articulate any reason for alleging Kohn's CGCA claims were untimely for his 2020 exams (February and October). They were not. Defendants argue that a claim accrues

when the appeal is denied. Mot. 33. The February 2020 appeal was denied February 14, 2020, TAC ¶ 210, and the formal claim was presented August 14, 2020, RJN Ex. 3, exactly six months later. It was timely whether § 911.2(a) allows six months or, as it does for "any other cause of action," one year. Kohn's June 17, 2020 demand letter, delivered well within either period, TAC ¶ 215, independently satisfied the Act, because a notice "which discloses the existence of a claim that if not paid or otherwise resolved will result in litigation, must be treated as a defective 'claim' activating the notice and defense-waiver provisions of the act, sections 910.8, 911 and 911.3." *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 707-08 (1989). A subsequent formal claim was submitted promptly upon accrual of the October 2020 exam violations. TAC ¶ 274.

For the February 2019 exam, Kohn timely satisfied the CGCA through his January 2019 appeal statement or, alternatively, his June and August 2020 claim submissions. For the July 2018 exam, Defendants waived any untimeliness objection to the August 2020 claims through the form and manner of their rejection notice.

The TAC's pled January 7, 2019 appeal statement gave "administrative notice that Kohn sought to judicially contest any upheld denials" and "contained Kohn's contact information for purposes of any CGCA administrative notice requirements." TAC ¶ 164. Under *Phillips*, such a notice must be treated as a defective claim that triggers the entity's duty to give notice of insufficiency or waive the defect, 49 Cal. 3d at 707-08, and where the entity never gives written rejection notice, the time to sue is "within two years from the accrual of the cause of action," Cal. Gov't Code § 945.6(a)(2). Defendants never served any defective claim or rejection notice.

The August 14, 2020 claim stated on its face that the February 2019 accommodations were denied "on 2/15/19." RJN Ex. 3. On Defendants' premise that the six-month period applies, the claim was late as to that cycle and the July 2018 cycle, and its lateness was apparent from the document itself. Section 911.3(a) then gave the State Bar forty-five days to return it with notice "that the claim was not filed timely and that it is being returned without further action," and § 911.3(b) provides that "[a]ny defense as to the time limit for presenting a claim described in subdivision (a) is waived by failure to give the notice set forth in subdivision (a) within 45 days after the claim is presented." The sole exception, for a claim that omits the claimant's address, *id.*,

does not apply, RJN Ex. 3. No such notice was given. The rejection letter was headed by a warning that Kohn had "only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim," citing § 945.6. RJN Ex. 5. That is the § 913 notice for a claim the entity has acted on, not the § 911.3(a) return notice or the § 911.8(b) late-claim notice, which must warn of the need to petition under § 946.6. Defendants chose the one response the statute reserves for claims deemed properly presented.

A public entity "must notify the claimant within 45 days after the claim is presented whether the claim, defective or otherwise, was timely filed," and "[f]ailure to provide such notice of timeliness waives a public entity's defense based on untimeliness even if the claim is otherwise insufficient." *Phillips*, 49 Cal. 3d at 705-06; *see also Roger v. Cnty. of Riverside*, 44 Cal. App. 5th 510, 524-26 (2020) (holding the entity waived its untimeliness defense by rejecting late claims on the merits instead of notifying the claimant that they were late). *Estill v. Cnty. of Shasta*, 25 Cal. App. 5th 702, 706, 711 (2018), estops a claimant only where the entity's failure to give notice "is induced by the claimant's representation on the government claim form," and nothing in Kohn's claims induced Defendants to treat them as timely.

**(c) Scope and Remedy**

Finally, Kohn disputes Defendants' assertion at Mot. 34 n.2 that disparate impact challenges to Defendants' systemic procedural deficiencies and practices were pled "for the first time in the TAC." Defendants invoke *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 447 (2004), to exclude the disparate impact theories, but *Stockett* holds that a "fuller exposition of the factual basis beyond that given in the claim is not fatal, so long as the complaint is not based on an entirely different set of facts." *Id.* The claim described each examination at issue, including "[d]iscriminatory proctoring of the July 2018 California Bar Exam." RJN Ex. 3. Defendants also raise the same objection for purported July 2018 failures to accommodate, but not even the TAC asserts any, and Kohn does not argue any. If the Court finds any CGCA deficiency, any dismissal on CGCA ground should be with leave to amend, including to add a cycle-by-cycle chronology. In any event, *under no circumstances should the Court decline to reach the CGCA issues if it finds Kohn's Unruh claims fail on other grounds,* because dismissal

on immunity (or purportedly jurisdictional) grounds alone risks the appropriate tolling provided by 28 U.S.C. § 1367(d). *Raygor v. Regents of the Univ. of Minn.*, 534 U.S. 533 (2002).

**CONCLUSION**

Defendants' motion should be denied or, at minimum, dismissal should be with leave to amend. The Court must also certify to the Attorney General that Defendants have drawn the constitutionality of 42 U.S.C. § 12202 into question, 28 U.S.C. § 2403(a); Fed. R. Civ. P. 5.1(b), whether or not the challenge is "as applied," as Defendants' Notice of Constitutional Question suggests, Dkt. 89-2. The Ninth Circuit certified the same question in this case over Defendants' identical objection that their "as-applied challenge" did not trigger § 2403. No. 20-17316, Dkts. 63, 83. The United States declined to intervene "at this time," pointing to two threshold issues, arm-of-the-State status and Kohn's Rehabilitation Act claim, and asking that *Georgia* step one come first. *Id.* Dkt. 96 at 1-4. Both threshold issues have since been decided, and this motion presents step one. Because the 60-day period that ran from Defendants' notice has expired, Kohn asks the Court to set a later time for the United States to intervene, Fed. R. Civ. P. 5.1(c), and to invite its views before deciding this motion. If the United States files a brief, the parties should be permitted to respond.

Dated: September 29, 2026

Respectfully submitted,

/s/ Andrew Rozynski
Andrew Rozynski (admitted pro hac vice)
EISENBERG & BAUM, LLP
Attorneys for Plaintiff Benjamin Kohn