ELLIN DAVTYAN (238608)
General Counsel
KIRSTEN GALLER (227171)
Deputy General Counsel
JENNIFER SPERLING (310551)
Assistant General Counsel
OFFICE OF GENERAL COUNSEL
THE STATE BAR OF CALIFORNIA
845 South Figueroa Street
Los Angeles, CA 90017
Tel: (213) 765-1008
Email: kirsten.galler@calbar.ca.gov
Jennifer.Sperling@calbar.ca.gov

JEAN R. KRASILNIKOFF (280450)
Assistant Deputy General Counsel
BRADY R. DEWAR (252776)
Assistant General Counsel
THE STATE BAR OF CALIFORNIA
OFFICE OF GENERAL COUNSEL
180 Howard Street
San Francisco, CA 94105-1639
Telephone: (415) 538-2309

Attorneys for Defendants
THE STATE BAR OF CALIFORNIA;
CALIFORNIA COMMITTEE OF BAR
EXAMINERS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BENJAMIN KOHN, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE STATE BAR OF CALIFORNIA, CALIFORNIA COMMITTEE OF BAR EXAMINERS, and THEIR AGENTS IN THEIR OFFICIAL CAPACITY,<br><br>Defendants. | Case No.: 4:20-cv-04827-PJH<br><br>**THE STATE BAR AND COMMITTEE OF BAR EXAMINERS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT AND POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE: December 17, 2026<br>TIME: 1:30 p.m.<br>COURTROOM: 3, 3rd Floor<br>JUDGE: HON. PHYLLIS J. HAMILTON |

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

A. The TAC Should Be Dismissed Pursuant to Rule 12(b)(1) Because the State Bar Has Sovereign Immunity ..... 1

1. The State Bar Is an Arm of the State Entitled to Sovereign Immunity ..... 2

a. *Kohn I* Remains Good Law ..... 2

b. The State Bar Is an Arm of the State Under *Galette* ..... 4

2. There Has Been No Abrogation of the State Bar's Immunity ..... 6

a. Kohn Does Not State a Title II Violation of the ADA Under Any Available Theory of Discrimination ..... 6

b. Even if the Court Reaches the Second *Georgia* Step, Kohn Has Not Alleged a Fourteenth Amendment Violation ..... 10

c. Kohn's Claims Fail at the Third *Georgia* Step Because Congress May Not Prophylactically Abrogate Sovereign Immunity as to Professional Licensing ..... 13

3. The State Bar May Assert Sovereign Immunity as to the Unruh Act ..... 15

B. The TAC Should be Dismissed Pursuant to Rule 12(b)(6) ..... 16

1. Title II Makes No Remedies Available for Kohn's Claims ..... 17

2. Kohn's Unruh Act Claims Fail as a Matter of Law ..... 18

a. Kohn Failed to Comply with the GCA ..... 18

b. The State Bar Is Not a Business Establishment ..... 19

III. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Cases**

*A.G. v. Paradise Valley Unified Sch. Dist. No. 69*,
815 F.3d 1195 (9th Cir. 2016) ....... 7

*A.S. v. Palmdale Sch. Dist.*,
94 Cal. App. 5th 1091 (2023) ....... 18

*Allen v. Cooper*,
589 U.S. 248 (2020) ....... 15

*Atayde v. Napa State Hosp.*,
255 F. Supp. 3d 978 (E.D. Cal. 2017) ....... 9

*Bates v. State Bar of Ariz.*,
433 U.S. 350 (1977) ....... 6

*Bd. of Trustees of Univ. of Ala. v. Garrett*,
531 U.S. 356 (2001) ....... 13, 14, 15

*Brennon B. v. Superior Court*,
13 Cal. 5th 662 (2022) ....... 16, 19, 20

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ....... 13, 14

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) ....... 11

*Coleman v. Court of Appeals of Md.*,
566 U.S. 30 (2012) ....... 14

*College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*,
527 U.S. 666 (1999) ....... 16

*Conn v. Gabbert*,
526 U.S. 286 (1999) ....... 12

*Csutoras v. Paradise High Sch.*,
12 F.4th 960 (9th Cir. 2021) ....... 17

*Davis v. Shah*,
821 F.3d 231 (2d Cir. 2016) ....... 10

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
375 F.3d 861 (9th Cir. 2004) ....... 7

*Doe 1 v. City of Murrieta*,
102 Cal. App. 4th 899 (2002) ....... 19

*Dugan v. Rank*,
372 U.S. 609 (1963) .......... 6

*Dunlap v. Ass'n of Bay Area Gov'ts*,
996 F. Supp. 962 (N.D. Cal. 1998) .......... 9

*Dunlap v. Liberty Nat. Prods., Inc.*,
878 F.3d 794 (9th Cir. 2017) .......... 6, 19

*Duvall v. Cnty. of Kitsap*,
260 F.3d 1124 (9th Cir. 2001) .......... 17

*Embury v. King*,
361 F.3d 562 (9th Cir. 2004) .......... 16

*Eng v. EPA*,
172 F.4th 747 (9th Cir. 2026) .......... 3

*Galette v. New Jersey Transit Corp.*,
607 U.S. 509 (2026) .......... 2, 3, 4, 5

*Galvan v. Walt Disney Parks and Resorts, U.S., Inc.*,
425 F. Supp. 3d 1234 (C.D. Cal. 2019) .......... 10

*Giannini v. Real*,
911 F.2d 354 (9th Cir. 1990) .......... 11

*Gordon v. State Bar of Cal.*,
2020 WL 5816580 (N.D. Cal. Sept. 30, 2020) .......... 10

*Guttman v. Khalsa*,
669 F.3d 1101 (10th Cir. 2012) .......... 14, 15

*Harland v. City of West Hollywood*,
120 Cal. App. 5th 1166 (2026) .......... 19

*Harland v. City of West Hollywood*,
348 Cal. Rptr. 3d 102 (Cal. 2026) .......... 19

*In re Rose*,
22 Cal. 4th 430 (2000) .......... 4

*J.M. v. Huntington Beach Union High Sch. Dist.*,
2 Cal. 5th 648 (2017) .......... 18

*Kohn v. State Bar of California*,
119 F.4th 693 (9th Cir. 2024) .......... 6, 10, 14

*Kohn v. State Bar of California*,
2024 WL 4533446 (9th Cir. Oct. 21, 2024), *cert. denied*, 146 S. Ct. 127 (2025) .......... 1

*Kohn v. State Bar of California*,
87 F.4th 1021 (9th Cir. 2023) .......... passim

*Kurns v. R.R. Friction Prods. Corp.*,
565 U.S. 625 (2012) .......... 6

Loper Bright Enterprises v. Raimondo,
603 U.S. 369 (2024) .......... 3

*Lopez v. Garland*,
116 F.4th 1032 (9th Cir. 2024) .......... 3

*Louisiana v. Callais*,
608 U.S. 85 (2026) .......... 15

*Malear v. State*,
89 Cal. App. 5th 213 (2023) .......... 19

*Marinkovic v. Lee,*
2025 WL 474917 (S.D. Cal. Feb. 12, 2025) .......... 8, 17

*Martinez v. City of Clovis*,
943 F.3d 1260 (9th Cir. 2019) .......... 12

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 11

*Miller v. Ford Motor Co.*,
620 F. Supp. 3d 1045 (E.D. Cal. 2022) .......... 17

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) .......... 2, 3

*Mohsin v. Cal. Dept. of Water Res.*,
52 F. Supp. 3d 1006 (E.D. Cal. 2014) .......... 19

*Murguia v. Langdon*,
61 F.4th 1096 (9th Cir. 2023) .......... 12

*Murray v. Mayo Clinic*,
934 F.3d 1101 (9th Cir. 2019) .......... 2

*Nev. Dep't of Human Res. v. Hibbs*,
538 U.S. 721 (2003) .......... 14

*Nilsen v. University of Washington*,
186 F.4th 1133 (9th Cir. 2026) .......... 2, 3, 4, 5

*Ohio House, LLC v. City of Costa Mesa*,
135 F.4th 645 (9th Cir. 2025) .......... 9

*Payan v. Los Angeles Cmty. Coll. Dist.*,
11 F.4th 729 (9th Cir. 2021) .......... 7, 8, 9

*Pell v. Nunez*,
99 F.4th 1128 (9th Cir. 2024) .......... 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......... 16

*Phillips v. Desert Hospital Dist.*,
49 Cal. 3d 699 (1989) .......... 18

*Polanco v. Diaz*,
76 F.4th 918 (9th Cir. 2023) .......... 12, 13

*Railroad 1900, LLC v. City of Sacramento*,
604 F. Supp. 3d 968 (E.D. Cal. 2022) .......... 12

*Raytheon Co. v. Hernandez*,
540 U.S. 44 (2003) .......... 9

*Sato v. Orange Cnty. Dep't of Educ.*,
861 F.3d 923 (9th Cir. 2017) .......... 1

*Schware v. Bd. of Bar Exam'rs of N.M.*,
353 U.S. 232 (1957) .......... 11

*Sheetz v. Cnty. of El Dorado*,
601 U.S. 267 (2024) .......... 20

*T.W. v. N.Y. State Bd. of Law Exam'rs*,
110 F.4th 71 (2d Cir. 2024) .......... 14, 15

*Tennessee v. Lane,*
*541 U.S. 509* (2004) .......... 14

*Tingley v. Ferguson*,
47 F.4th 1055 (9th Cir. 2022) .......... 2, 3

*U.S. v. Georgia*,
546 U.S. 151 (2006) .......... 13, 14

*U.S. v. Grandberry*,
730 F.3d 968 (9th Cir. 2013) .......... 3

*Warfield v. Peninsula Golf & Country Club*,
10 Cal. 4th 594 (1995) .......... 20

*Williams v. Cal. Dept. of Corr. and Rehab*,
2017 WL 977766 (E.D. Cal. Mar. 14, 2017) .......... 7

*Willner v. Comm. on Character & Fitness*,
373 U.S. 96 (1963) .......... 12

*Wolf v. City of Millbrae*,
2021 WL 3727072 (N.D. Cal. Aug. 23, 2021) .......... 7

*Yellowstone Womens First Step H., Inc. v. City of Costa Mesa,*
2016 WL 6124509 (C.D. Cal. Oct. 17, 2016) .......... 9

**Statutes**

Cal. Assemb. B. 2784 (2025-2026), ch. 641, § 1 (Cal. Stat. 2026) .......... 4

Cal. Bus. & Prof. Code § 6008 .......... 4, 5

Cal. Bus. & Prof. Code § 6008.2 .......... 4, 5

Cal. Civ. Code § 51 .......... 16, 19

Cal. Gov't Code § 6300 .......... 4

Cal. Gov't Code § 814 .......... 19

Cal. Gov't Code § 911.6 .......... 18

**Rules**

Fed. R. Civ. P. 12 .......... 1, 16

Cal. R. of Ct., rule 9.13 .......... 11

**Regulations**

28 C.F.R. § 36.309 .......... 7

**Constitutional Provisions**

U.S. Const. amend. XIV, § 5 .......... 14

Cal. Const. art. VI, § 9 .......... 4

# I. INTRODUCTION

Kohn raises every conceivable argument against dismissal. But despite the number of his arguments, this Court can take a very simple path to dismissing this complaint—again. Sovereign immunity protects the State Bar under binding Ninth Circuit precedent. Kohn does not allege any constitutional violation. And every court to consider the question has held that Congress may not prophylactically abrogate state sovereign immunity for professional licensing, including for claims against state bars. This Court need decide nothing more to resolve this case.

Even if this Court digs into the merits, the result is the same. Kohn alleged failures to accommodate but, faced with the State Bar's motion, has hardly defended that theory. Although he now frames his claims in the language of disparate impact and disparate treatment, courts have rejected similar attempts to repackage meritless accommodation claims. His inability to plead a viable theory under the ADA also sinks his derivative Unruh Act claim, which is barred by the Government Claims Act (GCA) and may not be brought against a regulatory agency like the State Bar in all events. This Court should dismiss the claim based on immunity or the merits.

# II. ARGUMENT

## A. The TAC Should Be Dismissed Pursuant to Rule 12(b)(1) Because the State Bar Has Sovereign Immunity

Kohn argues that this Court should decide the State Bar's sovereign immunity under Rule 12(b)(6). Opp. 1–2. The Ninth Circuit has been clear that state instrumentalities may assert sovereign immunity in a Rule 12(b)(1) motion. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 (9th Cir. 2017); *see, e.g.*, *Kohn v. State Bar of California*, 2024 WL 4533446, at *1 (9th Cir. Oct. 21, 2024) (Dkt. 61) ("*Kohn III*"), *cert. denied*, 146 S. Ct. 127 (2025). But the difference between Rule 12(b)(1) and 12(b)(6) is immaterial here because the State Bar's sovereign immunity does not hinge on any contested factual issues. First, *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) ("*Kohn I*"), remains law of the case and squarely establishes that the State Bar is an arm of the state. Second, Congress lacked constitutional authority to abrogate the State Bar's sovereign immunity. This Court should dismiss the TAC without leave to amend for lack of subject matter jurisdiction.

**1. The State Bar Is an Arm of the State Entitled to Sovereign Immunity**

Kohn argues that this Court may ignore *Kohn I* and redo the analysis under *Galette v. New Jersey Transit Corp.*, 607 U.S. 509 (2026). But the mandate rule prevents Kohn's attempt to relitigate the State Bar's arm-of-the-state status. *Galette* did not abrogate *Kohn I*, as the Ninth Circuit recently recognized in *Nilsen v. University of Washington*, 186 F.4th 1133, 1137 (9th Cir. 2026). And even if this Court were to run through the three factors again under the refined *Galette* test, the State Bar would still qualify as an arm of the state.

**a. *Kohn I* Remains Good Law**

The parties agree that, unless *Galette* is "clearly irreconcilable" with *Kohn I*, the Ninth Circuit's en banc decision in *Kohn I* establishes by force of the mandate rule and as published precedent that the State Bar is an arm of the state entitled to sovereign immunity. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see* Mot. 11; Opp. 3. The Ninth Circuit has said many times that "[t]he 'clearly irreconcilable' requirement from *Miller* is a 'high standard' to meet." *Tingley v. Ferguson*, 47 F.4th 1055, 1074–75 (9th Cir. 2022) (quoting *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019)). Kohn cannot clear that high standard: neither the reasoning nor the result of *Galette* is impossible to reconcile with *Kohn I*.

First, *Nilsen* confirms that *Kohn I* remains good law. The Ninth Circuit expressly "consider[ed] whether *Kohn*'s three-factor test is 'clearly irreconcilable' with *Galette*." *Nilsen*, 186 F.4th at 1137 (quoting *Miller*, 335 F.3d at 893). The answer was no: "*Galette* refines *Kohn* rather than displaces it." *Id.* This refinement places more weight on "whether the State intended to create a legally independent entity" and less weight on "the degree of control the State exercises over the entity" but (critically) "did not effectively overrule the *Kohn* test." *Id.* at 1138. *Nilsen* thus forecloses Kohn's argument that *Galette* abrogated *Kohn I*.

Kohn's attempts to transform *Nilsen* from a shield for prior precedent into a sword for striking down *Kohn I* and avoiding the mandate rule are meritless. For one thing, Kohn argues that *Nilsen* allows this Court to disregard *Kohn I*, wipe the slate clean, and apply the refined arm-of-the-state test from *Galette*. Opp. 3–5. Yet *Nilsen* was crystal clear that "*Galette* did not effectively overrule the *Kohn* test." 186 F.4th at 1138. Kohn refuses to confront the Ninth

Circuit's rejection of his argument. For another, Kohn contends that "*Nilsen* itself did not treat prior precedent as insulated from precedent." Opp. 3 n.5. But no prior precedent squarely addressed whether the particular entity there (the University of Washington) was an arm of the state. *Nilsen*, 186 F.4th at 1140 n.5 (referring to prior decision that merely "assume[d]" that the university was an arm of the state). Kohn has not carried his heavy burden to demonstrate that *Galette* has "taken an approach that is *fundamentally* inconsistent with the reasoning" of *Kohn I*, as required for the mandate rule to not apply. *Miller*, 335 F.3d at 892 (emphasis added).

Second, *Kohn I* remains good law as to the State Bar. Nothing in *Galette*, which addressed a New Jersey transit entity, disturbed the well-established consensus of the Ninth Circuit and "all the other federal circuits to have considered the question" that "state bars are arms of the state and enjoy sovereign immunity under the Eleventh Amendment." *Kohn I*, 87 F.4th at 1037 & n.11 (citing decisions from Second, Fifth, Sixth, Seventh, and Eleventh Circuits). When the Supreme Court refines a test for a given area of law, preexisting precedent governing specific *applications* remains good law unless and until overruled by "later and controlling authority." *Miller*, 335 F.3d at 893. As the State Bar explained (Mot. 11), the Court recently applied that principle in *Loper Bright Enterprises v. Raimondo*, which overruled the doctrine of *Chevron* deference to reasonable agency interpretations of federal statutes but preserved "prior cases that relied on the *Chevron* framework." 603 U.S. 369, 412 (2024). The Ninth Circuit has since reiterated that circuit decisions on specific statutes "remain[] precedential authority" even though the Supreme Court altered the framework for cases not already governed by precedent. *Lopez v. Garland*, 116 F.4th 1032, 1045 (9th Cir. 2024); *see, e.g.*, *Eng v. EPA*, 172 F.4th 747, 755 n.4 (9th Cir. 2026). Although Kohn argues that *stare decisis* protects only decisions that interpret a "statute," Opp. 3 n.5, the Ninth Circuit has repeatedly held that its constitutional decisions remain binding under *Miller* when intervening Supreme Court decisions do not squarely address the same issue or categorically reject the Ninth Circuit's reasoning, *e.g.*, *Tingley*, 47 F.4th at 1075 (First Amendment); *U.S. v. Grandberry*, 730 F.3d 968, 974 (9th Cir. 2013) (Fourth Amendment). Only the Supreme Court or the Ninth Circuit en banc may reconsider whether the State Bar is an arm of the state.

### b. The State Bar Is an Arm of the State Under *Galette*

Running through the same three factors, as refined by *Galette*, would only confirm the result that the Ninth Circuit reached in *Kohn I*: the State Bar is an arm of the state.

First, the factor with the "most weight" is "whether the State intended to create a legally independent entity." *Nilsen*, 186 F.4th at 1138. The Ninth Circuit explained that this factor, as applied in both *Galette* and *Kohn I*, considers "how state law characterized the entity and whether the entity was defined as part of the State for other purposes under state law." *Id.* at 1137. Here, California law makes clear that the State Bar is not a legally independent entity. The California Constitution establishes the State Bar as part of the judicial branch, Cal. Const. art. VI, § 9, and the California Supreme Court treats the State Bar as "its 'administrative arm' for attorney discipline and admissions purposes," *Kohn I*, 87 F.4th at 1032 (quoting *In re Rose*, 22 Cal. 4th 430, 438 (2000)). In fact, the Legislature earlier this year reiterated that "[t]he State Bar is a state regulatory agency within the judicial branch of California government" and "performs functions essential for the Supreme Court to exercise its admissions, regulation, [and] discipline authority." Cal. Assemb. B. 2784 (2025-2026), ch. 641, § 1(b)–(c) (Cal. Stat. 2026); *see id.* § 3. The State Bar, as an arm of the California Supreme Court, is not a legally independent entity under California law.

Kohn gives short shrift to the most important factor. He concedes that the State Bar's status as a "public corporation" is not "dispositive." Opp. 5 (citing *Galette*, 607 U.S. at 530); *see* Cal. Gov't Code § 6300 (defining "public corporation" to include "the state" and "any public agency of the state"). Neither is the State Bar's "power to sue and be sued." *Galette*, 607 U.S. at 530. Instead, he argues that the State Bar is a legally independent entity because it may sue and be sued, make contracts, borrow money and incur debts, and own property. Opp. 5. But he overlooks that here, as with the University of Washington in *Nilsen*, those powers "are not absolute." 186 F.4th at 1140. State law divests the State Bar of independent authority over its property and debts by providing that "[a]ll property of the State Bar is … held for essential public and governmental purposes in the judicial branch of the government," Cal. Bus. & Prof. Code § 6008, and that all debts are held "in the judicial branch of government, *id.* at § 6008.2.

*See Kohn I*, 87 F.4th at 1032. Such sharp limits on the State Bar's power over its property and debts underscore that the State Bar is not a "legally separate entity." *Nilsen*, 186 F.4th at 1141.

Second, the treasury factor is at worst "neutral" here. *Id.* at 1142. The State Bar has never disputed that California is not formally liable to pay the State Bar's debts from the general treasury. Mot. 13. But the analysis does not end there because the State Bar's property and debts are the *judicial branch's* property and debts. Cal. Bus. & Prof. Code §§ 6008, 6008.2. Although Kohn argues that this argument did not persuade the Ninth Circuit (Opp. 5–6), he cannot have it both ways: if *Kohn I* is controlling, then the State Bar is an arm of the state, but if *Kohn I* is not controlling, then every argument under *Galette* is open to the State Bar. The Ninth Circuit in fact endorsed an argument just like the State Bar's in *Nilsen*, cautioning that a state entity's special fund "may still be state money" even when judgment would not be "paid from the State's general liability fund." 186 F.4th at 1141. *Nilsen* has only strengthened the conclusion that the State Bar is an arm of the state.

Third, Kohn does not dispute that the control factor supports the State Bar and argues only that the high degree of control over the State Bar's actions is "not especially probative." Opp. 6 (quoting *Galette*, 607 U.S. at 526). But this factor still deserves weight. *Nilsen*, 186 F.4th at 1138. Here, the California Supreme Court exercises much more control over the State Bar—through rules that govern its administrative arm and direct review of recommendations on admission and discipline—than Washington did over the university's board of regents, where the control factor still "weigh[ed] slightly in favor of finding [the university] an arm of the state." *Id.* at 1142; *see* Mot. 15. Kohn points out that the California Supreme Court no longer requires the State Bar to secure its approval for amendments to testing accommodation rules. Opp. 5. But as the State Bar explained, the Supreme Court's authority to rewrite the approval process *confirms* its sweeping control over the State Bar. Mot. 15. No change in state law has undermined the Supreme Court's "total control" over the State Bar. *Kohn I*, 87 F.4th at 1035.

Even if the State Bar is not an arm of the state under *Galette*, dismissal would remain appropriate because the State is a "real party in interest." *Galette*, 607 U.S. at 527. Kohn argues that "[t]he State becomes the real party in interest where the decree would operate on its

property or compel its officials to act." Opp. 6 n.6. Setting aside that the State Bar's property *is* the judicial branch's property, the California Supreme Court is the "real party in interest" because Kohn challenges the admissions process. *Bates v. State Bar of Ariz.*, 433 U.S. 350, 361 (1977) (Arizona Supreme Court was real party in interest for antitrust claim because Arizona State Bar "act[ed] as the agent of the court under its continuous supervision"). Imposing damages on the State Bar would "interfere with the public administration" of the bar exam as the administrative arm of the California Supreme Court. *Dugan v. Rank*, 372 U.S. 609, 620 (1963). After all, "'[t]he obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012). The real-party-in-interest framework confirms that Kohn's claims may not go forward against the State Bar without valid, congressional abrogation.

### 2. There Has Been No Abrogation of the State Bar's Immunity

This Court should hold that Congress did not validly abrogate the State Bar's immunity. Kohn has not even alleged an ADA violation. But the shortest path to granting dismissal is holding that Kohn has not alleged a constitutional violation or justified a prophylactic waiver of immunity in the professional licensing context. *Kohn v. State Bar of California*, 119 F.4th 693, 699 (9th Cir. 2024) ("*Kohn II*").

#### a. Kohn Does Not State a Title II Violation of the ADA Under Any Available Theory of Discrimination

Kohn has failed to state a plausible failure to accommodate, disparate treatment, or disparate impact claim. Mot. 17–22. Because these are "'analytically distinct'" theories, *Dunlap v. Liberty Nat. Prods., Inc.*, 878 F.3d 794, 798 (9th Cir. 2017), they are not interchangeable and Kohn's attempt to salvage his deficient failure to accommodate allegations by relabeling them as disparate impact or disparate treatment claims fails, *see, e.g.*, Opp. 12; TAC ¶ 124. This Court's analysis of the *Georgia* factors thus can end at the first step. *See* Mot. 16.

***No failure to provide accommodations.*** Kohn has not plausibly alleged that the State Bar "failed to make reasonable modifications that would accommodate [his] disability without fundamentally altering the nature of the program or activity … and that the accommodation would have enabled [him] to meet the [exam]'s essential eligibility requirements." *A.G. v.*

*Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1206 (9th Cir. 2016) (cleaned up). Significantly, and as the State Bar explained (Mot. 17), "the ADA does not require the public entity to provide the 'accommodation that an individual requests or prefers; instead, the ADA requires only a reasonable accommodation.'" *Wolf v. City of Millbrae*, 2021 WL 3727072, at *3 (N.D. Cal. Aug. 23, 2021) (Hamilton, J.) (citation omitted). Kohn's failure to accommodate claim lacks merit because he complains only of denial of his preferred accommodations.

Tellingly, while the TAC made the State Bar's alleged failure to accommodate its central claim for each exam cycle (*see, e.g.,* TAC ¶¶ 167, 212, 269), Kohn spends a single paragraph on failure to accommodate, vaguely positing that the TAC "easily" states a claim given the "extent" of the allegations. Opp. 16. According to Kohn, more accommodations "would have better ensured Kohn received equal access on the corresponding exams than those Defendants granted."[1] *Id.* But this proves the State Bar's point—it is not a violation of Title II if the public entity does not provide a plaintiff's *preferred* accommodation, so long as it provides reasonable accommodations. As the TAC itself reflects, the State Bar granted *nearly all* of Kohn's requests on each exam cycle. Mot. 17–20. Kohn fails to identify any requested accommodation the State Bar denied that allegedly excluded him from participation in the bar exam on the basis of disability, effectively conceding this theory.[2]

***No disparate impact.*** Kohn attempts to recast his deficient failure to accommodate allegations as a disparate impact claim. But where, as here, allegations relate to *individualized* experience, the Ninth Circuit has held that such allegations should be "considered through the individual failure to accommodate framework." *Payan v. Los Angeles Cmty. Coll. Dist.*, 11 F.4th 729, 739 (9th Cir. 2021). By contrast, "[w]here a plaintiff challenges a program's policy

---

[1] Kohn's attempt to invoke the "best ensure" standard found in 28 C.F.R. § 36.309(b)(1)(i) (e.g., Opp. 8–9)—a regulation governing Title III claims that by its own terms applies only to a "private entity"—fails because that regulation has no application to Title II. *See generally Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 872 (9th Cir. 2004).

[2] Nor does the passing reference to Kohn's approved external monitor not working during the morning session on one of the exam days establish a denial of meaningful access to the bar exam. Opp. 16 (citing TAC ¶ 270). Under the ADA, "a disability discrimination claim cannot be based on a one-time failure of a piece of equipment used to assist a disabled person." *Williams v. Cal. Dept. of Corr. and Rehab*, 2017 WL 977766, at *3 (E.D. Cal. Mar. 14, 2017).

or practice of failing to remedy systemic barriers, *rather than the individual's experience with requesting accommodations to address those barriers*, this type of claim is more appropriately evaluated under the disparate impact framework than the failure to reasonably accommodate framework." *Id.* (emphasis added); *see Marinkovic v. Lee,* 2025 WL 474917, at *3, n.3 (S.D. Cal. Feb. 12, 2025) (disparate impact theory inapplicable where "claims are premised on defendant's failure to provide an individualized need").

Kohn cannot repackage his failure to accommodate claims as disparate impact claims because the allegations underlying each of the policies identified in the Opposition are all grounded in Kohn's individualized experience in seeking and receiving reasonable accommodations. The TAC makes clear that Kohn challenges the purported "months-long procedural processing times" with respect to his *own* accommodation requests. TAC ¶ 179; *see also, e.g.*, *id.* ¶¶ 100, 119, 184, 230, 273. The challenge to December decisions also relates to Kohn's *individualized* experience of preparing responses around "December holidays." Opp. 14. Kohn also admits that his challenges to documentation requirements relate to his *own* accommodation requests. *Id.* Similarly, as to Kohn's challenge to the deference provided to treating doctors, the underlying allegations concern Kohn's *own* experience over the course of several exams. Opp. 15 (citing TAC ¶ 106 (July 2018); ¶¶ 159, 165–66, 170 (Feb. 2019); ¶¶ 193, 211 (Feb. 2020); and ¶¶ 246–47, 250–55 (Oct. 2020)). Indeed, Kohn's argument on failure to accommodate expressly asserts that the State Bar disregarded "detailed affidavits from several treating doctors who consistently recommended what Kohn requested" (Opp. 16), making plain that this is a failure to accommodate, not a disparate impact claim. Moreover, the so-called failure to explain the denials and refusal to offer a live hearing suffer from the same flaws—the underlying allegations are premised on Kohn's *individualized* experience and the harm he allegedly suffered. *See* Opp. 15–16 (citing allegations concerning Kohn's own experience, *see, e.g.*, TAC ¶¶ 106, 159, 165–66, 170–71, 184, 192–93, 211, 246–47, 250).

More fundamentally, Kohn's disparate impact claim fails for the additional reason that the underlying policies and procedures he challenges are not a "facially neutral government policy or practice"—a necessary element for a disparate impact claim. *Payan,* 11 F.4th at 738.

Rather, these policies apply *only* to individuals seeking testing accommodations on the basis of disability. As such, they are not facially neutral policies of general applicability that disparately impact those with disabilities for which "systemic reasonable modifications" are required. *Id.* at 739. In fact, Kohn is seeking only damages, not prospective relief (which Kohn lacks standing to seek, Mot. 30) that would modify the State Bar's testing accommodation policies.

Moreover, the TAC fails to adequately allege that the State Bar's testing accommodation policies have the "'effect of denying meaningful access to public services' to people with disabilities." *Payan*, 11 F.4th at 738. Indeed, there are no plausible allegations that the policies operate to exclude the disabled from meaningful access to the bar exam—nor could there be any, given that very purpose of these policies is to facilitate requests for accommodation. As the Ninth Circuit explained in an analogous context involving the Fair Housing Act, "[a] policy that benefits the disabled does not impose artificial and arbitrary barriers on that group" and thus fails to allege a disparate impact claim. *Ohio House, LLC v. City of Costa Mesa*, 135 F.4th 645, 667 (9th Cir. 2025); *see Yellowstone Womens First Step H., Inc. v. City of Costa Mesa,* 2016 WL 6124509, at *5 (C.D. Cal. Oct. 17, 2016) (interpreting FHA and ADA "in tandem").

***No disparate treatment.*** Kohn cannot recharacterize his claims as targeting disparate treatment, either. The TAC does not allege that similarly situated but nondisabled individuals were treated more favorably. *Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1003 (E.D. Cal. 2017); *see also Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003). While Kohn attempts to cast various "policies" as facially discriminatory, they are policies that apply *only* to disabled individuals, which "'is not only legitimate but also desirable'" to address discrimination. *Payan*, 11 F.4th at 737. The State Bar's accommodation policies generally cannot be the basis for a disparate treatment claim because such policies are inherently designed to treat disabled individuals differently for the purposes of ensuring equal access. *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998) (the ADA "creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.'"). For example, as to the alleged policy on confirming testing locations, Kohn acknowledges that applicants with approved accommodations are not similarly situated to standard applicants for

purposes of location confirmation, as accommodated applicants' sites must be chosen to "implement the testing accommodations at issue." TAC ¶ 120.

According to Kohn, the "most serious" disparate treatment he faced is that, in the midst of the ongoing COVID-19 pandemic, some—but not all—applicants with testing accommodations were required to test in-person. Opp. 10. As Kohn admits, some applicants with accommodations were permitted to test from home; it was only those who had accommodations that could not be securely administered who were not permitted to test remotely. TAC ¶ 242. As such, this was not a wholesale prohibition on applicants with accommodations being denied remote testing. *Davis v. Shah*, 821 F.3d 231, 260 (2d Cir. 2016) ("the ADA does not bar unequal treatment of different disabilities, so long as disabled individuals are not denied services provided to the able-bodied on the basis of their disabilities"). This is yet another example of Kohn attempting to recast his failure to accommodate theory under another theory because the crux of his complaint is that he received his approved accommodations in person rather than remotely, as he preferred. That policy was facially reasonable, *Gordon v. State Bar of Cal.,* 2020 WL 5816580, at *7 (N.D. Cal. Sept. 30, 2020), not invidious disparate treatment. Kohn's remaining allegations either fail to rise above the plausibility standard required (*see*, *e.g*, TAC ¶¶ 63(f)(iii), 135), comprise allegations of the same treatment provided to disabled and nondisabled (*see, e.g.*, *id.* ¶ 136)—definitionally, not disparate treatment (*see, e.g., Galvan v. Walt Disney Parks and Resorts, U.S., Inc*., 425 F. Supp. 3d 1234, 1244 (C.D. Cal. 2019))—or rehash his deficient failure to accommodate allegations (*see, e.g.*, TAC ¶¶ 100, 121–23, 141–144, 166, 183–85, 189, 217–48).

**b. Even if the Court Reaches the Second *Georgia* Step, Kohn Has Not Alleged a Fourteenth Amendment Violation**

If this Court determines that Kohn has not alleged a Title II violation, it can stop here and grant the State Bar's motion. *Kohn II*, 119 F.4th at 699. But if Kohn has alleged a Title II violation, Congress's abrogation of sovereign immunity is still invalid unless Kohn has alleged actual violations of the Fourteenth Amendment or a prophylactic abrogation that is tailored to deter such violations. *Id.* Kohn contends that he has alleged violations of (1) procedural due

process, (2) substantive due process, and (3) equal protection. None is viable.

***Procedural due process.*** Kohn has not alleged the deprivation of a constitutionally protected interest. He asserts a constitutionally protected liberty interest in "the opportunity to practice his chosen profession free of unlawful governmental restraint." Opp. 18–19 (citing *Schware v. Bd. of Bar Exam'rs of N.M.*, 353 U.S. 232, 238 (1957)). But *Schware* does not recognize a liberty interest in *taking the bar with any particular accommodation*. In any event, a State Bar decision "does not deprive an applicant of any rights until the supreme court 'expressly or impliedly approves'" it. *Pell v. Nunez*, 99 F.4th 1128, 1132 (9th Cir. 2024). A plaintiff who challenges a State Bar action but does "not allege[] that he petitioned the California Supreme Court to review the State Bar's actions" has not "adequately alleged a deprivation of a protected right." *Id.* at 1133. Kohn argues that *Pell* applies only to the ultimate decision to admit an applicant. Opp. 19. Yet *Pell* applies whenever the California Supreme Court has "'inherent power and original jurisdiction'" over the issue. 99 F.4th at 1132. Here, the California Supreme Court has the authority to consider challenges to denials of accommodations requests. Cal. R. of Ct., rule 9.13(d). Kohn's failure to seek a decision from the California Supreme Court forecloses his alleged procedural-due-process violation.

Kohn also received all the process he was due. At its core, due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful matter.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Additional procedural safeguards are generally not required. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). As this Court recognized when it granted the State Bar's motion to dismiss in 2020, "[t]here is no fundamental right to practice law or to take the bar examination." Dkt. 41 at 10 (quoting *Giannini v. Real*, 911 F.2d 354, 358 (9th Cir. 1990)). And because there is no fundamental right at issue, it has long been established that the existing procedure available to Kohn—notice of the reasons for partially denying his accommodation request and an opportunity to petition the California Supreme Court for review—satisfies due process. *Giannini*, 911 F.2d at 357.

Kohn urges (Opp. 20–21) this Court to adopt additional procedural safeguards, like the rights of "confrontation and cross-examination" required when a person is denied admission to

the bar for lack of good moral character after passing the examination. *Willner v. Comm. on Character & Fitness*, 373 U.S. 96, 103 (1963). But no decision supports his argument that the Due Process Clause mandates trial-type procedures for the accommodations process that go well *above* what Title II requires. Kohn's claimed liberty interest in his chosen "field of private employment" is "subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291–92 (1999). Even if *Willner* extends to accommodations, the opportunity to initiate review by petition to the California Supreme Court amply satisfies due process. The Due Process Clause would not require the State Bar to render an accommodation decision within 14 days (Opp. 13) to avoid issuing decisions in December (*id.* at 13–14), or to review his application "collaboratively" with his physicians or to credit their opinions (*id.* at 7, 15). At bottom, Kohn seeks a *substantive* result through the Due Process Clause: procedures that give every benefit of the doubt to applicants requesting accommodations and go out of their way to avoid inconveniencing applicants at all. No one is due such one-sided process under the Constitution.

***Substantive due process.*** Kohn argues that he has alleged a "state-created danger" from being required to test in person with accommodations for the October 2020 bar exam, which supposedly subjected him to a higher risk of contracting COVID-19 at the testing site than he would have faced at home. Opp. 21–22. But state-created-danger claims require actual, "realized" harm—not a mere risk of harm that never materializes. *Railroad 1900, LLC v. City of Sacramento*, 604 F. Supp. 3d 968, 976 n.4 (E.D. Cal. 2022). Every case Kohn cites involves a danger that came to fruition. *See, e.g.*, *Polanco v. Diaz*, 76 F.4th 918, 923 (9th Cir. 2023) (prison guard died after contracting COVID-19 when government transferred inmates from facility with widespread outbreak); *Murguia v. Langdon*, 61 F.4th 1096, 1100 (9th Cir. 2023) (mother drowned infant twins after police failed to respond appropriately to requests for mental health assistance). But the state-created-danger "doctrine only applies in situations in which the plaintiff was *directly harmed*." *Martinez v. City of Clovis*, 943 F.3d 1260, 1271 (9th Cir. 2019) (italics added). Kohn cannot plead a violation without allegations of such direct harm.

Aside from lacking realized harm, there was no danger in the first place. Kohn relies foremost on *Polanco*, where an employee was put directly in daily contact with more than a

hundred inmates transferred from a facility with a known, "widespread COVID-19 outbreak." 76 F.4th at 923. But this case is unlike *Polanco* because Kohn alleges that he was required to spend six days taking an in-person exam with others who were screened for COVID-19 symptoms, excluded from the exam if they exhibited COVID-19 symptoms, practiced social distancing, and wore masks except during meal breaks. TAC ¶¶ 249, 257, 259, 267. The Due Process Clause did not prohibit holding the bar exam with those safeguards in place.

***Equal protection.*** Kohn concedes that failures to accommodate and disparate impact cannot establish a violation. Opp. 22; *see Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366 (2001). He argues only that "deliberately indifferent disparate treatment" violates the Equal Protection Clause. Opp. 22. But disparate treatment does not "'run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *Garrett*, 531 U.S. at 367. Kohn forfeits any argument under that test by making no effort to apply the rational-basis standard to his claims. And there is plainly a legitimate governmental purpose served by requiring in-person testing for an exam where testing accommodations "do not lend themselves to online testing" (TAC ¶ 242), as well as the State Bar's administration of testing accommodations (*see* Opp. 9; *supra*, 9–10).

**c. Kohn's Claims Fail at the Third *Georgia* Step Because Congress May Not Prophylactically Abrogate Sovereign Immunity as to Professional Licensing**

Because Kohn has not alleged any violations of the Fourteenth Amendment, the next step, derived from *City of Boerne v. Flores*, 521 U.S. 507 (1997), asks "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *U.S. v. Georgia*, 546 U.S. 151, 159 (2006). As the State Bar demonstrated (Mot. 24–28), Congress has far exceeded the bounds of a proper prophylactic abrogation here because Title II's rights and remedies are not congruent and proportional to professional licensing, which does not trigger heightened scrutiny, lacks a pattern of historical constitutional violations, and requires remedies that far exceed the constitutional floor.

Kohn takes a wrong turn under *Boerne* at the outset. He urges this Court to define the relevant class of conduct broadly as "a crossover of public licensing, educational testing, and

judicial services; or alternatively, at a minimum occupational licensing and educational testing." Opp. 23. But Kohn's primary authority is a dated Department of Justice brief filed in *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012), which (as Kohn concedes) ultimately "adopt[ed] the narrower professional-licensing category." Opp. 23. Every court to consider the question agrees that the relevant class is professional licensing, which does not trigger heightened scrutiny. *T.W. v. N.Y. State Bd. of Law Exam'rs*, 110 F.4th 71, 84–85 (2d Cir. 2024); *see* Mot. 25–27. Defining the class with specificity flows directly from *Tennessee v. Lane*, which rejected an effort to "consider Title II, with its wide variety of application, as an undifferentiated whole." 541 U.S. 509, 530 (2004); *see id.* at 527 (defining class narrowly). Although Kohn contends that *Lane* "held the first two *Boerne* prongs [scope of the constitutional right and pattern of discrimination] satisfied for all Title II claims" (Opp. 24), that is the precise argument rejected in *Kohn II* when holding that "district courts must undertake the analysis set forth in *Georgia* to determine whether, in enacting Title II, Congress validly abrogated state sovereign immunity as to the specific class of conduct at issue," 119 F.4th at 698.

Because Kohn adopts an unduly broad framing of the right at issue, he never attempts to show that Title II is congruent and proportional as to professional licensing. The Supreme Court has only ever upheld a prophylactic abrogation when Congress identified a historical "pattern," *Garrett*, 531 U.S. at 370, of constitutional violations that justify Congress's "power to enforce, by appropriate legislation, the provisions of" the Fourteenth Amendment, U.S. Const. amend. XIV, § 5. *See also Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 42 (2012). In *Lane*, for example, the Court observed that the ADA's legislative history included examples of "many individuals, in many States across the country" who were "excluded from courthouses and court proceedings by reason of their disabilities." 541 U.S. at 527 (discussing report "that some 76% of public services and programs housed in state-owned buildings were inaccessible to and unusable by persons with disabilities"); *see also Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 730, 735 (2003) (relying on extensive evidence in legislative record of nationwide pattern of gender-based discrimination in state family-leave policies to "justify the enactment of" a prophylactic waiver of immunity). Here, by contrast, "Congress has not identified 'a

longstanding pattern of disability discrimination in the context of professional licensing." *T.W.*, 110 F.4th at 85 (brackets omitted) (quoting *Guttman*, 669 F.3d at 1119); *see* Mot. 25–26. Kohn does not even try to demonstrate otherwise.

Congress also "swept too far" beyond "'enforc[ing]' Section 1 of the Fourteenth Amendment." *Allen v. Cooper*, 589 U.S. 248, 263 (2020). Kohn tacitly concedes that his disparate impact and failure to accommodate claims would redefine rather than enforce the Equal Protection Clause. Opp. 22; *see Louisiana v. Callais*, 608 U.S. 85, 113 (2026); *Garrett*, 531 U.S. at 367–68, 374. He defends only his disparate treatment claims, but Congress made no effort to limit Title II to practices that cannot survive rational basis review. Instead, the "abrogation of sovereign immunity here would require states to justify a significant range of rational, everyday licensing decisions that would otherwise be constitutional"—as Kohn's complaint illustrates. *T.W.*, 110 F.4th at 91 (quoting *Guttman*, 669 F.3d at 1124). Kohn in fact touts Title II's "broad coverage" and "broad language" in attempting to establish a statutory violation. Opp. 7. And while he argues that Title II was "intended to enforce virtually all Constitutional rights disabled individuals possess," *id.* at 25, what matters is that Kohn has not identified a constitutional right subject to heightened scrutiny (like the right of access to courts) that could justify Title II's searching review and strong remedies, *see T.W.*, 110 F.4th at 85.

In short, the complaint fails *Georgia* step three because Kohn cannot demonstrate that Title II addresses a widespread pattern of discrimination for professional licensing and adopts appropriately tailored rights and remedies to deter actual Fourteenth Amendment violations. There is no valid basis to find Congress validly abrogated sovereign immunity here.

**3. The State Bar May Assert Sovereign Immunity as to the Unruh Act**

As a backup, Kohn contends that this Court should refuse to dismiss the Unruh Act claim for lack of subject matter jurisdiction even if the State Bar's sovereign immunity bars his ADA claims. Both of his arguments are meritless.

First, Kohn argues that the State Bar waived its sovereign immunity as to the Unruh Act claim. Opp. 26–27. Kohn notes that, in moving to dismiss the FAC, the State Bar sought dismissal on the ground that the Unruh Act does not apply at all to the State Bar. Dkt. 38 at 12.

But seeking dismissal of the FAC on more limited grounds did not waive the State Bar's sovereign immunity for the Unruh Act claim. Because the "'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one,'" federal courts will generally "find a waiver either if the State voluntarily invokes [federal court] jurisdiction or else if the State makes a 'clear declaration' that it intends to submit itself to [federal court] jurisdiction." *College Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675–76 (1999) (citations omitted). The State Bar never invoked this Court's jurisdiction (for example, by removing the case from state court) and never clearly declared that it was waiving sovereign immunity as to the Unruh Act. Kohn thus misplaces his reliance on *Embury v. King*, 361 F.3d 562 (9th Cir. 2004), which held that the State's "removal is the waiver." *Id.* at 566. As Kohn concedes, immunity "may be raised at any point in a proceeding." Opp. 27 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984)).

Second, Kohn argues that the California Legislature waived the State Bar's immunity from suit by incorporating the ADA into the Unruh Act. But Kohn mixes apples and oranges. The Legislature incorporated the ADA's *liability* standards into the Unruh Act: "A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section." Cal. Civ. Code § 51(f); *see Brennon B. v. Superior Court*, 13 Cal. 5th 662, 686, 688 (2022) (explaining that subdivision (f) did not "subject state actors to new liability"). The Legislature nowhere waived the State's immunity from suit in *federal* court. Section 51(f) falls far short of a waiver of sovereign immunity because federal courts will "find waiver only where stated by the most express language of by such overwhelming implications from the text as will leave no room for any other reasonable construction." *College Sav. Bank*, 527 U.S. at 678 (brackets omitted).

**B. The TAC Should be Dismissed Pursuant to Rule 12(b)(6)**

If the State Bar were not immune, dismissal would be warranted under Rule 12(b)(6). Kohn's failure to allege a Title II violation is fatal to both his ADA and his derivative Unruh Act claim. *See supra*, at 6–10. His ADA claim also fails to allege available remedies, and his

Unruh Act claim is barred by the Government Claims Act (GCA) and cannot be asserted against the State Bar in any event.

**1. Title II Makes No Remedies Available for Kohn's Claims**

Kohn fails to establish any available remedies. Kohn lacks standing to seek declaratory relief absent allegations that he would again be subject to the accommodation process and he cannot seek punitive damages. Mot. 30–32. Kohn's "failure to respond to Defendant's arguments is a concession of those arguments." *Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1066 (E.D. Cal. 2022).

While Kohn contends that he has sufficiently alleged the requisite deliberate indifference to seek damages (Opp. 17–18), Kohn misses the mark. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). Kohn has not plausibly alleged the knowledge component. As explained above, Kohn cannot establish the existence of a Title II violation, let alone any other federally protected right. Nor can Kohn show knowledge of the likelihood of harm based on allegations that the State Bar's procedures "depart[]" from DOJ guidelines" (Opp. 17), which apply to private entities and are nonbinding on the State Bar. *See Csutoras v. Paradise High Sch.*, 12 F.4th 960, 969 (9th Cir. 2021) (failure to provide specific accommodations suggested by non-binding Department of Education guidance does not establish deliberate indifference).

Kohn has also failed to plausibly allege that the State Bar failed to act, which, under *Duvall*, "must be a result of conduct that is more than negligent, and involves an element of deliberateness." 260 F.3d at 1139. That the State Bar did not grant Kohn his preferred accommodations does not establish failure to act. Nor can it be found in the alleged delay with the State Bar's processing of Kohn's requests. *See Marinkovic,* 2025 WL 474917, at *4 (dismissal granted where plaintiff alleged "deliberate indifference toward his disability needs in delaying [the] grant of his accommodation request by four or five weeks"). Indeed, as in *Marinkovic*, "[b]eyond conclusory allegations, Plaintiff alleges no facts that indicate that [State Bar] employees acted in knowing disregard of his needs." *Id.* at *4. Instead, the TAC shows that

the State Bar granted numerous accommodations for every exam and expanded the accommodations after Kohn submitted additional documentation. Mot. 4–7. That does not amount to the requisite failure to act.[3]

**2. Kohn's Unruh Act Claims Fail as a Matter of Law**

**a. Kohn Failed to Comply with the GCA**

Kohn's 2019 administrative appeal statement does not comply with the claims presentation requirements because it was submitted before the State Bar denied his appeal. Mot. 32–33. Kohn relies on *Phillips v. Desert Hospital Dist.*, 49 Cal. 3d 699, 707 (1989), to argue that the State Bar was required to provide a notice of insufficiency to avoid waiver of its defenses. But for such a notice to be triggered, a defective claim, at a minimum, must "seek[] compensation for [the] injury" and "threaten[] litigation" if the demand is not met. *A.S. v. Palmdale Sch. Dist.*, 94 Cal. App. 5th 1091, 1098 (2023). The TAC lacks allegations that Kohn's 2019 statement included such an assertion, and thus there is no waiver.

Nor is there waiver relating to timeliness of claims submitted in August 2020, in which Kohn specifically "request[ed] leave to file late claims for previous exams, namely July 2018 and February 2019." RJN, Exs. 3 and 4. In other words, these claims included his application to submit a late claim, which means that the notice requirements in Government Code section 911.3 on which Kohn relies are inapplicable. Because the State Bar did not grant Kohn leave to file late claims, it was deemed denied on the 45th day (Cal. Gov't Code § 911.6(c)), and the State Bar had no duty to inform Kohn of that denial, *see J.M. v. Huntington Beach Union High Sch. Dist.*, 2 Cal. 5th 648, 654 (2017). As such, the State Bar can raise untimeliness now.

As to the February 2020 and October 2020 bar exams raised in the August 2020 claims, Kohn failed to comply with the claims presentation requirement by filing suit prematurely. Mot.

---

[3] Kohn's so-called "direct and circumstantial" evidence of "animus" of State Bar administrators toward the disabled (Opp. 18) fails to satisfy the deliberate indifference standard. Kohn's lengthy string cite does not show animus, instead largely comprising allegations on "information and belief" regarding staff's supposed beliefs and discriminatory motives (TAC ¶ 52, 54–57, 177, 195, 209, 244), conduct postdating Kohn's exams (*id.* ¶¶ 73(a), 82–98, 186(B)–(C), 260), and the processing of Kohn's own requests (*id.* ¶¶ 139–42, 159–60, 165–66, 168–78, 193–95, 205–06, 208–09, 211, 213–14, 218–19, 232–33, 236(E), 237–41, 246–47, 250–51, 254–55).

33–34. Kohn asserts that his failure to comply should be excused because he substantially complied and he would otherwise have to delay in seeking emergency injunctive relief. Opp. 31. Not so. The GCA does not apply to equitable relief. Cal. Gov't Code § 814. None of the cited authorities would have prevented him from timely seeking to amend an equitable-relief only complaint to add a state-law claim for monetary damages after satisfying the claims presentation requirement.[4] *See, e.g.*, *Malear v. State*, 89 Cal. App. 5th 213, 221 (2023). What Kohn could not do is to prematurely file litigation seeking damages under Unruh, then file a claim after the State Bar appeared and dedicated resources to the case, as he did here.[5]

Finally, the GCA precludes consideration of his new disparate impact and treatment theories because they were not part of his earlier government claims. These are "'analytically distinct'" theories, *Dunlap*, 878 F.3d at 798, and California law requires that claims "must set forth all the legal and factual bases that will be asserted in any subsequent lawsuit." *Doe 1 v. City of Murrieta*, 102 Cal. App. 4th 899, 920 (2002). Kohn's August 2020 claims do not assert the disparate impact and disparate treatment theories first raised in his Second Amended Complaint (Dkt. 80) filed six years later in 2026.

**b. The State Bar Is Not a Business Establishment**

Kohn fails to state an Unruh claim because the State Bar is not a "business establishment[]." Cal. Civ. Code § 51(b). Under *Brennon B.*, the defendant "must effectively operate as a business or a commercial enterprise or engage[] in behavior involving sufficient 'business-like attributes.'" 13 Cal.5th at 681. But Kohn tries to avoid applying *Brennon B.*, even though the Ninth Circuit remanded with directions for this Court to do just that. Opp. 29.

Kohn shies away from *Brennon B.* because he cannot plausibly allege that the State Bar's administration of the bar exam, including the accommodations process, has sufficient business-like attributes—"performing business functions, protecting economic value, operating

---

[4] The State Bar's case, *Harland v. City of West Hollywood*, 120 Cal. App. 5th 1166, 1172 (2026) (review granted Sept. 23, 2026, S297247), may still be cited for its "persuasive value" while pending review. *Harland v. City of West Hollywood*, 348 Cal. Rptr. 3d 102 (Cal. 2026).

[5] Kohn's conclusory allegation that his June 17, 2020, demand letter "substantially complied" with the GCA for the February 2020 exam (TAC ¶ 215) is insufficient to plead compliance. *Mohsin v. Cal. Dept. of Water Res.*, 52 F. Supp. 3d 1006, 1010 (E.D. Cal. 2014).

as the functional equivalent of a commercial enterprises, etc."—to trigger the Unruh Act. 13 Cal. 5th at 681; *see* Mot. 34–35. He points to three features: the State Bar (1) collects fees for the bar exam, (2) administers the exam just like "standardized test vendors" could, and (3) employs staff and contracts with vendors in carrying out those functions. Opp. 29–30 (citing TAC ¶¶ 41(b)(ii), 60). But none of those features shows that the State Bar is "operat[ing] as a business or commercial enterprise" when administering the bar exam. *Brennon B.*, 13 Cal. 5th at 679. Government agencies collect fees from the users of the programs that they administer. *See, e.g.*, *Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 272 (2024). And government agencies of course employ staff and enter into contracts when performing their official duties. Kohn does not identify a single case that treated a public agency as a business establishment.

Kohn also advances a convoluted theory that the State Bar is a business establishment because an earlier draft of the Unruh Act would have expressly covered "any and all business or professional organizations formed or maintained by licensees of the State of California" and "any professional person, group or association licensed or certified by the State of California." Opp. 28. But the California Supreme Court has rejected this precise argument, explaining that nothing "suggests that the term 'all business establishments of every kind whatsoever' was intended to encompass *all* of the entities or activities listed in the initial bill." *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 615 (1995); *accord Brennon B.*, 13 Cal. 5th at 676–77. In any event, the State Bar is not a professional organization formed or maintained by attorneys nor an association licensed or certified by the State of California. The State Bar is a "judicial branch entity" recognized in the California Constitution that assists the California Supreme Court in its admissions and disciplinary functions. Cal. Assemb. B. 2784. § 1(f); *see supra*, at 4. Although the State Bar once performed trade associational functions, the State Bar since 2018 has operated solely as regulatory agency and as an arm of the California Supreme Court. *Kohn I*, 87 F.4th at 1033; *see* Cal. Assemb. B. 2784, § 1(e).

## III. CONCLUSION

This Court should dismiss the TAC without leave to amend.

Dated: October 27, 2026

STATE BAR OF CALIFORNIA
OFFICE OF THE GENERAL COUNSEL

By: *<u>/s/ Kirsten Galler</u>*
Kirsten Galler
Deputy General Counsel
Attorneys for Defendants
THE STATE BAR OF CALIFORNIA and
CALIFORNIA COMMITTEE OF BAR
EXAMINERS